*F I L E D*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

APR 21 2005
APR 21 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

NR

| | |
|---|---|
| NEW CENTURY MORTGAGE CORP., ) | |
| ) | |
| Plaintiff, ) | Case No. **05C 2370** |
| ) | |
| ) | |
| v. ) | |
| ) | Formerly Case No. 05CH05371 |
| GREAT NORTHERN INSURANCE ) | Circuit Court of Cook County |
| COMPANY, FEDERAL INSURANCE ) | Chancery Division |
| COMPANY, and PAUL BERNSTEIN ) | |
| ) | **JUDGE COAR** |
| Defendants. ) | |
| ) | **MAGISTRATE JUDGE DENLOW** |

## NOTICE OF REMOVAL

Defendants, GREAT NORTHERN INSURANCE COMPANY and FEDERAL INSURANCE COMPANY (hereinafter, "the Insurer Defendants") by and through their attorneys, TRESSLER SODERSTROM, MALONEY & PRIESS, and pursuant to 28 U.S.C. § 1446, 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441, *et seq.*, hereby submit this Notice of Removal of this action from the Circuit Court of Cook County, Illinois, Chancery Division to the United States District Court for the Northern District of Illinois, Eastern Division. In support of this Notice of Removal, the Insurer Defendants state as follows:

1.    The Insurer Defendants are defendants in the action filed on March 23, 2005 in the Circuit Court of Cook County, Illinois, Chancery Division, No. 05 CH 05371 styled *New Century Mortgage Corporation v. Great Northern Insurance Company, Federal Insurance Company and Paul Bernstein.*

2.     In accordance with 28 U.S.C. § 1446(a), attached as Exhibit A is a copy of the Summons and Complaint for Breach of Contract, Declaratory and other Relief which constitute all process, pleadings and orders served upon the Insurer Defendants.

3.     Summons was issued on March 25, 2005 and the Insurer Defendants were subsequently served with the complaint. Accordingly this Notice of Removal was timely filed within thirty (30) days after the Insurer Defendants were served with the Complaint.

4.     No further proceedings have been had in the subject action.

5.     The above titled action is a civil action of which this court has original jurisdiction under the provisions of 28 U.S.C. § 1332(a) (Diversity of Citizenship), and is one which may be removed to this court by the Insurer Defendants pursuant to the provisions of 28 U.S.C. § 1441 in that this is a civil action wherein the amount in controversy, at least $1.95 million, exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different states. A separate Local Rule 81.2 Statement of Jurisdictional Amount is submitted herewith which further supports the Defendant Insurers' good faith assertion that the value of this case greatly exceeds the jurisdictional amount.

6.     Plaintiff, New Century, is incorporated in California and maintains its principal place of business in California. (See, Appendix, Exhibit A, p. 1, ¶ 1.)

7.     Defendant Great Northern Insurance Company is incorporated in Minnesota and maintains its principal place of business in New Jersey. (See, Appendix, Exhibit A, p. 1, ¶ 2.)

8.     Defendant Federal Insurance Company is incorporated in Indiana and maintains its principal place of business in New Jersey. (See, Appendix, Exhibit A, p. 1, ¶ 3.)

9.     Defendant Paul Bernstein, an individual, is alleged to be a resident of the State of Illinois. (See, Appendix, Exhibit A, p. 1, ¶ 4.) Mr. Bernstein, who has no interest whatsoever in

the outcome of this dispute, has been fraudulently[1] joined in this case for the sole purpose of obstructing removal of this action to federal court. A plaintiff cannot defeat federal jurisdiction by fraudulently joining a defendant in a lawsuit. *Poulos v. Naas, Inc.* 959 F.2d 69, 73 (7th Cir. 1991). New Century no doubt included Mr. Bernstein as a defendant in the Cook County action so that it can rely on 28 U.S.C. § 1441(b) in an attempt to defeat removal. Section 1441(b) prevents removal when a properly joined defendant resides in the state where the original action is filed. However, Mr. Bernstein is not properly joined as a defendant in the Cook County action. Mr. Bernstein is the tort claimant in the suit that underlies this insurance coverage action- - *Paul Bernstein v. New Century Mortgage Corporation*, No. 02 CH 06907 (Circuit Court of Cook County, Illinois) (the "*Bernstein* suit."). While Illinois state courts often hold that tort claimants are necessary parties in coverage actions, they are not necessary parties when they have already settled with the insured. *American Home Assurance v. Northwest Industries*, 50 Ill.App.3d 807, 365 N.E.2d 956 (1st Dist. 1977). In this case, Mr. Bernstein has settled his claim with New Century and has fully released both New Century and its insurers from any liability arising out of the *Bernstein* suit. (See, Appendix, Exhibit B, p. 11, ¶ 15.) As such, he has no interest whatsoever in the outcome of this coverage litigation and was fraudulently joined simply to evade removal to the Northern District. Mr. Bernstein's lack of interest in this matter is further demonstrated by the fact that New Century has not asserted any causes of action against him and has not sought any relief from him. As no claim has been stated against Mr. Bernstein, New Century necessarily has no chance of succeeding on a claim against him. Consequently, the Court should not consider Mr. Bernstein as being properly joined in this case, and 28 U.S.C. § 1441(b) does not prevent removal of this matter to federal court. Likewise, the fact that Mr.

---

[1] In this context, the word "fraudulent" is a jurisdictional term of art that refers not to a traditional fraud upon the court but to "…a claim against an in-state defendant that simply has no chance of success, whatever the plaintiffs' motives." *See, Poulos v. Naas Foods, Inc.*, 959 F.2d. 69, 73 (7th Cir. 1992).

Bernstein has not joined in this Notice of Removal does not create a lack of unanimity among the defendants because he was not properly joined as a defendant. Only the citizenship and non-joinder of those who are real parties should be considered in resolving the question of "removability." *Glenmeade Trust Co., v. Dow Chemical Co.*, 384 F.Supp. 423, 430 (E.D. Pa. 1974), *see also*, *Salem Trust Co., v. Manu. Finance Co.*, 264 U.S. 182, 44 S.Ct. 266 (1924).

10.    Alternatively, in the event this Court determines that Paul Bernstein has been properly joined in this action, he should be realigned as a plaintiff. For the purposes of considering jurisdictional issues, the Court is not constrained by the original alignment of the parties by the plaintiff. *Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6, 8, n. 5, 110 S.Ct. 297, 304 n. 5 (1989) *Indianapolis v. Chase National Bank*, 314 U.S. 63, 69, 62 S.Ct. 15 (1941). Rather, the Court must realign the parties according to their true interests. *Id.* When underlying tort claimants are properly joined as parties to an insurance coverage dispute, federal courts consistently find that there interests are aligned with the interests of the policyholder and in conflict with interests of the insurer. *See e.g. Saylab v. Harford Mutual Ins. Co.* 271 F.Supp.2d 112 (D.D.C. 2003); *Liebau v. Columbia Cas. Co.*, 176 F.Supp. 2d 1236 (D. Kan. 2001); *Martin v. Universal Underwriters Co.*, 676 F.Supp. 77 (E.D. Pa. 1987). Consequently, if the Court concludes that Mr. Bernstein is properly joined in this action, he should be realigned with the policyholder, New Century, as a plaintiff. Once realigned as a plaintiff, Mr. Bernstein's state of residence, Illinois, cannot defeat removal of this case under 28 U.S.C. § 1441(b). Likewise, the fact that Mr. Bernstein has not joined in this Notice of Removal does not create a lack of unanimity among the defendants because he should be realigned as a plaintiff.

11.    A true and correct copy of this Notice of Removal was filed with the Clerk of the Circuit Court of Cook County.

12.    The Second Cause of Action in the Cook County complaint (requesting a declaratory judgment) is related to the case styled *Great Northern Insurance Company and Federal Insurance Company v. New Century Mortgage Corp.*, No. 04 C 60606. (N.D. Ill.) which Judge Conlon dismissed ***without prejudice*** on January 10, 2005 because of the existence of an earlier-filed action in the District Court of Hennepin County, Minnesota.[2]  On March 18, 2005, the Minnesota Court dismissed the earlier-filed action based on *forum non conveniens*, and the Insurer Defendants subsequently moved to reinstate the action before Judge Conlon.   Judge Conlon has not yet resolved the Insurer Defendants' motion to reinstate in Case Number 04 C 60606.

Dated:  April 21, 2005

GREAT NORTHERN INSURANCE COMPANY
FEDERAL INSURANCE COMPANY

By:   _____
                One of their Attorneys

Daniel J. Cunningham
Kathy Karaboyas Malamis
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois  60606-6308
(312) 627-4000

---

[2] The first cause of action in the Cook County action (for breach of contract) was not at issue in Case Number 04 C 60606.

5

**FILED** A

APR 2 1 2005    NF

APR 21 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NEW CENTURY MORTGAGE CORP.,    )
)
               Plaintiff,    )
)
)
v.    )
)
GREAT NORTHERN INSURANCE    )
COMPANY, FEDERAL INSURANCE    )
COMPANY, and PAUL BERNSTEIN    )
)
               Defendants.    )
)

Case No. **05C 2370**

Formerly Case No. 05CH05371
Circuit Court of Cook County
Chancery Division

*JUDGE COAR*

*MAGISTRATE JUDGE DENLOW*

## NOTICE OF FILING

To:    SEE SERVICE LIST ATTACHED HERETO

PLEASE TAKE NOTICE that on the 21st day of April 2005 there was filed with the Clerk of the United States District Court for the Northern District of Illinois and the Clerk of the Circuit Court of Cook County the following documents:

1. Notice of Removal;

2. Insurer Defendants' Local Rule 81.2 Statement of Jurisdictional Amount;

3. Appendix of Exhibits Referenced in Notice of Removal and in Insurer Defendants' Local Rule 81.2 Statement of Jurisdictional Amount; and

4. Appearances of Daniel J. Cunningham and Kathy Karaboyas Malamis.

Copies of the above-referenced documents are attached hereto.

Dated:  April 21, 2005

GREAT NORTHERN INSURANCE COMPANY
FEDERAL INSURANCE COMPANY

By: _____ *(DJC)*
          One of their Attorneys

Daniel J. Cunningham
Kathy Karaboyas Malamis
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois  60606-6308
(312) 627-4000

## PROOF OF SERVICE

The undersigned, being first duly sworn on oath, deposes and says that she served the foregoing Notice of Filing and the documents referred to therein by mailing copies to the above named attorneys at the addresses indicated on the attached Service List and deposited same in the U.S. Mail at 233 S. Wacker Drive, Chicago, IL on the 21st day of April 2005.  A courtesy copy was also hand delivered on this day to plaintiff's Chicago counsel, Samuel S. Cohen, of Wildman, Harrold, Allen & Dixon, LLP.

SUBSCRIBED AND SWORN to before
Me this 21st day of April 2005.

_____
Notary Public

OFFICIAL SEAL
CYNTHIA CLOSE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 06-15-07

2

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NEW CENTURY MORTGAGE CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Formerly Case No. 05CH05371 |
| GREAT NORTHERN INSURANCE | ) | Circuit Court of Cook County |
| COMPANY, FEDERAL INSURANCE | ) | Chancery Division |
| COMPANY, and PAUL BERNSTEIN | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SERVICE LIST

Samuel S. Cohen
Wildman, Harrold, Allen & Dixon, LLP
225 West Wacker Drive – Suite 3000
Chicago, IL 60606

David A. Gauntlett
Eric R. Little
Joseph S. McMillen
Gauntlett & Associates
18400 Von Karman – Suite 300
Irvine, CA 92612

Paul Bernstein, Esq.
333 E. Ontario Street, Suite 2102-B
Chicago, IL 60611-3033

Bart T. Murphy
Wildman, Harrold, Allen & Dixon
2300 Cabot Drive – Suite 455
Lisle, IL 60532

Dorothy Brown
Clerk of the Circuit Court of Cook County
Richard J. Daley Center
50 W. Washington Street
Chicago, IL 60606

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| NEW CENTURY MORTGAGE CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| GREAT NORTHERN INSURANCE | ) |
| COMPANY, FEDERAL INSURANCE | ) |
| COMPANY, and PAUL BERNSTEIN | ) |
| | ) |
| Defendants. | ) |
| | ) |

Case No.**05C 2370**

Formerly Case No. 05CH05371
Circuit Court of Cook County
Chancery Division

**JUDGE COAR**

**MAGISTRATE JUDGE DENLOW**

### APPENDIX OF EXIBITS TO NOTICE OF REMOVAL AND INSURER DEFENDANTS' LOCAL RULE 81.2 STATEMENT OF JURISDICTIONAL AMOUNT

**Exhibit A**—Summons and Complaint (including exhibits) in *Paul Bernstein v. New Century Mortgage Corporation,* No. 02 CH 06907 (Circuit Court of Cook County, Illinois)

**Exhibit B**—Settlement Agreement in *Paul Bernstein v. New Century Mortgage Corporation,* No. 02 CH 06907 (Circuit Court of Cook County, Illinois)

**Exhibit C**—New Century's Answer to Plaintiffs' Complaint For Declaratory Judgment Case No. 04 C 60606 (N.D. Ill.)

**FILED**

APR 2 1 2005
APR 21 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# EXHIBIT A

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

(Rev.12/3/01)  CCG 0001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____ CHANCERY _____ DIVISION

(Name all parties)

NEW CENTRY MORTGAGE CORPORATION, a California corporation,

Plaintiff,

v.

GREAT NORTHERN INSURANCE COMPANY, et al.,

Defendants.

No. __05 CH 05371__

**PLEASE SERVE:**

Federal Insurance Company
c/o Registered Agent
Allison W. Meta
Chubb National Insurance Company
215 N. Illinois, Suite 1100
Indianapolis, IN  46204

## SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the office of the Clerk of this Court at the following location:

☒  Richard J. Daley Center, 50 W. Washington, Room ____802____, Chicago, Illinois 60602

| ☐ District 2 - Skokie<br>5600 Old Orchard Rd.<br>Skokie, IL  60077 | ☐ District 3 - Rolling Meadows<br>2121 Euclid<br>Rolling Meadows, IL  60008 | ☐ District 4 - Maywood<br>1500 Maybrook Ave.<br>Maywood, IL  60153 |
|---|---|---|
| ☐ District 5 - Bridgeview<br>10220 S. 76th Ave.<br>Bridgeview, IL  60455 | ☐ District 6 - Markham<br>16501 S. Kedzie Pkwy.<br>Markham, IL  60426 | |

You must file within 30 days after service of this summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

Atty. No.: __10535__

Name: __WILDMAN, HARROLD, ALLEN & DIXON, LLP__

Atty. for: __Plaintiff__

Address: __225 W. Monroe Street, Suit 2800__

City/State/Zip: __Chicago, IL  60606__

Telephone: __312-201-2000__

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____

_____
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Firm No. 10535

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

# 05CH05371

| | |
|---|---|
| NEW CENTURY MORTGAGE CORPORATION, a California corporation, ) ) ) | No. _____ |
| Plaintiff, ) ) | **COMPLAINT FOR BREACH OF** |
| | **CONTRACT, DECLARATORY** |
| vs. ) ) | **AND OTHER RELIEF** |
| GREAT NORTHERN INSURANCE COMPANY, a Minnesota corporation; FEDERAL INSURANCE COMPANY, an Indiana corporation; and PAUL BERNSTEIN, an individual, ) ) ) ) ) ) | |
| Defendants. ) | |

New Century Mortgage Corporation alleges as follows:

### THE PARTIES

1.    Plaintiff New Century Mortgage Corporation ("NCMC") is a corporation duly organized and existing under the laws of the State of California with its offices at 18400 Von Karman, 10th Floor, Irvine, California. NCMC is a wholly owned subsidiary of New Century Financial Corporation.

2.    Plaintiff is informed and believes that defendant Great Northern Insurance Company ("Great Northern") is a corporation duly organized and existing under the laws of the State of Minnesota, with its headquarters at 200 South 6th Street, Suite 1000, Minneapolis, Minnesota. Great Northern is a member of the Chubb Group of Companies.

3.    Plaintiff is informed and believes that defendant Federal Insurance Company ("Federal") is a corporation duly organized and existing under the laws of the State of Indiana, with its headquarters in Warren, New Jersey. Federal is a member of the Chubb Group of Companies.

4.    Plaintiff is informed and believes that defendant Paul Bernstein ("Bernstein") is a natural person residing in the State of Illinois, County of Cook.

## CHOICE OF LAW

5.     The underlying action is pending in Circuit Court for Cook County, State of Illinois.

## THE GREAT NORTHERN AND FEDERAL INSURANCE POLICIES

6.     In order to obtain the broadest possible coverage, NCMC procured a commercial general liability insurance policy from Great Northern and an umbrella and excess policy from Federal.

7.     Great Northern issued to New Century Financial Corporation ("NCFC") a Commercial General Liability ("CGL") insurance policy, No. 3539-77-36 LAO, effective February 3, 2002 through February 3, 2003, naming NCMC as an insured by way of endorsement.  A copy of Great Northern Policy No. 3539-77-36 LAO is attached hereto and incorporated herein as **Exhibit "A."**

8.     Federal issued to NCFC a Commercial Umbrella Policy, No. 7977-03-85, effective February 3, 2002 through February 3, 2003, naming NCMC as an insured by way of endorsement.  A copy of Federal Policy No. 7977-03-85 is attached hereto and incorporated herein as **Exhibit "B."**

9.     The Great Northern Policy No. 3539-77-36 LAO provides coverage in pertinent part as follows:

**Coverage**

Subject to the applicable Limits of Insurance, we will pay damages the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** for:

- **bodily injury** or **property damage** to which this insurance applies caused by an **occurrence**; or

- **advertising injury** or **personal injury** to which this insurance applies caused by an offense.

This insurance applies to:

- **bodily injury** or **property damage** which occurs during the policy period; and

- **advertising injury** or **personal injury** caused by an offense committed during the policy period.

**Investigation, Defense**
**And Payment of Damages**

We will have the right and duty to defend any **insured** against a **suit** seeking damages for . . . **property damage, advertising injury.** . . .

**Bodily Injury/Property**
**Damage Exclusions**

This insurance does not apply to **bodily injury** or **property damage** which results from an act that:

- is intended by the insured; or

- can be expected from the standpoint of a reasonable person

to cause **bodily injury** or **property damage,** even if the injury or damage is of a different degree or type than actually intended or expected.

**Advertising Injury/**
**Personal Injury Exclusions**

*Prior Acts*       This insurance does not apply to **advertising injury** or **personal injury** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

*Willful*          This insurance does not apply to **advertising injury** or
*Violations*       **personal injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the **insured**.

**Definitions**

**Advertising** means any advertisement, publicity article, broadcast or telecast;

**Advertising injury** means injury other than **bodily injury** or **personal injury**, arising solely out of one or more of the following offenses committed in the course of **advertising** your goods, products or services: . . .

- oral or written publication of advertising material that violates a person's right of privacy
. . . .

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
. . . .

**Property damage** means:

- physical injury to tangible property including the resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- loss or use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

**Exhibit "A,"** pages 6, 8, 9, 11, 12, 13, 21 and 25-27.

10.     The Federal Commercial Umbrella Policy No. 7977-03-85 provides Excess Follow Form Liability Insurance as Coverage A. The Umbrella policy provides in pertinent part:

**Insuring Agreements**

> Under Coverage A, we will pay on behalf of the **insured**, that part of **loss** covered by this insurance in excess of the total applicable limits of **underlying insurance**, provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of **underlying insurance** are with respect to Coverage A made a part of this policy, except with respect to:

> A.     any contrary provision contained in this policy; or

> B.     any provision in this policy for which a similar provision is not contained in **underlying insurance.**

**Exhibit "B,"** page 1.

11.     The identified underlying insurance is the Great Northern CGL policy. **Exhibit "B,"** Form 07-02-0922, Schedule of Underlying Insurance.

## THE *BERNSTEIN* ACTION

12.     On or about April 5, 2002, Paul Bernstein filed a civil class action in the Circuit Court of Cook County, Illinois County Department, Chancery Division against New Century entitled *Paul Bernstein v. New Century Mortgage Corporation*, Civil Action No. 02CH 06907 (the *"Bernstein* Action"), alleging claims for violation of the Telephone Consumer Protection Act, 47 U.S.C. Section 227 ("TCPA") and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"). A true and correct copy of that complaint is attached hereto as **Exhibit "C."**

13.     Bernstein's complaint alleged in pertinent part as follows:

> 4.     On . . . February 26, 2002, Defendant New Century Mortgage Corporation caused the unsolicited fax advertisement attached as Exhibit A to be transmitted to Plaintiff's facsimile machine.
>      . . . .

6.    . . . Defendant disseminated this fax advertisement not only to Plaintiff, but also to many other individuals and entities who did not solicit the fax or have a prior relationship with Defendant.

. . . .

8.    The TCPA makes unlawful the "use of any telephone, facsimile machine, computer or other device to send an unsolicited advertisement to a telephone, facsimile machine . . . ." 47 U.S.C. § 227(b)(1)(c).

. . . .

10.    Plaintiff and each class member suffered damages as a result of receipt of unsolicited faxes, in the form of paper and toner consumed as a result.

11.    Plaintiff and each class member is entitled to statutory damages. . . .

. . . .

22.    Defendant engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to Plaintiff and others.

23.    Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and toner consumed as a result.

14.    On or about September 30, 2003, Bernstein filed a second amended complaint. In addition to the TCPA and IFCA claims alleged in the Complaint, Bernstein also alleged a separate claim for "Property Damage" based, *inter alia*, upon plaintiff's and class members' loss of use of the paper used to print the allegedly infringing faxes. A true and correct copy of that Second Amended Complaint is attached hereto as **Exhibit "D."**

15.    The Second Amended Complaint contains the following pertinent allegations:

1.    Plaintiff Paul Bernstein brings this action to secure redress for the actions of defendant New Century Mortgage Corporation in sending out unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. Section 227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("IFCA"), and Illinois common law.

. . . .

4.    On or about February 26, 2002, defendant New Century Mortgage Corporation caused the unsolicited fax advertisement attached as Exhibit A to be transmitted to plaintiff's facsimile machine.

. . . .

6.    The fax advertisement at issue contains the telephone number, 800-443-7628, associated with the mass "broadcasting" by fax.com, Inc. of unsolicited advertising faxes to a list of numbers compiled by "fax broadcasters" and sold or otherwise made available to businesses desirous of engaging in

illegal fax advertising. The same number was listed in the FCC's citation against fax.com, Inc., file no. EB-02-TC-120, 2002 WL 1798553 (FCC August 7, 2002) as present in other unsolicited faxes sent to a large number of persons by fax.com, Inc.

7.      Defendant or its agents designed the advertising material in question in a manner calculated to make its receipt particularly expensive.    The inclusion of graphics and bold headlines and words in the fax causes it to consume unusually large amounts of toner or ink. Heavy black headlines and graphics cause a fax to consume as much toner or ink as a dozen or more ordinary business letters.

8.      There is no reasonable alternative to receipt of the illegal faxes. ... [D]ialing the "remove" numbers provided on Exhibit A does not result in cessation of unsolicited faxes. Indeed, it may result in a dialer being placed on a "sucker list" of people that actually pay attention to unsolicited faxes and being inundated with other unsolicited faxes. . . .

9.      Based upon the above facts, Plaintiff alleges . . . that the fax attached hereto was sent as part of a mass "broadcasting" fax.

. . . .

11.      The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine..." 47 U.S.C. Section 227(b)(1)(C).

. . . .

13.      Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, and in the form of paper and ink or toner consumed as a result.

. . . .

53.      By sending plaintiff and the class members unsolicited faxes, defendants damaged paper belonging to plaintiff and the class members.

54.      Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had unqualified and immediate right to the possession of the paper and used to print the faxes.

55.      By sending the unsolicited faxes, defendants used plaintiff's paper used to print the faxes in such manner as to make it unusable. Such action was wrongful and without authorization.

. . . .

58.      Plaintiff and the class members were deprived of the paper, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

16.     Following mediation in the *Bernstein* Action, Bernstein filed a Third Amended Complaint which contains substantially similar allegations.  A copy of the Third Amended Complaint is attached as **Exhibit "J."**

### THE TENDER OF NCMC TO GREAT NORTHERN/FEDERAL

17.     On August 15, 2003, NCMC provided notice of the *Bernstein* Action to Great Northern and Federal through Financial Guaranty Insurance Brokers with a copy of the Complaint.  A copy of the August 15, 2003 notice letter is attached hereto and incorporated herein as **Exhibit "E."**

18.     Great Northern and Federal acknowledged receipt of the notice by letter dated January 7, 2004.  A copy of the January 7, 2004 letter from Chubb is attached hereto and incorporated herein as **Exhibit "F."**

19.     Great Northern agreed to defend NCMC subject to a reservation of rights.  Great Northern claimed the allegations in the Bernstein Complaint may not fall within the insuring agreement and may not meet any of the coverage definitions.

20.     Great Northern stated the allegations did not satisfy the definition of "Property Damage," even though there was a claim for loss of toner and paper.  Great Northern also claimed there was no "Occurrence," since transmission of the fax was purportedly not an accident.  As discussed in paragraphs 38 and 39 below, Great Northern's claim is erroneous.

21.     Great Northern acknowledged the allegations might include a claim within the "Advertising Injury" or "Personal Injury" coverage for publication of material that invades a person's right of privacy.  This is the basis upon which Great Northern agreed to provide a defense.

22.     Great Northern also asserted the Willful Violations Exclusion and the Expected or Intended Injury Exclusion as a further basis upon which it reserved its right to deny indemnity for any uncovered claim.

23.     Federal agreed that Coverage A of the Commercial Umbrella Policy was implicated and agreed the claim would be handled under the same reservation of rights as set forth under the Great Northern policy.

## GREAT NORTHERN/FEDERAL'S BREACH OF THEIR DUTY TO SETTLE

24.     During May 2004, discussions ensued between NCMC and Great Northern/Federal regarding attendance at a mediation.

25.     NCMC advised Great Northern that Bernstein was seeking class certification by way of motion, with a hearing scheduled in early August 2004. NCMC advised Great Northern that it was imperative that all necessary steps be taken to settle with Bernstein before a class was certified, in order to avoid exposing NCMC to damages in excess of $300 million.

26.     On June 17, 2004, defense counsel for NCMC forwarded a copy of a settlement demand received from counsel for Bernstein. A true and correct copy of the June 17, 2004 letter and attached settlement demand is attached hereto and incorporated herein as **Exhibit "G."**

27.     On June 22, 2004, coverage counsel for Great Northern and Federal advised defense counsel for NCMC that Great Northern/Federal would continue to defend NCMC but denied any duty to indemnify and refused to participate in a mediation then anticipated to take place on June 23, 2004, even though there had been no adjudication of NCMC's liability. A true and correct copy of the June 22, 2004 letter is attached hereto and incorporated herein as **Exhibit "H."**

28.     By July 7, 2004 letter, Great Northern/Federal acknowledged that settlement for $6 million or less is reasonable and prudent. Great Northern/Federal also acknowledged that payment of the settlement by NCMC is not in violation of any provision of the Great Northern/Federal policies. A true and correct copy of the July 7, 2004 letter is attached hereto and incorporated herein as **Exhibit "I."**

29.     Great Northern/Federal have never contended that the allegedly uncovered risk is the sole cause of damages.

30. On August 5 and 6, 2004, NCMC and Bernstein participated in mediation. On August 6, 2004, NCMC again requested Great Northern/Federal agree to contribute to a settlement with Bernstein for an amount within the policy limits of the Great Northern and Federal policies. Great Northern/Federal refused to contribute any amount toward settlement of the *Bernstein* Action.

31. Abandoned by its insurers and facing damages exposure well in excess of the policy limits of Great Northern/Federal, NCMC agreed to settle the *Bernstein* Action with NCMC's own funds in the amount of $1,950,000.00, substantially below the policy limits of Great Northern/Federal and the agreed reasonable settlement amount of $6,000,000.00.

32. As a result, Great Northern/Federal had a duty to, and breached their duty to, fully fund the settlement of the *Bernstein* Action.

<div align="center">

**BERNSTEIN'S TCPA CLAIM FALLS
WITHIN GREAT NORTHERN/FEDERAL'S
COVERAGE FOR "ADVERTISING INJURY"**

</div>

33. As quoted in pertinent part above, Great Northern/Federal agreed to "pay damages [NCMC] becomes legally obligated to pay by reason of liability imposed by law . . . for" "injury . . . arising solely out of" "written publication of advertising material that violates a person's right of privacy."

34. The TCPA violations alleged by Bernstein and quoted above constitute an invasion of privacy within Great Northern/Federal's "advertising injury" offense of "written publication of advertising material that violates a person's right of privacy" since:

    a. Bernstein alleges "New Century Mortgage Corporation caused the unsolicited fax advertisement . . . to be transmitted to plaintiff's facsimile machine" (SAC, Paragraph 4);

    b. Bernstein alleges "that the fax attached [to the second amended complaint] was sent as part of a mass 'broadcasting' fax." (SAC, Paragraph 9);

    c. Bernstein alleges "[t]he TCPA makes unlawful the 'use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine . . .' 47 U.S.C. Section 227(b)(1)(C)." (SAC, Paragraph 11);

    d. Bernstein alleges the unwanted advertisement violates the TCPA which includes a claim of violating the telephone subscriber's right of privacy (SAC, Paragraphs 1, 7 and 30);

    e. Fax transmittal is publication (SAC, Paragraphs 1 and 4); and

f.      A layperson understands his right to be left alone to include being left alone at work by advertisers sending unsolicited faxes.

35.      The TCPA violations alleged by Bernstein and quoted above constitute an "injury ... arising solely out of [NCMC's]" "written publication of advertising material that violates a person's right of privacy" since:

a.      the alleged injury occurred in the course of advertising; and
b.      when Bernstein received the fax, his right of privacy was allegedly invaded and the injury was complete.

36.      Bernstein alleges damages resulting from the alleged privacy rights violations: "Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes . . . ." **(Exhibit "D," ¶ 13)**

## BERNSTEIN'S TCPA CLAIM FALLS WITHIN GREAT NORTHERN/FEDERAL'S COVERAGE FOR "PROPERTY DAMAGE"

37.      As quoted in pertinent part above, Great Northern/Federal agreed to pay damages resulting from "property damage" caused by an "occurrence." Further, "property damage" includes "loss of use."

38.      Thus, Great Northern/Federal is legally obligated to pay damages by reason of liability imposed by law . . . for "loss of use of tangible property that is not physically injured," caused by an "occurrence."

39.      The *Bernstein* Action alleges an "occurrence" since NCMC believed that the facsimile transmissions were to persons who authorized receipt of such transmissions and liability under the TCPA attaches because the harm was not intended or expected.

40.      In the alternative, the *Bernstein* Action alleges an "occurrence" since any violative transmission was accidental due to the perceived authorization described in the preceding paragraph.

41.      The *Bernstein* Action alleges "Property damage" in the form of "loss of use" of paper, toner and ink.

## FIRST CAUSE OF ACTION

### (Breach of the Duty to Settle)

42.    NCMC incorporates by this reference each and every allegation set forth in the preceding paragraphs as if fully realleged herein.

43.    Pursuant to the policies, Great Northern and Federal agreed to defend NCMC for any claim or suit for injury or damage covered by the policies, including "advertising injury" and "property damage" liability, even if the allegations of the claims were groundless, false or fraudulent.

44.    Coextensive with the agreement to defend NCMC is the agreement that Great Northern/Federal will settle claims for amounts within the limits of the policies when NCMC faces liability exposure in excess of the policies' limits of insurance.

45.    Great Northern/Federal have refused to perform their settlement obligations under the policies, even though NCMC has fully performed all of its contractual obligations.

46.    The refusal by Great Northern/Federal is a breach of the duty to settle read into every policy of insurance, and thus a breach of the insurance contracts, the Great Northern/Federal policies.

47.    As a direct and foreseeable consequence of the breach of contract, NCMC has been damaged by having to pay for the settlement of the *Bernstein* Action.

48.    Great Northern/Federal has refused and continues to refuse to pay any portion of the $1.95 million settlement of the *Bernstein* Action, even though it has acknowledged the reasonableness of a settlement within $6 million and that Great Northern/Federal have admitted that there is a potential for coverage under the "advertising injury" coverage, at a minimum.

49.    Great Northern/Federal have breached their contracts of insurance and the duty to settle contained therein by refusing to participate in settlement negotiations and forcing NCMC to settle the *Bernstein* Action with NCMC's own money in the amount of $1,950,000.00 plus prejudgment interest.

## SECOND CAUSE OF ACTION

### (Declaratory Relief re:  Duty to Settle)

50.    NCMC incorporates by this reference each and every allegation set forth in the preceding paragraphs as if fully realleged herein.

51.    An actual controversy exists between the parties herein.  This Court has authority to issue a declaratory judgment concerning the respective rights and duties of NCMC and Great Northern/Federal.

52.    It is necessary and proper that this Court adjudicate and declare that Great Northern/Federal breached their duty to settle the *Bernstein* Action.

## PRAYER

WHEREFORE, NCMC prays for judgment against Great Northern/Federal as follows:

1.    For damages for breach of contract resulting from the breach of the duty to settle in an amount to be proven at trial;

2.    For a declaration by this Court that Great Northern/Federal breached their duty to settle the *Bernstein* Action;

3.    For prejudgment interest accrued thereon at the highest legal rate for the earliest applicable date; and

4.    For such other and further relief as may be just and proper.

NEW CENTURY MORTGAGE CORPORATION

DATED:  March 23, 2005

By One of Its Attorneys

Bart T. Murphy
Samuel S. Cohen, Esq.
WILDMAN, HARROLD, ALLEN & DIXON
225 West Wacker Drive, Suite 3000
Chicago, IL  60606-1229
Tel:  (312) 201-2000
Fax:  (312) 201-2555



OF COUNSEL:

David A. Gauntlett
Eric R. Little
M. Catherine Reid
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA  92612
Tel:      (949) 553-1010
Fax:      (949) 553-2050





**CHUBB**

## *Liability Insurance*

*Declarations*
*Coverage Summary*

**Chubb Group of Insurance Companies**
**15 Mountain View Road**
**Warren, NJ 07059**

*Named Insured and Mailing Address*

NEW CENTURY FINANCIAL CORPORATION
(SEE NAMED INSURED ENDORSEMENT)
18400 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

*Policy Number*   3539-77-36 LAO

*Effective Date*   FEBRUARY 3, 2002

*Issued by the stock insurance company
indicated below, herein called the company.*

**GREAT NORTHERN
INSURANCE COMPANY**

*Incorporated under the laws of*
*MINNESOTA*

*Producer No.*   0073101

*Producer*   FINANCIAL GUARANTY INSURANCE BROKERS INC.
709 E COLORADO BLVD #230
PASADENA, CA 91101-0000

## *Policy Period*

From:   FEBRUARY 3, 2002        To:   FEBRUARY 3, 2003
12:01 A.M. standard time at the Named Insured's mailing address shown above.

## *Foreclosure Liability Reporting Period:*

NOT APPLICABLE

## *Trust Liability Reporting Period:*

NOT APPLICABLE

## *Coverage Summary*

### *GENERAL LIABILITY*

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | $ 2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | INCLUDED IN GENERAL AGGREGATE LIMIT |
| EACH OCCURRENCE LIMIT | $ 1,000,000 |
| ADVERTISING INJURY AND PERSONAL INJURY LIMIT | $ 1,000,000 |
| MEDICAL EXPENSE LIMIT | $ 10,000 |

### *EMPLOYEE BENEFITS ERRORS OR OMISSIONS*

| | |
|---|---|
| AGGREGATE LIMIT | $ 1,000,000 |
| EACH CLAIM LIMIT | $ 1,000,000 |
| DEDUCTIBLE - EACH CLAIM | $ 1,000 |

**EXHIBIT**
**A**


***Coverage Summary***
(continued)

RETROACTIVE DATE                                          FEBRUARY 3, 2002

 **CHUBB**

*Liability Insurance*

## Schedule of Forms

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 17-02-3020 | 2-98 | GENERAL LIABILITY DECLARATIONS | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3080 | 4-95 | GENERAL LIABILITY | 02/03/02 | 04/12/02 |
| 17-02-3140 | 2-98 | CONSTRUCTION LOAN EXCLUSION | 02/03/02 | 04/12/02 |
| 17-02-3141 | 2-98 | SECURITIES AND TRADE PRACTICES EXCLUSION | 02/03/02 | 04/12/02 |
| 17-02-3308 | 4-95 | EXCLUSION - GL FORECLOSURE, TRUST, LEASING | 02/03/02 | 04/12/02 |
| 17-02-3309 | 4-95 | POLICY EXCLUSION - LEAD | 02/03/02 | 04/12/02 |
| 80-02-2393 | 2-98 | EXCLUSION - ASBESTOS | 02/03/02 | 04/12/02 |
| 80-02-2012 | 6-98 | EMPLOYEE BENEFITS ERRORS OR OMISSIONS | 02/03/02 | 04/12/02 |
| 80-02-2328 | 4-94 | CUMIS - CALIFORNIA | 02/03/02 | 04/12/02 |
| 80-02-2345 | 11-99 | EXCLUSION - EMPLOYMENT-RELATED PRACTICES | 02/03/02 | 04/12/02 |
| 80-02-2347 | 4-94 | EXCLUSION - PROFESSIONAL LIABILITY | 02/03/02 | 04/12/02 |
| 80-02-2373 | 4-94 | SCHEDULE OF LIABILITY ONLY LOCAITONS | 02/03/02 | 04/12/02 |
| 80-02-2410 | 2-98 | EXCLUSION - REAL ESTATE DEVELOPMENT | 02/03/02 | 04/12/02 |
| 80-02-2426 | 4-98 | MILLENNIUM DATE CHANGE TOTAL EXCL | 02/03/02 | 04/12/02 |

*last page*



# Liability Insurance

## General Liability

## Table Of Contents

| Section | Page No. |
|---|---|
| Who Is Insured | 3 |
| Coverage | 6 |
| Limits Of Insurance | 7 |
| Investigation, Defense And Payment Of Damages | 8 |
| Supplementary Payments | 8 |
| Coverage Territory | 9 |
| Bodily Injury/Property Damage Exclusions | 9 |
| Advertising Injury/Personal Injury Exclusions | 12 |
| Medical Expense Exclusions | 13 |
| Policy Exclusions | 14 |
| Liability Conditions | 16 |
| Definitions | 21 |



*THIS PAGE INTENTIONALLY LEFT BLANK*





**General Liability**

## Contract

Words and phrases that appear in **bold** print have special meanings and are defined in the Definitions section of this contract.

Throughout this contract the words "you" and "your" refer to the Named **Insured** shown in the Declarations of this policy, and any other person or organization qualifying as a Named **Insured** under this contract. The words "we," "us" and "our" refer to the company providing this insurance.

In addition to the Named **Insured**, other persons or organizations qualify as **insureds**. Those persons or organizations and the conditions under which they qualify are identified in the Who Is Insured section of this contract.

## Who Is Insured

**Sole Proprietorship**
If you are an individual, you and your spouse are **insureds**, but only with respect to the conduct of a business of which you are the sole owner.

**Partnership Or Joint Venture**
If you are a partnership or joint venture, you are an **insured**. Your members, your partners, and their spouses are also **insureds**, but only with respect to the conduct of your business.

**Other Organizations**
If you are an organization other than a partnership, joint venture or limited liability company, you are an **insured**. Your **executive officers** and directors are **insureds**, but only with respect to their duties as your officers or directors. Your stockholders are also **insureds**, but only with respect to their liability as stockholders.

**Employees**
Your **employees**, other than your **executive officers**, are **insureds**, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

No **employee** is an **insured** for:

A.  **bodily injury** or **personal injury**:

    1.   to you, your partners or members (if you are a partnership, joint venture or limited liability company), or to a co-**employee** while in the course of his or her employment or while performing duties related to the conduct of your business;

    2.   to the spouse, child, parent, brother or sister of that co-**employee** as a consequence of paragraph A.1. above; or

    3.   for which there is any obligation to share damages with or repay someone else who must pay damages because of an injury described in A.1. or A.2. above.

Paragraphs A.1., A.2., and A.3. do not apply to officers or supervisors.

B.  **property damage** to property owned or occupied by or rented or loaned to that **employee**, any of your other **employees**, or any of your partners or members (if you are a partnership, joint venture or limited liability company).

 
## Who Is Insured
(continued)

**Volunteer Workers**    Your volunteer workers (at your option) are **insureds**.

**Real Estate Manager**    Any person (other than your **employee**) or any organization while acting as your real estate manager are **insureds**, but only if you are contractually obligated to include them as **insureds** under this contract.

**Custodian**    Any person or organization having proper temporary custody of your property if you die are **insureds**, but only with respect to the maintenance or use of that property until your legal representative has been appointed.

**Legal Representative**    Your legal representative is an **insured**, if you die. That representative will have all of your rights and duties, but is an **insured** only with respect to his duties as your legal representative.

**Permissive User Of Mobile Equipment**    With respect to **mobile equipment** registered in your name under any motor vehicle registration law:

- any person is an **insured** while driving such equipment along a public highway with your permission; and

- any other person or organization responsible for the conduct of such person is also an **insured**, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability.

No person or organization is an **insured** with respect to:

- **bodily injury** to a co-**employee** of the person driving the equipment; or

- **property damage** to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an **insured** under this provision.

**Vendors**    Any vendor is an **insured**, but only with respect to **bodily injury** or **property damage** arising out of the distribution or sale of **your products** in the regular course of that vendor's business and only if products/completed operations coverage is provided under this contract.

No vendor is an **insured** with respect to:

- **bodily injury** or **property damage** for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

- any express warranty unauthorized by you;

- any physical or chemical change in **your products** made intentionally by the vendor;

- repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer and then repacked in the original container;

  

**CHUBB**                    *General Liability*

## Who Is Insured

**Vendors**
**(continued)**

- demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of **your products**;

- **your products** which after distribution or sale-by you have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance, by or for the vendor;

- any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of **your products**;

- any of **your products** or completed operations contained within the **products–completed operations hazard** which have been excluded from this insurance; or

- any **occurrence** which takes place after the contract with the vendor expires or the end of the policy period, whichever comes first.

This insurance does not apply to any person or organization, as **insured**, from whom you have acquired **your products** or any ingredient, part or container, entering into, accompanying or containing **your products**.

---

**Lessors Of Premises**

Any lessor of leased premises is an **insured**, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and only if you are contractually obligated to provide such coverage as is afforded by this contract.

No lessor is an **insured** with respect to:

- any **occurrence** which takes place after you cease to be a tenant in the premises or the end of the policy period, whichever comes first;

- structural alterations, new construction, or demolition operations performed by or on behalf of the lessor; or

- **bodily injury, property damage, advertising injury**, or **personal injury** arising out of the sole negligence of the lessor.

---

**Lessors Of Leased**
**Equipment**

Any lessor of equipment leased to you is an **insured**, but only with respect to **bodily injury** or **property damage** arising out of the maintenance, operation or use by you of the equipment and only if you are contractually obligated to provide such coverage as is afforded by this contract.

No lessor is an **insured** with respect to:

- any **occurrence** which takes place after any equipment lease expires or the end of the policy period, whichever comes first; or

- **bodily injury** or **property damage** arising out of the sole negligence of the lessor.

---

**Subsidiaries Or Newly**
**Acquired Or Formed**
**Organizations**

If there is no other similar insurance available, the following will qualify to be a named **insured**:

- any financially controlled subsidiary of yours; or

 
## Who Is Insured

*Subsidiaries Or Newly*
*Acquired Or Formed*
*Organizations*
*(continued)*

- any organization you newly acquired or formed during the policy period, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest. This coverage is effective on the acquisition or formation date and is afforded only until the end of the policy period during which the acquisition or formation took place.

No subsidiary or newly acquired or formed organization is an **insured** with respect to:

- **bodily injury** or **property damage** that occurred before you acquired or formed the organization; or

- **advertising injury** or **personal injury** arising out of an offense committed before you acquired or formed the organization.

*Limitation On Who Is*
*Insured*

No one is an **insured** for the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named **insured** in the Declarations.

## Coverage

*Bodily Injury, Property*
*Damage, Advertising*
*Injury, And Personal Injury*

Subject to the applicable Limits of Insurance, we will pay damages the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** for:

- **bodily injury** or **property damage** to which this insurance applies caused by an **occurrence**; or

- **advertising injury** or **personal injury** to which this insurance applies caused by an offense.

This includes **bodily injury, property damage, advertising injury** or **personal injury** involving:

- automated teller machines;

- **foreclosed property;**

- property in any trust, guardianship or estate for which you are acting in a fiduciary or representative capacity; and

- property which you own and lease to others, when specific insurance, which would customarily protect your interest and which you require your lessees to carry, is non-existent, invalid, insufficient or uncollectible.

This insurance applies to:

- **bodily injury** or **property damage** which occurs during the policy period; and

- **advertising injury** or **personal injury** caused by an offense committed during the policy period.

Damages for **bodily injury** include damages claimed by any person or organization for care or loss of services resulting at any time from the **bodily injury**.

*Medical Expense*

Subject to the applicable Limits Of Insurance, we will pay each person who sustains **bodily injury** caused by an accident all **medical expenses** incurred and reported to us within three years from the date of the accident.



**General Liability**

---

## Coverage

**Medical Expense**
**(continued)**

The accident must take place during the policy period and the **bodily injury** must arise out of premises or operations for which you are afforded **bodily injury** liability coverage under this contract. The injured person must submit to examination, at our expense, by physicians of our choice as often as we reasonably require.

---

### Limits Of Insurance

The Limits Of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

*   **insureds;**

*   claims made or **suits** brought; or

*   persons or organizations making claims or bringing **suits.**

The Limits Of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

---

**General Aggregate Limit**

Subject to the Each Occurrence Limit and the Advertising Injury And Personal Injury Limit, the General Aggregate Limit is the most we will pay for the sum of:

*   damages under **bodily injury** and **property damage** coverage, except damages because of **bodily injury** and property damage included in the **products-completed operations hazard;**

*   damages under **advertising injury** and **personal injury** coverage; and

*   **medical expenses** under Medical Expense coverage.

---

**Products-Completed**
**Operations Aggregate Limit**

Subject to the Each Occurrence Limit, the Products-Completed Operations Aggregate Limit is the most we will pay for damages under **bodily injury** and **property damage** coverage included in the **products-completed operations hazard.**

---

**Advertising Injury And**
**Personal Injury Limit**

The Advertising Injury And Personal Injury Limit is the most we will pay under **advertising injury** and **personal injury** coverage for the sum of all damages involving the same oral or written publication of material, or the same act, regardless of the frequency or repetition thereof, the number or kind of media used, and the number of claimants.

Any amount paid for damages arising out of an offense will reduce the amount of the applicable Aggregate Limit available for payment of damages arising out of any other offense.

If the applicable Aggregate Limit has been reduced by payment of damages to an amount that is less than the Advertising Injury And Personal Injury Limit stated in the Declarations, the remaining Aggregate Limit is the most that will be available for payment of damages arising out of any other offense.

---




## Limits Of Insurance
(continued)

**Each Occurrence Limit**

The Each Occurrence Limit is the most we will pay for the sum of:

- damages under **bodily injury** and **property damage** coverage; and

- **medical expenses** under Medical Expense coverage

because of all **bodily injury** and **property damage** arising out of any one **occurrence**.

Any amount paid for damages arising out of an **occurrence** will reduce the amount of the applicable Aggregate Limit available for payment of damages arising out of any other **occurrence**.

If the applicable Aggregate Limit has been reduced by payment of damages to an amount that is less than the Each Occurrence Limit stated in the Declarations, the remaining Aggregate Limit is the most that will be available for payment of damages arising out of any other **occurrence**.

**Medical Expense Limit**

Subject to the Each Occurrence Limit described above, the Medical Expense Limit is the most we will pay under Medical Expense coverage for all **medical expense** because of **bodily injury** sustained by one person.

**Investigation, Defense And Payment Of Damages**

We will have the right and duty to defend any **insured** against a **suit** seeking damages for **bodily injury**, **property damage**, **advertising injury**, or **personal injury**. However, we will have no duty to defend any **insured** against a **suit** seeking damages to which this insurance does not apply. We may at our discretion investigate any **occurrence** or offense and settle any claim or **suit** that may result.

The amount we will pay for damages is limited as described in Limits Of Insurance. Our right and duty to defend end when we have used up the applicable Limit Of Insurance in the payment of judgments or settlements under **bodily injury**, **property damage**, **advertising injury**, **personal injury** or **medical expense**.

We have no further obligation or liability to pay sums or perform acts or services unless explicitly provided for under Supplementary Payments shown below.

**Supplementary Payments**

We will pay, with respect to any claim we investigate or settle, or any **suit** against an **insured** we defend:

- all expenses we incur;

- up to $2000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the **bodily injury** liability coverage applies. We do not have to furnish these bonds;

- the premium amount of bonds to release attachments, but only for premium amounts within the amount of insurance available. We do not have to furnish these bonds;

- reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of the claim or **suit**, including actual loss of earnings up to $300 a day because of time off from work;

- costs taxed against the **insured** in the **suit**;

- prejudgment interest awarded against the **insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit Of Insurance, we will not pay any prejudgment interest based on that period of time after the offer; and



### General Liability

**Supplementary Payments**
*(continued)*

- all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit Of Insurance.

These payments will not reduce the Limits Of Insurance.

---

**Coverage Territory**

This insurance applies anywhere. However, the **insured**'s responsibility to pay damages must be determined in a **suit** on the merits, in the United States of America, its territories or possessions, Canada or Puerto Rico, or in a settlement we agree to.

---

**Bodily Injury/Property Damage Exclusions**

None of the following exclusions, except Contractual Liability and Expected or Intended Injury, apply to damage to premises rented to you.

*Aircraft, Auto, Rolling Stock Or Watercraft*

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use, operation, **loading or unloading**, or entrustment to others of any:

- aircraft;
- **auto**;
- rolling stock; or
- watercraft

which any **insured** owns, operates, rents or borrows.

This exclusion does not apply to:

A.  watercraft on land at your premises;

B.  watercraft that you do not own that is:

  1.  less than 55 feet long; and

  2.  not being used to carry persons or property for a charge;

C.  parking an **auto** on, or on the ways next to, premises you own or rent, provided the **auto** is not owned by or rented or loaned to you or the **insured**;

D.  liability assumed under any **insured contract** for the ownership, maintenance, or use of aircraft, or watercraft;

E.  **bodily injury** or **property damage** arising out of the operation of any of the equipment listed in paragraph F.2. or F.3. of the definition of **mobile equipment**; or

F.  aircraft you do not own, provided:

  1.  the pilot in command holds a currently effective certificate, issued by the duly constituted authority of the United States of America or Canada, designating him or her a commercial or airline transport pilot;

  2.  it is rented with a trained, paid crew; and

  3.  it is not being used to carry persons or property for a charge.

---

*Contractual Liability*

This insurance does not apply to **bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

---




**Bodily Injury/Property Damage Exclusions**

**Contractual Liability (continued)**

This exclusion does not apply to liability for damages:

- that the insured would have in the absence of the contract or agreement; or

- assumed in an oral or written contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. When a claim for such **bodily injury** or **property damage** is made, we will defend that claim provided the **insured** has assumed the obligation to defend such claim in the **insured contract**. Such defense payments will not reduce the Limits of Insurance.

**Damage To Impaired Property**

This insurance does not apply to **property damage** to **impaired property** or property that has not been physically injured arising out of:

- a defect, deficiency, inadequacy, or dangerous condition in **your product** or **your work**; or

- a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

**Damage To Property Of Others (Care, Custody Or Control)**

This insurance does not apply to **property damage** to:

- personal property of others you rent;

- property of others you hold for sale or entrusted to you for storage or safekeeping;

- property of others on your premises for the purpose of having operations performed on such property by you or on your behalf;

- tools or equipment of others while being used by you in performing your operations; or

- property of others in your custody which you will be installing, erecting, or using in construction.

This exclusion does not apply to liability assumed under a sidetrack agreement.

**Damage To Your Product**

This insurance does not apply to **property damage** to **your product** arising out of it or any part of it.

**Damage To Your Work**

This insurance does not apply to **property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**Employer's Liability**

This insurance does not apply to **bodily injury** to:

A.    an **employee** of the **insured** arising out of and in the course of:

    1.    employment by the **insured**; or

    2.    performing duties related to the conduct of the **insured**'s business; or



*General Liability*

## Bodily Injury/Property Damage Exclusions

**Employer's Liability**
(continued)

B.    the spouse, child, parent, brother or sister of that employee as a consequence of A. above.

This exclusion applies:

- whether the **insured** may be liable as an employer or in any other capacity; and
- to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the **insured** under an **insured contract.**

---

**Expected Or Intended Injury**

This insurance does not apply to **bodily injury** or **property damage** which results from an act that:

- is intended by the insured; or
- can be expected from the standpoint of a reasonable person

to cause **bodily injury** or **property damage**, even if the injury or damage is of a different degree or type than actually intended or expected.

This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

---

**Liquor Liability**

This insurance does not apply to **bodily injury** or **property damage** for which any **insured** may be held liable by reason of:

- causing or contributing to the intoxication of any person;
- the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
- any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

---

**Product Recall**

This insurance does not apply to **bodily injury** or **property damage** claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

- **your product;**
- **your work;** or
- **impaired property**

if such product, work, or property is withdrawn or recalled from the market or from use by **any** person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

---

 

## Bodily Injury/Property Damage Exclusions
(continued)

| | |
|---|---|
| **Property Formerly Owned** | This insurance does not apply to **property damage** to premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises.<br><br>This exclusion does not apply if the premises are **your work** and were never occupied, rented, or held for rental by you. |
| **Property Owned** | This insurance does not apply to **property damage** to property you own. |
| **Transportation Of Mobile Equipment** | This insurance does not apply to **bodily injury** or **property damage** arising out of the transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any **insured.** |
| **Workers' Compensation And Similar Laws** | This insurance does not apply to any obligation of the **insured** under a workers compensation, disability benefits or unemployment compensation law or any similar law. |

## Advertising Injury/ Personal Injury Exclusions

| | |
|---|---|
| **Advertising, Broadcasting, Publishing, Telecasting or Telemarketing Business** | This insurance does not apply to **advertising injury** or **personal injury** arising out of an offense committed by an **insured** whose business is advertising, broadcasting, publishing, telecasting or telemarketing.<br><br>This exclusion does not apply to offenses A, B, or C, under the definition of **personal injury.** |
| **Breach Of Contract** | This insurance does not apply to **advertising injury** arising out of breach of contract. |
| **Contractual Liability** | This insurance does not apply to **advertising injury** or **personal injury** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.<br><br>This exclusion does not apply to liability for damages:<br><br>• that the **insured** would have in the absence of the contract or agreement; or<br><br>• assumed in a written contract or agreement that is an **insured contract**, provided the **advertising injury** or **personal injury** results from an offense committed subsequent to the execution of the contract or agreement. When a claim for such **advertising injury** or **personal injury** is made, we will defend that claim provided the **insured** has assumed the obligation to defend such claim in the **insured contract**. Such defense payments will not reduce the Limits of Insurance. |




**General Liability**

## Advertising Injury/
## Personal Injury
## Exclusions
(continued)

| | |
|---|---|
| *Failure To Conform To Advertising* | This insurance does not apply to **advertising injury** arising out of the failure of goods, products or services to conform with advertised quality or performance. |
| *Intentional Falsehoods* | This insurance does not apply to **advertising injury** or **personal injury** arising out of oral or written publication of material if done by or at the direction of the **insured** with knowledge of its falsity. |
| *Prior Acts* | This insurance does not apply to **advertising injury** or **personal injury** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. |
| *Willful Violations* | This insurance does not apply to **advertising injury** or **personal injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the **insured.** |
| *Wrong Description* | This insurance does not apply to **advertising injury** arising out of the wrong description of the price of goods, products or services. |

## Medical Expense
## Exclusions

| | |
|---|---|
| *Athletic Activities* | This insurance does not apply to **medical expense** for **bodily injury** to any person taking part in athletics. |
| *Injury To An Insured* | This insurance does not apply to **medical expense** for **bodily injury** to any **insured.** |
| *Products-Completed Operations* | This insurance does not apply to **medical expense** for **bodily injury** included within the **products-completed operations hazard.** |
| *Workers' Compensation And Similar Laws* | This insurance does not apply to **medical expense** for **bodily injury** to a person, whether or not an **employee** of any **insured**, if benefits for the **bodily injury** are payable or must be provided under a workers' compensation or disability benefits law or a similar law. |




## Policy Exclusions

**Financial Instruments**   This insurance does not apply to loss of use of **financial instruments** that have not been physically injured.

**Insurance And Related Operations**   This insurance does not apply to **bodily injury**, **property damage**, **advertising injury**, or **personal injury** arising out of, or directly or indirectly related to:

    A.   any obligation assumed by any **insured** or the failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise, with respect to any:

        1.   contract or treaty of insurance, self-insurance, reinsurance or suretyship;

        2.   annuity;

        3.   endowment; or

        4.   benefit plan,

        including any applications, endorsements, amendments, receipts, or binders;

    B.   membership or participation in, contribution to, or management of any plan, pool, association, insolvency or guarantee fund, or any other similar fund, organization or association, whether voluntary or involuntary; or

    C.   advising, reporting or making recommendations, or the failure to do any of the foregoing, in the **insured's** capacity as an insurance company, insurance broker or agent, insurance consultant or insurance representative.

**Intellectual Property**   This insurance does not apply to **bodily injury**, **property damage**, **advertising injury** or **personal injury** arising out of, or directly or indirectly related to, the actual or alleged publication or utterances of oral or written statements, whether made in **advertising** or otherwise, which are claimed as an infringement, violation or defense of any of the following rights or laws:

    •   copyright, other than infringement of copyrighted advertising materials;

    •   patent;

    •   trade dress;

    •   trade secrets; or

    •   trademark or service mark or certification mark or collective mark or trade name, other than trademarked or service marked titles or slogans.

**Nuclear Energy**   A.   This insurance does not apply to **bodily injury**, **nuclear property damage**, **advertising injury** or **personal injury**:

        1.   with respect to which an **insured** under the policy is also an **insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or





**CHUBB**

*General Liability*

## Policy Exclusions

**Nuclear Energy**
**(continued)**

2.   resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.   Under any Medical Expense coverage, this insurance does not apply to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

C.   This insurance does not apply to **bodily injury, nuclear property damage, advertising injury, or personal injury** resulting from the **hazardous properties** of **nuclear material**, if:

1.   the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (b) has been discharged or dispersed therefrom;

2.   the **nuclear material** is contained in **spent fuel** or **nuclear waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

3.   the **bodily injury, nuclear property damage, advertising injury** or **personal injury** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion 3. applies only to **nuclear property damage** to such **nuclear facility** and any property therein.

**Pollution**

A.   This insurance does not apply to **bodily injury, property damage, advertising injury,** or **personal injury** arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**:

1.   at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**;

2.   at or from any premises, site or location to which any **insured** has perfected their right to possession, or which was at any time acquired by foreclosure, repossession or deed in lieu of foreclosure by any **insured**;

3.   at or from any premises in any trust, guardianship or estate for which any **insured** is currently, or did act in a fiduciary or representative capacity;

4.   at or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

5.   which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom you may be legally responsible; or

6.   at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

a.   if the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

 

## Policy Exclusions

*Pollution
(continued)*

    b.    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants**.

Subparagraphs A.1. and A.6.a. do not apply to **bodily injury**, **property damage**, **advertising injury**, or **personal injury** arising out of heat, smoke or fumes from a **hostile fire**.

B.    This insurance does not apply to any loss, cost or expense arising out of any

    1.    request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

    2.    claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing or in any way responding to, or assessing the effects of **pollutants**.

This exclusion does not apply to damage to premises rented to you caused by fire, explosion, smoke or leakage from fire protective equipment.

## Liability Conditions

*Arbitration*

We are entitled to exercise all of the **insured's** rights in the choice of arbitrators and the conduct of any arbitration proceeding, except when the proceeding is between us and the **insured**.

*Bankruptcy*

Bankruptcy or insolvency of the **insured** or the **insured's** estate will not relieve us of any obligation to which this insurance applies.

*Duties In The Event Of
Occurrence, Offense,
Claim Or Suit*

A.    You must see to it that we are notified as soon as practicable of an **occurrence** or an offense which may result in a claim.  To the extent possible, notice should include:

    1.    how, when and where the **occurrence** or offense took place;

    2.    the names and addresses of any injured persons and witnesses; and

    3.    the nature and location of any injury or damage arising out of the **occurrence** or offense.

B.    If a claim is made or **suit** is brought against any **insured**, you must:

    1.    immediately record the specifics of the claim or **suit** and the date received; and

    2.    notify us in writing as soon as practicable.

C.    You and any other involved **insured** must:

    1.    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

    2.    authorize us to obtain records and other information;

    3.    cooperate with us in the:

        a.    investigation or settlement of the claim; or

        b.    defense of the **suit**; and

  

**General Liability**

CHUBB

## Liability Conditions

**Duties In The Event Of Occurrence, Offense, Claim Or Suit (continued)**

4.   assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance may also apply.

D.   No **insureds** will, except at that **insured's** own cost, make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

E.   Notice given by or on behalf of:

1.   the **insured**;

2.   the injured person; or

3.   any other claimant

to any licensed agent of ours with particulars sufficient to identify the **insured** shall be deemed notice to us.

F.   Knowledge of an **occurrence** or offense by any agent or **employee** of the **insured** will not constitute knowledge by the **insured**, unless an officer or his designee receives such notice from its agent or **employee**.

G.   Failure of an agent or **employee** of the **insured**, other than an officer or his designee, to notify us of any **occurrence** or offense which he knows about will not affect the insurance afforded you by this contract.

H.   If the **insured** reports any **occurrence** or offense as a Workers Compensation claim which later develops into a liability claim, the failure to report such **occurrence** or offense to us will not violate this provision provided the **insured** gives us immediate notice as soon as they are made aware of the fact that the **occurrence** or offense is a claim under this contract.

**Legal Action Against Us**

No person or organization has a right under this insurance:

*   to join us as a party or otherwise bring us into a **suit** asking for damages from an **insured**; or

*   to sue us on this insurance unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an **agreed settlement** or on a final judgment against an **insured** obtained after:

*   an actual trial in a civil proceeding;

*   an arbitration proceeding; or

*   an alternative dispute resolution proceeding,

but we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the applicable Limits of Insurance.

**Other Insurance**

If other valid and collectible insurance is available to the **insured** for a loss we cover under **bodily injury, property damage, advertising injury** or **personal injury** coverage of this insurance, our obligations are limited as follows:

*Primary Insurance*

This insurance is primary except when the Excess Insurance provision described below applies.



## *Liability Conditions*

*Other Insurance*
*(continued)*

If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in the Method of Sharing provision described below.

### *Excess Insurance*

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

A.    that is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for **your work;**

B.    that is Fire insurance for premises rented to you;

C.    if the loss arises out of the maintenance or use of aircraft, **autos** or watercraft to the extent not subject to the Aircraft, Auto Or Watercraft exclusion; or

D.    that is valid and collectible **bodily injury, property damage, advertising injury,** or **personal injury** insurance:

    1.    provided you by anyone working under contract for you; or

    2.    provided by another party's policy to which you have been added as an additional insured.

When this insurance is excess, we will have no duty under **bodily injury, property damage, advertising injury** or **personal injury** coverages to defend any **insured** against a suit that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the **insured's** rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

•    the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

•    the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not purchased specifically to apply in excess of the Limits Of Insurance shown in the Declarations of this insurance.

### *Method of Sharing*

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this method each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

  

**CHUBB**

*General Liability*

---

## Liability Conditions
*(continued)*

*Premium Audit*

We will compute all premiums for this insurance in accordance with our rules and rates.

In accordance with the Estimated Premiums section of the Premium Summary, premiums identified by an asterisk are estimated premiums and are subject to audit. In addition to or in lieu of such designation in the Premium Summary, premiums may be designated as estimated premiums in the Liability Insurance Section of this policy. In that event, these premiums will also be subject to audit and the second paragraph of the Estimated Premiums section of the Premium Summary will apply.

*Separation Of Insureds*

Except with respect to the Limits Of Insurance and any rights or duties specifically assigned in this insurance to the first named **insured**, this insurance applies:

- as if each named **insured** were the only named **insured**; and

- separately to each **insured** against whom claim is made or **suit** is brought.

*Transfer Of Rights Of Recovery*

If the **insured** has rights to recover all or part of any payment we have made under this insurance, those rights are transferred to us. The **insured** must do nothing after loss to impair them. At our request, the **insured** will bring **suit** or transfer those rights to us and help us enforce them.

This condition does not apply to **medical expense**.

---

THIS PAGE INTENTIONALLY LEFT BLANK

**CHUBB**

## *General Liability*

| | |
|---|---|
| *Definitions* | **WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT:** |
| *Advertising* | **Advertising** means any advertisement, publicity article, broadcast or telecast. |
| *Advertising Injury* | **Advertising injury** means injury, other than **bodily injury** or **personal injury**, arising solely out of one or more of the following offenses committed in the course of **advertising** your goods, products or services: |

- oral or written publication of material that slanders or libels a person or organization;

- oral or written publication of advertising material that violates a person's right of privacy; or

- infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.

| | |
|---|---|
| *Agreed Settlement* | **Agreed settlement** means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative. |
| *Auto* | **Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment.** |
| *Bodily Injury* | **Bodily injury** means physical: |

- injury,

- sickness, or

- disease

sustained by a person and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

| | |
|---|---|
| *Customer* | **Customer** means a person, corporation, partnership or other entity which: |

- is applying for, or requesting, your products or services;

- has applied for, or has requested, your products or services;

- is presently using your products or services; or

- has used your products or services,

and who makes a claim or brings a **suit** which arises out of, or is directly or indirectly related to, any of the above.

| | |
|---|---|
| *Employee* | **Employee** includes a **leased worker** but does not include a **temporary worker.** |



| **Definitions**<br>(continued) | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT: |
|---|---|

**Executive Officer**
Executive officer means a person holding any of the officer positions created by your charter, constitution or by-laws.

**Financial Instruments**
Financial instruments means the following tangible property:

- currency, coins, bank notes, and bullion;
- travelers checks, registered checks, food stamps, and money orders held for sale to the public;
- all negotiable and non-negotiable instruments or contracts that represent either money or other property held by you in any capacity;
- revenue and other stamps in current use, tickets and tokens;
- property of others that you hold as a pledge or as collateral for a loan;
- commodities, jewelry, precious and semi-precious stones and precious metals in any form;
- insurance policies; and
- certificates of origin or title, deeds, mortgages and abstracts of title.

**Foreclosed Property**
Foreclosed property means property to which you have perfected your right to possession, or to which you have been given the deed or title, because the property was security for a loan you owned or serviced and there was a default on that loan.

**Hazardous Properties**
Hazardous properties includes radioactive, toxic or explosive properties.

**Hostile Fire**
Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**Impaired Property**
Impaired property means tangible property, other than your product or your work, that cannot be used or is less useful because:

- it incorporates your product or your work that is known or thought to be defective, deficient, inadequate, or dangerous; or
- you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

- the repair, replacement, adjustment, or removal of your product or your work; or
- your fulfilling the terms of the contract or agreement.

**Insured**
Insured means any person or organization qualifying as an insured under the Who Is Insured provision and against whom claim is made or suit is brought.



*General Liability*

---

**Definitions**
(continued)

WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT:

*Insured Contract*

Insured contract means:

- a lease of premises;

- a sidetrack agreement;

- an easement or license agreement;

- an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

- an elevator maintenance agreement;

- that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury, property damage, advertising injury,** or **personal injury** to a third person or organization.

An **insured contract** does not include that part of any contract or agreement that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

- preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

- giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

*Leased Worker*

**Leased worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. **Leased worker** does not include a **temporary worker.**

*Loading Or Unloading*

**Loading or unloading** means the handling of property;

- after it is moved from the place where it is accepted for movement into or onto an aircraft, **auto** or watercraft;

- while it is in or on an aircraft, **auto** or watercraft; or

- while it is being moved from an aircraft, **auto** or watercraft to the place where it is finally delivered.

**Loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, **auto** or watercraft.

*Medical Expense*

**Medical expense** means reasonable expenses for:

- first aid administered at the time of an accident;

- necessary medical, surgical, x-ray, and dental services, including prosthetic devices; and

- necessary ambulance, hospital, professional nursing and funeral services.

---


**Definitions**
(continued)

WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT:

*Mobile Equipment*

**Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

A.    bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

B.    vehicles maintained for use solely on or next to premises you own or rent;

C.    vehicles that travel on crawler treads;

D.    vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    1.    power cranes, shovels, loaders, diggers or drills; or

    2.    road construction or resurfacing equipment such as graders, scrapers or rollers;

E.    vehicles not described in A., B., C. or D. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    1.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    2.    cherry pickers and similar devices used to raise or lower workers; and

F.    vehicles not described in A., B., C. or D. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

    1.    equipment designed primarily for:

        a.    snow removal;

        b.    road maintenance, but not construction or resurfacing;

        c.    street cleaning;

    2.    cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    3.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

*Nuclear Facility*

**Nuclear facility** means:

A.    any **nuclear reactor**;

B.    any equipment or device designed or used for:

    1.    separating the isotopes of uranium or plutonium;

    2.    processing or utilizing **spent fuel**; or

    3.    handling, processing or packaging **nuclear waste**;

C.    any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;







*General Liability*

| | |
|---|---|
| *Definitions* | **WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT:** |
| *Nuclear Facility (continued)* | D.    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **nuclear waste,**<br><br>and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations. |
| *Nuclear Material* | **Nuclear material** means **source material, special nuclear material** or **by-product material.** |
| *Nuclear Property Damage* | **Nuclear property damage** means property damage including all forms of radioactive contamination of property. |
| *Nuclear Reactor* | **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. |
| *Nuclear Waste* | **Nuclear waste** means any waste material:<br><br>A.    containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and<br><br>B.    resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph A. or B. |
| *Occurrence* | **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. |
| *Personal Injury* | **Personal injury** means injury, other than **bodily injury,** arising out of one or more of the acts listed below, other than your **advertising** activities:<br><br>A.    false arrest, detention or imprisonment;<br><br>B.    malicious prosecution (unless insurance thereof is prohibited by law), except when it arises out of, or is directly or indirectly related to:<br><br>    1.    the restructure, termination, transfer or collection of any loan, lease or extension of credit; or<br><br>    2.    the repossession or foreclosure of property which is security for any loan, lease or extension of credit;<br><br>C.    the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, unless the person or persons are mortgagors of yours or of anyone for whom you are servicing mortgages, by or on behalf of you, its owner, landlord or lessor;<br><br>D.    oral or written publication of material that slanders or libels a person or organization, except when alleged, charged or suffered by any customer; |

 
| Definitions | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT: |
|---|---|

**Personal Injury**
(continued)

E. oral or written publication of material that violates a person's right of privacy, except when alleged, charged or suffered by any **customer**; or

F. discrimination (unless insurance thereof is prohibited by law) based on race, color, religion, sex, age or national origin, except when alleged, charged or suffered by any:

    1. applicant for employment;

    2. present or former **employee**;

    3. prospective **employee**; or

    4. **customer**.

---

**Pollutants**

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be disposed of, recycled, reconditioned or reclaimed.

---

**Products-Completed Operations Hazard**

A. **Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:

    1. products that are still in your physical possession; or

    2. work that has not yet been completed or abandoned.

B. **Your work** will be deemed completed at the earliest of the following times:

    1. when all of the work called for in your contract has been completed;

    2. when all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

    3. when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

C. This hazard does not include **bodily injury** or **property damage** arising out of:

    1. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the **loading or unloading** of it;

    2. the existence of tools, uninstalled equipment or abandoned or unused materials; or

    3. products or operations for which the classification in our manual rules includes products or completed operations.

---

**Property Damage**

**Property damage** means:

    • physical injury to tangible property including the resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or





### General Liability

| Definitions | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT: |
|---|---|
| **Property Damage** (continued) | • loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it. |
| **Source Material, Special Nuclear Material, And By-Product Material** | **Source material, special nuclear material,** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof. |
| **Spent Fuel** | **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor.** |
| **Suit** | **Suit** means a civil proceeding in which damages because of **bodily injury, property damage, advertising injury** or **personal injury** to which this insurance applies are alleged. **Suit** also includes:<br><br>• an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or<br><br>• any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with our consent. |
| **Temporary Worker** | **Temporary worker** means a person who is furnished to you for a finite time period to support or supplement your work force in special work situations such as **employee** absences, temporary skill shortages and seasonal workloads. |
| **Your Product** | **Your product** means:<br><br>A.   any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:<br><br>1.   you;<br>2.   others trading under your name; or<br>3.   a person or organization whose business or assets you have acquired; and<br><br>B.   containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.<br><br>**Your product** includes:<br><br>• warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and<br><br>• the providing of or failure to provide warnings or instructions.<br><br>**Your product** does not include vending machines or other property rented to or located for the use of others but not sold. |
| **Your Work** | **Your work** means:<br><br>• work or operations performed by you or on your behalf; and<br><br>• materials, parts or equipment furnished in connection with such work or operations. |



| Definitions | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT: |
|---|---|

**Your Work**
**(continued)**

**Your work** includes:

- warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and
- the providing of or failure to provide warnings or instructions.



*Liability Insurance Section*

*Endorsements*

  

**CHUBB**

### *Liability Insurance*

### *Endorsement*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Policy Exclusions, the following exclusion is added:

## *Policy Exclusions*

*Asbestos*

A.   This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **asbestos**.

B.   This insurance does not apply to any loss, cost or expense arising out of any:

1.   request, demand or order that any **insured** or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **asbestos**; or

2.   claim or **suit** by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning-up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **asbestos**.



Under Definitions, the following definition is added:

**Definitions**

*Asbestos*

**Asbestos** means asbestos in any form, including its use or presence in any alloy, compound, by-product, or other material or waste. Waste includes material to be disposed of, recycled, reconditioned or reclaimed.

All other terms and conditions remain unchanged.

Authorized Representative






**Liability Insurance**

## Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION<br>(SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

### Policy Exclusions

Under Policy Exclusions, the following exclusion is added:

*Millennium Date Change*

This insurance does not apply to **bodily injury** , **property damage** , **advertising injury** , or **personal injury** arising out of:

A.    the actual or potential inability of any:

- hardware, software, operating system, network, microprocessor;

- other computer, data processing or communications system equipment or component; or

- other system, equipment or component that communicates with any of the foregoing,

to accept, retrieve, recognize, understand, interpret, identify, distinguish, process, communicate or otherwise use:

- any date subsequent to December 31, 1999; or

- information or code which contains dates subsequent to December 31, 1999; or

B.    the rendering of, or failure to render, any service or advice in connection with paragraph A. above.



***Liability Endorsement***
(continued)

All other terms and conditions remain unchanged.

Authorized Representative



 

*Liability Insurance*

CHUBB

### Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Policy Exclusions, the following exclusion is added:

**Policy Exclusions**

*Employment-Related Practices*

This insurance does not apply to any damages sustained:

A.  by any person at any time, whether or not sustained in the course of employment by any **insured**, which would not have been incurred in whole or in part but for any one or more employment-related acts, omissions, policies, practices, representations or relationships in connection with any **insured**, occurring in whole or in part at any time, including any:

    1.    arrest, detention or imprisonment;

    2.    breach of any express or implied covenant;

    3.    coercion, criticism, humiliation, prosecution or retaliation;

    4.    defamation or disparagement;

    5.    demotion, discipline, evaluation or reassignment;

    6.    discrimination, harassment or segregation;

    7.    a.    eviction; or

          b.    invasion or other violation of any right of occupancy;

    8.    failure or refusal to advance, compensate, employ or promote;



# Policy Exclusions

**Employment-Related Practices (continued)**

9. invasion or other violation of any right of privacy;

10. termination of employment; or

11. other employment-related act, omission, policy, practice, representation or relationship in connection with any **insured** at any time;

B. as a consequence of any of the foregoing.

This exclusion applies:

- whether the **insured** may be liable as an employer or in any other capacity; and

- to any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

All other terms and conditions remain unchanged.

Authorized Representative _____ Robert Hamburger

Liability Insurance

Form 80-02-2345 (Rev. 11-99)

Exclusion – Employment-Related Practices

Endorsement

last page

Page 2



## *Liability Insurance*

### *Endorsement*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

---

**Bodily Injury/Property Damage Exclusions**

Under Bodily Injury/Property Damage Exclusions, the following exclusion is added:

**Construction Loan**

This insurance does not apply to:

A.  **property damage** to any building:

    1.  which is security for a loan held by the **insured** and which the **insured** or others made in connection with its construction; or

    2.  for which the **insured** has otherwise financed its construction; or

B.  **bodily injury** or **property damage** arising out of the **insured's** liability as a construction lender.

All other terms and conditions remain unchanged.

Authorized Representative     *Robert Hamburger*



 

**Liability Insurance**

## Endorsement

| | |
|---|---|
| Policy Period | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| Effective Date | FEBRUARY 3, 2002 |
| Policy Number | 3539-77-36 LAO |
| Insured | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| Name of Company | GREAT NORTHERN INSURANCE COMPANY |
| Date Issued | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY
EMPLOYEE BENEFITS ERRORS OR OMISSIONS

**Investigation, Defense And Payment Of Damages**

Under Investigation, Defense And Payment Of Damages, the following provisions are added:

With respect to any claim for damages arising out of your California operations:

A.   If a conflict of interest arises which creates a duty on our part to provide the **insured** independent counsel, we will provide such counsel unless, at the time we inform the **insured** of the possible conflict, the **insured** expressly waives, in writing, the right to such counsel.

B.   When the **insured** has selected independent counsel:

1.   we require that the selected counsel have at least five years of tort litigation practice which includes substantial defense experience in the subject at issue in the litigation, and they must carry errors and omissions coverage.

2.   it shall be the duty of such counsel and the **insured** to disclose to us all information concerning the action, except privileged materials relevant to coverage disputes, and to inform and consult with us in all matters relating to the action. Any claim of privilege asserted is subject to in camera review in the appropriate law and motion department of the Superior Court. Any information disclosed by the **insured** or by such counsel is not a waiver of the privilege as to any other party; and

3.   both the counsel provided by us and the counsel the **insured** has selected shall be allowed to participate in all aspects of the litigation. Counsel shall cooperate fully in the exchange of information consistent with each counsel's ethical and legal obligation to the **insured**. Nothing in this section shall relieve the **insured** of their duty to cooperate with us under the terms of this insurance policy.

 
**Liability Endorsement**
(continued)

C.    Our obligation to pay fees to counsel selected by the **insured** is limited to the rates which we actually pay to counsel we retain in the ordinary course of business in the defense of similar actions in the community where the claim is being defended. Any dispute concerning counsel fees shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute.

D.    No conflict of interest shall be deemed to exist as to the allegations of punitive damages or be deemed to exist solely because an **insured** is sued for an amount in excess of the insurance policy limits.

All other terms and conditions remain unchanged.

Authorized Representative





**CHUBB**

*Liability Insurance*

## Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Policy Exclusions, the following exclusion is added:

*Policy Exclusions*

*Securities And Trade Practices*

This insurance does not apply to **bodily injury, property damage, advertising injury,** or **personal injury** asserted in any claim, action, investigation or proceeding, including any derivative action commenced by shareholders of an insured, based on, attributable to, related to or in any manner arising or resulting directly or indirectly out of:

- the filing, issuance, transfer, purchase, sale or distribution of securities or offers to purchase or sell securities including, but not limited to, liability under the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Public Utility Holding Company Act of 1935, the Investment Company Act of 1940, the Investment Advisers Act of 1940, and the so-called "blue sky" laws of the various states or other jurisdictions;

- the alleged violation of antitrust, anticompetition, or any other laws prohibiting monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts and practices in trade and commerce including, but not limited to, the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Federal Trade Commission Act and the Hart-Scott Rodino Antitrust Improvements Act, or any state or Federal Business and Professions code or Corporations code;

- fraud or breach of fiduciary duty;

- criminal prosecution, fines, penalties or sentence conditions;



## Policy Exclusions

*Securities And Trade*
*Practices*
*(continued)*

- &bull;    disclosure or other regulation of sales of, and offers to sell, real property; or

- &bull;    any dishonesty of an employee, officer or director.

No inference shall be made from this express exclusion that there is liability or coverage under this policy or any other policies in the absence of this exclusion.

All other terms and conditions remain unchanged.

*Authorized Representative*



*Liability Insurance*

---

*Endorsement*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

---

This Endorsement applies to the following forms:

GENERAL LIABILITY

---

Under Policy Exclusions, the following exclusion is added:

## Policy Exclusions

Lead

A.  This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **lead**:

1.  at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**:

2.  at or from any premises, site or location to which any **insured** has perfected their right to possession or which was at any time acquired by foreclosure, repossession or deed in lieu of foreclosure by any **insured**;

3.  at or from any premises in any trust, guardianship or estate for which any **insured** is currently, or did act in a fiduciary or representative capacity;

4.  at or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

5.  which is or was at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom any **insured** may be legally responsible; or

6.  at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations;

---





## Liability Insurance

### Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

---

*Policy Exclusions*

Under Policy Exclusions, the following exclusion is added:

*Real Estate Development*

This insurance does not apply to **bodily injury, property damage, advertising injury,** or **personal injury** arising out of or directly or indirectly related to:

* the development of real property; or

* the construction of real property,

by the **insured** for itself, or by the **Insured** for others or for sale to others.

All other terms and conditions remain unchanged.

*Robert Hamburger*

Authorized Representative

---




**CHUBB**

*Liability Insurance*

## Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Policy Exclusions, the following exclusion is added:

**Policy Exclusions**

*Professional Liability*

This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the rendering or failing to render professional service or advice, whether or not that service or advice is ordinary to the **insured**'s profession, regardless of whether a claim or **suit** is brought by a client or any other person or organization.

All other terms and conditions remain unchanged.

*Robert Hamburger*

Authorized Representative

Liability Insurance

Form 80-02-2347 (Ed. 4-94)

Exclusion - Professional Liability

Endorsement

*last page*

*Page 1*



### *Liability Insurance*

---

## *Endorsement*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

---

This Endorsement applies to the following forms:

GENERAL LIABILITY

---

Under Coverage, Bodily Injury, Property Damage, Advertising Injury, And Personal Injury is deleted and replaced with the following:

## *Coverage*

*Bodily Injury, Property Damage, Advertising Injury, And Personal Injury*

Subject to the applicable Limits of Insurance, we will pay damages the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** for:

- **bodily injury** or **property damage** to which this insurance applies caused by an **occurrence**; or

- **advertising injury** or **personal injury** to which this insurance applies caused by an offense.

This includes **bodily injury, property damage, advertising injury** or **personal injury** arising out of automated teller machines.

This insurance applies to:

- **bodily injury** or **property damage** which occurs during the policy period; and

- **advertising injury** or **personal injury** caused by an offense committed during the policy period.

Damages for **bodily injury** include damages claimed by any person or organization for care or loss of services resulting at any time from the **bodily injury**.

---

 
Under Policy Exclusions, the following Exclusions are added:

## Policy Exclusions

*Foreclosed Property*

This insurance does not apply to **bodily injury, property damage, advertising injury,** or **personal injury** arising out of, or directly or indirectly related to, **foreclosed property.**

*Trust Property*

This insurance does not apply to **bodily injury, property damage, advertising injury,** or **personal injury** arising out of, or directly or indirectly related to, property in any trust, guardianship or estate for which you are acting in a fiduciary or representative capacity.

*Leased Property*

This insurance does not apply to **bodily injury, property damage, advertising injury,** or **personal injury** arising out of, or directly or indirectly related to, property which you own and lease to others.

This exclusion does not apply to property that is a building you own and lease to others.

Under Definitions, the definition of Foreclosed Property is deleted and replaced with the following:

## Definitions

*Foreclosed Property*

**Foreclosed property** means property:

- to which you have perfected your right to possession; or
- property you originally acquired through foreclosure, repossession or deed in lieu of foreclosure,

because the property was security for a loan you owned or serviced and there was a default on that loan.

All other terms and conditions remain unchanged.

*Robert Hamburger*

Authorized Representative

  

**CHUBB**

*Liability Insurance*

### Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

*SCHEDULE OF LIABILITY ONLY LOCAITONS*

PREMISES NO. 5  1633 OLD BAYSHORE HIGHWAY, #310
BURLINGAME, CA 94010

PREMISES NO. 11  4000 112TH AVENUE NE, #335 & #330
BELLEVUE, WA 98004

PREMISES NO. 64  6650 LUSK BLVD/. #B206
SAN DIEGO, CA 92121

PREMISES NO. 72  800 UNION STATION, #300
ST. LOUIS, MO 63108

PREMISES NO. 77  1521 N. COOPER STREET, #380
ARLINGTON, TX 76011

PREMISES NO. 78  11550 N. MERIDIAN STREET, #308
CARMEL, IN 46032

PREMISES NO. 88  5665 SW MEADOWS ROAD, SUITE 140
LAKE OSWEGO, OR 97034

PREMISES NO. 89  7674 N. LAKE MEAD BLVD., #109
LAS VEGAS, NV 88901

PREMISES NO. 91  5855 TOPANGA CANYON BLVD., #340


WOODLAND HILLS, CA 91302

PREMISES NO. 93  1601 FORUM PLACE, #1000
WEST PALM BEACH, FL 33401

PREMISES NO. 97  18400 VON KARMAN
HERNDON, VA 20170

All other terms and conditions remain unchanged.

Authorized Representative _____



*Common Policy Conditions Section*

  

**CHUBB**

## *Policy Conditions*

### *Schedule of Forms*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 80-02-9090 | 4-94 | COMMON POLICY CONDITIONS | 02/03/02 | 04/12/02 |
| 80-02-9099 | 4-94 | COMMON POLICY CONDITIONS SEPARATOR PAGE | 02/03/02 | 04/12/02 |
| 80-02-9310 | 4-94 | NAMED INSURED ENDORSEMENT | 02/03/02 | 04/12/02 |
| 80-02-9717 | 4-94 | CALIFORNIA MANDATORY ENDORSEMENT | 02/03/02 | 04/12/02 |

*last page*

 

## Common Policy Conditions

### Contract

| Conditions | The following Conditions are included under each part of the policy, unless stated otherwise. |
|---|---|
| **Audit Of Books And Records** | We may audit your books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards. |
| **Cancellation** | The first named insured may cancel this policy or any of its individual coverages at any time by sending us a written request or by returning the policy and stating when thereafter cancellation is to take effect. |
| | We may cancel this policy or any of its individual coverages at any time by sending to the first named insured a notice 60 days (20 days in the event of non-payment of premium) in advance of the cancellation date. Our notice of cancellation will be mailed to the first named insured's last known address, and will indicate the date on which coverage is terminated. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice. |
| | The earned premium will be computed on a pro rata basis. Any unearned premium will be returned as soon as practicable. |
| **Changes** | This policy can only be changed by a written endorsement that becomes part of this policy. The endorsement must be signed by one of our authorized representatives. |
| **Compliance By Insureds** | We have no duty to provide coverage under this policy unless you and any other involved insured have fully complied with all of the terms and conditions of the policy. |
| **Conformance** | Any terms of this insurance which are in conflict with the applicable statutes of the State in which this policy is issued are amended to conform to such statutes. |
| **First Named Insured** | The person or organization first named in the Declarations is primarily responsible for payment of all premiums. The first named insured will act on behalf of all other named insureds for the giving and receiving of notice of cancellation or nonrenewal and the receiving of any return premiums that become payable under this policy. |
| **Inspections And Surveys** | We may: |

- make inspections and surveys at any time;
- give you reports on the conditions we find; and
- recommend changes.

 
## Conditions

**Inspections And Surveys
(continued)**

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

- are safe or healthful; or

- comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations for us.

**Titles Of Paragraphs**

The titles of the various paragraphs of this policy and endorsements, if any, attached to this policy are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

**Transfer Of Rights And
Duties**

Your rights and duties under this insurance may not be transferred without our written consent. However, if you die, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative, or to anyone having temporary custody of your property until your legal representative has been appointed.

**When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the first named insured stated in the Declarations written notice of the nonrenewal not less than 60 days before the expiration date. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice.

*Common Policy Conditions Section*

*Endorsements*





**CHUBB**

## *Policy Conditions*

### *Endorsement*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

COMMON POLICY CONDITIONS

The following changes are made as respects exposures in the state of California.

Under Conditions, the provisions titled Cancellation and When We Do Not Renew are deleted and replaced by the following:

### *Conditions*

*Cancellation*

*Residential Property*

A.    This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under this policy:

    1.    If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in 2. and 3. below.

    2.    We may not cancel such coverage solely because the first named insured has accepted our offer of earthquake coverage.

    3.    We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction (3.) applies only if the coverage provided under this policy excludes loss or damage caused by or resulting from corrosive soil conditions.

*All Policies In Effect For More Than 60 Days*

B.    1.    If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:




## Conditions

*Cancellation*
*(continued)*

a.  Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

b.  Discovery of fraud or material misrepresentation by:

    (i)  any insured or his or her representative in obtaining this insurance; or

    (ii)  you or your representative in pursuing a claim under this policy.

c.  A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

d.  Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

e.  Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

f.  A determination by the Commissioner of Insurance that the:

    (i)  loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    (ii)  continuation of the policy coverage would place us in violation of California law or the laws of the state where we are domiciled; or threaten our solvency.

g.  A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

2.  We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first named insured and to the producer of record, at least:

a.  10 days before the effective date of cancellation if we cancel for a reason listed in B.1.a. or b. above; or

b.  30 days before the effective date of cancellation if we cancel for any other reason listed in paragraph B.1.

*Nonrenewal*

A.  Subject to the provisions of paragraphs B. and C. below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first named insured and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first named insured and to the producer of record, at the mailing address shown in the policy.

B.  This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under this policy:

  

**CHUBB**

### *Policy Conditions*

### Endorsement

*Effective Date*     FEBRUARY 3, 2002

*Policy Number*     3539-77-36 LAO

## *Conditions*

*Nonrenewal*
*(continued)*

1. We may elect not to renew such coverage for any reason, except as provided in 2. and 3. below.

2. We will not refuse to renew such coverage solely because the first named insured has accepted our offer of earthquake coverage.

3. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction (3.) applies only if the coverage provided under this policy excludes loss or damage caused by or resulting from corrosive soil conditions.

C. We are not required to send notice of nonrenewal in the following situations:

1. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

2. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with paragraph A.

3. If you have obtained replacement coverage, or if the first named insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

4. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

5. If the first named insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

6. If we have made a written offer to the first named insured, in accordance with the timeframes shown in paragraph A., to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

All other terms and conditions remain unchanged.

*Authorized Representative* _____ *Robert Hamburger*






**CHUBB**

*Policy Conditions*

---

*Endorsement*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

---

This Endorsement applies to the following forms:

COMMON POLICY CONDITIONS

---

NAMED INSURED

NEW CENTURY FINANCIAL CORPORATION
NEW CENTURY MORTGAGE CORPORATION
ANYLOAN FINANCIAL CORPORATION
NC CAPITAL CORPORATION
NC RESIDUAL CORPORATION
WORTH FUNDING INCORPORATED
THE ANYLOAN COMPANY
NC INSURANCE SERVICES INC.
NC RESIDUAL II CORPORATION
NEW CENTURY MORTGAGE SECURITIES INC.
NEW CENTURY R.E.O. CORPORATION


All other terms and conditions remain unchanged.


*Authorized Representative*                           Robert Hamburger

---






# THE CHUBB COMMERCIAL UMBRELLA

## Schedule of Forms

| | |
|---|---|
| *Policy Period* | FEBRUARY 03, 2002    to FEBRUARY 03, 2003 |
| *Effective Date* | February 3, 2002 |
| *Policy Number* | 7977-03-85 |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | April 5, 2002 |

*As of the effective date printed above, this is the Schedule of Forms applicable to this policy:*

| | Form number | |
|---|---|---|
| '92 UMBRELLA DECLARATIONS - FEDERAL INS. CO. | 07-02-0817 | (09/92) |
| THE CHUBB COMMERCIAL UMBRELLA | 07-02-0815 | (09/92) |
| MILLENNIUM TOTAL EXCL COVERAGE A & B | 07-02-1364 | (04/98) |
| EMPLOYMENT-RELATED PRACTICES EXCL-COV A&B | 07-02-1536 | (01/01) |
| SPECIFIED PERSONAL INJURY/DISCRM. DEF. COV B | 07-02-1647 | (01/01) |
| PROFESSIONAL SERVICES EXCL A&B | 07-02-0864 | (12/97) |
| REAL ESTATE DEVELOPMENT EXCL. COV. A & B | 07-02-1708 | (06/01) |
| MANUSCRIPT ENDORSEMENT | 99-02-02 | (09/92) |
| EMPLOYERS' LIABILITY EXCL - A | 07-02-0852 | (09/92) |
| CARE, CUSTODY OR CONTROL EXCL. - A AND B | 07-02-0837 | (09/92) |
| DATA PROCESSING E&O EXCLUSIONSCOV. A&B | 07-02-0843 | (06/94) |
| DEFENSE PROVISIONS ENDORSEMENT | 07-02-0845 | (09/92) |
| EXTENDED REPORTING PERIOD ENDORSEMENT | 07-02-0859 | (09/92) |
| FINANCIAL INSTITUTION-ACTIVITIES EXCL.-COV. B | 07-02-0941 | (09/92) |
| FORECLOSURE COVERAGE A AND COVERAGE B | 07-02-0936 | (09/92) |
| INTELLECTUAL PROPERTY EXCL. COV. A & B | 07-02-1146 | (06/94) |
| LEAD EXCLUSION - COVERAGE B | 07-02-1154 | (11/94) |
| LEASING EXCLUSION - COVERAGE A AND COVERAGE B | 07-02-0934 | (09/92) |
| MONEY AND SECURITIES EXCL. COV. A&B | 07-02-0878 | (09/92) |
| POLLUTION EXCLUSION COV. A | 07-02-0885 | (09/92) |
| SECURITIES & TRADE PRACTICES EXCL.-COV. A & B | 07-02-0942 | (09/92) |
| TRUST EXCLUSION - COVERAGE A AND COVERAGE B | 07-02-0935 | (09/92) |
| SCHEDULE OF UNDERLYING INSURANCE | 07-02-0922 | (09/92) |

EXHIBIT

**B**

  

**THE CHUBB COMMERCIAL UMBRELLA**

*Schedule of Underlying Insurance*

*Effective date*   FEBRUARY 3, 2002

*Policy Number*   7977-03-85

*Insured*   NEW CENTURY FINANCIAL CORPORATION
(SEE NAMED INSURED ENDORSEMENT)

## Commercial General Liability

| | | | | |
|---|---|---|---|---|
| Name | GREAT NORTHERN INS | $ | 1,000,000. | each Occurrence |
| | CO | $ | 2,000,000. | General Aggregate |
| Policy No. | 35397736 | | | (other than Products |
| Term | 02/03/2002 | | | Completed Operations) |
| to | 02/03/2003 | *SEE BELOW | | Products Completed |
| | | | | Operations Aggregate |
| Occurrence | | $ | 1,000,000. | Personal and Advertising |
| | | | | Injury |

Includes all Premises and Operations of the Insured
*PRODUCTS/COMPLETED OPERATIONS AGGREGATE
IS INCLUDED IN THE GENERAL AGGREGATE LIMIT

## Automobile Liability

| | | | | |
|---|---|---|---|---|
| Name | FEDERAL INSURANCE | | *Bodily Injury Liability* | |
| | COMPANY | | | *each Person* |
| Policy No. | 73253541 | | | *each Occurrence* |
| Term | 02/03/2002 | | *Property Damage Liability* | |
| to | 02/03/2003 | | | *each Occurrence* |
| | | *or* | | |
| | | $ | 1,000,000. | *Combined Single Limit* |

Includes all owned, non-owned and hired cars

## Employee Benefits Liability

| | | | | |
|---|---|---|---|---|
| Name | GREAT NORTHERN INS | $ | 1,000,000. | Each Claim |
| | CO | | | |
| Policy No. | 35397736 | $ | 1,000,000. | Aggregate |
| Term | 02/03/2002 | | | |
| to | 02/03/2003 | | | |

Claims Made
Retroactive Date   02/03/2002

---

**Authorization**   All other terms and conditions remain unchanged.

Authorized Representative

Date   April 5, 2002

---





## THE CHUBB COMMERCIAL UMBRELLA

### Introduction

This liability insurance policy features two insuring agreements:

A.   Excess Follow Form Liability coverage; and

B.   Umbrella Liability coverage.

Excess Follow Form Liability adds excess limits over scheduled underlying coverages.

Umbrella Liability adds a broadening measure of coverage against many of the gaps in and between the underlying coverages.

Together, these separate coverages share the Limits of Insurance.

  

**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

### Contract

Please read your policy carefully. It explains your rights and duties and what is and what is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured. The words "we", "us", and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such in the Definitions of this policy.

Other words and phrases that are printed in bold-face type are defined in the policy. These definitions are found in the Definitions section or in the specific policy provision where they appear.

### Insuring Agreements

**Coverage A - Excess Follow Form Liability Insurance**

Under Coverage A, we will pay on behalf of the insured, that part of loss covered by this insurance in excess of the total applicable limits of **underlying insurance**, provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of **underlying insurance** are with respect to Coverage A made a part of this policy, except with respect to:

A.    any contrary provision contained in this policy; or

B.    any provision in this policy for which a similar provision is not contained in **underlying insurance**.

With respect to the exceptions stated above, the provisions of this policy will apply.

The amount we will pay is limited as described in Limits of Insurance.

Notwithstanding anything to the contrary contained above, if **underlying insurance** does not cover loss, for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such loss.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

If we are prevented by law from paying on behalf of the **insured** for coverage provided under this insurance, then we will indemnify the **insured**.

 
## Insuring Agreements
*(continued)*

*Coverage B - Umbrella Liability Insurance*

Under Coverage B, we will pay on behalf of the insured, damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured **contract** because of **bodily injury, property damage, personal injury,** or **advertising injury** covered by this insurance which takes place during the Policy Period of this policy and is caused by an **occurrence.** We will pay such damages in excess of the Retained Limit Aggregate specified in Item 4 d. of the Declarations or the amount payable by **other insurance,** whichever is greater.

Damages because of **bodily injury** include damages claimed by any person or organization for care or loss of services resulting at any time from the **bodily injury.**

This coverage applies anywhere.

The amount we will pay is limited as described in Limits of Insurance.

Coverage B will not apply to any loss, claim of **suit** for which insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the limits of insurance of **underlying insurance.**

We have no obligation under this insurance with respect to any claim or suit settled without our consent.

If we are prevented by law from paying on behalf of the **insured** for coverage provided under this insurance, then we will indemnify the **insured.**

## Defense and Supplementary Payments

*Applicable to Coverage A and Coverage B*

A. We have the right and the duty to assume control of the investigation, settlement or defense of any claim or suit against the **insured** for damages covered by this policy:

    1. under Coverage A, when the applicable limit of **underlying insurance** has been exhausted by payment of claims; or

    2. under Coverage B, when damages are sought for **bodily injury, property damage, personal injury** or **advertising injury** to which no **underlying insurance** or **other insurance** applies.

B. In those circumstances where paragraph A. above applies, in addition to the applicable Limits of Insurance, we will pay our expenses and the following to the extent that they are not included in **underlying insurance:**

    1. up to $2,000 for the cost of bail bonds. We do not have to furnish these bonds;

  

CHUBB

## THE CHUBB COMMERCIAL UMBRELLA

**Defense and Supplementary Payments**

*Applicable to Coverage A and Coverage B (continued)*

2.  the cost of bonds to release attachments, but only for bond amounts within the amount of insurance available. We do not have to furnish these bonds;

3.  reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of the claim or **suit**; including actual loss of earnings up to $300 per day because of time off from work;

4.  costs taxed against the **insured** in the **suit**;

5.  pre-judgment interest awarded against the **insured** on that part of the judgment we pay. However, if we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer; and

6.  all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of the judgment that is within the applicable Limits of Insurance.

C.  In those circumstances where paragraph A. above does not apply, we do not have the duty to assume control of the investigation, settlement or defense of any claim or **suit** against the **insured**. We do, however, have the right to participate in the investigation, settlement or defense of any claim or **suit** that we feel may create liability on our part under the terms of this policy. If we exercise this right, we will do so at our expense.

We will not defend any **suit** after we have exhausted the applicable Limit of Insurance as stated in Item 4 of the Declarations.

If we are prevented by law from carrying out this provision, we will pay any expense incurred with our consent.

## Limits of Insurance

*Applicable to Coverage A and Coverage B*

A.  With respect to Coverage A and Coverage B, the Limits of Insurance shown in Item 4 of the Declarations and the rules below determine the most we will pay, regardless of the number of:

1.  **insureds**;

2.  claims made or **suits** brought against any or all **insureds**;

3.  coverages provided under this policy; or

4.  persons or organizations making claims or bringing **suits**.



## Limits of Insurance

*Applicable to Coverage A and Coverage B (continued)*

B.  The Limits of Insurance of this policy will apply as follows:

    1.  The limit for Each Occurrence stated in Item 4 a. of the Declarations is the most we will pay for all damages arising out of any one occurrence, even if such damages are covered, in whole or in part, under both Coverage A and Coverage B.

    Any amount paid for damages arising out of an occurrence will reduce the amount of the applicable aggregate limit of insurance available for payment of damages arising out of any other occurrence.

    If the applicable aggregate limit of insurance has been reduced by payment of damages to an amount that is less than the limit for Each Occurrence stated in Item 4 a. of the Declarations, the remaining aggregate limit of insurance is the most that will be available for payment of damages arising out of any other occurrence.

    2.  Subject to paragraph B.1. above, the limit stated in Item 4 b. of the Declarations for the Products Completed Operations Aggregate is the most we will pay for all damages under the products-completed operations hazard.

    3.  Subject to paragraph B.1. above, the limit stated in Item 4 c. of the Declarations for the Other Aggregate is the most we will pay for all damages under Coverage A, and separately under Coverage B, except for: a) damage covered under the products-completed operations hazard or, b) damage covered in **underlying insurance** to which no underlying aggregate limit applies.

    However, with respect to Coverage A only, the Other Aggregate will apply in the same manner as the aggregate in each policy listed in the Schedule of Underlying insurance.

C.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

*Applicable to Coverage A Only*

A.  With respect to Coverage A and subject to paragraphs B.1., B.2. and B.3. above:

    1.  if the limits of **underlying insurance** have been reduced by payment of loss, this policy will drop down to become immediately excess of the reduced underlying limit; or

    2.  if the limits of **underlying insurance** have been exhausted by payment of **loss**, this policy will continue in force as **underlying insurance**.

 

**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

### Limits of Insurance

*Applicable to*
*Coverage A Only*
*(continued)*

The provisions of A.1. and A.2. above apply to injury or offense which takes place before the expiration of this policy or the underlying policy, whichever comes first.

---

### Exclusions

*Applicable to*
*Coverage A and*
*Coverage B*

A.   Under Coverage A and Coverage B, this insurance does not apply to:

**Asbestos Liability**

any liability based on, attributable to, related to or in any manner arising out of:

1.   the mining, processing, manufacturing, use, testing, ownership, sale or removal of asbestos, asbestos fibers or material containing asbestos;

2.   exposure to asbestos, asbestos fibers or material containing asbestos; or

3.   any error or omission in supervision, instructions, recommendations, notices, warnings, or advice given, or which should have been given, in connection with asbestos, asbestos fibers or material containing asbestos.

**Employment Practices**

any liability based on, attributable to, related to or in any manner arising out of any actual or alleged:

1.   termination of any employee;

2.   failure to promote or advance any employee; or

3.   failure to hire any prospective employee or any applicant for employment.

**Laws, Various**

any liability or obligation imposed on the insured under any of the following:

1.   any uninsured/underinsured motorist or automobile no fault or first party personal injury law;

2.   any workers' compensation, unemployment compensation, or disability benefits law or any similar law; or

3.   the United States' Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 as now or hereafter amended.

**Nuclear Energy Liability**

any liability excluded by the Nuclear Energy Liability Exclusion on Page 19 of this policy.

---



**Exclusions**
(continued)

*Applicable to*
*Coverage A Only*

B.    Under Coverage A, this insurance does not apply to:

Pollution Liability

1.    any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    a.    that are, or that are contained in any property that is:

       (1)    being moved from the place where such property or pollutants are accepted by an insured for movement into or onto the covered auto;

       (2)    being transported or towed by the covered auto;

       (3)    otherwise in the course of transit by or on behalf of an insured;

       (4)    being stored, disposed of, treated or processed in or upon the covered auto; or

       (5)    being moved from the covered auto to the place where such property or pollutants are finally delivered, disposed of or abandoned by an insured;

    b.    at or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any insured;

    c.    at or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    d.    which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom any insured may be legally responsible; or

    e.    at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

       (1)    if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

       (2)    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants.




**CHUBB**

### THE CHUBB COMMERCIAL UMBRELLA

## Exclusions

*Applicable to*
*Coverage A Only*
*(continued)*

Paragraphs 1.a.(4) and 1.b. through 1.e. above do not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered auto or its parts, if the pollutants escape, seep or migrate or are discharged, dispersed or released directly from an auto part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

Paragraphs 1.b. through 1.e. above do not apply to pollutants not in or upon the covered auto if:

a. the pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of the covered auto;

b. the discharge, dispersal, seepage, migration, release or escape of the pollutants is caused directly by such upset, overturn or damage; and

c. the bodily injury or property damage is not otherwise excluded under paragraph 1.a. of this exclusion.

Paragraphs 1.b. and 1.e.(1) above do not apply to bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire.

2. any loss, cost or expense arising out of any:

a. request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

b. claim or suit by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

As used in this exclusion:

1. hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be; and

2. pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.

Underlying Insurance Exclusions

any liability excluded by underlying insurance.




---

## Exclusions
*(continued)*

*Applicable to*
*Coverage B Only*

C.    Under Coverage B, this insurance does not apply to:

**Aircraft, Owned or Chartered Without Crew**

any liability arising out of the ownership, maintenance, use, loading or unloading or entrustment to others of any aircraft owned by you or rented, loaned, or chartered by or on behalf of you without crew.

**Autos: USA, Puerto Rico and Canada**

any liability arising out of the ownership, maintenance, use, loading or unloading or entrustment to others of autos within the United States of America, including its possessions and territories, Puerto Rico, Canada or while autos are being transported between these places.

**Breach of Contract, Failure to Perform, Wrong Description**

**advertising injury** arising out of:

1.    breach of contract;

2.    the failure of goods, products or services to conform with advertised quality or performance; or

3.    the wrong description of the price of goods, products or services.

**Damage to Impaired Property**

**property damage to impaired property** or property that has not been physically injured arising out of:

1.    a defect, deficiency, inadequacy or dangerous condition in **your product or your work**; or

2.    a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product or your work** after it has been put to its intended use.

**Damage to Your Product**

**property damage to your product** arising out of it or any part of it.

**Damage to Your Work**

**property damage to your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

 

**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

### Exclusions

*Applicable to*
*Coverage B Only*
*(continued)*

Employee Injury

1.   any injury to an employee of the **insured** arising out of and in the course of employment by the **insured**; or

2.   any injury to the spouse, child, parent, brother, or sister of that employee as a consequence of 1. above.

This exclusion applies whether the **insured** may be liable as an employer or in any other capacity, or to any obligation to share damages with or repay someone else who must pay damages because of an injury.

Falsity, Prior Publication, Willful Violation

**personal injury or advertising injury** arising out of:

1.   oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity;

2.   oral or written publication of material whose first publication took place before the beginning of the policy period; or

3.   willful violation of a penal statute or ordinance committed by or with the consent of the **insured**.

Intentional Acts

**bodily injury or property damage** which results from an act that is intended by the **insured** or can be expected from the standpoint of a reasonable person to cause **bodily injury or property damage**, even if the injury or damage is of a different degree or type than actually intended or expected.

This exclusion does not apply to **bodily injury** caused by the use of reasonable force to protect people or property.

Owned Watercraft

any liability arising out of the ownership, maintenance, use, loading or unloading or entrustment to others of any watercraft owned by you. This exclusion does not apply to watercraft while ashore on premises you own or rent.

Pollution Liability

1.   any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**; or




## *Exclusions*

*Applicable to*
*Coverage B Only*
*(continued)*

2.  any loss, cost or expense arising out of any:

    a.  request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

    b.  claim or suit by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of **pollutants.**

As used in this exclusion, **pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.

This exclusion applies whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

Product Recall

damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.  **your product;**

2.  **your work;** or

3.  **impaired property;**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

Property Damage, Various

**property damage** to:

1.  property you own;

2.  that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **property damage** arises out of those operations;

3.  that particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it; or

4.  the property of one **insured** in the care, custody or control of another **insured.**

Paragraph 3. of this exclusion does not apply to **property damage** included in the **products-completed operations hazard.**

  

**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

### Definitions

**Applicable to
Coverage A and
Coverage B**

In this policy words and phrases appearing in bold-face type have the defined meanings shown below.

A.   The following Definitions are applicable to Coverage A and Coverage B.

**Other insurance** means a policy of insurance affording coverage that this policy also affords. **Other insurance** includes any type of self-insurance or other mechanism by which an insured arranges for funding of legal liabilities.

**Other insurance** does not include **underlying insurance** or a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

**Suit** means a civil proceeding in which injuries or damages to which this insurance applies are alleged. **Suit** includes:

1.   an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2.   any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**Underlying insurance** means the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy.

**Applicable to
Coverage A Only**

B.   The following definitions are applicable to Coverage A only.

**Insured** means:

1.   the Named Insured stated in Item 1 of the Declarations;

2.   any person or organization included as an insured in **underlying insurance**; and

3.   at your option and subject to the terms of this policy at the time of claim or **suit**, persons or organizations included as additional insureds in **underlying insurance**, but only for their liability arising out of operations of the Named Insured.

**Loss** means those sums actually paid in the settlement or satisfaction of a claim which the **insured** is legally obligated to pay as damages because of injury or offense, after making proper deductions for all recoveries and salvage.

**Applicable to
Coverage B Only**

C.   The following definitions are applicable to Coverage B only.

**Advertising injury** means injury, other than **bodily injury** or **personal injury**, arising solely out of one or more of the following offenses committed in the course of **advertising** your goods, products or services:

1.   oral or written publication of **advertising** material that slanders or libels a person or organization;

2.   oral or written publication of **advertising** material that violates a person's right of privacy; or




## *Definitions*

*Applicable to
Coverage B Only*
(continued)

3.    infringement of copyrighted titles, slogans or other **advertising** materials.

**Advertising** means any paid: advertisement, publicity article, broadcast or telecast.

**Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment; but an **auto** does not include **mobile equipment**.

**Bodily injury** means physical injury, sickness or disease to a person and, if arising out of the foregoing, mental anguish, mental injury, shock or humiliation, including death at any time resulting therefrom.

**Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

1.    it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.    you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.    the repair, replacement, adjustment or removal of **your product** or **your work**, or

2.    your fulfilling the terms of the contract or agreement.

**Insured** means:

1.    the **named insured;**

2.    any partner, joint venture member, executive officer, employee, director or stockholder of the **named insured** while acting within the scope of his or her duties as such;

3.    if the **named insured** is an individual, the individual so designated and spouse, but only with respect to the conduct of a business of which the individual is the sole proprietor;

4.    any organization over which the **named insured** maintains majority interest and to which more specific insurance does not apply, other than one which **you** newly acquire or form;

5.    any newly acquired or formed organization over which the **named insured** maintains majority interest and to which more specific insurance does not apply; provided that this policy does not apply to any injury or damage that took place before you acquired or formed the organization;

6.    any person or organization while acting as your real estate manager; or

7.    your legal representative if you die, but only with respect to duties as such.

No person or organization is an **insured** with respect to the conduct of any current, past or newly formed partnership or joint venture that is not designated within the Declarations of this policy as **named insured.**

 

## THE CHUBB COMMERCIAL UMBRELLA

### Definitions

*Applicable to*
*Coverage B Only*
*(continued)*

**Insured contract** means any written or oral agreement entered into by the insured in the usual course of the business operations of the insured in which the insured assumes tort liability of another to pay damages because of bodily injury, property damage, personal injury or advertising injury to a third person or organization where the contract or agreement is made prior to the injury or offense.

**Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  vehicles maintained for use solely on or next to premises you own or rent;

3.  vehicles that travel on crawler treads;

4.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.  power cranes, shovels, loaders, diggers or drills; or

    b.  road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  vehicles not described in 1., 2., 3. or 4. above, that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.  air compressors, pumps and generators including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.  cherry pickers and similar devices used to raise or lower workers;

6.  vehicles not described in 1., 2., 3. or 4. above, maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered autos:

    a.  equipment designed primarily for:

        (1)  snow removal;

        (2)  road maintenance, but not construction or resurfacing; or

        (3)  street cleaning;

    b.  cherry pickers and similar devices mounted on an auto or truck chassis and used to raise or lower workers; and

    c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.




---

## Definitions

**Applicable to**
**Coverage B Only**
*(continued)*

**Named insured** means the person(s) and organization(s) designated in Item 1 of the Declarations of this policy.

**Occurrence means:**

1.  with respect to **bodily injury** or **property damage** liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2.  with respect to **personal injury** or **advertising injury**, a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same occurrence, regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

**Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses committed in the course of your business, other than your **advertising**:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, by or on behalf of its owner, landlord or lessor;

4.  oral or written publication of material that slanders or libels a person or organization;

5.  oral or written publication of material that violates a person's right of privacy; or

6.  discrimination (unless insurance thereof is prohibited by law).

**Products-completed operations hazard** means all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:

1.  products that are still in your physical possession; or

2.  work that has not yet been completed or abandoned. **Your work** will be deemed completed at the earliest of the following times:

    a.  when all of the work called for in your contract has been completed;

    b.  when all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

  

CHUBB

## THE CHUBB COMMERCIAL UMBRELLA

### Definitions

*Applicable to*
*Coverage B Only*
*(continued)*

c.   when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

This hazard does not include **bodily injury** or **property damage** arising out of:

1.   the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by loading or unloading of it; or

2.   the existence of tools, uninstalled equipment or abandoned or unused materials.

**Property damage** means:

1.   physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.   loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

**Tort liability** means a liability that would be imposed by law in the absence of any contract or agreement.

**Your product** means:

1.   any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a.   you;

    b.   others trading under your name; or

    c.   a person or organization whose business or assets you have acquired; and

2.   containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

1.   warranties or representation made at any time with respect to the fitness, quality, durability, performance or use of **your product** and

2.   the providing or failure to provide warnings or instructions.

**Your product** does not include vending machines or other property rented to or located for use of others but not sold.

**Your work** means:

1.   work or operations performed by you or on your behalf; and



## Definitions

*Applicable to*
*Coverage B Only*
*(continued)*

2.    materials, parts or equipment furnished in connection with such work or operations.

**Your work includes:**

1.    warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and

2.    the providing of or failure to provide warnings or instructions.

## Conditions

*Applicable to*
*Coverage A and*
*Coverage B*

The following Conditions are applicable to both Coverage A and Coverage B.

### Appeals

At our option we can initiate or participate in an appeal of a judgment against any **insured** if the judgment is for more than the amount of the Retained Limit Aggregate stated in Item 4 d. of the Declarations or the limits of insurance of **underlying insurance**.

If we initiate or participate in an appeal, we will pay our costs of the appeal. These payments will be in addition to the Limits of Insurance of this policy.

### Audit of Books and Records

We may audit the **insured's** books and records at any time during the term of this insurance or within three years after expiration or termination.

### Bankruptcy or Insolvency

Bankruptcy or insolvency of the **insured** or the **insured's** estate will not relieve us of our obligations under this policy.

### Cancellation

The first named **insured** may cancel this policy at any time by sending us a written request or by returning the policy stating the date of cancellation.

We may cancel this policy at any time by sending to the first named **insured** a notice of 60 days (10 days in the event of non-payment of premium) in advance of the cancellation date. Our notice of cancellation will be mailed to the first named **insured's** last known address, and will indicate the date on which coverage is terminated.

If cancellation is at the request of the **insured**, return premium will be computed at 90% of pro rata. If we cancel, return premium will be computed pro rata. If this policy insures more than one **insured**, cancellation may be effected by the first named **insured** for the account of all the **insureds**. Notice of cancellation by us to such first named **insured** will be deemed notice to all **insureds** and payment of any return premium to such first named **insured** will be for the account of all interests.





**CHUBB**

## *THE CHUBB COMMERCIAL UMBRELLA*

### *Conditions*

*Applicable to
Coverage A and
Coverage B
(continued)*

Changes

> Notice to any agent or knowledge possessed by any agent or by any other person will not affect a waiver or change in any part of this policy. This policy can only be changed by a written endorsement that becomes part of this policy.

Duties in the Event of Occurrence, Claim or Suit

> You must see to it that we and your underlying insurers:

> 1. are notified as soon as possible of any occurrence which may result in a claim if the claim may involve this policy or any **underlying insurance**;

> 2. receive notice of the claim or suit as soon as possible;

> 3. are helped, at our request, to enforce any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance applies; and

> 4. receive the **insured's** full cooperation as stated in this policy or in any **underlying insurance.**

> Additionally, it is a requirement of this policy that:

> 1. the **insured** not make any admission of liability; and

> 2. the **insured** not, unless we agree, incur any expense or make any payment other than for first aid. Any such unauthorized expenses will be at the **insured's** own cost.

First Named Insured

> The person or organization first named in Item 1 of the Declarations is primarily responsible for the payment of all premiums. The first **named insured** will act on behalf of all other **insureds** for the giving and receiving of notice of cancellation and the receiving of any return premiums that become payable under this policy.

Inspection

> We have the right, but are not obligated to inspect the **insured's** premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of the premises and operations and the premium to be charged. We may provide reports on the conditions we find. We may also recommend changes. While these reports may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that the premises or operations are safe or healthful, or that they comply with laws, regulations, codes or standards.




## Conditions

**Applicable to
Coverage A and
Coverage B**
*(continued)*

Maintenance of Underlying Insurance

While this policy is in effect you agree to maintain **underlying insurance** in full force. This means that:

1.  **underlying insurance** may not be cancelled or non-renewed by either you or the insurance company without notifying us;

2.  renewals or replacements of **underlying insurance** will not be more restrictive in coverage;

3.  terms, conditions and endorsements of **underlying insurance** will not materially change;

4.  collectibility of **underlying insurance** limits as listed in the Schedule of Underlying Insurance, or replacements thereof, must be available regardless of the bankruptcy or insolvency of the underlying insurers; and

5.  limits of **underlying insurance** will not change except for any reduction in the aggregate limits of insurance by payment of loss.

Your failure and/or your underlying insurer's failure to comply with this condition will not invalidate this policy but in the event of such failure, we will only be liable to the same extent as if there had been compliance with this condition.

Other Insurance

If **other insurance** applies to claims covered by this policy, the insurance under this policy is excess and we will not make any payments until the **other insurance** has been exhausted by payment of claims. This insurance is not subject to the terms or conditions of any **other insurance.**

Premium

The premium for this policy as stated in Item 3 of the Declarations is a flat premium. It is not subject to adjustment unless an endorsement is attached to this policy.

Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first **named insured**, this insurance applies:

1.  as if each **named insured** were the only **named insured**; and

2.  separately to each **insured** against whom claim is made or **suit** is brought.

Titles of Paragraphs

The titles of the various paragraphs of this policy and endorsements, if any, attached to this policy, are inserted solely for convenience of reference and are not to be deemed in any way to affect the provisions to which they relate.

  

**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

### Conditions

**Applicable to
Coverage A and
Coverage B**
*(continued)*

Transfer of Rights and Duties

Your rights and duties under this insurance may not be transferred without our written consent. If you die, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties but only with respect to that property.

Transfer of Rights of Recovery

1.  If the insured has rights to recover all or part of any payment we have made under this insurance, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

2.  Any amount recovered will be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

When Loss is Payable

This policy will not apply until the insured, or the insured's underlying insurer is obligated to pay the full amount of the underlying limit or Retained Limit Aggregate. When the amount of loss has finally been determined, we will promptly pay on behalf of the insured the amount of loss which falls within the terms of this policy. The first named insured will promptly reimburse us for any amount within the Retained Limit Aggregate paid by us.

---

### Nuclear Energy
### Liability Exclusion

This policy does not apply to:

A.  any injury or damage:

1.  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its terminations upon exhaustion of its limits of insurance; or

2.  resulting from the hazardous properties of nuclear material and with respect to which a) person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.





| | | |
|---|---|---|
| *Nuclear Energy Liability Exclusion* | B. | any injury or nuclear property damage resulting from the hazardous properties of nuclear material, if: |

      1. the nuclear material a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or b) has been discharged or dispersed therefrom;

      2. the nuclear material is contained in spent fuel or nuclear waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

      3. the injury or nuclear property damage arises out of the furnishing by an insured of services, materials, parts of equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion 3. applies only to nuclear property damage to such nuclear facility and any property therein.

C. As used in this exclusion:

      1. Hazardous properties includes radioactive, toxic or explosive properties.

      2. Nuclear facility means:

          a. any nuclear reactor;

          b. any equipment or device designed or used for

             (1) separating the isotopes of uranium or plutonium,

             (2) processing or utilizing spent fuel or

             (3) handling, processing or packaging nuclear waste;

          c. any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

          d. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, nuclear waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

      3. Nuclear material means source material, special nuclear material or by-product material.

      4. Nuclear property damage includes all forms of radioactive contamination of property.

      5. Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

 



**THE CHUBB COMMERCIAL UMBRELLA**

*Nuclear Energy*
*Liability Exclusion*
*(continued)*

6.  Nuclear waste means any nuclear waste material a) containing by-product material other than the tailings of nuclear waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph a. or b.

7.  Source material, special nuclear material, and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

8.  Spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

CASE NO. _____05 CV 2370_____

FILE DATE: _____4-21-05_____

ATTACHMENT #. _____1_____

EXHIBIT _____

TAB (DESCRIPTION) _____

Atty. No. 12775

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

FILED
APR 0 5 2002
DOROTHY BROWN
CLERK OF CIRCUIT COURT

| | | |
|---|---|---|
| PAUL BERNSTEIN, Plaintiff, | ) | |
| v. | ) | 02CH06?07 |
| NEW CENTURY MORTGAGE CORPORATION, Defendant. | ) | |

## COMPLAINT -- CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

## INTRODUCTION

1. Plaintiff Paul Bernstein brings this action to secure redress for the actions of defendant New Century Mortgage Corporation in sending out unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA").

## PARTIES

2. Plaintiff Paul Bernstein is an attorney who practices law in downtown Chicago.

3. Defendant New Century Mortgage Corporation is a California corporation with its principal place of business in California. It does business in Illinois. It maintains offices at 1000 N. Plaza Drive, Suite 401, Schaumburg, IL 60173.

 

## FACTS

4.      On or about February 26, 2002, defendant New Century Mortgage Corporation caused the unsolicited fax advertisement attached as <u>Exhibit A</u> to be transmitted to plaintiff's facsimile machine.

5.      Plaintiff Paul Bernstein had no prior business relationship with defendant New Century Mortgage Corporation and had not authorized the sending of fax advertisements to plaintiff.

6.      On information and belief, defendant disseminated this fax advertisement not only to plaintiff but also to many other individuals and entities who did not solicit the fax or have a prior relationship with defendant.

## COUNT I – TCPA

7.      Plaintiff incorporates ¶¶ 1-6.

8.      The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine..." 47 U.S.C. §227(b)(1)(C).

9.      The TCPA,  47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in appropriate court of that State—**

> **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever, is greater, or**



(C) both such actions.

**If the Court finds that the Defendant willfully or knowingly violated this subscription or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

10.    Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and toner consumed as a result.

11.    Plaintiff and each class member is entitled to statutory damages.

12.    On information and belief, defendant wilfully and knowingly violated the TCPA.

13.    Unless enjoined from doing so, defendant is likely to commit similar violations in the future.

## CLASS ALLEGATIONS

14.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date two years prior to the filing of this action, (c) were sent advertising faxes by defendant (d) and with respect to whom defendant cannot provide evidence of consent or a prior business relationship.

15.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

16.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

a.    Whether defendant engaged in a pattern of sending unsolicited fax

3



advertisements;

      b.    Whether defendant thereby violated the TCPA;

      c.    Whether defendant thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

    17.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

    18.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

    19.    Several courts have certified class actions under the TCPA. Nicholson v. Hooters of Augusta, Inc., 245 Ga.App. 363, 537 S.E.2d 468 (2000); State of Texas v. American Blast Fax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

    20.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

    WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

      a.    Actual damages;

      b.    Statutory damages;

      c.    An injunction against the further transmission of unsolicited fax

4



advertising;

     d.    Attorney's fees, litigation expenses and costs of suit;

     e.    Such other or further relief as the Court deems just and proper.

## COUNT II – ICFA

21.    Plaintiff incorporates ¶¶ 1-6.

22.    Defendant engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

23.    Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and toner consumed as a result.

24.    Defendant engaged in such conduct in the course of trade and commerce.

25.    Defendant engaged in such conduct knowing that it was thereby causing recipients of its advertising to bear the cost thereof.

26.    On information and belief, defendant knowingly and deliberately engaged in unlawful acts.

27.    Unless enjoined from doing so, defendant is likely to commit similar violations in the future.

## CLASS ALLEGATIONS

28.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent advertising faxes by defendant (d) and with respect to whom defendant cannot provide evidence of consent or a prior business relationship.

5



29.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

30.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendant engaged in a pattern of sending unsolicited fax advertisements;

b.    Whether defendant thereby violated the TCPA;

c.    Whether defendant thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

31.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

32.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

33.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

6

a.    Actual damages;

b.    Punitive damages;

c.    An injunction against the further transmission of unsolicited fax

advertising;

d.    Attorney's fees, litigation expenses and costs of suit;

e.    Such other or further relief as the Court deems just and proper.


_____

Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Adam M. Berger
EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 12775

J:\case\new8.128\pleading\cmplt.wpd


7

# EXHIBIT A

# ATTENTION HOMEOWNERS:

# Get Cash FAST!



- **Same-Day Approvals!**
- Self-Employed OK!
- Bankruptcy OK!
- Foreclosure OK!
- Loans For Any Purpose
- Cash Within 7 Days
- Competitive Rates
- Over $7 Billion Loaned

## CALL NOW!

# 800-205-9422

Lower Your Payment Today With A First
Mortgage Loan From New Century
Mortgage Corporation




LENDER



**"When the others say no,
New Century says YES!"**

Certain conditions and restrictions may apply. New Century Mortgage Corporation is a nationally recognized lender.

TO HAVE YOUR NUMBER REMOVED FROM OUR DATABASE, PLEASE CALL OUR AUTOMATED TOLL-FREE CENTER AT **800-443-7628.**



Atty. No. 12775

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| WHITING CORPORATION, | ) | |
| | ) | |
| Plaintiff | ) | No. 02 CH 6332 |
| | ) | Judge Patrick E. McGann |
| v. | ) | |
| | ) | |
| MSI MARKETING, INC., | ) | |
| | ) | |
| Defendants. | ) | Related To: |
| | ) | |

| | | |
|---|---|---|
| PAUL BERNSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 CH 06907 |
| | ) | |
| v. | ) | |
| | ) | |
| NEW CENTURY MORTGAGE | ) | |
| CORPORATION and JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT -- CLASS ACTION

### MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.    Plaintiff Paul Bernstein brings this action to secure redress for the actions of

defendant New Century Mortgage Corporation in sending out unsolicited advertisements to

telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C.

§227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and Illinois common

law.

### PARTIES

2.    Plaintiff Paul Bernstein is an attorney who practices law in downtown

1





Chicago.

3.        Defendant New Century Mortgage Corporation is a California corporation with its principal place of business in California. It does business in Illinois. It maintains offices at 1000 N. Plaza Drive, Suite 401, Schaumburg, IL 60173.

## FACTS

4.        On or about February 26, 2002, defendant New Century Mortgage Corporation caused the unsolicited fax advertisement attached as <u>Exhibit A</u> to be transmitted to plaintiff's facsimile machine.

5.        Plaintiff Paul Bernstein had no prior business relationship with defendant New Century Mortgage Corporation and had not authorized the sending of fax advertisements to plaintiff.

6.        The fax advertisement at issue contains a telephone number, 800-443-7628, associated with the mass "broadcasting" by Fax.com, Inc. of unsolicited advertising faxes to lists of numbers compiled by "fax broadcasters" and sold or otherwise made available to businesses desirous of engaging in illegal fax advertising. The same number was listed in the FCC's citation against Fax.com, Inc., File No. EB-02-TC-120, 2002 WL 1798553 (FCC, Aug. 7, 2002), as present in other unsolicited faxes sent to large numbers of persons by Fax.com, Inc.

7.        Defendant or its agents designed the advertising material in question in a manner calculated to make its receipt particularly expensive. The inclusion of graphics and bold headlines and words in the fax causes it to consume unusually large amounts of toner or ink. Heavy black headlines and graphics cause a fax to consume as much toner or ink as a dozen or more ordinary business letters.

8.        There is no reasonable alternative to the receipt of the illegal faxes.

2



Professionals such as plaintiffs need to leave their fax machines on in order to receive urgent communications which they desire to receive. Based on experience and the FCC citation against Fax.com, Inc., dialing the "remove" numbers provided on Exhibit A does not result in cessation of unsolicited faxes. Indeed, it may result in the dialer being placed on a "sucker list" of people that actually pay attention to unsolicited faxes and being inundated with other unsolicited faxes. Note 25 of the FCC citation, File No. EB-02-TC-120, 2002 WL 1798553 (FCC, Aug. 7, 2002), states:

> Information provided by consumers indicates that Fax.com continued to send faxes even after receiving opt-out calls. For instance, a log provided by William Robert White, President of Regency Sales, Inc., documents over 50 attempts between May 2000 and August 2001 to use Fax.com's opt-out numbers to halt Regency's receipt of unsolicited advertisements from Fax.com clients. Despite these attempts, Fax.com continued to transmit unsolicited advertisements to Regency, as evidenced by at least 12 faxes received by Regency from December 2001 to February 2002. See Table 1; see also Letter from Andrew Hansis to Consumer Information Bureau (Oct. 5, 2001) (October 5 Hansis Letter) (stating that Mr. Hansis continued to receive faxes even after using Fax.com's automated opt-out system and speaking with a senior Fax.com employee in an effort to end the faxing); Consumer Form for Telephone-Related Issues from Norman Jensen, III (rec'd Jan. 8, 2002) (consumer continued to receive at least one advertisement a week despite "repeatedly" calling opt-out numbers and faxing a message to the originating fax number asking that his telephone facsimile number be removed from the fax number database); Consumer Form for Telephone-Related Issues from Dora Wong Goto (rec'd Oct. 15, 2001) (Goto Complaint Form); annotated copies of faxes submitted by James Allan Dobbins. It is clear that a call to one Fax.com opt-out line does not end all fax transmissions from the company. We emphasize here that even an effectively administered opt-out system does not change the statutory ban on sending unsolicited facsimile advertisements or insulate such transmissions from statutory penalties. However, the fact that Fax.com apparently does not even adhere to its own stated procedures makes its conduct even more egregious.

9.    Based on the above facts, plaintiff alleges, on information and belief, that the fax attached hereto was sent as part of a mass "broadcasting" of faxes.

## COUNT I – TCPA

10.    Plaintiff incorporates ¶¶ 1-9.

 

11.     The TCPA makes unlawful the "use of any telephone facsimile machine,

computer or other device to send an unsolicited advertisement to a telephone facsimile machine..."

47 U.S.C. §227(b)(1)(C).

12.     The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—**

> **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
>
> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever, is greater, or**
>
> **(C) both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

13.     Plaintiff and each class member suffered damages as a result of receipt of the

unsolicited faxes, in the form of paper and ink or toner consumed as a result.

14.     Plaintiff and each class member is entitled to statutory damages.

15.     If the evidence shows the violation was willful, plaintiff requests trebling of

the damages.

16.     Defendants should be enjoined from committing similar violations in the

future.

4

 

## CLASS ALLEGATIONS

17.     Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

18.     The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

19.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

        a.     Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

        b.     The manner in which defendants compiled or obtained their list of fax numbers;

        c.     Whether defendants thereby violated the TCPA;

        d.     Whether defendants thereby committed the tort of conversion;

        e.     Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

        f.     Whether defendants thereby tortiously damaged the property of plaintiff.

20.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to

5

vigorously pursue this action.

21.     A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

22.     Several courts have certified class actions under the TCPA.  <u>Nicholson v. Hooters of Augusta, Inc.</u>, 245 Ga.App. 363, 537 S.E.2d 468 (2000); <u>ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.</u>, 50 P.3d 844  (Ariz. App.  2002) (private class actions); see <u>State of Texas v. American Blast Fax, Inc.</u>, 164 F. Supp. 2d 892 (W.D. Tex. 2001) (state enforcement action).

23.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a.     Actual damages;

b.     Statutory damages;

c.     An injunction against the further transmission of unsolicited fax advertising;

d.     Costs of suit;

e.     Such other or further relief as the Court deems just and proper.

### COUNT II – CONVERSION

24.     Plaintiff incorporates ¶¶ 1-9.

6




25. By sending plaintiff and the class members unsolicited faxes, defendants converted to their own use ink or toner and paper belonging to plaintiff and the class members.

26. Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

27. By sending the unsolicited faxes, defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

28. Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

29. The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

30. Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

31. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

32. Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

7



33.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

34.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.    Whether defendants thereby violated the TCPA;

c.    Whether defendants thereby committed the tort of conversion;

d.    Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

e.    Whether defendants thereby tortiously damaged the property of plaintiff.

35.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

36.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

37.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

8



WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

      a.     Appropriate damages;

      b.     An injunction against the further transmission of unsolicited fax advertising;

      c.     Costs of suit;

      d.     Such other or further relief as the Court deems just and proper.

## COUNT III – ICFA

38.     Plaintiff incorporates ¶¶ 1-9.

39.     Defendants engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

40.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

41.     Defendants engaged in such conduct in the course of trade and commerce.

42.     Defendants engaged in such conduct knowing that such conduct was causing recipients of their advertising to bear the cost thereof.

43.     Defendants' shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair. In addition, defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

44.     The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

45.     Defendants should be enjoined from committing similar violations in the

9

 

future.

## CLASS ALLEGATIONS

46.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

47.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

48.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.    Whether defendants thereby violated the TCPA;

c.    Whether defendants thereby committed the tort of conversion;

d.    Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

e.    Whether defendants thereby tortiously damaged the property of plaintiff.

49.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

10



50.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

51.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a.    Appropriate damages;

b.    An injunction against the further transmission of unsolicited fax advertising;

c.    Attorney's fees, litigation expenses and costs of suit;

d.    Such other or further relief as the Court deems just and proper.

### COUNT IV – PROPERTY DAMAGE

52.    Plaintiff incorporates ¶¶ 1-9.

53.    By sending plaintiff and the class members unsolicited faxes, defendants damaged paper belonging to plaintiff and the class members.

54.    Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and used to print the faxes.

55.    By sending the unsolicited faxes, defendants used plaintiff's paper used to print the faxes in such manner as to make it unusable. Such action was wrongful and without

11

authorization.

56.    Defendants knew or should have known that their action was wrongful and without authorization.

57.    The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

58.    Plaintiff and the class members were deprived of the paper, which could no longer be used for any other purpose.  Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

59.    Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

60.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

61.    The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 50 members of the class.

62.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.    Whether defendants thereby violated the TCPA;

12

 

c. Whether defendants thereby committed the tort of conversion;

d. Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

e. Whether defendants thereby tortiously damaged the property of plaintiff.

63. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

64. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

65. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a. Appropriate damages;

b. An injunction against the further transmission of unsolicited fax advertising;

c. Costs of suit;

d. Such other or further relief as the Court deems just and proper.

13



_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Julie Clark
EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 12775
J:\case\new8.128\pleading\2damd.cmplt.wpd

14

# EXHIBIT A



# ATTENTION HOMEOWNERS:

# Get Cash FAST!



- ### Same-Day Approvals!
- Self-Employed OK!
- Bankruptcy OK!
- Foreclosure OK!
- Loans For Any Purpose
- Cash Within 7 Days
- Competitive Rates
- Over $7 Billion Loaned

## CALL NOW!

# 800-205-9422

Lower Your Payment Today With A First
Mortgage Loan From New Century
Mortgage Corporation



NEW CENTURY™
MORTGAGE CORPORATION



LENDER

"When the others say no,
New Century says YES!"

Certain conditions and restrictions may apply. New Century Mortgage Corporation is a nationally recognized lender.

TO HAVE YOUR NUMBER REMOVED FROM OUR DATABASE, PLEASE CALL OUR AUTOMATED TOLL-FREE CENTER AT 800-443-7528.




**NEW CENTURY**™
MORTGAGE CORPORATION

18400 Von Karman, Suite 1000, Irvine, CA 92612 (949) 440-7030 Fax (949) 440-7033

Direct Dial: (949) 225-7852
Fax: (949) 440-7033
E-mail: msantandrea@ncen.com

August 15, 2003

VIA FEDERAL EXPRESS

Camilla Conlon
Maria Heller
Banker's Insurance Services
200 East Randolph Street
17th Floor
Chicago, IL  60601

Pamela Nash
Financial Guaranty Insurance Brokers
709 East Colorado Blvd, #230
Pasadena, CA  91101

Re:    **Paul Bernstein v. New Century Mortgage Corporation**
MBPL Policy No.'s:   MPL-01-00008 & MPL-02-000010
Policy Dates:        6/8/02-6/8/04
MBB Policy No.'s:    MBB-00-00023
Policy Dates:        6/8/00-6/8/03
CGL Policy No.:      35397736 LAO
Policy Dates:        2/3/02-2/3/04

Dear Ms. Conlin and Ms. Nash:

This letter is to notify you of a claim on the above-referenced policies by New Century Mortgage Corporation ("New Century"). This claim arises from a class action lawsuit entitled *Paul Bernstein v. New Century Mortgage Corporation* filed on April 5, 2002 in the Circuit Court of Cook County, Illinois, case number 02CH06907. A copy of the Complaint has been enclosed for your reference.



EXHIBIT
_E_



Paul Bernstein v. New Century Mortgage Corporation
August 15, 2003
Page 2

The Complaint alleges violation of Telephone Consumer Protection Act (TCPA), unlawful use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile and violation of the Illinois Consumer Fraud Act (ICFA), engaging in unfair and deceptive acts and practices. Class consists of all persons with an Illinois fax number who on or after a date two years prior to this action were sent faxes.

We have retained attorney Bart Murphy at Wildman, Harrold, Allen and Dixon, 225 West Wacker Drive, Suite 3000, Chicago, IL 60606, (312) 201-2000.

We hereby tender the defense and demand indemnification of the insured upon the within claim. We ask that you notify all appropriate carriers of this claim. Please direct all future communication concerning this tender to my attention at the above-referenced address.

Very truly yours,

MARY F. SANTANDREA
Assistant Vice President & Senior Counsel

CMW/MS
Enclosures

cc: Dan Hodgkiss (via facsimile only), (w/out encls.)
    Monika L. McCarthy (w/out encls.)



# CHUBB GROUP OF INSURANCE COMPANIES



January 7, 2004

New Century Mortgage Corporation                    Certified Mail
Attn: Mr. Mark Malovos                      Return Receipt Requested
18400 Von Karman Ave. Suite 1000
Irvine, CA. 92612

Re:    Our Policy #,    3539-77-36 & 7977-03-85
       Our Insured,     New Century Mortgage Corporation
       Claimant:        Paul Bernstein (insurance)
       Date of Loss.    February 26, 2002

Dear Mr. Malovos:

This will acknowledge receipt by the Great Northern Insurance Company and the Federal Insurance Company. Chubb Companies, of a Summons & Complaint # 02CH 6907 filed in the matter of Paul Bernstein vs. New Century Mortgage Corporation venued in the Chancery Division of the Circuit Court of Cook County Illinois.

The plaintiff alleges that he received an unsolicited fax advertisement on February 26, 2003. This fax consisted of an advertisement for mortgage loans from New Century Mortgage Corporation. You have advised me that Fax.com was the entity that actually sent this advertisement via fax.

The Complaint consists of two Counts.
Count I       Violation of the Telephone Consumer Protection Act
Count II      Violation of the Illinois Consumer Fraud Act

The Complaint alleges that the plaintiff suffered damages as a result of the receipt of the unsolicited fax in the form of the loss of use of paper and toner consumed. The Complaint also seeks to establish this as a class action litigation on behalf of all who received advertising faxes from the defendant since April 5th, 1999 and who had no prior business relationship with New Century Mortgage Corporation. The Complaint requests actual damages, statutory damages, treble damages if found to be a willful violation, and attorney's fees.



EXHIBIT

F



January 7, 2004
New Century Mortgage Corporation
Page 2

After reviewing this lawsuit, it is the position of the Great Northern Insurance Company that we will defend you subject to a reservation of rights. This decision will be discussed more fully below.

We now refer you to policy #3539-77-36, Form #17-02-3080(4/95) issued for the policy period of February 3, 2002 to February 3, 2003.

Excerpts of certain provisions contained in the above-referenced policy are set forth in the Appendix accompanying this letter. This information is provided so that you may have it available as you review the explanations provided in this letter. Please note that the positions set forth in this letter are based on all of the provisions of the above-referenced policy, and not only on the excerpts set forth in the Appendix. Therefore, we urge you to refer to the full text of the policy and not merely the excerpts set forth in the Appendix.

Subject to the applicable limits of insurance, we will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract for

    1. Bodily injury or property damage to which this insurance applies caused by an occurrence; or

    2. Advertising injury or personal injury to which this insurance applies caused by an offense.

This includes bodily injury, property damage, advertising injury, or personal injury involving:

    1. Automated teller machines

    2. Foreclosed property

    3. Property in any trust, guardianship, or estate for which you are acting in a fiduciary or representative capacity; and

    4. Property which you own and lease to others, when specific insurance which would customarily protect your interest and which you require your lessees to carry, is non-existent, invalid, insufficient, or uncollectible.

This insurance applies to:

    1. Bodily injury or property damage which occurs during the policy period; and

    2. Advertising injury or personal injury caused by an offense committed during the policy period.

Damages for bodily injury include damages claimed by a person or organization for care or loss of services resulting at any time from the bodily injury.

We also refer your attention to the definition section of your policy which defines Bodily Injury, Property Damage, Advertising Injury, Personal Injury and Occurrence. Also, we refer you to the Exclusions section of your policy. Specifically, please review the Willful Violations Exclusion

 

January 7, 2004
New Century Mortgage Corporation
Page 3

and the Expected or Intended Injury Exclusion. Please review these definitions and exclusions which you will find in the Appendix accompanying this letter.

It is the position of the Great Northern Insurance Company that the allegations set forth in this notice of claim may not fall within the insuring agreement, as they may not meet the definitions of Bodily Injury, Property Damage, Personal Injury, Advertising Injury or Occurrence as those terms are defined in the policy. In addition, the exclusions cited above may also apply.

The plaintiff does not allege any "Bodily Injury." There is a claim made for the loss of toner and paper. This does not fit the definition of "Property Damage" since the toner and paper were not damaged, but used in a manner not intended by the plaintiff. Also, this claim does not fit the definition of "Occurrence" since the transmission of this fax was not an accident.

A Telephone Consumer Protection Act claim may include a claim for either "Advertising Injury" or "Personal Injury" as a result of publication of material which invades a person's right of privacy. The Great Northern Insurance Company will provide a defense for New Century Mortgage Corporation, but only due to the potential invasion of privacy claim that may be pursued by individuals which are allegedly part of the "class" of recipients of this fax communication.

In view of the foregoing, the Great Northern Insurance Company will defend New Century Mortgage Corporation, but it reserves the right to deny indemnity for any uncovered claim. Also, the Great Northern Insurance Company would have no duty to indemnify if it is determined that these faxes were sent to businesses only.

This defense is subject to the following reservation: Should the plaintiff obtain judgment predicated upon allegations that fall outside of the insuring agreement, such judgment shall be the responsibility of the defendant and not that of the Great Northern Insurance Company. Furthermore, we reserve our right to seek reimbursement of any defense costs we pay if it is determined that there is no coverage under the policy.

If you have any additional facts that you feel would alter our position, we would be pleased to review that information and give this matter further consideration.

We now refer you to the New Century Mortgage Corporation Commercial Umbrella Policy #7977-03-85, Form #07-02-0815 (9/92) for the policy periods of February 3, 2002 through February 3, 2003.

Excerpts of certain provisions contained in the above-referenced policy are set forth in the Appendix accompanying this letter. This information is provided so that it is available as you

 
January 7, 2004
New Century Mortgage Corporation
Page 4

review the explanation provided in this letter. Please note that the positions set forth in this letter are based on all of the provisions of the above-referenced policy, and not only on the excerpts set forth in the Appendix. Therefore, we urge you to refer to the full text of the policy, and not merely excerpts set forth in the Appendix.

### Coverage A-Excess Follow Form Liability Insurance

Under Coverage A, we will pay on behalf of the insured, that part of loss covered by this insurance in excess of the total applicable limits of underlying insurance, provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of underlying insurance are with respect to Coverage A made a part of this policy, except with respect to:

A   any contrary provision

B.   any provision in this policy for which a similar provision is not contained in underlying insurance.

With respect to the exceptions stated above, the provisions of this policy will apply.

The amount that we will pay is limited as described in Limits of Insurance

Notwithstanding anything to the contrary contained above, if underlying insurance does not cover loss, for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such loss.

We have no obligation under this insurance with respect to any claim or suit settled without our consent.

We now refer your attention to the New Century Mortgage Corporation Commercial Umbrella Policy under Policy #7977-03-856, Form #07-02-0815 for the policy period of February 3 2002 through February 3, 2003.

### Coverage B - Umbrella Liability Insurance

Under Coverage B, we will pay on behalf of the insured, damages the insured becomes legally obligated to pay be reason of liability imposed by law or assumed under an insured contract because of bodily injury, property damage, personal injury, or advertising injury covered by this insurance which takes place during the Policy Period of this policy and is caused by an occurrence. We will pay such damages in excess of the Retained Limit Aggregate specified in Item 4d. of the Declarations  or the amount payable by other insurance, whichever is greater



January 7, 2004
New Century Mortgage Corporation
Page 5

Damages because of bodily injury include damages claimed by any person or organization for care of loss of services resulting at any time from the bodily injury.

This coverage applies anywhere.

The amount we will pay is limited as described in Limits of Insurance.

Coverage B will not apply to any loss, claim, or suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the limits of insurance of underlying insurance.

We have no obligation under this insurance with respect to any claim or suit settled without our consent.

With regards to Commercial Umbrella Policy # 7977-03-85, we are handling Coverage A under the same Reservation of Rights as was previously cited in this letter for the primary general liability policy. Since Coverage A of the Commercial Umbrella Policy #7977-03-85 is responding, Coverage B has not been triggered nor would it be triggered.

In view of the foregoing, the Federal Insurance Company will handle this claim on your behalf. However, this defense is subject to the following reservation: Should the plaintiff obtain judgment predicated upon allegations that fall outside of the insuring agreement, such judgment shall be the responsibility of the defendant and not that of the Federal Insurance Company.

Furthermore, we reserve our right to seek reimbursement of any defense costs we pay if it is determined that that there is no coverage under the policy.

This Complaint requests treble damages and reimbursement of attorney's fees. Neither Policy # 3539-77-36 nor Policy # 7977-03-85 provide coverage for any punitive (treble) damage claim or claim for attorney's fees. Punitive damages are uninsurable as a matter of public policy in Illinois. Any award for punitive(treble) damages and/or attorney's fees will be the sole responsibility of New Century Mortgage Corporation.

The Great Northern Insurance Company and the Federal Insurance Company reserve their rights

 

January 7, 2004
New Century Mortgage Corporation
Page 6

under these policies and applicable law to cite additional applicable policy provisions as may be appropriate. The foregoing reservation is premised upon allegations set forth in the lawsuit and the terms and conditions of the policies. By limiting policy references to those cited, the Great Northern Insurance Company and Federal Insurance Company do not waive any other policy provisions. The insurance policies in their entirety are incorporated by reference as if they had been stated in full.

Sincerely,

Michael J. Najewski
Litigation Examiner   (312-831-3725)

cc:        Financial Guaranty Insurance Brokers, Inc.
           Attn: Mr. Manny Kim
           709 East Colorado Blvd. Suite 230
           Pasadena, CA. 91101



## APPENDIX - POLICY #3525-72-59

**Advertising Injury** - Advertising injury means injury, other than bodily injury or personal injury, arising solely out of one or more of the following offenses committed in the course of advertising your goods, products or services;

1.  Oral or written publication of advertising material that slanders or libels a person or organization;
2.  Oral or written publication of advertising material that violates a persons right of privacy; or
3.  Infringement of copyrighted advertising materials or infringement of trademark or service mark titles or slogans.

**Bodily Injury** - Bodily injury means physical;

1.  Injury;
2.  Sickness or;
3.  Disease
    sustained by a person and/if arising out of the foregoing, mental anguish, mental injury, shock humiliation or death at any time.

**Occurrence** - Occurrence means an accident, including continuous or repeated exposure to substantially the same general or harmful conditions

**Personal Injury** - Personal injury means injury, other than bodily injury, arising out of one or more of the following offenses committed in the course of your business, other than your advertising.

A.  False arrest, detention or imprisonment;
B.  Malicious prosecution(unless insurance thereof is prohibited by law), except when it arises out of, of is directly or indirectly related to:
    1) the restructure, termination, transfer, or collection of any loan, lease, or extension of credit; or
    2) the repossession or foreclosure of property which is security for any loan, lease or extension of credit;
C.  The wrongful eviction from, wrongful injury into or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, unless the person or persons are mortgagors of yours or of anyone for whom you are servicing mortgages, by or on behalf of you, its owner, landlord or lessor.
D.  Oral or written publication of material that slanders or libels a person or organization, except when alleged, charged or suffered by any customer
E.  Oral or written publication of material that violates a persons right of privacy, except when alleged, charged or suffered by any customer; or,
F.  Discrimination (unless insurance thereof prohibited by law) based on race, color religion, sex, age, or national origin; except when alleged, charged, or suffered by any
    1.  Applicant for employment
    2.  Present or former employee
    3.  Prospective employee
    4.  Customer



**Property Damage** - Property damage means;

1    Physical injury to tangible property including the resulting loss of use of
     that property all such loss of use shall be deemed to occur at the time of
     the physical injury that caused it or;

2.   Loss of use of tangible property that is not physically injured or all such of use
     must be deemed to occur at the time of the occurrence that caused it.

### Exclusions

**Willful Violations Exclusion-** This insurance does not apply to **advertising injury or personal
injury** arising out of the willful violation of a penal statute or ordinance committed by or with
the knowledge or consent of the **insured.**

**Expected or Intended Injury Exclusion-**This insurance does not apply to bodily injury or
property damage which results from an act that:

1.   is intended by the insured; or

2.   can be expected from the standpoint of a reasonable person

to cause bodily injury or property damage, even if the injury or damage is of a different degree or
type than actually intended or expected

This exclusion does not apply to bodily injury resulting from the use of reasonable force to
protect persons or property.

### APPENDIX - POLICY #7977-03-85

### Coverage A-Exclusions

**Underlying Insurance Exclusion:** any liability excluded by underlying insurance





**Wildman, Harrold, Allen & Dixon**
2300 Cabot Drive, Suite 455
Lisle, Illinois 60532-3639
630-955-0555
630-955-0662 fax
www.wildmanharrold.com

Wildman Harrold
*Attorneys and Counselors*

**Bart T. Murphy**
630-955-6392
murphyb@wildmanharrold.com

June 17, 2004

**VIA E-MAIL AND FACSIMILE**
*Facsimile No. (312) 454-4391*

Mr. Michael J. Najewski, Jr.
Litigation Examiner
Chubb Insurance Companies
233 S. Wacker Dr., Suite 4700
Chicago, IL 60606

        Re:    *Bernstein v. New Century Mortgage*
                No. 02 CH 7745 (Cook County, IL)
                Your Insured:  New Century Mortgage

Dear Mr. Najewski:

New Century Mortgage has received a demand from Plaintiff in the amount of $6,000,000.00.  Enclosed is a copy of the demand letter dated June 14, 2004.

As you are aware, I have been attempting to arrange a mediation, and Plaintiff's counsel has agreed to participate in the mediation.  We have requested Chubb to participate in the mediation, and as of this date, you have advised me that Chubb is still evaluating its coverage position.  I have advised you that Plaintiff has filed a motion for class certification, which is presently being briefed.  This motion is set for argument on August 10, 2004.  Plaintiff's counsel has stated that if they obtain class certification, they may not be interested in settling.  Therefore, it is imperative that we get a mediation going as soon as possible.

In that the demand of $6,000,000.00 is well within policy limits, New Century requests that Chubb settle this matter within policy limits.

Very truly yours,

Bart T. Murphy

BTM/jdb
Enclosure
cc:    Mark Malovos, Esq., New Century (via e-mail)

Wildman, Harrold, Allen & Dixon LLP 1392036

**EXHIBIT**

G



JUN-14-2004  14:42                                    312 419 0373    P.02/02

# EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603-3403
(312) 739-4200
(800) 644-4673
(312) 419-0379 (FAX)
Email: edcombs@aol.com
www.edcombs.com

June 14, 2004

FAX TO (312) 201-2555

Samuel S. Cohen, Esq.
Wildman, Harrold, Allen & Dixon
225 W. Wacker Dr., Suite 3000
Chicago, IL 60606

FAX TO (630) 955-0662

Bart T. Murphy, Esq.
Wildman, Harrold, Allen & Dixon
2300 Cabot Dr., Suite 455
Lisle, IL 60532

Re:    Bernstein v. New Century Mortgage (8128)

Dear Counsel:

Please be advised that at this time, plaintiff is willing to settle the above captioned matter on a class basis for a total of $6,000,000.00. Please contact me once you have had a chance to discuss this offer with your client.

Sincerely,

Daniel A. Edelman

TOTAL P.02



## TRESSLER, SODERSTROM, MALONEY & PRIESS
### ATTORNEYS AT LAW

Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, IL 60606
312/627-4000
312/627-1717 (fax)
www.tsmp.com

Daniel J. Cunningham
(310) 203-4026
dcunningham@mail.tsmp.com

June 22, 2004

<u>VIA FACSIMILE AND CERTIFIED MAIL (RETURN RECEIPT REQUESTED)</u>

Bart T. Murphy, Esq.
Wildman, Harold, Allen & Dixon
2300 Cabot Drive, Suite 455
Lisle, Illinois 60532-3639

    Re:   *Bernstein v. New Century Mortgage Corporation*, No. 02 CH 06907 (Cook
          County, Chancery Division).
          Claim No.: 0405-03-091557
          Our File Number: 2246-42

Dear Mr. Murphy:

       Thank you for faxing me a copy of the Second Amended Complaint last week. As I indicated in our brief telephone conversation, our firm has been retained to assist Great Northern Insurance Company and Federal Insurance Company with their analysis of certain insurance coverage issues arising out of the above-referenced lawsuit. As you no doubt recall, Great Northern Insurance Company previously agreed to defend New Century Mortgage Corporation ("NCMC") subject to a reservation of rights letter dated January 7, 2004.

       As we understand that mediation is currently scheduled to proceed on June 23, 2004, the purpose of this letter is to inform you of our clients' position with regard to the duty to indemnify. Based on the facts and policy provisions outlined below, Great Northern Insurance Company and Federal Insurance Company must inform you that they do not owe NCMC a duty to indemnify with regard to any damages awarded in the suit. As such, Great Northern Insurance Company and Federal Insurance Company will not participate in the upcoming mediation.

```
EXHIBIT
H
```

LINCOLNSHIRE, ILLINOIS        WHEATON, ILLINOIS        COSTA MESA, CALIFORNIA

LOS ANGELES, CALIFORNIA        NEWARK, NEW JERSEY        NEW YORK, NEW YORK

Bart T. Murphy
June 22, 2004
Page 2 of 8

I.    **Policies**

    Great Northern Insurance Company issued primary policy number 3539-77-36 to New Century Financial Corporation, with an effective period of February 3, 2002 to February 3, 2003. This policy includes form 17-02-308 (Ed. 4-95).

    Sitting atop the primary policy is Federal Insurance Company's commercial umbrella policy number 7977-03-85. Coverage A under this policy follows form to the primary policy issued by Great Northern Insurance Company and Coverage B provides coverage excess of a retained limit of zero dollars. This policy includes form 07-02-0185 (Ed. 9/92).

II.    **Underlying Suit**

    Plaintiff Paul Bernstein filed his original complaint on April 5, 2002, and asserted causes of action based on violation of the Telephone Consumer Protection Act ("TCPA") and violation of the Illinois Consumer Fraud Act ("ICFA"). As a basis for the suit, plaintiff claims that he received an unsolicited fax advertisement on February 26, 2002. The fax in question advertises NCMC's mortgage loans and includes the following title: "Attention Homeowners—Get Cash Fast."

    Plaintiff subsequently filed two amended complaints, including a second amended complaint filed on September 30, 2003. Great Northern Insurance Company and Federal Insurance Company received a copy of the second amended complaint for the first time on June 16, 2004. The Second Amended Complaint asserts the following causes of action:

        Count I—Violation of the Telephone Consumer Protection Act
        Count II—Conversion
        Count III—Violation of the Illinois Consumer Protection Act
        Count IV—Property Damage

    Plaintiff seeks to establish a class action on behalf of all persons with Illinois fax numbers who received the fax in question within a certain time period and with respect to whom NCMC cannot provide evidence of consent. Plaintiff seeks actual damages, statutory damages, an injunction, attorney's fees, and costs.

    Subsequent investigation of this claim reveals the following additional relevant facts:

- NCMC and Fax.Com (a facsimile broadcasting company) executed a "Fax Broadcasting Contract" on June 7, 2001 which defines the scope of the fax broadcasting services to be

Bart T. Murphy
June 22, 2004
Page 3 of 8

performed for NCMC. This contract predates the inception of the relevant policy period by over six months. Paragraph 11, labeled "Legal Issues Re Fax Broadcasting," specifically references the TCPA and states that NCMC is aware of the "significant legal issues and risks" attendant to the faxing of unsolicited fax advertisements.

- On behalf of NCMC, Fax.Com sent the first batch of 200,000 faxes during the week of June 11, 2001. This predates the inception of the relevant policies by over six months.

- Fax.Com sent the second wave of faxes between February 19 and 21, 2002 and sent the third wave between February 25 and 28, 2002.

- Although there were three waves of faxes, you have informed us that Fax.Com broadcast the same advertisement in each of the three waves.

If you dispute any of the facts cited above, please provide whatever additional information you have to us as soon as possible.

III.   **Coverage Position**

Based on the relevant policy language and currently known facts, Great Northern Insurance Company and Federal Insurance Company must deny that they currently owe any duty to indemnify for the *Bernstein* suit for the reasons set forth below:

1.   The available facts confirm that the advertisement in question was sent 200,000 times prior to the inception of the policies at issue. This fact serves to bar coverage for any "advertising injury" or "personal injury" because of the Prior Acts Exclusion, which states:

> Prior Acts—This insurance does not apply to **advertising injury** or personal injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

As the first publication occurred several months before the beginning of the policy period, Great Northern Insurance Company and Federal Insurance Company cannot owe a duty to indemnify with regard to the *Bernstein* suit under any coverage provided for "advertising injury" or "personal injury."

2.   Any damages awarded in the *Bernstein* suit could not arise out of "bodily injury." "Bodily injury" is defined as:



Bart T. Murphy
June 22, 2004
Page 4 of 8

Bodily injury means physical:

- Injury
- Sickness, or
- Disease

Sustained by a person and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

Clearly, the plaintiff has not even alleged "bodily injury" as that term is defined above.

3. Any damages awarded in the *Bernstein* suit would not arise out of "property damage." "Property damage" is defined as:

Property damage means:

- Physical injury to tangible property including the resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

To date, we have seen nothing which establishes that the plaintiff or any member of the putative class actually suffered any "property damage" as that term is defined above.

4. The known facts establish that the *Bernstein* suit does not arise out of an "occurrence." "Occurrence" is defined to include "an accident, including continuous or repeated exposure to substantially the same general harmful condition." It does not appear that any damages arising out of the *Bernstein* suit result from an "accident" as required in the definition of "occurrence." In fact, the Fax Broadcasting Agreement dated June 7, 2001 establishes that NCMC was well aware of the risks associated with sending unsolicited fax advertisements under both federal and state law.

5. While our clients dispute that any "property damage" has occurred, to the extent that there was "property damage," it is excluded by the Expected or Intended Exclusion, which provides:




Bart T. Murphy
June 22, 2004
Page 5 of 8

This insurance does not apply to **bodily injury** or **property damage** which results from an act that:

- is intended by the insured; or

- can be expected from the standpoint of a reasonable person

to cause bodily injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected.

This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect person or property.

Once again, the Fax Broadcasting Agreement dated June 7, 2001 establishes that NCMC was well aware of the risks associated with sending unsolicited fax advertisements under both federal and state law. As such, any damage must fall within the terms of this exclusion.

6. The policies in question do not provide coverage for any award of damages in *Bernstein* that are punitive in nature. In addition, the public policies of the jurisdictions potentially implicated by this claim prohibit insurance companies from covering punitive awards.

7. In Count III (which pertains to the Illinois Consumer Fraud Act), the plaintiff specifically asks for "attorneys fees and litigation expenses." Please note that the policies at issue do not provide coverage for "attorneys fees and litigation expenses" incurred by plaintiffs. In addition, the alleged violation of the Illinois Consumer Fraud Act does not arise out of "bodily injury," "property damage," "advertising injury," or "personal injury."

8. With regard to each of the four counts in the second amended complaint, plaintiff seeks an injunction. Please note that injunctions are not "damages" and, therefore, are not covered under the policies.

In addition to the above, Great Northern Insurance Company and Federal Insurance Company reserve the right to assert the following additional coverage defenses:

1. Any damages awarded in the *Bernstein* suit may not arise out of "advertising injury." "Advertising injury" is defined as:

Advertising injury means injury, other than bodily injury or personal injury, arising solely out of one or more of the following offenses committed in the course of advertising your goods, products, or services:

Bart T. Murphy
June 22, 2004
Page 6 of 8

- oral or written publication of material that slanders or libels a person or organization;

- oral or written publication of advertising material that violates a person's right of privacy; or

- infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.

2. Any damages awarded in the *Bernstein* suit would not arise out of "personal injury." "Personal injury" is defined as:

   **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the acts listed below, other than your **advertising** activities.

   A. false arrest, detention or imprisonment;

   B. malicious prosecution (unless insurance thereof is prohibited by law), except when it arises out of, or is directly or indirectly related to:

      1. the restructure, termination, transfer or collection of any loan, lease or extension of credit; or

      2. the repossession or foreclosure of property which is security for any loan, lease, or extension of credit;

   C. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, unless the person or persons are mortgagors of yours or of anyone for whom you are servicing mortgages, by or on behalf of you, its owner, landlord or lessor;

   D. oral or written publication of material that slanders or libels a person or organization, except when alleged, charged or suffered by any customer;

   E. oral or written publication of material that violates a person's right of privacy, except when alleged, charged or suffered by any customer; or



Bart T. Murphy
June 22, 2004
Page 7 of 8

    F.    discrimination (unless insurance thereof is prohibited by law) based on race, color, religion, sex, age or national origin, except when alleged, charged or suffered by any:
        1.    applicant for employment;
        2.    present or former employee;
        3.    prospective employee; or
        4.    customer.

3. The Willful Violations Exclusion may bar coverage. The exclusion provides:

> Willful Violations—This insurance does not apply to advertising injury or personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured.

At a minimum, this exclusion would bar coverage for damages linked to willful violation of the Illinois Criminal Code (720 ILCS 5/26-3), and any other penal statute or ordinance.

4. To the extent that there is "bodily injury," "property damage," "advertising injury" or "personal injury" (which we dispute), coverage is only available for "bodily injury" and "property damage" which occurs during the policy period and for "advertising injury" and "personal injury" which arises out of an offense committed during the policy period.

5. To the extent that the damages awarded in *Bernstein* involve any covered "advertising injury" or "personal injury" (which we dispute), coverage would not be available for damages owed to businesses as opposed to persons. This is because the enumerated offense of "oral or written publication of advertising material that violates a person's right of privacy" specifically refers to a "person" rather than to a business.

6. The coverage defenses asserted herein apply to both the primary policy and the commercial umbrella policy.

    Great Northern Insurance Company and Federal Insurance Company reserve the right to assert additional coverage defenses as they become known. If you have any additional facts which you would like us to consider, please provide them to us as soon as possible.

    Great Northern Insurance Company will continue to provide for NCMC's defense pursuant to reservation of rights. However, it reserves the right to withdraw its defense of the

Bart T. Murphy
June 22, 2004
Page 8 of 8

*Bernstein* suit in the event that a court determines that it does not owe a duty to defend or
indemnify. We ask that you provide copies of any defense invoices reflecting work performed
on or after the date of tender (August 27, 2003) to us at your earliest convenience.

Your client may wish to adjourn the scheduled mediation so that it may put its prior
carrier on notice, and so that it may review this letter and respond with any additional facts or
pleadings it feels may impact Great Northern Insurance Company's and Federal Insurance
Company's decision on indemnity.

If your client disagrees with the position taken regarding this matter, it may have the
matter reviewed by the California Department of Insurance. The address and telephone number
are as follows:

California Department of Insurance
Claim Services Bureau
200 South Spring Street, 11th Floor
Los Angeles, California 90013
(800) 927-4357 or (213) 897-8921

Please do not hesitate to contact me if you have any questions about the above.

Sincerely,

Daniel J. Cunningham

cc:    Michael J. Najewski
       Chubb Group of Insurance Companies
       Sears Tower, Suite 4700
       233 South Wacker Drive
       Chicago, IL 60606

       Financial Guaranty Insurance Brokers, Inc.
       Attn: Mr. Manny Kim
       709 East Colorado Blvd., Suite 230
       Pasadena, CA 91101

  

**TRESSLER, SODERSTROM, MALONEY & PRIESS**
ATTORNEYS AT LAW

Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, IL 60606
312/627-4000
312/627-1717 (fax)
www.tsmp.com

Daniel J. Cunningham
(310) 203-4026
dcunningham@mail.tsmp.com

July 7, 2004

**VIA FACSIMILE AND CERTIFIED MAIL (RETURN RECEIPT REQUESTED)**

M. Catherine Reid, Esq.
Gauntlett & Associates
18400 Von Karman, Suite 300
Irvine, California 92612

Re:   *Bernstein v. New Century Mortgage Corporation*, No. 02 CH 06907 (Cook
County, Chancery Division).
Claim No.: 0405-03-091557
Our File Number: 2246-42

Dear Ms. Reid:

On behalf of Great Northern Insurance Company and Federal Insurance Company, this letter will respond to yours of June 30, 2004 in which you take issue with the position set forth in our letter of June 22, 2004.

First, while we do not know that California law will govern this claim, we do know that you have not correctly characterized that state's law pertaining to the duty to settle. California courts do indeed permit insurers to consider their coverage defenses in determining whether to contribute to the settlement of an uncovered claim. In fact, in *Marie Y. v. General Star*, 110 Cal.App.4th 928, 958 (2003), the appellate court specifically stated:

> However, where the kind of claim asserted is not covered by the insurance contract (and not simply the amount of the claim), an insurer has no obligation to pay money in settlement of a noncovered claim, because, "The insurer does not... insurer the entire range of an insured's well-being, outside the scope of and unrelated to the insurance policy, with respect to paying third party claims. It is an insurer, not a guardian angel." (*quoting, Camelot by the Bay Condo. Assoc. v. Scottsdale Ins. Co.*, 27 Cal.App.4th 33, 52 (1992). )

**EXHIBIT I**

LINCOLNSHIRE, ILLINOIS       WHEATON, ILLINOIS       COSTA MESA, CALIFORNIA

LOS ANGELES, CALIFORNIA       NEWARK, NEW JERSEY       NEW YORK, NEW YORK




M. Catherine Reid
July 7, 2004
Page 2 of 2

Based on the *Marie Y* case and similar cases, Great Northern Insurance Company and Federal Insurance Company clearly have the right to consider their coverage defenses in deciding whether to participate in settlement negotiations.

We further note that the cases cited in your letter are distinguishable from this claim. The *Blue Ridge* case involved an insurer seeking reimbursement from an insured, which is not the case here. Unlike the instant claim, both the *Johansen* and *Communale* cases involved an insurer that wrongfully denied coverage. Finally, the *Kransco* case is not controlling, as the insurer did not contest on appeal a jury's finding that it had committed bad faith by failing to settle a claim within limits.

Second, you have asked that Great Northern Insurance Company and Federal Insurance Company "consent to any settlement that is reached between New Century and plaintiff." To the extent that your client deems it appropriate to settle uncovered claims for $6 million (the amount apparently demanded by plaintiff) or less, our clients will not stand in their way. Please note that the facts upon which we base this position are set forth in our letter of June 22, 2004. In that letter, we asked that you provide us with any additional or contrary facts which might affect our coverage position. As you have not provided any additional or contrary facts to us, we must assume that the facts upon which we relied are accurate and that the amount demanded in settlement is not covered. However, we reiterate our request that you provide us with any additional or contrary facts which might be relevant to the coverage issues. For example, to the extent that the advertisement sent during our clients' policy period was different than the advertisement sent before the policy period, we ask that you communicate that to us immediately.

Finally, your letter of June 30, 2004 mentioned that we would receive the underlying defense bills with the mailed copy of the letter. Perhaps delivery of the invoices was delayed because of the Holiday, as we have not yet received them. To the extent that they have not yet been mailed, we ask that you overnight them at your earliest convenience.

Please do not hesitate to contact me if you have any questions about the above.

Sincerely,

Daniel J. Cunningham

 

M. Catherine Reid
July 7, 2004
Page 3 of 3


cc:    Michael J. Najewski
      Chubb Group of Insurance Companies
      Sears Tower, Suite 4700
      233 South Wacker Drive
      Chicago, IL 60606

      Financial Guaranty Insurance Brokers, Inc.
      Attn: Mr. Manny Kim
      709 East Colorado Blvd., Suite 230
      Pasadena, CA 91101

Atty. No. 41106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| WHITING CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | 02 CH 6332 |
| | ) | Judge McGann |
| v. | ) | |
| | ) | |
| MSI MARKETING, INC., | ) | |
| | ) | This document relates to: |
| Defendant. | ) | |
| ---------------------------------------------------------------- | ) | |
| PAUL BERNSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 CH 06907 |
| | ) | |
| v. | ) | |
| | ) | |
| NEW CENTURY MORTGAGE | ) | |
| CORPORATION and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF FILING

**TO:**  See attached service list.

   **PLEASE TAKE NOTICE** that on August 16, 2004, we caused to be filed with the Clerk of the Circuit Court of Cook County, Illinois, County Department, Chancery Division, the following document, a copy of which is attached hereto and served upon you: **THIRD AMENDED COMPLAINT.**

*Julie Clark*
Julie Clark

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Julie Clark

1

EDELMAN, COMBS, LATTURNER & GOODWIN LLC
120 S. LaSalle St., 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106

## CERTIFICATE OF SERVICE

I, Julie Clark, hereby certify that on August 16, 2004, I caused a copy of this document and the documents referred to herein, to be served via U.S. Mail upon the following parties:

Samuel S. Cohen
Wildman, Harrold, Allen & Dixon
225 W. Wacker Dr., Suite 3000
Chicago, IL 60606


Bart T. Murphy
Wildman, Harrold, Allen & Dixon
2300 Cabot Dr., Suite 455
Lisle, IL 60532


Mary Ann L. Wymore
Greensfelder, Hemker & Gale, P.C.
2000 Equitable Building
10 South Broadway
St. Louis, Missouri 63102


Julie Clark

J:\case\new8.128\pleading\notfil8.2.04

2

Atty. No. 41660

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| WHITING CORPORATION, | ) | |
| | ) | |
| Plaintiff | ) | No. 02 CH 6332 |
| | ) | Judge Patrick E. McGann |
| v. | ) | |
| | ) | |
| MSI MARKETING, INC., | ) | |
| | ) | |
| Defendants. | ) | Related To: |
| | ) | |

| | | |
|---|---|---|
| PAUL BERNSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 CH 06907 |
| | ) | |
| v. | ) | |
| | ) | |
| NEW CENTURY MORTGAGE | ) | |
| CORPORATION and JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

### THIRD AMENDED COMPLAINT -- CLASS ACTION

### MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.    Plaintiff Paul Bernstein brings this action to secure redress for the actions of defendant New Century Mortgage Corporation in sending out unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and common law.

### PARTIES

2.    Plaintiff Paul Bernstein is an attorney who practices law in downtown Chicago.

1

3.      Defendant New Century Mortgage Corporation is a California corporation with its principal place of business in California. It does business in Illinois. It maintains offices at 1000 N. Plaza Drive, Suite 401, Schaumburg, IL 60173.

## FACTS

4.      On or about February 26, 2002, defendant New Century Mortgage Corporation caused the unsolicited fax advertisement attached as Exhibit A to be transmitted to plaintiff's facsimile machine by Fax.Com, Inc., a fax broadcaster.

5.      Plaintiff Paul Bernstein had no prior business relationship with defendant New Century Mortgage Corporation or Fax.Com, Inc., and had not authorized the sending of fax advertisements to plaintiff.

6.      The fax advertisement at issue contains a telephone number, 800-443-7628, associated with the mass "broadcasting" by Fax.com, Inc. of unsolicited advertising faxes to lists of numbers compiled by "fax broadcasters" and sold or otherwise made available to businesses desirous of engaging in illegal fax advertising. The same number was listed in the FCC's citation against Fax.com, Inc., File No. EB-02-TC-120, 2002 WL 1798553 (FCC, Aug. 7, 2002), as present in other unsolicited faxes sent to large numbers of persons by Fax.com, Inc.

7.      Defendant or its agents designed the advertising material in question in a manner calculated to make its receipt particularly expensive. The inclusion of graphics and bold headlines and words in the fax causes it to consume unusually large amounts of toner or ink. Heavy black headlines and graphics cause a fax to consume as much toner or ink as a dozen or more ordinary business letters.

8.      There is no reasonable alternative to the receipt of the illegal faxes.

2

Professionals such as plaintiffs need to leave their fax machines on in order to receive urgent communications which they desire to receive. Based on experience and the FCC citation against Fax.com, Inc., dialing the "remove" numbers provided on <u>Exhibit A</u> does <u>not</u> result in cessation of unsolicited faxes. Indeed, it may result in the dialer being placed on a "sucker list" of people that actually pay attention to unsolicited faxes and being inundated with other unsolicited faxes. Note 25 of the FCC citation, File No. EB-02-TC-120, 2002 WL 1798553 (FCC, Aug. 7, 2002), states:

> Information provided by consumers indicates that Fax.com continued to send faxes even after receiving opt-out calls. For instance, a log provided by William Robert White, President of Regency Sales, Inc., documents over 50 attempts between May 2000 and August 2001 to use Fax.com's opt-out numbers to halt Regency's receipt of unsolicited advertisements from Fax.com clients. Despite these attempts, Fax.com continued to transmit unsolicited advertisements to Regency, as evidenced by at least 12 faxes received by Regency from December 2001 to February 2002. See Table 1; see also Letter from Andrew Hansis to Consumer Information Bureau (Oct. 5, 2001) (October 5 Hansis Letter) (stating that Mr. Hansis continued to receive faxes even after using Fax.com's automated opt-out system and speaking with a senior Fax.com employee in an effort to end the faxing); Consumer Form for Telephone-Related Issues from Norman Jensen, III (rec'd Jan. 8, 2002) (consumer continued to receive at least one advertisement a week despite "repeatedly" calling opt-out numbers and faxing a message to the originating fax number asking that his telephone facsimile number be removed from the fax number database); Consumer Form for Telephone-Related Issues from Dora Wong Goto (rec'd Oct. 15, 2001) (Goto Complaint Form); annotated copies of faxes submitted by James Allan Dobbins. It is clear that a call to one Fax.com opt-out line does not end all fax transmissions from the company. We emphasize here that even an effectively administered opt-out system does not change the statutory ban on sending unsolicited facsimile advertisements or insulate such transmissions from statutory penalties. However, the fact that Fax.com apparently does not even adhere to its own stated procedures makes its conduct even more egregious.

9.    Based on the above facts, plaintiff alleges, on information and belief, that the fax attached hereto was sent as part of a mass "broadcasting" of faxes.

## COUNT I – TCPA

10.    Plaintiff incorporates ¶¶ 1-9.

3

11.  The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine..." 47 U.S.C. §227(b)(1)(C).

12.  The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—**

> **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
>
> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever, is greater, or**
>
> **(C) both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

13.  Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

14.  Plaintiff and each class member is entitled to statutory damages.

15.  If the evidence shows the violation was willful, plaintiff requests trebling of the damages.

16.  Defendants should be enjoined from committing similar violations in the future.

4

## CLASS ALLEGATIONS

17.     Plaintiff brings this claim on behalf of a class, consisting of (a) all persons wherever located (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

18.     The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

19.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.     Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.     The manner in which defendants compiled or obtained their list of fax numbers;

c.     Whether defendants thereby violated the TCPA;

d.     Whether defendants thereby committed the tort of conversion;

e.     Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

f.     Whether defendants thereby tortiously damaged the property of plaintiff.

20.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to

5

vigorously pursue this action.

21.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

22.    Several courts have certified class actions under the TCPA. Nicholson v. Hooters of Augusta, Inc., 245 Ga.App. 363, 537 S.E.2d 468 (2000); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 50 P.3d 844 (Ariz. App. 2002) (private class actions); see State of Texas v. American Blast Fax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001) (state enforcement action).

23.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

        a.    Actual damages;

        b.    Statutory damages;

        c.    An injunction against the further transmission of unsolicited fax advertising;

        d.    Costs of suit;

        e.    Such other or further relief as the Court deems just and proper.

## COUNT II -- CONVERSION

24.    Plaintiff incorporates ¶¶ 1-9.

6

25.    By sending plaintiff and the class members unsolicited faxes, defendants converted to their own use ink or toner and paper belonging to plaintiff and the class members.

26.    Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

27.    By sending the unsolicited faxes, defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable.  Such appropriation was wrongful and without authorization.

28.    Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

29.    The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

30.    Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose.   Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

31.    Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

32.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons wherever located (b) who, on or after a date 5  years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

7

33.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 50 members of the class.

34.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

a.     Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.     Whether defendants thereby violated the TCPA;

c.     Whether defendants thereby committed the tort of conversion;

d.     Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

e.     Whether defendants thereby tortiously damaged the property of plaintiff.

35.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

36.     A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

37.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a.     Appropriate damages;

    b.     An injunction against the further transmission of unsolicited fax advertising;

    c.     Costs of suit;

    d.     Such other or further relief as the Court deems just and proper.

### COUNT III – ICFA

38.    Plaintiff incorporates ¶¶ 1-9.

39.    Defendants engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

40.    Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

41.    Defendants engaged in such conduct in the course of trade and commerce.

42.    Defendants engaged in such conduct knowing that such conduct was causing recipients of their advertising to bear the cost thereof.

43.    Defendants' shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair. In addition, defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

44.    The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

45.    Defendants should be enjoined from committing similar violations in the

future.

## CLASS ALLEGATIONS

46.     Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

47.     The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

48.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.     Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.     Whether defendants thereby violated the TCPA;

c.     Whether defendants thereby committed the tort of conversion;

d.     Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

e.     Whether defendants thereby tortiously damaged the property of plaintiff.

49.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

10

50.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

51.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a.    Appropriate damages;

b.    An injunction against the further transmission of unsolicited fax advertising;

c.    Attorney's fees, litigation expenses and costs of suit;

d.    Such other or further relief as the Court deems just and proper.

## COUNT IV – TRESPASS

52.    Plaintiff incorporates ¶¶ 1-9.

53.    By sending plaintiff and the class members unsolicited faxes, defendants damaged paper belonging to plaintiff and the class members, in a manner constituting a trespass.

54.    Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and used to print the faxes.

55.    By sending the unsolicited faxes, defendants damaged plaintiff's paper and toner used to print the faxes. Such action was wrongful and without authorization.

11

56.     Defendants knew or should have known that their action was wrongful and without authorization.

57.     The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

58.     Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

59.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

60.     Plaintiff brings this claim on behalf of a class, consisting of (a) all persons wherever located (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

61.     The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

62.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.      Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.      Whether defendants thereby violated the TCPA;

c.      Whether defendants thereby committed the tort of conversion;

d.      Whether defendants thereby engaged in unfair and deceptive acts and

12

practices, in violation of the ICFA.

    e.    Whether defendants thereby tortiously damaged the property of plaintiff.

    63.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

    64.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

    65.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

    WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a.    Appropriate damages;

    b.    An injunction against the further transmission of unsolicited fax advertising;

    c.    Costs of suit;

    d.    Such other or further relief as the Court deems just and proper.

_____

Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Julie Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41660
J:\case\new8.128\pleading\3RDamd.cmplt.wpd

14

# EXHIBIT A

02/26/02 07:52:21          ->          3122808181  <-1 312 280-8190->    Page 001

## ATTENTION HOMEOWNERS:

# Get Cash FAST!



- **Same-Day Approvals!**
- Self-Employed OK!
- Bankruptcy OK!
- Foreclosure OK!
- Loans For Any Purpose
- Cash Within 7 Days
- Competitive Rates
- Over $7 Billion Loaned



## CALL NOW!

# 800-205-9422

Lower Your Payment Today With A First
Mortgage Loan From New Century
Mortgage Corporation

 NEW CENTURY™
MORTGAGE CORPORATION


EQUAL HOUSING
LENDER

"When the others say no,
New Century says YES!"

Certain conditions and restrictions may apply. New Century Mortgage Corporation is a nationally recognized lender.

TO HAVE YOUR NUMBER REMOVED FROM OUR DATABASE, PLEASE CALL OUR AUTOMATED TOLL-FREE CENTER AT **800-443-7628.**

# EXHIBIT B

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement"), executed on December 8, 2004, is entered into by and between Paul Bernstein. ("Plaintiff"), individually and as the representative of a class of all similarly situated persons (the "Settlement Class") and New Century Mortgage Corporation as further defined in Section Two of this Agreement ("New Century"), sometimes collectively referred to herein as the "Parties", and Edelman, Combs, Lattumer & Goodwin, LLC.

## RECITALS

WHEREAS, litigation between the Parties entitled *Bernstein v. New Century Mortgage Corporation*, No. 02 CH 06907 (the "Bernstein Litigation"), is pending in the Circuit Court of Cook County, Illinois, Chancery Division (the "Court"), which the Parties wish to settle, compromise and terminate;

WHEREAS, Plaintiff has alleged in the Bernstein Litigation that New Century violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227(b)(1)(C), and state law, by sending out unsolicited advertisements to the Settlement Class as defined in this Agreement.;

WHEREAS, for purposes of settlement only, the Parties have agreed to stipulate to a Class comprised of all persons in the United States and its territories who received who received an unsolicited facsimile advertisement from New Century at any time subsequent to April 4, 1997.

WHEREAS, the Parties have agreed on a compromise and settlement which is in the best interests of all Parties, including the Settlement Class and all of its members;

WHEREAS, Plaintiff's counsel have conducted a full investigation into the facts and law relating to the Bernstein Litigation and the Settlement Class;

WHEREAS, after considering the benefits that the Settlement Class will receive

1452509-5

under the settlement which is the subject of this Agreement, the attendant risks, uncertainties and delays of litigation, New Century's insurer's assertions that they do not have coverage for the claims being asserted against New Century, Bernstein and his counsel have concluded that it is fair, equitable and in the best interests of the Settlement Class to resolve the Released Claims (as defined below in paragraph seven) upon the terms and conditions provided for in this Agreement;

WHEREAS, after considering the additional expense and delay which would result from the continuation of the Bernstein Litigation, the attendant risks, uncertainties and delays of litigation, New Century has determined that it is appropriate to resolve the Release Claims upon the terms and conditions provided for in this Agreement;

WHEREAS, this Agreement has been negotiated among the Parties hereto in good faith and at arm's length, and the Parties hereto have agreed to resolve the Released Claims on the terms and conditions set forth herein; and

WHEREAS, New Century expressly denies the foregoing allegations made against it and any other allegations raised or that could have been raised by Bernstein in the Bernstein Litigation and by entering into this Agreement it does not admit the violation of any state, federal, local or common law at any time and that it is understood and agreed that this Agreement does not constitute and shall not be deemed or construed as constituting an admission that New Century has committed any of the acts alleged above or violated any state, federal, local or common law or regulation.

## PROVISIONS

NOW, THEREFORE, for and in consideration of the aforesaid Recitals and the covenants and promises hereinafter set forth, all constituting valuable consideration, the Parties agree

as follows:

1. **Recitals.** The Recitals set forth above are incorporated by reference as integral provisions of this Agreement.

2. **Key Definitions.**

a. "New Century" as used herein shall include New Century Mortgage Corporation and all of its affiliates and subsidiaries including its parent New Century Financial Corporation.

b. "Plaintiff" as used herein shall include both the named plaintiff Paul Bernstein and the members of the Settlement Class.

c. "Class Period" as used herein shall mean the period April 4, 1997 to the date of this Agreement.

3. **Stipulation to Settlement Class.** Plaintiff and New Century stipulate to the certification of a settlement class comprised of all persons or entities located anywhere in the United States who were sent or received an unsolicited advertising fax from or on behalf of New Century during the period April 4, 1997 to the date of this Agreement (the "Settlement Class"). Persons or entities which have previously entered into settlement agreements with New Century Mortgage regarding the transmission of unsolicited facsimile ads are excluded from the Settlement Class. This stipulation is made for purposes of settlement only and if this Agreement is rescinded or revoked, this stipulation shall not be binding upon either New Century or Plaintiff and shall not affect any subsequent determination as to whether to certify a class. This Agreement is contingent upon the Court certifying the Settlement Class as defined in this paragraph. In the event that the Court refuses to certify the Settlement Class in the manner set forth in this paragraph, this Agreement shall be

voidable at the option of New Century. In the event New Century elects to exercise its option to rescind the this Agreement, it shall do so by serving written notice of its intent to rescind the Agreement upon Class Counsel within five business days of the date the Court issues an order regarding certification of a class.

> 4. **Stipulation as to Counsel for Settlement Class and Class Representative.**

Plaintiff and New Century stipulate to the appointment of Edelman, Combs Latturner & Goodwin, LLC as Counsel for the Settlement Class ("Putative Class Counsel" or "Class Counsel"). Should the Court approve its appointment, Edelman, Combs, Latturner & Goodwin, LLC agrees to serve as Class Counsel and to assume and perform all of the duties and obligations required of Class Counsel including but not limited to fairly and adequately protecting the interests of the Settlement Class The Parties further stipulate to the appointment of Paul Bernstein as the Class Representative. These stipulations are for settlement purposes only and are not effective in any other matter. Further in the event this Agreement is rescinded or revoked, these stipulations shall not be binding upon New Century. This Agreement is contingent upon the entry of a court order which is not subject to appeal, granting final certification of the Settlement Class.

> 5. **Settlement Payment.** New Century agrees to pay the total sum of

$1,950,000.00 (One Million Nine Hundred-Fifty Thousand and No/100 Dollars) to settle the Bernstein Litigation (the "Settlement Payment"). All claims of the Settlement Class, costs, including costs of notice and administration of the class and this settlement, and attorney's fees, are to be paid from the Settlement Payment. Upon payment of the full amount of the Settlement Payment, New Century will have fulfilled all of its obligations under the Agreement and will be released as provided in this Agreement.

1452509-5                         **Page 4 of 17**

6.    **Distribution of Settlement Payment.**  The Settlement Payment is to be distributed as follows. First, the Settlement Payment is to be used to pay the costs of issuing notice to the Settlement Class.   Second, the Settlement Payment is to be used to pay the costs of administering this settlement, including payment of claims submitted by class members. Third, the Settlement Payment is to be used to pay the attorney's fees of Plaintiff's Counsel/Putative Class Counsel as approved by the Court.  Fourth, the Settlement Payment is to be used to pay the valid claims of the Settlement Class and an incentive award to the name Plaintiff, as set forth below.  And fifth, any remaining amount of the Settlement Payment after satisfaction of each of the preceding items, is to be distributed as a cy pres award to the charitable organizations designated by New Century and as approved by the Court, in accordance with paragraph number 12 below.

7.    **Motion for Preliminary Approval of Class Settlement.**  The Parties agree that they shall file a Joint Motion for Preliminary Approval of the Class Settlement.  The Parties shall act reasonably and cooperate in the preparation of this motion. This motion shall set forth the form and manner of the proposed notice to the Settlement Class. New Century shall not be required to pay any portion of the Settlement Payment, prior to the time the Court grants preliminary approval of the proposed settlement. The motion shall also set forth the proposed dates by which members of the Settlement Class may opt out of the Settlement Class or file objections to the proposed settlement.  Further the motion for preliminary approval shall set forth a procedure for members of the Settlement Class to file claims to obtain a cash payment and the date by which such claims must be filed or postmarked to be accepted.  This Agreement is contingent upon the Court granting preliminary approval to the settlement of the Bernstein Litigation according to the terms set forth herein.

1452509-5

8.    **Notice to Class.** New Century represents that the alleged offending facsimiles were transmitted by fax.com and that it does not have a listing of the fax numbers to which fax.com transmitted the facsimiles. Plaintiff's Counsel has obtained through discovery a "call tracking report" from Who's Calling, Inc., which purports to be a listing of persons who called the 800 number on the alleged offending facsimile. Other than this call tracking report, Plaintiff's Counsel is unaware of any other information identifying the members of the Settlement Class. Therefore notice by publication, supplemented by notice by mail to the persons listed in the call tracking report to the extent it is possible to ascertain street addresses, is the best notice practicable under the circumstances.

If appointed as Class Counsel, Putative Class Counsel agrees that it shall be responsible for issuing notice to the Settlement Class of the Class Action and the Proposed Settlement, in the form and manner deemed adequate by the Court. Subject to the Court's approval the Parties propose that notice be issued to the Settlement Class as follows:

a)    Class Counsel shall ascertain if possible the street addresses of all persons associated with the telephone numbers listed in the call tracking report produced to Plaintiff's Counsel in discovery. Class Counsel shall issue notice by first class mail in a form substantially similar to Exhibit B to this Agreement to all persons on the call tracking report for whom they are able to identify street addresses. Class Counsel shall file an affidavit identifying the persons and addresses to which it mails notice.

b)    Class Counsel shall cause a notice in a form substantially similar to Exhibit A to this Agreement to be published on at least three occasions which are at least one-week apart, in publications with national circulation such as USA Today, Parade Magazine, the Wall Street Journal

the national edition of the New York Times or other national publications. The size of the notice to be published shall not exceed 6 inches by 9 inches.

c)     Class Counsel shall cause notice substantially in the form of Exhibit B to be published on its website from the date of entry of the order granting preliminary approval through 30 days after the date an order is entered finally approving the settlement. Class Counsel shall also fax or mail notice substantially in the form of Exhibit B to any person requesting a copy of the notice. Further Class Counsel shall ensure that the claims administrator mails a copy of the notice substantially in the form of Exhibit B to any person who mails a request for the notice to the claims administrator.

All costs of notice shall be paid from the Settlement Payment. The Parties anticipate that the cost of notice may be substantial. Class Counsel shall develop a notice publication proposal including costs, which is consistent with the above plan and present this to the Court for consideration at the preliminary approval hearing. This Agreement is contingent upon the Court approving the issuance of Notice to the Settlement Class in substantially the manner set forth above.

9.     **Claims Administration.** The Parties agree that First Class, Inc. of Chicago, Illinois or another claims administration firm as agreed to by the Parties shall act as claims administrator (the "Claims Administrator") for the settlement to issue via U.S. Mail the full Notice to those class members requesting a copy of the Notice, process claims and issue payments to the Settlement Class. All costs of claims administration are the responsibility of Class Counsel and are to be paid from the Settlement Payment with approval of the Court. Class Counsel and the Claims Administrator shall take reasonable steps to ensure that fraudulent claims are not allowed and shall ensure that the Claims Administrator retains records of claims submitted and payments made to the

1452509-5

Page 7 of 17

Settlement Class for a period of 5 years. All information and records concerning claims administration shall be made available by the Claims Administrator to any party upon request.

      10.   **Initial Payment for Notice to Class.**  Within five business days of the date the Court enters an order granting preliminary approval of the Settlement proposed under this Agreement, New Century shall pay a sum of money to Class Counsel as directed by the Court, which is not to exceed $300,000.00 and which is to be placed in the Trust Fund of Class Counsel and used by Class Counsel to pay for notice to be issued to the Settlement Class as directed and approved by the Court (the "Notice Payment") and for costs of class administration. All notice and administration expenses shall be disclosed to counsel for New Century prior to the time they are incurred. After making the Notice Payment, the amount of the Settlement Payment to be made by New Century shall be reduced by the amount of the Notice Payment. New Century agrees that in the event the settlement does not receive final approval from the Court that the Notice Payment which has been expended will not be refunded to it. If the settlement does not receive final approval any unexpended portion of the Notice Payment is to be returned to New Century. Class Counsel agrees to expend the Notice Payment only in accordance with this Agreement and as approved by the Court for the benefit of the Settlement Class. Class Counsel shall file an accounting with the Court at least 21 days prior to the fairness hearing set by the Court, as to the expenditure of the Notice Payment detailing how the Notice Payment was expended. Class Counsel shall provide New Century with back-up documentation of Notice Payment expenditures as requested by New Century or the Court. If after notice is issued to the class in accordance with this Agreement and all costs of claims administration are paid, the entire Notice Payment is not expended, then any remaining portion of the Notice Payment shall be paid by Class Counsel into the Settlement Fund for distribution in accordance with

1452509-5

this Agreement.

11. **Claim Forms.** The Parties agree that members of the Settlement Class shall be required to submit a claim form in the form of the claim form which is part of Exhibit B to this Agreement and which requires that claimant state under oath or affirm that claimant received or was sent an unsolicited facsimile ad from or on behalf of New Century during the Class Period. The claim form shall also request claimant to include the facsimile received by claimant from New Century with the claim form. Any claim form which is not submitted by the claim deadline date to be set by the Court and which is not completed and signed by claimant in accordance with the instructions in the notice or claim form, is to be rejected. Each member of the Settlement Class may only submit one claim form regardless of the number of facsimiles that they have received from New Century. For any claim which is rejected, the Claims Administrator shall send the claimant a notice of rejection of claim to the address provided in the claim form stating the reason the claim was rejected. Any Settlement Class member whose claim has been rejected may petition the Court for review of the rejection within 30 days of receipt of the notice of rejection.

12. **Payment of Claims.** After the entry of an order finally approving the settlement set forth in this Agreement by the Court, which is not subject to appeal, and after payment of all costs of notice, claims administration (including the amount necessary to issue payment on valid claims filed by members of the Settlement Class), payment of an incentive award in an amount to be approved by the court to Paul Bernstein the named Plaintiff, and after payment of attorney's fees to Class Counsel as approved by the Court, and payment of all other expenses approved by the Court from the Settlement Payment, the members of the Settlement Class who filed valid claim forms shall each receive a pro-rata share of the remaining amount of the Settlement Payment, up to a

1452509-5

Page 9 of 17

maximum of $500 each. Class Counsel shall be responsible for ensuring that the Claims Administrator issues payment on the valid claims submitted by the Settlement Class. Payment is to be made by check and sent via U.S. Mail to the address provided on the claim form. If after all payments set forth above are made, a portion of the Settlement Payment remains unexpended, said amount (the "Cy Pres Amount") shall be returned by Class Counsel to New Century and New Century shall make a donation in an amount equal to the Cy Pres Amount to the charitable organizations as set forth in Exhibit D, subject to approval by the Court. The decision of the Claims Administrator as to the validity of a claim shall be final and determinative.

13.     **Attorney's Fees.**     The exact amount of all attorneys' fees payable for services rendered by Class Counsel to the Settlement Class shall be determined by the Court, but New Century will not object to the payment of attorneys' fees and reimbursement of litigation expenses to Class Counsel which do not exceed the aggregate total of $487,500 for all work already performed and expenses incurred for the Settlement Class, and for all work to be performed and expenses incurred in administering this settlement. The Court may rely on any basis permitted under Illinois law in awarding fees. This amount shall be paid from the Settlement Payment as described in this Agreement. New Century shall pay the attorney's fees ordered by the Court to Class Counsel after no less than 35 days but no more than 50 days from the entry of a final order of the Court granting final approval to the terms of the settlement set forth in this Agreement, which is not subject to appeal.

14.     **Incentive Award.**     Class Counsel shall apply for an incentive award to be given to the named Plaintiff Paul Bernstein in an amount not to exceed $5,000. The incentive award is to be paid from the Settlement Payment. Class Counsel shall issue a check from the

Settlement Payment made by New Century to Paul Bernstein in the amount approved by the Court. Payment shall be made 35 days after the entry of a final order of the Court approving the settlement which is not subject to appeal.

15. **Release by Settlement Class.** As consideration for the Settlement Payment made by New Century as described in this Agreement, Bernstein and each member of the Settlement Class who does not opt out and who is not excluded from the Settlement Class by the Court, for himself or herself and his or her successors, assignees, heirs, beneficiaries, executors, administrators, legal representatives, and all persons claiming under them, (the "Releasors"), releases, remises, acquits and forever discharges New Century and its predecessors in interest, successors, assigns, parents, subsidiaries, affiliates, divisions, insurers, and all of their past, present and future directors officers (whether acting in such capacity or individually), shareholders, owners, partners, principals, trustees, creditors, attorneys, representatives, employees, managers and agents (the "Released Parties"), from and against any and all claims, counterclaims, liabilities, demands, defenses, actions causes of action, suits, set-offs, controversies, disputes, obligations, omissions, duties, liabilities, expenses, costs and damages of every kind and nature whatsoever, in law or equity, whether known or unknown, fixed or contingent, claimed or unclaimed, actual or potential, suspected or unsuspected, which the Releasors may now have, or claim at any future time to have, arising from or based in whole or part on the alleged transmission of advertising faxes by or on behalf of New Century, including but not limited to: (1) violations of the TCPA; (2) the claims asserted or which could have been asserted in the Bernstein Litigation including any and all amended complaints; and (3) violation of any and all other laws, whether statutory, regulatory or decisional, and whether federal or state based arising out of or related to the transmission of facsimiles by or on behalf of

New Century. No claims involving the application for or making of loans are released.

16.    **Waiver of Rights Under California Civil Code.** Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. <u>Certain Claims Not Affected by General Release</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of paragraph 3.1 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or noncontingent claim with respect to the subject matter of the provisions of paragraph 3.1 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

17.    <u>Payment of the Remainder of the Settlement Payment</u>. After no less than 35 days but no more than 50 days after entry of an order of the Court granting final approval to the terms of the settlement set forth in this Agreement, which is not subject to appeal, New Century shall remit to Class Counsel an amount equal to the Settlement Payment less the sum of the Notice Payment (which includes all administration and notice costs approved by the Court) and the amount paid to Class Counsel for fees and expenses as approved by the Court. This amount shall be referred to as the "Settlement Fund". The Settlement Fund shall be deposited into the Client Trust Account

1452509-5

<div align="center">Page 12 of 17</div>

of Class Counsel. After New Century has remitted the Settlement Fund payment to Class Counsel, its obligations under this Agreement, except for its obligation to make any payment of any remaining sum of the Settlement Fund to a charity or charities, shall cease. Class Counsel agrees that the Settlement Fund is to be used for no purpose other than payment of claims of the Settlement Class, payment of a Court approved incentive award to the named Plaintiff and costs of claims administration as approved by the Court. Upon receipt of the Settlement Fund Class Counsel shall assume the obligation for ensuring that the Settlement Fund is disbursed in accordance with this Agreement and the Court's orders. Class Counsel agrees to defend, indemnify and hold harmless New Century from and for any and all claims asserting that the Settlement Fund was not properly disbursed in accordance with this Agreement or orders of the Court. Class Counsel shall file an accounting with the Court and New Century as to the expenditure of the Settlement Fund with a listing of the names and addresses of all persons who filed claims and received payments under this settlement, along with the amount of the payment they received within 60 days of the date of the entry of the final approval order. Class Counsel shall only remit the sum of money necessary to the Claims Administrator to pay all valid and approved claims of the Settlement Class and any approved claims administration expenses. If after payment of all valid claims of the Settlement Class and any approved expenses by the Court, funds still remain in the Settlement Fund, Class Counsel shall within five business days of the Court's approval of the final accounting of the Settlement Fund to be made by Class Counsel, issue a check to New Century (the "Cy Pres Check") for the amount remaining in the Settlement Fund. New Century shall within ten business days of receipt of the Cy Pres Check from Class Counsel, issue checks in an amount equal to the Cy Pres Check to the charities it designated pursuant to paragraph 12, as approved by the Court.

18. **Approval by the Court.** This Agreement is expressly contingent on final approval of the settlement set forth in this Agreement by the Court pursuant to Section 2-806 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-806, final certification of the Settlement Class and the Court's dismissal of the Bernstein Litigation, with prejudice and without costs, in a final order, which is not subject to appeal. Class Counsel shall file a motion to set a fairness hearing after notice is issued to the Settlement Class which shall request the Court to enter a Final Judgment and Order substantially in the form of Exhibit C to this Agreement. In the event that one or more of the foregoing does not occur, this Agreement may be terminated by New Century. If this Agreement is so terminated, the Parties shall be deemed to be in the same position as existed prior to the execution of this Agreement with the same status quo ante rights as existed prior to the execution of this Agreement and all other understandings and agreements between the Parties relating to the Settlement shall be deemed to be null and void and of no force and effect. Within 180 days of the entry of the final approval order by the Court, Class Counsel shall file a detailed accounting with the Court as to the disbursement of the Settlement Payment which is to be served on counsel for New Century and is to be approved by the Court.

19. **Appeal.** In the event of an appeal from the entry of an order of the Court granting final approval of this Settlement, all obligations of the Parties under this Agreement shall be suspended until the final resolution of such appeal and any further appeals. Class Counsel agrees that it will defend such an appeal, and any further appeals, and seek to dispose of such an appeal (or further appeals) or obtain the affirmance of the final approval order. In the event that the Court's order granting final approval is reversed, vacated or modified in a material manner which is unacceptable to New Century, then this Agreement may be rescinded and terminated at the option of

New Century.  In the event that the settlement of the Bernstein Litigation is terminated, rescinded, vacated, reversed or overturned after payment of attorney's fees and costs to Class Counsel, Class Counsel agrees that any unused portion of the Notice Payment and any attorney's fees and costs paid to Class Counsel are to be refunded in full to New Century.

20.     **Termination.** This Agreement may be terminated by New Century on written notice to Class Counsel up to 7 days prior to final approval hearing if more than 1,000 members of the Settlement Class file valid exclusions to opt of the Settlement Class.

21.     **Contribution.** New Century shall retain for itself the rights to pursue any and all claims for contribution against any third-parties which New Century may, at its sole election and for its sole benefit, chose to pursue.

22.     **Advice of Counsel.**   The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released. The Parties have read and understand fully the terms of the Agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

23.     **Waiver of Construction Against Drafter.** The Parties acknowledge that this Agreement reflects the joint drafting efforts of all parties and their respective counsel and that any ambiguity that may be found in the Agreement shall not be construed against any party.

24.     **Benefit of this Agreement.** This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto, the members of the Settlement Class not opting out, and each of their successors, predecessors, affiliates, heirs, executors and assigns.

25.    **Entire Agreement.**    Any and all prior understandings and agreements between the Parties with respect to the subject matter of this Settlement Agreement are merged into and with this Settlement Agreement, which fully and completely expresses the entire agreement and understanding of the Parties with respect to the subject matter hereof. This Settlement Agreement may be amended, modified or changed only by a written instrument or instruments executed by duly authorized officers or other representatives of the Parties expressly amending, modifying or changing this Agreement and may not be amended, modified or changed orally.

26.    **Applicable Law.**    This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

27.    **Counterparts.**    This Settlement Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument. Signatures provided by telecopier shall be deemed legal and binding for all purposes.

28.    **Headings.**    The headings in this Agreement are for convenience of reference only and are not to be taken to be a part of the provisions of this Agreement, nor to control or affect meanings, constructions or the effect of the same.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement consisting of

28 separately numbered paragraphs and 17 pages, and Exhibits A, B, C and D to be duly executed

and delivered by their duly authorized representatives on the date first written above.


**AGREED:**


**PLAINTIFF**                                          **DEFENDANT**

                                                       NEW CENTURY MORTGAGE
                                                       CORPORATION

_____
PAUL BERNSTEIN                                         By:_____
Individually and as representative of the
putative Settlement Class
                                                       Title:_____ _____



**CLASS COUNSEL**

EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC, as Class Counsel


_____

By:____Daniel A. Edelman, member____
     [Print Name and Title]

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement consisting of

28 separately numbered paragraphs and 17 pages, and Exhibits A, B, C and D to be duly executed

and delivered by their duly authorized representatives on the date first written above.


**AGREED:**


**PLAINTIFF**                                    **DEFENDANT**

                                                 NEW CENTURY MORTGAGE
                                                 CORPORATION

_____                        By: _____
PAUL BERNSTEIN
Individually and as representative of the        Title: _____
putative Settlement Class


**CLASS COUNSEL**

EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC, as Class Counsel


_____

By: _____
      [Print Name and Title]


1452509-5                    Page 17 of 17

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREAT NORTHERN INSURANCE COMPANY and FEDERAL INSURANCE COMPANY, | ) ) ) **CASE NO.: 04 C 6060** |
| Plaintiffs, | ) ) ) |
| vs. | ) ) **Judge Conlon** |
| NEW CENTURY MORTGAGE CORP., | ) ) |
| Defendant. | ) ) **Magistrate Judge Nolan   T S M & P** |
| | ) ) ) ) ) |

RECEIVED

NOV 0 9 2004

DIARIED............ DOCKETED...........

ATTY.

**DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT
FOR DECLARATORY JUDGMENT**

In response to the Complaint for Declaratory Judgment filed by Plaintiffs Great Northern Insurance Company ("Great Northern") and Federal Insurance Company ("Federal") (collectively "Plaintiffs" or "Chubb"), Defendant New Century Mortgage Corporation, erroneously sued as New Century Mortgage Corp. ("NCMC"), denies each and every allegation in Chubb's Complaint, except as is admitted herein, and alleges and answers as follows:

**NATURE OF ACTION AND RELIEF SOUGHT**

**COMPLAINT PARAGRAPH NO. 1:**

This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**ANSWER:**

1.    NCMC admits the allegations in Paragraph 1 of Chubb's Complaint.

**COMPLAINT PARAGRPAH NO. 2:**

Plaintiffs seek a declaration that they owe neither a duty to defend nor a duty to indemnify to NCMC with regard to a lawsuit against NCMC styled <u>Paul Bernstein v. New</u>

Century Mortgage Corp., No. 02 CH 06907 (Circuit Court of Cook County, County Department, Chancery Division) (hereinafter "the *Bernstein* suit").

**ANSWER:**

2.      NCMC admits the allegations in Paragraph 2 of Chubb's Complaint.

## THE PARTIES

### COMPLAINT PARAGRAPH NO. 3:

Great Northern Insurance Company ("Great Northern") is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business in New Jersey. Great Northern is and was authorized to do business and was actually doing business at all relevant times in Illinois.

**ANSWER:**

3.      As to Paragraph 3 of Chubb's Complaint, NCMC admits that Great Northern is a corporation organized and existing under the laws of the State of Minnesota, however, NCMC is without sufficient information and knowledge to form a belief as to the truth of the allegations that: (a) Great Northern's principal place of business is in New Jersey; (b) Great Northern is and was authorized to do business in Illinois; and (c) Great Northern was doing business in Illinois at all relevant times. To the extent Chubb intends to imply that Great Northern was doing business exclusively in Illinois "at all relevant times," NCMC denies this, as Great Northern was licensed in the State of Minnesota at the time it issued the policy of insurance that is the subject of the Complaint.

### COMPLAINT PARAGRAPH NO. 4:

Federal Insurance Company ("Federal") is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in New Jersey. Federal is and was authorized to do business and was actually doing business at all relevant times in Illinois.

**ANSWER 4:**

4.      As to Paragraph 4 of Chubb's Complaint, NCMC admits that Federal is a corporation organized and existing under the laws of the State of Indiana with its principal place

of business in New Jersey, however, NCMC is without sufficient information and knowledge to form a belief as to the truth of the allegations that: (a) Federal is and was authorized to do business in Illinois; and (b) Federal was doing business in Illinois at all relevant times. To the extent Chubb intends to imply that Federal was doing business exclusively in Illinois "at all relevant times," NCMC denies this, as Federal was licensed in the State of Minnesota at the time it issued the policy of insurance that is the subject of the Complaint.

## COMPLAINT PARAGRAPH NO. 5:

New Century Mortgage Corp. ("NCMC") is a corporation organized and existing under the laws of the State of California with its principal place of business in California. NCMC conducts business in Illinois and maintains offices at 1000 N. Plaza Drive, Suite 401, Schaumburg, IL 60173.

## ANSWER:

5.    NCMC admits the allegations in Paragraph 5 of Chubb's Complaint, except that NCMC does not maintain offices at 1000 N. Plaza Drive, Suite 401, which NCMC denies.

## JURISDICTION AND VENUE

## COMPLAINT PARAGRAPH NO. 6 [FIRST]:

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy is in excess of $75,000.

## ANSWER

6.    NCMC admits the allegations in Paragraph 6 of Chubb's Complaint, except that NCMC clarifies that this Court should refuse to assume jurisdiction over this "reactive" declaratory judgment action, given NCMC's prior-filed Minnesota state court action pending between the parties and involving substantially the same issues.

## COMPLAINT PARAGRAPH NO. 7 [FIRST]:

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c).

## ANSWER:

7.    NCMC denies the allegations in Paragraph 7 of Chubb's Complaint.

## THE GREAT NORTHERN PRIMARY POLICY

### COMPLAINT PARAGRAPH NO. 6 [SECOND]:

Great Northern issued primary policy number 3539-77-36 to New Century Financial Corporation, with an effective period of February 3, 2002 to February 3, 2003. The policy includes a named insured or [sic] endorsement which applies to New Century Mortgage Corporation, the party sued in the *Bernstein* suit. A copy of the Great Northern policy is attached hereto as Exhibit A.

### ANSWER:

6.     NCMC admits the allegations in the second numbered Paragraph 6 [*sic*] of Chubb's Complaint, except clarifies that the policy number also includes an LAO suffix. Further, NCMC only admits on information and belief that Chubb's Exhibit A to the Complaint is a true and accurate copy of the stated Great Northern policy. NCMC reserves the right to compare Exhibit A to the Complaint to NCMC's original policy to ensure Exhibit A is complete, accurate and authentic.

### COMPLAINT PARAGRAPH NO. 7 [SECOND]:

The Great Northern primary policy provides that Great Northern "will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract for:

- bodily injury or property damage to which this insurance applies caused by an occurrence; or

- advertising injury or personal injury to which this insurance applies caused by an offense."

### ANSWER:

7.     NCMC admits that the second numbered Paragraph 7 [*sic*] of Chubb's Complaint contains portions of the language contained within the stated Great Northern policy. NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in

the policy. Further, the policy is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 7 [*sic*] of the Complaint.

**COMPLAINT PARAGRAPH NO. 8:**

The Great Northern primary policy further provides that the insurance "applies to:

- bodily injury or property damage which occurs during the policy period; and
- advertising injury or personal injury caused by an offense committed during the policy period.

**ANSWER:**

8.     NCMC admits that Paragraph 8 of Chubb's Complaint contains portions of the language contained within the stated Great Northern policy. NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy. Further, the policy is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 8 of the Complaint.

**COMPLAINT PARAGRAPH NO. 9:**

The Great Northern primary policy provides that the company will "have the right and duty to defend any insured against a suit seeking damages for bodily injury, property damage, advertising injury, or personal injury." However, the policy further provides that Great Northern "will have no duty to defend any insured against a suit seeking damages to which this insurance does not apply."

**ANSWER:**

9.     NCMC admits that Paragraph 9 of Chubb's Complaint contains portions of the language contained within the stated Great Northern policy. NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy. Further, the policy is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 9 of the Complaint.

**COMPLAINT PARAGRAPH NO. 10:**

The Great Northern primary policy defines "bodily injury" as:

Bodily injury means physical:

- Injury
- Sickness, or
- Disease

Sustained by a person and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

**ANSWER:**

10.    NCMC admits that Paragraph 10 of Chubb's Complaint contains portions of the language contained within the stated Great Northern policy.  NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy.  Further, the policy is the best evidence of the policy language in full context.  NCMC denies each and every remaining allegation in Paragraph 10 of the Complaint.

**COMPLAINT PARAGRAPH NO. 11:**

The Great Northern primary policy defines "property damage" as:

Property damage means
- Physical injury to tangible property including the resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**ANSWER:**

11.    NCMC admits that Paragraph 11 of Chubb's Complaint contains portions of the language contained within the stated Great Northern policy.  NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy.  Further, the policy is the best evidence of the policy language in full context.  NCMC denies each and every remaining allegation in Paragraph 11 of the Complaint.

**COMPLAINT PARAGRAPH NO. 12:**

The Great Northern primary policy defines "advertising injury" as:

Advertising injury means injury, other than bodily injury or personal injury, arising solely out of one or more of the following offenses committed in the course of advertising your goods, products, or services:

- oral or written publication of material that slanders or libels a person or organization;
- oral or written publication of advertising material that violates a person's right of privacy; or
- infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.

## ANSWER:

12.    NCMC admits that Paragraph 12 of Chubb's Complaint contains portions of the language contained within the stated Great Northern policy. NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy. Further, the policy is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 12 of the Complaint.

## COMPLAINT PARAGRAPH NO. 13:

The Great Northern primary policy defines "personal injury" as:

Personal injury means injury, other than bodily injury, arising out of one or more of the acts listed below, other than your advertising activities.

A.    false arrest, detention or imprisonment;

B.    malicious prosecution (unless insurance thereof is prohibited by law), except when it arises out of, or is directly or indirectly related to:

    1.    the restructure, termination, transfer or collection of any loan, lease or extension of credit; or

    2.    the repossession or foreclosure of property which is security for any loan, lease, or extension of credit;

C.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, unless the person or persons are mortgagors of yours or of anyone for whom you are servicing mortgages, by or on behalf of you, its owner, landlord or lessor;

D.    oral or written publication of material that slanders or libels a person or organization, except when alleged, charged or suffered by any customer;

E.    oral or written publication of material that violates a person's right of privacy, except when alleged, charged or suffered by any customer; or

F.      discrimination (unless insurance thereof is prohibited by law) based on race, color, religion, sex, age or national origin, except when alleged, charged or suffered by any:
1.      applicant for employment;
2.      present or former employee;
3.      prospective employee; or
4.      customer.

**ANSWER:**

13.     NCMC admits that Paragraph 13 of Chubb's Complaint contains portions of the language contained within the stated Great Northern policy. NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy. Further, the policy is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 13 of the Complaint.

**COMPLAINT PARAGRAPH NO. 14:**

The Great Northern primary policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**ANSWER:**

14.     NCMC admits that Paragraph 14 of Chubb's Complaint contains portions of the language contained within the stated Great Northern policy. The policy, however, is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 14 of the Complaint.

**COMPLAINT PARAGRAPH NO. 15:**

The Great Northern primary policy includes the following relevant Bodily injury/Property Damage Exclusions:

A.      Damage to Property of Others (Care, Custody or Control)—This insurance does not apply to:

*       *       *

o       Tools or equipment of others while being used by you in performing your operations;

B.      Expected or Intended Injury—This insurance does not apply to bodily injury or property damage which results from an act that:

o       is intended by the insured; or


    o    can be expected from the standpoint of a reasonable person

to cause bodily injury or property damage, even if the injury or damage is
of a different degree or type than actually intended or expected.

This exclusion does not apply to bodily injury resulting from the use of
reasonable force to protect person or property.

**ANSWER:**

15.    NCMC admits that Paragraph 15 of Chubb's Complaint contains portions of the

language – from the Bodily Injury/Property Damage Exclusions section of the policy– contained

within the stated Great Northern policy.  NCMC denies that the language is accurately recited in

the sense that either defined terms are not in bold as in the policy or material terms are excluded

from the quotations in the Complaint.  Further, the policy is the best evidence of the policy

language in full context.  NCMC denies each and every remaining allegation in Paragraph 15 of

the Complaint.

## COMPLAINT PARAGRAPH NO. 16:

The Great Northern primary policy includes the following relevant Advertising

Injury/Personal Injury Exclusions:

A.    Prior Acts—This insurance does not apply to advertising injury or
personal injury arising out of oral or written publication of material whose
first publication took place before the beginning of the policy period.

B.    Willful Violations—This insurance does not apply to advertising injury or
personal injury arising out of the willful violation of a penal statute or
ordinance committed by or with the knowledge or consent of the insured.

**ANSWER:**

16.    NCMC admits that Paragraph 16 of Chubb's Complaint contains portions of the

language – from the Advertising Injury/Personal Injury Exclusions section of the policy –

contained within the stated Great Northern policy.  NCMC denies that the language is accurately

recited in the sense that defined terms are not in bold as in the policy.  Further, the policy is the

best evidence of the policy language in full context.  NCMC denies each and every remaining

allegation in Paragraph 16 of the Complaint.



**COMPLAINT PARAGRAPH NO. 17:**

The Great Northern primary policy includes a condition pertaining to "Duties in the Event of Occurrence, Offense, Claim or Suit," which requires notice as soon as practicable of an occurrence or suit.

**ANSWER:**

17.    With respect to Paragraph 17 of Chubb's Complaint, NCMC admits that the stated Great Northern policy includes a section entitled, "Liability Conditions," with a subsection entitled, "Duties In the Event of Occurrence, Offense, Claim or Suit." NCMC admits that this subsection of the policy discusses notice obligations. However, the subsection is lengthy and should be read in its entire context both within the subsection and the entire policy. NCMC denies each and every remaining allegation in Paragraph 17 of the Complaint.

<div align="center">

**THE FEDERAL COMMERCIAL UMBRELLA POLICY**

</div>

**COMPLAINT PARAGRAPH NO. 18:**

Federal issued commercial umbrella policy number 7977-03-85, with an effective period identical to the Great Northern policy described above. A copy of the Federal policy is attached hereto as Exhibit B.

**ANSWER:**

18.    NCMC admits the allegations in Paragraph 18 of Chubb's Complaint, except that NCMC only admits on information and belief that Chubb's Exhibit B to the Complaint is a true and accurate copy of the stated Federal policy. NCMC reserves the right to compare Exhibit B to the Complaint to NCMC's original policy to ensure Exhibit B is complete, accurate and authentic.

**COMPLAINT PARAGRAPH NO. 19:**

Under Coverage A, the Federal umbrella policy provides that Federal will pay on behalf of the insureds that part of the loss in excess of the total applicable limits of "underlying insurance, provided the injury or offense takes place during the Policy Period of this policy."



The terms and conditions of the "underlying insurance" are incorporated into Coverage A. The Great Northern primary policy is the applicable "underlying insurance" in this matter.

**ANSWER:**

19.    NCMC admits that Paragraph 19 of Chubb's Complaint contains portions of the language contained within the stated Federal policy. NCMC denies that the language is accurately recited in the sense that material terms have been excluded from Paragraph 19. The policy is the best evidence of the policy language in full context. NCMC admits that the Great Northern CGL policy no. 35397736, policy period 2/03/02 – 2/03/03, is the applicable "underlying insurance." NCMC denies each and every remaining allegation in Paragraph 19 of the Complaint.

**COMPLAINT PARAGRAPH NO. 20:**

Under Coverage A, the Federal umbrella policy provides that Federal has the right and duty to assume control of the investigation, settlement, or defense of any claim or suit against the insured for damages covered by the policy only after the applicable limit of underlying insurance has been exhausted by the payment of claims.

**ANSWER:**

20.    NCMC admits that Paragraph 20 of Chubb's Complaint interprets portions of the language contained within the stated Federal policy. NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy. Further, the policy is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 20 of the Complaint.

**COMPLAINT PARAGRAPH NO. 21:**

Under Coverage A, the Federal umbrella policy includes the following "Underlying Insurance Exclusions:"

Under Coverage A, this insurance does not apply to:

**Underlying Insurance Exclusions**

any liability excluded by underlying insurance.

**ANSWER:**

21.     NCMC admits that Paragraph 21 of Chubb's Complaint contains portions of the language contained within the stated Federal policy. NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy. Further, the policy is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 21 of the Complaint.

**COMPLAINT PARAGRAPH NO. 22:**

Under Coverage B, the Federal umbrella policy provides that Federal will pay "damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury, property damage, personal injury or advertising injury covered by this insurance which takes place during the Policy Period of this policy and is caused by an occurrence." The Federal umbrella policy further provides that Coverage B does not apply to any loss, claim, or suit for which insurance is afforded by "underlying insurance" or for which insurance would have been afforded except for the exhaustion of the limits of insurance of underlying insurance.

**ANSWER:**

22.     NCMC admits that Paragraph 22 of Chubb's Complaint contains portions of the language contained within the stated Federal policy. NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy and material terms have been excluded from Paragraph 22. The policy is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 22 of the Complaint.

**COMPLAINT PARAGRAPH NO. 23:**

Under Coverage B, the Federal umbrella policy provides that Federal has the right and duty to assume control of the investigation, settlement, or defense of any claim or suit against the insured for damages covered by the policy when damages are sought for bodily injury, property

damage, personal injury or advertising injury to which no underlying insurance or other insurance applies.

**ANSWER:**

23.     NCMC admits that Paragraph 23 of Chubb's Complaint interprets portions of the language contained within the stated Federal policy.  NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy.  Further, the policy is the best evidence of the policy language in full context.  NCMC denies each and every remaining allegation in Paragraph 23 of the Complaint.

**COMPLAINT PARAGRAPH NO. 24:**

Under Coverage B, the Federal umbrella policy defines "bodily injury" as "physical injury, sickness, or disease to a person and, if arising out of the foregoing, mental anguish, mental injury, shock or humiliation, including death at any time resulting therefrom."

**ANSWER:**

24.     NCMC admits that Paragraph 24 of Chubb's Complaint contains portions of the language contained within the stated Federal policy.  The policy, however, is the best evidence of the policy language in full context.  NCMC denies each and every remaining allegation in Paragraph 24 of the Complaint.

**COMPLAINT PARAGRAPH NO. 25:**

Under Coverage B, the definition of "property damage" is substantially similar to the definition set forth in the Great Northern primary policy.

**ANSWER:**

25.     NCMC admits the allegations of Paragraph 25 of Chubb's Complaint.

**COMPLAINT PARAGRAPH NO. 26:**

Under Coverage B, the definition of "advertising injury" is substantially similar to the definition set forth in the Great Northern primary policy.

**ANSWER:**

26.     NCMC denies the allegations of Paragraph 26 of Chubb's Complaint.

10465-008-11/9/2004-147175.2                                    13

## COMPLAINT PARAGRAPH NO. 27:

Under Coverage B, the definition of "personal injury," provides:

Personal injury means injury, other than bodily injury, arising out of one or more of the following offenses committed in the course of your business, other than your advertising

1.   false arrest, detention or imprisonment;
2.   malicious prosecution;
3.   the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, by or on behalf of its owner, landlord or lessor;
4.   oral or written publication of material that slanders or libels a person or organization;
5.   oral or written publication of material that violates a person's right of privacy; or
6.   discrimination (unless insurance thereof is prohibited by law).

## ANSWER:

27.   NCMC admits that Paragraph 27 of Chubb's Complaint contains the language making up the definition of "personal injury," applicable to Coverage B, within the stated Federal policy. NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy. Further, the policy is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 27 of the Complaint.

## COMPLAINT PARAGRAPH NO. 28:

Under Coverage B, the Federal umbrella policy defines "occurrence," as:

Occurrence means:

1.   with respect to bodily injury or property damage liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2.   with respect to personal injury or advertising injury, a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same occurrence, regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

## ANSWER:

28.   NCMC admits that Paragraph 28 of Chubb's Complaint contains the language

making up the definition of "occurrence," applicable to Coverage B, within the stated Federal policy. NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy. Further, the policy is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 28 of the Complaint.

**COMPLAINT PARAGRAPH NO. 29:**

Under Coverage B, the Federal umbrella policy contains the following "Intentional Acts" exclusion:

Under Coverage B, this insurance does not apply to:

> Bodily injury or property damage which results from an act that is intended by the insured or can be expected from the standpoint of a reasonable person to cause bodily injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected.

**ANSWER:**

29.    NCMC admits that Paragraph 29 of Chubb's Complaint contains most of the language of the referenced Coverage B exclusion within the stated Federal policy. NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy. Further, the policy is the best evidence of the policy language in full context. NCMC denies each and every remaining allegation in Paragraph 29 of the Complaint.

**COMPLAINT PARAGRAPH NO. 30:**

Under Coverage B, the Federal umbrella policy contains the following "Falsity, Prior Publication, Willful Violation" exclusion:

Under Coverage B, this insurance does not apply to:

Personal injury or advertising injury arising out of:

1.    oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

2.    oral or written publication of material whose first publication took place before the beginning of the policy period; or

3.    willful violation of a penal statute or ordinance committed by or with the consent of the insured.

**ANSWER:**

30.    NCMC admits that Paragraph 30 of Chubb's Complaint contains most of the language of the referenced Coverage B exclusion, within the stated Federal policy.  NCMC denies that the language is accurately recited in the sense that defined terms are not in bold as in the policy.  Further, the policy is the best evidence of the policy language in full context.  NCMC denies each and every remaining allegation in Paragraph 30 of the Complaint.

**COMPLAINT PARAGRAPH NO. 31:**

With regard to both Coverages A and B, the Federal umbrella policy contains a "Duties in the Event of Occurrence, Claim or Suit" provision which requires the insured to notify Federal and the underlying insurers "as soon as possible" of an "occurrence" which may result in a claim.  This provision further requires that the insured provide notice of any claim or suit "as soon as possible."

**ANSWER:**

31.    With respect to Paragraph 31 of Chubb's Complaint, NCMC admits that the stated Federal policy contains a "Duties in the Event of Occurrence, Claim or Suit" provision and that the provision is applicable to Coverage A and Coverage B.  NCMC denies each and every remaining allegation in Paragraph 31 of the Complaint.

## THE UNDERLYING SUIT

**COMPLAINT PARAGRAPH NO. 32**

The underlying plaintiff filed the *Bernstein* suit on April 5, 2002.  The currently operative complaint is the second amended complaint, filed on September 30, 2003, which is attached hereto as Exhibit C.

**ANSWER:**

32.    With respect to Paragraph 32 of Chubb's Complaint, NCMC admits that the underlying plaintiff filed the *Bernstein* Action on April 5, 2002 and a second amended complaint on September 30, 2003 (which Exhibit C appears to be an accurate copy of).  NCMC denies each and every remaining allegation in Paragraph 32 of the Complaint and also reserves the right to



dispute the accuracy and authenticity of Exhibit C.

## COMPLAINT PARAGRAPH NO. 33:

The plaintiff in *Bernstein* seeks damages and injunctive relief arising out of his receipt of an unsolicited fax advertisement from NCMC on February 26, 2002. The plaintiff in *Bernstein* also attempts to establish a class action suit on behalf of all persons with Illinois phone numbers who received the fax in question within a certain time period. Upon information and belief, NCMC faxed the advertisement in question to approximately 600,000 recipients.

## ANSWER:

33. With respect to Paragraph 33 of Chubb's Complaint, NCMC admits that the underlying plaintiff sought damages and injunctive relief arising out of his alleged receipt of an unsolicited fax advertisement from NCMC, allegedly sent on or about February 26, 2002, which claims are now settled. NCMC admits that the *Bernstein* Action pleadings contain class action allegations, establishing a class for a specified time period. NCMC denies each and every remaining allegation in Paragraph 33 of the Complaint.

## COMPLAINT PARAGRAPH NO. 34:

The plaintiff in *Bernstein* seeks, among other things, the statutory award permitted by the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). This statute provides for an award of actual monetary loss from each violation or $500 dollars [*sic*] in "damages" for each violation, whichever is greater. The TCPA also allows for the trebling of the award if the court finds that the violation occurred willfully or knowingly.

## ANSWER:

34. NCMC generally admits the allegations of Paragraph 34 of Chubb's Complaint. However, NCMC reserves the right to challenge the allegations based on the discovery of interpretive case law and also notes that the statute should be read in its entirety for context and other conditions that it may impose.

## ADDITIONAL RELEVANT FACTS

### COMPLAINT PARAGRAPH NO. 35:

Upon information and belief, the advertisement at issue in Bernstein was faxed 200,000 time [*sic*] prior to the inception of the plaintiffs' policies.

### ANSWER:

35.     NCMC does not have sufficient information to admit or deny the allegations of Paragraph 35 of Chubb's Complaint because NCMC did not fax the advertisements itself. NCMC did pay an entity to fax 200,000 copies of the advertisement before the Chubb policies incepted.

### COMPLAINT PARAGRAPH NO. 36:

Upon information and belief, before the facsimile transmissions in question occurred, NCMC executed a contract with Fax.Com, a fax broadcast company, which stated, *inter alia*:

> 11.     **Legal Issues Re Broadcasting.** Buyer acknowledges that Buyer is aware that Seller's faxing of Buyer's commercial messages/advertisements on behalf of Buyer presents significant legal issues and risks. Buyer acknowledges that Seller has made no representations, promises or assurances to Buyer in this regard, and Buyer has had the opportunity to consult with its own legal counsel with respect to the federal Telephone Consumer Protect [*sic*] Act and applicable state law regarding transmissions by fax of unsolicited commercial messages/advertisements and the risks attended [*sic*] thereto. The parties acknowledge and agree that Seller shall have no indemnity obligations to Buyer unless a separate written indemnity agreement is made and executed by the parties concurrently with or subsequent to the date of this Agreement.

### ANSWER:

36.     NCMC generally admits the allegations of Paragraph 36 of Chubb's Complaint, but reserves the right to challenge the accuracy of the cited language from the contract, to the extent the language is misquoted. Further, the contract is the best evidence of the contract language in full context.

### COMPLAINT PARAGRAPH NO. 37:

The original complaint in *Bernstein* was filed on April 5, 2002 but Great Northern Insurance Company and Federal Insurance Company were not provided with notice until August 27, 2003.



**ANSWER:**

37.    With respect to Paragraph 37 of Chubb's Complaint, NCMC admits that the original Complaint in the *Bernstein* Action was filed on April 5, 2002. NCMC denies each and every remaining allegation in Paragraph 37 of the Complaint.

**COMPLAINT PARAGRAPH NO. 38:**

Plaintiff Great Northern Insurance Company is currently defending NCMC against the *Bernstein* suit subject to a reservation of rights.

**ANSWER:**

38.    With respect to Paragraph 38 of Chubb's Complaint, NCMC admits that Great Northern is currently paying for NCMC's defense of the *Bernstein* Action, which defense is being provided through NCMC's independent counsel. NCMC admits that Great Northern issued a reservation of rights. NCMC denies each and every remaining allegation in Paragraph 38 of the Complaint.

<div align="center">

**COUNT ONE**

**FOR DECLARATORY JUDGMENT ON THE DUTY TO DEFEND**

</div>

**COMPLAINT PARAGRAPH NO. 39:**

Plaintiffs incorporate Paragraphs 1-38 as if fully set forth herein:[*sic*]

**ANSWER:**

39.    With respect to Paragraph 39 of Chubb's Complaint, NCMC incorporates by this reference NCMC's responses to Paragraphs 1-38 of Chubb's Complaint.

**COMPLAINT PARAGRAPH NO. 40:**

Plaintiffs did not owe a duty to defend to NCMC and are entitled to reimbursement of all defense costs for the following reasons:

A.    The *Bernstein* complaint does not allege "bodily injury," "property damage," "personal injury," or "advertising injury" as those terms are defined in the policies.



B. Even if the *Bernstein* complaint alleged "bodily injury" or "property damage," which it does not, the suit does not involve an "occurrence" as that term is defined in the policies

C. Even if the *Bernstein* complaint alleged "bodily injury" or "property damage," which it does not, the Expected or Intended Exclusion bars coverage.

D. Even if the *Bernstein* complaint alleged "bodily injury" or "property damage," which it does not, the exclusion for Damage to Property of Others bars coverage.

E. Even if the *Bernstein* complaint alleged "personal injury" or "advertising injury," which it does not, the Prior Acts Exclusion bars coverage.

F. Even if the Bernstein complaint alleged "personal injury" or "advertising injury," which it does not, the Willful Violations Exclusion bars coverage.

G. The *Bernstein* complaint seeks damages that are punitive in nature, which are not covered under the policies and for which coverage is barred by public policy.

H. The policies in question do not provide coverage for injunctive relief, equitable relief or attorneys [*sic*] fees incurred by the underlying plaintiffs.

I. Plaintiffs did not owe a duty to defend to the extent that the insured provided untimely notice.

**ANSWER:**

40. NCMC denies the allegations of Paragraph 40 of Chubb's Complaint, including all of its subparagraphs.

## COUNT TWO

## FOR DECLARATORY JUDGMENT ON THE DUTY TO INDEMNIFY

## COMPLAINT PARAGRAPH NO. 41:



Plaintiffs incorporate Paragraphs 1-40 as if fully set forth herein:[sic]

**ANSWER:**

41.    With respect to Paragraph 41 of Chubb's Complaint, NCMC incorporates by this reference NCMC's responses to Paragraphs 1-40 of Chubb's Complaint.

**COMPLAINT PARAGRAPH NO. 42:**

Plaintiffs do not owe a duty to indemnify to NCMC for the following reasons:

A.    The *Bernstein* suit does not involve "bodily injury," "property damage," "personal injury," or "advertising injury" as those terms are defined in the policies.

B.    Even if the *Bernstein* suit involved "bodily injury" or "property damage," which it does not, the suit does not involve an "occurrence" as that term is defined in the policies

C.    Even if the *Bernstein* suit involved "bodily injury" or "property damage," which it does not, the Expected or Intended Exclusion bars coverage.

D.    Even if the *Bernstein* suit involved "bodily injury" or "property damage," which it does not, the exclusion for Damage to Property of Others bars coverage.

E.    Even if the *Bernstein* suit involved "personal injury" or "advertising injury," which it does not, the Prior Acts Exclusion bars coverage.

F.    Even if the *Bernstein* suit involved "personal injury" or "advertising injury," which it does not, the Willful Violations Exclusion bars coverage.

G.    The *Bernstein* plaintiff seeks damages that are punitive in nature, which are not covered under the policies and for which coverage is barred by public policy.

H.    The policies in question do not provide coverage for injunctive relief, equitable relief or attorneys [sic] fees incurred by the underlying plaintiffs.

I.     Plaintiffs did not owe a duty to defend to the extent that the insured provided untimely notice.

**ANSWER:**

42.     With respect to Paragraph 42 of Chubb's Complaint, NCMC denies that Chubb did not owe NCMC a duty to indemnify in connection with the *Bernstein* Action had the *Bernstein* Action proceeded to judgment.  Chubb however, breached its duty to settle the *Benstein* Action.  NCMC denies each and every remaining allegation in Paragraph 42 of the Complaint, including all of its subparagraphs.

## PRAYER FOR RELIEF

**COMPLAINT'S PRAYER:**

WHEREFORE, GREAT NORTHERN INSURANCE COMPANY AND FEDERAL INSURANCE COMPANY respectfully request that judgment be entered in their favor and against NEW CENTURY MORTGAGE CORP. as follows:

A.     Declaring that plaintiffs did not owe a defense obligation to NCMC with regard to the *Bernstein* action and are entitled to reimbursement of defense costs;

B.     Declaring that plaintiffs owe no indemnity obligations to NCMC with regard to the Bernstein action;

D.     Awarding plaintiffs their costs of this suit; and

E.     Awarding plaintiffs such other and further relief as the Court deems just.

**ANSWER:**

43.     With respect to the Prayer in Chubb's Complaint, NCMC admits that Chubb is seeking the relief set out in the Prayer, but denies that Chubb is entitled to such relief.

### DEFENDANT'S AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT

44.     As a further and separate answer and defense to the Complaint, NCMC alleges that the Complaint, and each claim for relief thereof, is barred by the doctrine of waiver.



45.    As a further and separate answer and defense to the Complaint, NCMC alleges that the Complaint, and each claim for relief thereof, is barred by the doctrine of estoppel and, further, that Chubb is barred from raising any coverage defenses under Illinois' estoppel doctrine.

46.    As a further and separate answer and defense to the Complaint, and each claim for relief thereof, NCMC alleges that Chubb has failed to mitigate its damages in whole or in part (which damages otherwise are expressly denied).

47.    As a further and separate answer and defense to the Complaint, and each claim for relief thereof, NCMC alleges that Chubb materially breached the policies and, therefore, forfeited many of the rights that it otherwise would have had under the policies had it not breached them.

48.    As a further and separate answer and defense to the Complaint, and each claim for relief thereof, NCMC alleges that Chubb had a duty to "immediately and completely" defend NCMC against the claims in the *Bernstein* Action, which duty Chubb breached.

49.    As a further and separate answer and defense to the Complaint, and each claim for relief thereof, NCMC alleges that Chubb failed to comply with its obligations under various State insurance regulations, as well as other laws requiring an insurer to promptly investigate, respond to, and accept or deny an insured's claim.

50.    As a further and separate answer and defense to the Complaint, and each claim for relief thereof, NCMC alleges that the Court should refuse to exercise jurisdiction over, dismiss and or stay this "reactive" federal action in favor of NCMC's first-filed Minnesota state court action, which action involves the same parties and issues.

51.    As a further and separate answer and defense to the Complaint, NCMC alleges that Chubb is barred from seeking adjudication of each claim for relief and each issue raised in the Complaint, pursuant to the doctrines of *res judicata* and collateral estoppel, given the Minnesota state court action.

52.    As a further and separate answer and defense to the Complaint, and each claim for

relief thereof, NCMC alleges that this Court should impose sanctions against Chubb and or its counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

53.    As a further and separate answer and defense to the Complaint, NCMC alleges that Chubb is not entitled to declaratory relief with respect to the duty to indemnify, as this claim is not ripe and forever moot given NCMC's agreement to settle the underlying *Bernstein* Action.

Dated:  November 9, 2004

NEW CENTURY MORTGAGE CORPORATION

By: _____
One of Their Attorneys

Samuel S. Cohen
WILDMAN, HARROLD, ALLEN
  & DIXON LLP
225 West Wacker Drive, Suite 3000
Chicago, IL  60606
Tel:    (312) 201-2938
Fax:    (312) 201-2555

OF COUNSEL

David A. Gauntlett
Eric R. Little
Joseph S. McMillen
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA  92612
Tel:    (949) 553-1010
Fax:    (949) 553-2050

Bart T. Murphy
WILDMAN, HARROLD, ALLEN
  & DIXON
2300 Cabot Drive, Suite 455
Lisle, IL  60532-3639
Tel:    (630) 955-0555
Fax:    (630) 955-0662

Attorneys for Defendant