UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEW CENTURY MORTGAGE CORP., <br><br> Plaintiff, <br><br> vs. <br><br> GREAT NORTHERN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, <br><br> Defendants. | CASE NO.: 05C2370 <br><br> Judge Coar <br><br> **PLAINTIFF'S L.R. 56.1(a)(3) STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff New Century Mortgage Corp. ("New Century"), by their undersigned counsel, hereby submits its Local Rule 56.1(a)(3) Statement Of Undisputed Facts In Support Of Plaintiff's Motion For Summary Judgment against Defendants Great Northern Insurance Company ("Great Northern) and Federal Insurance Company ("Federal") (collectively, "Chubb").  New Century incorporates and references herein its contemporaneously filed Appendix of Exhibits In Support of Plaintiffs' Motion For Summary Judgment.

## DESCRIPTION OF THE PARTIES

1.  New Century is a California corporation with its offices in Irvine, California. New Century's Complaint, ¶ 1.

2.  Great Northern is a Minnesota corporation with its headquarters in Warren, New Jersey.  New Century's Complaint, ¶ 2; Answer, ¶ 2.

3.  Federal is an Indiana corporation with its headquarters in Warren, New Jersey. New Century's Complaint, ¶ 3; Answer, ¶ 3.

## VENUE AND JURISDICTION

4.  Jurisdiction of this Court is pursuant to 28 U.S.C. § 1332(a) (diversity of citizenship).  Chubb's March 23, 2005 Notice of Removal, ¶¶ 1-8.

5.  Venue in this Court is pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events and omissions giving rise to the claims herein occurred in this district.  Chubb's March 23, 2005 Notice of Removal, ¶ 9.  (The underlying lawsuit was pending in the Circuit Court of Cook County, Illinois.)

## UNDISPUTED FACTS

6.  On April 5, 2002, Paul Bernstein filed a civil class action in the Circuit Court of Cook County, Illinois County Department, Chancery Division against NCMC entitled *Paul Bernstein v. New Century Mortgage Corporation*, Civil Action No. 02CH 06907 (the *"Bernstein* Action").  **[McCarthy Declaration ("Decl.") ¶ 5, Exhibit "A"]**

7.  The *Bernstein* Action alleged claims for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Illinois Consumer Fraud Act, 815 ILCS 505/2

("ICFA").  **[McCarthy Decl. ¶¶ 5-6, Exhibit "A," pp. 2-3, 5]**

8. On or about September 30, 2003, Bernstein filed a second amended complaint. **[McCarthy Decl. ¶ 7, Exhibit "B"]**

9. Bernstein brought the action on behalf of a class "14. . . . consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date four years prior to filing of this action, (c) were sent advertising faxes by defendant . . .  15. The class is so numerous that joinder of all members is impractical."  **[McCarthy Decl. ¶ 7, Exhibit "B," p. 5]**

10. In addition to the TCPA and IFCA claims alleged in the Complaint, Bernstein also alleged a more specific claim for "Property Damage" based, *inter alia*, upon plaintiff's and class members' loss of use of the paper, toner and ink used to print the allegedly infringing faxes. **[McCarthy Decl. ¶ 7, Exhibit "B," pp. 11-12]**

11. Great Northern issued Commercial General Liability ("CGL") insurance policy, No. 3539-77-36 LAO, effective February 3, 2002 through February 3, 2003, naming NCMC as an insured by way of endorsement.  **[McCarthy Decl. ¶ 11, Exhibit "D"]**

12. Federal issued Commercial Umbrella Policy, No. 7977-03-85, effective February 3, 2002 through February 3, 2003, naming NCMC as an insured by way of endorsement. **[McCarthy Decl. ¶ 12, Exhibit "E"]**

13. The policies provide coverage for "advertising injury" and "property damage." The "advertising injury" coverage provides that Chubb will pay damages for "invasion of a person's right of privacy" in the course of advertising.  **[McCarthy Decl. ¶ 11, Exhibit "D," p. 21; ¶ 12, Exhibit "E," p. 11]**

14. The "property damage" coverage states that Chubb will pay damages because of "property damage" which is pertinently defined as "loss of use of tangible property that is not physically injured."  **[McCarthy Decl. ¶ 11, Exhibit "D," p. 27; McCarthy Decl. ¶ 12, Exhibit "E," p. 15]**

15. The "no voluntary payment" provision in the Chubb policies states, "No **insureds** will, except at that **insured's** own cost, make a payment [or] assume any obligation . . . without

our consent." **[McCarthy Decl. ¶ 11, Exhibit "D," p. 17; McCarthy Decl. ¶ 12, Exhibit "E," p. 17]**

16. NCMC had contracted with Fax.com to transmit faxes. That contract states,

> [NCMC] acknowledges that [NCMC] is aware that [Fax.com's] faxing of [NCMC's] commercial messages/advertisements on behalf of [NCMC] presents significant legal issues and risks. . . . [NCMC] has had the opportunity to consult with its own legal counsel with respect to the federal Telephone Consumer Protection Act and applicable state law regarding transmissions by fax of **unsolicited** commercial messages/advertisements and the risks attended thereto.

**[McCarthy Decl. ¶ 8, Exhibit "C," p.2]**

17. NCMC had no way to disprove it sent the faxes. **McCarthy Decl. ¶ 9.**

18. Fax.com had gone out of business and kept no records whether it sent the faxes NCMC contracted for it to send. **[McCarthy Decl. ¶ 9]**

19. NCMC has reason to believe Fax.com went out of business, in part, because it was sending unsolicited faxes on behalf of its customers, despite Fax.com's representations to NCMC it would only send faxes to welcomed recipients. **[McCarthy Decl. ¶ 10]**

20. On August 15, 2003, NCMC provided notice of the *Bernstein* Action to Chubb with a copy of the Complaint. **[McCarthy Decl. ¶ 13, Exhibit "F"]**

21. Chubb acknowledged receipt of the notice by letter dated January 7, 2004. **[McCarthy Decl. ¶ 14, Exhibit "G"]**

22. Chubb agreed to defend NCMC subject to a reservation of rights. **[McCarthy Decl. ¶ 14, Exhibit "G," p. 2]**

23. Chubb claimed the allegations in the Bernstein Complaint may not fall within the insuring agreement and may not meet any of the coverage definitions. **[McCarthy Decl. ¶ 14, Exhibit "G," p. 3]**

24. Chubb stated the allegations did not satisfy the definition of "Property Damage," even though there was a claim for loss of use of toner, ink and paper. **[McCarthy Decl. ¶ 14, Exhibit "G," p. 3]**

25. Chubb also claimed there was no "Occurrence," since transmission of the fax was

purportedly not an accident. **[McCarthy Decl. ¶ 14, Exhibit "G," p. 3]**

26. Chubb also acknowledged the allegations might include a claim within the "Advertising Injury" or "Personal Injury" coverage for publication of material that invades a person's right of privacy. **[McCarthy Decl. ¶ 14, Exhibit "G," p. 3]**

27. Chubb also asserted the Willful Violations Exclusion and the Expected or Intended Injury Exclusion. **[McCarthy Decl. ¶ 14, Exhibit "G," pp. 2-3]**

28. The "Expected or Intended Injury" Exclusion. states:

> the insurance does not apply to . . . property damage which results from an act that:
>
> - is intended by the insured; or
>
> - can be expected from the standpoint of a reasonable person to cause . . . **property damage**, even if the injury or damage is of a different degree or type than actually intended or expected.

**[McCarthy Decl. ¶ 11, Exhibit "D," p. 11]**

29. The Willful Violations Exclusion states:

> This insurance does not apply to **advertising injury** or **personal injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the **insured**.

**[McCarthy Decl. ¶ 11, Exhibit "D," p. 13]**

30. Chubb agreed that Coverage A of the Commercial Umbrella Policy was implicated and agreed the claim would be handled under the same reservation of rights as set forth under the primary policy. **[McCarthy Decl. ¶ 14, Exhibit "G," p. 4]**

31. On March 25, 2004 NCMC transmitted a spreadsheet of all its post-tender defense costs to Chubb. **[McCarthy Decl. ¶ 15, Exhibit "H"]**

32. NCMC had spent in excess of $89,000 through January 2004. **[McCarthy Decl. ¶ 16, Exhibit "H"]**

33. On April 9, 2004, Chubb sent a letter to NCMC agreeing to reimburse New Century's reasonable and necessary defense costs from August 27, 2003. **[McCarthy Decl. ¶ 17, Exhibit "I"]**

34. During May 2004, discussions ensued between NCMC and Chubb regarding attendance at a mediation. **[McCarthy Decl. ¶ 18]**

35. On June 14, 2004, NCMC received a settlement demand from Bernstein in the amount of $6 million. **[McCarthy Decl. ¶ 19, Exhibit "J"]**

36. On June 17, 2004, defense counsel for NCMC forwarded a copy of a settlement demand of $6 million received from counsel for Bernstein. **[McCarthy Decl. ¶ 20, Exhibit "K"]**

37. NCMC also advised Chubb that Bernstein was seeking class certification by way of motion, with a hearing scheduled in early August 2004. **[McCarthy Decl. ¶ 21, Exhibit "K"]**

38. On June 22, 2004, coverage counsel for Chubb advised defense counsel for NCMC that Chubb would continue to defend NCMC, but denied any duty to indemnify and refused to participate in a mediation then anticipated to take place on June 23, 2004. **[McCarthy Decl. ¶ 22, Exhibit "L"]**

39. Chubb stated that its duties to NCMC were excused because NCMC purportedly faxed a similar advertisement prior to Chubb's policy inception. **[McCarthy Decl. ¶ 22, Exhibit "L," p. 3]**

40. On June 30, 2004 New Century transmitted a letter to Chubb advising Chubb that it is obligated to fund the entire settlement and enclosing the attorney's fee and cost bills incurred by NCMC as of the letter's date. **[Lowe Decl. ¶ 3, Exhibit "M"]**

41. New Century also advised Chubb that "New Century faces significant exposure, well beyond the policy limits . . . should plaintiff succeed in having a class certified . . . ." and NCMC's litigation costs would have skyrocketed as is typical in class actions. **[Lowe Decl. ¶ 3, Exhibit "M," p. 2]**

42. By July 7, 2004 letter, Chubb stated, "You have asked that Great Northern Insurance Company and Federal Insurance Company 'consent to any settlement that is reached between New Century and plaintiff.' To the extent that your client deems it appropriate to settle

uncovered claims for $6 million . . . or less our clients will not stand in their way." **[Lowe Decl. ¶ 4, Exhibit "N," p. 2]**

43.  On August 5 and 6, 2004, NCMC and Bernstein participated in mediation. **[McCarthy Decl. ¶ 23]**

44.  Chubb again refused to contribute any amount toward settlement of the Bernstein Action. **[Lowe Decl. ¶ 5, Exhibit "O"]**

45.  On August 10, 2004, NCMC again requested Chubb agree to contribute to a settlement with Bernstein for an amount within the policy limits of the Chubb policies. **[Lowe Decl. ¶ 6, Exhibit "P"]**

46.  On August 10, 2004, Bernstein and NCMC reached an agreement to settle the *Bernstein* Action for $1.95 million. **[McCarthy Decl. ¶ 24]**

47.  The settlement amount NCMC paid was $1.95 million. **[McCarthy Decl. ¶ 25, Exhibit "Q"]**

48.  NCMC's Senior Vice President and General Counsel who oversaw the *Bernstein* Action felt that the $1.95 million settlement amount was eminently reasonable. **[McCarthy Decl. ¶ 26]**

49.  NCMC paid in settlement $500 per class claimant– the precise TCPA statutory damage amount. **[McCarthy Decl. ¶ 25, Exhibit "Q"]**

50.  On August 16, 2004, a Third Amended Complaint was filed in the *Bernstein* Action to reflect the claims being settled by NCMC and Bernstein. **[McCarthy Decl. ¶ 27, Exhibit "R"]**

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

51.  Chubb made payments of $3,935.30 and $26,084.03 on September 13, 2004.

**[McCarthy Decl. ¶ 28, Exhibit "S"]**

Dated:  September 28, 2005    **NEW CENTURY MORTGAGE CORPORATION**

By:  s/Bart T. Murphy
One of Their Attorneys

Bart T. Murphy, Esq.  (IL Bar 6181178)     David A. Gauntlett, Esq.
WILDMAN, HARROLD, ALLEN            Eric R. Little, Esq.
& DIXON LLP                                 James A. Lowe, Esq.
2300 Cabot Dr., Ste. 455                    GAUNTLETT & ASSOCIATES
Lisle, IL  60532                            18400 Von Karman, Suite 300
Tel:  (630) 955-6392                        Irvine, CA  92612
Fax:  (630) 955-0662                        Tel:  (949) 553-1010
                                            Fax:  (949) 553-2050

Attorneys for Plaintiffs