**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NEW CENTURY MORTGAGE CORP., | ) | |
| | ) | CASE NO.  05C2370 |
| Plaintiff, | ) | |
| | ) | Judge Coar |
| v. | ) | |
| | ) | **APPENDIX OF EXHIBITS IN** |
| GREAT NORTHERN INSURANCE | ) | **SUPPORT OF PLAINTIFF'S** |
| COMPANY, FEDERAL INSURANCE | ) | **MOTION FOR SUMMARY** |
| COMPANY, | ) | **JUDGMENT** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff New Century Mortgage Corporation ("NCMC"), hereby submits the following exhibits to its Motion for Summary Judgment:

| | |
|---|---|
| **Exhibit "A"** | April 5, 2002 Complaint in the *Paul Bernstein v. New Century Mortgage Corporation*, Civil Action No. 02CH 06907 (the "*Bernstein*" Action). |
| **Exhibit "B"** | September 30, 2003 Second Amended Complaint in the *Bernstein* Action. |
| **Exhibit "C"** | NCMC's contract with Fax.com. |
| **Exhibit "D"** | Great Northern Insurance Company Commercial General Liability policy No. 3539-77-36LAO issued to New Century Financial Corporation ("NCFC") effective February 3, 2002 through February 3, 2003 |
| **Exhibit "E"** | Federal Insurance Company Commercial Umbrella Policy No. 7977-03-85 issued to NCFC effective February 3, 2002 through February 3, 2003. |
| **Exhibit "F"** | August 15, 2003 notice letter from NCMC to Chubb through Financial Guarantee Insurance Brokers, including a copy of the Complaint in the *Bernstein* Action. |
| **Exhibit "G"** | Chubb's acknowledgment of receipt of the notice and agreement to defend the *Bernstein* Action subject to a reservation of rights |
| **Exhibit "H"** | NCMC's March 25, 2004 letter to Chubb enclosing a spreadsheet of NCMC's attorney's fees and costs in the *Bernstein* Action and requesting payment of those fees and costs. |
| **Exhibit "I"** | April 9, 2004 letter from Chubb agreeing to reimburse New Century's reasonable and necessary defense costs from August 27, 2003. |
| **Exhibit "J"** | June 14, 2004 settlement demand from Bernstein in the amount of $6 million. |
| **Exhibit "K"** | June 17, 2004 letter from New Century to Chubb enclosing Bernstein's $6 million demand requesting that Chubb fund the settlement. |
| **Exhibit "L"** | June 22, 2004 letter from Chubb, advising of their intent to continue to defend NCMC but refusing to indemnify, and refusing to participate in the mediation anticipated to take place on June 23, 2004. |
| **Exhibit "M"** | New Century's June 30, 2004 letter to Chubb advising Chubb that it is obligated to fund the entire settlement and enclosing the attorney's fee and cost bills incurred by NCMC as of the letter's date. |
| **Exhibit "N"** | Chubb's July 7, 2004 letter, acknowledging that settlement for $6 million or less is reasonable and prudent and disputing whether California law applies to NCMC's claim. |

| | |
|---|---|
| **Exhibit "O"** | Chubb's August 10, 2004 letter acknowledging a telephone conference between NCMC's in-house counsel and Chubb's adjuster placed by counsel during the August 6, 2004 mediation and acknowledging that Chubb again refused to even participate in the funding of the settlement of the *Bernstein* Action. |
| **Exhibit "P"** | NCMC's August 10, 2004 letter to Chubb reminding Chubb that all of the Courts addressing coverage for TCPA claims have found a duty of defense and/or indemnity, and that Chubb's self-serving letter of August 10, 2004, claiming that Chubb did not have enough information to evaluate its settlement duties was simply false. |
| **Exhibit "Q"** | The Settlement Agreement pursuant to whose terms New Century agreed to pay plaintiff's $1.95 million to settle the *Bernstein* Action. |
| **Exhibit "R"** | The Third Amended Complaint in the *Bernstein* Action filed on August 16, 2004. |
| **Exhibit "S"** | Chubb's September 13, 2004 check in the amount of $3,935.30 and September 13, 2004 check in the amount of $26,084.03. |

DATED:  September  28, 2005          **NEW CENTURY MORTGAGE CORPORATION**


s/Bart T. Murphy_____
Bart T. Murphy

Bart T. Murphy, Esq. (IL Bar 6181178)        David A. Gauntlett, Esq.
WILDMAN, HARROLD, ALLEN              Eric R. Little, Esq
& DIXON LLP.                                      GAUNTLETT & ASSOCIATES
2300 Cabot Dr., Ste. 455                        18400 Von Karman, Suite 300
Lisle, IL  60532                                    Irvine, CA  92612
Tel:      (630) 955-6392                        Tel:      (949) 553-1010
Fax::     (630) 955-0662                        Fax:    (949) 553-2050

Attorneys for Plaintiff

# Exhibit A

Atty. No. 12775



IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

FILED

| | | |
|---|---|---|
| PAUL BERNSTEIN, | ) | APR 0 5 2002 |
| | ) | |
| Plaintiff, | ) | DOROTHY BROWN |
| | ) | CLERK OF CIRCUIT COURT |
| v. | ) | |
| | ) | |
| NEW CENTURY MORTGAGE | ) | 02CH06907 |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT -- CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.    Plaintiff Paul Bernstein brings this action to secure redress for the actions of defendant New Century Mortgage Corporation in sending out unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA").

### PARTIES

2.    Plaintiff Paul Bernstein is an attorney who practices law in downtown Chicago.

3.    Defendant New Century Mortgage Corporation is a California corporation with its principal place of business in California. It does business in Illinois.  It maintains offices at 1000 N. Plaza Drive, Suite 401, Schaumburg, IL 60173.

1

## FACTS

4.    On or about February 26, 2002, defendant New Century Mortgage Corporation caused the unsolicited fax advertisement attached as Exhibit A to be transmitted to plaintiff's facsimile machine.

5.    Plaintiff Paul Bernstein had no prior business relationship with defendant New Century Mortgage Corporation and had not authorized the sending of fax advertisements to plaintiff.

6.    On information and belief, defendant disseminated this fax advertisement not only to plaintiff but also to many other individuals and entities who did not solicit the fax or have a prior relationship with defendant.

## COUNT I – TCPA

7.    Plaintiff incorporates ¶¶ 1-6.

8.    The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine..." 47 U.S.C. §227(b)(1)(C).

9.    The TCPA, 47 U.S.C. §227(b)(3), provides:

Private right of action.

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in appropriate court of that State–

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever, is greater, or

2



(C) both such actions.

If the Court finds that the Defendant willfully or knowingly violated this subscription or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.

10.    Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and toner consumed as a result.

11.    Plaintiff and each class member is entitled to statutory damages.

12.    On information and belief, defendant wilfully and knowingly violated the TCPA.

13.    Unless enjoined from doing so, defendant is likely to commit similar violations in the future.

## CLASS ALLEGATIONS

14.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date two years prior to the filing of this action, (c) were sent advertising faxes by defendant (d) and with respect to whom defendant cannot provide evidence of consent or a prior business relationship.

15.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

16.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendant engaged in a pattern of sending unsolicited fax

3

advertisements;

      b.    Whether defendant thereby violated the TCPA;

      c.    Whether defendant thereby engaged in unfair and deceptive acts

and practices, in violation of the ICFA.

      17.    Plaintiff will fairly and adequately protect the interests of the class.

Plaintiff has retained counsel experienced in handling class actions and claims involving

unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which

might cause them not to vigorously pursue this action.

      18.    A class action is an appropriate method for the fair and efficient

adjudication of this controversy. The interest of class members in individually controlling the

prosecution of separate claims against defendant is small because it is not economically feasible

to bring individual actions.

      19.    Several courts have certified class actions under the TCPA. Nicholson v.

Hooters of Augusta, Inc., 245 Ga.App. 363, 537 S.E.2d 468 (2000); State of Texas v. American

Blast Fax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

      20.    Management of this class action is likely to present significantly fewer

difficulties that those presented in many class actions, e.g. for securities fraud.

      WHEREFORE, plaintiff requests that the Court enter judgment in favor of

plaintiff and the class and against defendant for:

      a.    Actual damages;

      b.    Statutory damages;

      c.    An injunction against the further transmission of unsolicited fax

advertising;

    d.    Attorney's fees, litigation expenses and costs of suit;

    e.    Such other or further relief as the Court deems just and proper.

## COUNT II – ICFA

21.    Plaintiff incorporates ¶¶ 1-6.

22.    Defendant engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

23.    Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and toner consumed as a result.

24.    Defendant engaged in such conduct in the course of trade and commerce.

25.    Defendant engaged in such conduct knowing that it was thereby causing recipients of its advertising to bear the cost thereof.

26.    On information and belief, defendant knowingly and deliberately engaged in unlawful acts.

27.    Unless enjoined from doing so, defendant is likely to commit similar violations in the future.

## CLASS ALLEGATIONS

28.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent advertising faxes by defendant (d) and with respect to whom defendant cannot provide evidence of consent or a prior business relationship.

5

29.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

30.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendant engaged in a pattern of sending unsolicited fax advertisements;

b.    Whether defendant thereby violated the TCPA;

c.    Whether defendant thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

31.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

32.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

33.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

6

a.   Actual damages;

b.   Punitive damages;

c.   An injunction against the further transmission of unsolicited fax

advertising;

d.   Attorney's fees, litigation expenses and costs of suit;

e.   Such other or further relief as the Court deems just and proper.

_____

Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Adam M. Berger
EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 12775

J:\case\new8.128\pleading\cmplt.wpd

7

# EXHIBIT A

02/26/02 07:52:21

# ATTENTION HOMEOWNERS:

# Get Cash FAST!





- **Same-Day Approvals!**
- Self-Employed OK!
- Bankruptcy OK!
- Foreclosure OK!
- Loans For Any Purpose
- Cash Within 7 Days
- Competitive Rates
- Over $7 Billion Loaned

## CALL NOW!

# 800-205-9422

Lower Your Payment Today With A First
Mortgage Loan From New Century
Mortgage Corporation





NEW CENTURY™
MORTGAGE CORPORATION



EQUAL HOUSING
LENDER

"When the others say no,
New Century says YES!"

Certain conditions and restrictions may apply. New Century Mortgage Corporation is a nationally recognized lender.

TO HAVE YOUR NUMBER REMOVED FROM OUR DATABASE, PLEASE CALL OUR AUTOMATED TOLL-FREE CENTER AT **800-443-7628.**

Exhibit B



Atty. No. 12775

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| WHITING CORPORATION, | ) | |
| | ) | |
| Plaintiff | ) | No. 02 CH 6332 |
| | ) | Judge Patrick E. McGann |
| v. | ) | |
| | ) | |
| MSI MARKETING, INC., | ) | |
| | ) | |
| Defendants. | ) | Related To: |
| | ) | |

| | | |
|---|---|---|
| PAUL BERNSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 CH 06907 |
| | ) | |
| v. | ) | |
| | ) | |
| NEW CENTURY MORTGAGE | ) | |
| CORPORATION and JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT -- CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.    Plaintiff Paul Bernstein brings this action to secure redress for the actions of defendant New Century Mortgage Corporation in sending out unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and Illinois common law.

### PARTIES

2.    Plaintiff Paul Bernstein is an attorney who practices law in downtown

1

 

Chicago.

3.     Defendant New Century Mortgage Corporation is a California corporation with its principal place of business in California. It does business in Illinois. It maintains offices at 1000 N. Plaza Drive, Suite 401, Schaumburg, IL 60173.

## FACTS

4.     On or about February 26, 2002, defendant New Century Mortgage Corporation caused the unsolicited fax advertisement attached as Exhibit A to be transmitted to plaintiff's facsimile machine.

5.     Plaintiff Paul Bernstein had no prior business relationship with defendant New Century Mortgage Corporation and had not authorized the sending of fax advertisements to plaintiff.

6.     The fax advertisement at issue contains a telephone number, 800-443-7628, associated with the mass "broadcasting" by Fax.com, Inc. of unsolicited advertising faxes to lists of numbers compiled by "fax broadcasters" and sold or otherwise made available to businesses desirous of engaging in illegal fax advertising. The same number was listed in the FCC's citation against Fax.com, Inc., File No. EB-02-TC-120, 2002 WL 1798553 (FCC, Aug. 7, 2002), as present in other unsolicited faxes sent to large numbers of persons by Fax.com, Inc.

7.     Defendant or its agents designed the advertising material in question in a manner calculated to make its receipt particularly expensive. The inclusion of graphics and bold headlines and words in the fax causes it to consume unusually large amounts of toner or ink. Heavy black headlines and graphics cause a fax to consume as much toner or ink as a dozen or more ordinary business letters.

8.     There is no reasonable alternative to the receipt of the illegal faxes.

2



Professionals such as plaintiffs need to leave their fax machines on in order to receive urgent communications which they desire to receive. Based on experience and the FCC citation against Fax.com, Inc., dialing the "remove" numbers provided on Exhibit A does not result in cessation of unsolicited faxes. Indeed, it may result in the dialer being placed on a "sucker list" of people that actually pay attention to unsolicited faxes and being inundated with other unsolicited faxes. Note 25 of the FCC citation, File No. EB-02-TC-120, 2002 WL 1798553 (FCC, Aug. 7, 2002), states:

> Information provided by consumers indicates that Fax.com continued to send faxes even after receiving opt-out calls. For instance, a log provided by William Robert White, President of Regency Sales, Inc., documents over 50 attempts between May 2000 and August 2001 to use Fax.com's opt-out numbers to halt Regency's receipt of unsolicited advertisements from Fax.com clients. Despite these attempts, Fax.com continued to transmit unsolicited advertisements to Regency, as evidenced by at least 12 faxes received by Regency from December 2001 to February 2002. See Table 1; see also Letter from Andrew Hansis to Consumer Information Bureau (Oct. 5, 2001) (October 5 Hansis Letter) (stating that Mr. Hansis continued to receive faxes even after using Fax.com's automated opt-out system and speaking with a senior Fax.com employee in an effort to end the faxing); Consumer Form for Telephone-Related Issues from Norman Jensen, III (rec'd Jan. 8, 2002) (consumer continued to receive at least one advertisement a week despite "repeatedly" calling opt-out numbers and faxing a message to the originating fax number asking that his telephone facsimile number be removed from the fax number database); Consumer Form for Telephone-Related Issues from Dora Wong Goto (rec'd Oct. 15, 2001) (Goto Complaint Form); annotated copies of faxes submitted by James Allan Dobbins. It is clear that a call to one Fax.com opt-out line does not end all fax transmissions from the company. We emphasize here that even an effectively administered opt-out system does not change the statutory ban on sending unsolicited facsimile advertisements or insulate such transmissions from statutory penalties. However, the fact that Fax.com apparently does not even adhere to its own stated procedures makes its conduct even more egregious.

9.    Based on the above facts, plaintiff alleges, on information and belief, that the fax attached hereto was sent as part of a mass "broadcasting" of faxes.

### COUNT I – TCPA

10.    Plaintiff incorporates ¶¶ 1-9.




11.    The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine..." 47 U.S.C. §227(b)(1)(C).

12.    The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—**

> **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
>
> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever, is greater, or**
>
> **(C) both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

13.    Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

14.    Plaintiff and each class member is entitled to statutory damages.

15.    If the evidence shows the violation was willful, plaintiff requests trebling of the damages.

16.    Defendants should be enjoined from committing similar violations in the future.

4



## CLASS ALLEGATIONS

17.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

18.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

19.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.    The manner in which defendants compiled or obtained their list of fax numbers;

c.    Whether defendants thereby violated the TCPA;

d.    Whether defendants thereby committed the tort of conversion;

e.    Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

f.    Whether defendants thereby tortiously damaged the property of plaintiff.

20.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to

5



vigorously pursue this action.

21.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

22.    Several courts have certified class actions under the TCPA. <u>Nicholson v. Hooters of Augusta, Inc.,</u> 245 Ga.App. 363, 537 S.E.2d 468 (2000); <u>ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,</u> 50 P.3d 844 (Ariz. App. 2002) (private class actions); see <u>State of Texas v. American Blast Fax, Inc.,</u> 164 F. Supp. 2d 892 (W.D. Tex. 2001) (state enforcement action).

23.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a.    Actual damages;

    b.    Statutory damages;

    c.    An injunction against the further transmission of unsolicited fax advertising;

    d.    Costs of suit;

    e.    Such other or further relief as the Court deems just and proper.

### COUNT II – CONVERSION

24.    Plaintiff incorporates ¶¶ 1-9.

6



25.    By sending plaintiff and the class members unsolicited faxes, defendants converted to their own use ink or toner and paper belonging to plaintiff and the class members.

26.    Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

27.    By sending the unsolicited faxes, defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

28.    Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

29.    The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

30.    Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

31.    Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

32.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

7



33.     The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

34.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.     Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.     Whether defendants thereby violated the TCPA;

c.     Whether defendants thereby committed the tort of conversion;

d.     Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

e.     Whether defendants thereby tortiously damaged the property of plaintiff.

35.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

36.     A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

37.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

8



WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a.    Appropriate damages;

    b.    An injunction against the further transmission of unsolicited fax advertising;

    c.    Costs of suit;

    d.    Such other or further relief as the Court deems just and proper.

## COUNT III – ICFA

38.    Plaintiff incorporates ¶¶ 1-9.

39.    Defendants engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

40.    Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

41.    Defendants engaged in such conduct in the course of trade and commerce.

42.    Defendants engaged in such conduct knowing that such conduct was causing recipients of their advertising to bear the cost thereof.

43.    Defendants' shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair. In addition, defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

44.    The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

45.    Defendants should be enjoined from committing similar violations in the



future.

## CLASS ALLEGATIONS

46.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

47.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

48.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.    Whether defendants thereby violated the TCPA;

c.    Whether defendants thereby committed the tort of conversion;

d.    Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

e.    Whether defendants thereby tortiously damaged the property of plaintiff.

49.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

10

50.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

51.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a.    Appropriate damages;

b.    An injunction against the further transmission of unsolicited fax advertising;

c.    Attorney's fees, litigation expenses and costs of suit;

d.    Such other or further relief as the Court deems just and proper.

### COUNT IV – PROPERTY DAMAGE

52.    Plaintiff incorporates ¶¶ 1-9.

53.    By sending plaintiff and the class members unsolicited faxes, defendants damaged paper belonging to plaintiff and the class members.

54.    Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and used to print the faxes.

55.    By sending the unsolicited faxes, defendants used plaintiff's paper used to print the faxes in such manner as to make it unusable. Such action was wrongful and without

11




authorization.

56.    Defendants knew or should have known that their action was wrongful and without authorization.

57.    The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

58.    Plaintiff and the class members were deprived of the paper, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

59.    Defendants should be enjoined from committing similar violations in the future.

**CLASS ALLEGATIONS**

60.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

61.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

62.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.    Whether defendants thereby violated the TCPA;

12

c.      Whether defendants thereby committed the tort of conversion;

d.      Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

e.      Whether defendants thereby tortiously damaged the property of plaintiff.

63.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

64.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

65.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a.      Appropriate damages;

b.      An injunction against the further transmission of unsolicited fax advertising;

c.      Costs of suit;

d.      Such other or further relief as the Court deems just and proper.

13



_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Julie Clark
EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 12775
J:\case\new8.128\pleading\2damd.cmplt.wpd

14

# EXHIBIT A

02/26/02 07:52:21                    ->      3122808181  <-1      0-8180->    Page 001

# ATTENTION HOMEOWNERS:

# Get Cash FAST!



- **Same-Day Approvals!**
- Self-Employed OK!
- Bankruptcy OK!
- Foreclosure OK!
- Loans For Any Purpose
- Cash Within 7 Days
- Competitive Rates
- Over $7 Billion Loaned

## CALL NOW!

# 800-205-9422

Lower Your Payment Today With A First
Mortgage Loan From New Century
Mortgage Corporation

 NEW CENTURY™
MORTGAGE CORPORATION


LENDER



"When the others say no,
New Century says YES!"

Certain conditions and restrictions may apply. New Century Mortgage Corporation is a nationally recognized lender.

TO HAVE YOUR NUMBER REMOVED FROM OUR DATABASE, PLEASE CALL OUR AUTOMATED TOLL-FREE CENTER AT 800-443-7528.

# Exhibit C

# Fax Broadcasting Agreement

This Fax Broadcasting Agreement (the "Agreement") is entered into as of June 7, 2001, by and between Fax.com, Inc., a Delaware corporation with its principal place of business in Aliso Viejo, California ("Seller") and New Century Mortgage ("Buyer").

WHEREAS, Seller provides fax broadcasting, fax-on-demand and other proprietary fax systems for mass faxing and other marketing services for commercial purposes (the "Services" or "Service"); and

WHEREAS, Buyer desires to begin utilizing or continue utilizing the Services;

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein, Buyer and Seller (the "parties") hereby agree as follows:

1.    **The Services**  Seller will provide the Services to Buyer in accordance with the terms of individual written sales orders to be completed by Buyer and delivered to Seller. However, Seller reserves the right in Seller's sole discretion to reject any sales orders or sales request submitted by Buyer to Seller.

2.    **Payment:** Buyer shall pay for the Services based upon the terms set forth in the written sales orders. Payment shall be at the time Buyer places the sales order with Seller. Seller is capable as of the date of this Agreement of accepting payment by credit card *OR OTHER TERMS AS AGREED.* @

3.    **Use of the Services with Seller's Fax Data.**  Except in those instances where the Buyer is supplying fax data to Seller (see paragraph 4 below), Seller will provide the Services by utilizing a database of fax numbers in the possession of Seller. Seller maintains all of its proprietary rights to this data base of fax numbers and Buyer is acquiring no rights to nor access to Seller's database, other than use of the Services as set forth in Buyer's sales order. In the fax transmissions, Seller will place on Buyer's message a toll-free telephone number that a fax recipient may call to add or delete the recipient's fax number from Seller's database. Buyer agrees that in the event the recipient instead contacts Buyer, Buyer will obtain the information communicated by the recipient and immediately inform Seller of the information, so that Seller may take all appropriate steps, such as to add or delete the recipient's fax number from Seller's data base. Buyer understands that Seller will not transmit to 800/838/976 numbers. Buyer further understands that Seller may not be able to process or fully complete Buyer's sales orders or sales request if to do so would violate Seller's own internal procedures or policies with respect to the Services.

4.    **Buyer Supply of Data.**  Should Buyer decide to supply fax data to Seller for use in the Services, Buyer accepts all responsibility for providing Seller clean and accurate data and Buyer further agrees to pay for 100% of all faxes sent regardless of completion success. Buyer also agrees to pay for any and all damages incurred by Seller during or as a result of the use of Buyer-provided data. Seller agrees to hold any data given by Buyer to Seller in strictest confidence under the same proprietary standards Seller holds its own data.

5.    **Late Payment.**  Buyer is responsible for payment of all charges, including taxes and surcharges, for the Services. Payment will be made in U.S. currency. If Seller does not receive payment within thirty (30) days of receipt of Buyer's placement of a sales order with Seller, Seller may levy a late charge of 1.5% per month on the unpaid balance or the maximum allowed by law, whichever is less. If payment is not received within ninety (90) days of Buyer's order, Seller shall be entitled to recover any and all amounts due, plus costs of collection, including, but not limited to, reasonable attorney's fees. Seller may use any agency or collection methods allowable under the law to recover any outstanding debts owed by Buyer.

6.    **Possible Additional Fees.**  Buyer agrees that should Buyer's message being transmitted over the Service require longer than one (1) minute per page for fax job completion, an overage charge will be applied to the overall job order in increments of ten (10) seconds at the agreed-upon rate set forth in Buyer's sales order. Buyer agrees to pay any extenuating fees incurred by Seller while executing the Services including, but not limited to, additional dialing fees for non-U.S. calling, de-contamination of any data supplied by Buyer or rush job charges.

7.    **Buyer's Responsibility re Content of Faxes.**  Buyer is solely responsible for the content and/or quality of any documents and commercial messages transmitted over the Service and Buyer expressly covenants that Buyer will not use the Services for any misleading or fraudulent purpose including, but not limited to, marketing of unlawful products or violations of securities laws. In addition, Seller reserves, in its sole discretion, the right to refuse to transmit any message

1

NCMC00023

over the Service that Seller believes might be deceptive, misleading, fraudulent, offensive, or otherwise inappropriate for transmission.

8.    **Buyer's Authority to Execute and Perform Agreement.** Buyer represents it is authorized to execute and deliver this Agreement and, specifically, that neither the execution nor the delivery of this Agreement, nor the taking of any action in compliance with the Agreement will breach any agreement to which Buyer is a party and/or violate Buyer's articles of incorporation or bylaws.

9.    **No Guaranty of Results.** Although Seller expects the Services, once utilized, to increase Buyer's marketing presence, Seller makes no warranty--express or implied--as to the ability of the Service to in fact increase Buyer's marketability. In the event Buyer's marketing presence does not increase as a result of Buyer's utilization of the Services, Buyer shall have no recourse against Seller on any legal theory, whether based on representation, warranty or otherwise. Buyer assumes the entire risk as to the results and performance of the Services in regards to increasing marketability and revenues.

10.    **Assignment.** This Agreement will bind and benefit the successors and assigns of the parties, but Buyer may not assign its rights under the Agreement without Seller's prior written consent.

11.    **Legal Issues re Fax Broadcasting.** Buyer acknowledges that Buyer is aware that Seller's faxing of Buyer's commercial messages/advertisements on behalf of Buyer presents significant legal issues and risks. Buyer acknowledges that Seller has made no representations, promises or assurances to Buyer in this regard, and Buyer has had the opportunity to consult with its own legal counsel with respect to the federal Telephone Consumer Protect Act and applicable state law regarding transmission by fax of unsolicited commercial messages/advertisements and the risks attended thereto. The parties acknowledge and agree that Seller shall have no indemnity obligations to Buyer unless a separate written indemnity agreement is made and executed by the parties concurrently with or subsequent to the date of this Agreement.

12.    **Governing Law/Arbitration.** This Agreement shall be governed under the laws of the State of California. In the event that any provision hereof is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitration shall be conducted in Orange County, California before a single neutral arbitrator.

13.    **Entire Agreement.** This Agreement sets forth the entire agreement of the parties as of the date of this Agreement. Any and all prior understandings, representations and agreements between the parties—whether written or oral--are hereby expressly superseded as of the date of this Agreement and shall have no force or effect. Further, this Agreement may be amended and/or modified only in writing and must be executed by the party to be charged, or, in the case of a waiver, by the waiving party.

14. SELLER TO PROVIDE BUYER PROOF OF TRANSMISSION ON A DAILY BASIS, OR OTHERWISE AS AGREED BY THE PARTIES. (?)

IT IS AGREED:

SELLER:
    Fax.com, Inc

                                        Address: 120 Columbia Suite 500
                                        Aliso Viejo, CA 92656

By: _____
    Jeffrey Dupree
    Its Vice President/Sales

BUYER:
    New Century Mortgage                Address: 340 Commerce
                                        Irvine, CA 92602

By: _____
    Frank Nese

2

NCMC00024

# Exhibit D





## *Liability Insurance*

### *Declarations*
*Coverage Summary*

**Chubb Group of Insurance Companies**
**15 Mountain View Road**
**Warren, NJ 07059**

*Named Insured and Mailing Address*

*Policy Number*  3539-77-36 LAO

NEW CENTURY FINANCIAL CORPORATION
(SEE NAMED INSURED ENDORSEMENT)
18400 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

*Effective Date*  FEBRUARY 3, 2002

*Issued by the stock insurance company
indicated below, herein called the company.*

**GREAT NORTHERN**
**INSURANCE COMPANY**

*Producer No.*  0073101

*Incorporated under the laws of
MINNESOTA*

*Producer*  FINANCIAL GUARANTY INSURANCE BROKERS INC.
709 E COLORADO BLVD #230
PASADENA, CA 91101-0000

## Policy Period

From:  FEBRUARY 3, 2002        To:  FEBRUARY 3, 2003
12:01 A.M. standard time at the Named Insured's mailing address shown above.

## Foreclosure Liability Reporting Period:                    NOT APPLICABLE

## Trust Liability Reporting Period:                    NOT APPLICABLE

## Coverage Summary

### GENERAL LIABILITY

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | $ 2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | INCLUDED IN GENERAL AGGREGATE LIMIT |
| EACH OCCURRENCE LIMIT | $ 1,000,000 |
| ADVERTISING INJURY AND PERSONAL INJURY LIMIT | $ 1,000,000 |
| MEDICAL EXPENSE LIMIT | $ 10,000 |

### EMPLOYEE BENEFITS ERRORS OR OMISSIONS

| | |
|---|---|
| AGGREGATE LIMIT | $ 1,000,000 |
| EACH CLAIM LIMIT | $ 1,000,000 |
| DEDUCTIBLE - EACH CLAIM | $ 1,000 |

## *Coverage Summary*
(continued)

RETROACTIVE DATE                                                    FEBRUARY 3, 2002

  

***Liability Insurance***

---

*Schedule of Forms*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

---

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 17-02-3020 | 2-98 | GENERAL LIABILITY DECLARATIONS | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3022 | 4-95 | STATE CODE GENERAL LIABILITY DEC | 02/03/02 | 04/12/02 |
| 17-02-3080 | 4-95 | GENERAL LIABILITY | 02/03/02 | 04/12/02 |
| 17-02-3140 | 2-98 | CONSTRUCTION LOAN EXCLUSION | 02/03/02 | 04/12/02 |
| 17-02-3141 | 2-98 | SECURITIES AND TRADE PRACTICES EXCLUSION | 02/03/02 | 04/12/02 |
| 17-02-3308 | 4-95 | EXCLUSION - GL FORECLOSURE, TRUST, LEASING | 02/03/02 | 04/12/02 |
| 17-02-3309 | 4-95 | POLICY EXCLUSION - LEAD | 02/03/02 | 04/12/02 |
| 80-02-2393 | 2-98 | EXCLUSION - ASBESTOS | 02/03/02 | 04/12/02 |
| 80-02-2012 | 6-98 | EMPLOYEE BENEFITS ERRORS OR OMISSIONS | 02/03/02 | 04/12/02 |
| 80-02-2328 | 4-94 | CUMIS - CALIFORNIA | 02/03/02 | 04/12/02 |
| 80-02-2345 | 11-99 | EXCLUSION - EMPLOYMENT-RELATED PRACTICES | 02/03/02 | 04/12/02 |
| 80-02-2347 | 4-94 | EXCLUSION - PROFESSIONAL LIABILITY | 02/03/02 | 04/12/02 |
| 80-02-2373 | 4-94 | SCHEDULE OF LIABILITY ONLY LOCAITONS | 02/03/02 | 04/12/02 |
| 80-02-2410 | 2-98 | EXCLUSION - REAL ESTATE DEVELOPMENT | 02/03/02 | 04/12/02 |
| 80-02-2426 | 4-98 | MILLENNIUM DATE CHANGE TOTAL EXCL | 02/03/02 | 04/12/02 |

*last page*

---



*Liability Insurance*

*General Liability*

*Table Of Contents*

**Section**                                                              **Page No.**

Who Is Insured ............................................................ 3

Coverage ................................................................. 6

Limits Of Insurance ....................................................... 7

Investigation, Defense And Payment Of Damages ............................. 8

Supplementary Payments .................................................... 8

Coverage Territory ........................................................ 9

Bodily Injury/Property Damage Exclusions .................................. 9

Advertising Injury/Personal Injury Exclusions ............................ 12

Medical Expense Exclusions ............................................... 13

Policy Exclusions ........................................................ 14

Liability Conditions ..................................................... 16

Definitions .............................................................. 21

*THIS PAGE INTENTIONALLY LEFT BLANK*





*General Liability*

## Contract

Words and phrases that appear in **bold** print have special meanings and are defined in the Definitions section of this contract.

Throughout this contract the words "you" and "your" refer to the Named **Insured** shown in the Declarations of this policy, and any other person or organization qualifying as a Named **Insured** under this contract. The words "we," "us" and "our" refer to the company providing this insurance.

In addition to the Named **Insured**, other persons or organizations qualify as **insureds**. Those persons or organizations and the conditions under which they qualify are identified in the Who Is Insured section of this contract.

## Who Is Insured

**Sole Proprietorship**

If you are an individual, you and your spouse are **insureds**, but only with respect to the conduct of a business of which you are the sole owner.

**Partnership Or Joint Venture**

If you are a partnership or joint venture, you are an **insured**. Your members, your partners, and their spouses are also **insureds**, but only with respect to the conduct of your business.

**Other Organizations**

If you are an organization other than a partnership, joint venture or limited liability company, you are an **insured**. Your **executive officers** and directors are **insureds**, but only with respect to their duties as your officers or directors. Your stockholders are also **insureds**, but only with respect to their liability as stockholders.

**Employees**

Your **employees**, other than your **executive officers**, are **insureds**, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

No **employee** is an **insured** for:

A.   **bodily injury** or **personal injury**:

    1.   to you, your partners or members (if you are a partnership, joint venture or limited liability company), or to a co-**employee** while in the course of his or her employment or while performing duties related to the conduct of your business;

    2.   to the spouse, child, parent, brother or sister of that co-**employee** as a consequence of paragraph A.1. above; or

    3.   for which there is any obligation to share damages with or repay someone else who must pay damages because of an injury described in A.1. or A.2. above.

Paragraphs A.1., A.2., and A.3. do not apply to officers or supervisors.

B.   **property damage** to property owned or occupied by or rented or loaned to that **employee**, any of your other **employees**, or any of your partners or members (if you are a partnership, joint venture or limited liability company).



## Who Is Insured
(continued)

**Volunteer Workers**

Your volunteer workers (at your option) are **insureds**.

**Real Estate Manager**

Any person (other than your **employee**) or any organization while acting as your real estate manager are **insureds**, but only if you are contractually obligated to include them as **insureds** under this contract.

**Custodian**

Any person or organization having proper temporary custody of your property if you die are **insureds**, but only with respect to the maintenance or use of that property until your legal representative has been appointed.

**Legal Representative**

Your legal representative is an **insured**, if you die. That representative will have all of your rights and duties, but is an **insured** only with respect to his duties as your legal representative.

**Permissive User Of Mobile Equipment**

With respect to **mobile equipment** registered in your name under any motor vehicle registration law:

- any person is an **insured** while driving such equipment along a public highway with your permission; and

- any other person or organization responsible for the conduct of such person is also an **insured**, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability.

No person or organization is an **insured** with respect to:

- **bodily injury** to a co-**employee** of the person driving the equipment; or

- **property damage** to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an **insured** under this provision.

**Vendors**

Any vendor is an **insured**, but only with respect to **bodily injury** or **property damage** arising out of the distribution or sale of **your products** in the regular course of that vendor's business and only if products/completed operations coverage is provided under this contract.

No vendor is an **insured** with respect to:

- **bodily injury** or **property damage** for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

- any express warranty unauthorized by you;

- any physical or chemical change in **your products** made intentionally by the vendor;

- repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer and then repacked in the original container;





## General Liability

## Who Is Insured

**Vendors**
**(continued)**

- demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of **your products**;

- **your products** which after distribution or sale by you have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance, by or for the vendor;

- any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of **your products**;

- any of **your products** or completed operations contained within the **products-completed operations hazard** which have been excluded from this insurance; or

- any **occurrence** which takes place after the contract with the vendor expires or the end of the policy period, whichever comes first.

This insurance does not apply to any person or organization, as **insured**, from whom you have acquired **your products** or any ingredient, part or container, entering into, accompanying or containing **your products**.

**Lessors Of Premises**

Any lessor of leased premises is an **insured**, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and only if you are contractually obligated to provide such coverage as is afforded by this contract.

No lessor is an **insured** with respect to:

- any **occurrence** which takes place after you cease to be a tenant in the premises or the end of the policy period, whichever comes first;

- structural alterations, new construction, or demolition operations performed by or on behalf of the lessor; or

- **bodily injury, property damage, advertising injury**, or **personal injury** arising out of the sole negligence of the lessor.

**Lessors Of Leased**
**Equipment**

Any lessor of equipment leased to you is an **insured**, but only with respect to **bodily injury** or **property damage** arising out of the maintenance, operation or use by you of the equipment and only if you are contractually obligated to provide such coverage as is afforded by this contract.

No lessor is an **insured** with respect to:

- any **occurrence** which takes place after any equipment lease expires or the end of the policy period, whichever comes first; or

- **bodily injury** or **property damage** arising out of the sole negligence of the lessor.

**Subsidiaries Or Newly**
**Acquired Or Formed**
**Organizations**

If there is no other similar insurance available, the following will qualify to be a named **insured**:

- any financially controlled subsidiary of yours; or




## Who Is Insured

**Subsidiaries Or Newly Acquired Or Formed Organizations (continued)**

- any organization you newly acquired or formed during the policy period, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest. This coverage is effective on the acquisition or formation date and is afforded only until the end of the policy period during which the acquisition or formation took place.

No subsidiary or newly acquired or formed organization is an **insured** with respect to:

- **bodily injury** or **property damage** that occurred before you acquired or formed the organization; or

- **advertising injury** or **personal injury** arising out of an offense committed before you acquired or formed the organization.

**Limitation On Who Is Insured**

No one is an **insured** for the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named **insured** in the Declarations.

## Coverage

**Bodily Injury, Property Damage, Advertising Injury, And Personal Injury**

Subject to the applicable Limits of Insurance, we will pay damages the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** for:

- **bodily injury** or **property damage** to which this insurance applies caused by an **occurrence**; or

- **advertising injury** or **personal injury** to which this insurance applies caused by an offense.

This includes **bodily injury**, **property damage**, **advertising injury** or **personal injury** involving:

- automated teller machines;

- **foreclosed property**;

- property in any trust, guardianship or estate for which you are acting in a fiduciary or representative capacity; and

- property which you own and lease to others, when specific insurance, which would customarily protect your interest and which you require your lessees to carry, is non-existent, invalid, insufficient or uncollectible.

This insurance applies to:

- **bodily injury** or **property damage** which occurs during the policy period; and

- **advertising injury** or **personal injury** caused by an offense committed during the policy period.

Damages for **bodily injury** include damages claimed by any person or organization for care or loss of services resulting at any time from the **bodily injury**.

**Medical Expense**

Subject to the applicable Limits Of Insurance, we will pay each person who sustains **bodily injury** caused by an accident all **medical expenses** incurred and reported to us within three years from the date of the accident.





*General Liability*

## Coverage

**Medical Expense**
*(continued)*

The accident must take place during the policy period and the **bodily injury** must arise out of premises or operations for which you are afforded **bodily injury** liability coverage under this contract. The injured person must submit to examination, at our expense, by physicians of our choice as often as we reasonably require.

---

*Limits Of Insurance*

The Limits Of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

- **insureds;**

- claims made or **suits** brought; or

- persons or organizations making claims or bringing **suits**.

The Limits Of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

---

*General Aggregate Limit*

Subject to the Each Occurrence Limit and the Advertising Injury And Personal Injury Limit, the General Aggregate Limit is the most we will pay for the sum of:

- damages under **bodily injury** and **property damage** coverage, except damages because of **bodily injury** and property damage included in the **products-completed operations hazard;**

- damages under **advertising injury** and **personal injury** coverage; and

- **medical expenses** under Medical Expense coverage.

---

*Products-Completed Operations Aggregate Limit*

Subject to the Each Occurrence Limit, the Products-Completed Operations Aggregate Limit is the most we will pay for damages under **bodily injury** and **property damage** coverage included in the **products-completed operations hazard**.

---

*Advertising Injury And Personal Injury Limit*

The Advertising Injury And Personal Injury Limit is the most we will pay under **advertising injury** and **personal injury** coverage for the sum of all damages involving the same oral or written publication of material, or the same act, regardless of the frequency or repetition thereof, the number or kind of media used, and the number of claimants.

Any amount paid for damages arising out of an offense will reduce the amount of the applicable Aggregate Limit available for payment of damages arising out of any other offense.

If the applicable Aggregate Limit has been reduced by payment of damages to an amount that is less than the Advertising Injury And Personal Injury Limit stated in the Declarations, the remaining Aggregate Limit is the most that will be available for payment of damages arising out of any other offense.

---



## Limits Of Insurance
(continued)

*Each Occurrence Limit*

The Each Occurrence Limit is the most we will pay for the sum of:

- damages under **bodily injury** and **property damage** coverage; and

- **medical expenses** under Medical Expense coverage

because of all **bodily injury** and **property damage** arising out of any one **occurrence**.

Any amount paid for damages arising out of an **occurrence** will reduce the amount of the applicable Aggregate Limit available for payment of damages arising out of any other **occurrence**.

If the applicable Aggregate Limit has been reduced by payment of damages to an amount that is less than the Each Occurrence Limit stated in the Declarations, the remaining Aggregate Limit is the most that will be available for payment of damages arising out of any other **occurrence**.

*Medical Expense Limit*

Subject to the Each Occurrence Limit described above, the Medical Expense Limit is the most we will pay under Medical Expense coverage for all **medical expense** because of **bodily injury** sustained by one person.

*Investigation, Defense And Payment Of Damages*

We will have the right and duty to defend any **insured** against a **suit** seeking damages for **bodily injury**, **property damage**, **advertising injury**, or **personal injury**. However, we will have no duty to defend any **insured** against a **suit** seeking damages to which this insurance does not apply. We may at our discretion investigate any **occurrence** or offense and settle any claim or **suit** that may result.

The amount we will pay for damages is limited as described in Limits Of Insurance. Our right and duty to defend end when we have used up the applicable Limit Of Insurance in the payment of judgments or settlements under **bodily injury**, **property damage**, **advertising injury**, **personal injury** or **medical expense**.

We have no further obligation or liability to pay sums or perform acts or services unless explicitly provided for under Supplementary Payments shown below.

*Supplementary Payments*

We will pay, with respect to any claim we investigate or settle, or any **suit** against an **insured** we defend:

- all expenses we incur;

- up to $2000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the **bodily injury** liability coverage applies. We do not have to furnish these bonds;

- the premium amount of bonds to release attachments, but only for premium amounts within the amount of insurance available. We do not have to furnish these bonds;

- reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of the claim or **suit**, including actual loss of earnings up to $300 a day because of time off from work;

- costs taxed against the **insured** in the **suit**;

- prejudgment interest awarded against the **insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit Of Insurance, we will not pay any prejudgment interest based on that period of time after the offer; and





## General Liability

| | |
|---|---|
| **Supplementary Payments** (continued) | • all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit Of Insurance. |
| | These payments will not reduce the Limits Of Insurance. |

**Coverage Territory**

This insurance applies anywhere. However, the **insured**'s responsibility to pay damages must be determined in a **suit** on the merits, in the United States of America, its territories or possessions, Canada or Puerto Rico, or in a settlement we agree to.

**Bodily Injury/Property Damage Exclusions**

None of the following exclusions, except Contractual Liability and Expected or Intended Injury, apply to damage to premises rented to you.

*Aircraft, Auto, Rolling Stock Or Watercraft*

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use, operation, **loading or unloading**, or entrustment to others of any:

- aircraft;
- **auto**;
- rolling stock; or
- watercraft

which any **insured** owns, operates, rents or borrows.

This exclusion does not apply to:

A. watercraft on land at your premises;

B. watercraft that you do not own that is:
   1. less than 55 feet long; and
   2. not being used to carry persons or property for a charge;

C. parking an **auto** on, or on the ways next to, premises you own or rent, provided the **auto** is not owned by or rented or loaned to you or the **insured**;

D. liability assumed under any **insured contract** for the ownership, maintenance, or use of aircraft, or watercraft;

E. **bodily injury** or **property damage** arising out of the operation of any of the equipment listed in paragraph F.2. or F.3. of the definition of **mobile equipment**; or

F. aircraft you do not own, provided:
   1. the pilot in command holds a currently effective certificate, issued by the duly constituted authority of the United States of America or Canada, designating him or her a commercial or airline transport pilot;
   2. it is rented with a trained, paid crew; and
   3. it is not being used to carry persons or property for a charge.

*Contractual Liability*

This insurance does not apply to **bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.



## Bodily Injury/Property Damage Exclusions

**Contractual Liability (continued)**

This exclusion does not apply to liability for damages:

- that the insured would have in the absence of the contract or agreement; or

- assumed in an oral or written contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. When a claim for such **bodily injury** or **property damage** is made, we will defend that claim provided the **insured** has assumed the obligation to defend such claim in the **insured contract**. Such defense payments will not reduce the Limits of Insurance.

**Damage To Impaired Property**

This insurance does not apply to **property damage** to **impaired property** or property that has not been physically injured arising out of:

- a defect, deficiency, inadequacy, or dangerous condition in **your product** or **your work**; or

- a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

**Damage To Property Of Others (Care, Custody Or Control)**

This insurance does not apply to **property damage** to:

- personal property of others you rent;

- property of others you hold for sale or entrusted to you for storage or safekeeping;

- property of others on your premises for the purpose of having operations performed on such property by you or on your behalf;

- tools or equipment of others while being used by you in performing your operations; or

- property of others in your custody which you will be installing, erecting, or using in construction.

This exclusion does not apply to liability assumed under a sidetrack agreement.

**Damage To Your Product**

This insurance does not apply to **property damage** to **your product** arising out of it or any part of it.

**Damage To Your Work**

This insurance does not apply to **property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**Employer's Liability**

This insurance does not apply to **bodily injury** to:

A.   an **employee** of the **insured** arising out of and in the course of:

    1.   employment by the **insured**; or

    2.   performing duties related to the conduct of the **insured**'s business; or





*General Liability*

**Bodily Injury/Property Damage Exclusions**

*Employer's Liability (continued)*

B.    the spouse, child, parent, brother or sister of that **employee** as a consequence of A. above.

This exclusion applies:

- whether the **insured** may be liable as an employer or in any other capacity; and
- to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the **insured** under an **insured contract**.

*Expected Or Intended Injury*

This insurance does not apply to **bodily injury** or **property damage** which results from an act that:

- is intended by the insured; or
- can be expected from the standpoint of a reasonable person

to cause **bodily injury** or **property damage**, even if the injury or damage is of a different degree or type than actually intended or expected.

This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

*Liquor Liability*

This insurance does not apply to **bodily injury** or **property damage** for which any **insured** may be held liable by reason of:

- causing or contributing to the intoxication of any person;
- the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
- any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

*Product Recall*

This insurance does not apply to **bodily injury** or **property damage** claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

- **your product;**
- **your work;** or
- **impaired property**

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.




## Bodily Injury/Property Damage Exclusions
(continued)

**Property Formerly Owned**

This insurance does not apply to **property damage** to premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises.

This exclusion does not apply if the premises are **your work** and were never occupied, rented, or held for rental by you.

**Property Owned**

This insurance does not apply to **property damage** to property you own.

**Transportation Of Mobile Equipment**

This insurance does not apply to **bodily injury** or **property damage** arising out of the transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any **insured**.

**Workers' Compensation And Similar Laws**

This insurance does not apply to any obligation of the **insured** under a workers compensation, disability benefits or unemployment compensation law or any similar law.

## Advertising Injury/ Personal Injury Exclusions

**Advertising, Broadcasting, Publishing, Telecasting or Telemarketing Business**

This insurance does not apply to **advertising injury** or **personal injury** arising out of an offense committed by an **insured** whose business is advertising, broadcasting, publishing, telecasting or telemarketing.

This exclusion does not apply to offenses A, B, or C. under the definition of **personal injury**.

**Breach Of Contract**

This insurance does not apply to **advertising injury** arising out of breach of contract.

**Contractual Liability**

This insurance does not apply to **advertising injury** or **personal injury** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages:

- that the **insured** would have in the absence of the contract or agreement; or

- assumed in a written contract or agreement that is an **insured contract**, provided the **advertising injury** or **personal injury** results from an offense committed subsequent to the execution of the contract or agreement. When a claim for such **advertising injury** or **personal injury** is made, we will defend that claim provided the **insured** has assumed the obligation to defend such claim in the **insured contract**. Such defense payments will not reduce the Limits of Insurance.







*General Liability*

## Advertising Injury/ Personal Injury Exclusions
(continued)

**Failure To Conform To Advertising**
This insurance does not apply to **advertising injury** arising out of the failure of goods, products or services to conform with advertised quality or performance.

**Intentional Falsehoods**
This insurance does not apply to **advertising injury** or **personal injury** arising out of oral or written publication of material if done by or at the direction of the **insured** with knowledge of its falsity.

**Prior Acts**
This insurance does not apply to **advertising injury** or **personal injury** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**Willful Violations**
This insurance does not apply to **advertising injury** or **personal injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the **insured**.

**Wrong Description**
This insurance does not apply to **advertising injury** arising out of the wrong description of the price of goods, products or services.

## Medical Expense Exclusions

**Athletic Activities**
This insurance does not apply to **medical expense** for **bodily injury** to any person taking part in athletics.

**Injury To An Insured**
This insurance does not apply to **medical expense** for **bodily injury** to any **insured**.

**Products-Completed Operations**
This insurance does not apply to **medical expense** for **bodily injury** included within the **products-completed operations hazard**.

**Workers' Compensation And Similar Laws**
This insurance does not apply to **medical expense** for **bodily injury** to a person, whether or not an employee of any **insured**, if benefits for the **bodily injury** are payable or must be provided under a workers' compensation or disability benefits law or a similar law.




## Policy Exclusions

**Financial Instruments**

This insurance does not apply to loss of use of **financial instruments** that have not been physically injured.

**Insurance And Related Operations**

This insurance does not apply to **bodily injury, property damage, advertising injury,** or **personal injury** arising out of, or directly or indirectly related to:

A.    any obligation assumed by any **insured** or the failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise, with respect to any:

     1.    contract or treaty of insurance, self-insurance, reinsurance or suretyship;

     2.    annuity;

     3.    endowment; or

     4.    benefit plan,

     including any applications, endorsements, amendments, receipts, or binders;

B.    membership or participation in, contribution to, or management of any plan, pool, association, insolvency or guarantee fund, or any other similar fund, organization or association, whether voluntary or involuntary; or

C.    advising, reporting or making recommendations, or the failure to do any of the foregoing, in the **insured**'s capacity as an insurance company, insurance broker or agent, insurance consultant or insurance representative.

**Intellectual Property**

This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of, or directly or indirectly related to, the actual or alleged publication or utterances of oral or written statements, whether made in **advertising** or otherwise, which are claimed as an infringement, violation or defense of any of the following rights or laws:

- copyright, other than infringement of copyrighted advertising materials;

- patent;

- trade dress;

- trade secrets; or

- trademark or service mark or certification mark or collective mark or trade name, other than trademarked or service marked titles or slogans.

**Nuclear Energy**

A.    This insurance does not apply to **bodily injury, nuclear property damage, advertising injury** or **personal injury:**

     1.    with respect to which an **insured** under the policy is also an **insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

  

*General Liability*

## Policy Exclusions

**Nuclear Energy**
**(continued)**

2. resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Expense coverage, this insurance does not apply to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

C. This insurance does not apply to **bodily injury, nuclear property damage, advertising injury,** or **personal injury** resulting from the **hazardous properties** of **nuclear material,** if:

1. the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (b) has been discharged or dispersed therefrom;

2. the **nuclear material** is contained in **spent fuel** or **nuclear waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

3. the **bodily injury, nuclear property damage, advertising injury** or **personal injury** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion 3. applies only to **nuclear property damage** to such **nuclear facility** and any property therein.

**Pollution**

A. This insurance does not apply to **bodily injury, property damage, advertising injury,** or **personal injury** arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants:**

1. at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured;**

2. at or from any premises, site or location to which any **insured** has perfected their right to possession, or which was at any time acquired by foreclosure, repossession or deed in lieu of foreclosure by any **insured;**

3. at or from any premises in any trust, guardianship or estate for which any **insured** is currently, or did act in a fiduciary or representative capacity;

4. at or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

5. which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom you may be legally responsible; or

6. at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured**'s behalf are performing operations:

  a. if the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or



## Policy Exclusions

**Pollution
(continued)**

     b.    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants**.

Subparagraphs A.1. and A.6.a. do not apply to **bodily injury**, **property damage**, **advertising injury**, or **personal injury** arising out of heat, smoke or fumes from a **hostile fire**.

B.    This insurance does not apply to any loss, cost or expense arising out of any

    1.    request, demand or order that any **insured** or others test for, monitor, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

    2.    claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing or in any way responding to, or assessing the effects of **pollutants**.

This exclusion does not apply to damage to premises rented to you caused by fire, explosion, smoke or leakage from fire protective equipment.

## Liability Conditions

**Arbitration**

We are entitled to exercise all of the **insured's** rights in the choice of arbitrators and the conduct of any arbitration proceeding, except when the proceeding is between us and the **insured**.

**Bankruptcy**

Bankruptcy or insolvency of the **insured** or the **insured's** estate will not relieve us of any obligation to which this insurance applies.

**Duties In The Event Of Occurrence, Offense, Claim Or Suit**

A.    You must see to it that we are notified as soon as practicable of an **occurrence** or an offense which may result in a claim. To the extent possible, notice should include:

    1.    how, when and where the **occurrence** or offense took place;

    2.    the names and addresses of any injured persons and witnesses; and

    3.    the nature and location of any injury or damage arising out of the **occurrence** or offense.

B.    If a claim is made or **suit** is brought against any **insured**, you must:

    1.    immediately record the specifics of the claim or **suit** and the date received; and

    2.    notify us in writing as soon as practicable.

C.    You and any other involved **insured** must:

    1.    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

    2.    authorize us to obtain records and other information;

    3.    cooperate with us in the:

        a.    investigation or settlement of the claim; or

        b.    defense of the **suit**; and





**General Liability**

---

### Liability Conditions

**Duties In The Event Of Occurrence, Offense, Claim Or Suit (continued)**

4.  assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance may also apply.

D.  No **insureds** will, except at that **insured's** own cost, make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

E.  Notice given by or on behalf of:

1.  the **insured**;

2.  the injured person; or

3.  any other claimant

to any licensed agent of ours with particulars sufficient to identify the **insured** shall be deemed notice to us.

F.  Knowledge of an **occurrence** or offense by any agent or **employee** of the **insured** will not constitute knowledge by the **insured**, unless an officer or his designee receives such notice from its agent or **employee**.

G.  Failure of an agent or **employee** of the **insured**, other than an officer or his designee, to notify us of any **occurrence** or offense which he knows about will not affect the insurance afforded you by this contract.

H.  If the **insured** reports any **occurrence** or offense as a Workers Compensation claim which later develops into a liability claim, the failure to report such **occurrence** or offense to us will not violate this provision provided the **insured** gives us immediate notice as soon as they are made aware of the fact that the **occurrence** or offense is a claim under this contract.

---

**Legal Action Against Us**

No person or organization has a right under this insurance:

- to join us as a party or otherwise bring us into a **suit** asking for damages from an **insured**; or

- to sue us on this insurance unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an **agreed settlement** or on a final judgment against an **insured** obtained after:

- an actual trial in a civil proceeding;

- an arbitration proceeding; or

- an alternative dispute resolution proceeding,

but we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the applicable Limits of Insurance.

---

**Other Insurance**

If other valid and collectible insurance is available to the **insured** for a loss we cover under **bodily injury, property damage, advertising injury** or **personal injury** coverage of this insurance, our obligations are limited as follows:

*Primary Insurance*

This insurance is primary except when the Excess Insurance provision described below applies.

---

## Liability Conditions

**Other Insurance
(continued)**

If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in the Method of Sharing provision described below.

### Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

A.  that is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for **your work**;

B.  that is Fire insurance for premises rented to you;

C.  if the loss arises out of the maintenance or use of aircraft, **autos** or watercraft to the extent not subject to the Aircraft, Auto Or Watercraft exclusion; or

D.  that is valid and collectible **bodily injury, property damage, advertising injury**, or **personal injury** insurance:

   1.  provided you by anyone working under contract for you; or

   2.  provided by another party's policy to which you have been added as an additional insured.

When this insurance is excess, we will have no duty under **bodily injury, property damage, advertising injury** or **personal injury** coverages to defend any **insured** against a **suit** that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the **insured's** rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

*  the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

*  the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not purchased specifically to apply in excess of the Limits Of Insurance shown in the Declarations of this insurance.

### Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this method each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

 

### *General Liability*

---

## *Liability Conditions*
(continued)

*Premium Audit*

We will compute all premiums for this insurance in accordance with our rules and rates.

In accordance with the Estimated Premiums section of the Premium Summary, premiums identified by an asterisk are estimated premiums and are subject to audit. In addition to or in lieu of such designation in the Premium Summary, premiums may be designated as estimated premiums in the Liability Insurance Section of this policy. In that event, these premiums will also be subject to audit and the second paragraph of the Estimated Premiums section of the Premium Summary will apply.

---

*Separation Of Insureds*

Except with respect to the Limits Of Insurance and any rights or duties specifically assigned in this insurance to the first named **insured**, this insurance applies:

*   as if each named **insured** were the only named **insured**; and

*   separately to each **insured** against whom claim is made or **suit** is brought.

---

*Transfer Of Rights Of Recovery*

If the **insured** has rights to recover all or part of any payment we have made under this insurance, those rights are transferred to us. The **insured** must do nothing after loss to impair them. At our request, the **insured** will bring **suit** or transfer those rights to us and help us enforce them.

This condition does not apply to **medical expense**.

---

*THIS PAGE INTENTIONALLY LEFT BLANK*

 

### General Liability

| **Definitions** | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT: |

**Advertising**

Advertising means any advertisement, publicity article, broadcast or telecast.

**Advertising Injury**

Advertising injury means injury, other than **bodily injury** or **personal injury**, arising solely out of one or more of the following offenses committed in the course of **advertising** your goods, products or services:

- oral or written publication of material that slanders or libels a person or organization;

- oral or written publication of advertising material that violates a person's right of privacy; or

- infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.

**Agreed Settlement**

Agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**Auto**

Auto means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment**.

**Bodily Injury**

Bodily injury means physical:

- injury,

- sickness, or

- disease

sustained by a person and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

**Customer**

Customer means a person, corporation, partnership or other entity which:

- is applying for, or requesting, your products or services;

- has applied for, or has requested, your products or services;

- is presently using your products or services; or

- has used your products or services,

and who makes a claim or brings a **suit** which arises out of, or is directly or indirectly related to, any of the above.

**Employee**

Employee includes a **leased worker** but does not include a **temporary worker**.




| **Definitions**<br>(continued) | **WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT:** |
|---|---|
| *Executive Officer* | **Executive officer** means a person holding any of the officer positions created by your charter, constitution or by-laws. |
| *Financial Instruments* | **Financial instruments** means the following tangible property: |

- currency, coins, bank notes, and bullion;
- travelers checks, registered checks, food stamps, and money orders held for sale to the public;
- all negotiable and non-negotiable instruments or contracts that represent either money or other property held by you in any capacity;
- revenue and other stamps in current use, tickets and tokens;
- property of others that you hold as a pledge or as collateral for a loan;
- commodities, jewelry, precious and semi-precious stones and precious metals in any form;
- insurance policies; and
- certificates of origin or title, deeds, mortgages and abstracts of title.

| *Foreclosed Property* | **Foreclosed property** means property to which you have perfected your right to possession, or to which you have been given the deed or title, because the property was security for a loan you owned or serviced and there was a default on that loan. |
|---|---|
| *Hazardous Properties* | **Hazardous properties** includes radioactive, toxic or explosive properties. |
| *Hostile Fire* | **Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be. |
| *Impaired Property* | **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because: |

- it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate, or dangerous; or
- you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

- the repair, replacement, adjustment, or removal of **your product** or **your work**; or
- your fulfilling the terms of the contract or agreement.

| *Insured* | **Insured** means any person or organization qualifying as an insured under the Who Is Insured provision and against whom claim is made or **suit** is brought. |
|---|---|





*General Liability*

---

### *Definitions*
(continued)

WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT:

*Insured Contract*

**Insured contract** means:

- a lease of premises;
- a sidetrack agreement;
- an easement or license agreement;
- an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
- an elevator maintenance agreement;
- that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury, property damage, advertising injury,** or **personal injury** to a third person or organization.

An **insured contract** does not include that part of any contract or agreement that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

- preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or
- giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

*Leased Worker*

**Leased worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. **Leased worker** does not include a **temporary worker.**

*Loading Or Unloading*

**Loading or unloading** means the handling of property;

- after it is moved from the place where it is accepted for movement into or onto an aircraft, **auto** or watercraft;
- while it is in or on an aircraft, **auto** or watercraft; or
- while it is being moved from an aircraft, **auto** or watercraft to the place where it is finally delivered.

**Loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, **auto** or watercraft.

*Medical Expense*

**Medical expense** means reasonable expenses for:

- first aid administered at the time of an accident;
- necessary medical, surgical, x-ray, and dental services, including prosthetic devices; and
- necessary ambulance, hospital, professional nursing and funeral services.

---



---

**Definitions**
(continued)

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT:**

*Mobile Equipment*

**Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

A.    bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

B.    vehicles maintained for use solely on or next to premises you own or rent;

C.    vehicles that travel on crawler treads;

D.    vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    1.    power cranes, shovels, loaders, diggers or drills; or

    2.    road construction or resurfacing equipment such as graders, scrapers or rollers;

E.    vehicles not described in A., B., C. or D. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    1.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    2.    cherry pickers and similar devices used to raise or lower workers; and

F.    vehicles not described in A., B., C. or D. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos:**

    1.    equipment designed primarily for:

        a.    snow removal;

        b.    road maintenance, but not construction or resurfacing;

        c.    street cleaning;

    2.    cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    3.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

---

*Nuclear Facility*

**Nuclear facility** means:

A.    any **nuclear reactor;**

B.    any equipment or device designed or used for:

    1.    separating the isotopes of uranium or plutonium;

    2.    processing or utilizing **spent fuel;** or

    3.    handling, processing or packaging **nuclear waste;**

C.    any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

---





*General Liability*

| Definitions | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT: |
|---|---|

**Nuclear Facility**
(continued)

D.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **nuclear waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**Nuclear Material**

Nuclear material means source material, special nuclear material or by-product material.

**Nuclear Property Damage**

Nuclear property damage means **property damage** including all forms of radioactive contamination of property.

**Nuclear Reactor**

Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**Nuclear Waste**

Nuclear waste means any waste material:

A.  containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and

B.  resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph A. or B.

**Occurrence**

Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Personal Injury**

Personal injury means injury, other than **bodily injury**, arising out of one or more of the acts listed below, other than your **advertising** activities:

A.  false arrest, detention or imprisonment;

B.  malicious prosecution (unless insurance thereof is prohibited by law), except when it arises out of, or is directly or indirectly related to:

1.  the restructure, termination, transfer or collection of any loan, lease or extension of credit; or

2.  the repossession or foreclosure of property which is security for any loan, lease or extension of credit;

C.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, unless the person or persons are mortgagors of yours or of anyone for whom you are servicing mortgages, by or on behalf of you, its owner, landlord or lessor;

D.  oral or written publication of material that slanders or libels a person or organization, except when alleged, charged or suffered by any **customer**;




| **Definitions** | **WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT:** |

**Personal Injury
(continued)**

E.  oral or written publication of material that violates a person's right of privacy, except when alleged, charged or suffered by any **customer**; or

F.  discrimination (unless insurance thereof is prohibited by law) based on race, color, religion, sex, age or national origin, except when alleged, charged or suffered by any:

1.  applicant for employment;

2.  present or former **employee**;

3.  prospective **employee**; or

4.  **customer**.

**Pollutants**

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be disposed of, recycled, reconditioned or reclaimed.

**Products-Completed
Operations Hazard**

A.  **Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:

1.  products that are still in your physical possession; or

2.  work that has not yet been completed or abandoned.

B.  **Your work** will be deemed completed at the earliest of the following times:

1.  when all of the work called for in your contract has been completed;

2.  when all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

3.  when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

C.  This hazard does not include **bodily injury** or **property damage** arising out of:

1.  the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the **loading or unloading** of it;

2.  the existence of tools, uninstalled equipment or abandoned or unused materials; or

3.  products or operations for which the classification in our manual rules includes products or completed operations.

**Property Damage**

**Property damage** means:

•   physical injury to tangible property including the resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or



### *General Liability*

| **Definitions** | **WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT:** |
|---|---|

*Property Damage*
*(continued)*

- loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

*Source Material, Special Nuclear Material, And By-Product Material*

**Source material, special nuclear material,** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

*Spent Fuel*

**Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor.**

*Suit*

**Suit** means a civil proceeding in which damages because of **bodily injury, property damage, advertising injury** or **personal injury** to which this insurance applies are alleged. **Suit** also includes:

- an arbitration proceeding in which such damages are claimed and to which the **insured** must submit or does submit with our consent; or
- any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with our consent.

*Temporary Worker*

**Temporary worker** means a person who is furnished to you for a finite time period to support or supplement your work force in special work situations such as **employee** absences, temporary skill shortages and seasonal workloads.

*Your Product*

**Your product** means:

A.  any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    1.  you;

    2.  others trading under your name; or

    3.  a person or organization whose business or assets you have acquired; and

B.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

- warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product;** and
- the providing of or failure to provide warnings or instructions.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

*Your Work*

**Your work** means:

- work or operations performed by you or on your behalf; and
- materials, parts or equipment furnished in connection with such work or operations.



| Definitions | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT: |

**Your Work**
**(continued)**

**Your work** includes:

- warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

- the providing of or failure to provide warnings or instructions.



*Liability Insurance Section*

*Endorsements*

 

CHUBB

*Liability Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002   TO   FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Policy Exclusions, the following exclusion is added:

**Policy Exclusions**

Asbestos

A.   This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **asbestos**.

B.   This insurance does not apply to any loss, cost or expense arising out of any:

1.   request, demand or order that any **insured** or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **asbestos**; or

2.   claim or **suit** by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning-up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **asbestos**.



Under Definitions, the following definition is added:

**Definitions**

*Asbestos*

Asbestos means asbestos in any form, including its use or presence in any alloy, compound, by-product, or other material or waste. Waste includes material to be disposed of, recycled, reconditioned or reclaimed.

All other terms and conditions remain unchanged.

Authorized Representative

Liability Insurance
Form 80-02-2393 (Ed. 2-98)

Exclusion - Asbestos
Endorsement

last page
Page 2

 

**CHUBB**

*Liability Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Policy Exclusions, the following exclusion is added:

## Policy Exclusions

*Millennium Date Change*    This insurance does not apply to **bodily injury** , **property damage** , **advertising injury** , or **personal injury** arising out of:

A.    the actual or potential inability of any:

- hardware, software, operating system, network, microprocessor;

- other computer, data processing or communications system equipment or component; or

- other system, equipment or component that communicates with any of the foregoing,

to accept, retrieve, recognize, understand, interpret, identify, distinguish, process, communicate or otherwise use:

- any date subsequent to December 31, 1999; or

- information or code which contains dates subsequent to December 31, 1999; or

B.    the rendering of, or failure to render, any service or advice in connection with paragraph A. above.

## *Liability Endorsement*
(continued)

All other terms and conditions remain unchanged.

Authorized Representative

Liability Insurance

Form 80-02-2426 (Ed. 4-98)

Millennium Date Change Total Exclusion

Endorsement

last page

Page 2



### Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Policy Exclusions, the following exclusion is added:

## Policy Exclusions

*Employment-Related Practices*

This insurance does not apply to any damages sustained:

A.  by any person at any time, whether or not sustained in the course of employment by any **insured**, which would not have been incurred in whole or in part but for any one or more employment-related acts, omissions, policies, practices, representations or relationships in connection with any **insured**, occurring in whole or in part at any time, including any:

1.  arrest, detention or imprisonment;

2.  breach of any express or implied covenant;

3.  coercion, criticism, humiliation, prosecution or retaliation;

4.  defamation or disparagement;

5.  demotion, discipline, evaluation or reassignment;

6.  discrimination, harassment or segregation;

7.  a.  eviction; or

    b.  invasion or other violation of any right of occupancy;

8.  failure or refusal to advance, compensate, employ or promote;



## Policy Exclusions

*Employment-Related Practices (continued)*

9.  invasion or other violation of any right of privacy;

10. termination of employment; or

11. other employment-related act, omission, policy, practice, representation or relationship in connection with any **insured** at any time;

B.  as a consequence of any of the foregoing.

This exclusion applies:

• whether the **insured** may be liable as an employer or in any other capacity; and

• to any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

All other terms and conditions remain unchanged.

Authorized Representative _____*Robert Hamburger*_____

 

**CHUBB**

*Liability Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Bodily Injury/Property Damage Exclusions, the following exclusion is added:

*Bodily Injury/Property Damage Exclusions*

*Construction Loan*

This insurance does not apply to:

A.   **property damage** to any building:

    1.   which is security for a loan held by the **insured** and which the **insured** or others made in connection with its construction; or

    2.   for which the **insured** has otherwise financed its construction; or

B.   **bodily injury** or **property damage** arising out of the **insured's** liability as a construction lender.

All other terms and conditions remain unchanged.

*Authorized Representative* _____

| | | |
|---|---|---|
| *Liability Insurance* | Construction Loan Exclusion | *last page* |
| Form 17-02-3140 (Ed. 2-98) | Endorsement | *Page 1* |

  

*Liability Insurance*

## Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY
EMPLOYEE BENEFITS ERRORS OR OMISSIONS

**Investigation, Defense And Payment Of Damages**

Under Investigation, Defense And Payment of Damages, the following provisions are added:

With respect to any claim for damages arising out of your California operations:

A.  If a conflict of interest arises which creates a duty on our part to provide the **insured** independent counsel, we will provide such counsel unless, at the time we inform the **insured** of the possible conflict, the **insured** expressly waives, in writing, the right to such counsel.

B.  When the **insured** has selected independent counsel:

  1.  we require that the selected counsel have at least five years of tort litigation practice which includes substantial defense experience in the subject at issue in the litigation, and they must carry errors and omissions coverage.

  2.  it shall be the duty of such counsel and the **insured** to disclose to us all information concerning the action, except privileged materials relevant to coverage disputes, and to inform and consult with us in all matters relating to the action. Any claim of privilege asserted is subject to in camera review in the appropriate law and motion department of the Superior Court. Any information disclosed by the **insured** or by such counsel is not a waiver of the privilege as to any other party; and

  3.  both the counsel provided by us and the counsel the **insured** has selected shall be allowed to participate in all aspects of the litigation. Counsel shall cooperate fully in the exchange of information consistent with each counsel's ethical and legal obligation to the **insured**. Nothing in this section shall relieve the **insured** of their duty to cooperate with us under the terms of this insurance policy.

 

### Liability Endorsement
(continued)

C.  Our obligation to pay fees to counsel selected by the **insured** is limited to the rates which we actually pay to counsel we retain in the ordinary course of business in the defense of similar actions in the community where the claim is being defended. Any dispute concerning counsel fees shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute.

D.  No conflict of interest shall be deemed to exist as to the allegations of punitive damages or be deemed to exist solely because an **insured** is sued for an amount in excess of the insurance policy limits.

All other terms and conditions remain unchanged.

Authorized Representative _____ *Robert Hamburger* _____



## Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Policy Exclusions, the following exclusion is added:

**Policy Exclusions**

*Securities And Trade Practices*

This insurance does not apply to **bodily injury, property damage, advertising injury,** or **personal injury** asserted in any claim, action, investigation or proceeding, including any derivative action commenced by shareholders of an insured, based on, attributable to, related to or in any manner arising or resulting directly or indirectly out of:

- the filing, issuance, transfer, purchase, sale or distribution of securities or offers to purchase or sell securities including, but not limited to, liability under the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Public Utility Holding Company Act of 1935, the Investment Company Act of 1940, the Investment Advisers Act of 1940, and the so-called "blue sky" laws of the various states or other jurisdictions;

- the alleged violation of antitrust, anticompetition, or any other laws prohibiting monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts and practices in trade and commerce including, but not limited to, the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Federal Trade Commission Act and the Hart-Scott Rodino Antitrust Improvements Act, or any state or Federal Business and Professions code or Corporations code;

- fraud or breach of fiduciary duty;

- criminal prosecution, fines, penalties or sentence conditions;

Liability Insurance
Form 17-02-3141 (Ed. 2-98)

Securities And Trade Practices Exclusion
Endorsement

continued
Page 1



## Policy Exclusions

*Securities And Trade
Practices
(continued)*

- disclosure or other regulation of sales of, and offers to sell, real property; or

- any dishonesty of an employee, officer or director.

No inference shall be made from this express exclusion that there is liability or coverage under this policy or any other policies in the absence of this exclusion.

All other terms and conditions remain unchanged.

Authorized Representative




### Liability Insurance

### Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION<br>(SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Policy Exclusions, the following exclusion is added:

### Policy Exclusions

**Lead**

A.  This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **lead**:

1.  at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**:

2.  at or from any premises, site or location to which any **insured** has perfected their right to possession or which was at any time acquired by foreclosure, repossession or deed in lieu of foreclosure by any **insured;**

3.  at or from any premises in any trust, guardianship or estate for which any **insured** is currently, or did act in a fiduciary or representative capacity;

4.  at or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

5.  which is or was at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom any **insured** may be legally responsible; or

6.  at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured**'s behalf are performing operations:



**Liability Insurance**

## Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION<br>(SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

**Policy Exclusions**

Under Policy Exclusions, the following exclusion is added:

*Real Estate Development*

This insurance does not apply to **bodily injury**, **property damage**, **advertising injury**, or **personal injury** arising out of or directly or indirectly related to:

- the development of real property; or
- the construction of real property,

by the **insured** for itself, or by the **insured** for others or for sale to others.

All other terms and conditions remain unchanged.

*Authorized Representative*







## Liability Insurance

### Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Policy Exclusions, the following exclusion is added:

**Policy Exclusions**

*Professional Liability*

This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the rendering or failing to render professional service or advice, whether or not that service or advice is ordinary to the **insured's** profession, regardless of whether a claim or **suit** is brought by a client or any other person or organization.

All other terms and conditions remain unchanged.

*Robert Hamburger*

Authorized Representative





**CHUBB**

*Liability Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION<br>(SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Coverage, Bodily Injury, Property Damage, Advertising Injury, And Personal Injury is deleted and replaced with the following:

**Coverage**

*Bodily Injury, Property Damage, Advertising Injury, And Personal Injury*

Subject to the applicable Limits of Insurance, we will pay damages the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** for:

- **bodily injury** or **property damage** to which this insurance applies caused by an **occurrence**; or

- **advertising injury** or **personal injury** to which this insurance applies caused by an offense.

This includes **bodily injury, property damage, advertising injury** or **personal injury** arising out of automated teller machines.

This insurance applies to:

- **bodily injury** or **property damage** which occurs during the policy period; and

- **advertising injury** or **personal injury** caused by an offense committed during the policy period.

Damages for **bodily injury** include damages claimed by any person or organization for care or loss of services resulting at any time from the **bodily injury**.




Under Policy Exclusions, the following Exclusions are added:

## Policy Exclusions

**Foreclosed Property**

This insurance does not apply to **bodily injury, property damage, advertising injury**, or **personal injury** arising out of, or directly or indirectly related to, **foreclosed property**.

**Trust Property**

This insurance does not apply to **bodily injury, property damage, advertising injury**, or **personal injury** arising out of, or directly or indirectly related to, property in any trust, guardianship or estate for which you are acting in a fiduciary or representative capacity.

**Leased Property**

This insurance does not apply to **bodily injury, property damage, advertising injury**, or **personal injury** arising out of, or directly or indirectly related to, property which you own and lease to others.

This exclusion does not apply to property that is a building you own and lease to others.

Under Definitions, the definition of Foreclosed Property is deleted and replaced with the following:

## Definitions

**Foreclosed Property**

**Foreclosed property** means property:
- to which you have perfected your right to possession; or
- property you originally acquired through foreclosure, repossession or deed in lieu of foreclosure,

because the property was security for a loan you owned or serviced and there was a default on that loan.

All other terms and conditions remain unchanged.

*Robert Hamburger*

Authorized Representative





**Liability Insurance**

## Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION<br>(SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

**SCHEDULE OF
LIABILITY ONLY
LOCAITONS**

PREMISES NO. 5  1633 OLD BAYSHORE HIGHWAY, #310
BURLINGAME, CA 94010

PREMISES NO. 11  4000 112TH AVENUE NE, #335 & #330
BELLEVUE, WA 98004

PREMISES NO. 64  6650 LUSK BLVD/. #B206
SAN DIEGO, CA 92121

PREMISES NO. 72  800 UNION STATION, #300
ST. LOUIS, MO 63108

PREMISES NO. 77  1521 N. COOPER STREET, #380
ARLINGTON, TX 76011

PREMISES NO. 78  11550 N. MERIDIAN STREET, #308
CARMEL, IN 46032

PREMISES NO. 88  5665 SW MEADOWS ROAD, SUITE 140
LAKE OSWEGO, OR 97034

PREMISES NO. 89  7674 N. LAKE MEAD BLVD., #109
LAS VEGAS, NV 88901

PREMISES NO. 91  5855 TOPANGA CANYON BLVD., #340



WOODLAND HILLS, CA 91302

PREMISES NO. 93  1601 FORUM PLACE, #1000
WEST PALM BEACH, FL 33401

PREMISES NO. 97  18400 VON KARMAN
HERNDON, VA 20170

All other terms and conditions remain unchanged.

_Authorized Representative_ _____ _Robert Hamburger_ _____



# *Common Policy Conditions Section*





**Policy Conditions**

*Schedule of Forms*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 80-02-9090 | 4-94 | COMMON POLICY CONDITIONS | 02/03/02 | 04/12/02 |
| 80-02-9099 | 4-94 | COMMON POLICY CONDITIONS SEPARATOR PAGE | 02/03/02 | 04/12/02 |
| 80-02-9310 | 4-94 | NAMED INSURED ENDORSEMENT | 02/03/02 | 04/12/02 |
| 80-02-9717 | 4-94 | CALIFORNIA MANDATORY ENDORSEMENT | 02/03/02 | 04/12/02 |

*last page*





## Common Policy Conditions

### Contract

| | |
|---|---|
| **Conditions** | The following Conditions are included under each part of the policy, unless stated otherwise. |
| **Audit Of Books And Records** | We may audit your books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards. |
| **Cancellation** | The first named insured may cancel this policy or any of its individual coverages at any time by sending us a written request or by returning the policy and stating when thereafter cancellation is to take effect. |
| | We may cancel this policy or any of its individual coverages at any time by sending to the first named insured a notice 60 days (20 days in the event of non-payment of premium) in advance of the cancellation date. Our notice of cancellation will be mailed to the first named insured's last known address, and will indicate the date on which coverage is terminated. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice. |
| | The earned premium will be computed on a pro rata basis. Any unearned premium will be returned as soon as practicable. |
| **Changes** | This policy can only be changed by a written endorsement that becomes part of this policy. The endorsement must be signed by one of our authorized representatives. |
| **Compliance By Insureds** | We have no duty to provide coverage under this policy unless you and any other involved insured have fully complied with all of the terms and conditions of the policy. |
| **Conformance** | Any terms of this insurance which are in conflict with the applicable statutes of the State in which this policy is issued are amended to conform to such statutes. |
| **First Named Insured** | The person or organization first named in the Declarations is primarily responsible for payment of all premiums. The first named insured will act on behalf of all other named insureds for the giving and receiving of notice of cancellation or nonrenewal and the receiving of any return premiums that become payable under this policy. |
| **Inspections And Surveys** | We may: |

- make inspections and surveys at any time;
- give you reports on the conditions we find; and
- recommend changes.

 

## Conditions

**Inspections And Surveys (continued)**

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

- are safe or healthful; or

- comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations for us.

**Titles Of Paragraphs**

The titles of the various paragraphs of this policy and endorsements, if any, attached to this policy are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

**Transfer Of Rights And Duties**

Your rights and duties under this insurance may not be transferred without our written consent. However, if you die, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative, or to anyone having temporary custody of your property until your legal representative has been appointed.

**When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the first named insured stated in the Declarations written notice of the nonrenewal not less than 60 days before the expiration date. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice.

*Common Policy Conditions Section*

*Endorsements*



## Policy Conditions

### Endorsement

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

This Endorsement applies to the following forms:

COMMON POLICY CONDITIONS

The following changes are made as respects exposures in the state of California.

Under Conditions, the provisions titled Cancellation and When We Do Not Renew are deleted and replaced by the following:

### Conditions

**Cancellation**

*Residential Property*

A.   This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under this policy:

1.   If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in 2. and 3. below.

2.   We may not cancel such coverage solely because the first named insured has accepted our offer of earthquake coverage.

3.   We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction (3.) applies only if the coverage provided under this policy excludes loss or damage caused by or resulting from corrosive soil conditions.

*All Policies In Effect For More Than 60 Days*

B.   1.   If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

 

## Conditions

**Cancellation
(continued)**

    a.   Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

    b.   Discovery of fraud or material misrepresentation by:

       (i)   any insured or his or her representative in obtaining this insurance; or

       (ii)   you or your representative in pursuing a claim under this policy.

    c.   A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

    d.   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

    e.   Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

    f.   A determination by the Commissioner of Insurance that the:

       (i)   loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

       (ii)   continuation of the policy coverage would place us in violation of California law or the laws of the state where we are domiciled; or threaten our solvency.

    g.   A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

2.   We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first named insured and to the producer of record, at least:

    a.   10 days before the effective date of cancellation if we cancel for a reason listed in B.1.a. or b. above; or

    b.   30 days before the effective date of cancellation if we cancel for any other reason listed in paragraph B.1.

**Nonrenewal**

A.   Subject to the provisions of paragraphs B. and C. below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first named insured and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

    We will mail or deliver our notice to the first named insured and to the producer of record, at the mailing address shown in the policy.

B.   This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under this policy:


CHUBB



## Policy Conditions

### Endorsement

| | |
|---|---|
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |

## Conditions

*Nonrenewal*
*(continued)*

1. We may elect not to renew such coverage for any reason, except as provided in 2. and 3. below.

2. We will not refuse to renew such coverage solely because the first named insured has accepted our offer of earthquake coverage.

3. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction (3.) applies only if the coverage provided under this policy excludes loss or damage caused by or resulting from corrosive soil conditions.

C. We are not required to send notice of nonrenewal in the following situations:

1. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

2. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with paragraph A.

3. If you have obtained replacement coverage, or if the first named insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

4. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

5. If the first named insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

6. If we have made a written offer to the first named insured, in accordance with the timeframes shown in paragraph A., to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

All other terms and conditions remain unchanged.

*Robert Hamburger*

Authorized Representative

Policy Conditions
Form 80-02-9717 (Ed. 4-94)

California Mandatory
Endorsement

last page
Page





**CHUBB**

*Policy Conditions*

---

*Endorsement*

| | |
|---|---|
| *Policy Period* | FEBRUARY 3, 2002  TO  FEBRUARY 3, 2003 |
| *Effective Date* | FEBRUARY 3, 2002 |
| *Policy Number* | 3539-77-36 LAO |
| *Insured* | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| *Name of Company* | GREAT NORTHERN INSURANCE COMPANY |
| *Date Issued* | APRIL 12, 2002 |

---

This Endorsement applies to the following forms:

COMMON POLICY CONDITIONS

---

*NAMED INSURED*

NEW CENTURY FINANCIAL CORPORATION
NEW CENTURY MORTGAGE CORPORATION
ANYLOAN FINANCIAL CORPORATION
NC CAPITAL CORPORATION
NC RESIDUAL CORPORATION
WORTH FUNDING INCORPORATED
THE ANYLOAN COMPANY
NC INSURANCE SERVICES INC.
NC RESIDUAL II CORPORATION
NEW CENTURY MORTGAGE SECURITIES INC.
NEW CENTURY R.E.O. CORPORATION

All other terms and conditions remain unchanged.

*Authorized Representative*        *Robert Hamburger*

---

# Exhibit E





# THE CHUBB COMMERCIAL UMBRELLA

## Schedule of Forms

| | |
|---|---|
| Policy Period | FEBRUARY 03, 2002    to FEBRUARY 03, 2003 |
| Effective Date | February 3, 2002 |
| Policy Number | 7977-03-85 |
| Insured | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |
| Name of Company | FEDERAL INSURANCE COMPANY |
| Date Issued | April 5, 2002 |

Form number

As of the effective date printed above, this is the Schedule of Forms applicable to this policy:

| | Form number | |
|---|---|---|
| '92 UMBRELLA DECLARATIONS - FEDERAL INS. CO. | 07-02-0817 | (09/92) |
| THE CHUBB COMMERCIAL UMBRELLA | 07-02-0815 | (09/92) |
| MILLENNIUM TOTAL EXCL COVERAGE A & B | 07-02-1364 | (04/98) |
| EMPLOYMENT-RELATED PRACTICES EXCL-COV A&B | 07-02-1536 | (01/01) |
| SPECIFIED PERSONAL INJURY/DISCRIM. DEF. COV B | 07-02-1647 | (01/01) |
| PROFESSIONAL SERVICES EXCL A&B | 07-02-0864 | (12/97) |
| REAL ESTATE DEVELOPMENT EXCL. COV. A & B | 07-02-1708 | (06/01) |
| MANUSCRIPT ENDORSEMENT | 99-02-02 | (09/92) |
| EMPLOYERS' LIABILITY EXCL - A | 07-02-0852 | (09/92) |
| CARE, CUSTODY OR CONTROL EXCL. - A AND B | 07-02-0837 | (09/92) |
| DATA PROCESSING E&O EXCLUSIONSCOV. A&B | 07-02-0843 | (06/94) |
| DEFENSE PROVISIONS ENDORSEMENT | 07-02-0845 | (09/92) |
| EXTENDED REPORTING PERIOD ENDORSEMENT | 07-02-0859 | (09/92) |
| FINANCIAL INSTITUTION-ACTIVITIES EXCL.-COV. B | 07-02-0941 | (09/92) |
| FORECLOSURE COVERAGE A AND COVERAGE B | 07-02-0936 | (09/92) |
| INTELLECTUAL PROPERTY EXCL. COV. A & B | 07-02-1146 | (06/94) |
| LEAD EXCLUSION - COVERAGE B | 07-02-1154 | (11/94) |
| LEASING EXCLUSION - COVERAGE A AND COVERAGE B | 07-02-0934 | (09/92) |
| MONEY AND SECURITIES EXCL. COV. A&B | 07-02-0878 | (09/92) |
| POLLUTION EXCLUSION COV. A | 07-02-0885 | (09/92) |
| SECURITIES & TRADE PRACTICES EXCL.-COV. A & B | 07-02-0942 | (09/92) |
| TRUST EXCLUSION - COVERAGE A AND COVERAGE B | 07-02-0935 | (09/92) |
| SCHEDULE OF UNDERLYING INSURANCE | 07-02-0922 | (09/92) |



## THE CHUBB COMMERCIAL UMBRELLA

### Schedule of Underlying Insurance

| | |
|---|---|
| **Effective date** | FEBRUARY 3, 2002 |
| **Policy Number** | 7977-03-85 |
| **Insured** | NEW CENTURY FINANCIAL CORPORATION (SEE NAMED INSURED ENDORSEMENT) |

### Commercial General Liability

| | | | |
|---|---|---|---|
| Name | GREAT NORTHERN INS CO | $ 1,000,000. | each Occurrence |
| | | $ 2,000,000. | General Aggregate (other than Products Completed Operations) |
| Policy No. | 35397736 | | |
| Term | 02/03/2002 | *SEE BELOW | Products Completed Operations Aggregate |
| to | 02/03/2003 | | |
| Occurrence | | $ 1,000,000. | Personal and Advertising Injury |

Includes all Premises and Operations of the Insured
*PRODUCTS/COMPLETED OPERATIONS AGGREGATE
IS INCLUDED IN THE GENERAL AGGREGATE LIMIT

### Automobile Liability

| | | | |
|---|---|---|---|
| Name | FEDERAL INSURANCE COMPANY | Bodily Injury Liability | each Person each Occurrence |
| Policy No. | 73253541 | Property Damage Liability | each Occurrence |
| Term | 02/03/2002 | or | |
| to | 02/03/2003 | $ 1,000,000. | Combined Single Limit |

Includes all owned, non-owned and hired cars

### Employee Benefits Liability

| | | | |
|---|---|---|---|
| Name | GREAT NORTHERN INS CO | $ 1,000,000. | Each Claim |
| Policy No. | 35397736 | $ 1,000,000. | Aggregate |
| Term | 02/03/2002 | | |
| to | 02/03/2003 | | |

Claims Made
Retroactive Date    02/03/2002

**Authorization** —    All other terms and conditions remain unchanged.



Authorized Representative
Date    April 5, 2002

Form 07-02-0922 (Ed. 9/92)    Schedule of Underlying Insurance    1    Last Page





**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

### Introduction

This liability insurance policy features two insuring agreements:

A.    Excess Follow Form Liability coverage; and

B.    Umbrella Liability coverage.

Excess Follow Form Liability adds excess limits over scheduled underlying coverages.

Umbrella Liability adds a broadening measure of coverage against many of the gaps in and between the underlying coverages.

Together, these separate coverages share the Limits of Insurance.

  

**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

### Contract

Please read your policy carefully. It explains your rights and duties and what is and what is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured. The words "we", "us", and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such in the Definitions of this policy.

Other words and phrases that are printed in bold-face type are defined in the policy. These definitions are found in the Definitions section or in the specific policy provision where they appear.

---

## Insuring Agreements

**Coverage A - Excess Follow Form Liability Insurance**

Under Coverage A, we will pay on behalf of the **insured**, that part of loss covered by this insurance in excess of the total applicable limits of **underlying insurance**, provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of **underlying insurance** are with respect to Coverage A made a part of this policy, except with respect to:

A.   any contrary provision contained in this policy; or

B.   any provision in this policy for which a similar provision is not contained in **underlying insurance**.

With respect to the exceptions stated above, the provisions of this policy will apply.

The amount we will pay is limited as described in Limits of Insurance.

Notwithstanding anything to the contrary contained above, if **underlying insurance** does not cover loss, for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such loss.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

If we are prevented by law from paying on behalf of the **insured** for coverage provided under this insurance, then we will indemnify the **insured**.

---



## Insuring Agreements
(continued)

### Coverage B - Umbrella Liability Insurance

Under Coverage B, we will pay on behalf of the insured, damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury, property damage, personal injury, or advertising injury covered by this insurance which takes place during the Policy Period of this policy and is caused by an occurrence. We will pay such damages in excess of the Retained Limit Aggregate specified in Item 4 d. of the Declarations or the amount payable by other insurance, whichever is greater.

Damages because of bodily injury include damages claimed by any person or organization for care or loss of services resulting at any time from the bodily injury.

This coverage applies anywhere.

The amount we will pay is limited as described in Limits of Insurance.

Coverage B will not apply to any loss, claim of suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the limits of insurance of underlying insurance.

We have no obligation under this insurance with respect to any claim or suit settled without our consent.

If we are prevented by law from paying on behalf of the insured for coverage provided under this insurance, then we will indemnify the insured.

## Defense and Supplementary Payments

### Applicable to Coverage A and Coverage B

A.   We have the right and the duty to assume control of the investigation, settlement or defense of any claim or suit against the insured for damages covered by this policy:

    1.   under Coverage A, when the applicable limit of underlying insurance has been exhausted by payment of claims; or

    2.   under Coverage B, when damages are sought for bodily injury, property damage, personal injury or advertising injury to which no underlying insurance or other insurance applies.

B.   In those circumstances where paragraph A. above applies, in addition to the applicable Limits of Insurance, we will pay our expenses and the following to the extent that they are not included in underlying insurance:

    1.   up to $2,000 for the cost of bail bonds. We do not have to furnish these bonds;



## THE CHUBB COMMERCIAL UMBRELLA



**Defense and**
**Supplementary**
**Payments**

*Applicable to*
*Coverage A and*
*Coverage B*
*(continued)*

2.  the cost of bonds to release attachments, but only for bond amounts within the amount of insurance available. We do not have to furnish these bonds;

3.  reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of the claim or **suit**; including actual loss of earnings up to $300 per day because of time off from work;

4.  costs taxed against the **insured** in the **suit**;

5.  pre-judgment interest awarded against the **insured** on that part of the judgment we pay. However, if we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer; and

6.  all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of the judgment that is within the applicable Limits of Insurance.

C.  In those circumstances where paragraph A. above does not apply, we do not have the duty to assume control of the investigation, settlement or defense of any claim or **suit** against the **insured**. We do, however, have the right to participate in the investigation, settlement or defense of any claim or **suit** that we feel may create liability on our part under the terms of this policy. If we exercise this right, we will do so at our expense.

We will not defend any **suit** after we have exhausted the applicable Limit of Insurance as stated in Item 4 of the Declarations.

If we are prevented by law from carrying out this provision, we will pay any expense incurred with our consent.

---

**Limits of Insurance**

*Applicable to*
*Coverage A and*
*Coverage B*

A.  With respect to Coverage A and Coverage B, the Limits of Insurance shown in Item 4 of the Declarations and the rules below determine the most we will pay, regardless of the number of:

1.  **insureds**;

2.  claims made or **suits** brought against any or all **insureds**;

3.  coverages provided under this policy; or

4.  persons or organizations making claims or bringing **suits**.



## *Limits of Insurance*

*Applicable to*
*Coverage A and*
*Coverage B*
*(continued)*

B.    The Limits of Insurance of this policy will apply as follows:

1.    The limit for Each Occurrence stated in Item 4 a. of the Declarations is the most we will pay for all damages arising out of any one occurrence, even if such damages are covered, in whole or in part, under both Coverage A and Coverage B.

Any amount paid for damages arising out of an occurrence will reduce the amount of the applicable aggregate limit of insurance available for payment of damages arising out of any other occurrence.

If the applicable aggregate limit of insurance has been reduced by payment of damages to an amount that is less than the limit for Each Occurrence stated in Item 4 a. of the Declarations, the remaining aggregate limit of insurance is the most that will be available for payment of damages arising out of any other occurrence.

2.    Subject to paragraph B.1. above, the limit stated in Item 4 b. of the Declarations for the Products Completed Operations Aggregate is the most we will pay for all damages under the products-completed operations hazard.

3.    Subject to paragraph B.1. above, the limit stated in Item 4 c. of the Declarations for the Other Aggregate is the most we will pay for all damages under Coverage A, and separately under Coverage B, except for: a) damage covered under the products-completed operations hazard or, b) damage covered in **underlying insurance** to which no underlying aggregate limit applies.

However, with respect to Coverage A only, the Other Aggregate will apply in the same manner as the aggregate in each policy listed in the Schedule of Underlying insurance.

C.    The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

*Applicable to*
*Coverage A Only*

A.    With respect to Coverage A and subject to paragraphs B.1., B.2. and B.3. above:

1.    if the limits of **underlying insurance** have been reduced by payment of loss, this policy will drop down to become immediately excess of the reduced underlying limit; or

2.    if the limits of **underlying insurance** have been exhausted by payment of **loss**, this policy will continue in force as **underlying insurance**.



**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

### Limits of Insurance

**Applicable to
Coverage A Only
(continued)**

The provisions of A.1. and A.2. above apply to injury or offense which takes place before the expiration of this policy or the underlying policy, whichever comes first.

### Exclusions

**Applicable to
Coverage A and
Coverage B**

A.    Under Coverage A and Coverage B, this insurance does not apply to:

Asbestos Liability

    any liability based on, attributable to, related to or in any manner arising out of:

    1.    the mining, processing, manufacturing, use, testing, ownership, sale or removal of asbestos, asbestos fibers or material containing asbestos;

    2.    exposure to asbestos, asbestos fibers or material containing asbestos; or

    3.    any error or omission in supervision, instructions, recommendations, notices, warnings, or advice given, or which should have been given, in connection with asbestos, asbestos fibers or material containing asbestos.

Employment Practices

    any liability based on, attributable to, related to or in any manner arising out of any actual or alleged:

    1.    termination of any employee;

    2.    failure to promote or advance any employee; or

    3.    failure to hire any prospective employee or any applicant for employment.

Laws, Various

    any liability or obligation imposed on the **insured** under any of the following:

    1.    any uninsured/underinsured motorist or automobile no fault or first party personal injury law;

    2.    any workers' compensation, unemployment compensation, or disability benefits law or any similar law; or

    3.    the United States' Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 as now or hereafter amended.

Nuclear Energy Liability

    any liability excluded by the Nuclear Energy Liability Exclusion on Page 19 of this policy.




### Exclusions
(continued)

*Applicable to*
*Coverage A Only*

B.  Under Coverage A, this insurance does not apply to:

Pollution Liability

1.  any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

    a.  that are, or that are contained in any property that is:

        (1)  being moved from the place where such property or **pollutants** are accepted by an **insured** for movement into or onto the covered auto;

        (2)  being transported or towed by the covered auto;

        (3)  otherwise in the course of transit by or on behalf of an **insured**;

        (4)  being stored, disposed of, treated or processed in or upon the covered auto; or

        (5)  being moved from the covered auto to the place where such property or **pollutants** are finally delivered, disposed of or abandoned by an **insured**;

    b.  at or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any **insured**;

    c.  at or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

    d.  which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom any **insured** may be legally responsible; or

    e.  at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

        (1)  if the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

        (2)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of **pollutants**.



# THE CHUBB COMMERCIAL UMBRELLA

## Exclusions

**Applicable to Coverage A Only**
*(continued)*

Paragraphs 1.a.(4) and 1.b. through 1.e. above do not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered auto or its parts, if the pollutants escape, seep or migrate or are discharged, dispersed or released directly from an auto part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

Paragraphs 1.b. through 1.e. above do not apply to pollutants not in or upon the covered auto if:

    a.    the pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of the covered auto;

    b.    the discharge, dispersal, seepage, migration, release or escape of the pollutants is caused directly by such upset, overturn or damage; and

    c.    the bodily injury or property damage is not otherwise excluded under paragraph 1.a. of this exclusion.

Paragraphs 1.b. and 1.e.(l) above do not apply to bodily injury or property damage arising out of heat, smoke or fumes from a **hostile fire**.

  2.    any loss, cost or expense arising out of any:

    a.    request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

    b.    claim or **suit** by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

As used in this exclusion:

  1.    **hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be; and

  2.    **pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.

Underlying Insurance Exclusions

any liability excluded by **underlying insurance**.

 

## Exclusions
(continued)

*Applicable to Coverage B Only*

C.   Under Coverage B, this insurance does not apply to:

Aircraft, Owned or Chartered Without Crew

any liability arising out of the ownership, maintenance, use, loading or unloading or entrustment to others of any aircraft owned by you or rented, loaned, or chartered by or on behalf of you without crew.

Autos: USA, Puerto Rico and Canada

any liability arising out of the ownership, maintenance, use, loading or unloading or entrustment to others of **autos** within the United States of America, including its possessions and territories, Puerto Rico, Canada or while **autos** are being transported between these places.

Breach of Contract, Failure to Perform, Wrong Description

**advertising injury** arising out of:

1.   breach of contract;

2.   the failure of goods, products or services to conform with advertised quality or performance; or

3.   the wrong description of the price of goods, products or services.

Damage to Impaired Property

**property damage** to **impaired property** or property that has not been physically injured arising out of:

1.   a defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

2.   a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

Damage to Your Product

**property damage** to **your product** arising out of it or any part of it.

Damage to Your Work

**property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard.**

  

**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

## Exclusions

*Applicable to*
*Coverage B Only*
*(continued)*

**Employee Injury**

    1.   any injury to an employee of the **insured** arising out of and in the course of employment by the **insured**; or

    2.   any injury to the spouse, child, parent, brother, or sister of that employee as a consequence of 1. above.

This exclusion applies whether the **insured** may be liable as an employer or in any other capacity, or to any obligation to share damages with or repay someone else who must pay damages because of an injury.

**Falsity, Prior Publication, Willful Violation**

**personal injury** or **advertising injury** arising out of:

    1.   oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity;

    2.   oral or written publication of material whose first publication took place before the beginning of the policy period; or

    3.   willful violation of a penal statute or ordinance committed by or with the consent of the **insured**.

**Intentional Acts**

**bodily injury** or **property damage** which results from an act that is intended by the **insured** or can be expected from the standpoint of a reasonable person to cause **bodily injury** or **property damage**, even if the injury or damage is of a different degree or type than actually intended or expected.

This exclusion does not apply to **bodily injury** caused by the use of reasonable force to protect people or property.

**Owned Watercraft**

any liability arising out of the ownership, maintenance, use, loading or unloading or entrustment to others of any watercraft owned by you. This exclusion does not apply to watercraft while ashore on premises you own or rent.

**Pollution Liability**

    1.   any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**; or

 

## Exclusions

**Applicable to
Coverage B Only**
(continued)

2.  any loss, cost or expense arising out of any:

a.  request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

b.  claim or suit by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

As used in this exclusion, **pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.

This exclusion applies whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

Product Recall

damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.  **your product;**

2.  **your work; or**

3.  **impaired property;**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

Property Damage, Various

**property damage** to:

1.  property you own;

2.  that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **property damage** arises out of those operations;

3.  that particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it; or

4.  the property of one **insured** in the care, custody or control of another **insured**.

Paragraph 3. of this exclusion does not apply to **property damage** included in the **products-completed operations hazard.**

  

**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

## Definitions

*Applicable to Coverage A and Coverage B*

In this policy words and phrases appearing in bold-face type have the defined meanings shown below.

A.  The following Definitions are applicable to Coverage A and Coverage B.

**Other insurance** means a policy of insurance affording coverage that this policy also affords. **Other insurance** includes any type of self-insurance or other mechanism by which an **insured** arranges for funding of legal liabilities.

**Other insurance** does not include **underlying insurance** or a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

**Suit** means a civil proceeding in which injuries or damages to which this insurance applies are alleged. **Suit** includes:

1.  an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2.  any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**Underlying insurance** means the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy.

*Applicable to Coverage A Only*

B.  The following definitions are applicable to Coverage A only.

**Insured** means:

1.  the Named Insured stated in Item 1 of the Declarations;

2.  any person or organization included as an insured in **underlying insurance**; and

3.  at your option and subject to the terms of this policy at the time of claim or **suit**, persons or organizations included as additional insureds in **underlying insurance**, but only for their liability arising out of operations of the Named Insured.

**Loss** means those sums actually paid in the settlement or satisfaction of a claim which the insured is legally obligated to pay as damages because of injury or offense, after making proper deductions for all recoveries and salvage.

*Applicable to Coverage B Only*

C.  The following definitions are applicable to Coverage B only.

**Advertising injury** means injury, other than **bodily injury** or **personal injury**, arising solely out of one or more of the following offenses committed in the course of **advertising** your goods, products or services:

1.  oral or written publication of **advertising** material that slanders or libels a person or organization;

2.  oral or written publication of **advertising** material that violates a person's right of privacy; or




## Definitions

*Applicable to*
*Coverage B Only*
*(continued)*

3.  infringement of copyrighted titles, slogans or other **advertising** materials.

**Advertising** means any paid: advertisement, publicity article, broadcast or telecast.

**Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment; but an **auto** does not include **mobile equipment**.

**Bodily injury** means physical injury, sickness or disease to a person and, if arising out of the foregoing, mental anguish, mental injury, shock or humiliation, including death at any time resulting therefrom.

**Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

1.  it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.  you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.  the repair, replacement, adjustment or removal of **your product** or **your work**, or

2.  your fulfilling the terms of the contract or agreement.

**Insured** means:

1.  the **named insured**;

2.  any partner, joint venture member, executive officer, employee, director or stockholder of the **named insured** while acting within the scope of his or her duties as such;

3.  if the **named insured** is an individual, the individual so designated and spouse, but only with respect to the conduct of a business of which the individual is the sole proprietor;

4.  any organization over which the **named insured** maintains majority interest and to which more specific insurance does not apply, other than one which you newly acquire or form;

5.  any newly acquired or formed organization over which the **named insured** maintains majority interest and to which more specific insurance does not apply; provided that this policy does not apply to any injury or damage that took place before you acquired or formed the organization;

6.  any person or organization while acting as your real estate manager; or

7.  your legal representative if you die, but only with respect to duties as such.

No person or organization is an **insured** with respect to the conduct of any current, past or newly formed partnership or joint venture that is not designated within the Declarations of this policy as **named insured**.

  

**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

### Definitions

*Applicable to
Coverage B Only
(continued)*

**Insured contract** means any written or oral agreement entered into by the **insured** in the usual course of the business operations of the **insured** in which the **insured** assumes **tort liability** of another to pay damages because of **bodily injury, property damage, personal injury** or **advertising injury** to a third person or organization where the contract or agreement is made prior to the injury or offense.

**Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  vehicles maintained for use solely on or next to premises you own or rent;

3.  vehicles that travel on crawler treads;

4.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.  power cranes, shovels, loaders, diggers or drills; or

    b.  road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  vehicles not described in 1., 2., 3. or 4. above, that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.  air compressors, pumps and generators including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.  cherry pickers and similar devices used to raise or lower workers;

6.  vehicles not described in 1., 2., 3. or 4. above, maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

a.  equipment designed primarily for:

    (1)  snow removal;

    (2)  road maintenance, but not construction or resurfacing; or

    (3)  street cleaning;

b.  cherry pickers and similar devices mounted on an **auto** or truck chassis and used to raise or lower workers; and

c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.



## Definitions

*Applicable to
Coverage B Only
(continued)*

**Named insured** means the person(s) and organization(s) designated in Item 1 of the Declarations of this policy.

**Occurrence** means:

1.  with respect to **bodily injury** or **property damage** liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2.  with respect to **personal injury** or **advertising injury**, a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same occurrence, regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

**Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses committed in the course of your business, other than your **advertising**:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, by or on behalf of its owner, landlord or lessor;

4.  oral or written publication of material that slanders or libels a person or organization;

5.  oral or written publication of material that violates a person's right of privacy; or

6.  discrimination (unless insurance thereof is prohibited by law).

**Products-completed operations hazard** means all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:

1.  products that are still in your physical possession; or

2.  work that has not yet been completed or abandoned. **Your work** will be deemed completed at the earliest of the following times:

    a.  when all of the work called for in your contract has been completed;

    b.  when all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

  

## THE CHUBB COMMERCIAL UMBRELLA

**Definitions**

*Applicable to*
*Coverage B Only*
*(continued)*

> c.  when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

This hazard does not include **bodily injury** or **property damage** arising out of:

1.  the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by loading or unloading of it; or

2.  the existence of tools, uninstalled equipment or abandoned or unused materials.

**Property damage** means:

1.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **occurrence** that caused it.

**Tort liability** means a liability that would be imposed by law in the absence of any contract or agreement.

**Your product** means:

1.  any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

> a.  **you**;
>
> b.  others trading under your name; or
>
> c.  a person or organization whose business or assets you have acquired; and

2.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

1.  warranties or representation made at any time with respect to the fitness, quality, durability, performance or use of **your product** and

2.  the providing or failure to provide warnings or instructions.

**Your product** does not include vending machines or other property rented to or located for use of others but not sold.

**Your work** means:

1.  work or operations performed by you or on your behalf; and




## Definitions

**Applicable to
Coverage B Only**
(continued)

2.    materials, parts or equipment furnished in connection with such work or operations.

**Your work includes:**

1.    warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

2.    the providing of or failure to provide warnings or instructions.

## Conditions

**Applicable to
Coverage A and
Coverage B**

The following Conditions are applicable to both Coverage A and Coverage B.

Appeals

At our option we can initiate or participate in an appeal of a judgment against any **insured** if the judgment is for more than the amount of the Retained Limit Aggregate stated in Item 4 d. of the Declarations or the limits of insurance of **underlying insurance**.

If we initiate or participate in an appeal, we will pay our costs of the appeal. These payments will be in addition to the Limits of Insurance of this policy.

Audit of Books and Records

We may audit the **insured's** books and records at any time during the term of this insurance or within three years after expiration or termination.

Bankruptcy or Insolvency

Bankruptcy or insolvency of the **insured** or the **insured's** estate will not relieve us of our obligations under this policy.

Cancellation

The first **named insured** may cancel this policy at any time by sending us a written request or by returning the policy stating the date of cancellation.

We may cancel this policy at any time by sending to the first **named insured** a notice of 60 days (10 days in the event of non-payment of premium) in advance of the cancellation date. Our notice of cancellation will be mailed to the first **named insured's** last known address, and will indicate the date on which coverage is terminated.

If cancellation is at the request of the **insured**, return premium will be computed at 90% of pro rata. If we cancel, return premium will be computed pro rata. If this policy insures more than one **insured**, cancellation may be effected by the first **named insured** for the account of all the **insureds**. Notice of cancellation by us to such first **named insured** will be deemed notice to all **insureds** and payment of any return premium to such first **named insured** will b for the account of all interests.

  

**CHUBB**

## THE CHUBB COMMERCIAL UMBRELLA

### Conditions

**Applicable to
Coverage A and
Coverage B
(continued)**

Changes

Notice to any agent or knowledge possessed by any agent or by any other person will not affect a waiver or change in any part of this policy. This policy can only be changed by a written endorsement that becomes part of this policy.

Duties in the Event of Occurrence, Claim or Suit

You must see to it that we and your underlying insurers:

1. are notified as soon as possible of any occurrence which may result in a claim if the claim may involve this policy or any **underlying insurance**;

2. receive notice of the claim or **suit** as soon as possible;

3. are helped, at our request, to enforce any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance applies; and

4. receive the **insured's** full cooperation as stated in this policy or in any **underlying insurance**.

Additionally, it is a requirement of this policy that:

1. the **insured** not make any admission of liability; and

2. the **insured** not, unless we agree, incur any expense or make any payment other than for first aid. Any such unauthorized expenses will be at the **insured's** own cost.

First Named Insured

The person or organization first named in Item 1 of the Declarations is primarily responsible for the payment of all premiums. The first **named insured** will act on behalf of all other **insureds** for the giving and receiving of notice of cancellation and the receiving of any return premiums that become payable under this policy.

Inspection

We have the right, but are not obligated to inspect the **insured's** premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of the premises and operations and the premium to be charged. We may provide reports on the conditions we find. We may also recommend changes. While these reports may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that the premises or operations are safe or healthful, or that they comply with laws, regulations, codes or standards.

 

## *Conditions*

*Applicable to*
*Coverage A and*
*Coverage B*
*(continued)*

Maintenance of Underlying Insurance

While this policy is in effect you agree to maintain **underlying insurance** in full force. This means that:

1.  **underlying insurance** may not be cancelled or non-renewed by either you or the insurance company without notifying us;

2.  renewals or replacements of **underlying insurance** will not be more restrictive in coverage;

3.  terms, conditions and endorsements of **underlying insurance** will not materially change;

4.  collectibility of **underlying insurance** limits as listed in the Schedule of Underlying Insurance, or replacements thereof, must be available regardless of the bankruptcy or insolvency of the underlying insurers; and

5.  limits of **underlying insurance** will not change except for any reduction in the aggregate limits of insurance by payment of **loss**.

Your failure and/or your underlying insurer's failure to comply with this condition will not invalidate this policy but in the event of such failure, we will only be liable to the same extent as if there had been compliance with this condition.

Other Insurance

If **other insurance** applies to claims covered by this policy, the insurance under this policy is excess and we will not make any payments until the **other insurance** has been exhausted by payment of claims. This insurance is not subject to the terms or conditions of any **other insurance.**

Premium

The premium for this policy as stated in Item 3 of the Declarations is a flat premium. It is not subject to adjustment unless an endorsement is attached to this policy.

Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first **named insured**, this insurance applies:

1.  as if each **named insured** were the only **named insured**; and

2.  separately to each **insured** against whom claim is made or **suit** is brought.

Titles of Paragraphs

The titles of the various paragraphs of this policy and endorsements, if any, attached to this policy, are inserted solely for convenience or reference and are not to be deemed in any way to affect the provisions to which they relate.





## THE CHUBB COMMERCIAL UMBRELLA

### Conditions

**Applicable to
Coverage A and
Coverage B
*(continued)***

**Transfer of Rights and Duties**

Your rights and duties under this insurance may not be transferred without our written consent. If you die, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties but only with respect to that property.

**Transfer of Rights of Recovery**

1. If the **insured** has rights to recover all or part of any payment we have made under this insurance, those rights are transferred to us. The **insured** must do nothing after loss to impair them. At our request, the **insured** will bring suit or transfer those rights to us and help us enforce them.

2. Any amount recovered will be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

**When Loss is Payable**

This policy will not apply until the **insured**, or the **insured's** underlying insurer is obligated to pay the full amount of the underlying limit or Retained Limit Aggregate. When the amount of loss has finally been determined, we will promptly pay on behalf of the **insured** the amount of loss which falls within the terms of this policy. The first **named insured** will promptly reimburse us for any amount within the Retained Limit Aggregate paid by us.

**Nuclear Energy
Liability Exclusion**

This policy does not apply to:

A. any injury or damage:

   1. with respect to which an **insured** under the policy is also an **insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such policy but for its terminations upon exhaustion of its limits of insurance; or

   2. resulting from the **hazardous properties of nuclear material** and with respect to which a) person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or b) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

 

**Nuclear Energy Liability Exclusion**

B.  any injury or nuclear property damage resulting from the hazardous properties of nuclear material, if:

   1.  the nuclear material a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or b) has been discharged or dispersed therefrom;

   2.  the nuclear material is contained in spent fuel or nuclear waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   3.  the injury or nuclear property damage arises out of the furnishing by an insured of services, materials, parts of equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion 3. applies only to nuclear property damage to such nuclear facility and any property therein.

C.  As used in this exclusion:

   1.  Hazardous properties includes radioactive, toxic or explosive properties.

   2.  Nuclear facility means:

      a.  any nuclear reactor;

      b.  any equipment or device designed or used for

         (1)  separating the isotopes of uranium or plutonium,

         (2)  processing or utilizing spent fuel or

         (3)  handling, processing or packaging nuclear waste;

      c.  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      d.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, nuclear waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

   3.  Nuclear material means source material, special nuclear material or by-product material.

   4.  Nuclear property damage includes all forms of radioactive contamination of property

   5.  Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.






## THE CHUBB COMMERCIAL UMBRELLA

**Nuclear Energy
Liability Exclusion**
*(continued)*

6. Nuclear waste means any nuclear waste material a) containing **by-product material** other than the tailings of nuclear waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and b) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph a. or b.

7. **Source material, special nuclear material, and by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

8. **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.



# Exhibit F



NEW CENTURY™
MORTGAGE CORPORATION

18400 VON KARMAN, SUITE 1000, IRVINE, CA 92612 (949) 440-7030 FAX (949) 440-7033

Direct Dial: (949) 225-7852
Fax: (949) 440-7033
E-mail: msantandrea@ncen.com

August 15, 2003

<u>VIA FEDERAL EXPRESS</u>

Camilla Conlon
Maria Heller
Banker's Insurance Services
200 East Randolph Street
17th Floor
Chicago, IL 60601

Pamela Nash
Financial Guaranty Insurance Brokers
709 East Colorado Blvd, #230
Pasadena, CA 91101

Re:   **Paul Bernstein v. New Century Mortgage Corporation**
      MBPL Policy No.'s:    MPL-01-00008 & MPL-02-000010
      Policy Dates:         6/8/02-6/8/04
      MBB Policy No.'s:     MBB-00-00023
      Policy Dates:         6/8/00-6/8/03
      CGL Policy No.:       35397736 LAO
      Policy Dates:         2/3/02-2/3/04

Dear Ms. Conlin and Ms. Nash:

      This letter is to notify you of a claim on the above-referenced policies by New Century Mortgage Corporation ("New Century"). This claim arises from a class action lawsuit entitled *Paul Bernstein v. New Century Mortgage Corporation* filed on April 5, 2002 in the Circuit Court of Cook County, Illinois, case number 02CH06907. A copy of the Complaint has been enclosed for your reference.



Paul Bernstein v. New Century Mortgage Corporation
August 15, 2003
Page 2

The Complaint alleges violation of Telephone Consumer Protection Act (TCPA), unlawful use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile and violation of the Illinois Consumer Fraud Act (ICFA), engaging in unfair and deceptive acts and practices. Class consists of all persons with an Illinois fax number who on or after a date two years prior to this action were sent faxes.

We have retained attorney Bart Murphy at Wildman, Harrold, Allen and Dixon, 225 West Wacker Drive, Suite 3000, Chicago, IL 60606, (312) 201-2000.

We hereby tender the defense and demand indemnification of the insured upon the within claim. We ask that you notify all appropriate carriers of this claim. Please direct all future communication concerning this tender to my attention at the above-referenced address.

Very truly yours,

MARY F. SANTANDREA
Assistant Vice President & Senior Counsel

CMW/MS
Enclosures

cc: Dan Hodgkiss (via facsimile only), (w/out encls.)
    Monika L. McCarthy (w/out encls.)

# Exhibit G



# CHUBB GROUP OF INSURANCE COMPANIES

Sears Tower, Suite 4700, 233 South Wacker Drive, Chicago, Illinois 60606-6303 • Phone (312) 454-4200

January 7, 2004

New Century Mortgage Corporation
Attn: Mr. Mark Malovos
18400 Von Karman Ave. Suite 1000
Irvine, CA. 92612

Certified Mail
Return Receipt Requested

Re:     Our Policy #:     3539-77-36 & 7977-03-85
        Our Insured:     New Century Mortgage Corporation
        Claimant:        Paul Bernstein    insurance
        Date of Loss:    February 26, 2002

Dear Mr. Malovos:

This will acknowledge receipt by the Great Northern Insurance Company and the Federal Insurance Company, Chubb Companies, of a Summons & Complaint # 02CH 6907 filed in the matter of Paul Bernstein vs. New Century Mortgage Corporation venued in the Chancery Division of the Circuit Court of Cook County, Illinois

The plaintiff alleges that he received an unsolicited fax advertisement on February 26, 2003 This fax consisted of an advertisement for mortgage loans from New Century Mortgage Corporation. You have advised me that Fax.com was the entity that actually sent this advertisement via fax.

The Complaint consists of two Counts.
Count I:     Violation of the Telephone Consumer Protection Act
Count II:    Violation of the Illinois Consumer Fraud Act

The Complaint alleges that the plaintiff suffered damages as a result of the receipt of the unsolicited fax in the form of the loss of use of paper and toner consumed. The Complaint also seeks to establish this as a class action litigation on behalf of all who received advertising faxes from the defendant since April 5th, 1999 and who had no prior business relationship with New Century Mortgage Corporation. The Complaint requests actual damages, statutory damages, treble damages if found to be a willful violation, and attorney's fees.

January 7, 2004
New Century Mortgage Corporation
Page 2

After reviewing this lawsuit, it is the position of the Great Northern Insurance Company that we will defend you subject to a reservation of rights. This decision will be discussed more fully below.

We now refer you to policy #3539-77-36, Form #17-02-3080(4/95) issued for the policy period of February 3, 2002 to February 3, 2003.

Excerpts of certain provisions contained in the above-referenced policy are set forth in the Appendix accompanying this letter. This information is provided so that you may have it available as you review the explanations provided in this letter. Please note that the positions set forth in this letter are based on all of the provisions of the above-referenced policy, and not only on the excerpts set forth in the Appendix. Therefore, we urge you to refer to the full text of the policy and not merely the excerpts set forth in the Appendix.

Subject to the applicable limits of insurance, we will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract for:

1. Bodily injury or property damage to which this insurance applies caused by an occurrence; or
2. Advertising injury or personal injury to which this insurance applies caused by an offense.

This includes bodily injury, property damage, advertising injury, or personal injury involving:

1. Automated teller machines
2. Foreclosed property
3. Property in any trust, guardianship, or estate for which you are acting in a fiduciary or representative capacity; and
4. Property which you own and lease to others, when specific insurance, which would customarily protect your interest and which you require your lessees to carry, is non-existent, invalid, insufficient, or uncollectible.

This insurance applies to:

1. Bodily injury or property damage which occurs during the policy period; and
2. Advertising injury or personal injury caused by an offense committed during the policy period.

Damages for bodily injury include damages claimed by a person or organization for care or loss of services resulting at any time from the bodily injury.

We also refer your attention to the definition section of your policy which defines Bodily Injury, Property Damage, Advertising Injury, Personal Injury and Occurrence. Also, we refer you to the Exclusions section of your policy. Specifically, please review the Willful Violations Exclusion

January 7, 2004
New Century Mortgage Corporation
Page 3

and the Expected or Intended Injury Exclusion. Please review these definitions and exclusions which you will find in the Appendix accompanying this letter.

It is the position of the Great Northern Insurance Company that the allegations set forth in this notice of claim may not fall within the insuring agreement, as they may not meet the definitions of Bodily Injury, Property Damage, Personal Injury, Advertising Injury or Occurrence as those terms are defined in the policy. In addition, the exclusions cited above may also apply.

The plaintiff does not allege any "Bodily Injury." There is a claim made for the loss of toner and paper . This does not fit the definition of "Property Damage" since the toner and paper were not damaged, but used in a manner not intended by the plaintiff. Also, this claim does not fit the definition of "Occurrence" since the transmission of this fax was not an accident.

A Telephone Consumer Protection Act claim may include a claim for either "Advertising Injury" or "Personal Injury" as a result of publication of material which invades a person's right of privacy. The Great Northern Insurance Company will provide a defense for New Century Mortgage Corporation, but only due to the potential invasion of privacy claim that may be pursued by individuals which are allegedly part of the "class" of recipients of this fax communication.

In view of the foregoing, the Great Northern Insurance Company will defend New Century Mortgage Corporation, but it reserves the right to deny indemnity for any uncovered claim. Also, the Great Northern Insurance Company would have no duty to indemnify if it is determined that these faxes were sent to businesses only.

This defense is subject to the following reservation: Should the plaintiff obtain judgment predicated upon allegations that fall outside of the insuring agreement, such judgment shall be the responsibility of the defendant and not that of the Great Northern Insurance Company. Furthermore, we reserve our right to seek reimbursement of any defense costs we pay if it is determined that there is no coverage under the policy.

If you have any additional facts that you feel would alter our position, we would be pleased to review that information and give this matter further consideration.

We now refer you to the New Century Mortgage Corporation Commercial Umbrella Policy #7977-03-85, Form #07-02-0815 (9/92) for the policy periods of February 3, 2002 through February 3, 2003.

Excerpts of certain provisions contained in the above-referenced policy are set forth in the Appendix accompanying this letter. This information is provided so that it is available as you

January 7, 2004
New Century Mortgage Corporation
Page 4

review the explanation provided in this letter. Please note that the positions set forth in this letter are based on all of the provisions of the above-referenced policy, and not only on the excerpts set forth in the Appendix. Therefore, we urge you to refer to the full text of the policy, and not merely excerpts set forth in the Appendix.

## Coverage A - Excess Follow Form Liability Insurance

Under Coverage A, we will pay on behalf of the insured, that part of loss covered by this insurance in excess of the total applicable limits of underlying insurance, provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of underlying insurance are with respect to Coverage A made a part of this policy, except with respect to:

A. any contrary provision

B. any provision in this policy for which a similar provision is not contained in underlying insurance.

With respect to the exceptions stated above, the provisions of this policy will apply.

The amount that we will pay is limited as described in Limits of Insurance.

Notwithstanding anything to the contrary contained above, if underlying insurance does not cover loss, for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such loss.

We have no obligation under this insurance with respect to any claim or suit settled without our consent.

We now refer your attention to the New Century Mortgage Corporation Commercial Umbrella Policy under Policy #7977-03-856, Form #07-02-0815 for the policy period of February 3, 2002 through February 3, 2003.

## Coverage B - Umbrella Liability Insurance

Under Coverage B, we will pay on behalf of the insured, damages the insured becomes legally obligated to pay be reason of liability imposed by law or assumed under an insured contract because of bodily injury, property damage, personal injury, or advertising injury covered by this insurance which takes place during the Policy Period of this policy and is caused by an occurrence. We will pay such damages in excess of the Retained Limit Aggregate specified in Item 4d. of the Declarations or the amount payable by other insurance, whichever is greater.

January 7, 2004
New Century Mortgage Corporation
Page 5

Damages because of bodily injury include damages claimed by any person or organization for care of loss of services resulting at any time from the bodily injury.

This coverage applies anywhere.

The amount we will pay is limited as described in Limits of Insurance.

Coverage B will not apply to any loss, claim, or suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the limits of insurance of underlying insurance.

We have no obligation under this insurance with respect to any claim or suit settled without our consent.

With regards to Commercial Umbrella Policy # 7977-03-85, we are handling Coverage A under the same Reservation of Rights as was previously cited in this letter for the primary general liability policy. Since Coverage A of the Commercial Umbrella Policy #7977-03-85 is responding, Coverage B has not been triggered nor would it be triggered.

In view of the foregoing, the Federal Insurance Company will handle this claim on your behalf. However, this defense is subject to the following reservation: Should the plaintiff obtain judgment predicated upon allegations that fall outside of the insuring agreement, such judgment shall be the responsibility of the defendant and not that of the Federal Insurance Company.

Furthermore, we reserve our right to seek reimbursement of any defense costs we pay if it is determined that that there is no coverage under the policy.

This Complaint requests treble damages and reimbursement of attorney's fees. Neither Policy # 3539-77-36 nor Policy # 7977-03-85 provide coverage for any punitive (treble) damage claim or claim for attorney's fees. Punitive damages are uninsurable as a matter of public policy in Illinois. Any award for punitive(treble) damages and/or attorney's fees will be the sole responsibility of New Century Mortgage Corporation.

The Great Northern Insurance Company and the Federal Insurance Company reserve their rights

January 7, 2004
New Century Mortgage Corporation
Page 6

under these policies and applicable law to cite additional applicable policy provisions as may be appropriate. The foregoing reservation is premised upon allegations set forth in the lawsuit and the terms and conditions of the policies. By limiting policy references to those cited, the Great Northern Insurance Company and Federal Insurance Company do not waive any other policy provisions. The insurance policies in their entirety are incorporated by reference as if they had been stated in full.

Sincerely,

Michael J. Najewski
Litigation Examiner    (312-831-3725)

cc:    Financial Guaranty Insurance Brokers, Inc.
       Attn: Mr. Manny Kim
       709 East Colorado Blvd. Suite 230
       Pasadena, CA. 91101

## APPENDIX - POLICY #3525-72-59

**Advertising Injury** - Advertising injury means injury, other than bodily injury or personal injury, arising solely out of one or more of the following offenses committed in the course of advertising your goods, products or services:
1.  Oral or written publication of advertising material that slanders or libels a person or organization;
2.  Oral or written publication of advertising material that violates a persons right of privacy; or
3.  Infringement of copyrighted advertising materials or infringement of trademark or service mark titles or slogans.

**Bodily Injury** - Bodily injury means physical;
1.  Injury;
2.  Sickness or;
3.  Disease
sustained by a person and/if arising out of the foregoing, mental anguish, mental injury, shock humiliation or death at any time.

**Occurrence** - Occurrence means an accident, including continuous or repeated exposure to substantially the same general or harmful conditions.

**Personal Injury** - Personal injury means injury, other than bodily injury, arising out of one or more of the following offenses committed in the course of your business, other than your advertising;
A.  False arrest, detention or imprisonment;
B.  Malicious prosecution(unless insurance thereof is prohibited by law), except when it arises out of, of is directly or indirectly related to:
    1)  the restructure, termination, transfer, or collection of any loan, lease, or extension of credit; or
    2)  the repossession or foreclosure of property which is security for any loan, lease or extension of credit;
C.  The wrongful eviction from, wrongful injury into or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, unless the person or persons are mortgagors of yours or of anyone for whom you are servicing mortgages, by or on behalf of you, its owner, landlord or lessor;
D.  Oral or written publication of material that slanders or libels a person or organization, except when alleged, charged or suffered by any customer;
E.  Oral or written publication of material that violates a persons right of privacy, except when alleged, charged or suffered by any customer; or;
F.  Discrimination (unless insurance thereof prohibited by law) based on race, color religion, sex, age, or national origin; except when alleged, charged, or suffered by any;
    1.  Applicant for employment
    2.  Present or former employee
    3.  Prospective employee
    4.  Customer.

**Property Damage -** Property damage means:

1.  Physical injury to tangible property including the resulting loss of use of that property all such loss of use shall be deemed to occur at the time of the physical injury that caused it or;

2.  Loss of use of tangible property that is not physically injured or all such of use must be deemed to occur at the time of the occurrence that caused it.

### Exclusions

**Willful Violations Exclusion-** This insurance does not apply to **advertising injury or personal injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the **insured.**

**Expected or Intended Injury Exclusion-**This insurance does not apply to bodily injury or property damage which results from an act that:

1.  is intended by the insured; or

2.  can be expected from the standpoint of a reasonable person

to cause bodily injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected

This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property.

### APPENDIX - POLICY #7977-03-85

### Coverage A-Exclusions

**Underlying Insurance Exclusion:** any liability excluded by underlying insurance

# Exhibit H



NEW CENTURY™
MORTGAGE CORPORATION

18400 Von Karman, Suite 1000, Irvine, CA 92612 (949) 440-7030 Fax (949) 440-7033

Direct Dial:   (949) 225-7861
Fax:           (949) 440-7033
e-mail: MMalovos@ncen.com

March 25, 2004

VIA FEDERAL EXPRESS

Michael J. Najewski, Litigation Examiner
Chubb Group of Insurance Companies
Sears Tower, Suite 4700
233 South Wacker Drive
Chicago, IL 60606-6303

Re:   Insured:       **New Century Mortgage Corporation**
      Policy No.:    **3539-77-36 & 7977-03-85**
      Claimant:      **Paul Bernstein**
      Date of Loss: **February 26, 2002**

Dear Mr. Najewski:

Pursuant to Chubb's agreement to defend New Century in the action filed by Paul Bernstein, New Century encloses an Excel spreadsheet evidencing the defense expenses, plus interest, incurred by New Century in defending the action. New Century tendered the Bernstein complaint to Chubb's agent on May 3, 2002. New Century sent another tender on August 15, 2003 because it had not received a response to its original tender.

From the date of tender through January 2004, New Century incurred defense fees and costs totaling $89,242.34. New Century was represented by Greensfelder, Heniker & Gale, P.C. as its counsel from June 2002 to April 2003. The Greensfelder firm's fees and costs total $29,020.56. New Century has been and continues to be represented by Wildman, Harrold, Allen & Dixon. From June 2002 through January 2004, the Wildman firm's fees and costs total $60,221.78 for defense of the Bernstein matter.

To date, while Chubb agreed to reimburse New Century for defense fees and costs incurred, no payments of any kind have been received. Chubb agreed that the rates charged by the Wildman firm were reasonable and has agreed to continue New Century's defense with this chosen counsel. Since Chubb did not initially agree to defend New Century, New Century has been damaged by those actions, through the loss of use of its money. Pursuant to California Civil Code Section 3287, New Century is entitled to prejudgment interest on the amounts paid because Chubb was actually

Michael J. Najewski, Litigation Examiner
March 25, 2004
Page 2

obligated to pay. The interest has been calculated from the date of each invoice and is included in the Excel spreadsheet in the amount of $10,040.48.

We look forward to Chubb providing reimbursement in the amount of $99,282.82. We will also provide Chubb with an analysis of potential liability exposure in the Bernstein matter.

Very truly yours,

Mark Malovos
Assistant Vice President, Senior Counsel

MM:cv
Enclosures

## New Century adv. Bernstein

### Attorneys' Fees & Costs

| Entity | Invoice Date | Invoice No. | Fees | Costs | Total | No. of Days Accruing Interest Through 3/31/04 | 10% Interest Statement Date Through 3/31/04 | 10% Interest Per Day After 3/31/04 | Total Fees/Costs Plus Interest Through 3/31/04 |
|---|---|---|---|---|---|---|---|---|---|
| Greensfelder | 8/15/2002 | 176986 | $ 3,680.00 | $ - | $ 3,680.00 | 594 | $ 598.88 | $ 1.01 | $ 4,278.88 |
| Greensfelder | 8/31/2002 | 178364 | $ 3,552.50 | $ 378.00 | $ 3,930.50 | 578 | $ 622.42 | $ 1.08 | $ 4,552.92 |
| Greensfelder | 10/16/2002 | 180389 | $ 1,641.50 | $ - | $ 1,041.50 | 532 | $ 239.25 | $ 0.45 | $ 1,880.75 |
| Greensfelder | 11/21/2002 | 182287 | $ 4,998.50 | $ - | $ 4,998.50 | 496 | $ 679.25 | $ 1.37 | $ 5,677.75 |
| Greensfelder | 12/13/2002 | 184054 | $ 196.00 | $ - | $ 196.00 | 474 | $ 25.45 | $ 0.05 | $ 221.45 |
| Greensfelder | 1/23/2003 | 186199 | $ 49.00 | $ - | $ 49.00 | 433 | $ 5.81 | $ 0.01 | $ 54.81 |
| Greensfelder | 2/21/2003 | 187185 | $ 1,258.60 | $ - | $ 1,258.60 | 404 | $ 139.31 | $ 0.34 | $ 1,397.91 |
| Greensfelder | 3/28/2003 | 189199 | $ 6,172.50 | $ 81.70 | $ 6,254.20 | 369 | $ 632.27 | $ 1.71 | $ 6,886.47 |
| Greensfelder | 4/29/2003 | 69204 | $ 7,012.26 | $ - | $ 7,012.26 | 337 | $ 647.43 | $ 1.92 | $ 7,659.69 |
| Subtotal | | | $ 28,560.86 | $ 459.70 | $ 29,020.56 | | $ 3,590.08 | $ 7.95 | $ 32,610.64 |
| Wildman, Harrold | 7/31/2002 | 205394 | $ 17,405.50 | $ 289.59 | $ 17,695.09 | 609 | $ 2,952.41 | $ 4.85 | $ 20,647.50 |
| Wildman, Harrold | 8/22/2002 | 206533 | $ 1,714.00 | $ 15.75 | $ 1,729.75 | 587 | $ 278.18 | $ 0.47 | $ 2,007.93 |
| Wildman, Harrold | 9/23/2002 | 208218 | $ 480.00 | $ - | $ 480.00 | 555 | $ 72.99 | $ 0.13 | $ 552.99 |
| Wildman, Harrold | 10/24/2002 | 211634 | $ 632.50 | $ - | $ 632.50 | 524 | $ 90.80 | $ 0.17 | $ 723.30 |
| Wildman, Harrold | 11/5/2002 | 214375 | $ 5,200.00 | $ 19.60 | $ 5,219.60 | 512 | $ 732.17 | $ 1.43 | $ 5,951.77 |
| Wildman, Harrold | 12/10/2002 | 216137 | $ 426.56 | $ - | $ 426.56 | 477 | $ 55.74 | $ 0.12 | $ 482.30 |
| Wildman, Harrold | 1/27/2003 | 219301 | $ 178.00 | $ - | $ 178.00 | 429 | $ 20.92 | $ 0.05 | $ 198.92 |
| Wildman, Harrold | 2/20/2003 | 221736 | $ 600.00 | $ 80.40 | $ 680.40 | 397 | $ 74.01 | $ 0.19 | $ 754.41 |
| Wildman, Harrold | 3/31/2003 | 224915 | $ 10,930.00 | $ 84.53 | $ 11,014.53 | 366 | $ 1,104.47 | $ 3.02 | $ 12,119.00 |
| Wildman, Harrold | 4/28/2003 | 227410 | $ 3,272.16 | $ - | $ 3,272.16 | 338 | $ 303.01 | $ 0.90 | $ 3,575.17 |
| Wildman, Harrold | 5/30/2003 | 230113 | $ 344.00 | $ - | $ 344.00 | 306 | $ 28.84 | $ 0.09 | $ 372.84 |
| Wildman, Harrold | 6/11/2003 | 231384 | $ 2,331.00 | $ 103.85 | $ 2,434.85 | 294 | $ 196.12 | $ 0.67 | $ 2,630.97 |
| Wildman, Harrold | 7/24/2003 | 234688 | $ 1,312.00 | $ 1.06 | $ 1,313.06 | 251 | $ 90.30 | $ 0.36 | $ 1,403.36 |
| Wildman, Harrold | 8/14/2003 | 236568 | $ 848.00 | $ - | $ 848.00 | 230 | $ 53.44 | $ 0.23 | $ 901.44 |
| Wildman, Harrold | 9/17/2003 | 239507 | $ 752.00 | $ 3.13 | $ 755.13 | 196 | $ 40.55 | $ 0.21 | $ 795.68 |
| Wildman, Harrold | 10/31/2003 | 243285 | $ 1,600.00 | $ - | $ 1,600.00 | 152 | $ 66.63 | $ 0.44 | $ 1,066.63 |
| Wildman, Harrold | 11/20/2003 | 244850 | $ 2,832.00 | $ 45.27 | $ 2,877.27 | 132 | $ 104.05 | $ 0.79 | $ 2,981.32 |
| Wildman, Harrold | 12/5/2003 | 246832 | $ 2,607.72 | $ - | $ 2,607.72 | 117 | $ 83.59 | $ 0.71 | $ 2,691.31 |
| Wildman, Harrold | 1/30/2004 | 250467 | $ 6,113.16 | $ - | $ 6,113.16 | 61 | $ 102.17 | $ 1.67 | $ 6,215.33 |

Totals to 3-31-04

New Century adv. Bernstein

Attorneys' Fees & Costs

| Entity | Invoice Date | Invoice No. | Fees | Costs | Total | No. of Days Accruing Interest Through 3/31/04 | 10% Interest Statement Date Through 3/31/04 | 10% Interest Per Day After 3/31/04 | Total Fees/Costs Plus Interest Through 3/31/04 |
|---|---|---|---|---|---|---|---|---|---|
| | | | $ 59,578.60 | $ 643.18 | $ 60,221.78 | | $ 6,450.39 | $ 16.50 | $ 66,672.17 |
| Subtotal | | | | | | | | | |
| Gauntlett & Associates | 11/2/2003 | 1 | $ 675.00 | $ - | $ 675.00 | 150 | $ 27.74 | $ 0.18 | $ 702.74 |
| Gauntlett & Associates | 1/1/2004 | 2 | $ 5,785.01 | $ - | $ 5,785.01 | 90 | $ 142.64 | $ 1.58 | $ 5,927.65 |
| Gauntlett & Associates | 2/1/2004 | 3 | $ 1,861.75 | $ - | $ 1,861.75 | 59 | $ 30.09 | $ 0.51 | $ 1,891.84 |
| Gauntlett & Associates | 3/1/2004 | 4 | $ 341.00 | $ - | $ 341.00 | 30 | $ 2.80 | $ 0.09 | $ 343.80 |
| Subtotal | | | $ 8,662.76 | $ - | $ 8,882.76 | | $ 203.28 | $ 2.37 | $ 8,886.04 |
| Total | | | $ 96,802.22 | $ 1,102.88 | $ 97,905.10 | | $ 10,243.76 | $ 26.82 | $ 108,148.86 |

Totals to 3-31-04

10465-001-3/24/2004-143001.1

# Exhibit I



# CHUBB GROUP OF INSURANCE COMPANIES

Sears Tower Suite 4700, 233 South Wacker Drive, Chicago, Illinois 60606-6303 • Phone  (312) 454-4200

April 9, 2004

New Century Mortgage Corporation
Attn: Mr. Mark Malovos
18400 Von Karman Ave.  Suite 1000
Irvine, CA.  92612

Re:     Our Policy #:      3539-77-36  &  7977-03-85
        Our Insured:       New Century Mortgage Corporation
        Claimant:          Paul Bernstein
        Date of Loss:      February 26, 2002

Dear Mr. Malovos:

This will acknowledge receipt by the Great Northern Insurance Company and the Federal Insurance Company, Chubb Companies, of your letter dated March 25, 2004 and the spreadsheet which listed the incurred legal expenses.  I will respond to each of the points that you raised in that letter.

The Great Northern Insurance Company received its first notice of this loss on August 27, 2003. New Century Mortgage Corporation will be re-imbursed for reasonable and customary legal expenses incurred on and subsequent to August 27, 2003 in the defense of this lawsuit.

I have reviewed our claims file and confirmed that we have never received any of the legal bills incurred in the defense of this matter. Before we can make any payment on these expenses, we need copies of the itemized bills. Please forward copies of these bills to my attention.

To date, there has been no agreement on the billing rates charged by the Wildman law firm. Since the Great Northern Insurance Company has issued a reservation of its policy rights, it recognizes the right of New Century Mortgage Corporation to choose its own defense counsel. However, the Great Northern Insurance Company is only responsible for reasonable legal expenses, and will pay up to a $250.00 per hour rate for your legal representation.

Please forward to me any case law and/or statute which supports your request for "pre-judgment" interest for legal fees. This is an unusual request especially since no one has ever submitted any legal bills to us nor made any prior request for payment.

April 9, 2004
New Century Mortgage Corporation
Page 2

The Great Northern Insurance Company must also formally request copies of all status reports and evaluations completed by the defense counsel on this claim. We need a report that includes a liability evaluation, damage exposure and a strategy for future handling by your defense attorney. Furthermore, we need information as to New Century's target audience for these fax advertisements. When were these faxes sent? Were they sent to businesses or individuals? Is New Century still using this method of advertising?

In our letter of January 7, 2004, the Great Northern Insurance Company advised that there was a "potential" for indemnity coverage for a portion of this claim. We are also aware that there have been some settlement discussions between your defense counsel and the plaintiff's attorney. Please supply us with your position on settlement. Has New Century made any settlement offers?

We look forward to your responses on these issues.

Sincerely,

Michael J. Najewski
Litigation Examiner    (312-831-3725)

cc:     Financial Guaranty Insurance Brokers, Inc.
        Attn: Mr. Manny Kim
        709 East Colorado Blvd. Suite 230
        Pasadena, CA. 91101

# Exhibit J



JUN-14-2004  14:42                         312 419 0379    P.02/02

# EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603-3403
(312) 739-4200
(800) 644-4673
(312) 419-0379 (FAX)
Email: edcombs@aol.com
www.edcombs.com

June 14, 2004

FAX TO (312) 201-2555

Samuel S. Cohen, Esq.
Wildman, Harrold, Allen & Dixon
225 W. Wacker Dr., Suite 3000
Chicago, IL 60606

FAX TO (630) 955-0662

Bart T. Murphy, Esq.
Wildman, Harrold, Allen & Dixon
2300 Cabot Dr., Suite 455
Lisle, IL 60532

Re:    Bernstein v. New Century Mortgage (8128)

Dear Counsel:

Please be advised that at this time, plaintiff is willing to settle the above captioned matter on a class basis for a total of $6,000,000.00. Please contact me once you have had a chance to discuss this offer with your client.

Sincerely,

Daniel A. Edelman

TOTAL P.02

# Exhibit K



**Wildman, Harrold, Allen & Dixon**
2300 Cabot Drive, Suite 455
Lisle, Illinois 60532-3639
630-955-0555
630-955-0662 fax
www.wildmanharrold.com

**Bart T. Murphy**
630-955-6392
murphyb@wildmanharrold.com

Wildman Harrold
*Attorneys and Counselors*

June 17, 2004

## VIA E-MAIL AND FACSIMILE
*Facsimile No. (312) 454-4391*

Mr. Michael J. Najewski, Jr.
Litigation Examiner
Chubb Insurance Companies
233 S. Wacker Dr., Suite 4700
Chicago, IL 60606

　　　Re:　*Bernstein v. New Century Mortgage*
　　　　　No. 02 CH 7745 (Cook County, IL)
　　　　　Your Insured: New Century Mortgage

Dear Mr. Najewski:

　　　New Century Mortgage has received a demand from Plaintiff in the amount of $6,000,000.00. Enclosed is a copy of the demand letter dated June 14, 2004.

　　　As you are aware, I have been attempting to arrange a mediation, and Plaintiff's counsel has agreed to participate in the mediation. We have requested Chubb to participate in the mediation, and as of this date, you have advised me that Chubb is still evaluating its coverage position. I have advised you that Plaintiff has filed a motion for class certification, which is presently being briefed. This motion is set for argument on August 10, 2004. Plaintiff's counsel has stated that if they obtain class certification, they may not be interested in settling. Therefore, it is imperative that we get a mediation going as soon as possible.

　　　In that the demand of $6,000,000.00 is well within policy limits, New Century requests that Chubb settle this matter within policy limits.

　　　　　　　　　　　Very truly yours,

　　　　　　　　　　　Bart T. Murphy

BTM/jdb
Enclosure
cc:　Mark Malovos, Esq., New Century (via e-mail)

Wildman, Harrold, Allen & Dixon LLP 1392036

Exhibit M



# GAUNTLETT &
## ASSOCIATES
### ATTORNEYS AT LAW

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

Our File Number:

10465-004

June 30, 2004

### CONFIDENTIAL INSURED-INSURER COMMUNICATION

This communication is an insured-insurer communication within the meaning of Civil Code
§ 2860(d), which provides in relevant part: "Any information disclosed by the insured or by
the independent counsel is not a waiver of the privilege as to any other party."

## VIA FACSIMILE & U.S. MAIL
## (310) 203-4850 (LA) (312) 627-1717

Daniel J. Cunningham
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, IL 60606

|  |  |
|---|---|
| Re: | *Paul Bernstein v. New Century Mortgage*<br>**Case No. 02 CH 7745 Cook County, IL** |
| Claim No.: | **0405-03-091557** |
| Your File No.: | **2246-42** |

Dear Mr. Cunningham:

Our firm has been retained as coverage counsel for New Century Mortgage Corporation with
respect to the above-referenced matter. We are in receipt of a copy of your June 22, 2004
correspondence to Bart Murphy, our client's defense counsel in the *Bernstein* matter.

New Century Mortgage acknowledges that Northern Insurance Company agreed to defend
the *Bernstein* matter under a reservation of rights. As you are well aware, the duty to defend arises
as a result of the underlying complaint allegations stating a claim that may result in potential
indemnity being owed under the policy. *Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 295
(1993). Based upon the fact that Great Northern has acknowledged its defense duty, and continues
to recognize its defense duty, your statement that Great Northern will not indemnify New Century
Mortgage is not only perplexing but obviously premature. As you are undoubtedly aware, the duty
of Great Northern to indemnify New Century is not determined until a final judgment has been

10465-004-06/30/2004-144779.1



GAUNTLETT &
ASSOCIATES
ATTORNEYS AT LAW

Daniel J. Cunningham
June 30, 2004
Page 2

entered against New Century for which there would be no coverage. Apparently, Great Northern has confused its duty to indemnify with its duty to settle.

The duty to settle cannot be equated with an insurer's obligation to indemnify the insured for a judgment. An insurer must accept any reasonable offer to settle a potentially covered suit against its insured. *Blue Ridge Ins. Co. v. Jacobson*, 25 Cal. 4th 489, 498 (2001). Whereas questions of indemnity turn exclusively on what is (or is not) actually covered. These considerations play no part in evaluating an insured's settlement obligation. *Johansen v. Cal. State Auto Assn.*, 15 Cal. 3d 9, 16 (1975) (an insurer cannot consider coverage issues in evaluating the reasonableness of a settlement opportunity.) The obligation to accept a reasonable settlement offer is a prophylactic safeguard designed to protect the insured against adverse consequences which might occur if the litigation continues.

Great Northen must analyze whether a particular settlement offer is reasonable and weigh the amount of the proposed settlement against the likelihood and extent of the adverse consequences sought to be avoided. Indemnity is simply not part of the equation. An insurer's duty to settle does not typically appear in the policy. It is, however, born out of the combined effect of the insurer's express promise to defend and indemnify the insured, *Kransco v. American Empire Surplus Lines Ins.*, 23 Cal. 4th 390, 401 (2000), in combination with its implied promise of good faith and fair dealing. *Comunale v. Traders and Gen. Ins. Co.*, 50 Cal. 2d 654, 658-59 (1958).

Here, New Century faces significant exposure, well beyond the policy limits of Great Northern should plaintiff succeed in having a class certified, based upon the manner in which damages are assessed under the Telephone Consumer Protection Act ("TCPA"). As such, Great Northern has an obligation to place the interests of its insured above its own by accepting a reasonable settlement. The damages faced by New Century could exceed $300 million. The $6 million settlement offer is not only reasonable, but the fact plaintiff is willing to attend the mediation to pursue settlement of the matter further indicates the reasonableness of plaintiff in attempting to resolve the claim.

Should Great Northern continue to take the position that it will not participate in mediation due to its misunderstanding of the difference between its duty to settle and its duty indemnify, any judgment that is entered against New Century in excess of the policy limits could result in Chubb being responsible for payment of those amounts.

10465-004-06/30/2004-144779.1



Daniel J. Cunningham
June 30, 2004
Page 3

Since Great Northern is unwilling to participate in the mediation, New Century requests that Great Northern consent to any settlement that is reached between New Century and plaintiff. While New Century disputes any right Great Northern would have to assert the breach of a condition should it reach a settlement with plaintiff, any dispute as to that issue can be overcome by Great Northern simply consenting to any settlement based upon its own refusal to undertake its duty to settle.

Given the fact that all parties in the *Bernstein* Action are amenable to proceeding to a mediation forthwith, New Century anticipates Great Northern's prompt response to its request. Please advise my office no later than July 7, 2004 as to whether or not Great Northern has reconsidered its position, or whether Great Northern will simply consent to New Century settling the *Bernstein* matter.

As to your request for defense counsel's invoices, those are being sent with the mail copy of this correspondence. We look forward to receiving Great Northern's payment for the defense expenses incurred by New Century.

I look forward to receiving Great Northern's response to New Century's request.

Very truly yours,

M. Catherine Reid

MCR:arm

Enclosures (w/mail copy only)

cc:    Monika McCarthy, Esq.
        Mark Malovos, Esq.
        Bart Murphy, Esq.
        Brenda Darkow

10465-004-06/30/2004-144779.1



# GAUNTLETT & ASSOCIATES
### ATTORNEYS AT LAW

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

Our File Number:

10465-004

June 30, 2004

### CONFIDENTIAL INSURED-INSURER COMMUNICATION

This communication is an insured-insurer communication within the meaning of Civil Code § 2860(d), which provides in relevant part: "Any information disclosed by the insured or by the independent counsel is not a waiver of the privilege as to any other party."

## VIA FACSIMILE & U.S. MAIL
### (310) 203-4850 (LA) (312) 627-1717

Daniel J. Cunningham
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, IL 60606

| | |
|---|---|
| Re: | ***Paul Bernstein v. New Century Mortgage*** **Case No. 02 CH 7745 Cook County, IL** |
| Claim No.: | **0405-03-091557** |
| Your File No.: | **2246-42** |

Dear Mr. Cunningham:

Our firm has been retained as coverage counsel for New Century Mortgage Corporation with respect to the above-referenced matter. We are in receipt of a copy of your June 22, 2004 correspondence to Bart Murphy, our client's defense counsel in the *Bernstein* matter.

New Century Mortgage acknowledges that Northern Insurance Company agreed to defend the *Bernstein* matter under a reservation of rights. As you are well aware, the duty to defend arises as a result of the underlying complaint allegations stating a claim that may result in potential indemnity being owed under the policy. *Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 295 (1993). Based upon the fact that Great Northern has acknowledged its defense duty, and continues to recognize its defense duty, your statement that Great Northern will not indemnify New Century Mortgage is not only perplexing but obviously premature. As you are undoubtedly aware, the duty of Great Northern to indemnify New Century is not determined until a final judgment has been

10465-004-07/01/2004-145240.1



**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Daniel J. Cunningham
June 30, 2004
Page 2

entered against New Century for which there would be no coverage. Apparently, Great Northern has confused its duty to indemnify with its duty to settle.

The duty to settle cannot be equated with an insurer's obligation to indemnify the insured for a judgment. An insurer must accept any reasonable offer to settle a potentially covered suit against its insured. *Blue Ridge Ins. Co. v. Jacobson*, 25 Cal. 4th 489, 498 (2001). Whereas questions of indemnity turn exclusively on what is (or is not) actually covered. These considerations play no part in evaluating an insured's settlement obligation. *Johansen v. Cal. State Auto Assn.*, 15 Cal. 3d 9, 16 (1975) (an insurer cannot consider coverage issues in evaluating the reasonableness of a settlement opportunity.) The obligation to accept a reasonable settlement offer is a prophylactic safeguard designed to protect the insured against adverse consequences which might occur if the litigation continues.

Great Northen must analyze whether a particular settlement offer is reasonable and weigh the amount of the proposed settlement against the likelihood and extent of the adverse consequences sought to be avoided. Indemnity is simply not part of the equation. An insurer's duty to settle does not typically appear in the policy. It is, however, born out of the combined effect of the insurer's express promise to defend and indemnify the insured, *Kransco v. American Empire Surplus Lines Ins.*, 23 Cal. 4th 390, 401 (2000), in combination with its implied promise of good faith and fair dealing. *Comunale v. Traders and Gen. Ins. Co.*, 50 Cal. 2d 654, 658-59 (1958).

Here, New Century faces significant exposure, well beyond the policy limits of Great Northern should plaintiff succeed in having a class certified, based upon the manner in which damages are assessed under the Telephone Consumer Protection Act ("TCPA"). As such, Great Northern has an obligation to place the interests of its insured above its own by accepting a reasonable settlement. The damages faced by New Century could exceed $300 million. The $6 million settlement offer is not only reasonable, but the fact plaintiff is willing to attend the mediation to pursue settlement of the matter further indicates the reasonableness of plaintiff in attempting to resolve the claim.

Should Great Northern continue to take the position that it will not participate in mediation due to its misunderstanding of the difference between its duty to settle and its duty indemnify, any judgment that is entered against New Century in excess of the policy limits could result in Chubb being responsible for payment of those amounts.



**GAUNTLETT &**
**ASSOCIATES**
ATTORNEYS AT LAW

Daniel J. Cunningham
June 30, 2004
Page 3

Since Great Northern is unwilling to participate in the mediation, New Century requests that Great Northern consent to any settlement that is reached between New Century and plaintiff. While New Century disputes any right Great Northern would have to assert the breach of a condition should it reach a settlement with plaintiff, any dispute as to that issue can be overcome by Great Northern simply consenting to any settlement based upon its own refusal to undertake its duty to settle.

Given the fact that all parties in the *Bernstein* Action are amenable to proceeding to a mediation forthwith, New Century anticipates Great Northern's prompt response to its request. Please advise my office no later than July 7, 2004 as to whether or not Great Northern has reconsidered its position, or whether Great Northern will simply consent to New Century settling the *Bernstein* matter.

As to your request for defense counsel's invoices, those are being sent with the mail copy of this correspondence. We look forward to receiving Great Northern's payment for the defense expenses incurred by New Century.

I look forward to receiving Great Northern's response to New Century's request.

Very truly yours,

/s/ M. Catherine Reid

M. Catherine Reid

MCR:arm

Enclosures (w/mail copy only)

cc:     Monika McCarthy, Esq.
        Mark Malovos, Esq.
        Bart Murphy, Esq.
        Brenda Darkow

10465-004-07/01/2004-145240.1

# WILDMAN, HARROLD, ALLEN & DIXON LLP

2300 Cabot Drive, Suite 455, Lisle, Illinois 60532
(630) 955-0555

Tax ID. No. 36-2615899

SEPTEMBER 17, 2003
INVOICE NO. 239507

CENTURY MORTGAGE CORPORATION
IKA MCCARTHY, ESQ.
00 VON KARMAN
INE, CA  92612

E NO. N0179.00001

HE MATTER OF:

BERNSTEIN, NEW CENTURY MORTGAGE

INTERIM STATEMENT FOR PROFESSIONAL SERVICES
RENDERED THROUGH AUGUST 31, 2003.

| DATE | NAME | HOURS | DESCRIPTION |
| --- | --- | --- | --- |
| /01/03 | SSC | 0.10 | Telephone conference with Ms. Cobalovic regarding insurance funded settlement. |
| 3/01/03 | BTM | 0.25 | Telephone conference with Ms. McCarthy. |
| 3/02/03 | BTM | 0.75 | Draft letter to Ms. Santandrea regarding status of matter; review e-mail message. |
| 8/07/03 | SSC | 0.10 | Review correspondence regarding discovery and litigation status; telephone conference with Mr. Murphy regarding same. |
| 8/08/03 | SSC | 0.10 | Telephone conference with Ed Malone regarding potential arguments to oppose class certification; telephone conference with Ms. Wymore regarding same. |
| 08/13/03 | SSC | 0.30 | Review and analyze case law addressing TCPA class certification and recent California opinion regarding constitutionality and private right of action. |
| 08/14/03 | BTM | 0.40 | Draft e-mail message to Ms. McCarthy regarding Hooters decision; review of Hooters coverage decision and analysis of same. |

WILDMAN, HARROLD, ALLEN & DIXON LLP

NSTEIN, NEW CENTURY MORTGAGE
E NO. N0179.00001

SEPTEMBER 17, 2003
INVOICE NO. 239507
PAGE    2

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| /29/03 | BTM | 0.50 | Telephone conference with Mr. Najewski of Chubb regarding coverage issues; review correspondence from Mr. Kim regarding coverage; review status of matter. |

|  | 2.50 | TOTAL HOURS |
|--|------|-------------|

SUMMARY OF PROFESSIONAL SERVICES RENDERED:

|  |  |  |  |  |
|--|--|--|--|--|
| SAMUEL S. COHEN | 0.60 | hours at | $240.00 = | 144.00 |
| BART T. MURPHY | 1.90 | hours at | $320.00 = | 608.00 |

CURRENT FEES                                                    752.00

DISBURSEMENTS INCURRED:

POSTAGE                                                          3.13

CURRENT DISBURSEMENTS                                            3.13

CURRENT FEES AND DISBURSEMENTS                                 755.13

OUTSTANDING INVOICES

| 07/24/03 | 234688 | 1313.06 |
| 08/14/03 | 236568 | 848.00 |

PRIOR BALANCE DUE                                            2,161.06

TOTAL BALANCE DUE                                            2,916.19
                                                          ============

PLEASE INCLUDE YOUR REMITTANCE ADVICE WITH YOUR PAYMENT

WILDMAN, HARROLD, ALLEN & DIXON LLP

SEPTEMBER 17, 2003
INVOICE NO. 239507
PAGE   3

NSTEIN, NEW CENTURY MORTGAGE
E NO. N0179.00001

# WILDMAN, HARROLD, ALLEN & DIXON LLP

2300 Cabot Drive, Suite 455, Lisle, Illinois 60532
(630) 955-0555

Tax ID. No. 36-2615899

OCTOBER 31, 2003
INVOICE NO. 243285

CENTURY MORTGAGE CORPORATION
IKA MCCARTHY, ESQ.
00 VON KARMAN
INE, CA 92612

E NO. N0179.00001

HE MATTER OF:

BERNSTEIN, NEW CENTURY MORTGAGE

INTERIM STATEMENT FOR PROFESSIONAL SERVICES
RENDERED THROUGH SEPTEMBER 30, 2003.

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| /02/03 | SSC | 0.20 | Review correspondence regarding discovery, briefing and status. |
| 9/04/03 | SSC | 0.10 | Review and analyze plaintiff's response to consolidate motion to dismiss ICFA claim and related documents. |
| 9/05/03 | SSC | 0.10 | Review and analyze draft of Defendants' Reply in Support of Motion to Dismiss ICFA claim. |
| 9/08/03 | SSC | 0.10 | Telephone conference with Mr. Murphy regarding discovery status. |
| 9/16/03 | BTM | 0.25 | Review e-mails from Ms. Santandrea regarding discovery. |
| 9/17/03 | SSC | 0.30 | Review correspondence and documents regarding discovery. |
| 9/17/03 | BTM | 0.75 | Telephone conference with Ms. Darkow regarding publicly filed document on status of case for use in SEC filing; review of fax received from Ms. Darkow and enclosed fax.com documents; attention to locating documents from Ms. Darkow and faxing to her. |
| 09/18/03 | SSC | 0.30 | Prepare for and attend motion and status hearing. |

WILDMAN, HARROLD, ALLEN & DIXON LLP

NSTEIN, NEW CENTURY MORTGAGE
E NO. N0179.00001

OCTOBER 31, 2003
INVOICE NO. 243285
PAGE    2

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| /18/03 | BTM | 1.50 | Review of briefs on motion to dismiss ICFA; travel to and from court; appear for status hearing before Judge McGann and for hearing on motion to dismiss ICFA claim. |
| /19/03 | SSC | 0.30 | Review and respond to correspondence regarding discovery; review earlier documents regarding same. |
| /20/03 | BTM | 0.80 | Review e-mails from Ms. Santandrea and respond to same; investigation regarding Bernstein's practice in response to inquiry by Ms. Santandrea. |
| 9/22/03 | SSC | 0.20 | Review correspondence regarding discovery. |
| 9/23/03 | BTM | 0.30 | Review of Case Management Order No. 8; review of fax.com documents. |
| 9/30/03 | BTM | 0.20 | Initial review of amended complaint filed by plaintiff's counsel. |

5.40    TOTAL HOURS

SUMMARY OF PROFESSIONAL SERVICES RENDERED:

SAMUEL S. COHEN          1.60  hours at  $240.00 =       384.00
BART T. MURPHY           3.80  hours at  $320.00 =     1,216.00

CURRENT FEES                                           1,600.00

CURRENT FEES AND DISBURSEMENTS               1,600.00

# WILDMAN, HARROLD, ALLEN & DIXON LLP

2300 Cabot Drive, Suite 455, Lisle, Illinois 60532

Tax ID. No. 36-2615899

## REMITTANCE ADVICE

OCTOBER 31, 2003

INVOICE NO. 243285

CENTURY MORTGAGE CORPORATION
IKA MCCARTHY, ESQ.
00 VON KARMAN
'INE, CA 92612

E NO. N0179.00001

HE MATTER OF:

BERNSTEIN, NEW CENTURY MORTGAGE

1,600.00

RRENT FEES AND DISBURSEMENTS

JTSTANDING INVOICES

| 07/24/03 | 234688 | 1313.06 |
| 08/14/03 | 236568 | 848.00 |
| 09/17/03 | 239507 | 755.13 |

PRIOR BALANCE DUE                    2,916.19

TOTAL BALANCE DUE                    4,516.19
                                     ============

PLEASE RETURN THIS SHEET WITH PAYMENT

2003 13:54 FAX 312 201 2555



# WILDMAN, HARROLD, ALLEN & DIXON LLP

2300 Cabot Drive, Suite 455, Lisle, Illinois 60532
(630) 955-0555

Tax ID. No. 36-2615899

NOVEMBER 20, 2003
INVOICE NO. 244850

CENTURY MORTGAGE CORPORATION
KA MCCARTHY, ESQ.
O VON KARMAN
NE, CA 92612

NO. N0179.00001

E MATTER OF:

BERNSTEIN, NEW CENTURY MORTGAGE

INTERIM STATEMENT FOR PROFESSIONAL SERVICES
RENDERED THROUGH OCTOBER 31. 2003.

| ATE | NAME | HOURS | DESCRIPTION |
|-----|------|-------|-------------|
| 01/03 | SSC | 0.10 | Telephone conference with Mr. Blocker regarding potential cooperative action in defense of TCPA claims. |
| 06/03 | BTM | 2.30 | Initial review of motion for class certification; telephone conference with Ms. McCarthy and Ms. Santandrea regarding status of matter, status of resolution of insurance coverage; review recent orders to answer questions posed by Ms. McCarthy and Ms. Santandrea; draft lengthy e-mail to Ms. McCarthy and Ms. Santandrea including copies of court's recent order; review e-mails sent to Ms. Santandrea; draft e-mail to Ms. Darkow regarding fax I did not receive. |
| 10/03 | BTM | 1.50 | Review of motion for class certification and second amended complaint filed by plaintiff; review of status of matter. |
| 11/03 | BTM | 1.50 | Telephone call to Ms. Santandrea; draft e-mail message; review and analysis of documentation regarding fax agreements sent by Ms. Darkow; analysis regarding potential strategic moves; review of motion for class certification and 2nd Amended Complaint. |

/2003 13:54 FAX 312 201 2555

WILDMAN, HARROLD, ALLEN & DIXON LLP

NOVEMBER 20, 2003
INVOICE NO. 244850
PAGE   2

RNSTEIN, NEW CENTURY MORTGAGE
LE NO. N0179.00001

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| /13/03 | BTM | 0.70 | Conference with Mr. Cohen; draft e-mail messages to Ms. Santandrea; review of fax.com contract. |
| /14/03 | BTM | 0.80 | Telephone conferences with Ms. Wallace regarding information requested for SEC filing; review e-mails from Ms. Wallace and Ms. Darkow and respond to same. |
| /17/03 | BTM | 0.25 | Telephone conference with Ms. Wymore regarding status of matter. |
| /20/03 | BTM | 1.25 | Telephone conference with Ms. Clark regarding extension of time for NCEN to file responsive pleading to Second Amended Complaint and discovery issues; review status of matter; telephone conference with Ms. McCarthy regarding status of matter and extension of time to file responsive pleading. |
| 0/21/03 | BTM | 0.40 | Draft e-mail to Ms. McCarthy regarding order entered extending date for responsive pleading; draft letter to plaintiff's counsel regarding entry of order extending date for responsive pleading. |
| 0/23/03 | SSC | 0.10 | Review plaintiff's motion demanding discovery of insurance coverage and related case law. |

8.90    TOTAL HOURS

SUMMARY OF PROFESSIONAL SERVICES RENDERED:

| | | | | |
|---|---|---|---|---|
| SAMUEL S. COHEN | 0.20 | hours at | $240.00 = | 48.00 |
| BART T. MURPHY | 8.70 | hours at | $320.00 = | 2,784.00 |

CURRENT FEES                                    2,832.00

WILD_N, HARROLD, ALLEN & DIXO_ LLP

NOVEMBER 20, 2003
INVOICE NO. 244850
PAGE    3

NSTEIN, NEW CENTURY MORTGAGE
E NO. N0179.00001

DISBURSEMENTS INCURRED:

|  |  |
|---|---:|
|  | 1.50 |
| FACSIMILE CHARGES | 40.92 |
| LEXIS | 2.85 |
| REPRODUCTION EXPENSE |  |

CURRENT DISBURSEMENTS                                45.27

CURRENT FEES AND DISBURSEMENTS                    2,877.27

OUTSTANDING INVOICES

| 07/24/03 | 234688 ✓ | 1313.06 |
|---|---|---|
| 08/14/03 | 236568 ✓ | 848.00 |
| 09/17/03 | 239507 ✓ | 755.13 |
| 10/31/03 | 243285 ✓ | 1600.00 |

PRIOR BALANCE DUE                                  4,516.19

TOTAL BALANCE DUE                                  7,393.46
                                                ==============

PLEASE INCLUDE YOUR REMITTANCE ADVICE WITH YOUR PAYMENT



# WILDMAN, HARROLD, ALLEN & DIXON LLP

2300 Cabot Drive, Suite 455, Lisle, Illinois  60532
(630) 955-0555

Tax ID. No. 36-2615899

APRIL 16, 2004
INVOICE NO.  256720

NEW CENTURY MORTGAGE CORPORATION
MONIKA MCCARTHY, ESQ.
VP & GENERAL COUNSEL
18400 VON KARMAN
IRVINE, CA  92612

FILE NO. N0179.00001

IN THE MATTER OF:

BERNSTEIN, NEW CENTURY MORTGAGE

INTERIM STATEMENT FOR PROFESSIONAL SERVICES
RENDERED THROUGH MARCH 31, 2004.

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| 03/01/04 | COB | 1.30 | Review of who's calling phone list per counsel. |
| 03/01/04 | BTM | 1.30 | Conference with Ms. Bartelt regarding doing stats on Who's Calling Report; draft e-mail messages to Ms. McCarthy, et al. regarding Who's Calling report; review of Who's Calling call waiting report received from plaintiff's counsel. |
| 03/02/04 | BTM | 0.30 | Telephone conference with plaintiff's counsel regarding motion to extend class discovery; review of plaintiff's motion to extend class discovery; review of e-mail from Ms. Darkow and respond. |
| 03/04/04 | SSC | 0.20 | Telephone conference with Mr. Murphy regarding status. |
| 03/04/04 | BTM | 1.50 | Telephone conference with Ms. McCarthy, Mr. Malovos and Ms. Darkow regarding status of matter and strategy; review of status of matter; review motion to withdraw filed by Mary Ann Wymore; review of reservation of rights letter from Chubb. |

## WILDMAN, HARROLD, ALLEN & DIXON LLP

BERNSTEIN, NEW CENTURY MORTGAGE
FILE NO. N0179.00001

APRIL 16, 2004
INVOICE NO. 256720
PAGE    2

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| 03/05/04 | BTM | 0.50 | Telephone call to Ms. Wymore and draft e-mail to Ms. Wymore; telephone conference with Mr. Najewski of Chubb regarding status of matter and issue of mediator. |
| 03/08/04 | BTM | 0.20 | Review e-mails regarding insurance coverage issue; draft e-mail to Ms. McCarthy. |
| 03/24/04 | BTM | 0.20 | Initial review of correspondence from plaintiff's counsel regarding discovery disputes; review of e-mails from Mr. Kennedy regarding Edelman's FOIA request to FCC. |
| 03/30/04 | SSC | 0.40 | Attend case management conference and argument on current master motions to dismiss on grounds that TCPA violates 1st Amendment, is unconstitutionally harsh and lacks private right of action. |
| 03/31/04 | SSC | 0.20 | Review and respond to defense counsel in consolidated cases regarding pleading logistics; telephone conference with Mr. Murphy regarding status; review status of class certification case law. |

6.10    TOTAL HOURS

SUMMARY OF PROFESSIONAL SERVICES RENDERED:

| | | | | |
|---|---|---|---|---|
| CHERYL O. BARTELT | 1.30 | hours at | $120.00 = | 156.00 |
| SAMUEL S. COHEN | 0.80 | hours at | $280.00 = | 224.00 |
| BART T. MURPHY | 4.00 | hours at | $340.00 = | 1,360.00 |

CURRENT FEES                                      1,740.00

DISBURSEMENTS INCURRED:

REPRODUCTION EXPENSE                              16.50

# WILDMAN, HARROLD, ALLEN & DIXON LLP

2300 Cabot Drive, Suite 455, Lisle, Illinois 60532
(630) 955-0555

Tax ID. No. 36-2615899

FEBRUARY 27, 2004
INVOICE NO. 252981

NEW CENTURY MORTGAGE CORPORATION
MONIKA MCCARTHY, ESQ.
VP & GENERAL COUNSEL
18400 VON KARMAN
IRVINE, CA  92612

FILE NO. N0179.00001

IN THE MATTER OF:

BERNSTEIN, NEW CENTURY MORTGAGE

INTERIM STATEMENT FOR PROFESSIONAL SERVICES
RENDERED THROUGH JANUARY 31, 2004.

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| 01/02/04 | BTM | 3.50 | Review of subpoena issued to Who's Calling for records regarding 800 number on NCEN fax; research regarding Who's Calling, Inc.; review of NCEN website and public documents for references to Who's Calling; draft e-mail. |
| 01/03/04 | SSC | 1.30 | Review correspondence; review and analyze plaintiff's pleadings and additional discovery. |
| 01/05/04 | BTM | 0.70 | Telephone conference with Ms. Darkow regarding scheduling Nese interview; review of responses sent to FCC; review of fax.com Order of Forfeiture. |
| 01/06/04 | BTM | 2.50 | Telephone conference with Ms. McCarthy, Ms. Santandrea, Mr. Malovos, Ms. Darkow and Mr. Nese regarding factual background and strategy issues; draft letter to Ms. Clark regarding depositions of reps in branches; initial review of third discovery requests. |
| 01/07/04 | BTM | 0.20 | Draft letter to Ms. Clark regarding depositions of representatives noticed for 1/19. |
| 01/10/04 | BTM | 0.50 | Analysis of coverage litigation in Chicago. |



## WILDMAN, HARROLD, ALLEN & DIXON LLP

BERNSTEIN, NEW CENTURY MORTGAGE
FILE NO. N0179.00001

FEBRUARY 27, 2004
INVOICE NO. 252981
PAGE    2

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| 01/12/04 | BTM | 0.70 | Draft e-mail to Ms. McCarthy et al. regarding Supreme Court's denial of fax.com's cert. petition in 8th Circuit case; review of e-mails from Ms. Darkow and respond to same; review of DOJ petition to intervene in Charter One motion; draft e-mail to Ms. McCarthy et al. regarding status of Frank Nese's efforts. |
| 01/13/04 | BTM | 1.60 | Drafting regarding response to plaintiff's second request for production; review of documents to respond to request; draft e-mail to NCEN regarding draft response. |
| 01/16/04 | BTM | 0.20 | Telephone conference with Ms. Darkow regarding discovery issues. |
| 01/20/04 | SSC | 0.10 | Review correspondence regarding discovery. |
| 01/21/04 | BTM | 0.20 | Review of e-mails relating to FCC FOIA request and respond to same. |
| 01/21/04 | BTM | 0.20 | Review of e-mails from NCEN regarding FCC ruling on Edelman's FOIA request and respond to same. |
| 01/22/04 | BTM | 0.20 | Review of e-mails regarding FCC FOIA issue. |
| 01/27/04 | BTM | 0.60 | Draft e-mail to plaintiff's counsel regarding discovery requests; review of discovery requests from plaintiff. |
| 01/28/04 | BTM | 0.60 | Telephone conference with Ms. Clark regarding agreement to extend time on discovery responses 12/30 and 1/6 and regarding subpoena to Who's Calling and potential mediation; draft e-mail to Ms. Clark confirming our agreement on discovery issues; review of requests to admit. |
| 01/29/04 | BTM | 0.25 | Review of e-mails from Ms. McCarthy and Mr. Kennedy on FCC issues. |
| 01/30/04 | BTM | 0.50 | Draft e-mail to Mr. Kennedy regarding scope of documents Edelman getting from FCC; review of documents received from Mr. Kennedy which FCC will be turning over to Edelman. |



## WILDMAN, HARROLD, ALLEN & DIXON LLP

BERNSTEIN, NEW CENTURY MORTGAGE
FILE NO. N0179.00001

FEBRUARY 27, 2004
INVOICE NO. 252981
PAGE    3

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|

13.85    TOTAL HOURS

SUMMARY OF PROFESSIONAL SERVICES RENDERED:

| | | | |
|---|---|---|---|
| SAMUEL S. COHEN | 1.40 | hours at $280.00 = | 392.00 |
| BART T. MURPHY | 12.45 | hours at $340.00 = | 4,233.00 |

CURRENT FEES                                    4,625.00

DISBURSEMENTS INCURRED:

| | |
|---|---|
| FACSIMILE CHARGES | 1.50 |
| POSTAGE | 4.75 |
| REPRODUCTION EXPENSE | 6.30 |
| LONG DISTANCE TELEPHONE | .75 |
| 01/23/04 NEW CENTURY MORTGAGE/BERNSTEIN - 1/2 OF TRANSPORTATION COSTS TO ATTEND MOTION HEARING IN DALEY CENTER, PARKING, TRAIN AND TAXI TO COURT 12/29 - BART MURPHY | 6.40 |

CURRENT DISBURSEMENTS                              19.70

CURRENT FEES AND DISBURSEMENTS                  4,644.70

TOTAL BALANCE DUE                               4,644.70
                                              =============

PLEASE INCLUDE YOUR REMITTANCE ADVICE WITH YOUR PAYMENT



# WILDMAN, HARROLD, ALLEN & DIXON LLP

## 2300 Cabot Drive, Suite 455, Lisle, Illinois 60532
## (630) 955-0555

Tax ID. No. 36-2615899

MARCH 9, 2004
INVOICE NO. 253886

NEW CENTURY MORTGAGE CORPORATION
MONIKA MCCARTHY, ESQ.
VP & GENERAL COUNSEL
18400 VON KARMAN
IRVINE, CA  92612

FILE NO. N0179.00001

IN THE MATTER OF:

BERNSTEIN, NEW CENTURY MORTGAGE

INTERIM STATEMENT FOR PROFESSIONAL SERVICES
RENDERED THROUGH FEBRUARY 29, 2004.

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| 02/02/04 | BTM | 0.70 | Preliminary review of DOJ brief in support of constitutionality of TCPA; review e-mail from Ms. McCarthy regarding FCC FOIA request by Edelman and respond to same; review e-mail from Ms. Wallace requesting status and reply to same providing status. |
| 02/05/04 | BTM | 0.30 | Draft e-mail to Ms. McCarthy regarding Nese e-mail and fax.com records; review e-mail from Mr. Nese regarding records maintained by NCEN. |
| 02/12/04 | BTM | 4.60 | Drafting regarding responses to 12/29 requests to admit; review of 3rd Q 10-K to respond to requests to admit; review of documents to respond; drafting regarding responses to 1/6 requests to admit. |
| 02/13/04 | SSC | 0.10 | Telephone conference with Mr. Murphy regarding RTAs. |
| 02/13/04 | BTM | 0.60 | Review of interrogatories and request to produce and drafting regarding responses. |
| 02/17/04 | BTM | 0.20 | Telephone call to plaintiff's counsel requesting extension; review e-mail message from Mr. Malovos regarding need for extension of time. |

## WILDMAN, HARROLD, ALLEN & DIXON LLP

BERNSTEIN, NEW CENTURY MORTGAGE
FILE NO. N0179.00001

MARCH 9, 2004
INVOICE NO. 253886
PAGE    2

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| 02/18/04 | SSC | 0.90 | Review draft discovery responses and correspondence related to same; telephone conference with Ms. Clark regarding extension of time to respond; e-mail Mr. Murphy regarding same. |
| 02/18/04 | BTM | 0.30 | Telephone conference with Ms. Darkow regarding discovery issues; draft e-mail message to Ms. Clark confirming extension of time on discovery requests. |
| 02/23/04 | BTM | 0.20 | Telephone conference with Mr. Malovos regarding Frank Nese's 2d hand contact regarding fax.com record retention issues. |
| 02/24/04 | BTM | 2.10 | Drafting regarding responses to requests for production and interrogatories; review e-mails from Mr. Malovos and respond to same on discovery issues. |
| 02/25/04 | BTM | 2.00 | Telephone conferences with Ms. Darkow regarding verifications for RFAs; review of e-mail from Mr. Nese regarding confirmation on fax.com; revise and edit responses to interrogatories and requests for production. |

12.00    TOTAL HOURS

SUMMARY OF PROFESSIONAL SERVICES RENDERED:

|  |  |  |  |  |
|--|--|--|--|--|
| SAMUEL S. COHEN | 1.00 | hours at | $280.00 = | 280.00 |
| BART T. MURPHY | 11.00 | hours at | $340.00 = | 3,740.00 |

CURRENT FEES                                    4,020.00

DISBURSEMENTS INCURRED:

| POSTAGE | 1.75 |
|---------|------|
| REPRODUCTION EXPENSE | 12.00 |



## WILDMAN, HARROLD, ALLEN & DIXON LLP

MARCH 9, 2004
INVOICE NO. 253886
PAGE    3

BERNSTEIN, NEW CENTURY MORTGAGE
FILE NO. N0179.00001

CURRENT DISBURSEMENTS                                    13.75
                                                    _____

CURRENT FEES AND DISBURSEMENTS                       4,033.75

OUTSTANDING INVOICES

02/27/04           252981           4644.70

                                    _____

PRIOR BALANCE DUE                                    4,644.70
                                                    _____

TOTAL BALANCE DUE                                    8,678.45
                                                    =============

PLEASE INCLUDE YOUR REMITTANCE ADVICE WITH YOUR PAYMENT

# WILDMAN, HARROLD, ALLEN & DIXON LLP

2300 Cabot Drive, Suite 455, Lisle, Illinois  60532
(630) 955-0555

Tax ID. No. 36-2615899

MAY 14, 2004
INVOICE NO. 259244

NEW CENTURY MORTGAGE CORPORATION
MONIKA MCCARTHY, ESQ.
VP & GENERAL COUNSEL
18400 VON KARMAN
IRVINE, CA  92612

FILE NO. N0179.00001

IN THE MATTER OF:

BERNSTEIN, NEW CENTURY MORTGAGE

INTERIM STATEMENT FOR PROFESSIONAL SERVICES
RENDERED THROUGH APRIL 30, 2004.

| DATE | NAME | HOURS | DESCRIPTION |
| --- | --- | --- | --- |
| 04/12/04 | SSC | 0.20 | Review correspondence from Ms. Clark regarding settlement approach. |
| 04/13/04 | BTM | 1.20 | Review of plaintiff's recent correspondence regarding settlement and investigate case they cite as example for settlement. |
| 04/14/04 | SSC | 0.30 | Review and respond to e-mail, fax and telephone calls with Mr. Murphy and Ms. Clark regarding status of discovery, settlement, etc. |
| 04/15/04 | SSC | 0.20 | Telephone conference with Mr. Blocker regarding issues related to class certification and coverage; review pleadings and correspondence regarding same. |
| 04/16/04 | SSC | 0.10 | Review class notice in Gold Seal Termite v. Prime TV. |
| 04/16/04 | BTM | 0.50 | Review of correspondence from Edelman firm regarding Prime TC settlement; review of other fax settlements and Edelman motions in Schlosser case where firm accepted assignment of insurance rights. |
| 04/20/04 | SSC | 0.20 | Attend case management conference; telephone conference with Mr. Murphy regarding same. |

# WILDMAN, HARROLD, ALLEN & DIXON LLP

BERNSTEIN, NEW CENTURY MORTGAGE
FILE NO. N0179.00001

MAY 14, 2004
INVOICE NO. 259244
PAGE    2

| DATE | NAME | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| 04/27/04 | BTM | 0.30 | Telephone conference with Ms. Clark regarding schedule for briefing of class cert. issue and regarding settlement of case. |
| 04/30/04 | BTM | 2.00 | Draft e-mail to Mr. Malovos; review of motion to set briefing schedule; research regarding class certification issues. |

5.00    TOTAL HOURS

SUMMARY OF PROFESSIONAL SERVICES RENDERED:

|  |  |  |  |  |
|---|---|---|---|---|
| SAMUEL S. COHEN | 1.00 | hours at | $280.00 = | 280.00 |
| BART T. MURPHY | 4.00 | hours at | $340.00 = | 1,360.00 |

CURRENT FEES    1,640.00

DISBURSEMENTS INCURRED:

04/29/04 (1/5 SHARE) TRANSCRIPT OF PROCEEDINGS 03/30/04     55.80
         - ESQUIRE DEPOSITION SERVICES

CURRENT DISBURSEMENTS    55.80

CURRENT FEES AND DISBURSEMENTS    1,695.80

# GREENSFELDER
### ATTORNEYS AT LAW

Greensfelder, Hemker & Gale, PC
2000 Equitable Building
10 South Broadway
St. Louis, MO 63102
T: 314-241-9090
F: 314-241-8624

FEIN: 43-1313567

September 30, 2003
69204
Invoice No.    200116

New Century Mortgage Corporation
c/o Ms. Kelly S. Herzik
Morris, Laing, Evans, Brock & Kennedy, Chtd.
Old Town Square
300 N. Mead, Suite 200
Wichita, KS  67202-2722
For legal services rendered through August 31, 2003

Psychological Associates

*Additional Fax issue.*

| Date | | Description | Hours |
|---|---|---|---|
| 08/23/03 | S. Harding | Review file to determine status of the matter. | .1 |
| | | Total Hours | .1 |
| | Fees This Matter | | 10.00 |
| | Total This Matter | | 10.00 |

**Paul Bernstein**

| Date | | Description | Hours |
|---|---|---|---|
| 08/19/03 | M. Wymore | Receipt and review e-mails from Mr. Murphy re: FCC rules. | .2 |
| 08/24/03 | M. Wymore | Receipt and review Plaintiffs Consolidated Response to Defendants Joint Motion to Dismiss ICFA Claim. | .2 |
| 08/26/03 | M. Wymore | Conference with Mr. Margrabe re: litigation strategy. | .4 |
| | | Total Hours | .8 |
| | Fees This Matter | | 204.00 |

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.

# ▌▐ GREENSFELDER
#### ATTORNEYS AT LAW

Page: 2
69204

Total This Matter                                              204.00

BALANCE DUE                                          $        214.00
                                                      ============

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.

MAY. -13' 04(THU) 14:49    GREENSFELDER HEMKER    TEL:314 241 3483    P. 007



**GREENSFELDER**
ATTORNEYS AT LAW

Greensfelder, Hemker & Gale, PC
2000 Equitable Building
10 South Broadway
St. Louis, MO 63102
T: 314-241-9090
F: 314-241-8624

FEIN: 43-1313567

October 31, 2003
69204
Invoice No.    202416

New Century Mortgage Corporation
c/o Ms. Kelly S. Herzik
Morris, Laing, Evans, Brock & Kennedy, Chtd.
Old Town Square
300 N. Mead, Suite 200
Wichita, KS 67202-2722
For legal services rendered through September 30, 2003

**Paul Bernstein**

| | | | |
|---|---|---|---|
| 09/02/03 | M. Wymore | Review e-mails re: Reply in Support of Motion to Dismiss TCPA Count. | .1 |
| 09/09/03 | M. Wymore | Receipt and review Court Order re: motion to dismiss regarding employment services. | .1 |
| 09/10/03 | M. Wymore | Receipt and review deposition notice. | .1 |
| 09/12/03 | M. Wymore | Receipt and review final Reply Brief in Support of Defendant's Motion to Dismiss ICFA Count. | .3 |
| 09/18/03 | M. Wymore | Receipt and review e-mails from court clerk re: CMC and Motion to Dismiss ICFA Claim. | .2 |
| 09/19/03 | M. Wymore | Receipt and review Court Order dismissing ICFA Count. | .2 |
| 09/21/03 | M. Wymore | Receipt and review deposition notice; review memo re: CMC and Court Orders in consolidated cases. | .3 |

Total Hours    1.3

Fees This Matter    331.50

Expenses
    Photocopies    7.35
        Total Expenses    7.35

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.

# GREENSFELDER
ATTORNEYS AT LAW

Page: 2
69204

Total This Matter                                                     338.85

BALANCE DUE

$     338.85

ok
mtm

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.



Greensfelder, Hemker & Gale, PC
2000 Equitable Building
10 South Broadway
St. Louis, MO 63102

T: 314-241-9090
F: 314-241-8624

FEIN: 43-1313567

November 26, 2003
69204
Invoice No.   204540

New Century Mortgage Corporation
c/o Ms. Kelly S. Herzik
Morris, Laing, Evans, Brock & Kennedy, Chtd.
Old Town Square
300 N. Mead, Suite 200
Wichita, KS 67202-2722

For legal services rendered through October 31, 2003

Paul Bernstein

10/06/03  M. Wymore         Receive and review Second Amended Complaint and        .8
                            Motion for Class certification; telephone conference
                            with Mr. Murphy re: same and re: outstanding
                            discovery responses.

                            Total Hours                          .8

                   Fees This Matter                                      204.00

Expenses                                                                  17.25
        Photocopies                                                       17.25
              Total Expenses                                             221.25

        Total This Matter

        BALANCE DUE                                      $        221.25
                                                                 =========

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.

  

 GREENSFELDER
ATTORNEYS AT LAW

Greensfelder, Hemker & Gale, PC
2000 Equitable Building
10 South Broadway
St. Louis, MO 63102

T: 314-241-9090
F: 314-241-8624

FEIN: 43-1313567

December 31, 2003
69204
Invoice No.    206581

New Century Mortgage Corporation
c/o Ms. Kelly S. Herzik
Morris, Laing, Evans, Brock & Kennedy, Chtd.
Old Town Square
300 N. Mead, Suite 200
Wichita, KS  67202-2722

For legal services rendered through November 30, 2003

Paul Bernstein

| Date | Attorney | Description | Hours |
|------|----------|-------------|-------|
| 10/08/03 | M. Wymore | Receipt and review Second Amended Complaint and Motion for Class Certification. | .5 |
| 10/20/03 | M. Wymore | Telephone conference with Mr. Murphy re: response deadline. | .1 |
| 10/29/03 | M. Wymore | Receipt and review Court Order dismissing Whiting Corp. v. Lucas; and Case Management Order re: Group B. | .3 |
| 11/18/03 | M. Wymore | Conference with Mr. Gavin re: case management conference. | .2 |
| 11/21/03 | M. Wymore | Telephone conference with Mr. Murphy re: response; receipt and review Consolidated Motion to Dismiss. | .3 |
| 11/25/03 | C. McMeley | Draft Interrogatories, Requests for Production of Documents and Request for Admissions; conference with M. Wymore re: same; draft letter to Cozen O'Connor re: transfer of case files. | 1.8 |
| 11/25/03 | M. Wymore | Conference with Ms. McMeley re: class discovery requests; telephone conference with Mr. Murphy re: fax in question and possible involvement of Fax.com; follow-up with Fax.com re: same. | .7 |
| 11/26/03 | C. McMeley | Revise discovery requests. | .8 |
| 11/26/03 | M. Wymore | Communications with Mr. Felsenthal re: Fax.com involvement with fax; e-mail re: same to Mr. Murphy; direction to Ms. McMeley re: discovery requests; receipt and review Judge McGann's Case Management Order No. 10A & B. | .6 |
| 11/28/03 | M. Wymore | Revisions to class certification discovery requests (documents and interrogatories). | .9 |

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.





GREENSFELDER

ATTORNEYS AT LAW

Total Hours                    6.2

Fees This Matter                               1,360.00

Total This Matter                              1,360.00

BALANCE DUE                        $          1,360.00
                                          ==========

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.



GREENSFELDER
ATTORNEYS AT LAW

Greensfelder, Hemker & Gale, PC
2000 Equitable Building
10 South Broadway
St. Louis, MO 63102

T: 314-241-9090
F: 314-241-8624

FEIN: 43-1313567

January 27, 2004
69204

Invoice No.  208620

New Century Mortgage Corporation
c/o Ms. Kelly S. Herzik
Morris, Laing, Evans, Brock & Kennedy, Chtd.
Old Town Square
300 N. Mead, Suite 200
Wichita, KS  67202-2722

For legal services rendered through December 31, 2003

Paul Bernstein

| Date | Attorney | Description | Hours |
|---|---|---|---|
| 12/02/03 | S. Harding | Preparation of letter to Ms. Monika L. McCarthy regarding engagement of Greensfelder, Hemker & Gale, P.C. (.2); preparation of letter to Ms. Monika L. McCarthy regarding waiver of conflict (.2). | .4 |
| 12/02/03 | M. Wymore | Receive and review correspondence from Mr. Edelman re: discovery responses. | .1 |
| 12/08/03 | R. Gavin | Attend conference with Mary Ann Wymore regarding status of pending cases. | .2 |
| 12/08/03 | C. McMeley | Conference with M. Wymore and R. Gavin re: status of cases and strategy. | .2 |
| 12/08/03 | M. Wymore | Update meeting with Ms. McMeley and Mr. Gavin re: status, strategy and issues. | .2 |
| 12/09/03 | C. McMeley | Review case files, orders, discovery; create timeline. | 2.3 |
| 12/15/03 | S. Harding | Update TCPA Cook County, Illinois Group A Caselist. | .1 |
| 12/17/03 | M. Wymore | Receive and review additional discovery requests from plaintiff; correspondence to Ms. McCarthy re: same and re: deposition notice. | .4 |
| 12/19/03 | M. Wymore | Receive and review plaintiff's Motion to Compel. | .4 |
| 12/22/03 | M. Wymore | Correspondence to Ms. McCarthy re: Motion to Compel. | .1 |
| 12/26/03 | M. Wymore | Receive and review correspondence from Ms. Clark re: discovery responses. | .1 |
| 12/26/03 | M. Wymore | Communications with Mr. Murphy re: Motion to | .2 |

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.



| | | |
|---|---|---|
| | Compel and re: discovery requests. | |
| 12/29/03  M. Wymore | E-mails with Mr. Murphy re: discovery issues; receive and review plaintiff's second set of additional discovery requests, plaintiff's notice of depositions to New Century's Illinois offices, and subpoena to FCC; review e-mail from Mr. Murphy re: court's denial of Motion to Compel; further e-mails to Mr. Murphy re: new discovery requests. | 1.0 |
| 12/30/03  M. Wymore | Transmittal correspondence to Ms. McCarthy re: discovery. | .2 |
| 12/31/03  M. Wymore | Receive and review various e-mails from Mr. Murphy re: discovery; receive and review plaintiff's subpoena to Who's Calling, Inc. | .7 |

|  |  |
|---|---|
| Total Hours | 6.6 |
| Fees This Matter | 1,371.00 |

| Expenses | |
|---|---|
| Faxes | 37.50 |
| Photocopies | 30.60 |
| Total Expenses | 68.10 |
| Total This Matter | 1,439.10 |

BALANCE DUE                                            $    1,439.10

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.



**GREENSFELDER**
ATTORNEYS AT LAW

Greensfelder, Hemker & Gale, PC
2000 Equitable Building
10 South Broadway
St. Louis, MO 63102

T: 314-241-9090
F: 314-241-8624

FEIN: 43-1313567

February 27, 2004
69204

Invoice No.  210464

New Century Mortgage Corporation
c/o Ms. Kelly S. Herzik
Morris, Laing, Evans, Brock & Kennedy, Chtd.
Old Town Square
300 N. Mead, Suite 200
Wichita, KS  67202-2722

For legal services rendered through January 31, 2004

**Paul Bernstein**

| Date | Attorney | Description | Hours |
|---|---|---|---|
| 01/02/04 | M. Wymore | Receipt and review various e-mails from Mr. Murphy and client re: discovery; receipt and review subpoena to Who Is Calling. | .4 |
| 01/06/04 | M. Wymore | Receipt and review plaintiff's additional discovery requests. | .3 |
| 01/07/04 | M. Wymore | Follow-up e-mails and telephone conference with Mr. Penning and Mr. Smith; transmittal correspondence to Ms. McCarthy re: 1/6/04 discovery requests. | .3 |
| 01/14/04 | S. Harding | Review pleadings to determine whether M. Wymore had been admitted pro hac vice (.1); preparation of Order granting Motion of M. Wymore to Appear Pro Hac Vice (.1). | .2 |
| 01/20/04 | M. Wymore | E-mails with Mr. Murphy re: discovery deadlines. | .1 |

Total Hours                1.3

Fees This Matter                                                        300.50

Expenses
    Photocopies                                                      6.15
    Faxes                                                            3.00
    Total Expenses                                                   9.15

Total This Matter                                                      309.65

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.

Page: 2
69204

 GREENSFELDER
ATTORNEYS AT LAW

BALANCE DUE                                                    $       309.65

*ok*
*MDM*

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.



Greensfelder, Hemker & Gale, PC
2000 Equitable Building
10 South Broadway
St. Louis, MO 63102

T: 314-241-9090
F: 314-241-8624

FEIN: 43-1313567

June 8, 2004
69204

Invoice No. 217293

New Century Mortgage Corporation
c/o Ms. Kelly S. Herzik
Morris, Laing, Evans, Brock & Kennedy, Chtd.
Old Town Square
300 N. Mead, Suite 200
Wichita, KS 67202-2722

For legal services rendered through April 30, 2004

**Psychological Associates**

| | | | |
|---|---|---|---|
| 04/21/04  M. Wymore | Receipt and review 10-day notice of suit from Mr. Margulis. | .2 | |
| | Total Hours | .2 | |
| Fees This Matter | | | 52.00 |
| Expenses | | | 0.45 |
| Photocopies | | | 0.45 |
| Total Expenses | | | |
| Total This Matter | | | 52.45 |

**Paul Bernstein**

| | | | |
|---|---|---|---|
| 04/13/04  M. Wymore | Receipt and review correspondence from Ms. Clark seeking to open settlement negotiations; transmittal correspondence to Ms. McCarthy and Mr. Murphy re: same. | .5 | |
| 04/30/04  M. Wymore | Receipt and review notice of plaintiff re: motion of class certification briefing schedule. | .1 | |

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.

Page: 2
69204


GREENSFELDER
ATTORNEYS AT LAW

Total Hours                                    .6

Fees This Matter                                   156.00

Expenses
    Faxes                                          9.00
    Photocopies                                    1.65
        Total Expenses                         10.65

    Total This Matter                             166.65

    BALANCE DUE                        $      219.10

Fee charges and expenses which have not been posted to date against your account will appear on a later statement.

**Mendizabal, A. Richard**

| | |
|---|---|
| From: | Mendizabal, A. Richard |
| Sent: | Thursday, July 01, 2004 9:47 AM |
| To: | 'MmcCarth@ncen.com'; 'mmalovos@ncen.com'; 'bdarkow@ncen.com' |
| Subject: | Copy of letter to Daniel J. Cunningham at Tressler, Soderstrom re Bernstein v. New Century (Our File No.: 10465-004) |

6-30-04 ltr to
Cunningham.pdf

1

# Confirmation Report – Memory Send

Page        : 001
Date & Time: 06-30-04   05:40pm
Line 1      : 949 553 2050
Line 2      : 949 553 2050
Machine ID : GAUNTLETT & ASSOCIATES

| | | |
|---|---|---|
| Job number | : | 793 |
| Date | : | 06-30  05:39pm |
| To | : ☎ | 13102034850 |
| Number of pages | : | 004 |
| Start time | : | 06-30  05:39pm |
| End time | : | 06-30  05:40pm |
| Pages sent | : | 004 |
| Status | : | OK |
| Job number | : 793 | *** SEND SUCCESSFUL *** |



### GAUNTLETT & ASSOCIATES
#### ATTORNEYS AT LAW

18400 Von Karman, Suite 300
Irvine, California 92612
(949) 553-1010
(949) 553-2050 (fax)

## FACSIMILE COVER SHEET

Date:        June 30, 2004
Time:        5:41 PM
File no.:    10465-004

### IMPORTANT NOTICE:
#### PLEASE DELIVER THE FOLLOWING TRANSMISSION AS SOON AS POSSIBLE

To:              Daniel J. Cunningham, Esq.

Company:         Tressler, Soderstrom, Maloney & Priess

Fax no.:         (310) 203-4850 (LA); (312) 627-1717 (Chicago)

From:            M. Catherine Reid, Esq.

Document Title:  Letter dated June 30, 2004

No. of pages, including cover page:    4

Comments:        Hard copy will follow via U.S. Mail.

We are sending from a Xerox Telecopier pro 745. If you experience any problems with this transmission, please call (949) 553-1010.

Thank you for your cooperation.

Richard Mendizábal
Operator

THIS INFORMATION IS INTENDED FOR USE OF THE INDIVIDUALS OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US.

10465-004-06/30/2004-143348.1

 

## Confirmation Report – Memory Send

```
Page       : 001
Date & Time: 06-30-04   04:58pm
Line 1     : 949 553 2050
Line 2     : 949 553 2050
Machine ID : GAUNTLETT & ASSOCIATES
```

| | | |
|---|---|---|
| Job number | : | 792 |
| Date | : | 06-30  04:57pm |
| To | : ☎13126271717 | |
| Number of pages | : | 004 |
| Start time | : | 06-30  04:57pm |
| End time | : | 06-30  04:58pm |
| Pages sent | : | 004 |
| Status | : | OK |
| Job number | : 792 | **\*\*\* SEND SUCCESSFUL \*\*\*** |



**GAUNTLETT &**
**ASSOCIATES**
ATTORNEYS AT LAW
18400 Von Karman, Suite 300
Irvine, California 92612
(949) 553-1010
(949) 553-2050 (fax)

### FACSIMILE COVER SHEET

Date:        June 30, 2004
Time:        4:57 PM
File no.:    10465-004

### IMPORTANT NOTICE:
### PLEASE DELIVER THE FOLLOWING TRANSMISSION AS SOON AS POSSIBLE

| | |
|---|---|
| To: | Daniel J. Cunningham, Esq. |
| Company: | Tressler, Soderstrom, Maloney & Priess |
| Fax no.: | (310) 740-0891 (LA); (312) 627-1717 (Chicago) |
| From: | M. Catherine Reid, Esq. |
| Document Title: | Letter dated June 30, 2004 |
| No. of pages, Including cover page: | 4 |
| Comments: | Hard copy will follow via U.S. Mail. |

We are sending from a Xerox Telecopier pro 745. If you experience any problems with this transmission, please call (949) 553-1010.

Thank you for your cooperation.

Richard Mendizabal
Operator

THIS INFORMATION IS INTENDED FOR USE OF THE INDIVIDUALS OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US.

10465-004-06/30/2004-145248.1

# Exhibit N





**TRESSLER, SODERSTROM, MALONEY & PRIESS**
ATTORNEYS AT LAW

Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, IL 60606
312/627-4000
312/627-1717 (fax)
www.tsmp.com

Daniel J. Cunningham
(310) 203-4026
dcunningham@mail.tsmp.com

July 7, 2004

<u>VIA FACSIMILE AND CERTIFIED MAIL (RETURN RECEIPT REQUESTED)</u>

M. Catherine Reid, Esq.
Gauntlett & Associates
18400 Von Karman, Suite 300
Irvine, California 92612

Re:  *Bernstein v. New Century Mortgage Corporation*, No. 02 CH 06907 (Cook
County, Chancery Division).
Claim No.: 0405-03-091557
Our File Number: 2246-42

Dear Ms. Reid:

On behalf of Great Northern Insurance Company and Federal Insurance Company, this letter will respond to yours of June 30, 2004 in which you take issue with the position set forth in our letter of June 22, 2004.

First, while we do not know that California law will govern this claim, we do know that you have not correctly characterized that state's law pertaining to the duty to settle. California courts do indeed permit insurers to consider their coverage defenses in determining whether to contribute to the settlement of an uncovered claim. In fact, in *Marie Y. v. General Star*, 110 Cal.App.4th 928, 958 (2003), the appellate court specifically stated:

However, where the kind of claim asserted is not covered by the insurance contract (and not simply the amount of the claim), an insurer has no obligation to pay money in settlement of a noncovered claim, because, "The insurer does not... insurer the entire range of an insured's well-being, outside the scope of and unrelated to the insurance policy, with respect to paying third party claims. It is an insurer, not a guardian angel." (*quoting, Camelot by the Bay Condo. Assoc. v. Scottsdale Ins. Co.*, 27 Cal.App.4th 33, 52 (1992). )

LINCOLNSHIRE, ILLINOIS       WHEATON, ILLINOIS       COSTA MESA, CALIFORNIA

LOS ANGELES, CALIFORNIA       NEWARK, NEW JERSEY       NEW YORK, NEW YORK

M. Catherine Reid
July 7, 2004
Page 2 of 2

Based on the *Marie Y* case and similar cases, Great Northern Insurance Company and Federal Insurance Company clearly have the right to consider their coverage defenses in deciding whether to participate in settlement negotiations.

We further note that the cases cited in your letter are distinguishable from this claim. The *Blue Ridge* case involved an insurer seeking reimbursement from an insured, which is not the case here. Unlike the instant claim, both the *Johansen* and *Communale* cases involved an insurer that wrongfully denied coverage. Finally, the *Kransco* case is not controlling, as the insurer did not contest on appeal a jury's finding that it had committed bad faith by failing to settle a claim within limits.

Second, you have asked that Great Northern Insurance Company and Federal Insurance Company "consent to any settlement that is reached between New Century and plaintiff." To the extent that your client deems it appropriate to settle uncovered claims for $6 million (the amount apparently demanded by plaintiff) or less, our clients will not stand in their way. Please note that the facts upon which we base this position are set forth in our letter of June 22, 2004. In that letter, we asked that you provide us with any additional or contrary facts which might affect our coverage position. As you have not provided any additional or contrary facts to us, we must assume that the facts upon which we relied are accurate and that the amount demanded in settlement is not covered. However, we reiterate our request that you provide us with any additional or contrary facts which might be relevant to the coverage issues. For example, to the extent that the advertisement sent during our clients' policy period was different than the advertisement sent before the policy period, we ask that you communicate that to us immediately.

Finally, your letter of June 30, 2004 mentioned that we would receive the underlying defense bills with the mailed copy of the letter. Perhaps delivery of the invoices was delayed because of the Holiday, as we have not yet received them. To the extent that they have not yet been mailed, we ask that you overnight them at your earliest convenience.

Please do not hesitate to contact me if you have any questions about the above.

Sincerely,

Daniel J. Cunningham

M. Catherine Reid
July 7, 2004
Page 3 of 3


cc:     Michael J. Najewski
        Chubb Group of Insurance Companies
        Sears Tower, Suite 4700
        233 South Wacker Drive
        Chicago, IL 60606

        Financial Guaranty Insurance Brokers, Inc.
        Attn:  Mr. Manny Kim
        709 East Colorado Blvd., Suite 230
        Pasadena, CA 91101

Exhibit O





## TRESSLER, SODERSTROM, MALONEY & PRIESS
### ATTORNEYS AT LAW

Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, IL 60606
312/627-4000
312/627-1717 (fax)
www.tsmp.com

Daniel J. Cunningham
(310) 203-4026
dcunningham@mail.tsmp.com

August 10, 2004

## VIA FACSIMILE AND CERTIFIED MAIL (RETURN RECEIPT REQUESTED)

M. Catherine Reid, Esq.
Gauntlett & Associates
18400 Von Karman, Suite 300
Irvine, California 92612

    Re:   *Bernstein v. New Century Mortgage Corporation*, No. 02 CH 06907 (Cook
           County, Chancery Division).
           Claim No.: 0405-03-091557
           Our File Number: 2246-42

Dear Ms. Reid:

       On behalf of Great Northern Insurance Company and Federal Insurance Company, this
letter will address a telephone conversation apparently held between our clients on Friday
morning. Chubb Litigation Examiner Mike Najewski received the telephone call in question
from your client's in-house counsel, Mark Malavos. Mr. Malavos apparently indicated that he
was attending a mediation of this case, and asked that Great Northern and Federal make a
contribution to the settlement of the matter.

       Please note that our position with regard to any indemnification obligation has been set
forth twice, in letters dated June 22, 2004 and July 7, 2004. In each letter, we indicated that our
clients would not participate in any settlement offer unless they were provided factual
information establishing that the alleged damages in question are covered under the relevant
policies. Mr. Malavos did not provide the requested factual information in Friday's telephone
conference, and Mr. Najewski correctly declined to deviate from our previously asserted
position. Of course, as the mediation was ongoing at the time of the call, it is highly doubtful
that Mr. Najewski would have had sufficient time to analyze any new facts even if Mr. Malavos
had actually provided them on Friday's call. To the extent that you or your clients are aware of
any facts which would bring this claim within the scope of our client's duty to indemnify, we
reiterate our request that you provide them to us at your earliest possible convenience.

LINCOLNSHIRE, ILLINOIS          WHEATON, ILLINOIS          COSTA MESA, CALIFORNIA

LOS ANGELES, CALIFORNIA          NEWARK, NEW JERSEY          NEW YORK, NEW YORK

M. Catherine Reid
August 10, 2004
Page 2 of 2

Please do not hesitate to contact me if you have any questions about the above.

Sincerely,

Daniel J. Cunningham

Exhibit P

# G GAUNTLETT & ASSOCIATES

### ATTORNEYS AT LAW

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

Our File Number:
10465-004

August 10, 2004

### CONFIDENTIAL INSURED-INSURER COMMUNICATION

This communication is an insured-insurer communication within the meaning of Civil Code §
2860(d), which provides in relevant part: "Any information disclosed by the insured or by the
independent counsel is not a waiver of the privilege as to any other party."

## VIA FACSIMILE & U.S. MAIL
**(312) 627-1717 and**
**(310) 203-4850 (LA)**

Daniel J. Cunningham, Esq.
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, IL 60606-6308

|  |  |
|---|---|
| **Re:** | ***Paul Bernstein v. New Century Mortgage*** |
|  | **Case No. 02 CH 7745 Cook County, IL** |
| **Claim No.:** | 0405-03-091557 |
| **Your File No.:** | 2246-42 |

Dear Mr. Cunningham:

We are in receipt of your August 10, 2004 correspondence which affirms that Great
Northern/Federal will not participate in the settlement of the Bernstein Suit, even though factual
information has been provided by New Century that establishes the claims asserted are covered by
the applicable policies. Great Northern/Federal's apparent assertion that they do not have sufficient
information is belied by the actual facts of this matter.

Great Northern/Federal have known since August 2003 that Bernstein claims damages from
allegedly wrongful transmittal of an advertisement via facsimile in late February 2002, in violation
of the Telephone Consumers Protection Act ("TCPA"). The alleged wrongful transmittals **only**
occurred during your clients' applicable policy periods, thus establishing coverage.

You are undoubtedly aware that courts that have addressed coverage for TCPA actions have
unanimously found either potential or actual coverage under the "advertising injury" offense of



## GAUNTLETT ASSOCIATES
### ATTORNEYS AT LAW

Daniel J. Cunningham, Esq.
TRESSLER, SODERSTROM, MALONEY & PRIESS
August 9, 2004
Page 2

"violation of a person's right of privacy." Some of those courts have also found potential coverage under the "property damage" provision. Similar facts here support the same finding.

New Century has provided your clients with all information necessary to determine that the damages claimed by Mr. Bernstein, as the representative of the asserted class, occurred solely within the applicable policy periods and within the coverage provisions of those policies. There has been no need for your clients to analyze new facts, as they have been in possession of all relevant facts for a minimum of several months. In fact, your clients' analysis of the previously provided factual information caused the mediation to be delayed from June 23, 2004 to August 5, 2004. Even though the mediation was delayed for your clients to obtain settlement authority based upon the information in its possession, your clients ultimately chose not to participate in settlement negotiations. This decision was made while acknowledging the reasonableness of the $6 million settlement demand and agreeing New Century could settle the case with Bernstein given the tremendous exposure.

Since your clients have asserted there is no coverage for the claims made by Bernstein, and based upon their consent to settlement at or below $6 million, New Century was forced to protect its interests and has agreed to settle the Bernstein Suit. As you and your client are aware, New Century faced potential exposure for claims covered by the Great Northern/Federal policies in excess of $200 million based upon plaintiffs seeking the maximum damages allowed under the TCPA. New Century proceeded to mediation and has agreed to resolve the Bernstein Suit for $1.95 million. Should your clients decide to honor their duties owed New Century under the applicable policies of insurance, New Century would accept prompt payment of the entire settlement amount.

If you have any questions or wish to discuss this matter, please contact our office.

Very truly yours,

M. Catherine Reid

MCR:pam

cc:     Mark Malovos, Esq.
        David A. Gauntlett, Esq.
        Eric R. Little, Esq.

10465-004-08/10/2004-145845.1

# Exhibit Q

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement"), executed on December 8, 2004, is entered into by and between Paul Bernstein. ("Plaintiff"), individually and as the representative of a class of all similarly situated persons (the "Settlement Class") and New Century Mortgage Corporation as further defined in Section Two of this Agreement ("New Century"), sometimes collectively referred to herein as the "Parties", and Edelman, Combs, Latturner & Goodwin, LLC.

## RECITALS

WHEREAS, litigation between the Parties entitled *Bernstein v. New Century Mortgage Corporation*, No. 02 CH 06907 (the "Bernstein Litigation"), is pending in the Circuit Court of Cook County, Illinois, Chancery Division (the "Court"), which the Parties wish to settle, compromise and terminate;

WHEREAS, Plaintiff has alleged in the Bernstein Litigation that New Century violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227(b)(1)(C), and state law, by sending out unsolicited advertisements to the Settlement Class as defined in this Agreement.;

WHEREAS, for purposes of settlement only, the Parties have agreed to stipulate to a Class comprised of all persons in the United States and its territories who received who received an unsolicited facsimile advertisement from New Century at any time subsequent to April 4, 1997.

WHEREAS, the Parties have agreed on a compromise and settlement which is in the best interests of all Parties, including the Settlement Class and all of its members;

WHEREAS, Plaintiff's counsel have conducted a full investigation into the facts and law relating to the Bernstein Litigation and the Settlement Class;

WHEREAS, after considering the benefits that the Settlement Class will receive

under the settlement which is the subject of this Agreement, the attendant risks, uncertainties and delays of litigation, New Century's insurer's assertions that they do not have coverage for the claims being asserted against New Century, Bernstein and his counsel have concluded that it is fair, equitable and in the best interests of the Settlement Class to resolve the Released Claims (as defined below in paragraph seven) upon the terms and conditions provided for in this Agreement;

WHEREAS, after considering the additional expense and delay which would result from the continuation of the Bernstein Litigation, the attendant risks, uncertainties and delays of litigation, New Century has determined that it is appropriate to resolve the Release Claims upon the terms and conditions provided for in this Agreement;

WHEREAS, this Agreement has been negotiated among the Parties hereto in good faith and at arm's length, and the Parties hereto have agreed to resolve the Released Claims on the terms and conditions set forth herein; and

WHEREAS, New Century expressly denies the foregoing allegations made against it and any other allegations raised or that could have been raised by Bernstein in the Bernstein Litigation and by entering into this Agreement it does not admit the violation of any state, federal, local or common law at any time and that it is understood and agreed that this Agreement does not constitute and shall not be deemed or construed as constituting an admission that New Century has committed any of the acts alleged above or violated any state, federal, local or common law or regulation.

## PROVISIONS

NOW, THEREFORE, for and in consideration of the aforesaid Recitals and the covenants and promises hereinafter set forth, all constituting valuable consideration, the Parties agree

1452509-5

as follows:

       **1.**      **Recitals.**  The Recitals set forth above are incorporated by reference as integral provisions of this Agreement.

       **2.**      **Key Definitions.**

       a. "New Century" as used herein shall include New Century Mortgage Corporation and all of its affiliates and subsidiaries including its parent New Century Financial Corporation.

       b. "Plaintiff" as used herein shall include both the named plaintiff Paul Bernstein and the members of the Settlement Class.

       c. "Class Period" as used herein shall mean the period April 4, 1997 to the date of this Agreement.

       **3.**      **Stipulation to Settlement Class.** Plaintiff and New Century stipulate to the certification of a settlement class comprised of all persons or entities located anywhere in the United States who were sent or received an unsolicited advertising fax from or on behalf of New Century during the period April 4, 1997 to the date of this Agreement (the "Settlement Class"). Persons or entities which have previously entered into settlement agreements with New Century Mortgage regarding the transmission of unsolicited facsimile ads are excluded from the Settlement Class. This stipulation is made for purposes of settlement only and if this Agreement is rescinded or revoked, this stipulation shall not be binding upon either New Century or Plaintiff and shall not affect any subsequent determination as to whether to certify a class. This Agreement is contingent upon the Court certifying the Settlement Class as defined in this paragraph. In the event that the Court refuses to certify the Settlement Class in the manner set forth in this paragraph, this Agreement shall be

1452509-5

voidable at the option of New Century. In the event New Century elects to exercise its option to rescind the this Agreement, it shall do so by serving written notice of its intent to rescind the Agreement upon Class Counsel within five business days of the date the Court issues an order regarding certification of a class.

4.    **Stipulation as to Counsel for Settlement Class and Class Representative.** Plaintiff and New Century stipulate to the appointment of Edelman, Combs Latturner & Goodwin, LLC as Counsel for the Settlement Class ("Putative Class Counsel" or "Class Counsel"). Should the Court approve its appointment, Edelman, Combs, Latturner & Goodwin, LLC agrees to serve as Class Counsel and to assume and perform all of the duties and obligations required of Class Counsel including but not limited to fairly and adequately protecting the interests of the Settlement Class. The Parties further stipulate to the appointment of Paul Bernstein as the Class Representative. These stipulations are for settlement purposes only and are not effective in any other matter. Further in the event this Agreement is rescinded or revoked, these stipulations shall not be binding upon New Century. This Agreement is contingent upon the entry of a court order which is not subject to appeal, granting final certification of the Settlement Class.

5.    **Settlement Payment.** New Century agrees to pay the total sum of $1,950,000.00 (One Million Nine Hundred-Fifty Thousand and No/100 Dollars) to settle the Bernstein Litigation (the "Settlement Payment"). All claims of the Settlement Class, costs, including costs of notice and administration of the class and this settlement, and attorney's fees, are to be paid from the Settlement Payment. Upon payment of the full amount of the Settlement Payment, New Century will have fulfilled all of its obligations under the Agreement and will be released as provided in this Agreement.

1452509-5

6.    **Distribution of Settlement Payment.**  The Settlement Payment is to be distributed as follows.  First, the Settlement Payment is to be used to pay the costs of issuing notice to the Settlement Class.  Second, the Settlement Payment is to be used to pay the costs of administering this settlement, including payment of claims submitted by class members.  Third, the Settlement Payment is to be used to pay the attorney's fees of Plaintiff's Counsel/Putative Class Counsel as approved by the Court.  Fourth, the Settlement Payment is to be used to pay the valid claims of the Settlement Class and an incentive award to the name Plaintiff, as set forth below.  And fifth, any remaining amount of the Settlement Payment after satisfaction of each of the preceding items, is to be distributed as a cy pres award to the charitable organizations designated by New Century and as approved by the Court, in accordance with paragraph number 12 below.

7.    **Motion for Preliminary Approval of Class Settlement.**  The Parties agree that they shall file a Joint Motion for Preliminary Approval of the Class Settlement.  The Parties shall act reasonably and cooperate in the preparation of this motion.  This motion shall set forth the form and manner of the proposed notice to the Settlement Class.  New Century shall not be required to pay any portion of the Settlement Payment, prior to the time the Court grants preliminary approval of the proposed settlement.  The motion shall also set forth the proposed dates by which members of the Settlement Class may opt out of the Settlement Class or file objections to the proposed settlement.  Further the motion for preliminary approval shall set forth a procedure for members of the Settlement Class to file claims to obtain a cash payment and the date by which such claims must be filed or postmarked to be accepted.  This Agreement is contingent upon the Court granting preliminary approval to the settlement of the Bernstein Litigation according to the terms set forth herein.

1452509-5

8.    <u>**Notice to Class.**</u>  New Century represents that the alleged offending facsimiles were transmitted by fax.com and that it does not have a listing of the fax numbers to which fax.com transmitted the facsimiles.  Plaintiff's Counsel has obtained through discovery a "call tracking report" from Who's Calling, Inc., which purports to be a listing of persons who called the 800 number on the alleged offending facsimile.  Other than this call tracking report, Plaintiff's Counsel is unaware of any other information identifying the members of the Settlement Class.  Therefore notice by publication, supplemented by notice by mail to the persons listed in the call tracking report to the extent it is possible to ascertain street addresses, is the best notice practicable under the circumstances.

If appointed as Class Counsel, Putative Class Counsel agrees that it shall be responsible for issuing notice to the Settlement Class of the Class Action and the Proposed Settlement, in the form and manner deemed adequate by the Court.  Subject to the Court's approval the Parties propose that notice be issued to the Settlement Class as follows:

a)    Class Counsel shall ascertain if possible the street addresses of all persons associated with the telephone numbers listed in the call tracking report produced to Plaintiff's Counsel in discovery.  Class Counsel shall issue notice by first class mail in a form substantially similar to Exhibit B to this Agreement to all persons on the call tracking report for whom they are able to identify street addresses.  Class Counsel shall file an affidavit identifying the persons and addresses to which it mails notice.

b)    Class Counsel shall cause a notice in a form substantially similar to Exhibit A to this Agreement to be published on at least three occasions which are at least one-week apart, in publications with national circulation such as USA Today, Parade Magazine, the Wall Street Journal

1452509-5

the national edition of the New York Times or other national publications. The size of the notice to be published shall not exceed 6 inches by 9 inches.

      c)      Class Counsel shall cause notice substantially in the form of Exhibit B to be published on its website from the date of entry of the order granting preliminary approval through 30 days after the date an order is entered finally approving the settlement. Class Counsel shall also fax or mail notice substantially in the form of Exhibit B to any person requesting a copy of the notice. Further Class Counsel shall ensure that the claims administrator mails a copy of the notice substantially in the form of Exhibit B to any person who mails a request for the notice to the claims administrator.

      All costs of notice shall be paid from the Settlement Payment. The Parties anticipate that the cost of notice may be substantial. Class Counsel shall develop a notice publication proposal including costs, which is consistent with the above plan and present this to the Court for consideration at the preliminary approval hearing. This Agreement is contingent upon the Court approving the issuance of Notice to the Settlement Class in substantially the manner set forth above.

      9.    **Claims Administration.** The Parties agree that First Class, Inc. of Chicago, Illinois or another claims administration firm as agreed to by the Parties shall act as claims administrator (the "Claims Administrator") for the settlement to issue via U.S. Mail the full Notice to those class members requesting a copy of the Notice, process claims and issue payments to the Settlement Class. All costs of claims administration are the responsibility of Class Counsel and are to be paid from the Settlement Payment with approval of the Court. Class Counsel and the Claims Administrator shall take reasonable steps to ensure that fraudulent claims are not allowed and shall ensure that the Claims Administrator retains records of claims submitted and payments made to the

Settlement Class for a period of 5 years.  All information and records concerning claims administration shall be made available by the Claims Administrator to any party upon request.

10.    **Initial Payment for Notice to Class.**  Within five business days of the date the Court enters an order granting preliminary approval of the Settlement proposed under this Agreement, New Century shall pay a sum of money to Class Counsel as directed by the Court, which is not to exceed $300,000.00 and which is to be placed in the Trust Fund of Class Counsel and used by Class Counsel to pay for notice to be issued to the Settlement Class as directed and approved by the Court (the "Notice Payment") and for costs of class administration. All notice and administration expenses shall be disclosed to counsel for New Century prior to the time they are incurred. After making the Notice Payment, the amount of the Settlement Payment to be made by New Century shall be reduced by the amount of the Notice Payment. New Century agrees that in the event the settlement does not receive final approval from the Court that the Notice Payment which has been expended will not be refunded to it. If the settlement does not receive final approval any unexpended portion of the Notice Payment is to be returned to New Century. Class Counsel agrees to expend the Notice Payment only in accordance with this Agreement and as approved by the Court for the benefit of the Settlement Class. Class Counsel shall file an accounting with the Court at least 21 days prior to the fairness hearing set by the Court, as to the expenditure of the Notice Payment detailing how the Notice Payment was expended.  Class Counsel shall provide New Century with back-up documentation of Notice Payment expenditures as requested by New Century or the Court. If after notice is issued to the class in accordance with this Agreement and all costs of claims administration are paid, the entire Notice Payment is not expended, then any remaining portion of the Notice Payment shall be paid by Class Counsel into the Settlement Fund for distribution in accordance with

1452509-5

this Agreement.

11.    **Claim Forms.**  The Parties agree that members of the Settlement Class shall be required to submit a claim form in the form of the claim form which is part of Exhibit B to this Agreement and which requires that claimant state under oath or affirm that claimant received or was sent an unsolicited facsimile ad from or on behalf of New Century during the Class Period. The claim form shall also request claimant to include the facsimile received by claimant from New Century with the claim form. Any claim form which is not submitted by the claim deadline date to be set by the Court and which is not completed and signed by claimant in accordance with the instructions in the notice or claim form, is to be rejected. Each member of the Settlement Class may only submit one claim form regardless of the number of facsimiles that they have received from New Century. For any claim which is rejected, the Claims Administrator shall send the claimant a notice of rejection of claim to the address provided in the claim form stating the reason the claim was rejected. Any Settlement Class member whose claim has been rejected may petition the Court for review of the rejection within 30 days of receipt of the notice of rejection.

12.    **Payment of Claims.**  After the entry of an order finally approving the settlement set forth in this Agreement by the Court, which is not subject to appeal, and after payment of all costs of notice, claims administration (including the amount necessary to issue payment on valid claims filed by members of the Settlement Class), payment of an incentive award in an amount to be approved by the court to Paul Bernstein the named Plaintiff, and after payment of attorney's fees to Class Counsel as approved by the Court, and payment of all other expenses approved by the Court from the Settlement Payment, the members of the Settlement Class who filed valid claim forms shall each receive a pro-rata share of the remaining amount of the Settlement Payment, up to a

1452509-5

Page 9 of 17

maximum of $500 each.  Class Counsel shall be responsible for ensuring that the Claims Administrator issues payment on the valid claims submitted by the Settlement Class.  Payment is to be made by check and sent via U.S. Mail to the address provided on the claim form.  If after all payments set forth above are made, a portion of the Settlement Payment remains unexpended, said amount (the "Cy Pres Amount") shall be returned by Class Counsel to New Century and New Century shall make a donation in an amount equal to the Cy Pres Amount to the charitable organizations as set forth in Exhibit D, subject to approval by the Court. The decision of the Claims Administrator as to the validity of a claim shall be final and determinative.

      13.    <u>**Attorney's Fees.**</u>    The exact amount of all attorneys' fees payable for services rendered by Class Counsel to the Settlement Class shall be determined by the Court, but New Century will not object to the payment of attorneys' fees and reimbursement of litigation expenses to Class Counsel which do not exceed the aggregate total of $487,500 for all work already performed and expenses incurred for the Settlement Class, and for all work to be performed and expenses incurred in administering this settlement.  The Court may rely on any basis permitted under Illinois law in awarding fees.  This amount shall be paid from the Settlement Payment as described in this Agreement.  New Century shall pay the attorney's fees ordered by the Court to Class Counsel after no less than 35 days but no more than 50 days from the entry of a final order of the Court granting final approval to the terms of the settlement set forth in this Agreement, which is not subject to appeal.

      14.    <u>**Incentive Award.**</u>  Class Counsel shall apply for an incentive award to be given to the named Plaintiff Paul Bernstein in an amount not to exceed $5,000.  The incentive award is to be paid from the Settlement Payment.  Class Counsel shall issue a check from the

Settlement Payment made by New Century to Paul Bernstein in the amount approved by the Court. Payment shall be made 35 days after the entry of a final order of the Court approving the settlement which is not subject to appeal.

15.    **Release by Settlement Class.**  As consideration for the Settlement Payment made by New Century as described in this Agreement, Bernstein and each member of the Settlement Class who does not opt out and who is not excluded from the Settlement Class by the Court, for himself or herself and his or her successors, assignees, heirs, beneficiaries, executors, administrators, legal representatives, and all persons claiming under them, (the "Releasors"), releases, remises, acquits and forever discharges New Century and its predecessors in interest, successors, assigns, parents, subsidiaries, affiliates, divisions, insurers, and all of their past, present and future directors officers (whether acting in such capacity or individually), shareholders, owners, partners, principals, trustees, creditors, attorneys, representatives, employees, managers and agents (the "Released Parties"), from and against any and all claims, counterclaims, liabilities, demands, defenses, actions causes of action, suits, set-offs, controversies, disputes, obligations, omissions, duties, liabilities, expenses, costs and damages of every kind and nature whatsoever, in law or equity, whether known or unknown, fixed or contingent, claimed or unclaimed, actual or potential, suspected or unsuspected, which the Releasors may now have, or claim at any future time to have, arising from or based in whole or part on the alleged transmission of advertising faxes by or on behalf of New Century, including but not limited to: (1) violations of the TCPA; (2) the claims asserted or which could have been asserted in the Bernstein Litigation including any and all amended complaints; and (3) violation of any and all other laws, whether statutory, regulatory or decisional, and whether federal or state based arising out of or related to the transmission of facsimiles by or on behalf of

New Century. No claims involving the application for or making of loans are released.

16.    **Waiver of Rights Under California Civil Code.** Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. <u>Certain Claims Not Affected by General Release</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of paragraph 3.1 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or noncontingent claim with respect to the subject matter of the provisions of paragraph 3.1 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

17.    <u>Payment of the Remainder of the Settlement Payment.</u> After no less than 35 days but no more than 50 days after entry of an order of the Court granting final approval to the terms of the settlement set forth in this Agreement, which is not subject to appeal, New Century shall remit to Class Counsel an amount equal to the Settlement Payment less the sum of the Notice Payment (which includes all administration and notice costs approved by the Court) and the amount paid to Class Counsel for fees and expenses as approved by the Court. This amount shall be referred to as the "Settlement Fund". The Settlement Fund shall be deposited into the Client Trust Account

1452509-5

of Class Counsel. After New Century has remitted the Settlement Fund payment to Class Counsel, its obligations under this Agreement, except for its obligation to make any payment of any remaining sum of the Settlement Fund to a charity or charities, shall cease. Class Counsel agrees that the Settlement Fund is to be used for no purpose other than payment of claims of the Settlement Class, payment of a Court approved incentive award to the named Plaintiff and costs of claims administration as approved by the Court. Upon receipt of the Settlement Fund Class Counsel shall assume the obligation for ensuring that the Settlement Fund is disbursed in accordance with this Agreement and the Court's orders. Class Counsel agrees to defend, indemnify and hold harmless New Century from and for any and all claims asserting that the Settlement Fund was not properly disbursed in accordance with this Agreement or orders of the Court. Class Counsel shall file an accounting with the Court and New Century as to the expenditure of the Settlement Fund with a listing of the names and addresses of all persons who filed claims and received payments under this settlement, along with the amount of the payment they received within 60 days of the date of the entry of the final approval order. Class Counsel shall only remit the sum of money necessary to the Claims Administrator to pay all valid and approved claims of the Settlement Class and any approved claims administration expenses. If after payment of all valid claims of the Settlement Class and any approved expenses by the Court, funds still remain in the Settlement Fund, Class Counsel shall within five business days of the Court's approval of the final accounting of the Settlement Fund to be made by Class Counsel, issue a check to New Century (the "Cy Pres Check") for the amount remaining in the Settlement Fund. New Century shall within ten business days of receipt of the Cy Pres Check from Class Counsel, issue checks in an amount equal to the Cy Pres Check to the charities it designated pursuant to paragraph 12, as approved by the Court.

L452509-5

18.    **Approval by the Court**. This Agreement is expressly contingent on final approval of the settlement set forth in this Agreement by the Court pursuant to Section 2-806 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-806, final certification of the Settlement Class and the Court's dismissal of the Bernstein Litigation, with prejudice and without costs, in a final order, which is not subject to appeal. Class Counsel shall file a motion to set a fairness hearing after notice is issued to the Settlement Class which shall request the Court to enter a Final Judgment and Order substantially in the form of Exhibit C to this Agreement. In the event that one or more of the foregoing does not occur, this Agreement may be terminated by New Century. If this Agreement is so terminated, the Parties shall be deemed to be in the same position as existed prior to the execution of this Agreement with the same status quo ante rights as existed prior to the execution of this Agreement and all other understandings and agreements between the Parties relating to the Settlement shall be deemed to be null and void and of no force and effect. Within 180 days of the entry of the final approval order by the Court, Class Counsel shall file a detailed accounting with the Court as to the disbursement of the Settlement Payment which is to be served on counsel for New Century and is to be approved by the Court.

19.    **Appeal**. In the event of an appeal from the entry of an order of the Court granting final approval of this Settlement, all obligations of the Parties under this Agreement shall be suspended until the final resolution of such appeal and any further appeals. Class Counsel agrees that it will defend such an appeal, and any further appeals, and seek to dispose of such an appeal (or further appeals) or obtain the affirmance of the final approval order. In the event that the Court's order granting final approval is reversed, vacated or modified in a material manner which is unacceptable to New Century, then this Agreement may be rescinded and terminated at the option of

1452509-5

New Century. In the event that the settlement of the Bernstein Litigation is terminated, rescinded, vacated, reversed or overturned after payment of attorney's fees and costs to Class Counsel, Class Counsel agrees that any unused portion of the Notice Payment and any attorney's fees and costs paid to Class Counsel are to be refunded in full to New Century.

20. **Termination**. This Agreement may be terminated by New Century on written notice to Class Counsel up to 7 days prior to final approval hearing if more than 1,000 members of the Settlement Class file valid exclusions to opt of the Settlement Class.

21. **Contribution**. New Century shall retain for itself the rights to pursue any and all claims for contribution against any third-parties which New Century may, at its sole election and for its sole benefit, chose to pursue.

22. **Advice of Counsel**. The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released. The Parties have read and understand fully the terms of the Agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

23. **Waiver of Construction Against Drafter**. The Parties acknowledge that this Agreement reflects the joint drafting efforts of all parties and their respective counsel and that any ambiguity that may be found in the Agreement shall not be construed against any party.

24. **Benefit of this Agreement**. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto, the members of the Settlement Class not opting out, and each of their successors, predecessors, affiliates, heirs, executors and assigns.

25.    **Entire Agreement.**  Any and all prior understandings and agreements between the Parties with respect to the subject matter of this Settlement Agreement are merged into and with this Settlement Agreement, which fully and completely expresses the entire agreement and understanding of the Parties with respect to the subject matter hereof. This Settlement Agreement may be amended, modified or changed only by a written instrument or instruments executed by duly authorized officers or other representatives of the Parties expressly amending, modifying or changing this Agreement and may not be amended, modified or changed orally.

26.    **Applicable Law.**  This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

27.    **Counterparts.**  This Settlement Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument. Signatures provided by telecopier shall be deemed legal and binding for all purposes.

28.    **Headings.**  The headings in this Agreement are for convenience of reference only and are not to be taken to be a part of the provisions of this Agreement, nor to control or affect meanings, constructions or the effect of the same.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement consisting of 28 separately numbered paragraphs and 17 pages, and Exhibits A, B, C and D to be duly executed and delivered by their duly authorized representatives on the date first written above.

**AGREED:**

**PLAINTIFF**

_____
PAUL BERNSTEIN
Individually and as representative of the
putative Settlement Class

**DEFENDANT**

NEW CENTURY MORTGAGE
CORPORATION

By:_____

Title:_____

**CLASS COUNSEL**

EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC, as Class Counsel

_____
By: Daniel A. Edelman, member
    [Print Name and Title]

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement consisting of 28 separately numbered paragraphs and 17 pages, and Exhibits A, B, C and D to be duly executed and delivered by their duly authorized representatives on the date first written above.

**AGREED:**

**PLAINTIFF**                                         **DEFENDANT**

NEW CENTURY MORTGAGE
CORPORATION

_____      By: _____
PAUL BERNSTEIN
Individually and as representative of the
putative Settlement Class                           Title: _Vresident_____

**CLASS COUNSEL**

EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC, as Class Counsel

_____

By:_____
     [Print Name and Title]

1452509-5                         Page 17 of 17

# Exhibit R

Atty. No. 41106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| WHITING CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | 02 CH 6332 |
| | ) | Judge McGann |
| v. | ) | |
| | ) | |
| MSI MARKETING, INC., | ) | |
| | ) | This document relates to: |
| Defendant. | ) | |
| ------------------------------------------------- | ) | |
| PAUL BERNSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 CH 06907 |
| | ) | |
| v. | ) | |
| | ) | |
| NEW CENTURY MORTGAGE | ) | |
| CORPORATION and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE OF FILING

**TO:**    See attached service list.

       **PLEASE TAKE NOTICE** that on August 16, 2004, we caused to be filed with the Clerk of the Circuit Court of Cook County, Illinois, County Department, Chancery Division, the following document, a copy of which is attached hereto and served upon you: **THIRD AMENDED COMPLAINT.**

_Julie Clark_
Julie Clark

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Julie Clark

1

EDELMAN, COMBS, LATTURNER & GOODWIN LLC
120 S. LaSalle St., 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106

## CERTIFICATE OF SERVICE

I, Julie Clark, hereby certify that on August 16, 2004, I caused a copy of this document and the documents referred to herein, to be served via U.S. Mail upon the following parties:

Samuel S. Cohen
Wildman, Harrold, Allen & Dixon
225 W. Wacker Dr., Suite 3000
Chicago, IL 60606

Bart T. Murphy
Wildman, Harrold, Allen & Dixon
2300 Cabot Dr., Suite 455
Lisle, IL 60532

Mary Ann L. Wymore
Greensfelder, Hemker & Gale, P.C.
2000 Equitable Building
10 South Broadway
St. Louis, Missouri 63102

Julie Clark

J:\case\new8.128\pleading\notfil8.2.04

2

Atty. No. 41660

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION



| | | |
|---|---|---|
| WHITING CORPORATION, | ) | |
| | ) | |
| Plaintiff | ) | No. 02 CH 6332 |
| | ) | Judge Patrick E. McGann |
| v. | ) | |
| | ) | |
| MSI MARKETING, INC., | ) | |
| | ) | |
| Defendants. | ) | Related To: |
| | ) | |
| PAUL BERNSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 CH 06907 |
| | ) | |
| v. | ) | |
| | ) | |
| NEW CENTURY MORTGAGE | ) | |
| CORPORATION and JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT -- CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

## INTRODUCTION

1.     Plaintiff Paul Bernstein brings this action to secure redress for the actions of defendant New Century Mortgage Corporation in sending out unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and common law.

## PARTIES

2.     Plaintiff Paul Bernstein is an attorney who practices law in downtown Chicago.

1

3.    Defendant New Century Mortgage Corporation is a California corporation with its principal place of business in California. It does business in Illinois. It maintains offices at 1000 N. Plaza Drive, Suite 401, Schaumburg, IL 60173.

**FACTS**

4.    On or about February 26, 2002, defendant New Century Mortgage Corporation caused the unsolicited fax advertisement attached as <u>Exhibit A</u> to be transmitted to plaintiff's facsimile machine by Fax.Com, Inc., a fax broadcaster.

5.    Plaintiff Paul Bernstein had no prior business relationship with defendant New Century Mortgage Corporation or Fax.Com, Inc., and had not authorized the sending of fax advertisements to plaintiff.

6.    The fax advertisement at issue contains a telephone number, 800-443-7628, associated with the mass "broadcasting" by Fax.com, Inc. of unsolicited advertising faxes to lists of numbers compiled by "fax broadcasters" and sold or otherwise made available to businesses desirous of engaging in illegal fax advertising. The same number was listed in the FCC's citation against Fax.com, Inc., File No. EB-02-TC-120, 2002 WL 1798553 (FCC, Aug. 7, 2002), as present in other unsolicited faxes sent to large numbers of persons by Fax.com, Inc.

7.    Defendant or its agents designed the advertising material in question in a manner calculated to make its receipt particularly expensive. The inclusion of graphics and bold headlines and words in the fax causes it to consume unusually large amounts of toner or ink. Heavy black headlines and graphics cause a fax to consume as much toner or ink as a dozen or more ordinary business letters.

8.    There is no reasonable alternative to the receipt of the illegal faxes.

2

Professionals such as plaintiffs need to leave their fax machines on in order to receive urgent communications which they desire to receive. Based on experience and the FCC citation against Fax.com, Inc., dialing the "remove" numbers provided on <u>Exhibit A</u> does <u>not</u> result in cessation of unsolicited faxes. Indeed, it may result in the dialer being placed on a "sucker list" of people that actually pay attention to unsolicited faxes and being inundated with other unsolicited faxes. Note 25 of the FCC citation, File No. EB-02-TC-120, 2002 WL 1798553 (FCC, Aug. 7, 2002), states:

> Information provided by consumers indicates that Fax.com continued to send faxes even after receiving opt-out calls. For instance, a log provided by William Robert White, President of Regency Sales, Inc., documents over 50 attempts between May 2000 and August 2001 to use Fax.com's opt-out numbers to halt Regency's receipt of unsolicited advertisements from Fax.com clients. Despite these attempts, Fax.com continued to transmit unsolicited advertisements to Regency, as evidenced by at least 12 faxes received by Regency from December 2001 to February 2002. See Table 1; see also Letter from Andrew Hansis to Consumer Information Bureau (Oct. 5, 2001) (October 5 Hansis Letter) (stating that Mr. Hansis continued to receive faxes even after using Fax.com's automated opt-out system and speaking with a senior Fax.com employee in an effort to end the faxing); Consumer Form for Telephone-Related Issues from Norman Jensen, III (rec'd Jan. 8, 2002) (consumer continued to receive at least one advertisement a week despite "repeatedly" calling opt-out numbers and faxing a message to the originating fax number asking that his telephone facsimile number be removed from the fax number database); Consumer Form for Telephone-Related Issues from Dora Wong Goto (rec'd Oct. 15, 2001) (Goto Complaint Form); annotated copies of faxes submitted by James Allan Dobbins. It is clear that a call to one Fax.com opt-out line does not end all fax transmissions from the company. We emphasize here that even an effectively administered opt-out system does not change the statutory ban on sending unsolicited facsimile advertisements or insulate such transmissions from statutory penalties. However, the fact that Fax.com apparently does not even adhere to its own stated procedures makes its conduct even more egregious.

9.      Based on the above facts, plaintiff alleges, on information and belief, that the fax attached hereto was sent as part of a mass "broadcasting" of faxes.

### COUNT I – TCPA

10.      Plaintiff incorporates ¶¶ 1-9.

3

11.     The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine..." 47 U.S.C. §227(b)(1)(C).

12.     The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

> **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
>
> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever, is greater, or**
>
> **(C) both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

13.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

14.     Plaintiff and each class member is entitled to statutory damages.

15.     If the evidence shows the violation was willful, plaintiff requests trebling of the damages.

16.     Defendants should be enjoined from committing similar violations in the future.

4

## CLASS ALLEGATIONS

17.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons wherever located (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

18.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

19.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.    The manner in which defendants compiled or obtained their list of fax numbers;

c.    Whether defendants thereby violated the TCPA;

d.    Whether defendants thereby committed the tort of conversion;

e.    Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

f.    Whether defendants thereby tortiously damaged the property of plaintiff.

20.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to

5

vigorously pursue this action.

21.     A class action is an appropriate method for the fair and efficient adjudication

of this controversy. The interest of class members in individually controlling the prosecution of

separate claims against defendants is small because it is not economically feasible to bring individual

actions.

22.     Several courts have certified class actions under the TCPA. <u>Nicholson v.</u>

<u>Hooters of Augusta, Inc.</u>, 245 Ga.App. 363, 537 S.E.2d 468 (2000); <u>ESI Ergonomic Solutions, LLC</u>

<u>v. United Artists Theatre Circuit, Inc.</u>, 50 P.3d 844 (Ariz. App. 2002) (private class actions); see

<u>State of Texas v. American Blast Fax, Inc.</u>, 164 F. Supp. 2d 892 (W.D. Tex. 2001) (state enforcement

action).

23.     Management of this class action is likely to present significantly fewer

difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff

and the class and against defendants for:

a.     Actual damages;

b.     Statutory damages;

c.     An injunction against the further transmission of unsolicited fax

advertising;

d.     Costs of suit;

e.     Such other or further relief as the Court deems just and proper.

**COUNT II – CONVERSION**

24.     Plaintiff incorporates ¶¶ 1-9.

6

25.    By sending plaintiff and the class members unsolicited faxes, defendants converted to their own use ink or toner and paper belonging to plaintiff and the class members.

26.    Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

27.    By sending the unsolicited faxes, defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

28.    Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

29.    The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

30.    Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose.   Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

31.    Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

32.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons wherever located (b) who, on or after a date 5  years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

7

33.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

34.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.    Whether defendants thereby violated the TCPA;

c.    Whether defendants thereby committed the tort of conversion;

d.    Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

e.    Whether defendants thereby tortiously damaged the property of plaintiff.

35.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

36.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

37.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

8

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a.     Appropriate damages;

    b.     An injunction against the further transmission of unsolicited fax advertising;

    c.     Costs of suit;

    d.     Such other or further relief as the Court deems just and proper.

## COUNT III – ICFA

38.    Plaintiff incorporates ¶¶ 1-9.

39.    Defendants engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

40.    Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

41.    Defendants engaged in such conduct in the course of trade and commerce.

42.    Defendants engaged in such conduct knowing that such conduct was causing recipients of their advertising to bear the cost thereof.

43.    Defendants' shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair. In addition, defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

44.    The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

45.    Defendants should be enjoined from committing similar violations in the

9

future.

## CLASS ALLEGATIONS

46.     Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

47.     The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

48.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.     Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.     Whether defendants thereby violated the TCPA;

c.     Whether defendants thereby committed the tort of conversion;

d.     Whether defendants thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA.

e.     Whether defendants thereby tortiously damaged the property of plaintiff.

49.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

10

50.    A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

51.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

      a.      Appropriate damages;

      b.      An injunction against the further transmission of unsolicited fax advertising;

      c.      Attorney's fees, litigation expenses and costs of suit;

      d.      Such other or further relief as the Court deems just and proper.

## COUNT IV – TRESPASS

52.    Plaintiff incorporates ¶¶ 1-9.

53.    By sending plaintiff and the class members unsolicited faxes, defendants damaged paper belonging to plaintiff and the class members, in a manner constituting a trespass.

54.    Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and used to print the faxes.

55.    By sending the unsolicited faxes, defendants damaged plaintiff's paper and toner used to print the faxes.  Such action was wrongful and without authorization.

11

56.    Defendants knew or should have known that their action was wrongful and without authorization.

57.    The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

58.    Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

59.    Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

60.    Plaintiff brings this claim on behalf of a class, consisting of (a) all persons wherever located (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent advertising faxes by defendant New Century Mortgage Corporation (d) and with respect to whom defendant cannot provide evidence of express consent.

61.    The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 50 members of the class.

62.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.    Whether defendants thereby violated the TCPA;

c.    Whether defendants thereby committed the tort of conversion;

d.    Whether defendants thereby engaged in unfair and deceptive acts and

12

practices, in violation of the ICFA.

      e.    Whether defendants thereby tortiously damaged the property of plaintiff.

      63.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

      64.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

      65.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

      WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

      a.    Appropriate damages;

      b.    An injunction against the further transmission of unsolicited fax advertising;

      c.    Costs of suit;

      d.    Such other or further relief as the Court deems just and proper.



_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Julie Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41660
J:\case\new8.128\pleading\3RDamd.cmplt.wpd

14

# EXHIBIT A

**ATTENTION HOMEOWNERS:**

# Get Cash FAST!



- **Same-Day Approvals!**
- Self-Employed OK!
- Bankruptcy OK!
- Foreclosure OK!
- Loans For Any Purpose
- Cash Within 7 Days
- Competitive Rates
- Over $7 Billion Loaned



**CALL NOW!**

# 800-205-9422

Lower Your Payment Today With A First Mortgage Loan From New Century Mortgage Corporation

 **NEW CENTURY™** MORTGAGE CORPORATION


LENDER

**"When the others say no, New Century says YES!"**

Certain conditions and restrictions may apply. New Century Mortgage Corporation is a nationally recognized lender.

TO HAVE YOUR NUMBER REMOVED FROM OUR DATABASE, PLEASE CALL OUR AUTOMATED TOLL-FREE CENTER AT **800-443-7628**.

# Exhibit S



# CHUBB GROUP OF INSURANCE COMPANIES
SEARS TOWER, SUITE 4700, 233 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-6303

| | | | |
|---|---|---|---|
| Insured: | NEW CENTURY FINANCIAL CORPORA | Policy No: | 000035397736 |
| Claimant: | BERNSTEIN, PAUL | Date of Loss: | 04/05/02 |
| Producer: | FINANCIAL GUARANTY INSURANCE BROKERS IN | Issue Date: | 09/13/04 |
| | | Check No: | 00702297 |

Below you will find a check in the amount of  $3,935.30.
If you have any questions please call (312)454-4200.

Sincerely,

Michael Najewski

RECEIVED

SEP 27 2004

CUSTOMER SERVICE DEPT.
NCMC

THE FACE OF THIS DOCUMENT IS PROTECTED BY A VOID PANTOGRAPH BACKGROUND

60-160
433

# GREAT NORTHERN INSURANCE COMPANY
SEARS TOWER, SUITE 4700
233 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS  60606-6303

005 - 00702297

Mellon Bank N.A.          09/13/04
PITTSBURGH, PA

CHUBB 06 / 0035397736/000004/01-0

PAY TO THE
ORDER OF    NEW CENTURY MORTGAGE CORPORATION************************************
THE SUM OF  THREE THOUSAND NINE HUNDRED THIRTY FIVE AND 30/100                    $3,935.30

IN SETTLEMENT OF  GREENSFELDER.S LEGAL FEES 8/2003 TO 1/04 & 4/04

NEW CENTURY MORTGAGE CORP.
18400 VON KARMAN AVE  SUITE 1000
IRVINE     CA  92612



_Michael T. Marchio_

AUTHORIZED SIGNATURE

DO NOT ACCEPT UNLESS A TRUE WATERMARK IS VISIBLE WHEN HELD UP TO LIGHT

⑈00702297⑈ ⑆043301601⑆  006⑈6544⑈



**CHUBB GROUP OF INSURANCE COMPANIES**
SEARS TOWER, SUITE 4700, 233 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS  60606-6303

| | |
|---|---|
| Insured:   NEW CENTURY FINANCIAL CORPORA | Policy No:    000035397736 |
| Claimant:  BERNSTEIN, PAUL | Date of Loss:  04/05/02 |
| Producer:  FINANCIAL GUARANTY INSURANCE BROKERS IN | Issue Date:   09/13/04 |
| | Check No:    00702262 |

Below you will find a check in the amount of  $26,084.03.
If you have any questions please call (312)454-4200.


Sincerely,

Michael Najewski

---

THE FACE OF THIS DOCUMENT IS PROTECTED BY A VOID PANTOGRAPH BACKGROUND

60-160
433

**GREAT NORTHERN INSURANCE COMPANY**
SEARS TOWER, SUITE 4700
233 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS  60606-6303

005 - 00702262

CHUBB 06 / 0035397736/000004/01-0

Mellon Bank N. A.        09/13/04
PITTSBURGH, PA

PAY TO THE      NEW CENTURY MORTGAGE CORPORATION***********************************
ORDER OF        ********************************************************************
THE SUM OF      TWENTY SIX THOUSAND EIGHTY FOUR AND 03/100*********      $26,084.03
                **************************************************

IN SETTLEMENT OF  WILDMAN.S LEGAL BILLS 8/1/03 TO 04/30/04

NEW CENTURY MORTGAGE CORP.
ATTN: MR. MARK MALOVOS
18400 VON KARMAN   SUITE 1000
IRVINE      CA  92612

AUTHORIZED SIGNATURE

DO NOT ACCEPT UNLESS A TRUE WATERMARK IS VISIBLE WHEN HELD UP TO LIGHT

⑈00702262⑈ ⑆043301601⑆  006⑈6544⑈