Exhibit L



TRESSLER, SODERSTROM, MALONEY & PRIESS
ATTORNEYS AT LAW

Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, IL 60606
312/627-4000
312/627-1717 (fax)
www.tsmp.com

Daniel J. Cunningham
(310) 203-4026
dcunningham@mail.tsmp.com

June 22, 2004

<u>VIA FACSIMILE AND CERTIFIED MAIL (RETURN RECEIPT REQUESTED)</u>

Bart T. Murphy, Esq.
Wildman, Harold, Allen & Dixon
2300 Cabot Drive, Suite 455
Lisle, Illinois 60532-3639

Re:   *Bernstein v. New Century Mortgage Corporation*, No. 02 CH 06907 (Cook County, Chancery Division).
      Claim No.: 0405-03-091557
      Our File Number: 2246-42

Dear Mr. Murphy:

Thank you for faxing me a copy of the Second Amended Complaint last week. As I indicated in our brief telephone conversation, our firm has been retained to assist Great Northern Insurance Company and Federal Insurance Company with their analysis of certain insurance coverage issues arising out of the above-referenced lawsuit. As you no doubt recall, Great Northern Insurance Company previously agreed to defend New Century Mortgage Corporation ("NCMC") subject to a reservation of rights letter dated January 7, 2004.

As we understand that mediation is currently scheduled to proceed on June 23, 2004, the purpose of this letter is to inform you of our clients' position with regard to the duty to indemnify. Based on the facts and policy provisions outlined below, Great Northern Insurance Company and Federal Insurance Company must inform you that they do not owe NCMC a duty to indemnify with regard to any damages awarded in the suit. As such, Great Northern Insurance Company and Federal Insurance Company will not participate in the upcoming mediation.

Bart T. Murphy
June 22, 2004
Page 2 of 8

I. **Policies**

Great Northern Insurance Company issued primary policy number 3539-77-36 to New Century Financial Corporation, with an effective period of February 3, 2002 to February 3, 2003. This policy includes form 17-02-308 (Ed. 4-95).

Sitting atop the primary policy is Federal Insurance Company's commercial umbrella policy number 7977-03-85. Coverage A under this policy follows form to the primary policy issued by Great Northern Insurance Company and Coverage B provides coverage excess of a retained limit of zero dollars. This policy includes form 07-02-0185 (Ed. 9/92).

II. **Underlying Suit**

Plaintiff Paul Bernstein filed his original complaint on April 5, 2002, and asserted causes of action based on violation of the Telephone Consumer Protection Act ("TCPA") and violation of the Illinois Consumer Fraud Act ("ICFA"). As a basis for the suit, plaintiff claims that he received an unsolicited fax advertisement on February 26, 2002. The fax in question advertises NCMC's mortgage loans and includes the following title: "Attention Homeowners—Get Cash Fast."

Plaintiff subsequently filed two amended complaints, including a second amended complaint filed on September 30, 2003. Great Northern Insurance Company and Federal Insurance Company received a copy of the second amended complaint for the first time on June 16, 2004. The Second Amended Complaint asserts the following causes of action:

Count I—Violation of the Telephone Consumer Protection Act
Count II—Conversion
Count III—Violation of the Illinois Consumer Protection Act
Count IV—Property Damage

Plaintiff seeks to establish a class action on behalf of all persons with Illinois fax numbers who received the fax in question within a certain time period and with respect to whom NCMC cannot provide evidence of consent. Plaintiff seeks actual damages, statutory damages, an injunction, attorney's fees, and costs.

Subsequent investigation of this claim reveals the following additional relevant facts:

- NCMC and Fax.Com (a facsimile broadcasting company) executed a "Fax Broadcasting Contract" on June 7, 2001 which defines the scope of the fax broadcasting services to be

Bart T. Murphy
June 22, 2004
Page 3 of 8

performed for NCMC. This contract predates the inception of the relevant policy period by over six months. Paragraph 11, labeled "Legal Issues Re Fax Broadcasting," specifically references the TCPA and states that NCMC is aware of the "significant legal issues and risks" attendant to the faxing of unsolicited fax advertisements.

- On behalf of NCMC, Fax.Com sent the first batch of 200,000 faxes during the week of June 11, 2001. This predates the inception of the relevant policies by over six months.

- Fax.Com sent the second wave of faxes between February 19 and 21, 2002 and sent the third wave between February 25 and 28, 2002.

- Although there were three waves of faxes, you have informed us that Fax.Com broadcast the same advertisement in each of the three waves.

If you dispute any of the facts cited above, please provide whatever additional information you have to us as soon as possible.

### III. Coverage Position

Based on the relevant policy language and currently known facts, Great Northern Insurance Company and Federal Insurance Company must deny that they currently owe any duty to indemnify for the *Bernstein* suit for the reasons set forth below:

1. The available facts confirm that the advertisement in question was sent 200,000 times prior to the inception of the policies at issue. This fact serves to bar coverage for any "advertising injury" or "personal injury" because of the Prior Acts Exclusion, which states:

   > Prior Acts—This insurance does not apply to **advertising injury or personal injury** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

   As the first publication occurred several months before the beginning of the policy period, Great Northern Insurance Company and Federal Insurance Company cannot owe a duty to indemnify with regard to the *Bernstein* suit under any coverage provided for "advertising injury" or "personal injury."

2. Any damages awarded in the *Bernstein* suit could not arise out of "bodily injury." "Bodily injury" is defined as:

Bart T. Murphy
June 22, 2004
Page 4 of 8

**Bodily injury** means physical:

- Injury
- Sickness, or
- Disease

Sustained by a person and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

Clearly, the plaintiff has not even alleged "bodily injury" as that term is defined above.

3. Any damages awarded in the *Bernstein* suit would not arise out of "property damage." "Property damage" is defined as:

    **Property damage** means:

    - Physical injury to tangible property including the resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    - Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

    To date, we have seen nothing which establishes that the plaintiff or any member of the putative class actually suffered any "property damage" as that term is defined above.

4. The known facts establish that the *Bernstein* suit does not arise out of an "occurrence." "Occurrence" is defined to include "an accident, including continuous or repeated exposure to substantially the same general harmful condition." It does not appear that any damages arising out of the *Bernstein* suit result from an "accident" as required in the definition of "occurrence." In fact, the Fax Broadcasting Agreement dated June 7, 2001 establishes that NCMC was well aware of the risks associated with sending unsolicited fax advertisements under both federal and state law.

5. While our clients dispute that any "property damage" has occurred, to the extent that there was "property damage," it is excluded by the Expected or Intended Exclusion, which provides:

Bart T. Murphy
June 22, 2004
Page 5 of 8

> This insurance does not apply to **bodily injury** or **property damage** which results from an act that:
>
> - is intended by the insured; or
>
> - can be expected from the standpoint of a reasonable person
>
> to cause bodily injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected.
>
> This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect person or property.

Once again, the Fax Broadcasting Agreement dated June 7, 2001 establishes that NCMC was well aware of the risks associated with sending unsolicited fax advertisements under both federal and state law. As such, any damage must fall within the terms of this exclusion.

6. The policies in question do not provide coverage for any award of damages in *Bernstein* that are punitive in nature. In addition, the public policies of the jurisdictions potentially implicated by this claim prohibit insurance companies from covering punitive awards.

7. In Count III (which pertains to the Illinois Consumer Fraud Act), the plaintiff specifically asks for "attorneys fees and litigation expenses." Please note that the policies at issue do not provide coverage for "attorneys fees and litigation expenses" incurred by plaintiffs. In addition, the alleged violation of the Illinois Consumer Fraud Act does not arise out of "bodily injury," "property damage," "advertising injury," or "personal injury."

8. With regard to each of the four counts in the second amended complaint, plaintiff seeks an injunction. Please note that injunctions are not "damages" and, therefore, are not covered under the policies.

In addition to the above, Great Northern Insurance Company and Federal Insurance Company reserve the right to assert the following additional coverage defenses:

1. Any damages awarded in the *Bernstein* suit may not arise out of "advertising injury." "Advertising injury" is defined as:

> Advertising injury means injury, other than bodily injury or personal injury, arising solely out of one or more of the following offenses committed in the course of advertising your goods, products, or services:

Bart T. Murphy
June 22, 2004
Page 6 of 8

- oral or written publication of material that slanders or libels a person or organization;

- oral or written publication of advertising material that violates a person's right of privacy; or

- infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.

2. Any damages awarded in the *Bernstein* suit would not arise out of "personal injury." "Personal injury" is defined as:

> **Personal injury** means injury, other than bodily injury, arising out of one or more of the acts listed below, other than your **advertising** activities.
>
> A. false arrest, detention or imprisonment;
>
> B. malicious prosecution (unless insurance thereof is prohibited by law), except when it arises out of, or is directly or indirectly related to:
>
>    1. the restructure, termination, transfer or collection of any loan, lease or extension of credit; or
>
>    2. the repossession or foreclosure of property which is security for any loan, lease, or extension of credit;
>
> C. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, unless the person or persons are mortgagors of yours or of anyone for whom you are servicing mortgages, by or on behalf of you, its owner, landlord or lessor;
>
> D. oral or written publication of material that slanders or libels a person or organization, except when alleged, charged or suffered by any **customer**;
>
> E. oral or written publication of material that violates a person's right of privacy, except when alleged, charged or suffered by any **customer**; or

Bart T. Murphy
June 22, 2004
Page 7 of 8

    F.    discrimination (unless insurance thereof is prohibited by law) based on race, color, religion, sex, age or national origin, except when alleged, charged or suffered by any:
1. applicant for employment;
2. present or former **employee**;
3. prospective **employee**; or
4. **customer.**

3. The Willful Violations Exclusion may bar coverage. The exclusion provides:

Willful Violations—This insurance does not apply to **advertising injury** or **personal injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured.

At a minimum, this exclusion would bar coverage for damages linked to willful violation of the Illinois Criminal Code (720 ILCS 5/26-3), and any other penal statute or ordinance.

4. To the extent that there is "bodily injury," "property damage," "advertising injury" or "personal injury" (which we dispute), coverage is only available for "bodily injury" and "property damage" which occurs during the policy period and for "advertising injury" and "personal injury" which arises out of an offense committed during the policy period.

5. To the extent that the damages awarded in *Bernstein* involve any covered "advertising injury" or "personal injury" (which we dispute), coverage would not be available for damages owed to businesses as opposed to persons. This is because the enumerated offense of "oral or written publication of advertising material that violates a person's right of privacy" specifically refers to a "person" rather than to a business.

6. The coverage defenses asserted herein apply to both the primary policy and the commercial umbrella policy.

Great Northern Insurance Company and Federal Insurance Company reserve the right to assert additional coverage defenses as they become known. If you have any additional facts which you would like us to consider, please provide them to us as soon as possible.

Great Northern Insurance Company will continue to provide for NCMC's defense pursuant to reservation of rights. However, it reserves the right to withdraw its defense of the

Bart T. Murphy
June 22, 2004
Page 8 of 8

*Bernstein* suit in the event that a court determines that it does not owe a duty to defend or indemnify. We ask that you provide copies of any defense invoices reflecting work performed on or after the date of tender (August 27, 2003) to us at your earliest convenience.

Your client may wish to adjourn the scheduled mediation so that it may put its prior carrier on notice, and so that it may review this letter and respond with any additional facts or pleadings it feels may impact Great Northern Insurance Company's and Federal Insurance Company's decision on indemnity.

If your client disagrees with the position taken regarding this matter, it may have the matter reviewed by the California Department of Insurance. The address and telephone number are as follows:

> California Department of Insurance
> Claim Services Bureau
> 200 South Spring Street, 11th Floor
> Los Angeles, California 90013
> (800) 927-4357 or (213) 897-8921

Please do not hesitate to contact me if you have any questions about the above.

Sincerely,

Daniel J. Cunningham

cc:   Michael J. Najewski
      Chubb Group of Insurance Companies
      Sears Tower, Suite 4700
      233 South Wacker Drive
      Chicago, IL 60606

      Financial Guaranty Insurance Brokers, Inc.
      Attn: Mr. Manny Kim
      709 East Colorado Blvd., Suite 230
      Pasadena, CA 91101