KKM/mmt/368149                                                                         2246-2-75-681

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NEW CENTURY MORTGAGE CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 05 C 2370 |
| | ) | |
| v. | ) | Judge: Coar |
| | ) | |
| GREAT NORTHERN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, | ) ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS GREAT NORTHERN'S AND FEDERAL'S MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) | |

FILED
SEP 29 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PROCEDURAL HISTORY | 1 |
| III. | SUMMARY OF UNDISPUTED FACTS | 2 |
| | A. The Insurance Policies at issue | 2 |
| | B. NCMC's Transmission of Unsolicited Facsimiles | 2 |
| | C. The Underlying Lawsuit | 3 |
| | D. The Settlement of The Underlying Lawsuit | 4 |
| IV. | ARGUMENT | 4 |
| | A. Standard For Summary Judgment | 4 |
| | B. The Cause of Action for Breach of the Duty To Settle Is Not Applicable to This Case | 5 |
| | C. Great Northern and Federal Do No Owe A Duty to Indemnify NCMC for the $1.95 Million Settlement | 6 |
| |     1. Any Damages Paid By NCMC For Property Damage Are Not Covered Because They Do Not Arise Out of An Occurrence | 7 |
| |     2. Advertising Injury Coverage Does Not Apply to Damages Flowing From Violation of The Telephone Consumer Protection Act | 9 |
| |     3. NCMC Cannot Meet Its Burden of Proof of Showing That An "Offense" Took Place During the Policy Period | 12 |
| |     4. The Prior Acts Exclusion Bars Coverage | 14 |
| |     5. NCMC's Charitable Donations Are Not Covered Damages | 15 |
| V. | CONCLUSION | 15 |

#276728

# TABLE OF AUTHORITIES

*American States Ins. Co. v. Capital Associates of Jackson County*, 392 F.3d 939 (7th Cir. 2004)..................................................................................................................1, 7, 8, 9

*Applied Bolting Technology Products, Inc. v. US Fidelity & Guar. Co.*, 942 F. Supp. 1029 (E.D.Penn. 1996)..................................................................................................14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).........................5

*Cramer v. Ins. Exchange Agency*, 174 Ill.2d 513, 675 N.E.2d 897 (Ill. 1996)....................5

*Crum & Forster Managers Corp. v. Resolution Trust Corporation*, 156 Ill.2d 384, 620 N.E.2d 1204 (1992)..........................................................................................................12

*Haddick v. Valor Insurance*, 198 Ill.2d 409, 763 N.E.2d 299 (Ill. 2001)............................5

*Hamlin Inc. v. Hartford Acc. & Indem. Co.*, 86 F.3d 93, 94 (7th Cir. 1996)......................13

*Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 1999 WL 1072819 (S.D.N.Y. 1999)........14

*Hultz v. Federated Mutual Ins. Co.*, 817 F. Supp. 59 (C.D.Ill. 1993)................................11

*International Sci & Technology Ins. v. Inacom Communications, Inc.*, 131 F.3d 1146 (4th Cir. 1997)..........................................................................................................................10

*Monticello Ins. Co. v. Wil-Freds Construction, Inc.*, 277 Ill.App.3d 697, 661 N.E.2d 451 (2nd Dist. 1996)...................................................................................................................7

*Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 607 N.E.2d 1204 (1992)..................................................................................................................................12

*Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631 (4th Cir. 2005)....................................................................................................................................8

*St. Michael's Orthodox Catholic Church v. Preferred Risk Mutual Ins. Co.*, 496 N.E.2d 1176 (1st Dist. 1986)..........................................................................................................12

*Superperformance International, Inc. v. Hartford Casualty Ins. Co.*, 203 F. Supp.2d 587 (E.D.Va. 2002)..................................................................................................................14

*Texas v. American Blast Fax, Inc.*, 121 F. Supp.2d 1085 (D.Tex. 2000).........................10

*Tradesoft Technologies, Inc. v. Franklin Mut. Ins. Co., Inc*, 329 N.J. Super. 137, 746 A.2d 1078 (2000).....................................................................................................................14

*Valley Forge Ins. Co., et al. v. Swiderski Electronics, Inc.*, 2005 WL 2045639 (2nd Dist. 2005)...............................................................................................................................11, 12

*West American Ins. Co. v. Vago*, 197 Ill.App.3d 131, 553 N.E.2d 1181 (2nd Dist. 1990)..........12

#277169

I.  **Introduction**

In this action, NCMC seeks insurance coverage for a $1.95 million settlement it paid to resolve claims arising out of its transmission of unsolicited fax advertisements in violation of state and federal law. In the underlying case, which is styled *Bernstein v. New Century Mortgage Corporation, et al.*, Case No. 02 CH 06907 (Circuit Court of Cook County, Illinois, Chancery Division), Great Northern Insurance Company and Federal Insurance Company fully defended NCMC pursuant to a reservation of rights, but exercised their right not to contribute to the settlement of the suit upon confirming that any damages awarded in the case could not possibly be covered under the policies at issue. As NCMC did not (and cannot) allege breach of the duty to defend, the only issue properly before the court is whether Great Northern and Federal must indemnify NCMC for the settlement amount. As explained below, NCMC is not entitled to indemnification because the Seventh Circuit has already determined that claims arising out of unsolicited facsimile advertising are not covered under general liability policies. *American States Insurance Company v. Capital Associates of Jackson County*, 392 F.3d 939 (7th Cir. 2004). As such, Great Northern and Federal are entitled to summary judgment as to all counts in NCMC's complaint.

II.  **Procedural History**

NCMC first filed this action in Hennepin County, Minnesota. As this dispute has no connection with the State of Minnesota, Great Northern and Federal brought a motion to dismiss the case based on the doctrine of *forum non conveniens*. Before the Minnesota court could resolve the motion to dismiss, NCMC filed a motion for summary judgment seeking resolution of numerous substantive coverage issues. In order to oppose that motion, Great Northern and Federal were compelled to conduct a substantial amount of written discovery. Rather than

duplicate that discovery in this case, Great Northern and Federal will rely on many of the admissions and discovery responses provided by NCMC in the Minnesota action.

The Minnesota state court eventually granted the insurers' motion to dismiss, finding that Minnesota was not an appropriate forum for this dispute. The court did not rule on NCMC's motion for summary judgment. A copy of the court's ruling on the forum issue as well as some other substantive issues is attached to the Affidavit of Daniel J. Cunningham as Exhibit 1. Upon dismissal of the Minnesota action, plaintiff filed this action in the Circuit Court of Cook County, and defendants removed it to the Northern District of Illinois.

### III. <u>Summary of Undisputed Facts</u>

#### A. <u>The Insurance Policies At Issue</u>

Great Northern issued primary policy number 3539-77-36 to New Century Financial Corporation, with an effective period of February 3, 2002 to February 3, 2003. See Great Northern and Federal's Rule 56.1 Statement of Undisputed Material Facts in Support of Their Motion For Summary Judgment ("UF") at ¶ 5. The primary policy has a $1 million limit of liability for each occurrence or offense. Federal issued commercial umbrella policy number 7977-03-85, with an effective period identical to the Great Northern policy described above. UF at ¶ 14. The commercial umbrella policy has a limit of $20 million per occurrence or offense. The relevant language from each policy is summarized in the Statement of Undisputed Material Facts submitted herewith.

#### B. <u>NCMC's Transmission of Unsolicited Facsimiles</u>

NCMC arranged for the transmission of unsolicited facsimiles by entering into a contract with a fax broadcasting company called Fax.com. UF at ¶ 27. All of the unsolicited facsimiles

2

involved the same advertisement. UF at ¶ 28. Fax.com provided services to NCMC pursuant to a Fax Broadcasting Agreement dated June 7, 2001 which provides:

> **11. Legal Issues Re Broadcasting.** Buyer acknowledges that Buyer is aware that Seller's faxing of Buyer's commercial messages/advertisements on behalf of Buyer presents significant legal issues and risks. Buyer acknowledges that Seller has made no representations, promises or assurances to Buyer in this regard, and Buyer has had the opportunity to consult with its own legal counsel with respect to the federal Telephone Consumer Protect Act and applicable state law regarding transmissions by fax of unsolicited commercial messages/advertisements and the risks attended thereto. The parties also acknowledge and agree that Seller shall have no indemnity obligations to Buyer unless a separate written indemnity agreement is made and executed by the parties concurrently with or subsequent to the date of this Agreement.

UF at ¶ 29.

Fax.com first transmitted the unsolicited advertisement prior to February 3, 2002 (the inception date of the policies at issue). UF at ¶ 30. Fax.com transmitted the advertisement in question approximately 200,000 times prior to the commencement of the Great Northern and Federal policies. UF at ¶ 31.

### C. The Underlying Lawsuit

As a result of NCMC's transmission of the unsolicited fax advertisement, on April 5, 2002 Paul Bernstein filed a putative class action lawsuit in the Circuit Court of Cook County, Illinois, Chancery Division, Civil Action No. 02 CH 06907. UF at ¶ 32. A second amended complaint was filed on September 30, 2003 (hereinafter the "*Bernstein* suit" or "underlying action") alleging claims for violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and Conversion. UF at ¶ 33. The plaintiff in the underlying suit sought damages and injunctive relief arising out of his alleged receipt of an unsolicited fax advertisement from NCMC. UF at ¶ 34. The underlying plaintiff also attempted to establish a class action suit on behalf of all persons with Illinois phone numbers who received the fax in question within a certain time period. UF at ¶ 35. The

3

underlying complaint alleged that the faxes were sent as a part of a mass broadcasting of faxes and that the unsolicited advertisement included graphics, bold headlines and words, which caused the consumption of large amounts of toner and ink. UF at ¶ 36. By letter dated January 7, 2004, Great Northern Insurance Company and Federal Insurance Company agreed to defend NCMC subject to a reservation of rights to deny the duty to indemnify. UF at ¶ 39.

### D. Settlement of The Underlying Lawsuit.

NCMC's counsel informed Great Northern and Federal that they were interested in negotiating a settlement of the underlying suit. Having confirmed that any damages awarded in the underlying suit could not possibly be covered under the policies at issue, Great Northern and Federal declined to contribute to any settlement, but agreed to continue funding NCMC's defense in the underlying suit. UF at ¶ 40.

By letter dated August 10, 2004, NCMC's coverage counsel, Gauntlett & Associates, informed Great Northern and Federal that NCMC had "agreed to resolve the *Bernstein* suit for a total of $1.95 million." UF at ¶ 41. The settlement negotiated by NCMC required payment of $500 to each person that affirmatively lodged a claim as a member of the settlement class. UF at ¶ 44. Ultimately, 67 member of the settlement class asserted claims, meaning NCMC paid a total of $33,500 to parties that claimed to have received unsolicited facsimiles (plus an additional $5,000 incentive award to the named plaintiff). UF at ¶ 45. In addition, the settlement agreement required payment of attorneys' fees to counsel for the class in the amount of $487,500. UF at ¶ 48. NCMC also agreed to pay roughly $300,000 in expenses associated with providing notice of the settlement to potential class members. UF at ¶ 49.

Finally, NCMC agreed that in the event the total settlement amount ($1.95 million) was not depleted by payment of claims to recipients of the advertisement, NCMC would donate the

remainder of the settlement amount directly to certain charities. UF at ¶ 50. As only 67 people asserted claims under the settlement program, NCMC ultimately donated $1,085,000 directly to eighteen separate charities. UF at ¶ 51.

In return for the settlement payments outlined above, the underlying class fully released NCMC from all of the state and federal claims including all statutory and common law causes of action that the class asserted or could have asserted in the underlying suit. UF at ¶ 52. The settlement agreement does not allocate the settlement payments among the various state and federal claims asserted against NCMC. UF at ¶ 53.

## IV. Argument

### A. Summary Judgment Standard

Summary judgment is appropriate where the pleadings and supplemental materials present no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Federal Rules of Civil Procedure* 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). As outlined below, based upon the undisputed facts and the existing case law, there is no genuine issue of material fact that the Great Northern and Federal policies do not provide coverage for the subject settlement. Thus, Great Northern and Federal are entitled to summary judgment as a matter of law.

### B. The Cause of Action for Breach of The Duty to Settle Is Not Applicable To This Case

NCMC's first cause of action against Great Northern and Federal is labeled as "Breach of the Duty to Settle." The second and final cause of action is labeled as "Declaratory Relief Re-Duty to Settle." Both claims purport to seek relief arising out of breach of the "duty to settle." However, under Illinois law, a cause of action for breach of the "duty to settle" only arises in the context of an assertion that an insurer has committed the tort of bad faith by breaching the

covenant of good faith and fair dealing. Such claims arise under Illinois law when an insurer has refused to settle a covered claim for an amount within its policy limits *and the insured thereafter suffers a verdict in excess of the policy limits.* See, e.g., *Cramer v. Insurance Exchange Agency*, 174 Ill.2d 513, 675 N.E.2d 897 (Ill. 1996) *and Haddick v. Valor Insurance*, 198 Ill.2d 409, 763 N.E.2d 299 (Ill. 2001). However, in this case, NCMC has not alleged breach of the covenant of good faith and fair dealing. Indeed, a review of the complaint confirms that this is not a bad faith case and that NCMC has not sought any tort damages. In fact, the request for damages in the complaint specifically seeks *only* damages arising out of breach of contract. Moreover, even if the $1.95 million settlement is covered under the policies (which defendants dispute), that amount falls well within the limits of the Great Northern and Federal policies. Thus, unlike bad faith refusal to settle cases, this is not a case where the insured has been exposed to liability in excess of its policy limits.

As this is not a tort case involving an excess verdict or settlement, plaintiff's repeated use of the phrase "breach of the duty to settle" in its complaint is completely misplaced. No such cause of action exists outside of bad faith litigation and this is not a bad faith case. For this reason alone, Great Northern and Federal are entitled to summary judgment as to both counts in NCMC's complaint.

### C. Great Northern and Federal Do Not Owe A Duty To Indemnify NCMC for The $1.95 Million Settlement

Even if NCMC had properly pleaded its claims as arising out of breach of contract rather than breach of the duty to settle, it still cannot prevail as against Great Northern and Federal. This is because the money that NCMC paid pursuant to the settlement agreement is not covered under the policies at issue. NCMC alleges in its complaint that the settlement is covered under either the coverage applicable to "property damage" or the coverage applicable to "advertising

6

injury." As explained below, neither type of coverage is applicable to NCMC's liability arising out of its unsolicited facsimile advertising

1. **Any Damages Paid By NCMC For Property Damage Are Not Covered Because They Do Not Arise Out of An Occurrence.**

The Great Northern and Federal policies provide coverage for "property damage" only if it was caused by an "occurrence." "Occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same harmful conditions." UF at ¶ 11. Based upon this definition, "property damage" is only covered if it is accidental. Under Illinois law, courts define an accident as an "unforeseen occurrence, usually of untoward or disastrous character or an undesigned sudden or unexpected event of inflictive or unfortunate character." *Monticello Ins. Co. v. Wil-Freds Construction, Inc.*, 277 Ill.App.3d 697, 703, 661 N.E.2d 451, 455 (2nd Dist. 1996). The natural and ordinary consequences of an act do not constitute an occurrence. *Id.*

NCMC contends that the property damage at issue is the loss of paper, toner and ink suffered by the recipients of the unsolicited facsimile. UF at ¶ 37. If this loss of use of toner, ink, and paper is actually "property damage" (which Great Northern and Federal do not concede), then that "property damage" cannot possibly arise out of an accident because the Seventh Circuit has unequivocally concluded that any property damage caused by the transmission of a fax is not accidental, and therefore does not arise out of an "occurrence." *American States Insurance Company v. Capital Associates of Jackson County*, 392 F.3d 939 (7th Cir. 2004). *Capital Associates* involved an underlying class action lawsuit arising out of an unsolicited advertisement sent by Capital Associates to the fax machine of JC Hauling Company in violation of 47 U.S.C. §227 (b)(1)(C). In the first published federal appellate decision to address these types of claims, the Seventh Circuit concluded that an insurance company owed

7

neither a duty to defend nor a duty to indemnify with regard to an underlying lawsuit virtually identical to the suit at issue in this action. The Seventh Circuit expressly held that the consequential damages from sending an unsolicited facsimile are not covered by a CGL policy. *Capital Associates*, 392 F.3d at 943. The court reasoned that while senders may be uncertain whether particular faxes violate §227(b)(1)(C), all senders know exactly how faxes deplete recipients' consumables "... junk faxes use up the recipients' ink and paper, but senders anticipate that consequence" and that "[b]ecause every junk fax invades the recipient's property interest in consumables, this normal outcome is not covered." *Id.* In fact, the Seventh Circuit concluded, "this issue is not [even] close."

Similarly, in *Resource Bankshares Corporation v. St. Paul Mercury Ins. Co.*, 407 F.3d 631 (4th Cir. May 11, 2005), the Fourth Circuit examined whether allegations of fax blasting in an underlying lawsuit constituted property damage caused by an occurrence under an insurance policy issued by St. Paul Mercury Insurance Company. The court first noted that coverage for property damage is only for actions that are reasonably termed to be an accident. *Id.* at 637. The determination of whether there is an accident is based on whether the incident or injury is an event which creates an effect that is not the natural or probable consequence of the mean employed and is not intended, designed or reasonably anticipated. *Id.* Based on this definition, the Fourth Circuit found that there was no "property damage" caused by an occurrence and stated further that:

> It is obvious to anyone familiar with a modern office that receipt [of a fax] is a "natural or probable consequence" of sending a fax, and receipt alone occasions the very property damage the TCPA was written to address: depletion of the recipient's time, toner and paper, and occupation of the fax machine and phone line.
> *Id.* at 369.

8

In the present case, NCMC executed a contract pursuant to which it specifically arranged to use toner, ink and paper by having the advertisement faxed to thousands of recipients. UF at ¶ 29. Of course, anyone who transmits a fax necessarily knows that the fax will be printed by the recipient, thereby using the recipient's toner, paper and ink. To suggest otherwise completely defies logic. Accordingly, based on the Seventh Circuit's analysis in *American States*, any money paid in the settlement for property damage cannot be covered because it did not arise out of an "occurrence"" as the term is used in the Great Northern and Federal policies.[1]

2. **Advertising Injury Coverage Does Not Apply to Damages Flowing From Violation of The Telephone Consumer Protection Act.**

According to the definition of "advertising injury," the policies provide coverage for damages arising out of "publication of ... material that violates a person's right of privacy." UF at ¶ 9. NCMC is not entitled to coverage because the TCPA violations do not arise out of the "publication of material." In *Capital Associates*, the Seventh Circuit analyzed whether the offense of oral or written publication of material that violates a person's right of privacy was implicated by allegations of fax blasting in an underlying lawsuit. The Seventh Circuit found that not all violations of privacy rights are covered under the definition of advertising injury. Instead, based on the clear language of the policy, only those violations which involve the publication of material are potentially covered. *Capital Associates*, 392 F.3d at 942. The Seventh Circuit identified two privacy rights, secrecy and seclusion, and concluded that only the right to secrecy involves a potentially covered publication of material. The Seventh Circuit expressly disapproved of TCPA decisions wherein the courts "...failed to distinguish secrecy from seclusion, or to appreciate that the statute's drafters and the insurance may use the word privacy in different ways." *Id.* at 943. The Seventh Circuit concluded further that the TCPA

---

[1] For similar reasons, the exclusion in the policies for "expected or intended" injury would bar coverage.

9

does not protect against the publication of secret material. In fact, the content of the unsolicited advertisement is completely irrelevant to the question of whether a party has violated the TCPA. The Court expressly found that the TCPA "condemns a particular means of communicating an advertisement, rather than the contents of that advertisement – while an advertising-injury coverage deals with information content." *Id.*

Likewise, in *Resource Bankshares*, the Fourth Circuit analyzed the offense of the violation of a person's right to privacy and whether allegations of fax blasting would be covered. The court explicitly stated its approval of the court's analysis in *Capital Associates*, and held that the policies at issue did not cover the sorts of privacy invasions envisioned by the TCPA's unsolicited fax prohibition.[2] The court reasoned:

> "... if the [TCPA] class action complaint alleges any violation of privacy, it is "seclusion" privacy. It is concerned with the manner of the advertisement. In contrast, the advertising injury offense part of the policy is exclusively concerned with those types of privacy, ... which like secrecy, are implicated by content of the advertisements."

Just as in *Capital Associates* and *Resource Bankshares*, NCMC is not alleged to have violated the underlying claimants' right to privacy by publishing secret material. In fact, the content of the advertisement in question did not reveal anything about the underlying claimants at all. UF at ¶ 38. Rather, the unsolicited facsimile simply advertised the loans offered by

---

[2] Great Northern and Federal do not concede that Congress intended the relevant section of the TCPA to protect privacy interests. The legislative history shows that Congress had two distinct concerns in enacting the TCPA – unsolicited telephone calls into the home and unsolicited facsimiles to businesses. Congress' only concern in prohibiting junk faxes was economic:

> Facsimile machines are designed to accept, process and print all messages . . . The fax advertiser takes advantage of this basic design by sending advertisements to available fax numbers, knowing that [they] will be received and printed by the recipient's machine. This type of telemarketing is problematic for two reasons. First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax.

S. Rep. No. 102-178, at 1 (emphasis added), reprinted in 1991 U.S. Code Cong. & Admin. News, at 1968; *see International Sci & Technology Inst. V. Inacom Communications, Inc.*, 106 F.3d 1146, 1150 (4th Cir. 1997); *Texas v. American Blast Fax, Inc.*, 121 F. Supp. 2d 1085, 1091 (D.Tex. 2000).

10

NCMC. UF at ¶ 38. Moreover, the claimants in the underlying lawsuit did not assert a cause of action for violation of the right of privacy. In fact, the word "privacy" does not appear anywhere in the operative complaint. Instead of seeking damage arising out of any privacy torts, the claimants limited their request for compensation solely to the damages available for the illegal conversion of property and the statutory penalties available under the TCPA and the ICFA. In the absence of proof of damages arising out of the publication of material that violates a person's right of privacy, NCMC is not entitled to indemnification for any settlement or judgment and Defendants' Motion For Summary Judgment should be granted.

NCMC may argue that this court should apply the reasoning recently employed by an Illinois appellate court in *Valley Forge Ins. Co., et al. v. Swiderski Electronics, Inc.*, 2005 WL 2045639 (2nd Dist. 2005), where the Court found that a fax blasting claim gave rise to the duty to defend under the advertising injury provisions contained within a CGL policy. However, Illinois Federal District Courts are bound to follow Seventh Circuit pronouncements of law. *Hultz v. Federated Mutual Ins. Co.*, 817 F. Supp. 59 (C.D.Ill. 1993)(Court found that where the Seventh Circuit had already ruled on an issue, the Federal District Court was required to follow the precedent set by the Seventh Circuit, and not the precedent set by the State Appellate District Court in which the Federal District Court was located). The Seventh Circuit has already ruled on this issue in *Capital Associates*. As a result, this Court is bound to follow the pronouncement of the Seventh Circuit that fax blasting claims are not covered under the advertising injury provisions contained within CGL policies.

Moreover, unlike *Valley Forge*, the present case only concerns the duty to indemnify, as Great Northern already provided a defense under a reservation of rights to NCMC in connection with the underlying suit. The analysis of whether an insurer owes a duty to indemnify is

11

substantially different from the analysis pertaining to the duty to defend. Simply because a duty to defend may exist does not mean there is a duty to indemnify. *West American Ins. Co. v. Vago*, 197 Ill.App.3d 131, 553 N.E.2d 1181 (2nd Dist. 1990). While an insurer can owe a duty to defend if the allegations and known facts merely suggest the potential for coverage, an insurer owes a duty to indemnify only if the actual facts establish that the damages paid are *actually* covered under the policy. *Crum & Forster Managers Corp.*, 156 Ill.2d 384, 398, 620 N.E.2d 1073, 1081; *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 127, 607 N.E.2d 1204, 1221 (1992). Unlike the duty to defend, the factual allegations made against the insured do not control the question of whether an insurer has a duty to indemnify. Rather, irrespective of the factual allegations in the complaint, the duty to indemnify is triggered when the damages paid by the insured, through settlement of judgment, actually fall within the scope of coverage afforded by the policies. *Hamlin Inc. v. Hartford Acc. & Indem. Co.*, 86 F.3d 93, 94 (7th Cir. 1996). The *Valley Forge* court never addressed the insurer's duty to indemnify, and as a result, the decision fails to shed light on the issue at hand. In addition, as set forth in further detail below, unlike *Valley Forge*, the facts in the present case provide that even if there was a publication resulting in an invasion of privacy (which Defendants do not concede), not only would NCMC be unable to satisfy its burden of proof that the offense took place during the policy period, but the Prior Acts Exclusion would also apply to bar coverage.

### 3. NCMC Cannot Meet Its Burden Of Proof Of Showing That An "Offense" Took Place During The Policy Period.

NCMC cannot meet its burden of proof showing that there was an "offense" which took place during the policy period at issue. Under Illinois law, the existence of coverage is an essential element of the insured's case, and the insured has the burden of proving that the loss falls within the terms of the policy. *St. Michael's Orthodox Catholic Church v. Preferred Risk*

12

*Mutual Ins. Co.*, 496 N.E.2d 1176 (1st Dist. 1986). The Great Northern policy provides that "[t]his insurance applies to advertising injury or personal injury caused by an offense committed during the policy period." UF at ¶ 6 and 15.

Pursuant to the terms of the policy, NCMC has the burden of proving that the offense did in fact take place during the policy period. To determine whether there is "advertising injury" or "personal injury" coverage, the court must focus upon the date of the event which caused the alleged injury, and that date must fall within the policy period. NCMC expressly admits in its answers to Defendants' First Set of Interrogatories that it lacks sufficient information to identify the dates upon which the claimants in the underlying action received the facsimile in question. UF at ¶ 55. Consequently, as NCMC has failed to provide evidence establishing that an offense occurred during the policy period, Great Northern and Federal cannot owe coverage for the settlement.

As set forth above, the only issue remaining is whether Great Northern and Federal have a duty to indemnify NCMC in connection with the amounts allegedly paid toward settlement. Unlike the duty to defend which is decided based upon the allegations in the underlying complaint, the duty to indemnify is triggered when the damages paid by the insured, through settlement of judgment, *actually* (not potentially) fall within the scope of coverage afforded by the policies. *Hamlin Inc. v. Hartford Acc. & Indem. Co.*, 86 F.3d 93, 94 (7th Cir. 1996). Not only has NCMC failed to meet its burden of showing that the actual facts bring this claim within coverage, but, NCMC has also affirmatively stated that it lacks sufficient information to prove that the alleged offense took place during the Great Northern and Federal policy periods. As such, there can be no duty on the part of Great Northern and Federal to indemnify NCMC in

13

connection with the amounts allegedly paid to settle this claim as NCMC has failed to meet its burden of proof.

### 4. The Prior Acts Exclusion Bars Coverage.

Even if the court determines that the underlying action involves damages arising out of the publication of material, Great Northern and Federal still will not owe coverage because the Prior Acts Exclusion bars coverage. The policies exclude coverage for "advertising injury or personal injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." UF at ¶ 13. The exclusion serves to protect insurers from claims, such as this one, which arise out of an advertisement which predates the inception of the insurer's policy. Under the plain meaning of this exclusion, Great Northern and Federal cannot owe a duty to indemnify under the portion of the policy applicable to advertising injury if the facsimile advertisement in question was first transmitted before February 3, 2002. As the advertisement was, in fact, published numerous times prior to February 3, 2002, Great Northern and Federal cannot owe a duty to indemnify. UF at ¶¶ 30-31.

Courts throughout the country enforce the Prior Acts Exclusion, when, as is the case here, the advertisement published before the policy period is identical to the advertisement published during the policy period. *See e.g., Applied Bolting Technology Products, Inc. v. U.S. Fidelity & Guar. Co.*, 942 F. Supp. 1029 (E.D.Penn. 1996); *Tradesoft Technologies, Inc. v. Franklin Mut. Ins. Co., Inc.*, 329 N.J. Super. 137, 746 A.2d 1078, 1084 (2000); *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 1999 WL 1072819 (S.D.N.Y. 1999); *Superperformance International, Inc. v. Hartford Casualty Ins. Co.*, 203 F. Supp.2d 587 (E.D.Va. 2002).

14

5.  **NCMC's Charitable Donations Are Not Covered Damages.**

In conjunction with the Settlement Agreement, NCMC paid approximately $1 million to eighteen separate charities, including such organizations as Habitat for Humanity, Junior Achievement, and the Cystic Fibrosis Foundation. UF at ¶ 51. No provision in the Great Northern and Federal policies requires the insurers to indemnify NCMC for charitable donations. Such donations do not constitute "damages which the insured becomes legally obligated to pay by reason of liability imposed by law..." as required by the policies. Great Northern and Federal, therefore, cannot owe a duty to indemnify with regard to the charitable donations.

WHEREFORE, for the reasons set forth herein, Great Northern and Federal respectfully request that summary judgment be entered in its favor and against NCMC, declaring that Great Northern and Federal do not owe an indemnity obligation to NCMC under the policies at issue for money paid in the underlying settlement, and for such other and further relief that this Court deems just and proper.

> GREAT NORTHERN INSURANCE COMPANY
> FEDERAL INSURANCE COMPANY
>
> By: _____
>    One of their Attorneys

Daniel J. Cunningham
Kathy Karaboyas Malamis
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6308
(312) 627-4000

15