KK2//mmt/275628

2246-42

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEW CENTURY MORTGAGE CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 05C2370 |
| ) | |
| ) | Judge Coar |
| v. ) | |
| ) | |
| GREAT NORTHERN INSURANCE ) | |
| COMPANY, FEDERAL INSURANCE ) | |
| COMPANY ) | |
| ) | |
| Defendants. ) | |

**GREAT NORTHERN INSURANCE COMPANY'S AND
FEDERAL INSURANCE COMPANY'S RULE 56.1(a)(3) STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

**Description of The Parties**

1. Plaintiff, New Century Mortgage Corporation, alleges that it is a corporation duly organized and existing under the laws of the State of California with its offices at 18400 Von Karman, 10th Floor, Irvine, California. (Adversary Complaint, styled *New Century Mortgage Corp. v. Great Northern Ins. Co. and Federal Ins. Co.*, Case No. 05 C 2370 (formerly Case No. 05 CH 05371 Circuit Court of Cook County, Chancery Division) ¶1).

2. Defendant Great Northern Insurance Company is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business in New Jersey. (Adversary Complaint, styled *New Century Mortgage Corp. v. Great*

*Northern Ins. Co. and Federal Ins. Co.*, Case No. 05 C 2370 (formerly Case No. 05 CH 05371 Circuit Court of Cook County, Chancery Division) ¶2).

3. Defendant Federal Insurance Company is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in New Jersey. (Adversary Complaint, styled *New Century Mortgage Corp. v. Great Northern Ins. Co. and Federal Ins. Co.*, Case No. 05 C 2370 (formerly Case No. 05 CH 05371 Circuit Court of Cook County, Chancery Division) ¶3).

### Jurisdiction

4. Jurisdiction is proper under the provisions of 28 U.S.C. §1332(a) (Diversity of Citizenship). This case was removed by the Insurer Defendants pursuant to the provisions of 28 U.S.C. §1441 on April 21, 2005. (Defendants, Great Northern and Federal Insurance Company's Notice of Removal, filed on April 21, 2005.)

### The Great Northern Policy

5. Great Northern issued primary policy number 3539-77-36 to New Century Financial Corporation, with an effective period of February 3, 2002 to February 3, 2003. [See Affidavit of Daniel J. Cunningham (hereinafter "Cunningham Affidavit") at ¶ 4, Exh. 2].

6. The Great Northern policy contains the following insuring agreement:

"We will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract for:

- Bodily injury or property damage to which this insurance applies caused by an occurrence; or

- Advertising injury or personal injury to which this insurance applies caused by an offense.

\* \* \*

2

This insurance applies to:

- Bodily injury or property damage which occurs during the policy period; and

- Advertising injury or personal injury caused by an offense committed during the policy period.

[See Cunningham Affidavit at ¶ 4, Exh. 2].

7. The Great Northern policy defines "bodily injury" as "bodily injury" means physical:

- Injury,

- Sickness, or

- Disease

Sustained by a person, and if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

[See Cunningham Affidavit at ¶ 4, Exh. 2].

8. The Great Northern primary policy defines "property damage" as:

Property damage means:

- Physical injury to tangible property including the resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

[See Cunningham Affidavit at ¶ 4, Exh. 2].

9. The Great Northern primary policy defines "advertising injury" as:

Advertising injury means injury, other than bodily injury or personal injury, arising solely out of one or more of the following offenses committed in the course of advertising your goods, products, or services:

- Oral or written publication of material that slanders or libels a person or organization;

- Oral or written publication of advertising material that violates a person's right of privacy; or

- Infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.

[See Cunningham Affidavit, ¶ 4, Exh. 2].

  10.  The Great Northern policy defines "personal injury" as:

Personal injury means injury, other than bodily injury, arising out of one or more of the acts listed below, other than your advertising activities:

  A.  false arrest, detention or imprisonment;

  B.  malicious prosecution (unless insurance thereof is prohibited by law), except when it arises out of, or is directly or indirectly related to:

    1. the restructure, termination, transfer or collection of any loan, lease or extension of credit; or

    2. the repossession or foreclosure of property which is security for any loan, lease, or extension of credit;

  C.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, unless the person or persons are mortgagors of yours or of anyone for whom you are services mortgages, by or on behalf of you, its owner, landlord or lessor;

  D.  oral or written publication of material that slanders or libels a person or organization, except when alleged, charged or suffered by any customer;

  E.  oral or written publication of material that violates a person's right of privacy, except when alleged, charged or suffered by any customer, or

  F.  discrimination (unless insurance thereof is prohibited by law) based on race, color, religion, sex, age or national origin, except when alleged, charged or suffered by any:

4

    1. applicant for employment
    2. present or former employee;
    3. prospective employee; or
    4. customer.

[See Cunningham Affidavit, ¶ 4, Exh. 2].

  11. The Great Northern primary policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." [See Cunningham Affidavit at ¶ 4, Exh. 2].

  12. The Great Northern primary policy includes the following relevant Bodily Injury/Property Damage Exclusions:

> B. Expected or Intended Injury – This insurance does not apply to bodily injury or property damage which results from an act that:
>
> - is intended by the insured; or
> - can be expected from the standpoint of a reasonable person
>
> to cause bodily injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected.
>
> This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect person or property.

[See Cunningham Affidavit at ¶ 4, Exh. 2].

  13. The Great Northern primary policy includes the following relevant Advertising Injury Exclusions:

> A. Prior Acts – This insurance does not apply to advertising injury or personal injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.
>
> B. Willful Violations – This insurance does not apply to advertising injury or personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured.

[See Cunningham Affidavit at ¶ 4, Exh. 2].

5

### Federal Insurance Policy

14. Federal issued commercial umbrella policy number 7977-03-85, with an effective period identical to the Great Northern policy described above. [See Cunningham Affidavit at ¶ 5, Exh. 3].

15. Under Coverage A, the Federal Umbrella policy provides that Federal will pay on behalf of the insureds that part of the loss in excess of the total applicable limits of "underlying insurance, provided the injury or offense takes place during the Policy Period of this policy." [See Cunningham Affidavit at ¶ 5, Exh. 3].

16. The terms and conditions of the "underlying insurance" are incorporated into Coverage A. [See Cunningham Affidavit at ¶ 5, Exh. 3].

17. The Great Northern primary policy is the applicable "underlying insurance" in this matter. [See Cunningham Affidavit at ¶ 5, Exh. 3].

18. Under Coverage A, the Federal umbrella policy provides that Federal has the right and duty to assume control of the investigation, settlement or defense of any claim or suit against the insured for damages covered by the policy only after the applicable limit of underlying insurance has been exhausted by the payment of claims. [See Cunningham Affidavit at ¶ 5, Exh. 3].

19. Under Coverage A, the Federal Umbrella policy excludes an "Underlying Insurance Exclusion" which bars coverage for "any liability excluded by underlying insurance." [See Cunningham Affidavit at ¶ 5, Exh. 3].

20. Under Coverage B, the Federal Umbrella policy provides that Federal will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury, property damage,

personal injury or advertising injury covered by this insurance which takes place during the Policy Period of this policy and is caused by an "occurrence." [See Cunningham Affidavit at ¶ 5, Exh. 3].

21.  The Federal umbrella policy further provides that Coverage B does not apply to any loss, claim, or suit for which this insurance is afforded by "underlying insurance" or for which insurance would have been afforded except for the exhaustion of the limits of insurance of underlying insurance. [See Cunningham Affidavit at ¶ 5, Exh. 3].

22.  Under Coverage B, the definition of "property damage" is substantially similar to the definition set forth in the Great Northern primary policy. [See Cunningham Affidavit at ¶ 5, Exh. 3].

23.  Under Coverage B, the definition of "advertising injury" is substantially similar to the definition set forth in the Great Northern primary policy. [See Cunningham Affidavit at ¶ 5, Exh. 3].

24.  Under Coverage B, the Federal umbrella policy defines "occurrence," as:

Occurrence means:

1. with respect to bodily injury or property damage liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2. with respect to personal injury or advertising injury, a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same occurrence, regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

[See Cunningham Affidavit at ¶ 5, Exh. 3].

25. Under Coverage B, the Federal umbrella policy contains the following "Intentional Acts" exclusion:

> Under Coverage B, this insurance does not apply to:
>
> Bodily injury or property damage which results from an act that is intended by the insured or can be expected from the standpoint of a reasonable person to cause bodily injury or property damage, even if the injury is of a different degree or type than actually intended or expected.

[See Cunningham Affidavit at ¶ 5, Exh. 3].

26. Under Coverage B, the Federal umbrella policy contains the following "Falsity, Prior Publication, Willful Violation" exclusion:

> Under Coverage B, this insurance does not apply to:
>
> Personal injury or advertising injury arising out of:
>
> 1. oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;
>
> 2. oral or written publication of material whose first publication took place before the beginning of the policy period; or
>
> 3. willful violation of a penal statute or ordinance committed by or with the consent of the insured.

[See Cunningham Affidavit at ¶ 5, Exh. 3].

### NCMC's Transmission of Unsolicited Facsimiles

27. NCMC intentionally arranged for the transmission of unsolicited facsimiles. [See Cunningham Affidavit at ¶ 6, Exh. 4, Plaintiff's Response to Requests for Admission ("RFA") Nos. 8, 9, 10, 11, 12, 15, 16, 17, 19, and 23].

28. All of the unsolicited facsimiles involved the same advertisement. [See Cunningham Affidavit at ¶ 6, Exh. 4, Plaintiff's Response to RFAs 15, 17, 66, 67, 69 and 71].

29.  Fax.com provided services to NCMC pursuant to a Fax Broadcasting Agreement dated June 7, 2001 which provides:

> **11. Legal Issues Re Broadcasting.** Buyer acknowledges that Buyer is aware that Seller's faxing of Buyer's commercial messages/advertisements on behalf of Buyer presents significant legal issues and risks. Buyer acknowledges that Seller has made no representations, promises or assurances to Buyer in this regard, and Buyer has had the opportunity to consult with its own legal counsel with respect to the federal Telephone Consumer Protect Act and applicable state law regarding transmissions by fax of unsolicited commercial messages/advertisements and the risks attended thereto. The parties also acknowledge and agree that Seller shall have no indemnity obligations to Buyer unless a separate written indemnity agreement is made and executed by the parties concurrently with or subsequent to the date of this Agreement.

[See Cunningham Affidavit at ¶ 6, Exh. 4, Plaintiff's Response to RFAs 8, 9, 10, 11, and 12].

30.  Fax.com first transmitted the unsolicited advertisement prior to February 3, 2002 (the inception date of the policies at issue). [See Cunningham Affidavit at ¶ 6 and ¶ 7, Exh's. 4 and 5, Plaintiff's Response to RFA's 6, 8, 9, 66, 67, 69, 70, 71 and 72 and Plaintiff's Response to Interrogatory No. 21]

31.  Fax.com transmitted the advertisement in question approximately 200,000 times prior to the commencement of the Great Northern and Federal policies on February 3, 2002. [See Cunningham Affidavit at ¶ 7, Exh. 5, Plaintiff's Response to Interrogatory No. 21].

### The Underlying Lawsuit

32.  The underlying lawsuit was filed on April 5, 2002. [See Cunningham Affidavit at ¶ 9, Exh. 7].

33.  A second amended complaint was filed on September 30, 2003 (hereinafter "*Bernstein* suit" or "underlying action") alleging claims for violation of the

9

Telephone Consumer Fraud Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and Conversion. [See Cunningham Affidavit at ¶ 10, Exh. 8].

34. The plaintiff in the underlying suit sought damages and injunctive relief arising out of his alleged receipt of an unsolicited fax advertisement from NCMC. [See Cunningham Affidavit at ¶ 10, Exh. 8].

35. The underlying plaintiff also attempted to establish a class action suit on behalf of all persons with Illinois phone numbers who received the fax in question within a certain time period. [See Cunningham Affidavit at ¶ 10, Exh. 8].

36. The underlying complaint alleged that the faxes were sent as a part of a mass broadcasting of faxes and that the unsolicited advertisement included graphics, bold headlines and words, which caused the consumption of large amounts of toner and ink. [See Cunningham Affidavit at ¶ 10, Exh. 8].

37. NCMC contends that the "property damage" allegedly at issue in the underlying suit is the loss of use of toner, paper, and ink. [See Cunningham Affidavit at ¶ 7, Exh. 5, Response to Interrogatory No. 27].

38. The content of the advertisement in question did not reveal anything about the underlying claimants at all. [See Cunningham Affidavit at ¶ 10, Exh. 8, attachment A].

### Communications Between NCMC, Great Northern Insurance Company and Federal Insurance Company

39. By letter dated January 7, 2004, Great Northern Insurance Company and Federal Insurance Company agreed to defend NCMC subject to a reservation of rights to

deny the duty to indemnity. [See Cunningham Affidavit at ¶ 6, Exh. 4, Plaintiff's Response to RFA No. 51].

40. By letter dated June 22, 2004, counsel for Great Northern and Federal informed counsel for NCMC that the insurers would not contribute to settlement of the action and explained all of the reasons as to why any damages awarded in the suit could not be covered under the policies. [See Cunningham Affidavit at ¶ 6, Exh. 4, Plaintiff's Response to RFA No. 76].

41. By letter dated August 10, 2004, NCMC's coverage counsel, Gauntlett & Associates, informed Great Northern and Federal that NCMC had agreed to resolve the *Bernstein* suit for $1.95 million. [See Cunningham Affidavit at ¶ 11, Exh. 9].

42. As of August 10, 2004, the operative pleading in the underlying suit was the Second Amended Complaint. [See Cunningham Affidavit at ¶ 10, Exh. 8].

43. The parties to the underlying action executed a settlement agreement. [See Cunningham Affidavit at ¶ 12, Exh. 10].

44. The settlement negotiated by NCMC required payment of $500 to each person that affirmatively lodged a claim as a member of the settlement class (assuming the settlement fund was not depleted). [See Cunningham Affidavit at ¶ 12, Exh. 10, pp 9-10].

45. Ultimately, 67 members of the settlement class asserted claims. [See Cunningham Affidavit at ¶ 13, Exh. 11, Plaintiff's Response to Interrogatory No. 2].

46. As only 67 members of the settlement class asserted claims, the settlement agreement required payment of a total of $33,500 to parties that claimed to have received

11

unsolicited facsimiles other than the named plaintiff. [See Cunningham Affidavit at ¶ 12, Exh. 10].

47. The settlement agreement required payment of $5,000 to the named plaintiff, Paul Bernstein. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 10].

48. In addition, the settlement agreement required payment of attorneys' fees to counsel for the class in an amount not to exceed $487,500. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 10].

49. NCMC also agreed to pay roughly $300,000 in expenses associated with providing notice of the settlement to potential class members. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 8].

50. NCMC agreed that in the event the total settlement amount ($1.95 million) was not depleted by payment of claims to recipients of the advertisement, NCMC would donate the remainder of the settlement amount directly to certain charities. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 10].

51. As only 67 people asserted claims under the settlement program, NCMC ultimately donated $1,085,000 directly to eighteen separate charities. [See Cunningham Affidavit at ¶ 14, Exh. 12].

52. In return for the settlement payments outlined above, the underlying class fully released NCMC from all of the state and federal claims including all statutory and common law causes of action that the class asserted or could have asserted in the underlying suit. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 11].

53. The settlement agreement does not allocate the settlement payments among the various state and federal claims asserted against NCMC. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 11].

## NCMC's DISCOVERY RESPONSES IN THIS ACTION

54. Interrogatory number 5 in Defendants' First Set of Interrogatories provides as follows: "Identify the dates upon which each CLAIMANT received the facsimile that entitled the claimant to payment under the SETTLEMENT AGREEMENT." [See Cunningham Affidavit at ¶ 13, Exh. 11].

55. NCMC responded to Defendants' Interrogatory number 5 as follows: " ... Without waiving this objection, NCMC responds that it lacks sufficient information to provide the answer to this interrogatory." [See Cunningham Affidavit at ¶ 13, Exh. 11].

GREAT NORTHERN INSURANCE COMPANY
FEDERAL INSURANCE COMPANY

By: _____
One of their Attorneys

Daniel J. Cunningham
Kathy Karaboyas Malamis
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6308
(312) 627-4000

13