**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NEW CENTURY MORTGAGE CORP.,     )
     )  CASE NO.  05C2370
              Plaintiff,    )
     )  Judge Coar
      v.     )
     )  **PLAINTIFF'S POINTS AND**
GREAT NORTHERN INSURANCE     )  **AUTHORITIES IN OPPOSITION TO**
COMPANY, FEDERAL INSURANCE     )  **CHUBB'S MOTION FOR SUMMARY**
COMPANY,     )  **JUDGMENT**
     )
              Defendants.    )
     )

# TABLE OF CONTENTS

Page

**I.    NCMC SEEKS DAMAGES FROM CHUBB'S BREACH OF CONTRACT** ............ 1

**II.    CHUBB'S RESERVATION OF RIGHTS AND REFUSAL TO PAY ANY DAMAGES ENTITLED NCMC TO SETTLE WITH BERNSTEIN** ........................ 2

    **A.    Illinois Courts Do Not Require the Insured to Prove Actually Covered Damages to Recoup Settlement Expenditures – Just That the Insured Settled a Potentially Covered Claim** ................................................................. 2

    **B.    NCMC Had No Obligation to Obtain Chubb's Consent to Settle**.................... 2

    **C.    Chubb Consented to the Settlement, so the "Voluntary Payments" Provisions Do Not Excuse Chubb's Breach of Its Duty to Settle**...................... 4

**III.    NCMC ESTABLISHES CHUBB'S DUTY TO REIMBURSE NCMC'S SETTLEMENT OF THE *BERNSTEIN* ACTION WHICH IS DISTINCT FROM THE DUTY TO INDEMNIFY A DAMAGE AWARD FOLLOWING AN ADVERSE ADJUDICATION**........................................................................................ 4

    **A.    Illinois' Totality of Circumstances Test**...................................................... 4

    **B.    NCMC's Decision to Settle Was Reasonable, Nor Does Chubb Contend Otherwise** ........................................................................................ 5

    **C.    The Settlement Amount Was Reasonable**..................................................... 6

    **D.    The Settlement Amount Constitutes "Damages"**............................................. 7

**IV.    *CAPITAL ASSOCIATES* IS NOT CONTROLLING** ......................................... 7

**V.    CHUBB OWES REIMBURSEMENT TO NCMC FOR COVERED "ADVERTISING INJURY"** ........................................................................................ 9

    **A.    Illinois' Insurance Policy Construction Mandates Coverage Pursuant to the "Advertising Injury" Offense of "Violation of a Person's Right to Privacy"** ......................................................................................................... 9

    **B.    Coverage Is Appropriate Pursuant to *Capital Associates* Since Bernstein Is an Individual, Not a Company as in *Capital Associates*** ............ 10

    **C.    The Exception Noted by the *Capital Associates* Court – Automated Faxes to Numerous Recipients – Is Satisfied by NCMC's Alleged Transmission to 200,000 Recipients** .................................................................. 10

    **D.    The TCPA's Protection from Unsolicited Facsimiles Is NOT Limited to "Economic" Concerns as Chubb Contends, but Includes Privacy Rights** ................................................................................................................ 11

VI.    CHUBB OWES REIMBURSEMENT FOR COVERED "PROPERTY DAMAGE" ................................................................................................ 12

    A.    The Loss of Tangible Property – Paper and Toner – Was Caused by an "Occurrence" ............................................................................ 12

    B.    Pursuant to *Monticello*, Bernstein's Injury Was An "Occurrence" .............. 13

    C.    Bernstein's Claim Falls Within the Exception Noted by the *Resource Bankshares* Court ............................................................................. 14

VII.    NO EXCLUSIONS EXCUSE CHUBB'S DUTIES UNDER THE POLICIES ......... 14

    A.    Chubb Bears the Burden of Proving the Applicability of Exclusions ............ 14

    B.    Chubb Has Not Met Its Burden to Prove Application of the "Prior Acts" Exclusion ................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Allstate Ins. Co. v. Menards, Inc.*,
   285 F.3d 630 (7th Cir. 2002) ........................................................................................7, 8

*American States Ins. Co. v. Capital Associates of Jackson County, Inc.*,
   392 F.3d 939 (7th Cir. 2004) ...............................................................................8, 10, 13

*Colby v. J.C. Penney Co., Inc.*,
   811 F.2d 1119 (7th Cir. 1987) .....................................................................................8

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64 (1938)........................................................................................................7

*In re HA 2003, Inc.*,
   310 B.R. 710 (Bankr. N.D. Ill. 2004) ..........................................................................3

*Hamlin Inc. v. Hartford Acc. & Indemnity Co.*,
   86 F.3d 93 (7th Cir. 1996) ...........................................................................................4

*Homedics, Inc. v. Valley Forge Ins. Co.*,
   315 F.3d 1135 (9th Cir. (Cal.) 2002) ..........................................................................9

*Hooters of Augusta, Inc. v. American Global Insurance Company*,
   272 F. Supp. 2d 1365 (S.D. Ga. 2003)........................................................................3

*Hultz v. Federated Mutual Ins. Co.*,
   817 F. Supp. 59 (C.D. Ill. 1993) .................................................................................8

*Kush v. American States Ins. Co.*,
   853 F.2d 1380 (7th Cir. 1988) .....................................................................................8

*New York State Conf. of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.*,
   514 U.S. 645, 131 L. Ed. 2d 695, 115 S. Ct. 1671 (1995)..................................11

*Park University Enters. v. American Cas. Co.*,
   314 F. Supp. 2d 1094 (D. Kan. 2004)........................................................................13

*Prime TV, LLC v. Travelers Ins. Co.*,
   223 F. Supp. 2d 744 (N.D.N.C. 2002) .......................................................................13

*Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*,
    126 F.3d 886 (7th Cir. (Ill.) 1997) ...................................................................12

*Reko v. Creative Promotions, Inc.*,
    70 F. Supp. 2d 1005 (D. Minn. 1999)................................................................3

*Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*,
    407 F.3d 631 (4th Cir. 2005) ...........................................................................14

*United States Fire Ins. Co. v. Green Bay Packaging, Inc.*,
    66 F. Supp. 2d 987 (E.D. Wis. 1999).................................................................3

*Western Cas & Sur. Co. v. Polar Panel Co.*,
    457 F.2d 957 (8th Cir. (Minn.) 1972) ...............................................................7

## STATE CASES

*Blue Ridge Ins. Co. v. Jacobsen*,
    25 Cal. 4th 489 (2001) .......................................................................................2

*Commonwealth Edison Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*,
    323 Ill. App. 3d 970 (2001) ...............................................................................3

*Cramer v. Insurance Exchange Agency*,
    174 Ill. 2d 513 (1996) ........................................................................................1

*Guillen v. Potomac Ins. Co. of Ill.*,
    203 Ill. 2d 141 (2003) ............................................................................4, 5, 6, 7

*Haddick v. Valor Insurance*,
    198 Ill. 2d 409 (2001) ........................................................................................1

*Independent Sch. Dist. No. 197 v. Accident & Cas. Ins.*,
    525 N.W.2d 600 (Minn. Ct. App. 1995)............................................................3

*Johnson Press of America, Inc. v. Northern Insurance Co. of New York*,
    339 Ill. App. 3d 864 (1st Dist. 2003) ...............................................................14

*Jostens, Inc. v. CNA Ins./Continental Cas. Co.*,
    403 N.W.2d 625 (Minn. 1987)..........................................................................7

*Lincoln Logan Mut. Ins. Co. v. Fornshell*,
    309 Ill. App. 3d 479 (Ill. App. (4th Dist.) 1999)..............................................13

*Lyons v. State Farm Fire and Casualty Co.*,
    349 Ill. App. 3d 404 (5th Dist. 2004)...............................................................12

*Miller v. Shugart,*
     316 N.W.2d 729 (Minn. 1982)........................................................................3

*Monticello Ins. Co. v. Wil-Freds Construction, Inc.,*
     277 Ill. App. 3d 697 (2d Dist. 1996).........................................................13

*Northern States Power Co. v. Fidelity & Cas. Co.,*
     523 N.W.2d 657 (Minn. 1994).....................................................................7

*Outboard Marine Corp. v. Liberty Mutual Ins. Co.,*
     154 Ill. 2d 90 (1992) .................................................................................9

*Owens ex rel. Owens v. Water Gremlin Co.,*
     605 N.W.2d 733 (Minn. 2000)...................................................................11

*State v. Sebasky,*
     547 N.W.2d 93 (Minn. Ct. App. 1996)......................................................11

*Valley Forge Ins. Co. v. Swiderski Electronics, Inc.,*
     834 N.E.2d 562 (Ill. App. Ct. (2d Dist.) 2005) ..............................9, 10, 11

## DOCKETED CASES

*American States Ins. Co. v. Capital Associates of Jackson County, Inc.,*
     No. 02-00975-DRH, 2003 WL 23278656 (S.D. Ill. Dec. 9, 2003), *reversed,* 392
     F.3d 939 (7th Cir. 2004) ...........................................................................12

*Flodine v. State Farm Ins. Co.,*
     No. 99 C 7466, 2003 WL 1394977 (N.D. Ill. Mar. 18, 2003) .........................2, 5

## FEDERAL STATUTES

47 U.S.C. § 227.......................................................................................................12

47 U.S.C. § 227(b)...................................................................................................11

47 U.S.C. § 227(b)(1)(C).........................................................................................5

47 U.S.C. § 227(b)(3) ...............................................................................................7

47 U.S.C. § 227(c) ..............................................................................................10, 11

I.    **NCMC SEEKS DAMAGES FROM CHUBB'S BREACH OF CONTRACT**

Chubb argues that NCMC has not and cannot properly state a claim for breach of the duty to settle. A claim for breach of the duty to settle is well recognized by Illinois law. See discussion in Section V.A., below. Chubb's argument relies on two inaccurate premises. **First,** Chubb contends that "this is not a case where the insured has been exposed to liability in excess of its policy limits." **[Chubb's P&A's, p. 6]** To the contrary, NCMC was exposed to damages of $300 million – and NCMC reported that damage exposure to Chubb – an amount which is well in excess of policy limits. **[SUF ¶ 37, McCarthy Decl. ¶ 21 (Ex. "K"); and SUF ¶ 40, Lowe Decl. ¶ 3 (Ex. "M")]**

**Second,** Chubb contends that there is no breach of the duty to settle unless the insured suffers a judgment in excess of policy limits, relying on *Cramer v. Insurance Exchange Agency,* 174 Ill. 2d 513 (1996) and *Haddick v. Valor Insurance,* 198 Ill. 2d 409 (2001). **[Chubb's P&A's, p. 6]** These cases merely stand for the principle that a verdict in excess of policy limits after the insurer has rejected a reasonable settlement within policy limits establishes the tort of insurance bad faith that is not preempted by Illinois statute. *Cramer,* 174 Ill. 2d 513, 525 ("When an insurer breaches [the duty of good faith] by refusing to settle, the insurer may be liable for the full amount of a judgment against the policyholder, regardless of policy limits."); *Haddick,* 198 Ill. 2d 409, 415 ("[T]he insurance contract itself does not provide a remedy to the insured faced with a judgment in excess of policy limits; therefore, the law imposes upon the insurer the duty to settle in good faith.").

**Third,** these cases are silent on the proposition Chubb asserts. Since NCMC is not seeking damages in excess of policy limits, NCMC properly seeks recovery of the settlement payment based on Chubb's contractual duty of good faith and fair dealing. The duty to settle is one of Chubb's **contractual** duties pursuant to **the duty of good faith and fair dealing implied in all insurance contracts.** *Cramer,* 174 Ill. 2d 513, 524 ("This contractual covenant [of good faith and fair dealing] is not generally recognized as an independent source of duties giving rise to a cause of action in tort.").

Contrary to Chubb's erroneous proposition, and as discussed in the succeeding section, a long line of cases permits NCMC to settle within policy limits and obtain recovery of the entire settlement payment from Chubb under the facts of this case.

## II.    CHUBB'S RESERVATION OF RIGHTS AND REFUSAL TO PAY ANY DAMAGES ENTITLED NCMC TO SETTLE WITH BERNSTEIN

### A.    Illinois Courts Do Not Require the Insured to Prove Actually Covered Damages to Recoup Settlement Expenditures – Just That the Insured Settled a Potentially Covered Claim

The District Court for the Northern District of Illinois stated in *Flodine* that a settling insured is entitled to reimbursement if it shows that " 'by settling, he was responding to a reasonable **anticipation** of personal liability . . . .' " *Flodine v. State Farm Ins. Co.*, No. 99 C 7466, 2003 WL 1394977, at *9 (N.D. Ill. Mar. 18, 2003) (emphasis added). "An insured who settles without notice to the insurer need not prove that it was **in fact liable** in the principal action . . . ." *Id.* (emphasis added). **This is not an indemnity standard but, rather, relies on the potential for liability.** The *Flodine* court clarified that the insured was entitled to reimbursement not because the insured proved it settled what would have amounted to **actually covered damages** had the matter proceeded to trial but because the insured proved it settled **potentially covered claims.** *Id.* at *7 (emphasis added). Other jurisdictions are in accord. *See Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 498 (2001) (applying California law) (An insurer must accept any reasonable offer to settle a **potentially covered suit** against its insured.).

Here, NCMC and Chubb agreed that the Bernstein claims were potentially covered under the terms of the Chubb policies. NCMC settled the potentially covered claims by agreeing to a settlement in the amount of $1.95 million with each claimant, except Bernstein, receiving the statutory damage amount of $500.

### B.    NCMC Had No Obligation to Obtain Chubb's Consent to Settle

Chubb reserved its rights to deny coverage, agreed to defend NCMC through independent defense counsel of NCMC's choice (Chubb did not pay a dime of NCMC's defense costs until after the tentative settlement of the *Bernstein* Action) given Chubb's reservation of rights and resulting conflict of interest with NCMC ([SUF ¶ 21, McCarthy Decl. ¶ 14 (Ex. "G")]), and had notice of NCMC's intent to settle the *Bernstein* Action ([SUF ¶ 36, McCarthy Decl. ¶ 20 (Ex. "K")]), yet refused to participate in mediation or contribute to a settlement. [SUF ¶ 38, McCarthy Decl. ¶ 22 (Ex. "L"), and SUF ¶ 45, Lowe Decl. ¶ 5 (Ex. "O")] It also agreed that any settlement under $6 million was reasonable, as this was well within their policy limits and given NCMC's potential liability exposure.

So, just as the policyholders in *HA 2003* and *Commonwealth Edison*, NCMC was entitled to enter into a reasonable settlement without Chubb's consent and to then seek reimbursement from Chubb for that settlement. *See In re HA 2003, Inc.*, 310 B.R. 710, 725 (Bankr. N.D. Ill. 2004) ("Illinois courts, along with a majority of courts in other jurisdictions, hold that when an insurer reserves its right to deny coverage, an insured may enter into a reasonable settlement without the insurer's consent and without losing coverage."); and *Commonwealth Edison Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 323 Ill. App. 3d 970, 984-85 (2001) (refusing to apply the "voluntary payments" provision of a policy to deny insured settlement reimbursement – despite insurer's lack of consent to settlement and even though the insurer had not breached its defense duties – because **insurer reserved its rights to deny coverage, agreed to independent defense counsel due to conflict of interest and had notice of insured's intent to settle).** Moreover, Illinois law comports with the law of other jurisdictions. *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982) (An insured can negotiate a settlement with the plaintiff when insurance coverage is in doubt (*id.* at 734) and insured did not breach the cooperation clause by settling directly with the plaintiff while the insurer was contesting coverage. *Id.*).

Addressing this issue in the context of a post-judgment settlement, the court in *United States Fire Ins. Co. v. Green Bay Packaging, Inc.*, 66 F. Supp. 2d 987, 999 (E.D. Wis. 1999), applying Wisconsin law, found that the full amount of the settlement was properly due.

> A duty to indemnify exists if acts occur that are insured against. Where a claim consists of a variety of acts, some of which are covered and others that are not, . . . resulting liability falls within the terms of the insurance policy unless the uncovered risk is the sole cause of damages. . . . Only if the damage award was totally unrelated to the conduct within the coverage of the insurance policy will the insurer not be liable. . . . [T]he insurer has a duty to indemnify.

Applying Georgia coverage law to a TCPA settlement yields the same result. *Hooters of Augusta, Inc. v. American Global Insurance Company*, 272 F. Supp. 2d 1365, 1381 (S.D. Ga. 2003) (While judgment against insured was on appeal, insured settled with plaintiff. In the coverage suit, the District Court obligated the insurers to pay the entire settlement.).

Under Minnesota law, where the liability insurer refuses to defend or provide coverage, the plaintiff and a defendant insured may enter into a *Miller/Shugart* settlement that is collectible only from the defendant's liability insurer. *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005 (D. Minn. 1999); *Independent Sch. Dist. No. 197 v. Accident & Cas. Ins.*, 525 N.W.2d 600

(Minn. Ct. App. 1995). The Illinois Supreme Court agreed with the rationale of *Miller* in *Guillen v. Potomac Ins. Co. of Ill.*, 203 Ill. 2d 141, 163 (2003).

**C.    Chubb Consented to the Settlement, so the "Voluntary Payments" Provisions Do Not Excuse Chubb's Breach of Its Duty to Settle**

After NCMC gave Chubb notice of its intent to settle, Chubb consented to NCMC's settling the *Bernstein* Action for $6 million or less. **[SUF ¶ 36, McCarthy Decl. ¶ 20 (Ex. "K"), and SUF ¶ 42, Lowe Decl. ¶ 4 (Ex. "N")]** While Chubb refused to fund such a settlement, it acknowledged NCMC's right to settle for this amount. *Guillen*, 203 Ill. 2d at 149 ("[I]n the absence of a breach of the duty to defend, an insured must obtain the consent of the insurer before settling with an injured plaintiff."). NCMC agreed to pay the settlement amount out of its own funds without any promise by Chubb to pay even a portion of the settlement, thereby demonstrating proof of reasonableness and the absence of fraud or collusion.

Indeed, NCMC obtained Chubb's agreement that a settlement of less than $6 million was reasonable before negotiating with Bernsein. No further evidence is required to justify NCMC's recovery of the $1.95 million it incurred in settling the *Bernstein* Action. Therefore, Chubb's "voluntary payment" provisions – which state, "No **insureds** will, except at that **insured's** own cost, make a payment [or] assume any obligation . . . without our consent." – do not excuse Chubb's duty to settle. **[SUF ¶ 15, McCarthy Decl. ¶ 11 (Ex. "D"), and ¶ 12 (Ex. "E")]**

**III.    NCMC ESTABLISHES CHUBB'S DUTY TO REIMBURSE NCMC'S SETTLEMENT OF THE *BERNSTEIN* ACTION WHICH IS DISTINCT FROM THE DUTY TO INDEMNIFY A DAMAGE AWARD FOLLOWING AN ADVERSE ADJUDICATION**

**A.    Illinois' Totality of Circumstances Test**

Chubb misplaces its reliance on *Hamlin Inc. v. Hartford Acc. & Indemnity Co.*, 86 F.3d 93 (7th Cir. 1996) for Chubb's proposition that the duty to settle is the same as the duty to indemnify under Illinois law. **First,** the *Hamlin* court does not even discuss Illinois law, or the duty to settle, let alone state the standard under Illinois law for an insurer's obligation to reimburse settlement. **Second,** the *Hamlin* court determined that the insurers did not even owe a defense duty. *Id.* at 95. **Third,** the insured in *Hamlin* relied on an argument not relevant here – that the insurers' breach of their defense duty, *ipse dixit*, obligated the insurers to pay the entire settlement. As noted throughout, Chubb admitted its defense duty, and NCMC has established that the entire settlement amount is for covered damages.

The Illinois Supreme Court recently set out a two-part test to obtain insurer reimbursement of a settlement in circumstances where a policyholder settles without the insurer's consent. **First**, it is necessary to establish the **decision to settle** was reasonable (as opposed to not settling a case). The policyholder must prove under "the totality of the circumstances" that a "prudent *uninsured*" would have settled. *Guillen*, 203 Ill. 2d at 163 (italics in original). Put another way, the policyholder cannot act as a "mere volunteer," settling simply because the insurance company is expected to pay but, rather, because the policyholder "was responding to a reasonable anticipation of personal liability." *Flodine*, 2003 WL 1394977, at *9.

**Second**, it is necessary to show that the settlement **amount** is " 'what a reasonably prudent person in the position of the [insured] would have settled for on the merits of plaintiff's claim' " (*id.* at *10) using "a commonsense consideration of the totality of 'facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.' " *Guillen*, 203 Ill. 2d at 163. So the **first** part of the test is overall reasonableness of settling given potential liability. The **second** part is reasonableness of the settlement amount given a commonsense evaluation of: (a) liability, (b) damages, and (c) the risks of going to trial.

**B.    NCMC's Decision to Settle Was Reasonable, Nor Does Chubb Contend Otherwise**

When NCMC settled the *Bernstein* Action, it was indisputably responding to a "reasonable anticipation of liability" and acting as a "prudent uninsured" would have acted based on the totality of the circumstances. First and foremost, prior to the mediation and ensuing settlement, Chubb conceded that any decision to settle for less than $6 million would be reasonable. **[SUF ¶ 42, Lowe Decl. ¶ 4 (Ex. "N")]** This is not surprising in that NCMC faced a real threat of liability under the TCPA. The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C).

Bernstein, as class representative, had evidence NCMC faxed him an allegedly unsolicited advertisement on February 26, 2002. He included allegations of such and attached a copy of the actual fax advertisement to his complaint, which advertisement bears a February 26, 2002 facsimile date stamp. **[SUF ¶ 6, McCarthy Decl. ¶ 5 (Ex. "A")]** NCMC believed a trier of fact might conclude the advertisement was unsolicited because there was evidence that NCMC contracted with Fax.com to transmit 200,000 faxes of the same type Bernstein allegedly

received during this same time frame – i.e., late February 2002.  **[SUF ¶ 16, McCarthy Decl. ¶ 8 (Ex. "C")]**

Equally important, NCMC had no way to disprove the faxes were sent.  **[SUF ¶ 17, McCarthy Decl. ¶ 9]**  Fax.com had gone out of business and, in any event, kept no records whether it sent the faxes NCMC contracted for it to send.

NCMC has reason to believe Fax.com went out of business, in part, because it was sending unsolicited faxes on behalf of its customers, despite Fax.com's representations to NCMC it would only send faxes to welcoming recipients.    **[SUF ¶ 19, McCarthy Decl. ¶ 10]**  Therefore, although NCMC believed at the time Fax.com was only transmitting NCMC's fax advertisements to welcoming recipients, NCMC had to consider the reason Fax.com went out of business in reaching its decision to settle.  NCMC concluded that a fact finder may very well find NCMC violated the TCPA by sending unsolicited faxes, given Fax.com's predicament, not to mention the Fax.com contract language referred to at page 6 of NCMC's opening brief.  (*Id.*)  **[SUF ¶ 18, McCarthy Decl. ¶ 9]**

Bernstein had the only evidence showing when any faxes were sent on behalf of NCMC. Faced with a real possibility Bernstein would prevail and no way to defend itself, NCMC did what any prudent uninsured would have done.  It settled the case.

### C.    The Settlement Amount Was Reasonable

The settlement amount NCMC paid – $1.95 million – is "what a reasonably prudent person in the position of the insured would have settled for on the merits of plaintiff's claim" using "a commonsense consideration of the totality of 'facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.' "  *Guillen,* 203 Ill. 2d at 163.

The reasonableness of NCMC's decision to settle is also evidenced by the fact that NCMC faced in excess of $300 million in exposure had the case proceeded to trial following class certification **[SUF ¶ 40, Lowe Decl. ¶ 3 (Ex. "M")]** and that counsel for Bernstein indicated a settlement was unlikely should class certification be obtained.    **[SUF ¶ 35, McCarthy Decl. ¶ 19 (Ex. "J"), and SUF ¶ 40, Lowe Decl. ¶ 3 (Ex. "M")]**  Further, NCMC's litigation costs would have skyrocketed as is typical in class actions (**[SUF ¶ 40, Lowe Decl. ¶ 3 (Ex. "M")]**) because, despite NCMC's August 15, 2003 tender of the *Bernstein* Action, Chubb's January 7, 2004 agreement to defend NCMC and NCMC's March 25, 2004 transmission of all its post-tender defense cost invoices to Chubb.

Moreover, Chubb did not pay a dime of NCMC's defense costs until well after the August 10, 2004 settlement. And, by that time, NCMC had already spent in excess of $89,000.00 through January 2004 defending the case. **[SUF ¶ 32, McCarthy Decl. ¶ 16 (Ex. "H")]** Finally, a fact finder could find that NCMC's infringement of the TCPA was willful (and treble damage exposure – *see* TCPA at 47 U.S.C. § 227(b)(3)) as Bernstein claimed the fax sent to consumers by a large mortgage corporation was unsolicited.

### D.   The Settlement Amount Constitutes "Damages"

Given the lack of specificity regarding the total claims that would be made, NCMC and Bernstein agreed that any amount of the settlement that was not exhausted by claims and other specific payments would be paid to charities.

**Charitable contributions are simply the way in which the class agreed to disburse the settlement proceeds.** NCMC properly agreed to a charitable contribution in settlement of an action in which Chubb refused to participate. *Jostens, Inc. v. CNA Ins./Continental Cas. Co.*, 403 N.W.2d 625, 631 (Minn. 1987), *overruled on other grounds* in *Northern States Power Co. v. Fidelity & Cas. Co.*, 523 N.W.2d 657 (Minn. 1994) ("CNA's arguments are not persuasive. Whether Jostens would have been legally liable for $242,000 for scholarships and backpay if it had gone to trial is irrelevant; Jostens settled the case and its agreement with the plaintiffs imposed a legal obligation to pay the amount."); *Western Cas & Sur. Co. v. Polar Panel Co.*, 457 F.2d 957, 960 (8th Cir. (Minn.) 1972) (Insurer has no cause for complaint about settlement amount being gratuitous where insured made a provident settlement.).

While NCMC would have preferred a refund, Bernstein would not agree to such a provision. The entire settlement amount of $1.95 million constitutes damages NCMC was legally obligated to pay. *Guillen*, 203 Ill. 2d at 162 (The insureds were "legally obligated to pay damages" even though they had reached an agreement with the plaintiff to assign their rights against the insurer and only insurance proceeds would satisfy the settlement obligation.).

## IV.   *CAPITAL ASSOCIATES* IS NOT CONTROLLING

Well-established Supreme Court and Seventh Circuit law requires that federal courts apply the substantive law of the state in which the court sits in rendering their decisions. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 633 (7th Cir. 2002), citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Seventh Circuit acknowledged that questions of insurance contract interpretation are substantive matters to be decided under Illinois state law. *American States Ins.*

*Co. v. Capital Associates of Jackson County, Inc.*, 392 F.3d 939, 943 (7ᵗʰ Cir. 2004) ("[A]lthough Illinois law supplies the rule of the decision, we have not cited any Illinois case interpreting the scope of 'privacy' coverage under an advertising-injury clause."). Further, the Seventh Circuit has held that a lower court is not bound to follow the decision of a higher court if the lower court is "powerfully convinced that the [higher] Court would overrule it at the first opportunity." *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7ᵗʰ Cir. 1987).

Chubb's reliance on the magistrate judge's decision in *Hultz v. Federated Mutual Ins. Co.*, 817 F. Supp. 59 (C.D. Ill. 1993) is misplaced. There, the district court confirmed the magistrate's recommendation where no objection to the recommendation was filed. Critically, in *Hultz*, the Seventh Circuit decision in issue – *Kush v. American States Ins. Co.*, 853 F.2d 1380 (7th Cir. 1988) – was well-reasoned and on point. As discussed below, to the extent the *Capital Associates* decision is analogous to this action, the decision compels finding in favor of NCMC. Further, the *Hultz* decision noted some Illinois state court decisions disagreed with the *Kush* decision, while many Illinois state court decisions agreed with *Kush*. **Because of this split in state court authority, the *Hultz* court did not need to reach the issue of *Colby*, since there was nothing in the Illinois state court decisions as a whole leading to the conclusion that the Illinois Supreme court would overrule *Kush* at its first opportunity.**

This rule is intended to preserve the constitutional balance between limited federal lawmaking and the power of the states to make law. *Menards*, 285 F.3d at 635. In order to preserve this balance, federal courts are called upon to render decisions by predicting what the highest court of the state would rule if presented with the question. *Id.* ("If the mandate of *Erie* is to be satisfied and the law ultimately employed is to be the law of the state, the federal court, exercising its authority to hear diversity cases, must make a predictive judgment as to how the supreme court of the state would decide the matter if it were presented presently to that tribunal." (footnote omitted)). The *Capital Associates* decision makes no attempt to predict what the Illinois Supreme Court would rule if presented with the question of the applicability of "advertising injury" coverage to a TCPA claim.

Federal courts should give great weight to the holdings of intermediate state appellate courts in the absence of a binding decision from the state's highest court. *Menards*, 285 F.3d at 637:

> [I]n the absence of prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's intermediate

appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court.

Given the well-reasoned decision rendered by the Illinois appellate court applying Illinois coverage law and the unlikelihood of the Supreme Court reversing the decision, NCMC submits that this Court is not bound to follow the *Capital Associates* decision but should follow *Swiderski*, the subsequent intermediate state appellate court decision. *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 834 N.E.2d 562 (Ill. App. Ct. (2d Dist.) 2005). A federal court exercising diversity jurisdiction is bound to follow the considered dicta as well as the holdings of state court decisions. *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1141 (9th Cir. (Cal.) 2002) (analyzing "advertising injury" coverage).

## V.    CHUBB   OWES   REIMBURSEMENT   TO   NCMC   FOR   COVERED "ADVERTISING INJURY"

### A.    Illinois' Insurance Policy Construction Mandates Coverage Pursuant to the "Advertising Injury" Offense of "Violation of a Person's Right to Privacy"

Chubb agreed to pay damages because of "advertising injury" pertinently defined as "violation of a person's right of privacy." **[SUF ¶ 13, McCarthy Decl. ¶¶ 11, 12 (Exs. "D" and "E")]** An Illinois appellate court recently found that this language covers a claimed TCPA violation applying Illinois coverage law. *Swiderski*, 834 N.E.2d 562. The appellate court found that, while federal courts are not in agreement as to whether such claims are covered under the advertising injury provisions of a CGL policy, "insurance-policy construction in Illinois compels us to find a duty to defend in this case." *Swiderski*, 834 N.E.2d at 571. The Illinois appellate court construed a policy whose language was identical to that at issue here. The court found that the terms "publication" and "privacy" must be given their plain, ordinary and popular meanings which would include the alleged transmission of an unsolicited fax advertisement in violation of the TCPA. *Id.* at 575.

The *Capital Associates* court found that the term "privacy" has many connotations, which means it has numerous reasonable meanings. *Id.* at 941. Instead of applying Illinois coverage law to this finding, which would mean the term is ambiguous (*Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill. 2d 90, 119 (1992) ("If a term in the policy is subject to more than one reasonable interpretation within the context in which it appears, it is ambiguous. Ambiguous terms are construed strictly against the drafter of the policy and in favor of coverage." (citation omitted))), the Seventh Circuit decided it was in the best position to decide what the term means

in the policy. *Capital Associates*, 392 F.3d at 942. Contrary to the Seventh Circuit, the *Swiderski* court applied principles of Illinois coverage law in arriving at its determination that an "average person would reasonably understand the he would be covered under the advertising injury provision of the policy." *Swiderski*, 834 N.E.2d at 573.

**B.    Coverage Is Appropriate Pursuant to *Capital Associates* Since Bernstein Is an Individual, Not a Company as in *Capital Associates***

Here, Mr. Bernstein and the class plaintiffs are individuals who allegedly received unsolicited fax advertisements from NCMC. **[SUF ¶ 6, McCarthy Decl. ¶ 5 (Ex. "A")]** The reasoning of the Seventh Circuit does not apply to the circumstances of this matter based upon the admitted interest an individual has in seclusion, which is a reasonable meaning of "privacy." *Id.* at 574 ("In other words, because transmitting an unwanted facsimile constitutes an intrusion on seclusion, it violates one's right of privacy."). It is further undisputed that the TCPA seeks to protect the privacy interests of telephone consumers, the very people making claims against NCMC.

Chubb's claim that the privacy rights the TCPA was enacted to protect are for residential telephone subscribers contradicts the language of the statute which identifies an interest in protecting the privacy rights of telephone subscribers without limitation. 47 U.S.C. § 227(c).

**Thus, even under the analysis of the Seventh Circuit, Bernstein's allegations include "violation of a person's right of privacy" because, contrary to Chubb's assertions, *Capital Associates* limited itself based upon the fact the fax recipient was a company instead of an individual. *Capital Associates*, 392 F.3d at 942.**

**C.    The Exception Noted by the *Capital Associates* Court – Automated Faxes to Numerous Recipients – Is Satisfied by NCMC's Alleged Transmission to 200,000 Recipients**

The policy also requires that the "violation of a person's right of privacy" include publication. The Seventh Circuit found that publication was irrelevant to seclusion because a person's seclusion interest may be violated without a publication. *Id.* This determination, however, begs the question. For purposes of coverage, a seclusion violation is not covered unless there is a publication that violates the right of privacy. Thus, the seclusion violations that the Seventh Circuit found needed no publication would simply not be covered under the insurance policy.

In fact, the court stated, "Perhaps automated faxes to hundreds of recipients could be

deemed a form of publication . . . ." *Id.* at 943. This is the very situation in which NCMC found itself; thus it allegedly violated the rights of privacy of the class plaintiffs through a publication. **Chubb again incorrectly claims the Seventh Circuit broadly ruled that no allegations of TCPA violation could be covered, apparently because the claims by Bernstein fall within the exception stated by the Seventh Circuit.**

The Illinois appellate court, in *Swiderski*, found that the term " 'publication' would not convey to the average, ordinary, normal, reasonable person an intention to include only communications sent to a third party." *Swiderski*, 834 N.E.2d at 574. Finding reasonable competing meanings to the term, the appellate court found "publication" is ambiguous and the court was not in a position to choose which interpretation to follow, as doing so is contrary to Illinois coverage law. *Id.* Since the Seventh Circuit agreed that the sending of faxes to numerous recipients could be a form of publication and an Illinois appellate court has so held, the sending of 200,000 faxes by NCMC satisfies the publication requirement.

### D.     The TCPA's Protection from Unsolicited Facsimiles Is NOT Limited to "Economic" Concerns as Chubb Contends, but Includes Privacy Rights

The language of the TCPA unambiguously states that subscriber privacy rights are to be protected. 47 U.S.C. § 227(c) is entitled "Protection of subscriber privacy rights." The TCPA's explicit purposes include protecting privacy rights regardless of the type of restriction allegedly violated. 47 U.S.C. § 227(b) identifies the various restrictions placed on the use of automated telephone equipment, including using a facsimile machine to send unsolicited advertisements. Chubb's focus on one subsection of the statute and the legislative history demonstrates Chubb's complete lack of understanding regarding statutory construction rules.

In applying the statute, U.S. Supreme Court authority (*New York State Conf. of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 655, 131 L. Ed. 2d 695, 705, 115 S. Ct. 1671, 1677 (1995) (In determining congressional intent, analysis begins with interpretation of the statutory text and "move[s] on, as need be, to the structure and purpose of the Act in which it occurs.")) has uniformly held that courts may only consider matters outside the statute's language, such as contemporaneous legislative history, where the language is ambiguous. *Owens ex rel. Owens v. Water Gremlin Co.*, 605 N.W.2d 733, 737 (Minn. 2000). *See also State v. Sebasky*, 547 N.W.2d 93, 99 (Minn. Ct. App. 1996) ("Thus, in the absence of ambiguous language, we may not consider legislative history or intent except as it is embodied in the statute's terms."). Here, subsection (c) states that subscriber privacy rights protection is a

goal of the restrictions placed on use of automated telephone equipment. Moreover, a review of the statute establishes that pertinent Congressional findings are appended to the statutory language. See 47 U.S.C. § 227.

The statutory language reveals that the TCPA violations and subsequent settlement of those claims include payment for violating individual rights of privacy. Chubb's claims to the contrary ignore pertinent language in the statute and appear designed to mislead this Court.

## VI.    CHUBB OWES REIMBURSEMENT FOR COVERED "PROPERTY DAMAGE"

### A.    The Loss of Tangible Property – Paper and Toner – Was Caused by an "Occurrence"

Chubb agreed to pay damages NCMC is legally obligated to pay because of "property damage." *American States Ins. Co. v. Capital Associates of Jackson County, Inc.*, No. 02-00975-DRH, 2003 WL 23278656 (S.D. Ill. Dec. 9, 2003), *rev'd*, 392 F.3d 939 (7th Cir. 2004), did not address "Property Damage" coverage; therefore, the Seventh Circuit's pronouncements on this point are dicta. Bernstein claimed to have lost the use of paper and toner as a result of his receipt of the allegedly unsolicited fax advertisement, a damage contemplated by the TCPA. The class plaintiffs claimed loss of use of tangible property that was not physically injured – a definition of "property damage." **[SUF ¶¶ 6, 14, McCarthy Decl. ¶ 5 (Ex. "A"), ¶¶ 11, 12 (Exs. "D" and "E")]**

The "property damage" must be caused by an "occurrence" which as pertinently defined includes an accident. **[SUF ¶¶ 11, 12, McCarthy Decl. ¶ 11, 12 (Exs. "D" and "E")]** Under applicable Illinois law, "[t]he focus of the inquiry in determining whether an occurrence is an accident is whether the **injury** is expected or intended by the insured, not whether the **acts** were performed intentionally." *Lyons v. State Farm Fire and Casualty Co.*, 349 Ill. App. 3d 404, 409 (5th Dist. 2004).

The case Chubb relies on addresses acts performed directly by the insured as opposed to acts performed by another for which liability against the insured is sought – the facts here. The Seventh Circuit found Chubb's authority inapplicable in such a situation. *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*, 126 F.3d 886, 890 (7th Cir. (Ill.) 1997).

Here, NCMC believed the advertisement was being transmitted by fax.com to persons who were willing recipients. **[SUF ¶¶ 19, McCarthy Decl. ¶ 10]** Thus, NCMC believed that the loss of use of paper and toner had been agreed to by the class plaintiffs and that no injury was likely to occur. The *Capital Associates* court wrongly held that the "intentional acts" exclusion

applied; however, the correct standard for application of the intentional acts exclusion is whether the injury was expected or intended from the standpoint of the insured. *Lincoln Logan Mut. Ins. Co. v. Fornshell*, 309 Ill. App. 3d 479, 483 (Ill. App. (4th Dist.) 1999).

Conflicting with this doctrine, the *Capital Associates* court found the exclusion applied simply because "all senders know exactly how faxes deplete recipients' consumables" (392 F.3d at 943), ignoring the fact that depletion of the "recipients' consumables" is not intended to be harmful where, as here, the sender believed the consumer authorized or welcomed receipt of the facsimile. *Prime TV, LLC v. Travelers Ins. Co.*, 223 F. Supp. 2d 744, 751-52 (N.D.N.C. 2002); *Park University Enters. v. American Cas. Co.*, 314 F. Supp. 2d 1094, 1106-07 (D. Kan. 2004) found the insured's belief that the facsimiles were requested or welcomed established the exclusion does not apply.

The Court's erroneous presumption is illustrated by its reference to "junk faxes" that intentionally "invade the recipient's property interest in consumables" ignoring the fact that NCMC reasonably expected that the recipient wanted and welcomed the facsimile. Pursuant to Illinois law, NCMC did not expect or intend the injury alleged by the plaintiffs. Thus, the loss of use of tangible property was caused by an occurrence and is covered under the terms of the Chubb policies.

**B.      Pursuant to *Monticello*, Bernstein's Injury Was An "Occurrence"**

The court in *Monticello Ins. Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 705-06 (2d Dist. 1996) succinctly explains why Chubb's reliance on that decision is erroneous:

> If, for example, Naperville had sued Wil-Freds for the water damage suffered by cars in the parking garage, or a pedestrian sued Wil-Freds for an injury caused by falling concrete, there can be little doubt that Monticello would be required to defend Wil-Freds under the CGL policy, because there would have been "negligent manufacture that results in 'an occurrence.' " (*Hamilton Die Cast*, 508 F.2d at 420.) On the other hand, where the only claim is one for a breach of contract alleging property damage to the project itself, we are faced merely with " 'an occurrence of alleged negligent manufacture' " (*Hamilton Die Cast*, 508 F.2d at 420), and no coverage exists.

In other words, there was no "occurrence" in *Monticello* because the negligent construction is not an "occurrence"; however, had the negligent construction resulted in unintended property damage other than to the insured's products, such as water damage to parked cars, falling concrete on pedestrians, etc., there would have been an "occurrence." Analogous to the water damage to parked cars, concrete falling on pedestrians, the injury alleged

by Bernstein – loss of use of paper and toner – was an **injury** that was unexpected or intended by NCMC.

### C.    Bernstein's Claim Falls Within the Exception Noted by the *Resource Bankshares* Court

Similarly, Chubb's reliance on *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.,* 407 F.3d 631 (4th Cir. 2005) is misplaced as that court applied Virginia law on the meaning of "occurrence" which is not analogous to Illinois law.  Regardless, NCMC's claim falls squarely within an express exception to the *Resource Bankshares* decision.  That court held that the "occurrence" requirement would have been satisfied had the insured offered evidence provided by NCMC in this action:  "Resource has offered precisely no evidence that would cause a reasonable person to mistakenly believe that they had received prior express consent to send their fax ads.  Without such evidence, Resource cannot begin to carry its burden of establishing that its conduct potentially merits coverage . . . ."  *Resource Bankshares*, 407 F.3d at 638 (citation omitted).  Since this precise evidence has been established by NCMC, the exception noted by the *Resource Bankshares* court applies.

## VII.    NO EXCLUSIONS EXCUSE CHUBB'S DUTIES UNDER THE POLICIES

### A.    Chubb Bears the Burden of Proving the Applicability of Exclusions

It is well settled law in Illinois that an insurer attempting to eliminate its contractual obligations through application of exclusionary terms bears the burden of proof.  *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864, 871-72 (1st Dist. 2003) (Burden rests with insurer to demonstrate applicability of exclusion; courts will liberally construe any doubt as to coverage in favor of insured and against insurance company, especially when company seeks to avoid coverage based on alleged exclusion in policy.).  Chubb has the burden of proving whether any exclusion eliminates the duty to defend or absolves Chubb of its duty to settle the *Bernstein* Action.

### B.    Chubb Has Not Met Its Burden to Prove Application of the "Prior Acts" Exclusion

Chubb claims the "prior acts" exclusion bars coverage, wrongly asserting that the same fax was transmitted prior to Chubb's policy.  **Chubb provides no admissible evidence that any faxes were transmitted prior to the policy.**  See NCMC's response to Chubb's statement of facts, Fact Nos. 30 and 31.  See, also, NCMC's evidentiary objections to the Cunningham declaration.  **The undisputed facts, however, are that the only faxes known to have been**

transmitted were sent around February 2002. **[SUF ¶¶ 6, 7, McCarthy Decl. ¶¶ 5-6 (Ex. "A")]** Chubb cites no evidence – there is none – that any fax was sent prior to the policy period. See NCMC's response to Chubb's statement of facts, Fact Nos. 30 and 31. See, also, NCMC's evidentiary objections to the Cunningham declaration. The only competent evidence presented to this Court is that the class representative received a faxed advertisement on or about February 26, 2002, within the Chubb policy period. **[SUF ¶¶ 6, 7, McCarthy Decl. ¶¶ 5-6 (Ex. "A")]**

Dated:    October 27, 2005                 **NEW CENTURY MORTGAGE**
                                           **CORPORATION**


                                           By:    s/David A. Gauntlett
                                                  One of Their Attorneys

Bart T. Murphy, Esq. (IL Bar 6181178)    David A. Gauntlett, Esq.
WILDMAN, HARROLD, ALLEN                  Eric R. Little, Esq.
& DIXON LLP                              James A. Lowe, Esq.
2300 Cabot Dr., Ste. 455                 GAUNTLETT & ASSOCIATES
Lisle, IL  60532                         18400 Von Karman, Suite 300
Tel/Fax  (630) 955-6392/(630)955-0662    Irvine, CA  92612
                                         Tel/Fax  (949) 553-1010/(949) 553-2050

                    Attorneys for Plaintiffs