**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NEW CENTURY MORTGAGE CORP., | ) | CASE NO.  05C2370 |
| | ) | |
| Plaintiff, | ) | Judge Coar |
| | ) | |
| v. | ) | **NEW CENTURY MORTGAGE** |
| | ) | **CORPORATION'S STATEMENT IN** |
| GREAT NORTHERN INSURANCE | ) | **RESPONSE TO GREAT** |
| COMPANY, FEDERAL INSURANCE | ) | **NORTHERN INSURANCE** |
| COMPANY, | ) | **COMPANY'S SEPARATE** |
| | ) | **STATEMENT OF UNDISPUTED** |
| Defendants. | ) | **MATERIAL FACTS (LOCAL RULE** |
| | ) | **56.1(b)(3))** |

Pursuant to Local Rule 56.1(b)(3), New Century Mortgage Corporation ("NCMC") submits this response to Great Northern Insurance Company ("Chubb")'s Separate Statement of Undisputed Material Facts. NCMC's response to each paragraph of the Separate Statement is as follows:

## Description of The Parties

1.      Plaintiff, New Century Mortgage Corporation, alleges that it is a corporation duly organized and existing under the laws of the State of California with its offices at 18400 Von Karman, 10th Floor, Irvine, California. (Adversary Complaint, styled *New Century Mortgage Corp. v. Great Northern Ins. Co. and Federal Ins. Co.*, Case No. 05 C 2370 (formerly Case No. 05 CH 05371 Circuit Court of Cook County, Chancery Division) ¶1).

**RESPONSE TO NO. 1:** Undisputed.

2.      Defendant Great Northern Insurance Company is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business in New Jersey. (Adversary Complaint, styled *New Century Mortgage Corp. v. Great Northern Ins. Co. and Federal Ins. Co.*, Case No. 05 C 2370 (formerly Case No. 05 CH 05371 Circuit Court of Cook County, Chancery Division) ¶2).

**RESPONSE TO NO. 2:** Undisputed.

3.      Defendant Federal Insurance Company is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in New Jersey. (Adversary Complaint, styled *New Century Mortgage Corp. v. Great Northern Ins. Co. and Federal Ins. Co.*, Case No. 05 C 2370 (formerly Case No. 05 CH 05371 Circuit Court of Cook County, Chancery Division) ¶3).

**RESPONSE TO NO. 3:** Undisputed.

## Jurisdiction

4.      Jurisdiction is proper under the provisions of 28 U.S.C. §1332(a) (Diversity of Citizenship). This case was removed by the Insurer Defendants pursuant to the provisions of 28

U.S.C. §1441 on April 21, 2005. (Defendants, Great Northern and Federal Insurance Company's Notice of Removal, filed on April 21, 2005.)

**RESPONSE TO NO. 4:**  Undisputed.

**The Great Northern Policy**

5.    Great Northern issued primary policy number 3539-77-36 to New Century Financial Corporation, with an effective period of February 3, 2002 to February 3, 2003. [See Affidavit of Daniel J. Cunningham (hereinafter "Cunningham Affidavit") at ¶ 4, Exh. 2].

**RESPONSE TO NO. 5:**  Undisputed.

6.    The Great Northern policy contains the following insuring agreement:

> "We will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract for:
>
> - Bodily injury or property damage to which this insurance applies caused by an occurrence; or
>
> - Advertising injury or personal injury to which this insurance applies caused by an offense.
>
> * * *
>
> This insurance applies to:
>
> - Bodily injury or property damage which occurs during the policy period; and
>
> - Advertising injury or personal injury caused by an offense committed during the policy period.

[See Cunningham Affidavit at ¶ 4, Exh. 2].

**RESPONSE TO NO. 6:**  Undisputed.

7.    The Great Northern policy defines "bodily injury" as "bodily injury" means physical:

> - Injury,
>
> - Sickness, or
>
> - Disease
>
> Sustained by a person, and if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

[See Cunningham Affidavit at ¶ 4, Exh. 2].

**RESPONSE TO NO. 7:** Undisputed.

8.    The Great Northern primary policy defines "property damage" as:

Property damage means:

- Physical injury to tangible property including the resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

[See Cunningham Affidavit at ¶ 4, Exh. 2].

**RESPONSE TO NO. 8:** Undisputed.

9.    The Great Northern primary policy defines "advertising injury" as:

Advertising injury means injury, other than bodily injury or personal injury, arising solely out of one or more of the following offenses committed in the course of advertising your goods, products, or services:

- Oral or written publication of material that slanders or libels a person or organization;

- Oral or written publication of advertising material that violates a person's right of privacy; or

- Infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.

[See Cunningham Affidavit, ¶ 4, Exh. 2].

**RESPONSE TO NO. 9:** Undisputed.

10.    The Great Northern policy defines "personal injury" as:

Personal injury means injury, other than bodily injury, arising out of one or more of the acts listed below, other than your advertising activities:

    A.    false arrest, detention or imprisonment;

    B.    malicious prosecution (unless insurance thereof is prohibited by law), except when it arises out of, or is directly or indirectly related to:

1.     the restructure, termination, transfer or collection of any loan, lease or extension of credit; or

2.     the repossession or foreclosure of property which is security for any loan, lease, or extension of credit;

C.     the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, unless the person or persons are mortgagors of yours or of anyone for whom you are services mortgages, by or on behalf of you, its owner, landlord or lessor;

D.     oral or written publication of material that slanders or libels a person or organization, except when alleged, charged or suffered by any customer;

E.     oral or written publication of material that violates a person's right of privacy, except when alleged, charged or suffered by any customer, or

F.     discrimination (unless insurance thereof is prohibited by law) based on race, color, religion, sex, age or national origin, except when alleged, charged or suffered by any:

1.     applicant for employment
2.     present or former employee;
3.     prospective employee; or
4.     customer.

[See Cunningham Affidavit, ¶ 4, Exh. 2].

**RESPONSE TO NO. 10:** Undisputed.

11.    The Great Northern primary policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." [See Cunningham Affidavit at ¶ 4, Exh. 2].

**RESPONSE TO NO. 11:** Undisputed.

12.    The Great Northern primary policy includes the following relevant Bodily Injury/Property Damage Exclusions:

B.     Expected or Intended Injury – This insurance does not apply to bodily injury or property damage which results from an act that:

- is intended by the insured; or
- can be expected from the standpoint of a reasonable person

to cause bodily injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected.

This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect person or property.

[See Cunningham Affidavit at ¶ 4, Exh. 2].

**RESPONSE TO NO. 12:** Disputed: NCMC does not dispute that the policy contains the quoted exclusion. It disputes that the exclusion is "relevant."

13.     The Great Northern primary policy includes the following relevant Advertising Injury Exclusions:

A.     Prior Acts – This insurance does not apply to advertising injury or personal injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

B.     Willful Violations – This insurance does not apply to advertising injury or personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured.

[See Cunningham Affidavit at ¶ 4, Exh. 2].

**RESPONSE TO NO. 13:** Disputed: NCMC does not dispute that the policy contains the quoted exclusion. It disputes that the exclusion is "relevant."

**Federal Insurance Policy**

14.     Federal issued commercial umbrella policy number 7977-03-85, with an effective period identical to the Great Northern policy described above. [See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 14:** Undisputed.

15.     Under Coverage A, the Federal Umbrella policy provides that Federal will pay on behalf of the insureds that part of the loss in excess of the total applicable limits of "underlying

insurance, provided the injury or offense takes place during the Policy Period of this policy."
[See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 15:**  Undisputed.

16.    The terms and conditions of the "underlying insurance" are incorporated into
Coverage A.  [See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 16:**  Undisputed.

17.    The Great Northern primary policy is the applicable "underlying insurance" in
this matter. [See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 17:**  Undisputed.

18.    Under Coverage A, the Federal umbrella policy provides that Federal has the right
and duty to assume control of the investigation, settlement or defense of any claim or suit against
the insured for damages covered by the policy only after the applicable limit of underlying
insurance has been exhausted by the payment of claims.  [See Cunningham Affidavit at ¶ 5, Exh.
3].

**RESPONSE TO NO. 18:**  Disputed but irrelevant.  This is an inaccurate and/or incomplete
paraphrase. [McCarthy Decl. ¶ 12, Exh. "E."]

19.    Under Coverage A, the Federal Umbrella policy excludes [*sic*] an "Underlying
Insurance Exclusion" which bars coverage for "any liability excluded by underlying insurance."
[See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 19:**  Disputed but irrelevant.  This is an inaccurate and/or incomplete
paraphrase. [McCarthy Decl. ¶ 12, Exh. "E."]

20.    Under Coverage B, the Federal Umbrella policy provides that Federal will pay
damages the insured becomes legally obligated to pay by reason of liability imposed by law or
assumed under an insured contract because of bodily injury, property damage, personal injury or
advertising injury covered by this insurance which takes place during the Policy Period of this
policy and is caused by an "occurrence." [See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 20:** Disputed but irrelevant. This is an inaccurate and/or incomplete paraphrase. [McCarthy Decl. ¶ 12, Exh. "E."]

21.    The Federal umbrella policy further provides that Coverage B does not apply to any loss, claim, or suit for which this insurance is afforded by "underlying insurance" or for which insurance would have been afforded except for the exhaustion of the limits of insurance of underlying insurance. [See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 21:** Disputed but irrelevant. This is an inaccurate and/or incomplete paraphrase. [McCarthy Decl. ¶ 12, Exh. "E."]

22.    Under Coverage B, the definition of "property damage" is substantially similar to the definition set forth in the Great Northern primary policy. [See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 22:** Undisputed.

23.    Under Coverage B, the definition of "advertising injury" is substantially similar to the definition set forth in the Great Northern primary policy. [See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 23:** Undisputed.

24.    Under Coverage B, the Federal umbrella policy defines "occurrence," as:

Occurrence means:

1.    with respect to bodily injury or property damage liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2.    with respect to personal injury or advertising injury, a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same occurrence, regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

[See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 24:** Undisputed.

25.    Under Coverage B, the Federal umbrella policy contains the following "Intentional Acts" exclusion:

> Under Coverage B, this insurance does not apply to:
>
> Bodily injury or property damage which results from an act that is intended by the insured or can be expected from the standpoint of a reasonable person to cause bodily injury or property damage, even if the injury is of a different degree or type than actually intended or expected.

[See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 25:**  Undisputed.

26.    Under Coverage B, the Federal umbrella policy contains the following "Falsity, Prior Publication, Willful Violation" exclusion:

> Under Coverage B, this insurance does not apply to:
>
> Personal injury or advertising injury arising out of:
>
> 1.    oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;
>
> 2.    oral or written publication of material whose first publication took place before the beginning of the policy period; or
>
> 3.    willful violation of a penal statute or ordinance committed by or with the consent of the insured.

[See Cunningham Affidavit at ¶ 5, Exh. 3].

**RESPONSE TO NO. 26:**  Undisputed.

### NCMC's Transmission of Unsolicited Facsimiles

27.    NCMC intentionally arranged for the transmission of unsolicited facsimiles. [See Cunningham Affidavit at ¶ 6, Exh. 4, Plaintiff's Response to Requests for Admission ("RFA") Nos. 8, 9, 10, 11, 12, 15, 16, 17, 19, and 23].

**RESPONSE TO NO. 27:**    Disputed.    Chubb does not attempt to establish the authenticity or render admissible any documents that Chubb discovered in the Minnesota action. Further, the evidence cited establishes that NCMC did not "intentionally arrange for the transmission of unsolicited facsimiles," despite Chubb's contrary statements.

Exhibit "4" to Chubb's Cunningham Affidavit, NCMC's responses to Chubb's Requests for Admission ("RFA"), Nos. 8-12, 15-17, 19 and 23 provide:

**[RFA Request No. 8]** Fax.com provided services pursuant to a Fax Broadcasting Agreement dated June 7, 2001.

**[RFA Response No. 8]** NCMC admits Fax.com allegedly provided services to NCMC pursuant to a June 7, 2001 fax broadcasting agreement.

**[RFA Request No. 9]** A true and correct copy of the Fax Broadcasting Agreement is attached hereto as Exhibit C.

**[RFA Response No. 9]** Admit.

**[RFA Request No. 10]** The Fax Broadcasting Agreement attached hereto as Exhibit C was executed by NCMC Senior Vice President Frank Nese.

**[RFA Response No. 10]** Admit.

**[RFA Request No. 11]** Senior Vice President Frank Nese had authority to bind NCMC in the Fax Broadcasting Agreement attached hereto as Exhibit C.

**[RFA Response No. 11]** Admit.

**[RFA Request No. 12]** The Fax Broadcasting Agreement attached hereto as Exhibit C includes the following provision:

> **11.** **Legal Issues Re Broadcasting**. Buyer acknowledges that Buyer is aware that Seller's faxing of Buyer's commercial messages/advertisements on behalf of Buyer presents significant legal issues and risks. Buyer acknowledges that Seller has made no representations, promises or assurances to Buyer in this regard, and Buyer has had the opportunity to consult with its own legal counsel with respect to the federal Telephone Consumer Protect [*sic*] Act and applicable state law regarding transmissions by fax of unsolicited commercial messages/advertisements and the risks attended thereto. The parties acknowledge and agree that Seller shall have no indemnity obligations to Buyer unless a separate written indemnity agreement is made and executed by the parties concurrently with or subsequent to the date of this Agreement.

**[RFA Response No. 12]** NCMC responds that the document speaks for itself.

**[RFA Request No. 15]** In the September 29, 2003 letter attached hereto as Exhibit B, NCMC's counsel informed the FCC on behalf of NCMC that each of the orders submitted to Fax.com called for the transmission of the same advertisement.

**[RFA Response No. 15]** Admit.

**[RFA Request No. 17]** A true and correct copy of the Unsolicited Advertisement transmitted on behalf of NCMC by Fax.com is attached hereto as **Exhibit D**.

[RFA Response No. 17]    NCMC objects to Defendants' prejudicial characterization of the advertisement allegedly faxed to recipients as the "Unsolicited Advertisement." NCMC admits that Exhibit D is a true and correct copy of the advertisement allegedly wrongfully faxed to Paul Bernstein by Fax.com.

[RFA Request No. 19]  Fax.com first transmitted the Unsolicited Advertisement prior to February 3, 2002.

[RFA Response No. 19]    NCMC objects to Defendants' prejudicial characterization of the advertisement allegedly faxed to recipients as the "Unsolicited Advertisement." NCMC does not have sufficient knowledge to admit or deny this request as NCMC has no information as to when Fax.com actually transmitted the advertisement at issue, beyond what is alleged by Paul Bernstein.

[RFA Request No. 23]  In the September 29, 2003 letter attached hereto as Exhibit B, NCMC's counsel informed the FCC on behalf of NCMC that:

NCMC advised Fax.com generally of geographic areas that it wanted its advertisements to reach. However, Fax.com did not inform NCMC of the range of destination numbers to which Fax.com facsimile messages were sent, and NCMC did not request any set of area codes or range of destination numbers to which the advertisement would be sent. (Page 3, ¶ g)

[RFA Response No. 23]  NCMC responds that the document speaks for itself.

(Objections omitted.)

Chubb's statement that the transmitted facsimiles were "unsolicited" is based solely and completely on its own characterization in the cited Requests, a characterization to which NCMC objects in its responses to those requests.

The "admissions" to Requests Nos. 15 and 23 constitute inadmissible hearsay which lacks foundation. Thus, they may not be considered in support of the motion.

28.    All of the unsolicited facsimiles involved the same advertisement.    [See Cunningham Affidavit at ¶ 6, Exh. 4, Plaintiff's Response to RFAs 15, 17, 66, 67, 69 and 71].

**RESPONSE TO NO. 28:**  Disputed.  Chubb has not even attempted to establish the authenticity or admissibility of the referenced documents.  Further, the cited discovery responses do not support Chubb's statement:

REQUEST NO. 15:
In the September 29, 2003 letter attached hereto as Exhibit B, NCMC's counsel informed the FCC on behalf of NCMC that each of the orders submitted to Fax.com called for the transmission of the same advertisement.

**RESPONSE TO REQUEST NO. 15**:
[Objections]  Admit.

**REQUEST NO. 16:**
On behalf of NCMC, Fax.com transmitted the same Unsolicited Advertisement to each recipient.

**RESPONSE TO REQUEST NO. 16:**
NCMC objects to Defendants' prejudicial characterization of the advertisement allegedly faxed to recipients as the "Unsolicited Advertisement." **NCMC does not have sufficient knowledge to admit or deny this request as NCMC has no information as to whether the same advertisement was sent to each recipient**.

**REQUEST NO. 17:**
A true and correct copy of the Unsolicited Advertisement transmitted on behalf of NCMC by Fax.com is attached hereto as **Exhibit D**.

**RESPONSE TO REQUEST NO. 17:**
NCMC objects to Defendants' prejudicial characterization of the advertisement allegedly faxed to recipients as the "Unsolicited Advertisement." NCMC admits that Exhibit D is a true and correct copy of the advertisement allegedly wrongfully faxed to Paul Bernstein by Fax.com.

**REQUEST NO. 66:**
In conjunction with the request for information set forth in Request for Admission No. 63, Mr. Murphy responded:  "See attached order forms bates stamped NCM0006, NCM00013 and NCM00017."

**RESPONSE TO REQUEST NO. 66:**
[Objections]  Deny.

**REQUEST NO. 67:**
A true and correct copy of the June 2, 2004 email from Bart Murphy to Michael J. Najewski is attached hereto as **Exhibit M**.

**RESPONSE TO REQUEST NO. 67:**
[Objections]  Admit.

**REQUEST NO. 69:**
By email dated June 3, 2004, Michael J. Najewski asked NCMC's counsel Bart Murphy of Wildman, Harrold, Allen and Dixon several questions about the documents previously provided by Mr. Murphy, including the following question:

1)    I have received only a single page document which appears to be the advertisement sent via fax. Was this the only document sent during the 3 separate "fax broadcasts" in June, 2001, and February, 2002.  Were there any other documents included in any of these 3 separate "fax broadcasts"?

**RESPONSE TO REQUEST NO. 69:**
[Objections]: NCMC responds that the document speaks for itself.

**REQUEST NO. 71:**
By email dated June 4, 2004, NCMC's counsel, Bart Murphy of Wildman, Harrold, Allen and Dixon responded to Michael J. Najewski's request identified

in Request for Admission No. 69 by stating:

> It is my understanding that the fax ad I sent to you was used in all three orders placed with fax.com (6/01, 2/02, and 2/02) and that it was a single page fax with no other documents. I am continuing our inquiries on the faxing of additional advertisements.

**RESPONSE TO REQUEST NO. 71:**
[Objections] NCMC responds that the document speaks for itself.

The Response to Request for Admission No. 15, which admits the existence of a letter from NCMC's counsel to the FCC, constitutes inadmissible hearsay which lacks foundation.

The Response to Request for Admission No. 17 does not support the "Undisputed Fact" for which Chubb proffers it. NCMC admitted only that the attached advertisement was the one allegedly wrongfully sent to Paul Bernstein. This does not help establish the purported "fact" that the same advertisement was sent in three different advertising campaigns.

The Response to Request for Admission No. 66 was a denial. It cannot be used as support for anything, let alone the "Undisputed Fact" for which Chubb proffers it. Even if it had been an admission, it would only have established the existence of a hearsay document for which no foundation has been laid.

Similarly, the Responses to Requests for Admission Nos. 67, 69, and 71 (copies of email messages between NCMC's counsel and Chubb's counsel) prove only the existence of hearsay documents. The documents themselves are inadmissible because they are hearsay and lack foundation. Even if these documents were admissible, the only thing they establish is the existence of additional hearsay. Even if the statements were not hearsay, they would be inadmissible because they lack foundation. The proponents of the statements lack personal knowledge of the subject matter thereof.

29.    Fax.com provided services to NCMC pursuant to a Fax Broadcasting Agreement dated June 7, 2001 which provides:

> **11.    Legal Issues Re Broadcasting.** Buyer acknowledges that Buyer is aware that Seller's faxing of Buyer's commercial messages/advertisements on behalf of Buyer presents significant legal issues and risks. Buyer acknowledges that Seller has made

> no representations, promises or assurances to Buyer in this regard, and Buyer has had the opportunity to consult with its own legal counsel with respect to the federal Telephone Consumer Protect Act and applicable state law regarding transmissions by fax of unsolicited commercial messages/advertisements and the risks attended thereto. The parties also acknowledge and agree that Seller shall have no indemnity obligations to Buyer unless a separate written indemnity agreement is made and executed by the parties concurrently with or subsequent to the date of this Agreement.

[See Cunningham Affidavit at ¶ 6, Exh. 4, Plaintiff's Response to RFAs 8, 9, 10, 11, and 12].

**RESPONSE TO NO. 29:** Undisputed.

30.    Fax.com first transmitted the unsolicited advertisement prior to February 3, 2002 (the inception date of the policies at issue). [See Cunningham Affidavit at ¶ 6 and ¶ 7, Exh's. 4 and 5, Plaintiff's Response to RFA's 6, 8, 9, 66, 67, 69, 70, 71 and 72 and Plaintiff's Response to Interrogatory No. 21]

**RESPONSE TO NO. 30:** Disputed.  Chubb has not even attempted to establish the authenticity or the admissibility of the referenced document.

Further, the cited discovery responses do not support Chubb's statement.  There is no admissible evidence that any NCMC advertisements were transmitted by facsimile prior to the inception date of the policies at issue, much less admissible evidence supporting Chubb's statement that "Fax.com first transmitted the unsolicited advertisement prior to February 3, 2002 (the inception date of the policies at issue)."

> **[RFA Request No. 6]**  In the September 29, 2003 letter, NCMC's counsel informed the FCC on behalf of NCMC that:  Fax.com Inc. ("Fax.com") is the only facsimile-based marketing service that has transmitted facsimile messages related to NCMC services.  Fax.com provided those services pursuant to a Fax Broadcasting Agreement ("Agreement") dated June 7, 2001.

> **[RFA Response No. 6]**  NCMC responds that the document speaks for itself.

> **[RFA Request No. 8]**  Fax.com provided services pursuant to a Fax Broadcasting Agreement dated June 7, 2001.

> **[RFA Response No. 8]**  NCMC admits Fax.com allegedly provided services to NCMC pursuant to a June 7, 2001 fax broadcasting agreement.

> **[RFA Request No. 9]**  A true and correct copy of the Fax Broadcasting Agreement is attached hereto as Exhibit C.

**[RFA Response No. 9]** Admit.

**[RFA Request No. 66]** In conjunction with the request for information set forth in Request for Admission No. 63, Mr. Murphy responded: "See attached order forms bates stamped NCM0006, NCM00013 and NCM00017."

**[RFA Response No. 66]** Objection: Irrelevant, immaterial and not likely to lead to the discovery of admissible evidence, oppressive and harassing. Without waiving said objection: Deny.

**[RFA Request No. 67]** A true and correct copy of the June 2, 2004 email from Bart Murphy to Michael J. Najewski is attached hereto as **Exhibit M**.

**[RFA Response No. 67]** Objection: Irrelevant, immaterial and not likely to lead to the discovery of admissible evidence, oppressive and harassing. Without waiving said objection: Admit.

**[RFA Request No. 69]** By email dated June 3, 2004, Michael J. Najewski asked NCMC's counsel Bart Murphy of Wildman, Harrold, Allen and Dixon several questions about the documents previously provided by Mr. Murphy, including the following question:

> 1) I have received only a single page document which appears to be the advertisement sent via fax. Was this the only document sent during the 3 separate "fax broadcasts" in June, 2001, and February, 2002. Were there any other documents included in any of these 3 separate "fax broadcasts"?

**[RFA Response No. 69]** Objection: Irrelevant, immaterial and not likely to lead to the discovery of admissible evidence, oppressive and harassing. Without waiving said objection: NCMC responds that the document speaks for itself.

**[RFA Request No. 70]** A true and correct copy of the email dated June 3, 2004 from Michael J. Najewski to NCMC's counsel, Bart Murphy of Wildman, Harrold, Allen and Dixon, is attached hereto as **Exhibit O**.
**[RFA Response No. 70]** Objection: Irrelevant, immaterial and not likely to lead to the discovery of admissible evidence, oppressive and harassing. Without waiving said objection: Admit.

**[RFA Request No. 71]** By email dated June 4, 2004, NCMC's counsel, Bart Murphy of Wildman, Harrold, Allen and Dixon responded to Michael J. Najewski's request identified in Request for Admission No. 69 by stating:

> It is my understanding that the fax ad I sent to you was used in all three orders placed with fax.com (6/01, 2/02, and 2/02) and that it was a single page fax with no other documents. I am continuing our inquires on the faxing of additional advertisements.

**[RFA Response No. 71]** Objection: Irrelevant, immaterial and not likely to lead to the discovery of admissible evidence, oppressive and harassing. Without waiving said objection: NCMC responds that the document speaks for itself.

**[RFA Request No. 72]** A true and correct copy of the email dated June 4, 2004 from NCMC's counsel, Bart Murphy of Wildman, Harrold, Allen and Dixon to

Michael J. Najewski' [*sic*] of Great Northern and Federal is attached hereto as **Exhibit P**.

**[RFA Response No. 72]** Objection: Irrelevant, immaterial and not likely to lead to the discovery of admissible evidence, oppressive and harassing.  Without waiving said objection: Admit.

**[IR No. 21]**  Between February 3, 2001 and February 2, 2002, how many times was the Unsolicited Advertisement transmitted to any facsimile machine located within the United States?

**[IR Response No. 21]** NCMC objects to Defendants' prejudicial characterization of the advertisement allegedly faxed to recipients as the "Unsolicited Advertisement." NCMC has no personal knowledge as to the number of times the advertisement was faxed between February 3, 2001 and February 2, 2002, but has been advised it was allegedly faxed 200,000 times.

(Objections omitted.)

The Responses to Requests Nos. 6, 8, and 9 proved only that NCMC entered into an agreement with fax.com to send out facsimile advertising, nothing more.

The Response to Request No. 66 was a denial.  Thus, it cannot be used as support for anything.

The Responses to Requests for Admission Nos. 67, 69, 70, 71, and 72 (copies of email messages between NCMC's counsel and Chubb's counsel) prove only the existence of hearsay documents. The documents themselves are inadmissible because they are hearsay.  Even if these documents were admissible, the only thing they would establish is the existence of additional hearsay.  If those statements were not hearsay, they would be inadmissible because they lack foundation.  The proponents of the statements lack personal knowledge of the subject matter thereof.  Finally, these communications are privileged insured-insurer communications and/or settlement negotiations and are, therefore, inadmissible.

Similarly, the Response to Interrogatory No. 21 specifically states that it is merely hearsay and made without foundation.

31.    Fax.com transmitted the advertisement in question approximately 200,000 times prior to the commencement of the Great Northern and Federal policies on February 3, 2002. [See Cunningham Affidavit at ¶ 7, Exh. 5, Plaintiff's Response to Interrogatory No. 21].

**RESPONSE TO NO. 31:** Disputed: Chubb proffers no admissible evidence in support of this fact. The Response to Interrogatory No. 21, the only evidence proffered by Chubb, specifically states that it is merely hearsay and made without foundation. Thus, it is insufficient to support the proffered fact. See also NCMC's Response to Chubb's Fact No. 30 herein.

### The Underlying Lawsuit

32.    The underlying lawsuit was filed on April 5, 2002. [See Cunningham Affidavit at ¶ 9, Exh. 7].

**RESPONSE TO NO. 32:** Undisputed to the degree that the term "underlying lawsuit" refers to Illinois Circuit Court for Cook County, Illinois County Department, Chancery Division, Case No. 02 CH 06907.

33.    A second amended complaint was filed on September 30, 2003 (hereinafter "*Bernstein* suit" or "underlying action") alleging claims for violation of the Telephone Consumer Fraud Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and Conversion. [See Cunningham Affidavit at ¶ 10, Exh. 8].

**RESPONSE TO NO. 33:** Undisputed.

34.    The plaintiff in the underlying suit sought damages and injunctive relief arising out of his alleged receipt of an unsolicited fax advertisement from NCMC. [See Cunningham Affidavit at ¶ 10, Exh. 8].

**RESPONSE TO NO. 34:** Undisputed.

35.    The underlying plaintiff also attempted to establish a class action suit on behalf of all persons with Illinois phone numbers who received the fax in question within a certain time period. [See Cunningham Affidavit at ¶ 10, Exh. 8].

**RESPONSE TO NO. 35:** Undisputed.

36.    The underlying complaint alleged that the faxes were sent as a part of a mass broadcasting of faxes and that the unsolicited advertisement included graphics, bold headlines and words, which caused the consumption of large amounts of toner and ink. [See Cunningham Affidavit at ¶ 10, Exh. 8].

**RESPONSE TO NO. 36:** Undisputed.

37.    NCMC contends that the "property damage" allegedly at issue in the underlying suit is the loss of use of toner, paper, and ink.  [See Cunningham Affidavit at ¶ 7, Exh. 5, Response to Interrogatory No. 27].

**RESPONSE TO NO. 37:** Undisputed.

38.    The content of the advertisement in question did not reveal anything about the underlying claimants at all.  [See Cunningham Affidavit at ¶ 10, Exh. 8, attachment A].

**RESPONSE TO NO. 38:** Disputed.  NCMC is one of the nation's largest sub-prime lenders, its clients and potential clients are often people with poor credit, and therefore the advertisement in question potentially reveals confidential information regarding the individual receiving the advertisement.  [Little Decl., Exh. "I."]

### Communications Between NCMC, Great Northern Insurance Company and Federal Insurance Company

39.    By letter dated January 7, 2004, Great Northern Insurance Company and Federal Insurance Company agreed to defend NCMC subject to a reservation of rights to deny the duty to indemnify.  [See Cunningham Affidavit at ¶ 6, Exh. 4, Plaintiff's Response to RFA No. 51].

**RESPONSE TO NO. 39:** Undisputed.

40.    By letter dated June 22, 2004, counsel for Great Northern and Federal informed counsel for NCMC that the insurers would not contribute to settlement of the action and explained all of the reasons as to why any damages awarded in the suit could not be covered under the policies.  [See Cunningham Affidavit at ¶ 6, Exh. 4, Plaintiff's Response to RFA No. 76].

**RESPONSE TO NO. 40:** Undisputed, to the degree that this statement describes the content of a document (though NCMC notes that, as the summary of the contents of a document, the alleged fact is necessarily incomplete).  NCMC does dispute any characterization of this statement as one that there are, in fact, valid "reasons as to why any damages awarded in the suit could not be covered under the policies."

41.    By letter dated August 10, 2004, NCMC's coverage counsel, Gauntlett & Associates, informed Great Northern and Federal that NCMC had agreed to resolve the *Bernstein* suit for $1.95 million. [See Cunningham Affidavit at ¶ 11, Exh. 9].

**RESPONSE TO NO. 41:**  Undisputed.

42.    As of August 10, 2004, the operative pleading in the underlying suit was the Second Amended Complaint. [See Cunningham Affidavit at ¶ 10, Exh. 8].

**RESPONSE TO NO. 42:**  Undisputed.

43.    The parties to the underlying action executed a settlement agreement.  [See Cunningham Affidavit at ¶ 12, Exh. 10].

**RESPONSE TO NO. 43:**  Undisputed.

44.    The settlement negotiated by NCMC required payment of $500 to each person that affirmatively lodged a claim as a member of the settlement class (assuming the settlement fund was not depleted).  [See Cunningham Affidavit at ¶ 12, Exh. 10, pp 9-10].

**RESPONSE TO NO. 44:**  Undisputed.

45.    Ultimately, 67 members of the settlement class asserted claims.  [See Cunningham Affidavit at ¶ 13, Exh. 11, Plaintiff's Response to Interrogatory No. 2].

**RESPONSE TO NO. 45:**  Undisputed.

46.    As only 67 members of the settlement class asserted claims, the settlement agreement required payment of a total of $33,500 to parties that claimed to have received unsolicited facsimiles other than the named plaintiff. [See Cunningham Affidavit at ¶ 12, Exh. 10].

**RESPONSE TO NO. 46:**  Undisputed.

47.    The settlement agreement required payment of $5,000 to the named plaintiff, Paul Bernstein. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 10].

**RESPONSE TO NO. 47:**  Undisputed.

48.    In addition, the settlement agreement required payment of attorneys' fees to counsel for the class in an amount not to exceed $487,500. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 10].

**RESPONSE TO NO. 48:**  Undisputed.

49.    NCMC also agreed to pay roughly $300,000 in expenses associated with providing notice of the settlement to potential class members. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 8].

**RESPONSE TO NO. 49:**  Undisputed.

50.    NCMC agreed that in the event the total settlement amount ($1.95 million) was not depleted by payment of claims to recipients of the advertisement, NCMC would donate the remainder of the settlement amount directly to certain charities. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 10].

**RESPONSE TO NO. 50:**  Undisputed.

51.    As only 67 people asserted claims under the settlement program, NCMC ultimately donated $1,085,000 directly to eighteen separate charities.  [See Cunningham Affidavit at ¶ 14, Exh. 12].

**RESPONSE TO NO. 51:**  Undisputed.

52.    In return for the settlement payments outlined above, the underlying class fully released NCMC from all of the state and federal claims including all statutory and common law causes of action that the class asserted or could have asserted in the underlying suit. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 11].

**RESPONSE TO NO. 52:**  Undisputed.

53.    The settlement agreement does not allocate the settlement payments among the various state and federal claims asserted against NCMC. [See Cunningham Affidavit at ¶ 12, Exh. 10, p. 11].

**RESPONSE TO NO. 53:**  Undisputed.

## NCMC's DISCOVERY RESPONSES IN THIS ACTION

54.    Interrogatory number 5 in Defendants' First Set of Interrogatories provides as follows: "Identify the dates upon which each CLAIMANT received the facsimile that entitled the claimant to payment under the SETTLEMENT AGREEMENT."    [See Cunningham Affidavit at ¶ 13, Exh. 11].

**RESPONSE TO NO. 54:**  Undisputed.

55.    NCMC responded to Defendants' Interrogatory number 5 as follows:    "… Without waiving this objection, NCMC responds that it lacks sufficient information to provide the answer to this interrogatory." [See Cunningham Affidavit at ¶ 13, Exh. 11].

**RESPONSE TO NO. 55:**  Undisputed, though NCMC notes that the statement is only a portion of its response to the interrogatory and is, therefore, incomplete.


Dated:    October ___, 2005                **NEW CENTURY MORTGAGE**
                                           **CORPORATION**



                                    By:    s/Eric R. Little
                                           One of Their Attorneys

Bart T. Murphy, Esq. (IL Bar 6181178)      David A. Gauntlett, Esq.
WILDMAN, HARROLD, ALLEN                     Eric R. Little, Esq.
& DIXON LLP                                James A. Lowe, Esq.
2300 Cabot Dr., Ste. 455                   GAUNTLETT & ASSOCIATES
Lisle, IL 60532                            18400 Von Karman, Suite 300
Tel (630) 955-6392                         Irvine, CA 92612
Fax (630)955-0662                          Tel (949) 553-1010
                                           Fax (949) 553-2050

                          Attorneys for Plaintiffs