KKM/mmt/368149                                                                                                2246-2-75-681

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NEW CENTURY MORTGAGE CORP., | ) ) ) | |
|         Plaintiff, | ) ) | Case No.: 05 C 2370 |
| v. | ) ) | Judge: Coar |
| GREAT NORTHERN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, | ) ) ) ) ) | **DEFENDANTS GREAT NORTHERN'S AND FEDERAL'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
|         Defendants. | ) | |

## **TABLE OF CONTENTS**

I.     Introduction..................................................................................................1

II.    NCMC's Brief is Replete With Incorrect or Misleading Assertions of Fact................2

III.   Argument....................................................................................................7

    A.   The Policies Do Not Impose Upon The Insurers A Duty to Settle Uncovered Claims....................................................................................................7

    B.   Great Northern and Federal Are Not Relying Upon The Voluntary Payments Provision to Establish That They Do Not Owe A Duty To Indemnify..............8

    C.   As Great Northern and Federal Have Not Breached Any Duty to Defend, The Two-Part Test Advanced By Plaintiff Is Irrelevant to The Question of Whether The Settlement Is Actually Covered..................................................9

    D.   The Seventh Circuit's Decision in *American States v. Capital Associates* is Determinative of the Outcome of This Case............................................11

    E.   NCMC Has Not Met Its Burden of Proving that The *Bernstein* Claim Arises Out of An "Occurrence."..........................................................................13

    F.   NCMC Has Not Met Its Burden of Proving that Each Claimant Received the Fax During The Policy Period..................................................................13

    G.   NCMC Improperly Seeks to Impose the Duty to Defend Standard Upon the Question of Whether the Duty to Indemnify is Barred By the Prior Publication Exclusion...............................................................................................14

    H.   NCMC's Charitable Donations Are Not Covered Damages........................15

## **TABLE OF AUTHORITIES**

*A. Kush Assoc., Ltd. v. American States Ins.*, 927 F.2d 929 (7th Cir 1991)..........................10

*American States Ins. Co. v. Capital Associates of Jackson County*,
392 F.3d 939 (7th Cir 2004).......................................................................1, 11, 13

*Commonwealth-Edison Company v. National Fire Ins. Co.*,
323 Ill.App.3d 970, 752 N.E.2d 555 (3d Dist. 2001)..................................................8

*Crum & Forster Managers Corp. v. Resolution Trust Corporation*,
156 Ill.2d 384, 620 N.E.2d 1204 (1992).............................................................10, 14

*Flodine v. State Farm Ins. Co.*, 2003 WL 1394977 (N.D. Ill 2003).................................9

*Guillen v. Potomac Ins. Co. of Ill.*,
203 Ill.2d 141, 785 N.E.2d 1 (Ill. 2003)..................................................................9

*In re Ha 2003, Inc.*, 310 B.R. 710 (Bankr. N.D. Ill. 2004)............................................8

*Outboard Marine Corp. v. Liberty Mutual Ins. Co.*,
154 Ill.2d 90, 607 N.E.2d 1204 (1992)...............................................................10, 14

*Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*,
407 F.3d 631 (4th Cir. 2005)...............................................................................11

*St. Michael's Orthodox Catholic Church v. Preferred Risk Mutual Ins. Co.*,
496 N.E.2d 1176 (1st Dist. 1986).........................................................................13

#370445

I.  **Introduction**

In its motion for summary judgment, NCMC asks this Court to determine that Great Northern and Federal must pay the underlying $1.95 million settlement *irrespective of whether the settlement is actually covered under the terms and conditions of their policies*. NCMC seeks to divert this Court's attention away from the critical question of whether the terms of the insurance contracts actually apply to the underlying settlement by focusing on the irrelevant question of whether the amount they paid was reasonable. By suggesting in this fashion that Great Northern's and Federal's policy-based coverage defenses (as upheld in a similar case by the Seventh Circuit in *American States v. Capital Associates*) are not relevant to the question of whether the insurers must pay for the *Bernstein* settlement, plaintiffs essentially ask this court to estop Great Northern and Federal from raising their coverage defenses. Application of the estoppel doctrine under these circumstances, however, is entirely unprecedented in Illinois. This is not a case where the insurer has breached its duty to defend thereby risking application of the estoppel doctrine. Rather, Great Northern and Federal fully and completely funded NCMC's independent defense in the underlying *Bernstein* action subject to reservation of rights. In fact, the Court need only review NCMC's complaint to confirm that it has not alleged breach of the duty to defend in this insurance coverage dispute. By funding NCMC's independent defense under reservation of rights, Great Northern and Federal insulated themselves from the estoppel doctrine and preserved their ability to ultimately contest owing a duty to indemnify for any judgment or settlement entered against NCMC.

In essence, NCMC asks this court to adopt the unprecedented rule that an insurance company that agrees to fund the defense of a suit subject to reservation of rights is necessarily required to fund any settlement of that suit irrespective of whether the claim is actually covered

under the terms of its policy. In addition to turning Illinois insurance law on its head (by imposing a duty to defend standard upon an issue involving only the duty to indemnify), this proposition is clearly nonsensical and counterintuitive. If NCMC's proposed approach is correct, then any insured being defended under reservation of rights against a suit for which there are coverage issues, can manufacture coverage for the otherwise uncovered damages by simply running out and settling the claim for a reasonable amount. In doing so, the insured can circumvent any coverage-precluding policy provisions, thereby turning uncovered damages into damages that must be borne entirely by the insurer. Clearly, Illinois law does not provide such a windfall to insureds and does not handcuff insurers in such a draconian manner, particularly when they have followed the Illinois Supreme Court's mandate that they defend under reservation of rights if they ultimately want to contest coverage.

## II. NCMC's Brief is Replete With Incorrect or Misleading Assertions of Fact.

Pursuant to Local Rule 56.1(b)(3)(A), Great Northern and Federal have filed herewith a response to NCMC's statement of undisputed facts. In that document, the insurers have disputed certain facts which NCMC has listed as undisputed. In addition, NCMC's brief also includes certain alleged facts which are either incorrect or misleading. The most significant of NCMC's incorrect assertions of fact are set forth below.

First, NCMC asserts in its brief that defendants conceded that the settlement was reasonable or that defendants consented to the settlement. (NCMC's Brief at pages 1, 4, 5, 6, and 9.) These statements are incorrect. When informed of the settlement, Great Northern and Federal simply reiterated that the damages sought would not be covered and stated that they would therefore not "stand in the way" of the proposed underlying settlement. (Exhibit N to Plaintiff's Motion.) NCMC now attempts to turn this admonition into an admission of

2

reasonableness and an acknowledgment of consent. Plaintiff made this very same argument in advancing its motion for summary judgment in the related Minnesota state court action before that action was dismissed based on the doctrine of *forum non conveniens*. In considering NCMC's argument about defendants' statement that they would not "stand in the way" of the underlying settlement, the Minnesota trial judge wrote:

> Plaintiff urges the Court to find this statement was tantamount to a stipulation by Defendants that any settlement Plaintiff entered was "reasonable and non-collusive." Although not relevant to the issue before it, the Court notes that it does not read Defendants' letter response so broadly. Rather, it reads this comment only as a statement by Defendants that Plaintiff should proceed however it thought prudent, conceding neither reasonableness nor lack of collusiveness.

*(New Century Mortgage Corp. v. Great Northern, et al.*, No. 05C2370, March 18, 2005 Memorandum Opinion and Order, Hennepin Count District Court, Minnesota, attached as Exhibit A, page 3, footnote 1, to the Affidavit of Daniel J. Cunningham In Support of Defendants Great Northern Insurance Company's and Federal Insurance Company's Motion for Summary Judgment (hereinafter " Cunningham Affidavit in Support of Defendants' SUF".))

Second, NCMC asserts that the underlying plaintiffs alleged a specific claim for what they refer to as "property damage" in the second amended complaint. (NCMC's Brief at page 2.) While true, this statement is misleading in that it fails to reveal that the underlying Cook County Judge ultimately dismissed the cause of action based on property damage ***with prejudice***. (See, Memorandum Opinion and Order of Judge Patrick McGann, Exhibit A to Great Northern and Federal's Response to New Century's Statement of Uncontested Facts Pursuant to Local Rule 56.1(B)(3)(A) (hereinafter Defendants' Response to Plaintiff's SUF.")) As such, any cause of action specifically alleging property damage was no longer viable at the time NCMC elected to settle the case.

3

Third, in spite of the fact that it is not alleging breach of the duty to defend, NCMC asserts in its brief that Great Northern and Federal delayed payment of defense bills for over a year. (NCMC Brief at page 3 and 7.) In addition to being irrelevant, this statement is false. As previously admitted by NCMC, it did not initially support its demand for payment of past defense costs with copies of the actual defense bills. Instead, Great Northern and Federal had to repeatedly pursue NCMC for copies of the defense bills. (NCMC's Response to Requests for Admission Nos. 54, 55, 58, 59, 60, 61, and 62, attached as Exhibit 4 to Cunningham Affidavit in Support of Defendants' SUF.) Thus, any delays in reimbursement were the result of NCMC's failure to submit bills to the defendants. NCMC's irrelevant and incorrect assertions about delay are certainly ironic, given that it admits in its brief that it delayed notifying Great Northern and Federal of the *Bernstein* Suit for approximately sixteen months after the action was first filed. (NCMC Brief at 2-3, admitting that the *Bernstein* suit was filed on April 20, 2002 and that it provided notice to Chubb on August 15, 2003.)

Fourth, NCMC makes the unsupported assertion that "Chubb has never contended that the allegedly uncovered risk is the sole cause of damages." (NCMC's Brief at page 4.) This statement, too, is incorrect. The Court need only review Great Northern and Federal's position letter of June 22, 2004 to see that the insurers unequivocally stated that no portion of the damages sought could be covered under the policies. (Exhibit L to Plaintiff's SUF.)

Fifth, NCMC asserts that the $1.95 million settlement "was to settle NCMC's alleged TCPA violations..." (NCMC Brief at 12). Curiously, this assertion is not supported by the settlement agreement, which does not allocate the settlement amount specifically (or generally) to the TCPA claim. As the settlement agreement specifically releases not just the TCPA claims but all other state and federal statutory or common law claims, the settlement payment must be

4

attributable not just to the TCPA claims but also to the other state law claims. (Exhibit Q to Plaintiff's SUF, ¶ 15.)

Finally, NCMC states that it "believed the advertisement was being transmitted to persons who were willing recipients." (NCMC brief at 13.) In support for this proposition, NCMC refers to the Declaration of Monika L. McCarthy, an in-house attorney for NCMC. Although Ms. McCarthy claims personal familiarity with the matters identified in her Declaration, she does not assert any facts which would suggest that she was in fact personally involved in the events and transactions which gave rise to the underlying suit. In fact, the person at NCMC responsible for arranging for the fax transmissions in question, NCMC's Director of Marketing Frank Nese, testified in deposition that he does not recall Ms. McCarthy participating in the relevant events and that he never spoke to her about his intentions in arranging for fax advertising. (Nese Depo. Page 77 and 78, Exhibit B to Defendants' Response to Plaintiff's SUF.) Thus, Ms. McCarthy clearly does not have any personal knowledge supporting NCMC's assertion that the faxes were being transmitted to persons who were willing recipients. For this reason, Great Northern and Federal have filed a motion to strike certain paragraphs in the Affidavit of Monica McCarthy.

Not only is Ms. McCarthy's assertion in her affidavit not supported by personal knowledge, but it is also a blatant mischaracterization of what NCMC expected when it arranged for the transmission of the faxes in question. In fact, quite to the contrary of Ms. McCarthy's speculative and self-serving allegation, Frank Nese, the most knowledgeable person at NCMC regarding the events in question, testified that he understood that the recipients of the facsimiles might find receipt of the unsolicited advertisement objectionable. In fact, Mr. Nese (who was an officer of the company) testified that the advertisement included a callback phone number on its

5

face so that unwilling recipients could opt out. (Nese Depo., pages 53-55, Exhibit B to Defendants' Response to Plaintiff's SUF.) Mr. Nese provided the following testimony which contradicts NCMC's assertion that it believed the fax recipients were "willing" recipients:

> Q. Okay. Why is it that someone might not have wanted to receive a facsimile like this?
>
> A. For the same reason that people opt out of, you know, being telemarketed. They don't want a solicitation. They don't want a call at dinner time.
>
> Q. You understood that at the time that you were engaging fax.com to perform services for you; is that correct?
>
> A. I'm sorry. I'm just not sure where we're going. I understand some people don't want to receive certain types of advertising.
>
> Q. And you understood that at the time that you were engaging fax.com; is that correct?
>
> A. Yes.
>
> Q. You understood that some people might not want to receive an advertisement over their facsimile machine; is that correct?
>
> A. As I understand some people don't want to receive a piece of mail in their mailbox.
>
> Q. Does that mean yes?
>
> A. Yes.

(Nese Depo, pages 54-55.) Clearly, NCMC's assertion in its brief that it expected the advertisement to go only to willing recipients is contradicted by the testimony of its own Director of Marketing who freely acknowledged that some recipients might not want to receive a fax advertisement.

6

### III. Argument

#### A. The Policies Do Not Impose Upon The Insurers A Duty to Settle Uncovered Claims.

NCMC appears to base its entire claim against Great Northern and Federal on what it refers to as "breach of the duty to settle," but nowhere it its brief does it suggest where this alleged duty is imposed. This is purely a contract case inasmuch as plaintiffs have not alleged any tort or *extra contractual* causes of action. As this is a contract case, the purported "duty to settle" uncovered claims can arise only if the policies at issue impose such a duty. A review of the policies confirms that no such duty is imposed. In fact, quite to the contrary, the policies specifically negate any duty to settle uncovered claims when they state that they provide coverage only for certain specified types of injury "to which this insurance applies." (Page 6 of 28, form 17-02-308, Exhibit D to Plaintiff's SUF.) The policies further provide that while the insurer has the right to settle covered claims, the decision to do so is within its discretion. In this regard, the Great Northern policy provides: "We *may at our discretion* investigate any occurrence or offense and settle any claim or suit that may result." (Emphasis added, page 8 of 28, form 17-02-308, Exhibit D to Plaintiff's SUF.)

While there is certainly a body of case law in Illinois establishing that insurers can be exposed to tort damages when they, in bad faith, refuse to settle a covered claim thereby exposing the insured to personal liability for damages in excess of policy limits, plaintiff has not asserted that this case falls within that body of case law. Plaintiff has not alleged bad faith, has not alleged breach of the duty to defend, has not been exposed to a verdict or settlement in excess of its policy limits, has not asserted any tort or bad faith claims, and has not sought any tort or bad faith damages. As this is purely a contract case, the contract language must govern. As that language does not impose upon the insurers a duty to settle claims that are not actually

7

covered under the policies, NCMC's motion must be denied, and defendants' motion should be granted

### B. Great Northern and Federal Are Not Relying Upon The Voluntary Payments Provision to Establish That They Do Not Owe A Duty To Indemnify.

Plaintiff devotes the first few sections of its legal argument to a discussion of the voluntary payments provision. However, Great Northern and Federal are not relying upon that provision to establish that the policies do not cover the settlement. Rather, as explained in their own motion for summary judgment, Great Northern and Federal contend that the settlement does not fall within the scope of coverage in the first place. Alternatively, the insurers contend that the settlement falls within certain policy exclusions.

Because Great Northern and Federal are not asserting breach of the voluntary payments provision, they are uncertain as to why NCMC included this argument in its brief. To the extent that NCMC is attempting to argue that, once it overcomes the voluntary payments provision, Great Northern and Federal are estopped from asserting any other substantive coverage defenses, the insurers note that NCMC has not cited any support for this proposition. In fact, the very cases that NCMC cites regarding the voluntary payment issue establish that, even when the voluntary payment provision does not apply, the insurer is still entitled to assert its coverage defenses. In *In re Ha 2003, Inc.*, 310 B.R. 710, 725 (Bankr. N.D. Ill. 2004), the court rejected the insurers attempt to rely upon the voluntary payment provision, but still allowed the insurer to assert its other coverage defenses (albeit unsuccessfully). Indeed, the court specifically considered in that case whether the claim was barred by a particular policy exclusion. Similarly, in the other case cited by NCMC, *Commonwealth-Edison Company v. National Fire Ins. Co.*, 323 Ill.App.3d 970, 752 N.E.2d 555 (3d Dist. 2001), the court considered the insurer's substantive coverage defenses even after concluding that the insurer could not assert the

voluntary payments defense. Thus, the cases cited by plaintiff may stand for the narrow proposition that under certain circumstances the voluntary payments provision does not bar coverage for settlements to which the insurer does not consent, but these cases are clearly not so broad as to suggest that an insurer that has not breached its duty to defend is estopped from asserting any other coverage defenses.

    **C.**    **As Great Northern and Federal Have Not Breached Any Duty to Defend, The Two-Part Test Advanced By Plaintiff Is Irrelevant to The Question of Whether The Settlement Is Actually Covered.**

NCMC dedicates the bulk of its brief to an analysis of the two-part test identified in *Guillen v. Potomac Ins. Co. of Ill.*, 203 Ill.2d 141, 785 N.E.2d 1 (Ill. 2003) for determining whether an insurer *that has breached its duty to defend* must indemnify an insured for a settlement that an insured entered without the insurer's consent. The test imposed in *Guillen* requires that an insurer that has breached its duty to defend must indemnify the insured for the settlement as long as the insured can prove that (a) its decision to settle was reasonable and that (b) the amount paid was also reasonable. *Id.* at 363. In *Guillen,* the court considered only these two issues, and not any substantive coverage defenses, because the insurer had breached its duty to defend and was therefore estopped from raising any defenses to coverage. A federal district court employed a similar analysis in the other case cited by NCMC—*Flodine v. State Farm Ins. Co.*, 2003 WL 1394977 (N.D. Ill 2003). As in *Guillen*, the insurer in *Flodine* breached the duty to defend and was estopped from raising its coverage defenses. As such, the court considered only the reasonableness of the decision to settle and the amount of the settlement in considering whether the insurer owed a duty to indemnify.

While *Guillen* and *Flodine* are certainly instructive as to how a court should proceed when the insurer has breached its duty to defend and is therefore estopped from raising its

coverage defenses, those cases can have no bearing on the instant dispute. Great Northern and Federal have not breached any duty to defend, and NCMC has not asserted that they have. In fact, the insurers have fully funded NCMC's defense in the underlying case, and specifically reserved their right to contest the duty to indemnify. Great Northern and Federal followed the exact procedure identified by Illinois state and federal courts for preserving the right to contest coverage. When an insurer tenders its defense to an insurer and the insurer believes it does not owe coverage, the insurer must either proceed to defend the underlying action under a reservation of rights or seek a declaratory judgment that there is no duty to defend. *A. Kush Assoc., Ltd. v. American States Ins.*, 927 F.2d 929 (7th Cir 1991). The insurers complied with this procedure by defending subject to reservation of rights.

As they have not breached the duty to defend, Great Northern and Federal are not estopped from raising their coverage defenses to deny coverage. Indeed, these insurers are in a diametrically opposite position to that of the offending insurers in *Guillen* and *Flodine*. In the absence of a breach of the duty to defend and estoppel, the *Guillen* two-part test is not determinative of the question of whether the insurer must indemnify the insured for the underlying settlement. As such, NCMC's attempt to focus this Court's attention primarily upon the alleged reasonableness of their settlement is misguided. The appropriate approach is to consider whether NCMC has met its burden of proving that the damages paid in the settlement fall within the scope of coverage afforded in the policies, and, if so, whether the insurers have met their burden of proving that any exclusions bar coverage. *Crum & Forster Managers Corp.*, 156 Ill.2d 384, 398, 620 N.E.2d 1073, 1081; *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 127, 607 N.E.2d 1204, 1221 (1992). While this approach does not require that the insured prove its liability in the underlying case, it does require that the insured come forward

with some modicum of evidence establishing that damages at issue in the settlement are the kind of damages actually covered under the policies. Any analysis of the reasonableness of the total settlement amount is necessarily irrelevant in the case of an insurer that has properly preserved its right to contest coverage because the parties do not know what portion, if any, of the underlying settlement amount is actually covered under the policies. Why would a court consider whether a defendant reasonably paid several million dollars to settle a case when the policies in question would not cover the settlement amount in the first place?

NCMC's attempt to apply the *Guillen* two-step approach should also be rejected because it requires the Court to treat an insurer that has not breached its duty to defend in exactly the same fashion that it would be required to treat an insurer that had breached that duty. Certainly, an insurer that properly preserves its right to contest coverage by defending its insured under reservation should occupy a substantially better position than the insurer that improperly denies coverage and requires the insured to fend for itself. Having preserved their ability to contest coverage by defending under reservation of rights, Great Northern and Federal are entitled to assert their coverage defense just like any other insurer involved in a dispute regarding the duty to indemnify.

### D. The Seventh Circuit's Decision in *American States v. Capital Associates* is Determinative of the Outcome of This Case.

In *American States Ins. Co. v. Capital Associates*, 392 F.3d 939 (7th Cir. 2004), the Seventh Circuit determined that an insurer did not owe either a duty to defend or a duty to indemnify for a class action suit alleging violation of the TCPA.[1] So confident was the court in it decision that it concluded by stating, "[t]his issue is not close." *Id.* at 943. In their

---

[1] The Fourth Circuit also reached a similar conclusion in *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631 (4th Cir. 2005).

11

memorandum in support of their motion for summary judgment, Great Northern and Federal explained why the *American States* case controls this dispute, and that explanation will not be repeated here.

However, in conjunction with its own motion for summary judgment, NCMC makes a novel attempt to distinguish *American States* which warrants discussion here. NCMC argues that the reasoning of *American States* should be limited to TCPA claims asserted by corporations rather than individuals. (NCMC Brief at 11.) However, while the Seventh Circuit indeed explained that corporations lack certain privacy interests enjoyed by individuals, at no point in the decision does the court suggest that TCPA claims asserted by individuals should be carved out of its conclusion that TCPA claims are not even potentially covered under liability policies. In fact, the court specifically brought TCPA claims asserted by individuals within the ambit of its decision when it reasoned:

> The class of junk-fax recipients may include real rather than artificial people, however, so we cannot stop yet. The structure of the policy strongly implies that coverage is limited to secrecy interests. It covers a "publication" that violates a right of privacy. In a secrecy situation, publication matters; otherwise secrecy is maintained. In a seclusion situation, publication is irrelevant.

*Id.* at 942. Thus, the court concluded that the only privacy interest protected by the policy is the interest in secrecy (rather than an interest in seclusion). The court then held that TCPA claims are not covered because the TCPA does not protect a secrecy interest and instead "condemns a particular means of communicating." *Id.* at 943. As a consequence, the court found that all TCPA claims are not covered, regardless of whether they are asserted by individuals as opposed to businesses, because the TCPA does not implicate the secrecy interest covered by the policy. As a result, the status of the entity pursuing the claim can have no bearing whatsoever on the coverage issue because the TCPA does not protect any secrecy interests.

E.  **NCMC Has Not Met Its Burden of Proving that The *Bernstein* Claim Arises Out of An "Occurrence."**

NCMC bears the burden of proving that the claim arises out of an "occurrence," which is generally defined to refer to an accident. In *American States*, the Seventh Circuit established as a matter of law that TCPA claims do not arise out of an accident because "all senders know exactly how faxes deplete recipients consumables." American States at 943.

Even if the Seventh Circuit had not resolved this issue as a matter of law, NCMC still could not meet its burden of proof because the only support that they have offered to meet their burden is paragraph 10 of the Declaration of Monica McCarthy. (NCMC Brief at page 13.) As explained in the accompanying Motion to Strike, Ms. McCarthy's conclusory, unsupported and self-serving assertion is not based upon her personal knowledge and is not admissible. As NCMC has offered no other evidence to meet its burden of proof, its motion for summary judgment must be denied.

F.  **NCMC Has Not Met Its Burden of Proving that Each Claimant Received the Fax During The Policy Period.**

Under Illinois law, the existence of coverage is an essential element of the insured's case, and the insured has the burden of proving that the loss falls within the terms of the policy. *St. Michael's Orthodox Catholic Church v. Preferred Risk Mutual Ins. Co.*, 496 N.E.2d 1176 (1st Dist. 1986). The Great Northern policy provides that "[t]his insurance applies to advertising injury or personal injury caused by an offense committed during the policy period." (Defendants' SUF at ¶ 6 and 15.)

Pursuant to the terms of the policy, NCMC has the burden of proving that the offense did in fact take place during the policy period. To determine whether there is "advertising injury" or "personal injury" coverage, the court must focus upon the date of the event which caused the

alleged injury, and that date must fall within the policy period. NCMC expressly admits in its answers to Defendants' First Set of Interrogatories that it lacks sufficient information to identify the dates upon which the claimants in the underlying action received the facsimile in question. (Defendants' SUF at ¶ 55. Consequently, as NCMC has failed to provide evidence establishing that an offense occurred during the policy period, Great Northern and Federal cannot owe coverage for the settlement.

### G. NCMC Improperly Seeks to Impose the Duty to Defend Standard Upon the Question of Whether the Duty to Indemnify is Barred By the Prior Publication Exclusion.

NCMC's final argument is entitled "The Prior Publication Exclusion Does Not Excuse Chubb's Defense Duty." However, the defense duty is not at issue in this case. Instead, only the duty to indemnify is at issue, and that duty is governed by a different standard than the duty to defend. *Crum & Forster Managers Corp.*, 156 Ill.2d 384, 398, 620 N.E.2d 1073, 1081; *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 127, 607 N.E.2d 1204, 1221 (1992). In their memorandum in support of their motion for summary judgment, Great Northern and Federal have explained all of the reasons as to why the Prior Publication Exclusion bars coverage. NCMC's only argument as to why the exclusion does not bar coverage is that "none of the complaints in the Bernstein Action allege NCMC transmitted a fax advertisement prior to Chubb's policies inception, let alone an injurious fax advertisement prior to Chubb's policies inception." (NCMC Brief at page 15.) This argument is factually and legally flawed. First, as a matter of fact, the underlying *Bernstein* complaint sought to establish a class on behalf of all recipients of the unsolicited advertisement dating back four years prior to the filing of the complaint which is well before the inception of the policies at issue. (Exhibit B to Plaintiff's

14

SUF, ¶ 17.) Thus, the underlying complaint does seek recovery for faxes sent prior to the policy period.

Second, even if the complaint did not seek recovery for faxes sent prior to the policy period, Great Northern and Federal could still assert the exclusion because the allegations in the complaint do not control the duty to indemnify. Rather, that duty is resolved based on consideration of actual evidence rather than mere allegations. As the insurers have proffered irrefutable evidence in their motion for summary judgment that the advertisement was first transmitted prior to the policy period, the exclusion bars coverage.

### H. NCMC's Charitable Donations Are Not Covered Damages.

In conjunction with the Settlement Agreement, NCMC paid approximately $1 million to eighteen separate charities, including such organizations as Habitat for Humanity, Junior Achievement, and the Cystic Fibrosis Foundation. (Defendants' SUF at ¶ 51.) No provision in the Great Northern and Federal policies requires the insurers to indemnify NCMC for charitable donations. Such donations do not constitute "damages which the insured becomes legally obligated to pay by reason of liability imposed by law..." as required by the policies. In its brief, NCMC has offered no explanation as to how a payment to a charity can be covered under the policies at issue. Great Northern and Federal, therefore, cannot owe a duty to indemnify with regard to the charitable donations.

WHEREFORE, for the reasons set forth herein, Great Northern and Federal respectfully request that this Court deny plaintiff's motion for summary judgment, grant defendants' motion for summary judgment, and declare that Great Northern and Federal do not owe an indemnity obligation to NCMC under the policies at issue for money paid in the underlying settlement.

                        GREAT NORTHERN INSURANCE COMPANY
                        FEDERAL INSURANCE COMPANY


                        By: /s/ *Daniel J. Cunningham*

                        One of their Attorneys

Daniel J. Cunningham
Kathy Karaboyas Malamis
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6308
(312) 627-4000

16

KK2/ds/370470                                                                                             2246-42

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEW CENTURY MORTGAGE CORP., | ) ) ) | Case No.: 05C2370 |
| Plaintiff, | ) ) ) | Judge: Coar |
| v. | ) ) ) | **DEFENDANTS GREAT NORTHERN AND FEDERAL'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| GREAT NORTHERN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendants. | ) ) | |

## CERTIFICATE OF SERVICE

    I hereby certify that on October 27, 2005, I electronically filed Defendants Great Northern's And Federal's Memorandum Of Law In Opposition To Plaintiff's Motion For Summary Judgment with the Clerk of the Court using CM/ECF System which will send notification of such filing(s) to the following:

Bart T. Murphy
Wildman, Harrold, Allen & Dixon
2300 Cabot Drive – Suite 455
Lisle, IL 60532
(630) 955-0555
**Fax:** (630) 955-0662

David A. Gauntlett
Eric R. Little
Gauntlett & Associates
18400 Von Karman – Suite 300
Irvine, CA 92612
(949) 553-1010
**Fax:** (949) 553-2050

GREAT NORTHERN INSURANCE COMPANY

By: /s/ *Daniel J. Cunningham*
_____
One of Its Attorneys

Daniel J. Cunningham
Kathy Karaboyas Malamis
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000