KK2/mmt/372357                                                      2246-42-75-681

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NEW CENTURY MORTGAGE CORP., | ) ) ) | Case No.: 05 C 2370 |
| Plaintiff, | ) ) | Judge: Coar |
| v. | ) ) | |
| GREAT NORTHERN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' GREAT NORTHERN INSURANCE COMPANY AND FEDERAL INSURANCE COMPANY'S MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY

NOW COME the Defendants, GREAT NORTHERN INSURANCE COMPANY ("Great Northern") and Federal Insurance Company ("Federal") by and through their attorneys, TRESSLER, SODERSTROM, MALONEY & PRIESS, and hereby move for leave to submit supplemental authority to the Court, and in support thereof, state as follows:

1. Great Northern and Federal's Reply In Further Support of Their Motion For Summary Judgment was filed on November 10, 2005.

2. Thereafter, on November 22, 2005, The Honorable Judge Robert J. Gettleman rendered a decision in St. Paul Fire and Marine Insurance Company v. Brunswick Corporation and Brunswick Bowling & Billiards Corporation, Case No. 04 C 7751 (United States District Court for the Northern District of Illinois), holding that an insurer owed no duty to defend or indemnify its insured for TCPA claims under the advertising injury, personal injury, or property

2

damage coverage portions of the insurance policy at issue. (A copy of the November 22, 2005 decision is attached hereto as Exhibit A).

3.   Great Northern and Federal seek leave to submit <u>St. Paul Fire and Marine Ins. Co. v. Brunswick Corp., et al.</u>, in further support of their Motion for Summary Judgment.

WHEREFORE, Defendants, GREAT NORTHERN INSURANCE COMPANY and FEDERAL INSURANCE COMPANY, respectfully request that this Honorable Court enter an order granting Defendants leave to submit the additional authority referred to herein in further support of their Motion for Summary Judgment, and for such other relief as this Court deems necessary and just.

GREAT NORTHERN INSURANCE
COMPANY AND FEDERAL
INSURANCE COMPANY

By: *s/Kathy Karaboyas Malamis*
_____
One of Their Attorneys

Daniel J. Cunningham
Kathy Karaboyas Malamis
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 04 C 7751 |
| BRUNSWICK CORPORATION and BRUNSWICK BOWLING & BILLIARDS CORPORATION, | ) ) ) ) ) | Judge Robert J. Gettleman |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, St. Paul Fire and Marine Insurance Company, has brought a second Amended Complaint seeking a declaration that it has no duty to defend or indemnify defendants Brunswick Corporation and Brunswick Bowling & Billiards Corporation (jointly, "defendant") against class action claims alleging that defendant transmitted unsolicited commercial facsimiles in violation of the Federal Telephone Consumer Protection Act ("FTCPA"), 47 U.S.C. §227(b)(1)(C). Plaintiff has moved for summary judgment pursuant to Fed. R .Civ. P. 56. For the reasons set forth below, the motion is granted.

## FACTS

In April 2002, Leiserv, Inc., an affiliate of defendant, entered into an agreement with Sunbelt Communication & Marketing, LLC. ("Sunbelt") to send facsimile advertisements for defendant throughout the Atlanta, Georgia area. In April 2004, Bruce Morriss, P.C., a recipient of the faxes, filed a class action lawsuit against defendant alleging that the faxes violated the

FTCPA and that the violation constituted an "unlawful invasion of privacy, including, but not limited to, invasion of privacy by intrusion and trespass."

Plaintiff issued defendant a commercial umbrella liability policy effective from December 1, 2001, to December 1, 2002. The policy has a $25 million coverage limit and is excess of an underlying policy which is subject to a two million per occurrence and a two million aggregate limit. On April 27, 2004, defendant tendered the Morriss action to plaintiff, seeking coverage under the policy. Plaintiff acknowledged defendant's tender but denied any coverage obligation under the policy because there was no evidence that the underlying limits had been exhausted. Plaintiff reserved all rights under the policy or applicable law, including the right to deny coverage. Plaintiff then initiated the instant action, seeking a declaration of rights under the policy.

## DISCUSSION

As an initial matter, the court must apply the substantive law of the forum state. Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir 2000). Under Illinois choice of law principles, insurance contracts are construed according to the law of the state with the "most significant contacts" with the policy. In the instant case, the parties agree that Illinois law governs interpretation of the policy in question.

The construction of an insurance policy and any determination of the rights and obligations under it are questions of law for the court and are appropriate for disposition on summary judgment. Central Illinois Light Co. v. Home Insurance Co., 213 Ill. 2nd 141, 153 (2004). When construing the language of an insurance policy, the primary goal is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. Id. To

2

determine the meaning of the wording of the policy and the intent of the parties, the policy must be construed as a whole with due regard to the risk undertaken, the subject matter that is insured and the purpose of the entire contract. Outboard Marine Corp. v. Liberty Mutual Ins. Co., 154 Ill.2d 90, 108 (1992). The construction given to an insurance policy should be natural and reasonable and if the "words in the policy are plain and unambiguous they are to be given their plain, ordinary meaning and be applied as written." Valley Forge Insurance Co. v. Swiderski Electronics, Inc., ___ Ill. App. 3rd, ___, 834 N.E..2d 562, 571 (2nd Dist. 2005). If, however, the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and should be construed strictly against the drafter of the policy and in favor of coverage. Id.

To determine whether the insurer has the duty to defend, the court compares the allegations of the underlying complaint to the relevant coverage provisions of the insurance policy. Id. The threshold is low, and if the facts alleged in the underlying complaint fall even potentially within the policy's coverage, the duty to defend arises. Id. (citing Outboard Marine, 154 Ill.2d at 108). The underlying complaint and the policy are to be liberally construed in favor of the insured, with all doubts and ambiguities construed in favor of the insured. Id. It is the factual allegations in the underlying complaint, not the legal theories, that determine whether a duty to defend arises. Id.

The underlying complaint in the instant case alleges that defendant transmitted a one page advertisement to the plaintiff's business facsimile machine without the plaintiff's prior express invitation or permission. Allegedly, the same facsimile advertisement was sent to hundreds or thousands of additional persons. The plaintiff alleges that defendant's dissemination of

3

unsolicited facsimiles violated the FTCPA and invaded the privacy of the named plaintiff (Morriss) and putative class members, including invasion of privacy by intrusion and trespassing. The complaint alleges that the plaintiff and putative class members have been damaged in the amount of the cost of producing the facsimile advertisement (e.g., the cost of paper, toner and fax machine maintenance).

In the instant case, defendant argues that plaintiff has a duty to defend the underlying action based on three separate coverage provisions of the policy. Specifically, defendant argues that the claims presented in the underlying action are covered under the "advertising injury," "personal injury," and/or "property damage" provisions.

### Advertising Injury

Under the policy, Plaintiff has a duty to defend any suit against defendant seeking damages caused by "Advertising Injury." The policy defines advertising injury as injury other than bodily injury or personal injury, arising out of the insured's business and caused by one or more of the following:

1. oral, written or electronic publication of material in your Advertisement that Slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

2. oral, written or electronic publication of material in your Advertisement that violates a person's right of privacy;

3. unauthorized use in your Advertisement of Another's advertising Idea; or

4. infringement in your Advertisement of another's copyright, trade dress or Slogan.

Defendant argues that the claims asserted in the underlying action, which alleged that defendant's unsolicited facsimile violated the plaintiff's right of privacy by intrusion and

trespass, fall within in subsection 2. There are two Illinois cases addressing whether similar insurance coverage provisions provide coverage for fax – advertising claims brought pursuant to the FTCPA. They reach opposite results.

In the first, relied upon by plaintiff, the Seventh Circuit, applying Illinois law, held that the sending of unsolicited fax advertisements was not covered (and not even potentially covered) by the policy's advertising injury provision. American States Insurance Co. v. Capital Associates of Jackson County, Inc., 392 F.3d 939 (7th Cir. 2005). The policy at issue, similar to the policy in the instant case, defined advertising injury to include "[o]ral or written publication of materials that violates a person's right of privacy." The district court had found coverage, based on case law suggesting that the FTCPA was understood to protect "privacy," and that under the FTCPA privacy included seclusion. In reversing, Judge Easterbrook noted that the appropriate question was not how the word privacy was used in the FTCPA, but what the word means in the particular insurance policy in question or, more specifically, "whether the policy covers the sort of seclusion interest affected by fax ads." Id. at 942. After explaining the difference between the two principal connotations of "privacy," secrecy and seclusion, the court noted that the policy language read like coverage of the "tort invasion of privacy," where an oral or written statement reveals an embarrassing fact that brings public attention to a private figure, or casts someone in a false light through publication of true but misleading facts. Id. at 941. Because the recipient did not allege that the insured published any information about it, the court concluded that the advertising injury provision did not cover the normal consequences of advertising faxes. Id at 943. "To put this differently, [the FTCPA] condemns a particular means of communicating an

5

advertisement, rather than the contents of the advertisement-- while an advertising injury coverage deals with informational content." Id. at 942.

In contrast, defendants rely on Valley Forge, 834 N.E. 2d 562, in which the Illinois Appellate Court found a duty to defend, rejecting the holding and reasoning of American States. The Appellate Court thus held that an advertising injury provision similar to the one in American States did at least potentially cover the injuries resulting from advertising faxes. Id. at 571. The Valley Forge court specifically rejected American States' distinction between secrecy and seclusion, indicating that while "this 'contextual' approach to determining the meaning of privacy may find support in privacy actions under the common law, that is not the standard governing judicial construction of an insurance policy in Illinois." Id. at 574. After noting that American States had rejected cases reaching opposite conclusion because they failed to distinguish secrecy from seclusion or to appreciate that the FTCPA may have used the word "privacy" differently than the insurance company, the court noted "that Insurers could have defined 'privacy 'in the policy to avoid such a result. As an undefined term, however, we are required to give 'privacy' its plain, ordinary and popular meaning." The court then stated that "privacy is privacy" and included intrusion on seclusion, finding that the sending of unsolicited fax- advertising falls potentially within the scope of coverage under the terms of the advertising injury provision. Id. at 575.

As noted, because jurisdiction in the instant case is based on diversity of citizenship, the court applies Illinois law on substantive matters. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Because the Illinois Supreme Court has not yet addressed the issue, this court's task is to predict how that court would hold if the instant case was now before it. Allstate Insurance Co. v.

6

Menards, Inc., 285 F.3d 630, 637 (7th Circ. 2002). In making this prediction, the court should "give great weight to the holdings from the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision on the intermediate appellate court." Id. at 635.

In the instant case, there is only one intermediate appellate court decision. One decision does not present a strong indication of how the Illinois Supreme Court would rule on the issue, particularly since that case comes to the opposite conclusion of an intermediate federal court decision, which would ordinarily stand as precedent for this court. Although this court might, under certain circumstances, be inclined to follow the decision of the Illinois court since "there is some evidence that federal courts are not the best prognosticators of the future course of state doctrine issues," Allstate, 285 F.3d at 639, the instant case is a simple matter of contract interpretation, and neither American States nor Valley Forge was decided on a newly announced rule of law. Thus, the court finds inapplicable the Supreme Court's holding in West v. American Tel. & Tel. Co., 311 U.S. 223, 237 (1940), that "where an intermediate appellate court rests its considered judgement upon the rule of which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of this state would decide otherwise."

Indeed, the Valley Forge court appears to have disregarded the well settled rules of contract construction to which it referred. For example, the court notes that if the words in the policy are plain and unambiguous, they are to be afforded their plain, ordinary meaning and be applied as written. Valley Forge, 834 N.E.2d at 572. Yet, it gives a strained construction to the

7

actual words in question: "oral or written publication, in any manner, of <u>material</u> that violates a persons right of privacy." (emphasis added) The meaning of those words are unambiguous. As written, the phrase "violates a persons right of privacy" refers to the content of the material published, not from the publishing itself. It is the content of the material published that creates the injury.

Moreover, even if that meaning is not unambiguous simply from the construct of the sentence itself (which it is), it becomes even clearer when viewed in the context of the entire contract definition of advertising injury, which consists of: (1) publication in any manner that "slanders or libels a person or organization or disparages a person's or organization's goods, products or services;" (2) "publication, in any manner, of material that violates a person's right of privacy;" (3) use of another's advertising idea in your advertisements;" and (4) infringing upon another's copyright, trade dress or slogan in your advertisement." As is readily apparent, each of these defined injuries focuses on the content of the advertisement causing the injury. Thus, by focusing exclusively on the definition of the word privacy, the <u>Valley Forge</u> court failed to recognize that the contract itself defined the injury covered, not just by the type of privacy invaded, but on the content of material that invaded the privacy rights. Therefore, this court concludes that on this point <u>American States</u> is the better reasoned opinion and more likely to be followed by the Illinois Supreme Court.

Moreover, the distinction is made even clearer when viewing the wording of the instant policy, which is slightly different than the policies in <u>Valley Forge</u> and <u>American States</u>. The policy in the instant case defines advertising injury as "oral, written, or electronic publication of <u>material in your Advertisement</u> that violates a person's right of privacy." (emphasis added). The

8

addition of the words "in your Advertisement" unambiguously demonstrates that to be covered the injury must be a result of the content of the material. Because the underlying complaint does not allege that the "material" in defendants' advertisement violated plaintiff's right to privacy, only that the mere sending of the facsimiles, regardless of their content, violated the plaintiff's rights, the underlying claim is not even potentially within the scope of coverage. Thus, plaintiff has no duty to defend under the advertising injury provision.

**Personal Injury**

The policy defines personal injury to mean "Injury, other than Bodily Injury or Advertising Injury, arising out of your business and caused by one or more of the following offenses: . . . 5) oral, written or electronic publication of material that violates a person's right to privacy." Although not limited to material published in an advertisement, the definition is obviously intended to cover injury caused by the content of the material published and, for the reasons set forth above, the policy provides no duty to defend the underlying action.

**Property Damage**

The policy defines property damage as: (1) physical injury to tangible property of others including all resulting loss or use of that property; (2) loss of use of tangible Property of others that is not physically injured. Additionally, the policy contains an exclusion entitled "Expected or Intended Body Injury or Property Damage," which excludes Bodily Injury or Property Damage "expected or intended from the standpoint of the insured."

The property damage asserted in the underlying claim is the ink and paper the Morriss plaintiff had to use as a result of receiving the faxes sent by defendant. As noted in American States, because every junk fax invades the recipient's property interest in consumables, this

9

normal, expected outcome is not covered. American States, 392 F.3d at 943. Accordingly, plaintiff has no duty to defend the underlying action based on the property damage provision on the policy.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is granted, declaring that plaintiff St. Paul Fire and Marine Insurance Company has no duty to defend or indemnify defendants Brunswick Corporation and Brunswick Bowling and Billiards Corporation in the Morriss lawsuit.

ENTER:    November 22, 2005

_____
Robert W. Gettleman
United States District Judge