UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEW CENTURY MORTGAGE CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 05 C 2370 |
| ) | |
| GREAT NORTHERN INSURANCE ) | Judge Coar |
| COMPANY, FEDERAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**NEW CENTURY'S RESPONSE TO DEFENDANTS' MOTION TO FILE SUPPLEMENTAL AUTHORITY N SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, NEW CENTURY MORTGAGE CORP., ("New Century") by and through its attorneys, and in response to Defendants' motion for leave to file supplemental authority, states as follows.

## INTRODUCTION

Defendants have filed a request for leave to file supplemental authority in support of their motion for summary judgment citing Judge Gettleman's decision in *St. Paul Fire and Marine Ins. Co. v. Brunswick Corp.* (the "Brunswick Decision"), No. 04 C 7751 (N.D. Ill. Nov. 22, 2005) in support of its motion for summary judgment. As set forth below, New Century asserts that the Court should deny this request as the Brunswick Decision is inapplicable in that the policy language at issue in that decision differs from the language of the policy at issue in this case. Alternatively, should the Court allow Defendants to file their citation of supplemental

1608157-2                                  1

authority, New Century requests leave to file the following memorandum to allow it to demonstrate that the Brunswick Decision is distinguishable.

## ARGUMENT

### I. THE SUPPLEMENTAL AUTHORITY SHOULD BE DISREGARDED

#### A. The Brunswick Policy Has a Different Offense Than Chubb's Policy: Brunswick's Offense Requires That the Advertising Material Violate the Right of Privacy, While Chubb's Offense Requires that Publication of Advertising Material Violate the Right of Privacy

The policy language at issue in *St. Paul Fire and Marine Ins. Co. v. Brunswick Corp.*, Case No. 04 C 7751, United States District Court for the Northern District of Illinois, is distinct from the language in the policies issued by Defendants to New Century in this case (the "Chubb Policies"). In *Brunswick*, the policy requires that the insured's advertisement contain the material that violates the right of privacy. The offense at issue in *Brunswick* is "oral, written or electronic publication of material in your advertisement that violates a person's right of privacy." *Brunswick* at 4. Here, the offense at issue is "oral or written publication of advertising material that violates a person's right of privacy." (See: *Plaintiff's Appendix of Exhibits in Support of its Motion for Summary Judgment at Exhibit D* at p. 21).

Unlike the St. Paul policy at issue in the Brunswick Decision, which the District Court found requires that the material in the insured's advertisement violate the right of privacy, the Chubb Policies provide that publication of various forms of advertising, i.e., "advertising material," may violate the right of privacy. Giving the language in the Chubb Policies its plain, ordinary and popular meaning, the offense provides coverage for violation of the right of privacy

through publication of various physical forms[1] of advertising such as mailers, fliers, faxes or television, radio and newspaper advertisements, regardless of the content.

    B.    **The Illinois Appellate Court Better Predicts the Illinois Supreme Court as Has Been Shown in Recent Cases**

The Brunswick Decision rests upon its determination that *American States Ins. Co. v. Capital Associates of Jackson County, Inc.*, 392 F.3d 939 (7th Cir. 2005) better predicts how the Illinois Supreme Court will rule than the Illinois appellate opinion, *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 359 Ill. App. 3d 872, 834 N.E.2d 562 (2d Dist. 2005). *Brunswick* at 8. The District Court, however, fails to consider recent instances of the Seventh Circuit incorrectly predicting what the Illinois Supreme Court will decide on an issue. In particular and in the context of insurance coverage, the Seventh Circuit tacitly predicted the Illinois Supreme Court would allow insurers to obtain reimbursement of defense expenses if it was later determined that the insurer had no defense obligation.[2] Contrary to the Seventh Circuit's prediction, the Illinois Supreme Court subsequently held that an insurer is not entitled to reimbursement of defense expenses paid even though an ultimate determination of non-coverage is made.[3] So, here, it is not clear that the Illinois Supreme Court would agree with the Seventh Circuit's decision in *Capital Associates*.

---

[1]Material is defined as "of or relating to matter; physical" (BLACK'S LAW DICTIONARY 998 (8th ed. 1999)) and as "formed or consisting of matter; physical; corporeal (RANDOM HOUSE UNABRIDGED DICTIONARY 1185 (2d ed. 1993).

[2]*Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1076 (7th Cir. (Ill.) 2004) ("Had Zurich mistrusted Taco Bell's incentive or ability to economize on its legal costs, it could, while reserving its defense that it had no duty to defend, have assumed the defense and selected and supervised and paid for the lawyers defending Taco Bell in the Wrench litigation, and **could later have sought reimbursement** if it proved that it had indeed had no duty to defend Taco Bell." (emphasis added)).

[3]*General Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 166, 828 N.E.2d 1092, 1104 (2005) ("Gainsco is **not entitled to reimbursement of defense costs** paid pending the trial court's order in the declaratory judgment action. The fact that the trial court ultimately found that the underlying claims against Midwest were not covered by the Gainsco policies **does not entitle Gainsco to reimbursement of its defense costs**." (emphasis added)).

### C. The *Swiderski* Decision Is Better Reasoned than *Capital Associates*

The *Brunswick* court follows *Capital Associates*, contending it is a better reasoned decision than *Swiderski*. *Brunswick* at 8. The District Court finds that the *Swiderski* court disregarded well-settled rules of contract interpretation, claiming the offense at issue unambiguously refers to the content of the material published. *Id.* The District Court, however, mistakenly relies on other offenses in the Swiderski policy – infringement of copyright, trade dress, or slogan and use of another's advertising idea – which do require the content of the advertising material to be wrongful, instead of looking to the offense at issue in *Swiderski*, which requires the **publication** to be wrongful. Unlike the policy in *Brunswick*, the Swiderski policy, like the Chubb Policies, does not require that the content in the insured's advertisement violate the right of privacy.

Here, there is no requirement that a New Century advertisement contain information that violates a right of privacy. The plain, ordinary understanding of the policy language only requires that publication of some form of advertising violate a right of privacy. Unlike the offenses that are distinct torts, where injury can only be caused by the content of the material published, a person's privacy rights may be violated in many ways, as was acknowledged by the Seventh Circuit in *Capital Associates*.[4]

Disregarding its own finding of multiple meanings, the Seventh Circuit decided that violation of the right of privacy is the same as invasion of privacy, and the District Court follows this misapplication of Illinois law. *Brunswick* at 5. Both courts completely ignore the fact that insurers could have defined "advertising injury" by including the tort of invasion of privacy as

---

[4]*Capital Associates*, 392 F.3d at 941 (" 'Privacy' is a word with many connotations. The two principal meanings are secrecy and seclusion, each of which has multiple shadings.").

the pertinent offense just like the torts libel and slander, infringement of copyright, trade dress and slogan are specifically covered offenses.

As such, the grant of coverage is like that for "disparagement," which is not limited to product disparagement under Illinois law.[5] Chubb chose to cover the broader offense of "oral or written publication of advertising material that violates a person's right of privacy." No limited construction is appropriate.[6]

Apparently recognizing the deficient analysis by the Seventh Circuit in narrowing the meaning of the offense, the District Court, while recognizing the policy language in each case is different, concludes that "each of these defined injuries focuses on the content of the advertisement causing the injury." *Id.* at 8. The term "advertising injury" is defined by offenses, not by defined injuries.[7] The focus on injury allows the District Court to follow the Seventh Circuit's misconstruction of the offense into the tort of invasion of privacy in order to support the conclusion that content is critical. The offense covered, however, is violation of the right of privacy which can occur, according to the terms of Chubb's policies, through the publication of some form of advertising, regardless of the content.

---

[5]*Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 11 F. Supp. 2d 995, 1000 (N.D. Ill. 1998) (Castillo) ("[T]he determination of whether an allegation potentially triggers coverage under the popular and ordinary meaning of the word 'disparage' is a far cry from determining whether a complaint's allegations fail to state a viable claim for common law product disparagement. . . . There is no evidence that the parties intended 'disparage' to refer exclusively to the common law tort of product disparagement . . . .").

[6]*LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.*, No. C 04-1001 SBA, 2005 WL 146896, at *10 (N.D. Cal. Jan. 20, 2005) ("[N]othing in the Liberty Policies limits 'right of privacy' to common law right of privacy. *See Park Univ. Enters. v. Am. Cas. Co. of Reading*, 314 F. Supp. 2d 1094, 1109 (D. Kan. 2004) (noting that if insurer wanted the term 'right of privacy' to be defined by importing Illinois tort standards, 'it should have indicated as much in the policy')."); *Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.*, 94 Cal. App. 4th 842, 852 (2001) ("[A]n insurance company's failure to use available language to exclude certain types of liability gives rise to the inference that the parties intended not to so limit coverage.").

[7]*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1032 (2002) ("Unlike coverage for bodily injury and property damage, which is 'occurrence' based, there is no requirement for personal injury coverage that there be an 'accidental' occurrence. All that is required is that the injury arise out of the conduct of the insured's business. Thus, even an intentional tort . . . may be covered. The triggering event is the insured's wrongful act, not the resulting injury to the third party claimant.").

**D. Both *Capital Associates* and *Brunswick* Fail to Apply Illinois' Plain Meaning Rule**

Finally, the District Court's decision to follow *Capital Associates*, based upon its belief that it is better reasoned and best predicts what the Illinois Supreme Court will rule, is misplaced. The Seventh Circuit fails to identify one rule of contract interpretation it followed in *Capital Associates*, let alone applicable Illinois rules.

*Capital Associates* includes only three (3) cases applying Illinois coverage law, two (2) state and one (1) federal. None of the cases support the Seventh Circuit's decision regarding insurance coverage, particularly its statement that "privacy" has many connotations followed by its determination of which meaning is applicable. Perhaps the Seventh Circuit's failure to apply Illinois law with regard to the meaning of privacy is why the *Brunswick* decision focuses on the Seventh Circuit's statement that " 'advertising injury coverage deals with informational content.' " *Brunswick* at 6. The Seventh Circuit provides no legal authority or analysis supporting this statement.

Both the District Court in *Brunswick* and the *Swiderski* court analyze the policy language each is interpreting, unlike the *Capital Associates* court. Contrary to statements in *Brunswick*, the *Swiderski* court applies Illinois coverage law in its analysis, unlike the *Capital Associates* court. And, unlike both the *Brunswick* and *Capital Associates* courts, the *Swiderski* court does not interpose its own understanding of the terms of the policy for that of the policyholder as required under applicable Illinois law. *Swiderski*, 834 N.E.2d at 573 ("[W]e hold that the average person would reasonably understand that he would be covered under the advertising injury provision of the policy.").

The Illinois Supreme Court has long held that unambiguous policy language will be given its plain, ordinary and popular meaning, and the District Court acknowledged this in

*Brunswick*. While not addressed by any court, given the intrusions into people's private time occurring on a daily basis through telemarketing, fax advertising and mailers – intrusions against which laws have been passed – it is reasonable that an insured would expect its violation of privacy arising out of its advertising activity would be covered by its general liability policy.

## CONCLUSION

Here, the Chubb Policies do not contain the same limiting language as that found in the Brunswick policy regarding the offenses defining "advertising injury." Most important, Chubb could have limited the coverage to defined torts or by requiring that the violation of privacy be caused by the content of advertisements. Chubb chose not to do so and cannot benefit from the limitations in a different policy. This Court should disregard the *Brunswick* decision.

Dated: December 5, 2005

Respectfully submitted,

NEW CENTURY MORTGAGE CORPORATION

/s/Bart T. Murphy
By one of its attorneys

Bart T. Murphy, Esq.
WILDMAN, HARROLD, ALLEN
 & DIXON LLP
2300 Cabot Drive, Suite 455
Lisle, IL 60532-3639
Tel:  (630) 955-0555

David A. Gauntlett
Eric R. Little
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA 92612
Tel:  (949) 553-1010
Fax:  (949) 553-2050

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on the 5th day of December 2005 he electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification to the following:

Daniel J. Cunningham          at dcunningham@tsmp.com

Kathy K Karaboyas             at kmalamis@tsmp.com




/s/ Bart T. Murphy