**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NEW CENTURY MORTGAGE CORP.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.   05 C 2370** |
| **v.** | ) | |
| **GREAT NORTHERN INSURANCE CO. &** | ) | **HONORABLE DAVID H. COAR** |
| **FEDERAL INSURANCE CO.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court are parties' cross-motions for summary judgment and Defendants'

Motion to Strike Paragraphs 6 and 10 of the Affidavit of Monika McCarthy.

**Background Facts**

Plaintiff New Century Mortgage Corporation ("NCMC") purchased a commercial

general liability insurance policy (CGL) from Great Northern Insurance Company and an excess

coverage policy from Federal Insurance. The Great Northern policy had primary policy number

3539-77-36 and provided a $1 million liability limit for each occurrence or offense. Federal's

commercial umbrella policy, number 7977-03-85, provided a limit of $20 million per occurrence

or offense. These policies had an effective period of February 3, 2002 through February 3, 2003.

The policies provide coverage for both "property damage" and "advertising injury."

In June 2001, Plaintiff New Century Mortgage Corporation contracted with Fax.com, a

fax broadcast service provider, to broadcast advertisements for NCMC's loan services via fax.

At least 200,000 faxes were transmitted under this contract. In April 2002, an Illinois resident

filed a class action complaint against NCMC in Illinois state court ("the *Bernstein* action") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA").

NCMC tendered the class action complaint to Great Northern and Federal on August 15, 2003, who agreed to defend against the suit subject to a reservation of rights. Great Northern notified NCMC, however, that it believed the allegations in the class action fell outside the insurance agreement and any coverage definitions. Specifically, Defendants admitted the claim in the *Bernstein* action potentially fell within their advertising injury and property damage coverage. Defendants, however, reserved rights because they contended that the *Bernstein* claims did not satisfy the policy definitions of advertising injury or property damage. In addition, Defendants asserted that the "willful violation" and "expected or intended injury" exclusions precluded coverage under the policies.

On September 30, 2003, Bernstein filed a second amended complaint, re-alleging violations of the TCPA and ICFA, and also asserting claims under Illinois common law for conversion and property damage. The plaintiff class alleged that they lost use of paper, toner and ink when they received the allegedly unsolicited faxes, and that this loss constituted damages under the TCPA. The Illinois state court dismissed the plaintiff's ICFA claim with leave to amend and dismissed the common law property damage claim with prejudice, stating that property damage is an element of intentional or negligent tortious conduct, not a freestanding tort. It denied a motion to dismiss the TCPA claim.

In May 2004, NCMC entered settlement talks with the class representative in the class action suit. NCMC asked Defendants to participate in the settlement discussions but defendants

declined to do so. According to NCMC, its potential liability in the *Bernstein* action was in excess of $300 million. NCMC forwarded a copy of a settlement demand from class counsel to Defendants in June 2004. Defendants informed NCMC that they would continue to defend NCMC but denied any duty to indemnify and refused to participate in a scheduled mediation session. In July 2004, Defendants informed NCMC that they "would not stand in the way" of a $6 million settlement, but again denied any obligation to fund it. The *Bernstein* plaintiff filed a third amended complaint in Illinois Circuit Court on August 16, 2004, alleging TCPA and ICFA violations, and asserting Illinois common law claims for conversion and trespass. The complaint alleged that the plaintiff was damaged by the loss of the toner and paper when he received NCMC's unsolicited fax advertisement, in violation of TCPA.

On December 8, 2004, NCMC entered a $1.95 million settlement in the class action lawsuit. The settlement covered all persons in the United States or its territories who received an unsolicited fax advertisement from NCMC after April 4, 1997. Defendants refused to contribute any amount toward the settlement. After all participating settlement class members were paid, the remainder of the settlement amount, approximately $1.085 million, was donated to eighteen different charities and non-profit organizations as designated in the settlement agreement.

NCMC then filed suit against Great Northern and Federal for indemnification in Minnesota state court. That suit was dismissed on *forum non conveniens* grounds. NCMC re-filed in Illinois state court and Defendants removed to federal court. The parties have filed cross-

motions for summary judgment which are presently pending before this Court. Defendants have

also filed a motion to strike two paragraphs of the affidavit of Monika McCarthy.[1]

**Analysis**

Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden to prove that no

genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986). After the moving party makes its showing, the burden shifts to the

nonmoving party to identify specific disputed issues of material fact that show there is a genuine

issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The construction of insurance policy provisions poses "questions of law to be decided by

the court." *Transamerica Ins. Co. v. South*, 975 F.2d 321, 327 (7th Cir. 1992) (citation omitted).

Under choice of law principles, the court applies the substantive law of the forum state. *Jupiter

Alum. Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). In Illinois, insurance contracts

are construed according to the law of the state with "the most significant contacts" with the

policy. The parties to the instant case agree that Illinois law applies.

A court's primary goal is to identify and give effect to the intentions of the parties as

expressed through the words of the policy. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607

N.E.2d 1204, 1212 (Ill. 1992). Thus, the court must construe the policy as a whole, giving due

---

[1] The defendants' motion refers to "Monica McCarthy" but the affidavit indicates that the correct spelling of the affiant's name is "Monika McCarthy."

consideration to the risk assumed, the purpose of the entire contract, and the subject matter at issue. *Outboard Marine*, 607 N.E.2d at 1212. When an insurer relies on an exclusionary clause to deny coverage, that clause's applicability "must be clear and free from doubt." *Id*. (quoting *Insurance Co. of Illinois v. Markogiannakis*, 544 N.E.2d 1082, 1094 (Ill. App. Ct. 1989)). Under Illinois law, exclusionary clauses must be "narrowly construed." *Id*. at 1217. Policy terms that are susceptible of more than one meaning are "considered ambiguous and will be construed strictly against the insurer who drafted the policy." *McKinney v. Allstate Ins. Co.*, 722 N.E.2d 1125, 1127 (Ill. 1999).

**Motion to Strike**

Defendants seek to strike two paragraphs of the affidavit of Monika McCarthy, senior vice president and general counsel for NCMC. They argue that McCarthy does not allege that she was involved in the discussions or actions described in the two paragraphs and has provided no factual support for her assertions. In addition, they contend that Frank Nese, NCMC's Director of Marketing, testified at his deposition that he "d[id] not recall" McCarthy participating in the relevant events and did not speak to her about them. McCarthy's affidavit states that she is "personally familiar with the facts set forth herein - except those matters [she has] attested to on information and belief." McCarthy Aff. ¶1. The record is not as clear-cut as Defendants suggest and does not establish that McCarthy had no personal knowledge of the statements to which she attested. Accordingly, this Court denies the motion to strike**.**

**Duty to Settle**

NCMC contends that Great Northern and Federal breached their "duty to settle" when they refused to participate in NCMC's mediation and settlement discussion with the *Bernstein*

plaintiff, and thus are required to reimburse NCMC for the settlement amount. Further, NCMC argues that the settlement satisfies the Illinois "totality of circumstances" test for reimbursement purposes. *See, e.g., Guillen v. Potomac Ins. Co.*, 785 N.E.2d 1 (Ill. 2003). The defendants argue, however, that the policies impose no duty to settle uncovered claims. Indeed, the defendants argue that not only did they not breach a duty to settle, but that they have no duty to indemnify NCMC because the *Bernstein* claims fall entirely outside the scope of policy coverage. As for the reasonableness of the settlement amount, it is undisputed that it falls within the potential coverage of the policy and represents significantly less than the total liability to which NCMC might have been exposed. NCMC replies that the settlement is covered by the policies, that none of the policy exclusions apply, and that the defendants in fact consented to NCMC's settlement.

As a preliminary matter, this Court finds that NCMC mischaracterizes the evidence when it states that the defendants "consented" to its settlement with the *Bernstein* plaintiff. In response to NCMC's request that the defendants participate in settlement/mediation talks, defendants stated, "To the extent that [NCMC] deems it appropriate to settle uncovered claims ..., [Great Northern and Federal] will not stand in their way." Plf.'s Appx. To Mtn. For Summ. J., Ex. N at 2. Defendants then state that "we must assume that the facts upon which we relied [in denying coverage] are accurate and that the amount demanded in settlement is not covered." *Id*. This does not constitute a "concession" that a settlement would be "reasonable," as NCMC contends. Taking the evidence in the light most favorable to the defendants, as this Court must do when assessing plaintiff's motion, it is reasonable to find that the defendants were declining to express an opinion about plaintiff's potential interest in settling the underlying complaint. Plaintiff's Motion for Summary Judgment is therefore denied.

This Court also agrees with the defendants that the duty to settle is not the dispositive issue in this case. The general rule in Illinois is that in the absence of a breach of the duty to defend, an insured must get the insurer's consent before settling with an injured plaintiff. *Guillen*, 785 N.E.2d at 6 (citing *Thornton v. Paul*, 384 N.E.2d 335, 339-40 (Ill. 1978)).[2] But the cause of action for breach of the duty to settle arises when an insured contends that its insurer committed the tort of bad faith. *See, e.g., Haddick v. Valor Ins.*, 763 N.E.2d 299, 303 (Ill. 2001); *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903-904 (Ill. 1996). Here, however, NCMC does not contend that the Defendants failed to settle a covered claim for an amount within its policy limits and that NCMC thereafter suffered a verdict in excess of those limits, as the tort requires. Further, NCMC has not alleged breach of the covenant of good faith and fair dealing. Thus, the determinative issue is whether the *Bernstein* action was covered by the defendants' policies.

**Scope of Insurance Policy Coverage**

The *Bernstein* plaintiffs alleged that NCMC's transmission of unsolicited advertising faxes damaged them by consuming paper and toner. NCMC seeks coverage from the defendants under the property damage and advertising injury provisions of its CGL policies. Great Northern and Federal deny that either of the *Bernstein* claims fall under the scope of policy coverage or assert that, if they are covered, exclusionary clauses apply.

---

[2] At least one Illinois court has limited this rule when an insurer defends under a reservation of rights to contest coverage, as the defendants here did. In such a circumstance, the insurer loses the right to consent to a settlement. *Commonwealth Edison Co. v. Nat'l Union Fire Ins. Co.*, 752 N.E.2d 555, 567 (Ill. App. Ct. 2001) (quoting *Cay Divers, Inc. v. Raven*, 812 F.2d 866 (3rd Cir. 1987)). But the insurer does not lose the right to contest indemnification, which is what the defendants here seek to do. *Id.*

<u>Advertising Injury</u>

The policy defines "advertising injury" as "injury, other than bodily injury or personal injury, arising solely out of one or more of the following offenses committed in the course of advertising your goods, products, or services: ... oral or written publication of advertising material that violates a person's right of privacy...." (Great Northern pol'y at 21.) In addition, the insurance applies to advertising injury "caused by an offense committed during the policy period."

<u>Right of Privacy</u>

Three Illinois cases have addressed "a person's right of privacy" in an insurance policy's definition for "advertising injury." The federal and state courts have reached contradictory results.

A federal district court sitting in diversity looks to the decisions of the highest court of the forum state for guidance on interpreting the substantive law of that state. In the absence of such decisions, the federal court with diversity jurisdiction "must make a predictive judgment as to how the supreme court of the state would decide the matter." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635 (7th Cir. 2002). It is the duty of the federal court "to determine the content of state law as the highest court of the state would interpret it." *Id.* (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 80 (1938); *Wichita Royalty Co. v. City Nat'l Bank*, 306 U.S. 103 (1938)). "In the absence of prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court

of the state would decide the case differently from the decision of the intermediate appellate

court." *Id*. (citations omitted).

Defendants rely on a Seventh Circuit opinion which applied Illinois law to hold that the

transmission of unsolicited fax advertisements (junk faxes) was neither covered nor even

potentially covered by an advertising injury provision. *American States Ins. Co. v. Capital

Assocs. of Jackson County, Inc.*, 392 F.3d 939 (7th Cir. 2005). The Seventh Circuit decided

*American States* before any Illinois court had construed "privacy" under an advertising-injury

clause. *Id*. at 943. The insurance policy at issue was substantively indistinguishable from the

policy in the case before this Court. It defined "advertising injury" to include "oral or written

publication of materials that violate a person's right of privacy." The prior district court opinion

in *American States* relied on case law that suggested Congress had intended to protect "privacy"

when it enacted the TCPA, and that "privacy," for the purposes of applying FTCPA, included a

person's "seclusion" interest. The Seventh Circuit, in an opinion by Judge Easterbrook, reversed.

After discussing the two "principal meanings" of privacy – secrecy and seclusion – the Seventh

Circuit analogized the "advertising injury" provision to the tort of "invasion of privacy." *Id*. at

941. The *American States* court stated that the proper question was "what the word [privacy]

means in this insurance policy" and specifically "whether the policy covers the sort of seclusion

interest affected by faxed ads." *Id*. at 942. After noting that the "structure of the policy strongly

implies that coverage is limited to secrecy interests" and that "[i]n a secrecy situation,

publication matters," the court stated that the TCPA "condemns a particular means of

communicating an advertisement, rather than the contents of that advertisement–while ...

advertising injury coverage deals with informational content." *Id*. at 943.

Eight months after the Seventh Circuit decided *American States*, an Illinois Appellate Court addressed the issue of "privacy" as used in advertising-injury provisions. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 834 N.E.2d 562 (Ill. 2005). The Appellate Court rejected *American States*' reasoning and held that an "advertising injury" insurance provision similar to the one in *American States* did potentially provide coverage to injuries from junk faxes. *Id.* at 571. In its discussion of "privacy," the *Valley Forge* court stated that "[a]s an undefined term, however, we are required to give 'privacy' its plain, ordinary and popular meaning." *Id*. at 575. According to the Appellate Court, "privacy is privacy." *Id.* (quoting *Park Univ. Enters., Inc. v. Am. Casualty Co. of Reading, Penn.*, 314 F. Supp. 2d 1094, 1109 (D.Kan. 2004)). "Privacy" thus included both secrecy and seclusion and "a reasonable person would understand 'privacy' to mean the right to be left alone." *Id*. The Appellate Court found that "the sending of unsolicited fax advertising falls potentially within the scope of coverage under the terms of the advertising injury provision." *Id.* But the *Valley Forge* court only reached the question of whether an insurer had a duty to defend. It expressed no opinion about a duty to indemnify. *Id*. ("we express no opinion regarding the merit of Rizzo's claims or whether Insurers will be obligated to indemnify Swiderski based on either of Rizzo's theories of liability").

In November 2005, a district court in this District also addressed the issue of coverage for unsolicited fax advertisements. *St. Paul Fire & Marine Ins. Co. v. Brunswick Corp.*, 405 F. Supp. 2d 890 (N.D. Ill. 2005). The district court declined to follow *Valley Forge*, noting that "one [intermediate court] decision does not present a strong indication of how the Illinois Supreme Court would rule on the issue," especially when the state court decision directly conflicts with the Seventh Circuit opinion. The *Brunswick* court noted that "neither *American*

-10-

*States* nor *Valley Forge* was decided on a newly announced rule of law," thereby further

reducing the persuasiveness of the state court decision. *Id*. at 894. Further, the *Brunswick* court

disagreed with the Illinois appellate court's construction of the insurance contract provision,

which focused on the publication of "material" rather than on the content of the material in

question. "As written, the phrase 'violates a person's right of privacy' refers to the content of the

material published, not [] the publishing itself. It is the content of the material published that

creates the injury." *Id.* at 895. For these reasons, the district court concluded it was bound by the

Seventh Circuit precedent, not the state intermediate court. This Court concludes it is likewise

bound.

Under settled rules of contract construction, if the words in an insurance policy are plain

and unambiguous, courts will afford them their plain, ordinary meaning and apply them as

written. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992).

This Court finds that the meaning of the policy's "advertising injury" definition is unambiguous.

As in *Brunswick Corp.*, the definition uses the phrase "violates a person's right of privacy" in

reference to the *content* of the material published, not the act of publication. *St. Paul Fire &*

*Marine Ins. Co. v. Brunswick Corp.*, 405 F. Supp. 2d 890, 895 (N.D. Ill. 2005); *see also*

*American States*, 392 F.3d at 942-43. When read in the context of the entire policy, this meaning

becomes even more clear. The policy defines "advertising injury" also to include "oral or written

publication of material that slanders or libels a person or organization" and "infringement of

copyrighted advertising materials or infringement of trademarked or service marked titles or

slogans." As these provisions reveal, the policy contemplates injury arising from the content of

the advertisement. No party alleges that any claimant contended that the unsolicited ad slandered

or libeled a person or organization, or infringed copyrighted or trademarked materials. The injury comes from the means of publication. Under Seventh Circuit case law, "advertising injury" coverage does not apply.

The Court next must determine whether the claim arose during the policy effective period. Great Northern and Federal contend that the unsolicited advertising faxes were first transmitted before the policy period. NCMC argues that there is no evidence to support the defendants' position. The policy period began on February 3, 2002. NCMC's contract with Fax.com for fax broadcast services is dated June 7, 2001. Bernstein received his unsolicited fax advertisement from NCMC, via Fax.com, on February 26, 2002. Appx. To Pl.'s Mtn. For Summ. J., Ex. A. The insured bears the burden of showing that claim is covered by the policy. *See, e.g., Farmer's Auto Ins. Ass'n v. Gitelson*, 801 N.E.2d 1064, 1071 (Ill. App. Ct. 2003). The defendants argue that NCMC has not met its burden of proving that each claimant received the unsolicited fax during the policy period, but this is an exaggeration. NCMC has provided evidence that at least one claimant – the named plaintiff – received the fax during the policy period. There is no presently admissible evidence in the record that claimants received faxes prior to the policy effective date. The Fax.com contract with NCMC does not provide any information about the timing of the fax broadcasts for which NCMC contracted. This Court finds that NCMC has demonstrated that the *Bernstein* claim is covered by the policy.

But the Court cannot stop there. The defendants argue that even if the *Bernstein* claim falls in the policy period, it is still excluded from coverage because NCMC first transmitted the advertisement *before* the policy effective date.

**Policy Exclusions**

<u>Prior Publication</u>

  The policy excludes coverage for "prior acts," defined as "oral or written publication of material whose first publication took place before the beginning of the policy period." Appx. To Pl.'s Mtn. For Summ. J., Ex. D, at 13. As Great Northern and Federal note, the *Bernstein* complaint sought to establish a class of all recipients of the unsolicited fax dating back to at least 1998. The defendants assert that NCMC first sent the fax in June 2001, if not earlier, and thus the exclusion applies. NCMC responds that the defendants have not met their burden of proving that any faxes were sent prior to the February 26, 2002 fax received by Bernstein. As to the specific evidence Great Northern and Federal provide in support of their motion for summary judgment, NCMC argues that it is unauthenticated and constitutes inadmissible hearsay. Specifically, the defendants provide three "Fax Broadcasting Sales Orders" between Fax.com and NCMC, the first of which is dated June 7, 2001. These documents, which represent exhibits to a set of requests for admission in the Minnesota state court litigation between these parties, are disputed. NCMC denied Defendants' request to admit that they indicated that NCMC placed an order with Fax.com to transmit 200,000 copies of the fax ad during the week of June 11, 2001. NCMC provided no explanation or justification for its denial, apparently ignoring the requirements of Federal Rule of Civil Procedure 36(a). Without presently admissible evidence in support of Defendants' argument that NCMC first transmitted the ad before the policy period, this Court cannot find that the exclusionary clause applies. Because this is a dispute about a genuine issue of material fact, summary judgment is inappropriate.

**Property Damage**

The property damage provisions of the policy indicated that the insurer will pay damages for property damage "caused by an occurrence." The policy recites:

> Property damage means physical injury to tangible property including the resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or loss of use of tangible property that is not tangibly injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

Pl.'s Appx. To Mtn. For Summ. J., Ex. D, at 27. The property damage asserted in the underlying *Bernstein* complaint is the loss of paper and toner from receiving NCMC's faxes. But as the Seventh Circuit noted in *American States*, "all senders know exactly how faxes deplete recipients' consumables." 392 F.3d at 943. Loss of paper and toner is a normal, expected outcome that falls under the policy's exclusion for "expected or intended injury" and is not covered by the policy. *Id.*; *see also Brunswick Corp.*, 405 F. Supp. 2d at 896. For that reason, Great Northern and Federal have no duty to defend – and therefore no duty to indemnify – NCMC for the property damage claim in the underlying action.

-14-

**Conclusion**

For the foregoing reasons, this Court finds summary judgment inappropriate. The parties' cross-motions are DENIED. The Defendants' motion to strike is DENIED.

Enter:

/s/ David H. Coar

_____

David H. Coar
United States District Judge

Dated: **July 25, 2006**