$AE$

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**F I L E D**

APR 2 6 2005 WH
APR 26 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| NEW CENTURY MORTGAGE CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 05C2370 |
| | ) | Judge Coar |
| | ) | |
| v. | ) | |
| | ) | Formerly Case No. 05CH05371 |
| GREAT NORTHERN INSURANCE | ) | Circuit Court of Cook County |
| COMPANY, FEDERAL INSURANCE | ) | Chancery Division |
| COMPANY, and PAUL BERNSTEIN | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**NOTICE OF FILING**

To:    SEE SERVICE LIST ATTACHED HERETO

PLEASE TAKE NOTICE that on the 26th day of April 2005 there was filed with the

Clerk of the United States District Court for the Northern District of Illinois the following

documents

1. Great Northern Insurance Company's And Federal Insurance Company's Answer And
   Affirmative Defenses To Plaintiff's Complaint For Declaratory Judgment, Breach Of
   Contract And Other Relief

Copies of the above-referenced document are attached hereto.

Dated:  April 26, 2005

GREAT NORTHERN INSURANCE COMPANY
FEDERAL INSURANCE COMPANY

By: _____
One of their Attorneys

Daniel J. Cunningham
Kathy Karaboyas Malamis
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6308
(312) 627-4000

## **PROOF OF SERVICE**

The undersigned, being first duly sworn on oath, deposes and says that she served the foregoing Notice of Filing and the documents referred to therein by mailing copies to the above named attorneys at the addresses indicated on the attached Service List and deposited same in the U.S. Mail at 233 S. Wacker Drive, Chicago, IL on the 26th day of April 2005. A courtesy copy was also hand delivered on this day to plaintiff's Chicago counsel, Samuel S. Cohen, of Wildman, Harrold, Allen & Dixon, LLP.

SUBSCRIBED AND SWORN to before
Me this 26th day of April 2005.

_____
Notary Public

OFFICIAL SEAL
CYNTHIA CLOSE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 06-15-07

2

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NEW CENTURY MORTGAGE CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  05C2370 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Formerly Case No. 05CH05371 |
| GREAT NORTHERN INSURANCE | ) | Circuit Court of Cook County |
| COMPANY, FEDERAL INSURANCE | ) | Chancery Division |
| COMPANY, and PAUL BERNSTEIN | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SERVICE LIST

Samuel S. Cohen
Wildman, Harrold, Allen & Dixon, LLP
225 West Wacker Drive – Suite 3000
Chicago, IL  60606


Paul Bernstein, Esq.
333 E. Ontario Street, Suite 2102-B
Chicago, IL 60611-3033

David A. Gauntlett
Eric R. Little
Joseph S. McMillen
Gauntlett & Associates
18400 Von Karman – Suite 300
Irvine, CA  92612

Bart T. Murphy
Wildman, Harrold, Allen & Dixon
2300 Cabot Drive – Suite 455
Lisle, IL  60532

KK2/tdw/#269137                                                          2246-42

## IN THE UNITED STATES DISTRICT COURT FILED
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

APR 2 6 2005 WH

APR 26 2005

MICHAEL W. DOBBINS

CLERK, U.S. DISTRICT COURT

|  |  |
|---|---|
| NEW CENTURY MORTGAGE CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.:  O5C2370 |
| ) | |
| ) | Judge Coar |
| v. ) | |
| ) | Formerly Case No. 05CH05371 |
| GREAT NORTHERN INSURANCE ) | Circuit Court of Cook County |
| COMPANY, FEDERAL INSURANCE ) | Chancery Division |
| COMPANY, and PAUL BERNSTEIN ) | |
| ) | |
| Defendants. ) | |
| ) | |

## GREAT NORTHERN INSURANCE COMPANY'S  AND FEDERAL INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT AND OTHER RELIEF

NOW COME the DEFENDANTS, GREAT NORTHERN INSURANCE COMPANY

("Great Northern") and FEDERAL INSURANCE COMPANY ("Federal")(collectively

"Defendants") and for their Answer and Affirmative Defenses to Plaintiff, NEW CENTURY

MORTGAGE CORPORATION'S Complaint for Declaratory Judgment, Breach of Contract and

other relief, state as follows:

### THE PARTIES

1.      Plaintiff New Century Mortgage Corporation ("NCMC") is a corporation duly
organized and existing under the laws of the State of California with its offices at 18400 Von
Karman, 10th Floor, Irvine, California.  NCMC is a wholly owned subsidiary of New Century
Financial Corporation.

**ANSWER:**    Defendants are without sufficient information or knowledge to form a belief as to

the truth of the allegations contained within Paragraph 1 of Plaintiff's Complaint and thus deny

the same.

2.      Plaintiff is informed and believes that defendant Great Northern Insurance Company ("Great Northern") is a corporation duly organized and existing under the laws of the State of Minnesota, with its headquarters at 200 South 6th Street, Suite 1000, Minneapolis, Minnesota. Great Northern is a member of the Chubb Group of Companies.

**ANSWER:**      Defendants admit that Great Northern is organized under the laws of the State of

Minnesota and deny all other allegations in Paragraph 2 of Plaintiff's Complaint.  Great Northern

maintains its headquarters in Warren, New Jersey and is a member of the Chubb Group of

Companies.

3.      Plaintiff is informed and believes that defendant Federal Insurance Company ("Federal") is a corporation duly organized and existing under the laws of the State of Indiana, with its headquarters in Warren, New Jersey.  Federal is a member of the Chubb Group of Companies.

**ANSWER:**      Defendants admit the allegations contained within Paragraph 3 of Plaintiff's

Complaint.

4.      Plaintiff is informed and believes that defendant Paul Bernstein ("Bernstein") is a natural person residing in the State of Illinois, County of Cook.

**ANSWER:**      Defendants are without sufficient information or knowledge to form a belief as to

the truth of the allegations contained within Paragraph 4 of Plaintiff's Complaint and thus deny

the same.

## CHOICE OF LAW

5.      The underlying action is pending in Circuit Court for Cook County, State of Illinois.

**ANSWER:**      Defendants admit the allegations contained within Paragraph 5 of Plaintiff's

Complaint.

## THE GREAT NORTHERN AND FEDERAL INSURANCE POLICIES

6.      In order to obtain the broadest possible coverage, NCMC procured a commercial general liability insurance policy from Great Northern and an umbrella and excess policy from

2

Federal.

**ANSWER:** Defendants admit only that Great Northern and Federal issued certain policies of insurance to New Century Financial Corporation. Defendants are without sufficient knowledge or information to form a belief as to the truth of the remainder of the allegations contained within Paragraph 6 of Plaintiff's Complaint, and thus deny the same.

7. Great Northern issued to New Century Financial Corporation ("NCFC") a Commercial General Liability ("CGL") insurance policy, No. 3539-77-36 LAO, effective February 3, 2002 through February 3, 2003, naming NCMC as an insured by way of endorsement. A copy of Great Northern Policy No. 3539-77-36 LAO is attached hereto and incorporated herein as **Exhibit "A."**

**ANSWER:** Defendants admit that Great Northern issued a policy of commercial general liability insurance to New Century Financial Corporation ("NCFC"), bearing number 3539-77-36, with an effective period of February 3, 2002 to February 3, 2003. The policy includes a named insured endorsement which applies to New Century Mortgage Corporation. Defendants deny the remainder of the allegations contained within Paragraph 7 of Plaintiff's Complaint.

8. Federal issued to NCFC a Commercial Umbrella Policy, No. 7977-03-85, effective February 3, 2002 through February 3, 2003, naming NCMC as an insured by way of endorsement. A copy of Federal Policy No. 7977-03-85 is attached hereto and incorporated herein as **Exhibit "B."**

**ANSWER:** Defendants admit that Federal issued a commercial general liability umbrella policy, bearing Policy No. 7977-03-85, with an effective period of February 3, 2002 through February 3, 2003. Defendants deny the remainder of the allegations contained within Paragraph 8 of Plaintiff's Complaint.

9. The Great Northern Policy No. 3539-77-36 LAO provides coverage in pertinent part as follows:

**Coverage**

Subject to the applicable Limits of Insurance, we will pay damages the **insured** becomes Legally obligated to pay by reason of liability imposed

3

by law or assumed under an **insured contract** for:

- **bodily injury** or **property damage** to which this insurance applies caused by an **occurrence**; or

- **advertising injury** or **personal injury** to which this insurance applies caused by an offense.

This insurance applies to:

- **bodily injury** or **property damage** which occurs during the policy period; and

- **advertising injury** or **personal injury** caused by an offense committed during the policy period.

**Investigation, Defense
And Payment of Damages**

We will have the right and duty to defend any **insured** against a **suit** seeking damages for . . . **property damage, advertising injury . . .** .

**Bodily Injury/Property
Damage Exclusions**

This insurance does not apply to **bodily injury** or **property damage** which results from an act that:

- is intended by the insured; or

- can be expected from the standpoint of a reasonable person

to cause **bodily injury** or **property damage**, even if the injury or damage is of a different degree or type than actually intended or expected.

**Advertising Injury/
Personal Injury Exclusions**

*Prior Acts*    This insurance does not apply to **advertising injury** or **personal injury** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

*Willful*    This insurance does not apply to **advertising injury** or
*Violations*    **personal injury** arising out of the willful violation of a penal

4

statute or ordinance committed by or with the knowledge or consent of the **insured**.

**Definitions**

**Advertising** means any advertisement, publicity article, broadcast or telecast;

**Advertising injury** means injury other than **bodily injury** or **personal injury**, arising solely out of one or more of the following offenses committed in the course of **advertising** your goods, products or services:...

- oral or written publication of advertising material that violates a person's right of privacy

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Property damage** means:

- physical injury to tangible property including the resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- loss or use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

**Exhibit "A,"** pages 6, 8, 9, 11, 12, 13, 21 and 25-27.

**ANSWER:**    Defendants deny the allegations of Paragraph 9 to the extent that they mischaracterize or depart from the actual terms of the policy. Defendants admit that Paragraph 9 accurately quotes some, but not all, of the relevant policy language, and notes that the policy is subject to certain additional terms, conditions, and exclusions.

10.    The Federal Commercial Umbrella Policy No. 7977-03-85 provides Excess Follow Form Liability Insurance as Coverage A.  The Umbrella policy provides in pertinent part:

**Insuring Agreements**

Under Coverage A, we will pay on behalf of the **insured**, that part of loss covered by this insurance in excess of the total applicable limits of **underlying insurance**,

5

provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of **underlying insurance** are with respect to Coverage A made a part of this policy, except with respect to:

A.     any contrary provision contained in this policy; or

B.     any provision in this policy for which a similar provision is not contained in **underlying insurance.**

Exhibit "B," page 1.

**ANSWER:**     Defendants deny the allegations of Paragraph 10 to the extent that they mischaracterize or depart from the actual terms of the policy. Defendants admit that Paragraph 10 accurately quotes some, but not all, of the relevant policy language, and notes that the policy is subject to certain additional terms, conditions, and exclusions.

11.     The identified underlying insurance is the Great Northern CGL policy. **Exhibit "B,"** Form 07-02-0922, Schedule of Underlying Insurance.

**ANSWER:**     Defendants admit that the Great Northern CGL policy is the underlying primary policy. Defendants deny the remainder of the allegations contained within Paragraph 11 of Plaintiff's Complaint.

## THE *BERNSTEIN* ACTION

12.     On or about April 5, 2002, Paul Bernstein filed a civil class action in the Circuit Court of Cook County, Illinois County Department, Chancery Division against New Century entitled *Paul Bernstein v. New Century Mortgage Corporation*, Civil Action No. 02CH 06907 (the "*Bernstein* Action"), alleging claims for violation of the Telephone Consumer Protection Act, 47 U.S.C. Section 227 ("TCPA") and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"). A true and correct copy of that complaint is attached hereto as **Exhibit "C."**

**ANSWER:**     Defendants admit the allegations contained within Paragraph 12 of Plaintiff's Complaint.

13.     Bernstein's complaint alleged in pertinent part as follows:

4.     On . . . February 26, 2002, Defendant New Century Mortgage Corporation caused the unsolicited fax advertisement attached as Exhibit A to be transmitted to Plaintiff's facsimile machine.

6

...

6.      . . . Defendant disseminated this fax advertisement not only to Plaintiff, but also to many other individuals and entities who did not solicit the fax or have a prior relationship with Defendant.

...

8.      The TCPA makes unlawful the "use of any telephone, facsimile machine, computer or other device to send an unsolicited advertisement to a telephone, facsimile machine ...." 47 U.S.C. § 227(b)(1)(c).

10.      Plaintiff and each class member suffered damages as a result of receipt of unsolicited faxes, in the form of paper and toner consumed as a result.

11.      Plaintiff and each class member is entitled to statutory damages... .

...

22.      Defendant engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to Plaintiff and others.

23.      Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and toner consumed as a result.

**ANSWER:**   Defendants deny the allegations contained within Paragraph 13 of Plaintiff's Complaint to the extent they mischaracterize or depart from the actual allegations of the *Bernstein* Action.   Defendants admit that Paragraph 13 includes some but not all of the allegations from the original underlying complaint.

14.      On or about September 30, 2003, Bernstein filed a second amended complaint. In addition to the TCPA and IFCA claims alleged in the Complaint, Bernstein also alleged a separate claim for "Property Damage" based, *inter alia*, upon plaintiffs and class members' loss of use of the paper used to print the allegedly infringing faxes. A true and correct copy of that Second Amended Complaint is attached hereto as **Exhibit "D."**

**ANSWER:**   Defendants admit that the Second Amended Complaint included a cause of action

7

labeled "property damage" which was dismissed by Judge McGann with prejudice. Defendants deny that the Second Amended Complaint ever alleged a claim for "property damage" as that term is defined in the policies. Defendants also note that the Second Amended Complaint included a cause of action based on conversion. Defendants are without sufficient knowledge or information to form a belief as to the truth of the remainder of the allegations contained within Paragraph 14 of Plaintiff's Complaint, and thus deny the same.

15.    The Second Amended Complaint contains the following pertinent allegations:

1.    Plaintiff Paul Bernstein brings this action to secure redress for the actions of defendant New Century Mortgage Corporation in sending out unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. Section 227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("IFCA"), and Illinois common law.

. . .

4.    On or about February 26, 2002, defendant New Century Mortgage Corporation caused the unsolicited fax advertisement attached as Exhibit A to be transmitted to plaintiffs facsimile machine.

6.    The fax advertisement at issue contains the telephone number, 800-443-7628, associated with the mass "broadcasting" by fax.com, Inc. of unsolicited advertising faxes to a list of numbers compiled by "fax broadcasters" and sold or otherwise made available to businesses desirous of engaging in illegal fax advertising. The same number was listed in the FCC's citation against fax.com, Inc., file no. EB-02-TC-120, 2002 WL 1798553 (FCC August 7, 2002) as present in other unsolicited faxes sent to a large number of persons by fax.com, Inc.

7.    Defendant or its agents designed the advertising material in question in a manner calculated to make its receipt particularly expensive. The inclusion of graphics and bold headlines and words in the fax causes it to consume unusually large amounts of toner or ink. Heavy black headlines and graphics cause a fax to consume as much toner or ink as a dozen or more ordinary business letters.

8.    There is no reasonable alternative to receipt of the illegal faxes. . . . [D]ialing the "remove" numbers provided on Exhibit A does not result in cessation of unsolicited faxes. Indeed, it may result in a dialer being placed on a "sucker list" of people that actually pay attention to unsolicited faxes and being inundated with other unsolicited faxes. . . .

8

9.    Based upon the above facts, Plaintiff alleges . . . that the fax attached hereto was sent as part of a mass "broadcasting" fax.

...

11.    The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine..." 47 U.S.C. Section 227(b)(1)(C).

...

13.    Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, and in the form of paper and ink or toner consumed as a result.

...

53.    By sending plaintiff and the class members unsolicited faxes, defendants damaged paper belonging to plaintiff and the class members.

54.    Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had unqualified and immediate right to the possession of the paper and used to print the faxes.

55.    By sending the unsolicited faxes, defendants used plaintiff's paper used to print the faxes in such manner as to make it unusable. Such action was wrongful and without authorization.

...

58. Plaintiff and the class members were deprived of the paper, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 15 of Plaintiff's

Complaint to the extent they mischaracterize or depart from the actual allegations of the

*Bernstein* Second Amended Complaint. Defendants admit that Paragraph 15 includes some but

not all of the allegations from the Second Amended Complaint.

16.    Following mediation in the *Bernstein* Action, Bernstein filed a Third Amended Complaint which contains substantially similar allegations. A copy of the Third Amended Complaint is attached as **Exhibit "J."**

**ANSWER:**    Defendants deny Paragraph 16 of Plaintiff's Complaint.

9

## THE TENDER OF NCMC TO GREAT NORTHERN/FEDERAL

17.    On August 15, 2003, NCMC provided notice of the *Bernstein* Action to Great Northern and Federal through Financial Guaranty Insurance Brokers with a copy of the Complaint. A copy of the August 15, 2003 notice letter is attached hereto and incorporated herein as **Exhibit "E."**

**ANSWER:**    Defendants deny the allegations contained within Paragraph 17 of Plaintiff's

Complaint.

18.    Great Northern and Federal acknowledged receipt of the notice by letter dated January 7, 2004. A copy of the January 7, 2004 letter from Chubb is attached hereto and incorporated herein as **Exhibit "F."**

**ANSWER:**    Defendants admit that Great Northern and Federal acknowledged receipt of notice

by letter dated January 7, 2004. Defendants deny the remainder of the allegations contained

within Paragraph 18 of Plaintiff's Complaint.

19.    Great Northern agreed to defend NCMC subject to a reservation of rights. Great Northern claimed the allegations in the Bernstein Complaint may not fall within the insuring agreement and may not meet any of the coverage definitions.

**ANSWER:**    Defendants admit that Great Northern agreed to defend NCMC in connection with

the *Bernstein* Action subject to a full and complete reservation of rights. Defendants admit that

there is no duty to indemnify with regard to the *Bernstein* Action.

20.    Great Northern stated the allegations did not satisfy the definition of "Property Damage," even though there was a claim for loss of toner and paper. Great Northern also claimed there was no "Occurrence," since transmission of the fax was purportedly not an accident. As discussed in paragraphs 38 and 39 below, Great Northern's claim is erroneous.

**ANSWER:**    Defendants admit that the *Bernstein* Complaint does not allege "property damage"

as defined by the policies. Defendants admit that the *Bernstein* Complaint does not allege an

"occurrence" as defined by the policies. Defendants deny the remainder of the allegations

contained within Paragraph 20 of Plaintiff's Complaint.

21.    Great Northern acknowledged the allegations might include a claim within the "Advertising Injury" or "Personal Injury" coverage for publication of material that invades a

person's right of privacy. This is the basis upon which Great Northern agreed to provide a defense.

**ANSWER:**  Defendants admit that Great Northern agreed to provide a defense under a complete reservation of rights. Defendants deny the remainder of the allegations contained within Paragraph 21 of Plaintiff's Complaint.

22. Great Northern also asserted the Willful Violations Exclusion and the Expected or Intended Injury Exclusion as a further basis upon which it reserved its right to deny indemnity for any uncovered claim.

**ANSWER:**  Defendants admit that the Willful Violations Exclusion and the Expected or Intended Exclusion bar coverage. Defendants deny the remainder of the allegations contained within Paragraph 22 of Plaintiff's Complaint.

23. Federal agreed that Coverage A of the Commercial Umbrella Policy was implicated and agreed the claim would be handled under the same reservation of rights as set forth under the Great Northern policy.

**ANSWER:**  Defendants admit that Federal has agreed that the claim would be handled under a complete reservation of rights. Defendants deny the remainder of the allegations contained within Paragraph 23 of Plaintiff's Complaint.

### GREAT NORTHERN/FEDERAL'S BREACH OF THEIR DUTY TO SETTLE

24. During May 2004, discussions ensued between NCMC and Great Northern/Federal regarding attendance at mediation.

**ANSWER:**  Defendants admit that plaintiff informed them that plaintiff would attend a mediation. All other allegations in Paragraph 24 are denied.

25. NCMC advised Great Northern that Bernstein was seeking class certification by way of motion, with a hearing scheduled in early August 2004. NCMC advised Great Northern that it was imperative that all necessary steps be taken to settle with Bernstein before a class was certified, in order to avoid exposing NCMC to damages in excess of $300 million.

**ANSWER:**  Defendants admit that plaintiff informed them that plaintiff would attend a

11

mediation and that plaintiff was interested in settling the *Bernstein* suit. All other allegations in

Paragraph 25 are denied.

26.     On June 17, 2004, defense counsel for NCMC forwarded a copy of a settlement demand received from counsel for Bernstein. A true and correct copy of the June 17, 2004 letter and attached settlement demand is attached hereto and incorporated herein as **Exhibit "G."**

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations contained within Paragraph 26 of Plaintiff's Complaint.

27.     On June 22, 2004, coverage counsel for Great Northern and Federal advised defense counsel for NCMC that Great Northern/Federal would continue to defend NCMC but denied any duty to indemnify and refused to participate in a mediation then anticipated to take place on June 23, 2004, even though there had been no adjudication of NCMC's liability. A true and correct copy of the June 22, 2004 letter is attached hereto and incorporated herein as Exhibit "H."

**ANSWER:**   Defendants admit that Great Northern and Federal agreed to defend NCMC under

a reservation of rights. Defendants admit further that Great Northern and Federal do not have an

indemnity obligation with regard to the *Bernstein* suit. Defendants deny the remainder of the

allegations contained within Paragraph 27 of Plaintiff's Complaint.

28.     By July 7, 2004 letter, Great Northern/Federal acknowledged that settlement for $6 million or less is reasonable and prudent. Great Northern/Federal also acknowledged that payment of the settlement by NCMC is not in violation of any provision of the Great Northern/Federal policies. A true and correct copy of the July 7, 2004 letter is attached hereto and incorporated herein as **Exhibit "I."**

**ANSWER:**   Defendants deny the allegations contained within Paragraph 28 of Plaintiff's

Complaint.

29.     Great Northern/Federal have never contended that the allegedly uncovered risk is the sole cause of damages.

**ANSWER:**   Defendants deny the allegations contained within Paragraph 29 of Plaintiff's

Complaint.

30.     On August 5 and 6, 2004, NCMC and Bernstein participated in mediation. On August 6, 2004, NCMC again requested Great Northern/Federal agree to contribute to a

settlement with Bernstein for an amount within the policy limits of the Great Northern and Federal policies. Great Northern/Federal refused to contribute any amount toward settlement of the *Bernstein* Action.

**ANSWER:** Defendants admit that they do not have a duty to indemnify NCMC in connection

with the *Bernstein* Action. Defendants deny the remainder of the allegations contained within

Paragraph 30 of Plaintiff's Complaint.

31.     Abandoned by its insurers and facing damages exposure well in excess of the policy limits of Great Northern/Federal, NCMC agreed to settle the *Bernstein* Action with NCMC's own funds in the amount of $1,950,000.00, substantially below the policy limits of Great Northern/Federal and the agreed reasonable settlement amount of $6,000,000.00.

**ANSWER:** Defendants are without sufficient information or knowledge to form a belief as to

the truth of the allegations contained within Paragraph 31 of Plaintiff's Complaint and thus deny

the same.

32.     As a result, Great Northern/Federal had a duty to, and breached their duty to, fully fund the settlement of the *Bernstein* Action.

**ANSWER:** Defendants deny the allegations contained within Paragraph 32 of Plaintiff's

Complaint.

**BERNSTEIN'S TCPA CLAIM FALLS
WITHIN GREAT NORTHERN/FEDERAL'S
COVERAGE FOR "ADVERTISING INJURY"**

33.     As quoted in pertinent part above, Great Northern/Federal agreed to "pay damages [NCMC] becomes legally obligated to pay by reason of liability imposed by law . . . for" "injury . . . arising solely out of" "written publication of advertising material that violates a person's right of privacy."

**ANSWER:** Defendants deny the allegations contained within Paragraph 33 of Plaintiff's

Complaint to the extent they mischaracterize or depart from the actual terms of the policies.

34.     The TCPA violations alleged by Bernstein and quoted above constitute an invasion of privacy within Great Northern/Federal's "advertising injury" offense of "written publication of advertising material that violates a person's right of privacy" since:

a.     Bernstein alleges "New Century Mortgage Corporation caused the

13

unsolicited fax advertisement . . . to be transmitted to plaintiff's facsimile machine" (SAC, Paragraph 4);

b.    Bernstein alleges "that the fax attached [to the second amended complaint] was sent as part of a mass 'broadcasting' fax." (SAC, Paragraph 9);

c.    Bernstein alleges "[t]he TCPA makes unlawful the 'use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine . . .' 47 U.S.C. Section 227(b)(1)(C)." (SAC, Paragraph 11);

d.    Bernstein alleges the unwanted advertisement violates the TCPA which includes a claim of violating the telephone subscriber's right of privacy (SAC, Paragraphs 1, 7 and 30);

e.    Fax transmittal is publication (SAC, Paragraphs 1 and 4); and

f.    A layperson understands his right to be left alone to include being left alone at work by advertisers sending unsolicited faxes.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 34 of Plaintiff's

Complaint.

35.    The TCPA violations alleged by Bernstein and quoted above constitute an "injury . . . arising solely out of [NCMC's]" "written publication of advertising material that violates a person's right of privacy" since:

a.    the alleged injury occurred in the course of advertising; and

b.    when Bernstein received the fax, his right of privacy was allegedly invaded and the injury was complete.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 35 of Plaintiff's

Complaint.

36.    Bernstein alleges damages resulting from the alleged privacy rights violations: "Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes . . . ." **(Exhibit "D," ¶ 13)**

**ANSWER:**    Defendants deny the allegations contained within Paragraph 36 of Plaintiff's

Complaint.

## BERNSTEIN'S TCPA CLAIM FALLS WITHIN GREAT NORTHERN/FEDERAL'S COVERAGE FOR "PROPERTY DAMAGE"

37.    As quoted in pertinent part above, Great Northern/Federal agreed to pay damages resulting from "property damage" caused by an "occurrence." Further, "property damage"

includes "loss of use."

**ANSWER:**    Defendants deny the allegations of Paragraph 37 to the extent they

mischaracterize or depart from the actual terms of the policies.

38.    Thus, Great Northern/Federal is legally obligated to pay damages by reason of liability imposed by law . . . for "loss of use of tangible property that is not physically injured," caused by an "occurrence."

**ANSWER:**    Defendants deny the allegations contained within Paragraph 38 of Plaintiff's

Complaint.

39.    The *Bernstein* Action alleges an "occurrence" since NCMC believed that the facsimile transmissions were to persons who authorized receipt of such transmissions and liability under the TCPA attaches because the harm was not intended or expected.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 39 of Plaintiff's

Complaint.

40.    In the alternative, the *Bernstein* Action alleges an "occurrence" since any violative transmission was accidental due to the perceived authorization described in the preceding paragraph.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 40 of Plaintiff's

Complaint.

41.    The *Bernstein* Action alleges "Property damage" in the form of "loss of use" of paper, toner and ink.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 41 of Plaintiff's

Complaint.

## FIRST CAUSE OF ACTION

### (Breach of the Duty to Settle)

42.    NCMC incorporates by this reference each and every allegation set forth in the preceding paragraphs as if fully realleged herein.

**ANSWER:**    Defendants incorporate by reference their answers to Paragraphs 1 through 41 as

15

their answer to Paragraph 42 of Plaintiff's Complaint as though fully set forth herein.

43.    Pursuant to the policies, Great Northern and Federal agreed to defend NCMC for any claim or suit for injury or damage covered by the policies, including "advertising injury" and "property damage" liability, even if the allegations of the claims were groundless, false or fraudulent.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 43 to the extent they

mischaracterize or depart from the actual terms of the policies.

44.    Coextensive with the agreement to defend NCMC is the agreement that Great Northern/Federal will settle claims for amounts within the limits of the policies when NCMC faces liability exposure in excess of the policies' limits of insurance.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 44 of Plaintiff's

Complaint.

45.    Great Northern/Federal have refused to perform their settlement obligations under the policies, even though NCMC has fully performed all of its contractual obligations.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 45 of Plaintiff's

Complaint.

46.    The refusal by Great Northern/Federal is a breach of the duty to settle read into every policy of insurance, and thus a breach of the insurance contracts, the Great Northern/Federal policies.

**ANSWER:**    Paragraph 46 of Plaintiff's Complaint calls for a legal conclusion to which no

response is required.    To the extent an answer is deemed necessary, Defendants deny the

allegations contained within Paragraph 46 of Plaintiff's Complaint.

47.    As a direct and foreseeable consequence of the breach of contract, NCMC has been damaged by having to pay for the settlement of the *Bernstein* Action.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 47 of Plaintiff's

Complaint.

48.    Great Northern/Federal has refused and continues to refuse to pay any portion of the $1.95 million settlement of the *Bernstein* Action, even though it has acknowledged the reasonableness of a settlement within $6 million and that Great Northern/Federal have admitted

that there is a potential for coverage under the "advertising injury" coverage, at a minimum.

**ANSWER:**    Defendants admit that they do not have a duty to indemnify NCMC in connection

with the *Bernstein* Action. Defendants deny the remainder of the allegations contained within

Paragraph 48 of Plaintiff's Complaint.

49.    Great Northern/Federal have breached their contracts of insurance and the duty to
settle contained therein by refusing to participate in settlement negotiations and forcing NCMC
to settle the *Bernstein* Action with NCMC's own money in the amount of $1,950,000.00 plus
prejudgment interest.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 49 of Plaintiff's

Complaint.

## SECOND CAUSE OF ACTION

### (Declaratory Relief re: Duty to Settle)

50.    NCMC incorporates by this reference each and every allegation set forth in the
preceding paragraphs as if fully realleged herein.

**ANSWER:**    Defendants incorporate by reference their answers to Paragraphs 1 through 49, as

their answer to Paragraph 50 as though fully set forth herein.

51.    An actual controversy exists between the parties herein. This Court has authority
to issue a declaratory judgment concerning the respective rights and duties of NCMC and Great
Northern/Federal.

**ANSWER:**    Defendants admit that an actual controversy exists between the parties. The

remainder of the allegations in Paragraph 51 call for a legal conclusion to which no response is

required.

52.    It is necessary and proper that this Court adjudicate and declare that Great
Northern/Federal breached their duty to settle the *Bernstein* Action.

**ANSWER:**    Paragraph 52 calls for a legal conclusion to which no response is required. To the

extent a response is deemed necessary, Defendants deny the allegations contained within

Paragraph 52 of Plaintiff's Complaint.

17

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred by the doctrine of unclean hands.

### SECOND AFFIRMATIVE DEFENSE

Great Northern and Federal owe no coverage obligation to the extent that there is

"personal injury" or "advertising injury" arising out of the oral or written publication of material

whose first publication took place before the beginning of the policy period.

### THIRD AFFIRMATIVE DEFENSE

Great Northern and Federal owe no coverage obligation because there was no "property

damage" or "bodily injury" during the policy period.

### FOURTH AFFIRMATIVE DEFENSE

Great Northern and Federal owe no coverage obligation because there was no "property

damage" or "bodily injury" arising out of an "occurrence" as defined by the policies.

### FIFTH AFFIRMATIVE DEFENSE

Great Northern and Federal owe no coverage obligation to the extent that any "property

damage" or "bodily injury" was expected or intended from the standpoint of the insured.

### SIXTH AFFIRMATIVE DEFENSE

Great Northern and Federal owe no coverage obligation because there is no "advertising

injury" alleged arising solely out of one or more of the enumerated offenses committed in the

course of advertising your goods, products, or services.

### SEVENTH AFFIRMATIVE DEFENSE

Great Northern and Federal owe no coverage obligation because there is no "personal

injury" alleged arising solely out of one or more of the enumerated offenses.

18

## EIGHTH AFFIRMATIVE DEFENSE

Great Northern and Federal owe no coverage obligation to the extent that there is "advertising injury" or "personal injury" arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff has failed to set forth their claim with sufficient specificity and particularity to enable Great Northern and Federal to identify all of its defenses. Great Northern and Federal expressly reserve the right to rely upon additional facts and defenses based upon further investigation and discovery.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claim may be barred by the applicable statute of limitations, statute of repose or may otherwise be time barred.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claim may be barred, in whole or in part, by the doctrine of laches.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claim may be barred to the extent that the claimed loss or losses arose from the imposition of fines, penalties or punitive damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim may be barred to the extent that the policyholder failed to cooperate with Great Northern and Federal.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim may be barred to the extent that recovery is sought for liabilities arising from an entity, which does not qualify as an insured under the Great Northern or Federal

policies.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred to the extent the insured did not comply with the terms and conditions of the Great Northern and Federal policies.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim may be barred in whole or in part by the doctrines of waiver, release or estoppel.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Great Northern and Federal owe no coverage obligation to the extent that notice was not provided as soon as practicable.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's complaint fails to state a claim upon which relief can be granted.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that the Bernstein Settlement constitutes a voluntary payment in violation of the policy.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred by the doctrine of *res judicata*.

20

GREAT NORTHERN INSURANCE COMPANY
FEDERAL INSURANCE COMPANY

By: _____
One of their Attorneys

Daniel J. Cunningham
Kathy Karaboyas Malamis
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois  60606-6308
(312) 627-4000