

Chad M. Shandler
Director
302-651-7836
Shandler@rlf.com

July 16, 2008

**BY ELECTRONIC FILING**

The Honorable Gregory M. Sleet
United States District Court for
 the District of Delaware
844 King Street
Wilmington, Delaware 19801

> Re: **New Century Mortgage Corp. v. Great Northern Insurance Co.,
> C.A. No. 07-640-GMS**

Dear Chief Judge Sleet:

I write on behalf of plaintiff/debtor New Century Mortgage Corporation ("New Century"). As Your Honor may recall, this action concerns a coverage dispute that came to the Court by way of an October 2007 transfer order issued, *sua sponte*, by the United States District Court for the Northern District of Illinois, Eastern Division.

On March 19, 2008, this Court issued an order administratively closing this case due to the automatic stay of 11 U.S.C. § 362(a). While we respectfully disagreed with the Court's decision to close the case given that the debtor, New Century, is the plaintiff in this action and Section 362 operates to stay only proceedings initiated *against* a debtor, we elected not to burden the Court any further until the debtors' plan of liquidation was confirmed by the Bankruptcy Court. Under Section 362(c), automatic stays terminate upon confirmation of the plan of liquidation.

With this in mind, I am pleased to report that yesterday Judge Carey issued an order confirming the debtors' plan of liquidation, which is attached hereto as Exhibit A. Accordingly, we respectfully request that the Court reactivate this case and convene a Rule 16(b) scheduling conference at its earliest opportunity. As we informed the Court previously, we would also the appreciate the Court's assistance in referring this case to one of the Magistrate Judges for purposes of discussing mediation.

Counsel remains available at the Court's convenience to address any of the matters raised herein.

The Honorable Gregory M. Sleet
July 16, 2008
Page 2

Respectfully submitted,

*/s/ Chad M. Shandler (#3796)*

Chad M. Shandler (#3796)

CS:ps

Enclosure
cc:    Clerk of the Court (by electronic filing)
       Russell C. Silberglied, Esq. w/ enclosure
       Stephen Casarino, Esq, w/ enclosure (via hand delivery)

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                              :    **Chapter 11**
                                                    :
NEW CENTURY TRS HOLDINGS,                           :    **Case No. 07-10416(KJC)**
INC., a Delaware corporation, et al.,[1]            :
                                                    :    **Jointly Administered**
                          Debtors.                  :
                                                    :    Re: Docket Nos. 6412 & 8254
                                                    :

### ORDER CONFIRMING THE
### SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE
### DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
### DATED AS OF APRIL 23, 2008

WHEREAS, on February 2, 2008, New Century Financial Corporation

("NCFC"), New Century TRS Holdings, Inc. ("TRS Holdings"), New Century Mortgage

Corporation ("NCMC"), NC Capital Corporation ("NC Capital"), Home123 Corporation

("Home123), NC Asset Holding, L.P. ("NC Asset Holding"), NC Deltex, LLC ("NC Deltex"),

NC Residual III Corporation ("NC Residual III"), NC Residual IV Corporation ("NC Residual

IV"), NCoral, L.P. ("NCoral"), New Century Credit Corporation ("NC Credit"), New Century

Mortgage Ventures, LLC ("NCM Ventures"), New Century R.E.O. Corp. ("NC REO"), New

Century R.E.O. II Corp. ("NC REO II"), New Century R.E.O. III Corp. ("NC REO III"), and

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; and NC Deltex, LLC, a Delaware limited liability company; and NCoral, L.P., a Delaware limited partnership and New Century Warehouse Corporation, a California corporation

New Century Warehouse Corporation ("Access Lending"), debtors and debtors-in-possession in the above-captioned chapter 11 cases (each individually a "Debtor," and collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtors, the "Plan Proponents") filed the *Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008* [Docket No. 4805], and the Debtors filed the related *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008* [Docket No. 4804] with the United States Bankruptcy Court for the District of Delaware (the "Court"); and

WHEREAS, on March 18, 2008, the Plan Proponents filed the *First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008* [Docket No. 5405], and the Debtors filed the related *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* (the "Disclosure Statement") [Docket No. 5395] with the Court under certification of counsel; and

WHEREAS, on March 18, 2008, the Court entered an order [Docket No. 5396] (the "Solicitation Procedures Order") (i) approving the Disclosure Statement, pursuant to section 1125 of Title 11 of the United States Code (as amended, modified or replaced from time to time, the "Bankruptcy Code"), as containing adequate information; (ii) establishing procedures for the solicitation and tabulation of votes to accept or reject the Plan, including approval of (a) the forms of ballots for submitting votes on the Plan, (b) the deadline for submission of ballots, (c)

the contents of proposed solicitation packages to be distributed to Creditors[2] and other parties in interest in connection with the solicitation of votes on the Plan (the "Solicitation Packages"), (d) the proposed record date for voting on the Plan and (e) certain related relief, and (iii) scheduling a hearing on confirmation of the Plan and approving related notice procedures; and

WHEREAS, XRoads Case Management Services, LLC, the Debtors' tabulation and balloting agent (the "Balloting Agent"), transmitted the Solicitation Packages substantially in compliance with the Solicitation Procedures Order, as attested to in the Declarations of Service of Jamie L. Edmonson filed on April 14, 2008 [Docket Nos. 5977, 5981, 5985, 5989, 5993, and 6000];

WHEREAS, on March 21, 2008, the Debtors caused the *Notice of (A) Deadline for Casting Votes to Accept or Reject First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008, (B) Hearing to Consider Confirmation of Joint Chapter 11 Plan of Liquidation and (C) Related Matters* (the "Confirmation Hearing Notice") to be served in accordance with the Solicitation Procedures Order, as attested to in the Declarations of Service of Jamie L. Edmonson filed on April 14, 2008 [Docket Nos. 5977, 5981, 5985, 5989, 5993, and 6000]; and

WHEREAS, on April 18, 2008, the Plan Proponents filed the *Motion of the Debtors and the Official Committee of Unsecured Creditors for an Order Determining that the Proposed Plan Modifications Do Not Adversely Change the Treatment of Creditors and Do Not Require Resolicitation of Any Class* (the "Plan Modification Motion") [Docket No. 6339], annexed to which as an exhibit was a draft of the *Second Amended Joint Chapter 11 Plan of*

---

[2] Capitalized terms not otherwise defined herein have the meaning given to them in the Plan; provided, however, that if there is any direct conflict between the terms of the Plan and this Order, the terms of this Order shall govern

*Liquidation of the Debtors and the Official Committee of Unsecured Creditors* (the "Draft Second Amended Plan"); and

WHEREAS, on April 23, 2008, the Plan Proponents filed with the Court the *Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008* [Docket No. 6412] (as it is amended pursuant hereto, the "Plan"), which Plan included the modifications contained in the Draft Second Amended Plan as well as additional modifications (the "Additional Modifications"); and

WHEREAS, on April 23, 2008, the Debtors filed the *Declaration of Jamie L. Edmonson Regarding Tabulation of Votes in Connection with the First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008, As Further Amended* [Docket No. 6406] (the "Tabulation Certification"), attesting to the tabulation of all ballots received by the Balloting Agent no later than 5:00 p.m. Pacific Time on April 21, 2008 (the "Voting Deadline") from Holders of Claims in Class HC3a (Special Deficiency Claims Against NCFC), Class HC3b (Other Unsecured Claims Against NCFC), Class HC7 (Other Unsecured Claims Against TRS Holdings), Class HC10a (Special Deficiency Claims Against NC Credit), Class HC10b (Other Unsecured Claims Against NC Credit), Class HC13 (Other Unsecured Claims Against NC Residual IV), Class OP3a (Special Deficiency Claims Against NCMC), Class OP6a (Special Deficiency Claims Against NC Capital), Class OP3b (EPD/Breach Claims Against NCMC), Class OP3c (Other Unsecured Claims Against NCMC), Class OP6a (Special Deficiency Claims Against NC Capital), Class OP6b (EPD/Breach Claims Against NC Capital), Class OP6c (Other Unsecured Claims Against NC Capital), Class OP9a (Special Deficiency Claims Against Home123), Class OP9b (Other

Unsecured Claims Against Home123), Class OP12 (Other Unsecured Claims Against NC Asset

Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, and NCoral), and

Class AL3 (Other Unsecured Claims Against Access Lending) and attesting to the results of the

tabulation as follows:

   a. Class HC3a (Special Deficiency Claims Against NCFC). Class HC3a
(Special Deficiency Claims Against NCFC) voted in favor of the Plan. In claim amount, 100%
of voting creditors in Class HC3a approved the Plan. A total of $20,000,000.00 voted to accept
the Plan, and $0.00 voted to reject the Plan. For numerosity, the rate of approval by creditors in
Class HC3a was 100% In Class HC3a, the only vote received voted in favor of the Plan. No
ballots were invalid.

   b. Class HC3b (Other Unsecured Claims Against NCFC). Class HC3b
(Other Unsecured Claims Against NCFC) voted to reject the Plan. In claim amount,
approximately 95.4% of voting creditors in Class HC3b approved the Plan. A total of
$395,060,366.38 voted to accept the Plan, and $18,955,681.06 voted to reject the Plan. For
numerosity, the rate of approval by creditors in Class HC3b was approximately 26.98%. In
Class HC3b, 75 of the 295 votes received voted in favor of the Plan. Eleven ballots totaling
$767,011.57 were otherwise invalid, did not indicate a preference regarding the Plan, and were
not counted.

   c. Class HC7 (Other Unsecured Claims Against TRS Holdings). Class HC7
(Other Unsecured Claims Against TRS Holdings) voted in favor of the Plan. In claim amount,
approximately 95.79% of voting creditors in Class HC7 approved the Plan. A total of
$8,643,310.10 voted to accept the Plan, and $379,797.92 voted to reject the Plan. For
numerosity, the rate of approval by creditors in Class HC7 was approximately 91.26%. In Class
HC7, 94 of the 111 votes received voted in favor of the Plan. Four ballots totaling $0.00 were
otherwise invalid, did not indicate a preference regarding the Plan, and were not counted.

   d. Class HC10a (Special Deficiency Claims Against NC Credit). Class
HC10a (Special Deficiency Claims Against NC Credit) voted in favor of the Plan. In claim
amount, 100% of voting creditors in Class HC10a approved the Plan. A total of $20,000,000.00
voted to accept the Plan, and $0.00 voted to reject the Plan. For numerosity, the rate of approval
by creditors in Class HC10a was 100%. In Class HC10a, the only vote received voted in favor
of the Plan. No ballots were invalid.

   e. Class HC10b (Other Unsecured Claims Against NC Credit). Class HC10b
(Other Unsecured Claims Against NC Credit) voted in favor of the Plan. In claim amount, 100%
of voting creditors in Class HC10b approved the Plan. A total of $204,278,102.87 voted to
accept the Plan, and $0.00 voted to reject the Plan. For numerosity, the rate of approval by
creditors in Class HC10b was 100% In Class HC10b, four of the four votes received voted in
favor of the Plan. No ballots were invalid.

f.      Class HC13 (Other Unsecured Claims Against NC Residual IV).  Class HC13 (Other Unsecured Claims Against NC Residual IV) voted in favor of the Plan.  In claim amount, 100% of voting creditors in Class HC13 approved the Plan.  A total of $16,494,811.17 voted to accept the Plan, and $0.00 voted to reject the Plan.  For numerosity, the rate of approval by creditors in Class HC13 was 100%.  In Class HC13, the only vote received voted in favor of the Plan.  No ballots were invalid.

g.      Class OP3a (Special Deficiency Claims Against NCMC).  Class OP3a (Special Deficiency Claims Against NCMC) voted in favor of the Plan.  In claim amount, 100% of voting creditors in Class OP3a approved the Plan.  A total of $20,000,000.00 voted to accept the Plan, and $0.00 voted to reject the Plan.  For numerosity, the rate of approval by creditors in Class OP3a was 100%.  In Class OP3a, the only vote received voted in favor of the Plan.  No ballots were invalid.

h.      Class OP3b (EPD/Breach Claims Against NCMC).  Class OP3b (EPD/Breach Claims Against NCMC) voted in favor of the Plan.  In claim amount, 100% of voting creditors in Class OP3b approved the Plan.  A total of $44,299,123.00 voted to accept the Plan, and $0.00 voted to reject the Plan.  For numerosity, the rate of approval by creditors in Class OP3b was 100%.  In Class OP3b, nine of the nine votes received voted in favor of the Plan.  No ballots were invalid.

i.      Class OP3c (Other Unsecured Claims Against NCMC).  Class OP3c (Other Unsecured Claims Against NCMC) voted in favor of the Plan.  In claim amount, approximately 99.6% of voting creditors in Class OP3c approved the Plan.  A total of $302,60,803.78 voted to accept the Plan, and $1,201,140.77 voted to reject the Plan.  For numerosity, the rate of approval by creditors in Class OP3c was approximately 94.2%.  In Class OP3c, 195 of the 224 votes received voted in favor of the Plan.  Four ballots totaling $10,835.11 were otherwise invalid, did not indicate a preference regarding the Plan, and were not counted.

j.      Class OP6a (Special Deficiency Claims Against NC Capital).  Class OP6a (Special Deficiency Claims Against NC Capital) voted in favor of the Plan.  In claim amount, 100% of voting creditors in Class OP6a approved the Plan.  A total of $20,000,000.00 voted to accept the Plan, and $0.00 voted to reject the Plan.  For numerosity, the rate of approval by creditors in Class OP6a was 100%.  In Class OP6a, the only vote received voted in favor of the Plan.  No ballots were invalid.

k.      Class OP6b (EPD/Breach Claims Against NC Capital).  Class OP6b (EPD/Breach Claims Against NC Capital) voted in favor of the Plan.  In claim amount, 100% of voting creditors in Class OP6b approved the Plan.  A total of $144,689,062.00 voted to accept the Plan, and $0.00 voted to reject the Plan.  For numerosity, the rate of approval by creditors in Class OP6b was 100%.  In Class OP6b, ten of the ten votes received voted in favor of the Plan.  No ballots were invalid.

l.      Class OP6c (Other Unsecured Claims Against NC Capital).  Class OP6c (Other Unsecured Claims Against NC Capital) voted in favor of the Plan.  In claim amount, 100% of voting creditors in Class OP6c approved the Plan.  A total of $160,727,752.81 voted to

accept the Plan, and $0.00 voted to reject the Plan. For numerosity, the rate of approval by creditors in Class OP6c was 100%. In Class OP6c, twelve of the twelve votes received voted in favor of the Plan. No ballots were invalid.

      m.    Class OP9a (Special Deficiency Claims Against Home123). Class OP9a (Special Deficiency Claims Against Home123) voted in favor of the Plan. In claim amount, 100% of voting creditors in Class OP9a approved the Plan. A total of $20,000,000.00 voted to accept the Plan, and $0.00 voted to reject the Plan. For numerosity, the rate of approval by creditors in Class OP9a was 100%. In Class OP9a, the only vote received voted in favor of the Plan. No ballots were invalid.

      n.    Class OP9b (Other Unsecured Claims Against Home123). Class OP9b (Other Unsecured Claims Against Home123) voted in favor of the Plan. In claim amount, approximately 99.94% of voting creditors in Class OP9b approved the Plan. A total of $271,493,064.56 voted to accept the Plan, and $154,606.17 voted to reject the Plan. For numerosity, the rate of approval by creditors in Class OP9b was approximately 95.29%. In Class OP9b, 182 of the 212 votes received voted in favor of the Plan. One ballot totaling $0.00 was otherwise invalid, did not indicate a preference regarding the Plan, and was not counted.

      o.    Class OP12 (Other Unsecured Claims Against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, and NCoral). Class OP12 (Other Unsecured Claims Against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, and NCoral) voted in favor of the Plan. In claim amount, 100% of voting creditors in Class OP12 approved the Plan. A total of $269,061,982.05 voted to accept the Plan, and $0.00 voted to reject the Plan. For numerosity, the rate of approval by creditors in Class OP12 was 100%. In Class OP12, five of the twelve votes received voted in favor of the Plan. Seven ballots totaling $0.00 were otherwise invalid, did not indicate a preference regarding the Plan, and were not counted.

      p    Class AL3 (Other Unsecured Claims Against Access Lending). Class AL3 (Other Unsecured Claims Against Access Lending) voted in favor of the Plan. In claim amount, 100% of voting creditors in Class AL3 approved the Plan. A total of $19,083,658.00 voted to accept the Plan, and $0.00 voted to reject the Plan. For numerosity, the rate of approval by creditors in Class AL3 was 100%. In Class AL3, four of the five votes received voted in favor of the Plan. One ballot totaling $0.00 was otherwise invalid, did not indicate a preference regarding the Plan, and was not counted.

      WHEREAS, objections to the Plan were filed by (i) Pima County [Docket Nos. 5741 and 6397], (ii) the Internal Revenue Service [Docket No. 6282], (iii) Zurich American Insurance Company and/or its affiliates including but not limited to Fidelity & Deposit Company of Maryland [Docket No. 6283], (iv) Union Bank of California [Docket No. 6304], (v) New York State Teachers' Retirement System (the "NYSTRS Objection") [Docket No. 6307], (vi) the

Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred

Compensation Plan and/or Supplemental Retirement/Savings Plan [Docket No. 6338], (vii)

Deutsche Bank National Trust Company [Docket No. 6391], and (viii) Countrywide Home

Loans, Inc. [Docket No. 6403] (the "Objections"); and a statement regarding the Plan was filed

by Carrington Capital Management, LLC [Docket No. 6303]; and

WHEREAS, on April 23, 2008, the Debtors filed the *Declaration of Holly Etlin in*

*Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Liquidation of the*

*Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008* [Docket

No. 6407] (the "Etlin Declaration"); and

WHEREAS, on April 22, 2008, the Debtors filed the *Declaration of Todd Brents*

*in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Liquidation of the*

*Debtors and the Official Committee of Unsecured Creditors Dates as of April 23, 2008* [Docket

No. 6396] (the "Brents Declaration") and

WHEREAS, on April 24, 2008, the Court entered an order (the "Plan

Modification Order") approving the Plan Modification Motion and determining that the proposed

Plan modifications contained in the Draft Second Amended Plan did not adversely change the

treatment of Creditors and did not require resolicitation of any Class; and

WHEREAS, a hearing to consider confirmation of the Plan was held on April 24,

2008 and April 25, 2008 before the Honorable Kevin J. Carey, United States Bankruptcy Judge

for the District of Delaware (the "Confirmation Hearing"); and

WHEREAS, the Court received evidence as set forth in the record and the

documents submitted into the record through such testimony or otherwise; and

WHEREAS, on July 2, 2008, the Court entered its Opinion on Confirmation (the "Opinion"), which Opinion constitutes findings of fact and conclusions of law, indicating that the Plan would be confirmed and requiring the Plan Proponents to submit a proposed confirmation order; and

NOW, THEREFORE, the Court having (a) considered the Plan, the portions of the Etlin Declaration admitted into evidence at the Confirmation Hearing, the Tabulation Certification, the Objections, the testimony in connection with and record of the Confirmation Hearing and the entire record of these chapter 11 cases and (b) issued the Opinion, and after due deliberation thereon;

THE COURT HEREBY FINDS AND DETERMINES THAT:

A.    Incorporation of the Opinion by Reference.  The Court's findings of facts and conclusions of law set forth in the Opinion shall be fully incorporated herein by reference and made a part of this Order; provided, however, that nothing contained in the Opinion shall be deemed to limit in any way the scope of the Court's findings of fact and conclusions of law as set forth herein and shall only be deemed to supplement this Order

B.    Judicial Notice.  The Court takes judicial notice of the docket in these chapter 11 cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all arguments made, proffered or adduced, at hearings held before the Court

C.    Transmittal of Solicitation Packages.  The Disclosure Statement (together with all exhibits thereto, including the Plan), the Confirmation Hearing Notice, the ballots, and other required materials, as set forth in the Solicitation Procedures Order, were transmitted and served substantially in accordance with the Solicitation Procedures Order and the Federal Rules

of Bankruptcy Procedure (as amended, modified or replaced from time to time, the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and such transmittal and service was adequate and sufficient.

D.    Burden of Proof. The Plan Proponents have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code, by a preponderance of evidence, which is the applicable evidentiary standard in the Court. The Court also finds that the Plan Proponents have satisfied the elements of sections 1129(a) and (b) of the Bankruptcy Code under the clear and convincing standard of proof.

E.    Plan Compliance with Bankruptcy Code. As required by section 1129(a)(1) of the Bankruptcy Code, the Plan complies with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including but not limited to sections 1122, 1123, 1129, and 1145 of the Bankruptcy Code.

F.    Satisfaction of Plan Confirmation Requirements (11 U.S.C. § 1129(a)). The Plan meets all of the applicable requirements of section 1129(a) of the Bankruptcy Code, including, without limitation, as set forth in the Opinion.

G.    Fair and Equitable: No Unfair Discrimination (11 U.S.C. § 1129(b)). The Plan does not "discriminate unfairly" and is fair and equitable with respect to each impaired Class of Claims or Interests that has not voted to accept the Plan (Class HC3b, Class HC4a, Class HC4b, Class HC4c, Class HC4d, and Class HC4e), thereby satisfying the requirements of section 1129(b) of the Bankruptcy Code. No Holder of a Claim or Interest that is junior to the Claims in Class HC3b, Class HC4a, Class HC4b, Class HC4c, Class HC4d, or Class HC4e will

receive any property on account of its Claim or Interest under the Plan. The Plan satisfies the absolute priority rule of section 1129(b)(2) of the Bankruptcy Code.

H.   Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

I   Modifications Contained in the Plan. The Additional Modifications are non-material, do not adversely change the treatment of Creditors, and do not require resolicitation of any Class

J.   Conditions Precedent to the Effective Date. Each of the conditions to the Effective Date, as set forth in Article 14 of the Plan, is reasonably likely to be satisfied.

K.   Retention of Jurisdiction. The Court properly may retain jurisdiction over the matters set forth in Article 15 of the Plan.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1   Confirmation. The Plan, a copy of which is annexed hereto as Exhibit 1, as modified by this Order, is hereby confirmed pursuant to section 1129 of the Bankruptcy Code.

2.   Capitalized Terms   Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

3.   Confirmation Order Controls. If there is any direct conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control.

4.   Objections   All of the objections to confirmation of the Plan and all reservations of rights included therein, to the extent not resolved, withdrawn or rendered moot,

are overruled; provided, however, that the withdrawal of that portion of the NYSTRS Objection relating to the pursuit of claims against the Debtors solely to the extent of available insurance proceeds is without prejudice to NYSTRS and the putative class (the "Securities Plaintiffs") in the shareholder securities fraud class action currently entitled In re New Century, Case No. 2:07-cv-00931-DDP (JTLx) and pending in the United States District Court for the Central District of California (the "Securities Litigation") (damages for which are asserted by the Securities Plaintiffs in proofs of claim number 2891, 2895, 2897, and 2901) to move for relief from the automatic stay in order to pursue their claims against the Debtors solely to the extent of available insurance coverage and proceeds in the Securities Litigation. All rights and arguments (legal or equitable) available to the Debtors and Liquidating Trust to object to and/or oppose such a motion by the Securities Plaintiffs for relief from the automatic stay are fully reserved.

     5.    Binding Effect of Plan. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan bind any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not the Holder has filed a Claim. On and after the Confirmation Date, the EPD/Breach Claim Protocol shall be binding on all Holders of Claims in Classes OP3b and/or OP6b irrespective of how such Holders voted on the Plan and irrespective of whether such Holders submit the information requested by the Debtors pursuant to the questionnaire referenced in the EPD/Breach Claim Protocol. Any vote in favor of the Plan by a Holder of Claims in Classes OP3b and/or OP6b constitutes an express consent to the EPD/Breach Claim Protocol. The rights, benefits and obligations of any Person named or referred to in the Plan, whose actions may be required to effectuate the terms

of the Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person (including, without limitation, any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

      6.    <u>Plan Settlements Approved</u>. For the reasons set forth in the Opinion, the settlements and compromises provided for in the Plan, including without limitation:

    (i)    the Multi-Debtor Claim Protocol as defined in the Plan;

    (ii)    the EPD/Breach Claim Protocol as defined in the Plan;

    (iii)    the Intercompany Claim Protocol as defined in the Plan;

    (iv)    the distribution of the Litigation Proceeds among the various creditor groups;

    (v)    the establishment of the Joint Administrative Share as set forth in Exhibit C annexed to the Plan; and

    (vi)    the formation and composition of each of the Debtor Groups and the establishment and application of the Determined Distribution Amount methodology in Article 4 of the Plan to calculate the distributions to creditors

are hereby approved.

      7.    <u>Plan Classification Controlling</u>. The classifications of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan and this Order. The classifications set forth on the ballots tendered to the Debtors' Creditors in connection with voting on the Plan (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent and in no event shall be deemed to modify or otherwise affect, the actual classifications of such Claims

under the Plan or for distribution purposes and (e) shall not be binding on the Debtors, their Estates, the Liquidating Trustee, or the Plan Administrator.

8.     Plan Distribution Provisions Controlling     Matters relating to distributions to Holders of Claims against and Interests of the Debtors, including but not limited to the timing of distributions, necessary reserves, distribution calculations, payment in full of Unsecured Claims, manner of distribution, treatment of de minimis distributions, delivery of distributions, treatment of undeliverable distributions, setoffs and recoupments, interest on Claims, treatment of withholding taxes, and reports regarding distributions, shall be governed solely by the terms of the Plan and this Order.

9.     Injunction     Except as otherwise expressly provided in the Plan or in this Order, and except in connection with the enforcement of the terms of the Plan, this Order, or any documents provided for or contemplated in the Plan or this Order, on and after the Effective Date, all Persons and entities who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date (including but not limited to States and other governmental units, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any State or other governmental units) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of any Protected Party; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property of any Protected Party; (iii) creating, perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party; (iv) asserting or effecting, directly or indirectly, any setoff, or right of subrogation of any

kind against any obligation due to any Protected Party or any property of any Protected Party;

and (v) any act, in any manner, in any place whatsoever, that does not conform to, comply with,

or is inconsistent with any provisions of the Plan. Any Person or entity injured by any willful

violation of such injunction may recover actual damages, including costs and attorneys' fees,

and, in appropriate circumstances, may recover punitive damages from the willful violator.

Nothing contained in Article 13 of the Plan or in this Order shall prohibit the Holder of a

Disputed Claim from litigating its right to seek to have such Disputed Claim declared an

Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or

prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the

obligations of the Debtors, the Liquidating Trustee, or the Liquidating Trust under the Plan.

This Order also shall constitute an injunction enjoining any Person from enforcing or attempting

to enforce any claim or cause of action against any Protected Party or any property of any

Protected Party based on, arising from or related to any failure to pay, or make provision for

payment of, any amount payable with respect to any Priority Tax Claim on which the payments

due under Article 4 of the Plan have been made or are not yet due under Article 4 of the Plan;

provided, however, that the foregoing injunction will not enjoin actions by the SEC to the extent

that pursuant to section 362(b)(4) of the Bankruptcy Code such actions are not subject to section

362(a) of the Bankruptcy Code. Except as provided in Article 13.C of the Plan, nothing in the

Plan or this Order shall (i) release or discharge any claims held by the SEC against any non-

debtors or (ii) enjoin or restrain the SEC from enforcing any such claims against any non-

debtors. Further, except as provided in Article 13.C of the Plan as modified by this Order,

nothing in the Plan or this Order shall (i) release or discharge any claims currently asserted by

the Securities Plaintiffs in the Securities Litigation against any non-debtors or any claims the

court in the Securities Litigation permits the Securities Plaintiffs to assert against any non-debtors (collectively, the "Third Party Securities Claims") or (ii) enjoin or restrain the Securities Plaintiffs from enforcing any such claims against any non-debtors

      10.   <u>Term of Stay and Injunctions</u>.  Unless otherwise provided herein or in the Plan, all injunctions or stays provided for in the Chapter 11 Cases by orders of the Court, under sections 105 or 362 of the Bankruptcy Code, the Plan, or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (x) the entry of the Final Decree or (y) the dissolution of the Liquidating Trust.  In accordance therewith, and without limiting the foregoing, until the later of (i) entry of the Final Decree or (ii) the dissolution of the Liquidating Trust, all Persons or entities (except as provided in section 362(b) of the Bankruptcy Code) are stayed from (i) the commencement or continuation of a judicial, administrative, or other action or proceeding, including the employment of service of process, against the Debtors that was or could have been commenced prior to the Petition Date, or to recover a claim against the Debtors that arose prior to the Petition Date, (ii) the enforcement, against the Debtors or against property of the Estates, of a judgment obtained before the Petition Date, (iii) any act to obtain possession of property of the Estates or of property from the Estates or to exercise control over property of the Estates, (iv) any act to create, perfect, or enforce any lien against property of the Estates, and (v) any act to collect, assess, or recover a claim against the Debtors that arose before the Petition Date; <u>provided</u>, <u>however</u>, that notwithstanding any provisions of the Plan or this Order, including but not limited to Article 13 of the Plan, (i) when permitted to do so in the Securities Litigation, the Securities Plaintiffs may serve discovery requests on the Liquidating Trust, as custodian of NCFC's books and records, and may seek to take any action reasonably necessary to enforce such requests and compel discovery in the

Securities Litigation, and (ii) the rights of the Liquidating Trustee to object on any and all bases to such discovery requests (other than on the basis that such discovery requests violate the automatic stay or any injunction) in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and any other applicable rules, laws, or legal authority and the rights to assert any and all applicable privileges (and other related rights) are fully reserved.

11.    Relief from Stay. Notwithstanding any provision of the Plan or this Order, (i) all orders of the Court entered during the Chapter 11 Cases, including, without limitation, the *Order Providing that the Automatic Stay Under Section 362(a) of the Bankruptcy Code Is Terminated to Permit the Commencement or Continuation of any Action to Foreclose Upon or Extinguish an Interest Listed in the Name of a Debtor* dated as of July 14, 2008 (the "Stay Termination Order"), that provide for relief from the automatic stay imposed by section 362 of the Bankruptcy Code shall remain in full force and effect following the Effective Date, (ii) to the extent that the Debtors, the Committee, or any third parties file motions prior to the Effective Date seeking relief from the automatic stay imposed by section 362 of the Bankruptcy Code, any order of the Court granting such relief, including, without limitation, the Stay Termination Order, shall supersede this Order, and (iii) following the Effective Date, parties may seek relief from all injunctions or stays provided for in the Chapter 11 Cases by orders of the Court, including this Order, upon sufficient notice and a hearing.

12.    Exculpation. On and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is hereby released from any claim, cause of action or liability to any other Exculpated Party, to any Holder of a Claim or Interest, or to any other party in interest, (a) pertaining to the timing of the commencement of the Chapter 11 Cases or (b) for any act or omission that occurred during the Chapter 11 Cases or

in connection with the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, and/or the administration of the Plan and/or the property to be distributed under the Plan, except, in any case, for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan to the extent permitted by applicable law; provided, however, that, solely with respect to the Securities Litigation, the Exculpated Parties are not released from any claim, cause of action or liability to the Securities Plaintiffs arising or accruing prior to March 14, 2008. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. No provision of the Plan or the Disclosure Statement shall be deemed to act as a release of or to release any claims, Causes of Action or liabilities that (i) the Liquidating Trust, Reorganized Access Lending, the Estates, or the SEC, may have against any Person or entity for any act, omission, or failure to act that occurred (a) with respect to the Debtors other than Access Lending, prior to April 2, 2007 and (b) with respect to Access Lending, prior to August 3, 2007, in either case, other than for claims, Causes of Action, or liabilities pertaining to the timing of the commencement of the Chapter 11 Cases or (ii) solely with respect to the Securities Litigation, the Securities Plaintiffs may have against any Person or entity for any act, omission, or failure to act that occurred (a) with respect to the Debtors other than Access Lending, prior to April 2, 2007 and (b) with respect to Access Lending, prior to August 3, 2007, in either case, other than for claims, Causes of Action, or liabilities arising or accruing after March 14, 2007 and pertaining to the timing of the commencement of the

18

Chapter 11 Cases; nor shall any provision of the Plan or this Order be deemed to act as a release of or to release any Avoidance Actions.

13.    No Effect on Objections to Fee Applications. Nothing contained in this Order or the Plan shall (i) affect the rights of parties in interest to object to Fee Applications and Claims asserted under section 503(b)(3) of the Bankruptcy Code or (ii) obviate the power of the Court to issue orders with respect to Fee Applications and Claims asserted under section 503(b)(3) of the Bankruptcy Code.

14.    Release of Goldman. On the Effective Date, any and all claims, Causes of Action, rights or remedies of any kind or nature that the Debtors or the Estates have, may have or could have asserted against Goldman, its affiliates or its former or present officers, directors, employees, attorneys, financial advisors or other professionals, which claims, causes of action, rights or remedies arise out of or relate to Access Lending shall be waived, set aside, discharged, settled, compromised, and released.

15    IRS  Notwithstanding Article 13.A of the Plan and Paragraph 9 of this Order, the rights of the IRS with respect to the matters set forth therein shall be governed by this Paragraph 15.

a.    Right To Setoff  The IRS may exercise its right to setoff unpaid Allowed Claims against refunds of taxes due and payable from the IRS to the Debtors, including the income tax refund claimed by the Debtors for the 2004 taxable year in the amount of $66,016,311. As of the date of this Order, based upon its ongoing audit of the 2003, 2004, 2005 and 2006 taxable years (the "Tax Years") of the Debtors, the best estimate of the IRS is that the Debtors owe not less than $2,000,000  The IRS may

continue its audit of the Tax Years of the Debtors until the expiration of the statute of limitation for the years in dispute. No later than September 15, 2008, the IRS shall issue the debtors a statutory notice of deficiency for the Tax Years, i e., 2003, 2004, 2005 and 2006. The IRS' best estimate of the Debtors' additional tax liability, if any, for the Tax Years may change only between the date of this Order and August 20, 2008.

b.    IRS Schedule. By no later than 5:00 p m Eastern Time on Wednesday, August 20, 2008, the IRS shall provide to the Debtors the IRS' best estimate of the net amount of additional tax owed by the Debtors for the Tax Years and an explanation of each of the items and/or adjustments that comprise such additional tax liability (the "IRS Schedule").

c.    Separate Reserve For IRS Claims. In order to pay Allowed Priority Tax Claims of the IRS, whether Allowed on, before or after the Effective Date (collectively, the "IRS Claims"), the Liquidating Trustee, shall establish a separate reserve (the "IRS Reserve") in the amount of $1,500,000 as soon as practicable after the Effective Date. The Liquidating Trustee shall not be required to reserve any other amounts for the IRS in respect of the IRS Claims, in either the IRS Reserve, the A/P/S Claims Reserve, or otherwise.

d.    IRS Right To Seek Increase To IRS Reserve. The IRS may seek to increase the amount of the IRS Reserve after the Effective Date by filing one or more notices with the Court through 5:00 p m. Eastern Time on Tuesday, August 20, 2008 stating that the IRS' then-estimate of the net

amount owed by the Debtors to the IRS in respect of the Tax Years, determined by reference to the IRS Schedule, exceeds the amount in the IRS Reserve. The Liquidating Trustee, on behalf of the Debtors, may object to any such notice by filing an objection with the Court within 30 days of receipt of such notice. After a hearing, the Court will determine whether, and if so by what amount, the IRS Reserve shall be increased. The Court's determination in any such hearing shall be based solely on the ability of the Debtors or the Liquidating Trustee to establish that the Debtors are not required to reserve additional amounts, which determination shall be based on the legal standards applicable under section 502(c) of the Bankruptcy Code.

e.    Satisfaction Of IRS Claims. Notwithstanding the amount of the IRS Claims determined to be Allowed, in no event shall the Debtors or the Liquidating Trustee on behalf of the Liquidating Trust be liable for or make a distribution or distributions to the IRS in an aggregate amount that exceeds the amount of the IRS Reserve. The aggregate amount distributed from the IRS Reserve shall constitute full satisfaction of the IRS Claims in accordance with Article 9.7 of the Plan.

f.    Limitation on Distributions. Until the receipt of Notice referenced in subparagraph (d) above, the Liquidating Trustee may make distributions to Allowed Priority Claims and Allowed Unsecured Claims in the total amount limited to the lesser of $6 million or 10 percent of total cash on hand on the Effective Date. Upon receipt of any such Notice and until the

Court's determination of the amount of the IRS Reserve, the Liquidating

Trustee shall not make any distribution on account of Priority, Priority

Tax or Unsecured Claims unless the Liquidating Trust has sufficient assets

to make such payments reserving in full for the amount set forth in the

Notice.

16.    Texas Comptroller. Notwithstanding anything in the Plan to the contrary,

the setoff rights of the Texas Comptroller of Public Accounts are not impaired or altered in any

way by the Plan or this Order.

17    Corporate Action. On the Effective Date, the matters under the Plan

involving or requiring corporate action of the Debtors or their subsidiaries, including, but not

limited to, actions requiring a vote or other approval of the board of directors or shareholders

and execution of all documentation incident to the Plan, shall be deemed to have been

authorized by this Order and to have occurred and be in effect from and after the Effective Date

without any further action by the Court or the officers or directors of the Debtors or their

subsidiaries. Without limiting the foregoing, the Board of Directors of NCFC, in accordance

with the terms of the Plan, shall be authorized and directed to adopt resolutions providing that (i)

the dissolution of NCFC is approved and (ii) the Liquidating Trustee is authorized and

empowered to prepare or cause to be prepared, and to execute and file on behalf of NCFC

Articles of Dissolution with the Maryland State Department of Assessments and Taxation. The

officers and directors of the Debtors shall cease to serve immediately after the Effective Date.

18.    Dissolution of Debtors Other than Access Lending. Immediately after the

Effective Date, the Liquidating Trustee shall be authorized to take, in his sole and absolute

discretion pursuant to the Liquidating Trust Agreement, all actions reasonably necessary to

dissolve the Debtors (other than Access Lending) and their subsidiaries under applicable laws,
including without limitation under the laws of the jurisdictions in which they may be organized
or registered, and to pay all reasonable costs and expenses in connection with such dissolutions,
including the costs of preparing or filing any necessary paperwork or documentation; provided,
however, (i) after all distributions have been made to Holders of Allowed Claims against NCFC,
the Liquidating Trustee shall file a certificate of dissolution in the applicable state of
incorporation for NCFC and NCFC shall dissolve and cease to exist; (ii) that the Liquidating
Trustee shall not be compelled to dissolve any of the Debtors (other than NCFC) or their
subsidiaries if to do so would unduly burden the Liquidating Trust; and (iii) no assets shall
revest in the Debtors (other than Access Lending). Other than with respect to NCFC, which
shall be dissolved as set forth in Article 8.C of the Plan, the Liquidating Trustee shall have no
liability for using his discretion to dissolve or not dissolve any of the Debtors or their
subsidiaries. Whether or not dissolved, immediately after the Effective Date, the Debtors shall
have no authorization to implement the provisions of the Plan, unless specifically provided for
in the Plan.

19. <u>Dissolution of Committee</u>. Subject to the terms of Article 8.D of the Plan,
on the Effective Date, the Committee shall dissolve automatically, whereupon its members,
Professionals, and agents shall be released from any further duties and responsibilities in the
Chapter 11 Cases and under the Bankruptcy Code or in connection with the Plan and its
implementation.

20. <u>Formation of Liquidating Trust</u>. On or prior to the Effective Date, the
Liquidating Trust shall be formed. The Holders of Holding Company Debtor Unsecured Claims
and the Holders of Operating Debtor Unsecured Claims shall be the sole beneficiaries of the

Liquidating Trust. Holders of Unsecured Claims against Access Lending shall not be beneficiaries of the Liquidating Trust. Allowed A/P/S Claims (other than against Access Lending) shall be paid out of the Liquidating Trust Assets but Holders of such Allowed A/P/S Claims shall not be beneficiaries of the Liquidating Trust.

21.    Liquidating Trust Agreement. The Liquidating Trust Agreement, as amended [Docket No. 6414] is hereby approved. In the event a provision of the Plan or this Order conflicts with a provision of the Liquidating Trust Agreement, the provision of the Liquidation Trust Agreement shall control.

22.    Transfer of Assets. On the Effective Date, the Liquidating Trust Assets, as described in Article 8.E.1 of the Plan, will be conveyed directly by the Debtors other than Access Lending to the Liquidating Trust on behalf of the beneficiaries thereof.

23.    Appointment of the Liquidating Trustee. Alan M. Jacobs ("Mr. Jacobs") is hereby appointed Liquidating Trustee. Mr. Jacobs shall commence serving as the Liquidating Trustee on the Effective Date; provided, however, that Mr. Jacobs, as Liquidating Trustee, shall be permitted to act in accordance with the terms of the Liquidating Trust Agreement from the Confirmation Date (or such earlier date as authorized by the Committee) through the Effective Date and shall be entitled to seek compensation in accordance with the terms of the Liquidating Trust Agreement and the Plan.

24.    Liquidating Trustee Deemed Estate Representative. The Liquidating Trustee shall be deemed the Estates' representative (except with respect to Reorganized Access Lending) in accordance with the provisions of the Bankruptcy Code, including but not limited to section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Plan and the Liquidating Trust Agreement, including, without limitation, the

24

powers of a trustee under sections 704, 108 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules (including without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations 301.7701-4(d) for federal income tax purposes.

25.    Liquidating Trustee as Sole Officer and Director of Debtors. The Liquidating Trustee is hereby appointed as the sole officer and director of each of the Debtors (other than Access Lending) as of the Effective Date. To the extent necessary or appropriate to effect such appointment, the Liquidating Trustee is hereby authorized to amend the corporate governance documents of each of the Debtors (other than Access Lending).

26.    Actions Against the Liquidating Trustee. Without the permission of the Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Liquidating Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Liquidating Trustee in any forum other than the Court.

27.    Bond. The Liquidating Trustee shall at all times maintain a bond acceptable to the Plan Advisory Committee and the United States Trustee, or as approved by the Court.

28.    Term and Compensation of the Liquidating Trustee. The Liquidating Trustee shall initially be compensated as set forth in the Liquidating Trust Agreement (which compensation may be revised by the Liquidating Trust with the consent of the Plan Advisory Committee) and shall not be required to file a fee application to receive compensation. The Liquidating Trustee's compensation shall, however, be subject to the review and, if appropriate, objection of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement.

29.    Removal or Replacement. The Liquidating Trustee may be removed or replaced at any time by the Plan Advisory Committee in accordance with the procedures in the Liquidating Trust Agreement. In the event of the death or incompetency (in the case of a Liquidating Trustee that is a natural person), dissolution (in the case of a Liquidating Trustee that is a corporation or other entity), bankruptcy, insolvency, resignation, or removal of the Liquidating Trustee, the Plan Advisory Committee shall have the authority to appoint a successor trustee as set forth in the Liquidating Trust Agreement.

30.    Responsibilities of the Liquidating Trustee The Liquidating Trustee shall be vested with the rights, powers and benefits set forth in the Plan and the Liquidating Trust Agreement (including, but not limited to, those rights and duties set forth in Article 8 F 5(c) of the Plan). The Liquidating Trustee shall be subject to the directions of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement. Notwithstanding anything to the contrary contained in the Plan or this Order, acts by the Liquidating Trustee, including discretionary acts, will require the consent of or consultation with the Plan Advisory Committee as more specifically set forth in the Liquidating Trust Agreement. If there is any inconsistency or ambiguity in the Plan, this Order or the Liquidating Trust Agreement in respect of the Plan Advisory Committee's role in the Liquidating Trustee's authority to act, the provision of the Liquidating Trust Agreement shall control.

31.    Liquidation of Trust Assets. The Liquidating Trustee, in its reasonable business judgment, and in an expeditious but orderly manner, shall liquidate and convert to cash the Liquidating Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidating Trust. The liquidation of the Liquidating Trust Assets may be accomplished either through the sale of Liquidating Trust Assets (in whole or in combination), including the

sale of Causes of Action, or through prosecution or settlement of any Causes of Action, or otherwise.

32.    Termination. The duties and powers of the Liquidating Trustee shall terminate upon the termination of the Liquidating Trust.

33.    Document Retention. From and after the Effective Date, the Liquidating Trustee shall continue to preserve and maintain all documents and electronic data (including, but not limited to, emails and email server back-up tapes) (collectively, the "Records") transferred to the Liquidating Trust by the Debtors as set forth in the Plan and the Liquidating Trust Agreement, and the Liquidating Trustee shall not destroy or otherwise abandon any such Records absent further order of the Court after a hearing upon notice to parties in interest with an opportunity to be heard. The Records the Debtors will transfer to the Liquidating Trust on the Effective Date shall include, but not be limited to, all such documents and electronic data (i) identified for retention in connection with the investigation by the Audit Committee of NCFC's Board of Directors and (ii) produced to the SEC, the United States Attorney's Office, or the Examiner.

34    Valuation of Assets. As soon as practicable after the Effective Date the Liquidating Trustee shall make a good faith determination of the fair market value of the Liquidating Trust Assets. This valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trustee, the Holders of Holding Company Debtor Unsecured Claims and the Holders of Operating Debtor Unsecured Claims) for all federal and state income tax purposes.

35.    Payments by the Liquidating Trust. The Liquidating Trust shall make distributions to Holders of Allowed Claims in accordance with Article 9 of the Plan and this Order.

36.    Termination of Liquidating Trust. The Liquidating Trust shall terminate after its liquidation, administration and distribution of the Liquidating Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in its Liquidating Trust Agreement. The Liquidating Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that, within a period of six (6) months prior to such termination date, the Court, upon motion by a party in interest, may extend the term of the Liquidating Trust if it is necessary to facilitate or complete the liquidation of the Liquidating Trust Assets administered by the Liquidating Trust. Notwithstanding the foregoing, multiple extensions can be obtained so long as Court approval is obtained within six (6) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations 301.7701-4(d) for federal income tax purposes.

37.    Creation of the Plan Advisory Committee. On the Effective Date, the Plan Advisory Committee shall be deemed appointed and shall adopt bylaws to govern the actions of the Plan Advisory Committee. The Plan Advisory Committee shall consist of the following five members of the Committee: Credit Suisse First Boston Mortgage Capital LLC; Deutsche Bank National Trust Co.; Fidelity National Information Services, Inc.; Kodiak Funding, L.P.; and Residential Funding Company, LLC. In the event of the resignation of a member of the Plan

Advisory Committee, the remaining members shall use reasonable efforts to designate a successor from among the Holders of Unsecured Claims and shall use reasonable efforts to maintain such composition of membership as existed prior to resignation. Unless and until such vacancy is filled, the Plan Advisory Committee shall function in the interim with such reduced membership.

38.     Rights and Duties of the Plan Advisory Committee. The fiduciary duties, as well as the privileges, immunities, and protections that applied to the Committee prior to the Effective Date shall apply to the Plan Advisory Committee. The Plan Advisory Committee's role shall be to advise and approve the actions of the Liquidating Trustee as more particularly set forth in the Liquidating Trust Agreement. The Plan Advisory Committee shall have the rights and powers set forth in the Liquidating Trust Agreement (including those rights and duties set forth in Article 8.G.4 of the Plan). The duties and powers of the Plan Advisory Committee shall terminate upon the termination of the Liquidating Trust.

39.     No Compensation of Members of the Plan Advisory Committee. Except for the reimbursement of reasonable costs and expenses incurred in connection with their duties as members of the Plan Advisory Committee, including reasonable attorneys' fees subject to a cap to be established by the Plan Advisory Committee in its discretion, the members of the Plan Advisory Committee shall serve without compensation. Reasonable costs and expenses, as set forth in Article 8.G.5 of the Plan, incurred by members of the Plan Advisory Committee shall be paid by the Liquidating Trust without need for approval of the Court.

40.     Plan Advisory Committee Objection to Fees. The Plan Advisory Committee shall have thirty (30) days, or such other period as determined by the Plan Advisory Committee and the Liquidating Trustee, from the delivery of a fee statement to object to the fees

of any professional retained by either the Liquidating Trust or the Plan Advisory Committee by giving notice of any such objection to the professional seeking compensation or reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved fifteen (15) days after it is made shall be submitted to the Court for resolution. The uncontested portion of each invoice shall be paid within forty (40) days after its delivery to the Plan Advisory Committee and the Liquidating Trustee.

41.    Liability, Indemnification of Liquidating Trustee and Plan Advisory Committee. Neither the Liquidating Trustee (including in its capacity as Plan Administrator), the Plan Advisory Committee, their respective members, designees or professionals, or any duly designated agent or representative of the Liquidating Trustee, the Plan Advisory Committee or their respective members, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of such Liquidating Trustee or Plan Advisory Committee, nor shall such Liquidating Trustee (including in its capacity as Plan Administrator), or any member of the Plan Advisory Committee or their respective designees, agents or representatives, be liable for any act or omission taken or omitted to be taken in its capacity as Liquidating Trustee or Plan Administrator, or as a member of the Plan Advisory Committee, respectively, other than for specific acts or omissions resulting from such Liquidating Trustee's or such member's willful misconduct, gross negligence or fraud. The Liquidating Trustee (including in its capacity as Plan Administrator), or the Plan Advisory Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or

opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Liquidating Trustee (including in its capacity as Plan Administrator) or the Plan Advisory Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Liquidating Trustee (including in its capacity as Plan Administrator) or Plan Advisory Committee or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and Plan Advisory Committee and its members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, or fraud.

      42.    Liquidating Trust Professionals. The Liquidating Trustee may retain professionals, including but not limited to, counsel, accountants, investment advisors, auditors, professionals from the Liquidating Trustee's own firm, and other agents on behalf of the Liquidating Trust as necessary or desirable to carry out the obligations of the Liquidating Trustee hereunder and under the Liquidating Trust Agreement. More specifically, the

Liquidating Trustee may retain counsel in any matter related to its administration, including counsel that has acted as counsel for the Debtors, the Committee, or any of the individual members of the Committee in the Chapter 11 Cases  Prior to the Effective Date, the Committee shall approve a budget for the six (6) month period beginning on the Effective Date, on a professional-by-professional basis, for professional fees for services to be rendered to the Liquidating Trust, which budget may be altered from time to time by the Plan Advisory Committee in accordance with the Liquidating Trust Agreement provided that any fees and expenses of professionals retained by the Liquidating Trust that have been incurred prior to the date of the modification of the budget shall constitute budgeted amounts. Except with respect to services rendered and expenses incurred in connection with Fee Applications pending on the Effective Date or filed after the Effective Date, the Professionals retained by the Debtors or the Committee shall only be entitled to compensation for services performed and expenses incurred after the Effective Date to the extent, if any, of the amount budgeted for each respective Professional. Following the Effective Date, the Liquidating Trustee may pay, without application to the Court or any other court of competent jurisdiction, such professionals retained by the Liquidating Trust in accordance with agreements that the Liquidating Trustee determines to be reasonable. The Plan Advisory Committee shall approve in advance the Liquidating Trustee's retention of professionals and their compensation arrangements.

43.    Plan Advisory Committee Professionals. The Plan Advisory Committee shall have the right to retain counsel of its choice in the event of a dispute or conflict with the Liquidating Trustee or for other purposes set forth in the Liquidating Trust Agreement and the reasonable fees and expenses of such counsel shall be paid by the Liquidating Trust.

44.     Transfer of Access Lending Stock. On the Effective Date, pursuant to Article 8.E of the Plan, TRS Holdings shall distribute the stock of Access Lending to the Liquidating Trust, which shall become the sole shareholder of Reorganized Access Lending.

45.     The Plan Administrator. The Liquidating Trustee shall act as Plan Administrator with respect to Reorganized Access Lending. From and after the Effective Date, Mr. Jacobs is appointed to serve as Plan Administrator in accordance with the terms of the Plan and the terms of that certain Plan Administrator Agreement, a copy of which was attached to the Notice of Filing of Plan Administrator Agreement [Docket No. 6413], and which is hereby approved. The initial Plan Administrator, and each successor Plan Administrator, shall serve until the earlier of (i) the dissolution of Reorganized Access Lending or (ii) such Plan Administrator's resignation, death, incapacity, removal or termination. Upon the occurrence of the Effective Date, the articles of incorporation of Access Lending shall be amended to provide that the Plan Administrator shall be the chief executive officer and sole director of Reorganized Access Lending. In such capacity, the Plan Administrator shall have all necessary and appropriate power to act for, on behalf of and in the name of Reorganized Access Lending, with the same power and effect as if each of his or her actions in furtherance of his or her duties as a responsible person and as a board-appointed officer and shareholder-appointed director of Reorganized Access Lending were explicitly authorized by the appropriate board of directors or shareholders. In its capacity as Plan Administrator, the Liquidating Trustee shall take such actions as are in the best interests of Reorganized Access Lending.

46      Payment of Allowed A/P/S Claims Against Access Lending. Subject to Article 10.F.4 of the Plan, the Plan Administrator shall pay all Allowed A/P/S Claims against

Access Lending as soon as practicable after the later of (a) the Effective Date and (b) the date upon which any such Claim becomes an Allowed Claim.

47.    Reimbursement of Debtors and Liquidating Trust. Subject to Article 10.F.4 of the Plan, on the Effective Date or as soon as practicable thereafter and following the establishment of the Access Lending Administrative Fund and the Access Lending A/P/S Reserve, the Plan Administrator shall pay from the Assets of Reorganized Access Lending to the Liquidating Trust (i) the amount of all Allowed A/P/S Claims allowed against Access Lending and paid by the Debtors other than Access Lending on or before the Effective Date or by the Liquidating Trustee after the Effective Date; (ii) the amount of administering the Estate of Access Lending, as determined by the Liquidating Trustee, incurred in the ordinary course prior to the Effective Date and paid by the Debtors other than Access Lending on or before the Effective Date in the ordinary course; and (iii) the Joint Administrative Expense Share of Access Lending paid by the Debtors other than Access Lending on or before the Effective Date or by the Liquidating Trustee after the Effective Date.

48.    Resolution of Claims and Prosecution of Access Lending Causes of Action. The Plan Administrator shall resolve all Disputed Claims against Access Lending as soon as practicable following the Effective Date; provided, however, that all Creditors of Access Lending shall have the right to object to any Claims against Access Lending other than the Goldman AL3 Claim and the NCMC AL3 Claim and, provided, further, that prior to entering into any settlement agreement providing for the allowance of a Claim against Access Lending, the Plan Administrator shall either (i) provide notice of the proposed settlement terms to Goldman, and Goldman shall have fifteen (15) days to object to the subject Claim, with Goldman's failure to object to such Claim within such time period deemed Goldman's consent

to the proposed settlement or (ii) obtain Court approval of the proposed settlement agreement on

no less than 20 days notice to the Creditors of Access Lending and subject to the rights and

standing of Creditors of Access Lending to object to the allowance of such Claim, including

based on all grounds and defenses available to Access Lending. The Plan Administrator shall

have the exclusive right to prosecute all Access Lending Causes of Action.

49.    Dissolution of Reorganized Access Lending. After all distributions have

been made to Holders of Allowed Claims against Access Lending, the Plan Administrator shall

file a certificate of dissolution in the applicable state of incorporation for Reorganized Access

Lending, and Reorganized Access Lending shall dissolve and cease to exist. Any remaining

Assets of Reorganized Access Lending shall be distributed to the Liquidating Trust as sole

shareholder in a liquidating distribution, and shall become Liquidating Trust Assets that may be

distributed pursuant to the terms of the Plan.

50.    Preservation of All Causes of Action. Except as otherwise provided in the

Plan or in any contract, instrument, release or agreement entered into in connection with the

Plan, in accordance with the provisions of the Bankruptcy Code, including but not limited to,

section 1123(b) of the Bankruptcy Code, the Liquidating Trustee (including, with respect to

Reorganized Access Lending, in its capacity as Plan Administrator) shall be vested with, retain,

and may exclusively enforce and prosecute any claims or Causes of Action that the Debtors or

the Estates may have against any Person or entity. The Liquidating Trustee may pursue such

retained claims (other than those of Access Lending) or Causes of Action (other than Access

Lending Causes of Action) in accordance with the best interests of the creditors of the Debtors

(other than Access Lending), the Estates (other than the Estate of Access Lending), or the

Liquidating Trust in any and all appropriate jurisdictions as the Liquidating Trustee shall deem

advisable. The Plan Administrator may pursue such retained claims of Access Lending or Access Lending Causes of Action in accordance with the best interests of the creditors of Access Lending, the Estate of Access Lending, or Reorganized Access Lending in any and all appropriate jurisdictions as the Plan Administrator shall deem advisable.

51.     Successors. The Liquidating Trust shall be the successor to the Debtors (other than Access Lending) and their Estates for the purposes of sections 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all pending Causes of Action and other litigation-related matters. The Liquidating Trust shall succeed to the attorney-client privilege of the Debtors (other than Access Lending) and their Estates with respect to all Causes of Action (other than Access Lending Causes of Action) and other litigation-related matters, and the Liquidating Trustee may waive the attorney-client privilege with respect to any Cause of Action or other litigation-related matter, or portion thereof, in the Liquidating Trustee's discretion. Reorganized Access Lending shall be the successor to Access Lending and its Estate for the purposes of sections 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all pending Access Lending Causes of Action and other litigation-related matters. Reorganized Access Lending shall succeed to the attorney-client privilege of Access Lending and its Estate with respect to all Access Lending Causes of Action and other litigation-related matters, and the Liquidating Trustee, it its capacity as Plan Administrator, may waive the attorney-client privilege with respect to any Access Lending Causes of Action or other litigation-related matter, or portion thereof, in the Liquidating Trustee's discretion.

52.     Cancellation of Instruments and Agreements. As of the Effective Date, except as with respect to the stock of Access Lending, all notes, agreements and securities evidencing Claims and Interests and the rights thereunder of the holders thereof shall, with

36

respect to the Debtors, be canceled and deemed null and void and of no further force and effect,
and the holders thereof shall have no rights against the Debtors, the Estates, or the Liquidating
Trust, and such instruments shall evidence no such rights, except the right to receive the
distributions provided for in the Plan. Additionally, the Capital Trust Indentures, and all related
notes and documents, including without limitation, the two series of Junior Subordinated Notes
due 2036, the Amended and Restated Trust Agreement, dated as of September 13, 2006, and the
Amended and Restated Trust Agreement, dated as of November 16, 2006, and the two series of
trust preferred securities and trust common securities, respectively, shall be deemed
automatically canceled and discharged on the Effective Date, provided, however, that the
Capital Trust Indentures, and related notes and documents shall continue in effect solely for the
purposes of (i) allowing the Holders of Capital Trust Claims to receive their distributions, if any,
hereunder, including the right to litigate and/or settle any Claim asserted by a purported Holder
of a Senior Class HC3b Claim under Article 4.C.3 of the Plan, (ii) allowing the Indenture
Trustee to make distributions on account of the Capital Trust Claims, (iii) permitting the
Indenture Trustee to asserts its charging lien against such distributions for payment of the
Indenture Trustee Expenses, and (iv) authorizing, but not requiring, the Indenture Trustee to
litigate and/or settle any Claim asserted by a purported Holder of a Senior Class HC3b Claim
under Article 4.C.3 of the Plan. The Capital Trust Indentures and related notes and documents
shall terminate completely upon completion of all such distributions. The Liquidating Trust
shall not be responsible for any of the fees, expenses or costs incurred in connection with the
continuation or termination of the Capital Trust Indentures, except as set forth in Article 4.C.3
of the Plan.

53.    Professional Fee Claims. The Liquidating Trustee shall pay Professionals who are entitled to reimbursement or allowance of fees and expenses from the Estates pursuant to sections 503(b)(2) - (b)(6) of the Bankruptcy Code, in Cash, in the amount awarded to such Professionals by Final Order of the Court, as soon as practicable after the later of the Effective Date and the date upon which any order awarding fees and expenses becomes a Final Order, in accordance with the terms of any order entered by the Court governing the payment of fees and expenses during the course of the Chapter 11 Cases, and after application of any retainer received by such Professionals. The provisions of the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 389] shall continue to be applicable for all fees and expenses incurred prior to the Effective Date.

54.    Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be filed with the Court and served on counsel for the Debtors and the Liquidating Trust at the addresses listed in Article 15 of the Plan and on the Fee Auditor and the U.S. Trustee so that it is received no later than forty-five (45) days after the Effective Date, or such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtors, their Estates, the Liquidating Trust, Reorganized Access Lending, and their successors, their assigns, or their Assets. Allowed Professional Fee Claims must be paid in full or reserved for in Cash to pay Professional Fee Claims pending allowance by the Court prior to any payment to Holders of Allowed Unsecured Claims.

55.    Non-Professional Fee Administrative Claims. Each Holder of an Administrative Claim (other than Professional Fee Claims) must file an Administrative Claim

Request requesting payment of such Administrative Claim with the Court by no later than thirty (30) days after the Effective Date; provided, however, that any such Administrative Claim Request need not be filed with a hearing date. Nothing herein or in the Plan extends a Bar Date established in the Bar Date Orders. The Liquidating Trustee shall pay each Holder of an Allowed Administrative Claim (excluding Professional Fee Claims) the full amount of such Allowed Administrative Claim, without interest, in Cash, as soon as practicable after the Effective Date or within thirty (30) days after such Administrative Claim becomes an Allowed Claim. Notwithstanding anything herein to the contrary, (i) a Holder of an Allowed Administrative Claim (excluding Holders of Professional Fee Claims) may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Liquidating Trustee and (ii) the Debtors (if prior to or on the Effective Date) and the Liquidating Trustee (if after the Effective Date) may pay in the ordinary course of business any expenses of administering the Debtors' estates incurred in the ordinary course of business.

      56    Senior Claim Procedure. The procedure by which a Holder of a Class HC3b Claim may assert that it holds a Senior Class HC3b Claim is governed solely by the terms of the Plan, including but not limited to Article 4.C.3 of the Plan. In order for any Holder of a Class HC3b Claim to assert that it holds a Senior Class HC3b Claim and, therefore, is entitled to the benefits of subordination as set forth in the Capital Trust Indentures, such Holder must file with the Court and serve on the Debtors, the Holders of the Capital Trust Claims, the Liquidating Trustee, and the Indenture Trustee a Subordination Statement no later than thirty (30) days after the Effective Date. If any Holder of a Class HC3b Claim files a Subordination Statement, any distributions that would otherwise be made on account of Allowed Capital Trust Claims in accordance with Article 9 of the Plan shall be turned over to a reserve to be held by

the Liquidating Trustee (the "Senior/Sub Reserve") in a separate interest bearing account and to be distributed in accordance with Article 4.C.3 of the Plan

57. <u>Payment of Indenture Trustee Fees</u>. Prior to turning over any distributions to the Senior/Sub Reserve, the Liquidating Trustee shall first pay to the Indenture Trustee out of such distributions (i) the balance of any Indenture Trustee Expenses previously incurred, plus (ii) the amount of $100,000 to be held by the Indenture Trustee in reserve (the "Future Expense Reserve") for payment of future Indenture Trustee Expenses, all of which Indenture Trustee Expenses are subject to the Indenture Trustee's charging lien The Future Expense Reserve shall only be funded from any distributions that would otherwise be made on account of Allowed Capital Trust Claims and not from any other Assets. In the event the amount of future Indenture Trustee Expenses exceeds $100,000 and the Future Expense Reserve is depleted, the Liquidating Trustee shall pay out of the Senior/Sub Reserve to the Indenture Trustee any such additional Indenture Trustee Expenses that may be incurred from time to time, upon receipt of one or more invoices from the Indenture Trustee. Except as previously agreed to by the Committee, in no event shall the Indenture Trustee Expenses be paid from any Assets except from the Senior/Sub Reserve, the Future Expense Reserve and from any distributions that would otherwise be made on account of Allowed Capital Trust Claims

58. <u>Reservation of Rights to Object to Claims</u>. Unless a Claim is expressly described as an Allowed Claim pursuant to or under the Plan or this Order, or otherwise becomes an Allowed Claim prior to the Effective Date, upon the Effective Date, the Liquidating Trustee shall be deemed to have a reservation of any and all objections of the Estates to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including without limitation any and all objections to the validity

or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, 510(b) Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. Within the time provided herein or by further order of the Court for objecting to Claims, the Debtors' or the Liquidating Trustee's failure to object to any Claim in the Chapter 11 Cases shall be without prejudice to the Liquidating Trustee's rights to contest or otherwise defend against such Claim in the Court when and if such Claim is sought to be enforced by the Holder of such Claim.

59.    Objections to Claims. Prior to the Effective Date, the Debtors shall be responsible for pursuing any objection to the allowance of any Claim. From and after the Effective Date, the Liquidating Trustee will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to all Claims (including those Claims that are subject to objection by the Debtors as of the Effective Date), subject to any approvals of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement; provided, however, that Creditors of Access Lending will have standing to object to Claims against Access Lending other than those Claims against Access Lending allowed by this Order or other order of the Court. Unless otherwise provided in the Plan or by order of the Court, any objections to Claims shall be filed and served not later than 180 days after the later of (i) the Effective Date or (ii) the date such Claim is filed, provided that the Liquidating Trustee may request, based upon a reasonable exercise of the Liquidating Trustee's business judgment, (and the Court may grant) an extension of such deadline by filing a motion with the Court. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

60.    <u>Service of Objections</u>. An objection to a Claim shall be deemed properly served on the Holder of such Claim if the Liquidating Trustee effects service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared or requests notice on the behalf of such Holder in the Chapter 11 Cases.

61.    <u>Determination of Claims</u>. Except as otherwise agreed by the Debtors or the Liquidating Trustee (including in its capacity as Plan Administrator), any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an order of the Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtors or the Liquidating Trustee on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with the Plan. Other than the allowance of the Goldman HC3b Claim, the Goldman AL3 Claim, and the NCMC AL3 Claim, nothing contained in Article 11 of the

42

Plan shall constitute or be deemed a waiver of any claim, right, or Causes of Action that the Debtors, the Liquidating Trust, or Reorganized Access Lending may have against any Person in connection with or arising out of any Claim or Claims, including without limitation any rights under 28 U.S.C. § 157

      62.    No Distributions Pending Allowance. No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Liquidating Trustee may make, in his or her discretion, a distribution pursuant to the Plan on account of the portion of such Claim that becomes an Allowed Claim.

      63.    Claim Estimation. In order to effectuate distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Cases, the Debtors (if on or prior to the Effective Date) and the Liquidating Trust (if after the Effective Date), after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an order of the Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of property that must be withheld from distribution on account of Disputed Claims; provided, however, that the Court shall determine (i) whether such Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any

      64.    Allowance of Claims Subject to Section 502 of the Bankruptcy Code. Allowance of Claims shall be in all respects subject to the provisions of section 502 of the Bankruptcy Code, including without limitation subsections (b), (d), (e), (g), (h), and (i) thereof.

65.    Goldman HC3b Claim. The Goldman HC3b Claim shall be an Allowed Class HC3b Claim in the amount of $5,000,000.

66.    Goldman AL3 Claim. The Goldman AL3 Claim shall be an Allowed Class AL3 Claim in the amount of $9,506,754.00.

67.    NCMC AL3 Claim. Subject to Article 4.L of the Plan, the NCMC AL3 Claim shall be an Allowed Class AL3 Claim in the amount of $3,973,199.86.

68    Rejection of Remaining Executory Contracts and Unexpired Leases. On the Confirmation Date, except for (i) any Executory Contract that was previously assumed or rejected by an order of the Court pursuant to section 365 of the Bankruptcy Code and (ii) any Executory Contract identified on the Assumption Schedule, each Executory Contract entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective (i) as of the Confirmation Date or (ii) if the Executory Contract has been removed from the Assumption Schedule after the Confirmation Date, as of the date of such removal. This Order shall constitute an order of the Court approving such rejection pursuant to sections 365 and 1123 of the Bankruptcy Code.

69.    Assumption of Certain Contracts and Leases and Cure Payments. On the Effective Date, all Executory Contracts listed on the Assumption Schedule shall be assumed. Any objections to the proposed cure amounts listed on the Assumption Schedule are hereby overruled, and the cure amounts set forth in the Assumption Schedule for each Executory Contract shall be binding on all parties pursuant to section 365 of the Bankruptcy Code.

70.    Rejection Damages Bar Date. Except to the extent another Bar Date applies pursuant to an order of the Court, any Proofs of Claim with respect to a Claim arising

from the rejection of Executory Contracts under the Plan (including Claims under section 365(d)(3) of the Bankruptcy Code) must be filed with XRoads Case Management Services, P.O. Box 8901, Marina Del Rey, California 90295 (Telephone (888) 784-9571), and a copy served on counsel for the Plan Proponents and the Liquidating Trustee, within thirty (30) days after the Effective Date, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee, their successors, their assigns, or their Assets. Any Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class HC3b (Other Unsecured Claims against NCFC), Class HC7 (Other Unsecured Claims against TRS Holdings), Class HC10b (Other Unsecured Claims against NC Credit), Class HC13 (Other Unsecured Claims against NC Residual IV), Class OP3c (Other Unsecured Claims against NCMC), Class OP6c (Other Unsecured Claims against NC Capital), Class OP9b (Other Unsecured Claims against Home123), Class OP12 (Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral), or Class AL3 (Other Unsecured Claims against Access Lending), depending on which Debtor the Claim is asserted against. Nothing in the Plan or this Order extends or modifies any previously applicable Bar Date.

71     Insurance Policies. To the extent that any or all of the insurance policies set forth on Exhibit A to the Plan are considered to be Executory Contracts, then notwithstanding anything contained in the Plan or this Order to the contrary, the Plan constitutes a motion to assume the insurance policies set forth on Exhibit A to the Plan and to assign them to the Liquidating Trust. Subject to the occurrence of the Effective Date, the entry of this Order constitutes approval of such assumption and assignment pursuant to section 365(a) of the

Bankruptcy Code and a finding by the Court that each such assumption is in the best interest of the Debtors, the Estates, and all parties in interest in the Chapter 11 Cases. Unless otherwise determined by the Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy set forth on Exhibit A to the Plan. To the extent that the Court determines otherwise with respect to any insurance policy, the Plan Proponents' right to seek rejection of such insurance policy or other available relief is hereby reserved. The Plan shall not affect contracts that have been assumed and assigned by order of the Court prior to the Confirmation Date. The certain insurance policies (including any insurance policies that are not Executory Contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date, and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on Exhibit A to the Plan and all rights thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries or which may be property of the Debtors' Estates (including the rights, if any, to make, amend, prosecute, and benefit from claims) are retained and shall be transferred to the Liquidating Trust pursuant to the Plan. Nothing herein or in the Plan shall be deemed to constitute a determination that any of the proceeds of the insurance policies are or are not property of any Debtor's Estate

7.2    General Authority. The Debtors, if on or prior to the Effective Date, and the Liquidating Trust or Reorganized Access Lending, if after the Effective Date, shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in this Plan. Additionally, with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the applicable Debtor, if on or

prior to the Effective Date, or the Liquidating Trust, if after the Effective Date, shall execute, upon written request, and at the expense of the requesting party, any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Debtor or Liquidating Trustee, as applicable, necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of such mortgage loan from such Debtor (including any trustee or servicer on behalf of the purchaser) to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the Liquidating Trust, any required assignments of mortgage or instruments of satisfaction, discharge or cancellation of mortgages, mortgage notes or other instruments related to such mortgage loan; provided, however, that the party making the requests presents evidence reasonably satisfactory to the Debtors or the Liquidating Trustee, as the case may be, of the validity of the transfer being effectuated and that the loan being transferred was purchased from the applicable Debtor; provided, further, that neither the Debtors nor the Liquidating Trust, as applicable, shall be liable for the actions of the requesting party under any such powers of attorney; and provided, further, that the Liquidating Trustee, or the Debtors may seek modification of this requirement on noticed motion and other parties may oppose such motion. Powers of attorney executed by the Debtors prior to their dissolution shall be binding on the Liquidating Trustee, the Liquidating Trust, and the Estates and may be recorded by the holder of such power of attorney with full force and effect notwithstanding the dissolution of the Debtors.

73.    Tax Exemption. Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of a security under the Plan, or the making or delivery of an instrument of transfer under the Plan, including, without limitation, any transfers to or by the

Debtors, if on the Effective Date, and the Liquidating Trustee, if after the Effective Date, of the Debtors' property in implementation of or as contemplated by the Plan (including, without limitation, any subsequent transfers of property by the Liquidating Trust) shall not be taxed under any state or local law imposing a stamp tax, or similar tax. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded are hereby ordered and directed to accept such instrument, without requiring the payment of any stamp tax or similar tax.

74.  Non-Severability. Except as specifically provided in the Plan, the terms of the Plan constitute interrelated compromises and are not severable.

75.  Findings of Fact and Conclusions of Law. The determinations, finding, judgments, decrees and orders set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth herein, to the extent it is or may be so deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth herein, to the extent it is or may be so deemed a finding of fact, shall also constitute a finding of fact.

76.  Jurisdiction of the Court. Until the Effective Date, this Court shall retain jurisdiction over the Debtors, their Assets, and the Estates. Thereafter, jurisdiction of the Court shall continue to the greatest extent legally permissible, including without limitation the subject matters set forth in Article 15.A of the Plan.

77.  Effectiveness of Order. Notwithstanding Bankruptcy Rules 3020(e) and 6004(g) or any other provision of the Bankruptcy Code or Bankruptcy Rules, this Order shall be

effective immediately upon its entry, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

78.     Notice of Confirmation Order and Effective Date. The Plan Proponents shall serve notice of the entry of this Order to those parties on whom the Confirmation Hearing notice was served. Such service constitutes good and sufficient notice pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c) On the Effective Date, or as soon thereafter as is reasonably practicable, the Plan Proponents shall file with the Court a "Notice of Effective Date" in a form reasonably acceptable to the Plan Proponents in their sole discretion, which notice shall constitute appropriate and adequate notice that the Plan has become effective; provided, however, that the Plan Proponents shall have no obligation to notify any Person of such fact other than the Office of the United States Trustee, the Liquidating Trustee, the Plan Administrator, the Plan Advisory Committee, parties with potential Administrative Claims, and counterparties to executory contracts and unexpired leases rejected pursuant to entry of this Order. A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid (or at the Liquidating Trustee's or Plan Administrator's option, by courier or facsimile) to those Persons who have filed with the Court requests for notices pursuant to Bankruptcy Rule 2002.

79.     Modification of the Plan. Subject to the restrictions on Plan modifications set forth in section 1127 of the Bankruptcy Code, the Plan Proponents reserve the right to alter, amend or modify the Plan before its substantial consummation.

80.     Substantial Consummation. Substantial consummation of the Plan shall be deemed to occur on the Effective Date. Further, the provisions of Federal Rule of Civil

Procedure 62(a) and Bankruptcy Rules 3020(e) and 7062 shall not apply to this Order and the Plan Proponents are authorized to consummate the Plan immediately upon entry of this Order.

81. Revocation, Withdrawal, or Non-Consummation of Plan. If after this Order is entered, each of the conditions to effectiveness has not been satisfied or duly waived on or by ninety (90) days after the Confirmation Date, then upon motion by the Plan Proponents, this Order may be vacated by the Court; provided however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to effectiveness is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. As used in the preceding sentence, a condition to effectiveness may only be waived by a writing executed by the Plan Proponents. If this Order is vacated pursuant to Article 14.B of the Plan, the Plan shall be null and void in all respects, and nothing contained in the Plan, the Disclosure Statement, nor any pleadings filed in connection with the approval thereof shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors, (iii) prejudice in any manner the rights of the Plan Proponents in the Chapter 11 Cases, or (iv) constitute an admission of any fact or legal position or a waiver of any legal rights held by any party prior to the Confirmation Date. Article 14.B of the Plan is not intended to establish the applicable legal standard with respect to vacating this Order, and the rights of all parties in interest to object to any motion filed pursuant to Article 14 B of the Plan, including on the basis that the applicable legal standard has not been satisfied, are fully reserved.

82. References to Plan Provisions. The failure to specifically include or reference any particular provision of the Plan in this Order shall not diminish or impair the

effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

83.    <u>Integration of Confirmation Order Provisions</u>    The provisions of this Order are integrated with each other and are nonseverable and mutually dependent.

84.    <u>Reversal</u>.  If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Plan Proponents' receipt of written notice of any such order.  Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto.

Dated: July 16, 2008
       Wilmington, Delaware

THE HON. KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE