**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

NEW CENTURY MORTGAGE CORP. :

Plaintiff, : Civil Action No. 07-640-GMS/MPT

v. :

GREAT NORTHERN INSURANCE CO., and FEDERAL INSURANCE CO. :

Defendants. :

## REPORT AND RECOMMENDATION

New Century Mortgage Corporation ("plaintiff" or "NCMC") sued Great Northern Insurance Company ("Great Northern") and Federal Insurance Company ("Federal") (collectively, "defendants") for failure to indemnify. Both parties filed cross-motions for partial summary judgment on the burden of proof. This report and recommendation addresses those motions.

**Statement of Facts**

Plaintiff purchased a commercial general liability insurance policy from Great Northern and an excess coverage policy from Federal. The Great Northern policy had primary policy number 3539-77-36 and provided a $1 million liability limit for each occurrence or offense. Federal's commercial umbrella policy, number 7977-03-85, provided a limit of $20 million per occurrence or offense. Both policies had an effective period of February 3, 2002 through February 3, 2003 and provide coverage for

"property damage" and "advertising injury."[1]

In June 2001, plaintiff contracted with Fax.com, a fax broadcast service provider, to broadcast advertisements for plaintiff's loan services via fax. At least 200,000 faxes were transmitted under this contract. In April 2002, Paul Bernstein ("Bernstein"), an Illinois resident, filed a class action complaint against plaintiff in Illinois state court ("the *Bernstein* action") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA").

On September 30, 2003, Bernstein filed a second amended complaint, re-alleging violations of the TCPA and ICFA, and also asserting claims under Illinois common law for conversion and property damage. The complaint alleged that the class lost use of paper, toner and ink when they received the allegedly unsolicited faxes from NCMC, and that this loss constituted damages under the TCPA. The Illinois state court dismissed the ICFA claim with leave to amend and dismissed the common law property damage claim with prejudice, stating that property damage is an element of intentional or negligent tortious conduct, not a freestanding tort. The court, however, denied plaintiff's motion to dismiss the TCPA claim.

---

[1] The policies define "advertising injury" as follows:
**Advertising injury** means injury . . . arising solely out of one or more of the following offenses committed in the course of advertising your goods, products or services:

· oral or written publication of material that slanders or libels a person or organization;

· oral or written publication of advertising material that violates a person's right of privacy; or

· infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.

Plaintiff notified defendants of the class action on August 15, 2003. On January 7, 2004, defendants agreed to defend plaintiff against the suit subject to a reservation of rights. Defendants also advised plaintiff that they believed the allegations in the class action fell outside the insurance agreement and coverage definitions. However, defendants admitted that the *Bernstein* action potentially fell within the policies' "advertising injury" or "personal injury" invasion of privacy provision. Defendants maintained a reservation of rights because they contended that the claims did not satisfy the policies' definitions of "advertising injury" or "property damage." In addition, defendants asserted that the policies' "willful violation" and "expected or intended injury" exclusions precluded coverage.

In May 2004, plaintiff entered into settlement talks with Bernstein, as the class representative, in the *Bernstein* action. From June 2004 to August 2004, numerous correspondence regarding the settlement was exchanged between plaintiff and defendants. Plaintiff informed defendants that Bernstein offered to settle the case for $6 million and that a mediation would take place. According to plaintiff, its potential liability in the *Bernstein* action was in excess of $300 million. Plaintiff asked defendants to participate in the settlement discussions, but defendants declined to do so. Defendants informed plaintiff that they would continue to defend plaintiff and "would not stand in the way" of a $6 million settlement, but denied any duty to indemnify and refused to participate in the scheduled mediation session.

Bernstein filed a third amended complaint on August 16, 2004, again alleging TCPA and ICFA violations, and asserting Illinois common law claims for conversion and trespass. The complaint alleged that the class was damaged by the loss of the toner

and paper when they received NCMC's unsolicited fax advertisement, in violation of the TCPA. On December 8, 2004, plaintiff entered into a $1.95 million settlement in the *Bernstein* action ("the *Bernstein* settlement"), without defendants' involvement. The settlement covered all persons in the United States or its territories who received an unsolicited fax advertisement from NCMC between April 4, 1997 and December 8, 2004. After all participating settlement class members were paid (approximately 65 individuals), the remaining settlement amount, $1.085 million, was donated to eighteen different charities and non-profit organizations as designated in the settlement agreement.

Defendants refused to contribute any amount toward the settlement. Plaintiff subsequently filed suit against defendants in Minnesota state court. Upon defendants' motion, the suit was dismissed on *forum non conveniens* grounds. Plaintiff re-filed its complaint in Illinois state court and defendants removed to federal court. On July 25, 2006, the Illinois district court issued an opinion on the parties' cross-motions for summary judgment ("Judge Coar opinion"). The court, finding summary judgment inappropriate, denied both motions. The case was stayed on September 13, 2006 pending a decision from the Illinois Supreme Court on a similar issue. Upon notification that plaintiff had filed Chapter 11 bankruptcy in Delaware, the Illinois district court transferred the matter to the U.S. District Court for the District of Delaware. The liquidating trust now seeks recovery on behalf of New Century Mortgage Company. Both parties agree that Illinois law applies and the July 25, 2006 opinion is the law of the case. Before this court are the parties' cross-motions for partial summary judgement on the burden of proof for breach of the duty to indemnify.

**A. Cause of Action for a Duty to Indemnify**

Prior to discussing the burden of proof, the first issue addressed by defendants is whether plaintiff's complaint alleges a cause of action for breach of the duty to indemnify. Defendants argue that plaintiff has only alleged a breach of the duty to settle in its complaint, and since plaintiff cannot support its cause of action, "there are no viable claims for relief pending against [defendants]." In response, plaintiff contends that "[it] can prove its claim that [defendants] breached their duty to settle by showing coverage, or in other words, an indemnity obligation" and that "the current complaint alleges that [defendants] had a duty – and still have that duty – to fund the *Bernstein* settlement."

Under the Federal Rules of Civil Procedure, the standard for pleadings is "a short and plain statement of the claim showing that the pleader is entitled to relief."[2] A pleading is sufficient if, when viewed as a whole, it provides the opposing party "fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved."[3]

Plaintiff's complaint alleges two causes of action, neither of which is labeled breach of the duty to indemnify.[4] However, the court must look at "the nature of the issues raised" in the complaint, and not the label.[5] A duty to indemnify exists if "the

---

[2] FED. R. CIV. P. 8(a)(2).

[3] *Strickland v. Jewell*, 562 F. Supp. 2d 661, 670 (M.D.N.C. 2007) (quoting *Labram v. Havel*, 43 F.3d 918 (4th Cir.1995)).

[4] The first cause of action is labeled "Breach of the Duty to Settle" while the second cause is titled "Declaratory Relief re: Duty to Settle." Indemnity, however, is mentioned in paragraphs 22 and 27 which provide that defendants "denied any duty to indemnity."

[5] *Strickland*, 562 F. Supp. 2d at 670.

insured has a judgment against it on any underlying claim and the insured's activity and the resulting loss or damage *actually* come within the policy's coverage."[6] In support of its cause of action against defendants, plaintiff asserts the following:

> 27. On June 22, 2004, coverage counsel for Great Northern and Federal advised defense counsel for NCMC that Great Northern/Federal would continue to defend NCMC but denied any duty to indemnify and refused to participate in a mediation then anticipated to take place on June 23, 2004, even though there had been no adjudication of NCMC's liability.
>
> . . . .
>
> 32. As a result, Great Northern/Federal had a duty to, and breached their duty to, fully fund the settlement of the *Bernstein* Action.
>
> 33. As quoted in pertinent part above, Great Northern/Federal agreed to "pay damages [NCMC] becomes legally obligated to pay by reason of liability imposed by law . . . for" "injury . . . arising solely out of" "written publication of advertising material that violates a person's right of privacy."[7]

Despite the fact that a breach of the duty to settle and a breach of the duty to indemnify are two distinct causes of action,[8] the facts articulated in plaintiff's complaint apprise defendants of the duty to indemnify claim. In his July 25, 2006 opinion, Judge Coar also observed that "the duty to settle is not the dispositive issue in this case."[9]

---

[6] *Stoneridge Dev. Co. v. Essex Ins. Co.*, 888 N.E.2d 633, 643-44 (Ill. App. Ct. 2008).

[7] Alteration in original.

[8] The duty to settle arises only when the insured "has relinquished defense of the suit to the insurer" and the insurer acts in bad faith in responding to a reasonable settlement offer. *Chandler v. Am. Fire and Casualty Co.*, 879 N.E.2d 396, 399-400 (Ill. App. Ct. 2007).

[9] *New Century Mortgage Corp. v. Great N. Ins. Co.*, No. 05-C-2370, 2006 WL 2088198, at *4 (N.D. Ill. 2006).

Instead, he concluded that "the determinative issue is whether the *Bernstein* action was covered by defendants' policies."[10] Although the facts support a duty to indemnify claim, plaintiff should amend its complaint to more accurately reflect its cause of action against defendants. The court will apply the duty to indemnify standard to allocate the burdens of proof.

**B. Burdens of Proof**

Under Illinois law, the burden of proof for a breach of the duty to indemnify falls on the insured to prove coverage.[11] The insured must provide some evidence that the type of loss alleged in the underlying claim is covered under the policy and that the claim comes within the policy period.[12] "Once the insured has demonstrated coverage, the burden then shifts to the insurer to prove that a limitation or exclusion applies."[13]

Defendants maintain that plaintiff has not satisfied its burden of proof, namely, the allocation of covered and uncovered claims. Plaintiff argues that it has established a *prima facie* burden of proof on the duty to indemnify and defendants' division of the burden would force it to prove its own liability. Each of the parties' concerns is addressed below.

**1. Property Damage**

---

[10] *Id.*

[11] *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009); *Reedy Indus., Inc. v. Hartford Ins. Co.*, 715 N.E.2d 728, 731 (Ill. App. Ct. 1999); *see also St. Michael's Orthodox Catholic Church v. Preferred Risk Mutual Ins. Co.*, 496 N.E.2d 1176, 1179 (Ill. App. Ct. 1986) ("The burden rests upon the insured to prove that his loss resulted from a peril insured against.").

[12] *Fed. Ins. Co. v. Binney & Smith, Inc.*, No. 1-08-0843, 2009 WL 1905284, at *9 (Ill. App. Ct. 2009).

[13] *Addison Ins. Co.*, 905 N.E.2d at 752.

Defendants first contend that in order for plaintiff to prove that the *Bernstein* action is covered under the "property damage" language of the policies, plaintiff must prove that the loss arose out of an "occurrence."[14] Since transmission of an unsolicited facsimile is not "accidental,"[15] defendants argue that plaintiff cannot meet this burden, and therefore, the claim is not covered by the "property damage" provisions. Plaintiff does not make a distinction between the types of coverage in the policies, and, instead, argues that the polices "provide coverage for *both* [property damage and advertising injury] at the same time."

Judge Coar concluded that defendants had no duty to defend or indemnify plaintiff for property damage because the "[l]oss of paper and toner is a normal, expected outcome that falls under the policy's exclusion for 'expected or intended injury.'"[16] Since both parties agree that Judge Coar's ruling is the law of the case, plaintiff has not met its burden of proving that the *Bernstein* action falls within the policies' "property damage" coverage.

**2. Advertising Injury**

Defendants argue that plaintiff has also failed to prove that the *Bernstein* settlement is covered under their policies' "advertising injury" provisions. Defendants rely on two federal cases which analyzed similar insurance polies and found that TCPA

---

[14] An "occurrence" is defined by the policies as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

[15] *See Am. States Ins. Co. v. Capital Assocs. of Jackson County*, 392 F.3d 939 (7th Cir. 2004); *St. Paul Fire & Marine Ins. Co. v. Brunswick Corp.*, 405 F. Supp. 2d 890 (N.D. Ill. 2005).

[16] *New Century Mortgage Corp.*, 2006 WL 2088198, at * 7.

claims do not fall within an insurance policy's "advertising injury" coverage.[17] Under those federal courts' interpretation, merely *receiving* an unsolicited fax does not violate an individual's right of privacy.[18] In addition, TCPA claims brought by businesses would not be covered because businesses lack any right to privacy.[19] Plaintiff contends that the Illinois Supreme Court's ruling in *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.* controls this matter.[20] There the court declined to follow federal case law, finding instead that TCPA claims "potentially fall" within a policy's "advertising injury" provision.[21]

The court in *Valley Forge*, citing federal cases, observed that "the TCPA can fairly be described as protecting a privacy interest in seclusion."[22] Although the underlying TCPA claim did not allege a right of privacy violation, the court found that "a violation of privacy in the sense of a violation of seclusion is implicit in a TCPA claim."[23] Therefore, the ultimate issue was whether the insurance policies intended to cover that type of privacy injury.[24] The court found that it did.[25] The court throughly examined the insurance policy, using the policy terms' "plain, ordinary, and popular meaning."[26] It

---

[17] *See Am. States Ins. Co.*, 392 F.3d at 939; *Erie Ins. Exch. v. Watts*, No. 1:05-CV-867-JDT-TAB, 2006 WL 1547109 (S.D. Ind. 2006).

[18] *Am. States Ins. Co.*, 392 F.3d at 941-42.

[19] *Id.* at 942.

[20] *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307 (Ill. 2006).

[21] The Illinois Supreme Court stated that the federal courts' interpretation was "inconsistent with this court's approach to interpreting insurance policy provisions." *Id.* at 323.

[22] *Id.* at 316.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

found that the federal courts' interpretation "that 'publication' matters in a 'secrecy situation,' but not in a 'seclusion situation''" was inconsistent with its approach.[27]

"[A] federal court sitting in a diversity action must apply the substantive law of the [governing] state . . . ."[28] To the extent that the federal courts' interpretation differs from that of the Illinois Supreme Court, the Illinois Supreme Court's ruling in *Valley Forge* controls. In the present matter, the only term in dispute is "right of privacy." According to the analysis in *Valley Forge*, "'right of privacy' connotes both an interest in seclusion *and* an interest in the secrecy of personal information."[29] Since an unsolicited fax advertisement violates an individual's seclusion, TCPA claims fall within the "advertising injury" provision. Applying the present facts to the standard articulated in *Valley Forge*, plaintiff has satisfied its burden of proof that the *Bernstein* settlement comes within the "advertising injury" coverage. It is undisputed that the TCPA claim brought against plaintiff arose from an unsolicited fax advertisement. Although the complaint in the *Bernstein* action did not raise the issue of privacy, a violation of privacy is implicit in a TCPA fax-ad claim. Therefore, the *Bernstein* settlement comes within the "advertising injury" coverage in defendants' policies.

**a. Individual v. Business**

Even if TCPA claims fall within the "advertising injury" provision, defendants argue that plaintiff must provide "the number of faxes that were transmitted during the policy period to residential fax machines as opposed to those transmitted to fax

---

[27] *Id.* at 323.

[28] *Schiavello v. Delmarva Sys. Corp.*, 61 F. Supp. 2d 110, 113 (D. Del. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

[29] *Id.* at 317 (emphasis added).

machines located at businesses." Defendants contend that only then can plaintiff meet its burden of proving that the *Bernstein* settlement is covered by their policies. Plaintiff contends that no such distinction is required because the policies do not specify that the invasion of privacy must occur in a residence. Further, "[n]othing in the 'invasion of privacy' doctrine requires that a person be physically located in the home."

The Illinois Supreme Court noted that one distinguishing fact between *American States* and *Valley Forge* were the plaintiffs in the underlying claims.[30] In *American States*, the TCPA action was filed by a *corporation* who received the unsolicited fax advertisement.[31] In *Valley Forge*, the plaintiff was an *individual* who received an unsolicited fax advertisement at his place of employment, a private investigation business.[32] At least one other court has also concluded that the TCPA protects "privacy interests in places of business."[33] Although defendants' policies specifically state that the "advertising injury" must arise from a violation of a "*person's* right of privacy,"[34] the plain and ordinary meaning of the policies do not preclude coverage if the individual receives the unsolicited advertisement at his place of business. Since plaintiff has established that the TCPA action was filed by an individual, and because there is no evidence to suggest that any of the class members were business entities, plaintiff has met its burden. Therefore, plaintiff does not have to allocate between fax advertisements received on business faxes as opposed to residential faxes.

---

[30] *Valley Forge*, 860 N.E.2d at 320.

[31] *Id.*

[32] *Id.* at 310.

[33] *Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, No. 04-11077, 2005 WL 3292089, at *3 (11th Cir. 2005).

[34] Emphasis added.

**3. Within the Policy Period**

Defendants argue that plaintiff has nonetheless failed to prove that the *Bernstein* settlement comes within the effective policy period, February 3, 2002 to February 3, 2003. Defendants direct the court's attention to provision three of the settlement agreement which defines the settlement class as any person who received an unsolicited fax advertisement from April 4, 1997 to December 8, 2004, the date of the settlement. In response, plaintiff contends that there is no evidence indicating that a fax was received at a time other than February 26, 2002. According to plaintiff, "[defendants'] reliance on a settlement term identifying an arbitrary period for a settlement class, which in and of itself does nothing to establish a date when misconduct or an offense occurred, does not establish that the offense here falls entirely outside the policy period."

Judge Coar came to the conclusion that plaintiff proved that the *Bernstein* action fell within the policy period after finding "no presently admissible evidence in the record that claimants received faxes prior to the policy effective date."[35] Therefore, accepting Judge Coar's findings as law of the case, plaintiff has met its burden of proof that the *Bernstein* action arose within the effective period of the policies. The burden is now on the defendants to prove that the prior acts exclusion under the policies applies.[36]

**4. Allocation of Covered and Uncovered Claims**

Defendants assert that if only a portion of the settlement is covered under the policies, it is plaintiff's burden to allocate between the covered and uncovered claims.

---

[35] *New Century Mortgage Corp.*, 2006 WL 2088198, at *6.
[36] *See* discussion *infra* Part B.6.

Specifically, defendants request that allocation of the settlement be made as to "advertising injury" or "property damage," fax advertisements sent within or outside the effective period, and fax advertisements sent to business or residential faxes.[37] Plaintiff argues that it does not have the burden to allocate the claims because no where in defendants' policies is the word "allocation" even mentioned.

With respect to an allocation between coverage types, the Appellate Court of Illinois recently concluded that an insured is "not required to allocate [] liability within [a] settlement."[38] Relying on the reasoning formulated in *U.S. Gypsum Co. v. Admiral Insurance Co.* and *Commonwealth Edison Co. v. National Union Fire Insurance Co.*,[39] the court concluded that it was impossible to determine how much of the settlement was attributable to each claim without having a "mini-trial" and requiring the insured to "prove its own liability."[40] The court's finding in *Binney & Smith* can easily be applied to the facts in the instant matter. The underlying complaint against plaintiff alleged "property damage" and "advertising injury" through an unsolicited fax advertisement in violation of the TCPA. Neither the settlement agreement nor the complaint in that matter distinguished between the two claims. As long as plaintiff proves that it settled in reasonable anticipation of liability for a covered loss, defendants have a duty to

---

[37] This court has already determined that plaintiff does not have a duty to allocate between fax advertisements sent to business or residential faxes. *See* discussion *infra* Part B.2.a.

[38] *Fed. Ins. Co. v. Binney & Smith, Inc.*, No. 1-08-0843, 2009 WL 1905284, at *9 (Ill. App. Ct. 2009).

[39] *U.S. Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226 (Ill. App. Ct. 1994); *Commonwealth Edison Co. v. Nat'l Union Fire Insurance Co.*, 752 N.E.2d 555 (Ill. App. Ct. 2001).

[40] *Binney & Smith*, 2009 WL 1905284, at *8.

indemnify the *Bernstein* settlement without allocation as to the covered "advertising injury" and uncovered "property damage."

The *Binney & Smith* court also addressed the burden of proof for coverage within the policy period. An insured's burden to prove that a loss "falls within the terms of the policy is determined not only by analyzing whether the type of loss is covered by the policy, but also by determining whether the loss falls within the effective dates of coverage."[41] Since some of the claims fell outside the policy period, the court required that the insured define the portion of the settlement that occurred within the policies' effective dates or apportion the settlement "using a pro rata time-on-the-risk formula."[42] Judge Coar already determined that plaintiff had offered sufficient proof that the *Bernstein* action fell within the policy period.[43] Therefore, defendants have the burden of presenting evidence to the contrary.

**5. Settled in Reasonable Anticipation of Liability for a Covered Loss**

The next issue is whether plaintiff settled in reasonable anticipation of liability for a covered loss. Defendants argue that plaintiff has the added burden of "proving that both the perception of liability and the amount of the settlement were reasonable." Plaintiff retorts that it must only show that the settlement amount was reasonable given the likelihood of liability based on the facts and circumstances of the claim.

---

[41] *Id.* at *9 (quoting *Fidelity & Casualty Co. of N.Y. v. Mobay Chem. Corp.*, 625 N.E.2d 151 (Ill. App. Ct. 1992)) (internal quotations omitted).

[42] *Id.* at *13.

[43] Plaintiff provided evidence that Bernstein received his fax on February 26, 2002. There was no evidence in the record to contradict this fact or to suggest that the other class members received the fax before or after the policies' effective period. *New Century Mortgage Corp.*, 2006 WL 2088198, at *6.

Plaintiff also argues that defendants have waived their right to challenge the reasonableness of the settlement by purposefully not attending the settlement conference and never objecting to the settlement amount throughout this litigation. Defendants claim they do not contest that "the amount of the settlement was reasonable," but require only that plaintiff prove it reasonably anticipated liability for the covered claims at the time of the settlement.

Plaintiff's waiver argument fails. Although, in a brief footnote, Judge Coar noted that "when an insurer defends under a reservation of rights to contest coverage, . . . the insurer loses the right to consent to a settlement,"[44] the insurer can still contest its duty to indemnify. In the present matter, defendants informed plaintiff that they would continue to defend under a reservation of rights, but denied that they had any duty to indemnify.[45] Therefore, defendants have not waived the right to challenge the settlement.

In *U.S. Gypsum*, the Appellate Court of Illinois articulated that a settlement was reasonable "so long as a potential liability on the facts known to the insured is shown to exist, culminating in an amount reasonable in view of the size of possible recovery and degree of probability of claimant's success against the insured.'"[46] The insured has the

---

[44] *New Century Mortgage Corp.*, 2006 WL 2088198, at *4 n.2 (citing *Commonwealth Edison Co.*, 752 N.E.2d at 555).

[45] *See Stoneridge Dev. Co. v. Essex Ins. Co.*, 888 N.E.2d 633, 644 (Ill. App. Ct. 2008) ("If the insurer adequately informs the insured that it is proceeding under a reservation of rights, and the insured accepts defense counsel provided by the insurer, the insurer has not breached its duty to the insured and is not estopped from asserting policy defenses.").

[46] *U.S. Gypsum Co.,* 643 N.E.2d at 1244 (quoting *Luria Bros. & Co. v. Alliance Assurance Co.*, 780 F.2d 1082 (2d Cir. 1986)).

burden of proving reasonableness through "the pleadings, the pretrial discovery, evidence and testimony presented . . . ."[47] An insured can still satisfy this burden without necessarily proving its own liability. In *Binney & Smith*, for example, the insured consistently argued that the underlying actions were without merit.[48] Nonetheless, the insured offered the affidavit of its in-house counsel who explained the inherent risk of proceeding to trial and the significant liability the company faced.[49]

In the present matter, plaintiff notes that Bernstein's willingness to negotiate for $6 million, and eventually settle for $1.95 million, was reasonable in light of its potential exposure in excess of $300 million. Although plaintiff denies any wrongdoing, it points out that the "TCPA is essentially a strict liability statute" which suggests that it would have been difficult to prevail against the *Bernstein* class at trial. In addition, plaintiff's motion for summary judgment was denied by the Illinois state court on the TCPA claim. Finally, the third amended complaint in the *Bernstein* action appears to establish a *prima facie* case under the TCPA. In light of these facts, plaintiff has satisfied its burden of proof that it settled in reasonable anticipation of liability.

**6. Exclusions and Limitations**

Plaintiff and defendants are in agreement that defendants hold the burden "to prove the applicability of any exclusions to coverage" once plaintiff has satisfied its burden of proof. Plaintiff, however, argues that defendants have not (and cannot) proved the application of the prior acts exclusion and, therefore, have failed to rebut

---

[47] *Id.*
[48] *Binney & Smith*, 2009 WL 1905284, at *4.
[49] *Id.*

plaintiff's *prima facie* case. Defendants dispute plaintiff's assertion and maintain that "in the next phase of this litigation, [it] will present evidence supporting application of the [p]rior [a]cts [e]xclusion."[50]

Defendants are not barred from proving that the prior acts exclusion applies. According to Judge Coar's opinion, defendants produced three sales orders between Fax.com and plaintiff beginning on June 7, 2001.[51] Plaintiff challenged the documents authenticity and objected to them as inadmissible hearsay.[52] Judge Coar concluded that this dispute raised a genuine issue of material fact.[53] Therefore, defendants may raise the prior act exclusion as a defense to its duty to indemnify plaintiff for the *Bernstein* settlement.[54]

**7. Indemnification for Amount to Charity**

Defendants contend that the settlement amount distributed to charities, approximately $1.085 million, is not covered as "damages" under the insurance policies. It is plaintiff's position that the policies do not prohibit coverage for an unclaimed settlement amount distributed to charities.

Defendants' policies cover "damages the insured becomes legally obligated to pay by reason of liability imposed by law . . . ." Since "damages" and "legally obligated"

---

[50] The prior acts exclusion provides: "This insurance does not apply to **advertising injury** or **personal injury** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

[51] *New Century Mortgage Corp.*, 2006 WL 2088198, at *7.

[52] *Id.*

[53] *Id.*

[54] To prevail on the prior acts exclusion, defendants must show that plaintiff sent the same fax prior to the effective date of the policies. *See Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069,1072-73 (7th Cir. 2004) ("[t]he purpose of insurance is to spread risk;" there would be no risk to insure if it already occurred).

are not defined within the policies, the policy terms are given their plain and ordinary meaning.[55] According to Illinois law, a legal obligation arises "if an actual judgement has been rendered . . . *or if a settlement has been reached between the parties*."[56] Therefore, plaintiff has met the "legally obligated to pay" requirement by showing it entered into a settlement agreement.

"Illinois law accords 'damages' a broad, nontechnical meaning that is not limited to compensatory damages and can include equitable relief."[57] In *Central Illinois Light Co.*, the Illinois Supreme Court defined the term "damages" as "money paid to make good an insured loss" and having a "remedial purpose."[58] In finding that the cleanup expenditures incurred by the plaintiff "were made for a remedial purpose," the Illinois Supreme Court looked to the "nature of the expenditure for which the insured is seeking indemnification."[59] Similarly, the court must look at the "nature" of the *Bernstein* settlement. The settlement agreement clearly indicates that the settlement sum was intended primarily to pay the members of the settlement class.[60] The fact that a majority of the settlement amount went towards the cy pres award is irrelevant. The

---

[55] *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004).

[56] *Guillen v. Potomac Ins. Co. of Ill.*, 751 N.E.2d 104, 116 (Ill. App. Ct. 2001) (emphasis in original).

[57] *Ace Am. Ins. Co. v. RC2 Corp.*, 568 F. Supp. 2d 946, 955 (N.D. Ill. 2008).

[58] *Cent. Ill. Light Co.*, 821 N.E.2d at 223, 225 (noting that the definition does not include other "expenditures such as fines, penalties, or assessments").

[59] *Id.* at 225.

[60] The fifth provision of the *Bernstein* settlement provides that "[NCMC] agrees to pay the total sum of $1,950,000.00" and "[u]pon payment of the full amount . . ., [NCMC] will have fulfilled its obligations under the Agreement and will be released as provided in this Agreement." Furthermore, provision six details the distribution of the settlement amount, which leaves "*any remaining amount* . . . to be distributed as a cy pres award . . . ." (Emphasis added).

$1.95 million settlement amount constitutes damages covered under the policies.

**ORDER AND RECOMMENDED DISPOSITION**

Consistent with the reasoning herein, I recommend that:

(1) Defendants' motion for partial summary judgment on the burden of proof (D.I. 120) be DENIED in part and GRANTED in part; and

(2) Plaintiff's motion for partial summary judgment on the burden of proof (D.I. 122) be DENIED in part and GRANTED in part.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.Del.LR 72.1. The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The written objections and response are each limited to ten (10) pages.

The parties are directed to the Court's standing Order in Non-Pro Se matters for Objections Filed under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: October 26, 2009

UNITED STATES MAGISTRATE JUDGE